# EXHIBIT C

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| **AVENTINE RENEWABLE ENERGY HOLDINGS, INC.,** a Delaware Corporation, *et al.*, | Case No. 09-11214 (KG) |
|  | (Jointly Administered) |
| Debtors.[1] |  |

### INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS, AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS

**CAME ON FOR CONSIDERATION** the [*Emergency Motion for Interim and Final Orders Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code (I)(A) Authorizing the Debtors to Use Cash Collateral, (B) Authorizing the Debtors to Obtain Postpetition Financing, (C) Granting Security Interests and Superpriority Administrative Expense Status to the Post-Petition Lenders, (D) Granting Adequate Protection to the Pre-Petition Lenders, and (E) Authorizing the Rollover of Certain Prepetition Secured Debt Into Post-Petition Debt; (II) Scheduling a Final Hearing; and (III) Granting Related Relief*] (the "Financing Motion") filed by the above-captioned debtors, as debtors-in-possession (collectively, the "Debtors"), seeking, *inter alia*, pursuant to Sections 105, 361, 362(a), 363(c), 364(c)(1), 364(c)(2), 364(c)(3), and 364(d)(1) of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 4001-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the following:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway, P.O. Box 1800, Pekin, Illinois 61555-1800.

(i)    authority for the Debtors to use Cash Collateral (as defined below) of Bank of America, N.A., BMO Capital Markets Financing, Inc., JPMorgan Chase Bank, N.A. ("Chase"), Siemens Financial Services, Inc., UBS Loan Finance LLC, Wachovia Bank, National Association, and Wells Fargo Foothill, LLC (collectively, in their capacity as pre-petition lenders, the "Pre-Petition Lenders") and Chase, as administrative agent for the Pre-Petition Lenders (in such capacity and in its capacity as agent for the Post-Petition Lenders (as defined below), the "Agent"), in accordance with the terms and conditions set forth herein;

(ii)    authority for the Debtors to obtain post-petition loans, letters of credit, and other extensions of credit from the Pre-Petition Lenders (collectively, in their capacity as post-petition lenders, the "Post-Petition Lenders"), up to an amount advanced, whether in a single advance or numerous advances from time to time, and irrespective of any paydowns of such post-petition credit, in an amount not to exceed $[70,000,000], inclusive of an amount of up to $[21,961,362] for the Letters of Credit (defined below)[2], and cumulative of any amounts advanced on an interim basis (the "DIP Commitment"), and including, without limitation, principal, interest, fees, expenses, and other costs of the Post-Petition Lenders and Agent in these bankruptcy cases (the "Cases"), in accordance with the terms and conditions set forth herein and in the attached Debtor in Possession Financing

---

[2] The DIP Agreement provides that upon entry of an order granting the Financing Motion on a final basis, any and all claims existing or arising under the Letters of Credit shall be deemed for all purposes to be claims arising under the DIP Facility (defined below) and shall be entitled to all protections and benefits afforded to the DIP Facility hereunder and in the DIP Agreement (defined below)

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS      Page 2 of 41

Dallas 1551873v.1

Amendment to Credit Agreement (the "<u>DIP Agreement</u>"),[3] the Loan Documents (as defined in the DIP Agreement), as modified by the DIP Agreement, and all related documents (collectively, the "<u>DIP Facility</u>");

(iii)    authority for the Debtors to execute, deliver, and perform under the DIP Facility, the loan documents, credit agreements, amendments, notes, security agreements, deeds of trust, and financing statements related to the DIP Facility, and all other related agreements and documents creating, evidencing, or securing indebtedness of the Debtors to the Post-Petition Lenders on account of the DIP Facility or granting or perfecting liens or security interests by the Debtors in favor of and for the benefit of the Post-Petition Lenders on account of the DIP Facility, as same now exists or may hereafter be amended, modified, supplemented, ratified, assumed, extended, renewed, restated, or replaced, and any and all of the documents currently executed or to be executed in connection therewith or related thereto, by and among the Debtors and the Post-Petition Lenders, the terms of which are referenced and incorporated herein as if set forth *in haec verba* (collectively, the "<u>DIP Facility Documents</u>");

(iv)    approval of the terms and conditions of the DIP Facility and the DIP Facility Documents as so executed and delivered;

(v)    modification of the automatic stay of Bankruptcy Code § 362 (the "<u>Automatic Stay</u>") to the extent provided herein;

---

[3] A copy of the Debtor in Possession Financing Amendment to Credit Agreement is attached hereto as <u>Exhibit "1"</u>, and incorporated herein as if set forth *in haec verba*. Any express conflict between the DIP Agreement and this Financing Order shall be governed by the terms and conditions of this Financing Order. Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the DIP Agreement.

**INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS, <u>AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS</u>**     Page 3 of 41

Dallas 1551873v.1

(vi)     granting of first priority liens and adequate protection to the Post-Petition Lenders with respect to their interests in the DIP Collateral (as defined below);

(vii)    granting of adequate protection to the Pre-Petition Lenders with respect to their interests in the Pre-Petition Collateral (as defined below); and

(viii)   authorizing the transfer of Cash Collateral to and for the benefit of the Agent, the Post-Petition Lenders and the Pre-Petition Lenders.

1.     The Debtors and the Agent (on behalf of itself and the Pre-Petition Lenders and Post-Petition Lenders[4]) have represented to this Court that they have agreed in good faith to the terms and conditions of the DIP Agreement and the form of this *Interim Agreed Order Authorizing Limited Use of Cash Collateral, Obtaining Credit Secured by Senior Liens, and Granting Adequate Protection to Existing Lienholders* (this "Financing Order") that was submitted to the Court for entry on the joint consent of the Debtors and the Agent, on behalf of itself and the Lenders.

2.     The parties hereto have stipulated and agreed as follows, and based upon the pleadings and evidence at the interim hearing before this Court, this Court hereby acknowledges said stipulations, and grants the relief herein, on an interim basis, pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) to prevent immediate and irreparable harm to the Debtors and their estates. Therefore, consistent with Bankruptcy Code §§ 361, 362, 363, and 364, this Court hereby orders:

---

[4] The Pre-Petition Lenders and the Post-Petition Lenders, when used collectively, are referred to herein as the "Lenders", and each individually as a "Lender", provided that such reference shall not in any way alter the priority of the claims and liens of the Post-Petition Lenders over those of the Pre-Petition Lenders.

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS       Page 4 of 41

Dallas 1551873v.1

## OPPORTUNITY TO OBJECT

3.     Pursuant to Bankruptcy Rule 4001(d)(2), any objection to the entry of a final order on the Financing Motion must be filed on or before 4 o'clock p.m. Eastern Time on ⬚⬚⬚⬚⬚⬚, 2009 (the "Objection Date").  A final hearing on the Financing Motion shall take place on ⬚⬚⬚⬚⬚⬚, 2009, at ⬚:⬚⬚ ⬚.m., before the Honorable ⬚⬚⬚⬚⬚⬚⬚⬚⬚, United States Bankruptcy Judge, at the United States Bankruptcy Court, (the "Final Hearing").

4.     The Debtors, Agent and the Lenders have represented to the Court that they have negotiated at arm's length and have acted in good faith in the negotiation and preparation of this Financing Order, have been represented by counsel, and intend to be and are bound by its terms. The terms of this Financing Order reflect the Debtors' exercise of prudent business judgment under exigent circumstances and are consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

## STATEMENT OF JURISDICTION

5.     This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## NOTICE

6.     Sufficient and adequate notice of the Financing Motion and the interim hearing with respect thereto has been given to prevent immediate and irreparable harm pursuant to Bankruptcy Rules 2002, 4001, and 9006, and as required by Bankruptcy Code §§ 102, 105, 361, 362, 363, and 364.  Other than the notice provided for herein, no further notice of the relief sought in the Financing Motion is necessary.

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 5 of 41

Dallas 1551873v.1

### FACTUAL AND PROCEDURAL BACKGROUND

7.     On April 7, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the management and possession of their business and property as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

8.     On April ____, 2009, the Court conducted the interim hearing on the Financing Motion and pronounced interim approval of the Financing Motion as set forth herein.

9.     An official committee of unsecured creditors (the "Committee") has not been appointed in these Cases as of the date hereof.

### The Pre-Petition Lenders' Claims

10.     The Debtors stipulate that, pursuant to the Pre-Petition Claim Documents (as defined below) and applicable law, the Pre-Petition Lenders hold valid, enforceable, and allowable claims against the Debtors, as of the Petition Date, in an aggregate amount equal to at least [TBD – currently $15,592,508 in unpaid principal, $TBD in accrued but unpaid interest, plus any and all other fees, cost, expenses, charges, other debts or obligations of the Debtors to the Pre-Petition Lenders under the Pre-Petition Claim Documents (as defined below) and applicable law (the "Pre-Petition Claims"). The Debtors stipulate that the Pre-Petition Claims constitute allowed, legal, valid, binding, enforceable, and non-avoidable obligations of the Debtors, and shall not be subject to any offset, defense, counterclaim, avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtors do not possess and shall not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Claims.

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 6 of 41

Dallas 1551873v.1

11.     The Debtors stipulate that, pursuant to the Pre-Petition Claim Documents, the Pre-Petition Lenders have issued approximately $21,961,362 of commercial standby letters of credit (the "Letters of Credit"). As of the Petition Date, no Letters of Credit have been drawn upon.

### The Pre-Petition Claim Documents

12.     The Debtors stipulate that the Pre-Petition Claims are evidenced by certain documents executed and delivered to the Pre-Petition Lenders by the Debtors, including, without limitation, that certain Credit Agreement dated as of March 23, 2007, among the Debtors, the Pre-Petition Lenders and the Agent, as amended by the First Amendment to Credit Agreement dated March 10, 2009 (as amended and supplemented from time to time prior to this date, the "Credit Agreement").

13.     The Debtors stipulate that the Credit Agreement and all notes, facility letters, line letters, letters of credit, security agreements, assignments, pledges, mortgages, deeds of trust, guaranties, forbearance agreements, and other instruments or documents executed in connection therewith or related thereto shall be referred to herein as the "Pre-Petition Claim Documents." True and correct copies of certain of the Pre-Petition Claim Documents are retained by the Agent and the Debtors, and will be available to interested parties upon request. The terms and provisions of the Pre-Petition Claim Documents are referenced and incorporated herein as if set forth *in haec verba*. The Debtors stipulate that the Pre-Petition Claim Documents are genuine, valid, existing, and legally enforceable.

### The Pre-Petition Collateral

14.     The Debtors stipulate that the Pre-Petition Claims evidenced by the Pre-Petition Claim Documents are secured by perfected first priority liens and security interests in, *inter alia*, substantially all of the personal property and real estate of the Debtors (except to the extent the priority of the Pre-Petition Lenders' liens and security interests are subject to Prior Liens, as

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS               Page 7 of 41

Dallas 1551873v.1

defined below) as more fully described in the Pre-Petition Claim Documents, including, without limitation, all accounts, chattel paper, copyrights, patents, trademarks, documents, equipment, fixtures, general intangibles, goods, instruments, inventory, investment property, cash, cash equivalents, letters of credit, letter-of-credit rights, supporting obligations, deposit accounts with any bank or other financial institution, commodity accounts with any bank or other financial institution, securities accounts with any bank or other financial institution, commercial tort claims, farm products, and all accessions to, substitutions for and replacements, proceeds (including stock rights), insurance proceeds and products of the foregoing, together with all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records related thereto and any general intangibles at any time evidencing or relating to any of the foregoing (the "Pre-Petition Collateral"). The Agent's and Pre-Petition Lenders' liens and security interests in the Pre-Petition Collateral were granted pursuant to, *inter alia*, the Pre-Petition Claim Documents.

15.     The Debtors stipulate that the Pre-Petition Lenders have properly perfected their first priority liens and security interests and other liens in the Pre-Petition Collateral, subject to Prior Liens, if any, as evidenced by, among other things, the Pre-Petition Claim Documents, documents held in possession of the Agent or Pre-Petition Lenders and documents filed with the appropriate state, county, and other offices. The Debtors stipulate that the Debtors do not possess and shall not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, and non-avoidability of any of the Agent's and Pre-Petition Lenders' liens, claims, or security interests in the Pre-Petition Collateral. Debtors further stipulate, acknowledge, and agree that the value of the Pre-Petition Collateral exceeds the aggregate amount of the Pre-Petition Claims.

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS       Page 8 of 41

Dallas 1551873v.1

## Default by the Debtors

16.     The Debtors stipulate that the Debtors are in default of their debts and obligations to the Pre-Petition Lenders under the terms and provisions of the Pre-Petition Claim Documents. The Debtors stipulate that these defaults exist, have not been timely cured, and are continuing. The Debtors stipulate that the filing of these Cases has accelerated the Pre-Petition Claims for all purposes in these Cases and in connection with the Pre-Petition Lenders' enforcement of their rights and remedies under applicable non-bankruptcy law. The Debtors stipulate that the Pre-Petition Claims remain due and owing to the Pre-Petition Lenders without any claim, counterclaim, setoff, or defense of any kind, nature, or description.

## The Lenders' Interests

17.     The Debtors stipulate that the Agent, on behalf of the Lenders, holds, or will hold as a result of this Financing Order (in each case subject to (a) Prior Liens, if any, (b) the Carve-Out, and (c) the priority of the Post-Petition Lenders' claims and liens over the Pre-Petition Lenders' claims and liens), enforceable, first priority, perfected liens and security interests in the Pre-Petition Collateral and Cash Collateral (as defined below), plus any and all other property of these estates, real and personal, to the extent provided under Bankruptcy Code § 552(b), any other provision of the Bankruptcy Code, this Financing Order, and applicable law to secure the Pre-Petition Claims and the DIP Facility, plus, without limitation, any other amounts allowable under the Bankruptcy Code and applicable law (the "Lenders' Interests").

## CASH COLLATERAL

## The Lenders' Cash Collateral

18.     The Debtors stipulate that, to the extent of the Lenders' Interests, collectively, all cash of the Debtors' bankruptcy estates, wherever located, and all cash equivalents, whether in the form of negotiable instruments, documents of title, securities, deposit accounts, investment

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 9 of 41

Dallas 1551873v.1

accounts, or in any other form, which represent income, proceeds, products, rents, or profits of the Collateral (as defined below) that were on the Petition Date in any Debtor's possession, custody or control (or persons in privity with any Debtor), or in which any Debtor will obtain an interest during the pendency of these Cases whether via advances under the DIP Facility or otherwise (excluding, however, proceeds of causes of action under chapter 5 of the Bankruptcy Code ("Chapter 5 Proceeds")), or which represent income, proceeds, products, rents, or profits of the Collateral (collectively, the "Cash Collateral"), shall constitute the cash collateral of the Agent and Lenders. The Debtors stipulate that the Agent, on behalf of the Pre-Petition Lenders, has first priority perfected liens and security interests in the Cash Collateral pursuant to the applicable provisions of the Pre-Petition Claim Documents, Bankruptcy Code §§ 363(a) and 552(b), and this Financing Order, but subject to Prior Liens, the Carve-Out and the liens granted to the Post-Petition Lenders pursuant to Bankruptcy Code § 364(d) and this Financing Order.

19.     The Debtors shall segregate and account to the Agent for all Cash Collateral that they now possess, that they have permitted to be transferred into the possession of others (if any), that is being held by those in privity with any Debtor, or that any Debtor might hereafter obtain or have any interest in. The Debtors shall account to the Agent for the receipt and use, if any, of the Cash Collateral received by the Debtors since the Petition Date and prior to the entry of this Financing Order. Absent a further order of this Court or the consent of the Lenders, the Debtors are strictly prohibited from using the Cash Collateral except as expressly provided for herein.

### Need For and Consent to Limited Use of Cash Collateral

20.     The Agent and Lenders do not consent to the Debtors' use of Cash Collateral except in strict accordance with the terms and conditions contained in this Financing Order. The relief hereunder is necessary to avoid immediate and irreparable harm to these estates because,

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                      Page 10 of 41

Dallas 1551873v.1

without the use of Cash Collateral, the Debtors will not have the funds necessary to maintain their assets, provide financial information, pay necessary employees, payroll taxes, inventory suppliers and other vendors, overhead, and other expenses necessary to maximize the value of the Debtors' assets. The Debtors require the use of Cash Collateral as provided herein.

21.     The Debtors have requested that the Agent and Lenders extend credit and permit the use of Cash Collateral for the purposes set forth in the Budget (as defined below), in order to avoid the harm to the Debtors' estates that will occur if this Financing Order is not approved.

22.     Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The use of Cash Collateral will benefit the Debtors and their estates. The ability of the Debtors to maximize the value of their assets depends upon the Debtors' ability to use the Cash Collateral of the Agent and Lenders. Accordingly, the use of Cash Collateral by the Debtors is actual and necessary to preserving their estates.

### Authorization for Limited Use of Cash Collateral

23.     The Debtors are hereby authorized, on a limited basis, to use Cash Collateral only in strict accordance with the terms and conditions provided in this Financing Order. Furthermore, the Debtors are authorized and hereby agree to perform any and all acts reasonably required by the Agent to comply with the terms and conditions of this Financing Order and the DIP Facility.

### DIP FACILITY

### Need for DIP Facility

24.     Without the use of Cash Collateral and the DIP Facility, the Debtors will not have the funds necessary to maintain their assets, sell or otherwise liquidate their assets, provide financial information, pay necessary employees, payroll taxes, inventory suppliers and other vendors, overhead, and other expenses necessary to maximize the value of the Debtors' assets.

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 11 of 41

Dallas 1551873v.1

The use of the Cash Collateral and obtaining the DIP Facility is actual and necessary to preserving the Debtors and their estates. The Post-Petition Lenders are willing to provide the DIP Facility to or for the benefit of the Debtors only in accordance with the terms of the DIP Agreement and this Financing Order.

25. The Debtors have requested that the Post-Petition Lenders provide the DIP Facility in order to provide funds to be used for the purposes set forth in the Budget, and such other purposes as required by this Financing Order and to which the Agent consents[5] in writing.

26. The Debtors have sought to obtain financing from other sources and are unable to obtain credit allowable under Bankruptcy Code § 503(b)(1), or pursuant to Bankruptcy Code §§ 364(a) and (b), and the Debtors have determined that no source of credit for the Debtors on terms more favorable to the Debtors than the terms of the DIP Facility exists at this time. Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The extension of credit as provided under the terms and conditions in the DIP Agreement and this Financing Order is actual and necessary to preserving the estates.

27. The terms of the DIP Facility and this Financing Order are fair, just, and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of their prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the DIP Facility and this Financing Order have been negotiated in good faith and at arms' length by and among the Debtors, on the one hand, and Agent and Lenders, on the other hand, with all parties being represented by counsel. Any credit

---

[5] All consents and approvals by the Agent hereunder shall be deemed to have been given on behalf of the Lenders, as applicable. All consents and approvals by the Agent or by the Lenders hereunder shall be in accordance with the terms of the Credit Agreement, as amended by the DIP Agreement.

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 12 of 41

Dallas 1551873v.1

extended under, or Cash Collateral consented to be used pursuant to, the terms of this Financing Order and the DIP Facility shall be deemed to have been extended or consented to be used in good faith by Agent and Lenders, as the term "good faith" is used in Section 364(e) of the Bankruptcy Code.

## Authorization to Obtain Credit

28.      The Debtors are hereby authorized to obtain credit only in accordance with the DIP Agreement, the DIP Facility and this Financing Order.

29.      The Debtors are hereby authorized to obtain post-petition loans and other extensions of credit in an amount not to exceed $[░░░░░░░░░░] on an interim basis pursuant to the terms of this Financing Order and the terms of the DIP Agreement, solely for the purposes set forth in the Budget or otherwise due under the DIP Facility as and when they come due.

## Superpriority Liens and Administrative Claims

30.      The Agent, on behalf of the Post-Petition Lenders, is entitled to and is hereby granted first priority claims, priming liens and the protections of good faith credit providers under Bankruptcy Code §§ 364(c)(1), (c)(2), and (c)(3), 364(d)(1), and 364(e) to secure the DIP Facility, senior to all other liens and security interests, including adequate protection and replacement liens granted pursuant to the terms of this Financing Order to or on behalf of the Pre-Petition Lenders, which liens and security interests shall secure all DIP Facility amounts (including principal and interest, fees, expenses, and other costs of the Lenders in these Cases, however incurred), but subject only to Prior Liens and the Carve-Out (as each term is defined below).

31.      The liens and security interests securing the DIP Facility shall be valid and automatically perfected first priority priming liens and security interests, subject only to Prior Liens and the Carve-Out, in and upon any and all of the properties and assets of the Debtors,

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 13 of 41

Dallas 1551873v.1

both real or personal, including, but not limited to, those assets described in the Pre-Petition Claim Documents, this Financing Order, the DIP Facility Documents, and the DIP Agreement, together with tax refunds of any nature, insurance proceeds, insurance premium refunds, deposits of any kind, security deposits, utility deposits, bonds and proceeds of same, causes of action (whether by contract or tort, common law or statutory, equitable or otherwise) and customer lists, whether acquired before or after the Petition Date, whether now owned and existing or hereafter acquired, created, or arising, and all products and proceeds thereof (including, without limitation, claims of the Debtors against third parties for loss or damage to such property), and all accessions thereto, substitutions and replacements therefor, and wherever located, and all assets acquired by the Debtors post-petition and recoveries by the estates under any provision of the Bankruptcy Code or other applicable law, but excluding causes of action under chapter 5 of the Bankruptcy Code (the "DIP Collateral", and when used collectively with the Lenders' Interests, the "Collateral").

32.     Additionally, on account of the DIP Facility, the Post-Petition Lenders are hereby granted superpriority administrative claims and all other benefits and protections allowable under Bankruptcy Code §§ 507(b) and 503(b)(1) on a pro rata basis as determined under the DIP Facility Documents, senior in right to all other administrative claims against the estates, including those of the Pre-Petition Lenders to the extent set forth in this Financing Order, except for the Carve-Out.

### Cash Collateral Accounts

33.     The Debtors shall immediately, and shall continue to, segregate, remit, and deposit all Cash Collateral in the Debtors' accounts, possession, custody or control and which any Debtor may receive in the future, in accordance with the applicable cash management orders

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 14 of 41

Dallas 1551873v.1

entered by this Court, and consistent with the Debtors' past and ordinary business practices. The bank accounts of the Debtors (individually or collectively, the "Cash Collateral Accounts") shall be in the name of the Debtors, but the Agent shall have full dominion and control over such accounts.

34.     As adequate protection of the Lenders' Interests in the Collateral and the Cash Collateral, and as a condition to Agent and Lenders making any post-petition loans, advances, or providing Debtors with any other financial or credit accommodations under the DIP Facility, any and all Cash Collateral held on the Petition Date and such other amounts collected on and after the Petition Date by the Debtors shall be immediately transferred to the Agent (and the Agent is hereby authorized to effectuate such transfers) and applied (a) first, to payment of the Prepetition Obligations (as defined in the DIP Agreement) plus any accrued interest, fees, costs, or expenses thereon or chargeable thereto until such Prepetition Obligations have been paid and satisfied in full on terms and conditions satisfactory to the Agent and the Pre-Petition Lenders, and (b) second, once the Prepetition Obligations plus any accrued interest thereon is satisfied in full in accordance with this Financing Order, to the Postpetition Obligations (as defined in the DIP Agreement), each in the order of application determined by the Agent in accordance with the terms and conditions of the Pre-Petition Claim Documents and DIP Facility Documents, respectively, until such time as all such obligations of the Debtors are paid and satisfied in full. The Agent may cause and direct the transfer of all funds in the Cash Collateral Accounts to the Agent on a [daily] basis to comply with this paragraph without further Order or action of this Court.

35.     The Debtors stipulate that all funds transferred to the Lenders hereunder, other than Chapter 5 Proceeds, constitute Cash Collateral of the Lenders. In the event that any funds (other than Chapter 5 Proceeds) so transferred are ever determined not to be Cash Collateral, and

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 15 of 41

Dallas 1551873v.1

the Lenders and Agent expressly reserve all rights and remedies in connection with any such determination of same, such funds so transferred shall be subject to the liens of the Lenders granted hereunder to secure the credit obtained hereunder and as replacement liens for the use of Cash Collateral and diminution of the value of the Lenders' Interest in property of these bankruptcy estates.

36.     Following the occurrence of an Event of Default (as defined herein), the Agent may apply any Cash Collateral and Collateral proceeds collected or otherwise received to *either* the DIP Facility obligations or the Pre-Petition Claims, in its sole and absolute discretion, subject to the Carve-Out.

37.     The Debtors shall be prohibited from withdrawing funds from the Cash Collateral Accounts, except in strict compliance with the terms of this Financing Order and the DIP Facility. The Debtors shall comply with any cash management order entered by the Court in connection with the accounts referenced above.

## ADEQUATE PROTECTION OF THE LENDERS' INTERESTS

### Budgeted Cash Collateral Usage

38.     As adequate protection of the Lenders' Interests in the Collateral and for the Debtors' use of Cash Collateral and only so long as an Event of Default (as defined herein) shall not have occurred, the Debtors are authorized to and shall use the Cash Collateral (including the advances under the DIP Facility) strictly in accordance with the budget attached hereto as Exhibit "2" (the "Budget"), subject to a permitted variance for aggregate cash receipts, disbursements and expenses each not to exceed 15% on a weekly basis or on a cumulative basis from the commencement of the Budget to the date of determination. Notwithstanding the foregoing, there shall be no variance above the agreed-upon Carve-Out. Prior to any transfer or use of Cash Collateral by the Debtors, one of the Debtors' Financial Officers (as defined in the

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 16 of 41

Credit Agreement) shall review and verify the proposed transfer or use of Cash Collateral for strict compliance with the Budget and DIP Agreement.

39.     The Agent's and Lenders' consent to use of Cash Collateral and agreement to extend credit extends only to (i) amounts due under the DIP Facility and (ii) amounts actually incurred in accordance with the Budget. Upon the occurrence of an Event of Default, the Agent's and Lenders' consent to use of Cash Collateral or agreement to extend credit shall automatically and immediately terminate and any consent for use of Cash Collateral or agreement to extend credit to satisfy projected, budgeted expenditures shall be immediately terminated and deemed withdrawn, except that the Debtors may continue to use Cash Collateral and funds under the DIP Facility to pay Budgeted expenses that were actually incurred prior to an Event of Default, but which remain unpaid at the time of an Event of Default, and in no event will expenses or Budget amounts be considered incurred until the week such expense or Budgeted amount is listed in the Budget.

40.     Except as may specifically be provided in the Budget including, without limitation, for ordinary course payroll, benefits, and expense reimbursements, the Debtors agree that no transfer of Cash Collateral shall be made to any of the Debtors' insiders, as that term is defined in Bankruptcy Code § 101. Other than transfers in the ordinary course of the Debtors' business, any Budgeted transfers to insiders shall be so identified in the Budget.

41.     The Budget may be modified in writing only with the prior written consent of the Required Lenders in their Permitted Discretion (as defined in the Credit Agreement).

<u>**Replacement Liens and Superpriority Administrative Claims**</u>

42.     Taking into account all factors in these Cases, as adequate protection of the Pre-Petition Lenders' Interests and for the Debtors' use of Cash Collateral, and subject only to Prior

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
<u>AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS</u>                    Page 17 of 41

Dallas 1551873v.1

Liens, if any, the Carve-Out, and the liens relating to the DIP Facility, the Agent, on behalf of the Pre-Petition Lenders, is hereby granted, effective as of the Petition Date, valid and automatically perfected first priority replacement liens and security interests in and upon the Collateral to the extent of any diminution in the value of the Lenders' Interests.

43.     To the extent such adequate protection is insufficient to adequately protect the Pre-Petition Lenders' Interests, the Pre-Petition Lenders are hereby granted superpriority administrative claims and all of the other benefits and protections allowable under Bankruptcy Code § 507(b) on a pro rata basis as determined under the Credit Agreement, junior only in right to any superpriority administrative claims granted to the Post-Petition Lenders and the Carve-Out.

## Automatic Perfection

44.     This Financing Order, the Pre-Petition Claim Documents, and the DIP Facility Documents shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of all of the Lenders' security interests in and liens on the Collateral, and the liens and security interests granted and created by this Financing Order, constitute valid, automatically perfected and unavoidable security interests, with the priorities granted hereunder and thereunder, without the necessity of creating, filing, recording, or serving any financing statements or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect (a) the security interests and liens granted to the Pre-Petition Lenders by this Financing Order and the DIP Facility Documents or (b) the adequate protection and replacement liens and security interests granted herein to the Pre-Petition Lenders.

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS            Page 18 of 41

Dallas 1551873v.1

45.     To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the Lenders' liens and security interests authorized, ratified, or created by this Financing Order or otherwise would impose filing or registration requirements with respect to such liens, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court.

46.     By virtue of the terms of this Financing Order, to the extent that the Agent or Lenders have filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the name of any Debtor, such filings shall be deemed to properly perfect its liens and security interests granted under this Financing Order without further action by the Agent or Lenders.

47.     If the Agent shall, in its discretion, elect for any reason to file any Uniform Commercial Code financing statements or other recordable documents to evidence perfection of the Agent's and Lenders' interests in property of these estates, the Agent or, upon the Agent's request, the Debtors, are authorized and directed to execute, or cause to be executed, all such financing statements or other documents, and the filing, recording, or service (as the case may be) of such financing statements or similar documents shall be deemed to have been made at the time of and on the Petition Date, and the signature(s) of any person(s) designated by the Debtors, whether by letter to the Agent or by appearing on any one or more of the agreements or other documents respecting the security interests and liens of the Agent and Lenders granted hereunder, shall bind the Debtors and their estates. The Agent may, in its sole and absolute discretion, execute such documents on behalf of the Debtors as the Debtors' attorney-in-fact, or file a certified copy of this Financing Order in any filing or recording office in any county or

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS          Page 19 of 41

Dallas 1551873v.1

other jurisdiction in which any Debtor has real or personal property, and, in such event, the subject filing or recording officer is authorized and directed to file or record such documents or certified copy of this Financing Order.

## Authorization to Act

48.     The Debtors are hereby authorized and directed to perform all acts, take any action, and execute and comply with the terms of such other documents, instruments and agreements, as the Agent may reasonably require as evidence of and for the protection of the Collateral, or that may be otherwise reasonably deemed necessary by the Agent to effectuate the terms and conditions of this Financing Order and the DIP Facility.

49.     Until all of the DIP Facility and the Pre-Petition Claims shall have been indefeasibly paid and satisfied in full by their terms, and without further order of the Court: (a) the Debtors shall use the DIP Facility proceeds and all Cash Collateral strictly in accordance with the terms of the Budget requirements and other terms of this Financing Order; (b) the Debtors shall not, without prior written approval from the Court after notice to the Agent, engage in any transaction that is not in the ordinary course of the Debtors' business, and (c) the Debtors shall timely comply with all of the covenants set forth in the DIP Facility Documents to the extent not rendered impossible or commercially impracticable as a result of existing defaults or the filing of the Cases.

## Prior Liens

50.     The security interests and liens of the Agent and Lenders granted pursuant to the terms of this Financing Order shall not have priority over: (a) perfected and unavoidable liens and security interests in property of the Debtors' estates as of the Petition Date (other than the priority of the Post-Petition Lenders' liens in the Collateral over the Pre-Petition Lenders' liens in the Collateral), provided that (i) such perfected and unavoidable liens and security interests are

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
<u>AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS</u>                    Page 20 of 41

Dallas 1551873v.1

valid, perfected and senior in priority to the Pre-Petition Lenders' liens and security interests in accordance with applicable law (together, the "<u>Prior Liens</u>"), and (ii) the foregoing is without prejudice to the rights of the Debtors or any other party in interest, including Agent and Lenders, to object to the validity, priority, or extent of such Prior Liens, or the allowance of such debts secured thereby, or to institute any actions or adversary proceedings with respect thereto; (b) the quarterly fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930; (c) the fees and expenses of the Clerk of this Court; and (d) the Carve-Out.

<b><u>No Additional Liens</u></b>

51.     Until the DIP Facility and the Pre-Petition Claims are fully satisfied by their terms, the Debtors shall not be authorized to obtain credit secured by a lien or security interest in the Pre-Petition Collateral, Cash Collateral, or DIP Collateral, other than the DIP Facility, without the prior written consent of the Agent or order of the Court upon reasonable notice.

<b><u>No Liability</u></b>

52.     From and after the Petition Date, no act committed or action taken by the Lenders or the Agent under this Financing Order, the collection of the Pre-Petition Claims, or the DIP Facility shall be used, construed, or deemed to hold the Agent or Lenders to be in "control" of or participating in the governance, management, or operations of the Debtors for any purpose, without limitation, or to be acting as a "responsible person(s)" or "owner(s) or operator(s)" or a person(s) in "control" with respect to the governance, management, or operation of the Debtors or their business (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, Comprehensive Environmental Response, Compensation and Liability Act, or the Bankruptcy Code, each as may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred upon the Agent and Lenders under the Pre-Petition Claim Documents, the DIP

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
<u>AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS</u>       Page 21 of 41

Dallas 1551873v.1

Facility Documents, or this Financing Order including, without limitation, such rights and remedies as may be exercisable by the Lenders or the Agent in connection with this Financing Order.

### Automatic Stay

53.     The Automatic Stay is hereby vacated and modified to the extent necessary to permit (a) the Debtors, the Lenders, and the Agent to commit all acts and take all actions necessary to implement the DIP Facility and this Financing Order, (b) all acts, actions, and transfers contemplated herein, including, without limitation, transfers of Cash Collateral and other funds to the Agent for the benefit of the Lenders by the Debtors and the application by the Agent of same as provided herein, and (c) consistent with the terms of this Financing Order (including, without limitation, the notice requirements of paragraph 69), to permit the Agent or Lenders to, at their option, pursue their rights and remedies as to the Collateral in accordance with the Pre-Petition Claim Documents, the DIP Agreement, the DIP Facility Documents, and applicable law.

### Collateral Insurance, Maintenance, Taxes, and Deposits

54.     The Debtors shall maintain, with financially sound and reputable insurance companies, insurance of the kind covering the Collateral, and in accordance with the Pre-Petition Claim Documents and the DIP Facility Documents (covering such risks in amounts as shall be satisfactory to the Agent and shall name the Agent as loss payee thereunder), including, without limitation, insurance covering the Collateral and such other collateral of the Lenders, if any, as the Agent may from time to time reasonably request; and, at the Agent's request, the Debtors shall deliver to the Agent evidence of the maintenance of such insurance.

55.     Upon receipt of notification (written or oral) that an insurance policy issued prior to the Petition Date covering any Collateral will not be renewed by the respective carrier, the

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
<ins>AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS</ins>                                    Page 22 of 41

Dallas 1551873v.1

Debtors will immediately notify the Agent in writing of such occurrence and thereafter provide the Agent with the status of all negotiations, if any, regarding such policy on a weekly basis.

56.     To the extent permitted by the Budget, the Debtors shall make any and all payments necessary to keep the Collateral and their other property in good repair and condition and not permit or commit any waste thereof. The Debtors shall exercise their business judgment and, in so doing shall preserve, maintain, and continue all material patents, licenses, privileges, franchises, certificates and the like necessary for the operation of their business.

57.     To the extent the Debtors have made or make any deposits for the benefit of utility companies or any other entity (and the Debtors shall not make any such deposits which are not included in the Budget without first obtaining consent of the Agent), such deposits shall be, and hereby are, upon any return of same to the Debtors, subject to first priority perfected liens and security interests of the Lenders in respect of the DIP Facility and the Debtors' use of Cash Collateral granted by this Financing Order.

## Reporting Requirements

58.     The Debtors are authorized and directed to provide to the Agent all of the documentation and reports required under the DIP Agreement and the DIP Facility Documents, including borrowing base reports, schedules, assignments, financial statements, insurance policies, and endorsements, unless the Agent waives or modifies such requirements in writing (the "Reporting Information").

59.     The Reporting Information shall also include: (a) weekly reports of receipts and budgeted cash usage; (b) copies of all reports filed with the Office of the United States Trustee within two (2) days after such filing; and (c) such additional financial or other information concerning the acts, conduct, property, assets, liabilities, operations, financial condition, and

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 23 of 41

Dallas 1551873v.1

transactions of the Debtors, or concerning any matter that may affect the administration of the estates, as the Agent may from time to time reasonably request within ten (10) business days of any such request. All Reporting Information shall be in accordance with accounting principles and bookkeeping practices consistently applied with past accounting principles and bookkeeping practices and reporting of the Debtors to the Agent and Pre-Petition Lenders.

60. The Agent and its respective agents and advisors shall have full access, upon reasonable notice during normal business hours, to the Debtors' business records, business premises, and to the Collateral to enable the Agent or its agents and advisors to (a) review, appraise, and evaluate the physical condition of the Collateral, (b) inspect and review the financial records and all other records of the Debtors concerning the operation of the Debtors' business, and (c) evaluate the Debtors' overall financial condition and all other records relating to the operations of the Debtors. The Debtors shall fully cooperate with the Agent regarding such reviews, evaluations, and inspections, and shall make their employees and professionals available to the Agent and its professionals and consultants to conduct such reviews, evaluations, and inspections.

## Interest, Fees, Costs and Expenses of the Agent/Lenders

61. During the Cases, as additional adequate protection, all interest, fees, costs, and expenses, including attorneys' fees and expenses, due at any time to the Lenders or the Agent under the Pre-Petition Claim Documents and/or the DIP Facility Documents, as applicable, or that are incurred as a result of the Debtors' Cases (the "Agent's and Lenders' Costs") may be charged by the Lenders and/or Agent and shall be paid by the Debtors out of the Cash Collateral or out of any DIP Facility advances, on a monthly basis, up to the aggregate amount for such Agent's and Lenders' Costs set forth in the Budget or, if greater than such amount in the Budget

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS     Page 24 of 41

Dallas 1551873v.1

and only if approved in writing by the Agent and Lenders, by an over-advance or a Safeguard Advance (as defined in the DIP Agreement) which shall then be deemed to be part of the DIP Facility. In order to facilitate tracking of the Agent's and Lenders' Costs by the Debtors, counsel for the Agent will provide from time to time (but not less than once each month with respect to the prior month) the amount of its fees and expenses so paid under this paragraph to counsel for the Debtors, counsel for any statutory committees, and the United States Trustee.

62.     Such payment shall not constitute satisfaction of any fees of such professionals other than those actually paid. Any reasonable fees and expenses of the Lenders and the Agent that are paid pursuant to the foregoing Agent's and Lenders' Costs procedures shall be deemed allowed without further order of this Court unless the Debtors, any statutory committee, or the U.S. Trustee object to such Agent's and Lenders' Costs based on reasonableness within thirty (30) days of the payment of same.

**Professional Fees of the Estates**

63.     The Agent and Lenders hereby consent to the Debtors' professionals retained in these Cases retaining any retainers held as of the Petition Date. The Agent and Lenders additionally consent, subject to the terms and conditions set forth in this Financing Order, to a carve out of their Collateral interests and claims for the payment of the allowed professional fees and expenses of those professionals retained pursuant to an order of this Court by the Debtors or Committee (collectively, the "Estate Professionals") to the extent set forth in the Budget and approved by an order of this Court, and only so long as such fees and expenses are incurred and earned prior to the occurrence of an Event of Default; provided that, subsequent to the occurrence of an Event of Default, there shall be an aggregate amount not to exceed $[2,000,000] (less the amount of any retainers held by Estate Professionals as of the occurrence of an

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 25 of 41

Dallas 1551873v.1

applicable Event of Default) as additional carve-out funds for the payment of allowed professional fees, subject to any other terms and conditions of the engagement agreements and appurtenant orders for the employment of such Estate Professionals (the "Carve-Out"). So long as no Event of Default shall have occurred and be continuing, the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed and payable under 11 U.S.C. §330 and §331, as the same may be due and payable, and the same shall not reduce the Carve-Out.

64.　Other than the Carve-Out set forth above, the Agent and Lenders do not at this time consent to any carve-out of their Collateral interests for payment of any fees and expenses of the Estate Professionals. Except as set forth above, the Agent and Lenders do not consent to carve out of their Collateral interests for the payment of any of the Estate Professionals or any other claims from the Collateral or Cash Collateral.

65.　Unless the DIP Facility and Pre-Petition Claims have been paid in full, any remaining unapplied retainer funds at the conclusion of an Estate Professional's engagement shall be immediately returned to the Agent as the Agent's Cash Collateral. Any and all payments of fees and expenses to any Estate Professionals shall constitute a decrease in the value of the Collateral for all purposes. Notwithstanding any other provision herein, all liens, security interests and claims of the Agent and Lenders shall be subject to the Carve-Out of the Estate Professionals, provided that nothing herein shall waive any right of the Agent and Lenders to object to any fees or expenses of such professionals as to reasonableness.

66.　Notwithstanding the foregoing, and irrespective of the Carve-Out, in no event shall Cash Collateral, or the proceeds of any loans, advances, or other funds made available by Agent and Lenders to or for the benefit of Debtors, ever be used for the payment or reimbursement of any fees, expenses, costs, or disbursements of any of the professionals incurred

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS　　　　　Page 26 of 41

Dallas 1551873v.1

in connection with the assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense, or contested matter, the purpose of which is to seek any order, judgment, determination, or similar relief (a) invalidating, setting aside, avoiding, or subordinating in whole or part the Agent's or Lenders' liens and security interests provided by the Pre-Petition Claim Documents or this Financing Order, (b) seeking any monetary damages or asserting a claim against the Agent or any Lender or (c) preventing, hindering or delaying, whether directly or indirectly, the Agent's and Lenders' assertion, enforcement, or realization upon any Collateral; provided, however, that notwithstanding anything to the contrary herein, the Carve-Out may be used by the Committee to investigate the matters described in the foregoing clauses (a), (b) and (c).

## EVENTS OF DEFAULT/REMEDIES

### Events of Default

67.     The occurrence of any of the following shall constitute an Event of Default under this Financing Order upon notice to the Debtors by the Agent: (a) any default, violation, or breach of any of the terms of this Financing Order, the DIP Agreement or the DIP Facility Documents by the Debtors; (b) the occurrence of the Expiration Date (as defined below), maturity, termination, expiration, or non-renewal of this Financing Order or the DIP Facility as provided for herein or in the DIP Facility Documents; (c) conversion of any Debtor's Case to a case under chapter 7 of the Bankruptcy Code; (d) the appointment of a trustee in any Debtor's Case without the consent of the Agent and the Required Lenders (as defined in the Credit Agreement); (e) the appointment of an examiner in any Debtor's Case with expanded powers without the consent of the Agent and the Required Lenders (as defined in the Credit Agreement); (f) the dismissal of any Debtor's Case; (g) the entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Financing Order without the express prior written

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 27 of 41

Dallas 1551873v.1

consent of the Agent and the Required Lenders (as defined in the Credit Agreement); (h) the filing or confirmation of a plan of reorganization by any Debtor that does not provide for the indefeasible payment in full of the DIP Facility upon confirmation; (i) any other security interest, lien, claim, or encumbrance, excluding the liens permitted pursuant to Section 6.02 of the DIP Agreement, shall be granted in any of the Collateral which is *pari passu* with or senior to the claims of the Agent or Lenders, including any surcharge of the Collateral pursuant to Bankruptcy Code §506(c) or otherwise; (j) the Debtors shall attempt to vacate or modify this Financing Order over the objection of the Agent; (k) the entry of an order granting relief from the Automatic Stay to the holder or holders of any other security interest or lien (other than to Agent or Lenders) in any Collateral to permit the pursuit of any judicial or non-judicial transfer or other remedy against any of the Collateral; (l) any challenge to the extent, validity, priority, or unavoidability of the Lenders' liens securing the Pre-Petition Claim and/or the DIP Facility is commenced by the Debtors or an order is entered sustaining any such challenge commenced by any party other than the Debtors; (m) any Postpetition Default as defined in the DIP Agreement; (n) the Debtors shall make any payment (whether via adequate protection or otherwise) of principal or interest or otherwise on account of any prepetition Indebtedness (as defined in the Credit Agreement), except to the Lenders or Agent, unless approved by the Agent in writing or as authorized by this Court after notice and hearing; (o) any provision of the DIP Facility Documents shall cease to be valid and binding on the Debtors, or any Debtor shall so assert in any pleading filed with any court; (p) the Debtors for any reason fail to remit to the Agent all net proceeds from the sale, disposition, collection, or other realization upon the Collateral for application in accordance with Section 2.23(g) of the DIP Agreement; (q) the Debtors shall fail to obtain, on or before May ___, 2009, an order by the Bankruptcy Court approving the DIP

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 28 of 41

Dallas 1551873v.1

Financing on a final basis in form and substance satisfactory to the Agent in its sole discretion; (r) Debtors shall fail to obtain, on or before July __ [90 days after DIP Financing Amendment Effective Date], 2009, an order of the Bankruptcy Court approving sale and auction procedures and bid protections, if any, for a proposed sale of all or substantially all of the Debtors' assets to a ready, willing and able "stalking horse" bidder, which shall (i) provide for a stalking horse bid that has no financing, due diligence or other contingencies, and which shall be in an amount which is adequate to repay the DIP Facility and Prepetition Claims in full, and (ii) otherwise be on terms and conditions reasonably satisfactory to the Agent and Lenders; or (s) the Debtors shall fail to consummate the sale of all or substantially all of their assets on or before October __ [180 days after DIP Financing Amendment Effective Date], 2009 on terms and conditions satisfactory to the Agent and Lenders (any of the foregoing events of default being referred to in this Financing Order, individually, as an "Event of Default", or severally, as "Events of Default").

## Remedies

68.     Immediately upon the occurrence of any Event of Default, and at all times thereafter, and without further act or action by the Lenders or the Agent, or any further notice, hearing, or order of this Court: (a) the Agent may declare all or any part of the DIP Facility immediately to be accelerated and due and payable for all purposes, rights, and remedies, (b) the Lenders' obligations in connection with the DIP Facility shall immediately terminate, and (c) the Debtors' authority to use Cash Collateral and any and all obligations of the Lenders under this Financing Order and the DIP Agreement shall terminate, except to the extent set forth in paragraph 40 with respect to Budgeted expenses that were actually incurred prior to an Event of Default, but which remain unpaid at the time of an Event of Default.

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                     Page 29 of 41

Dallas 1551873v.1

69.     Furthermore, upon the occurrence of any Event of Default, and after the giving of five (5) business days notice by the Agent to the Debtors, the Committee and the United States Trustee, then without further act or action by the Lenders or the Agent, or any further notice, hearing or order of this Court, and absent the entry of an order of this Court to the contrary, the automatic stay of Bankruptcy Code § 362 shall be immediately modified and the Lenders or the Agent shall be and are hereby authorized, in their discretion, to take any and all actions and remedies that the Lenders or the Agent may deem appropriate to proceed against, take possession of, protect, and realize upon the Collateral and any other property of the estates of the Debtors upon which the Lenders or the Agent have been or may hereafter be granted liens and security interests to obtain repayment of the Pre-Petition Claims and the DIP Facility, provided that the Lenders or the Agent shall not be obligated to take title to any of the Collateral in the pursuit of the Lenders' rights and remedies.

70.     Upon or after the occurrence of any Event of Default, the Post-Petition Lenders may, in their sole and absolute discretion, advance funds to the Debtors, and all such advances (i) shall not constitute a waiver, limitation, or modification of the Lenders' rights and remedies pursuant to the Pre-Petition Claim Documents, the DIP Facility Documents, and applicable law and (ii) shall be and hereby are granted all of the protections granted to the Lenders under this Financing Order in connection with the DIP Facility.

## OTHER TERMS

71.     Other than Prior Liens and the Carve-Out, no priority claims shall be allowed that are or will be prior to or on a parity with the superpriority claims or secured claims of the Lenders against the Debtors and their estates arising out of the Pre-Petition Claim Documents, the DIP Facility Documents, and this Financing Order.

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 30 of 41

Dallas 1551873v.1

72.     Subject to entry of a final Financing Order granting such relief, no costs or expenses of administration which have or may at any time be incurred in these Cases (or in any successor Chapter 7 case) shall be charged against the Agent or any Lender, their respective claims or the Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of Agent, and no such consent shall be implied from any other action, inaction, or acquiescence by Agent or any Lender.

73.     Subject to paragraph 87, no obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the post-petition financing arrangements with the Lenders shall be avoidable or recoverable from the Lenders under any section of the Bankruptcy Code, or any other federal, state, or other applicable law.

74.     Except for the sale of inventory in the ordinary course of Debtors' business and as may be provided for in the Budget and consistent with the terms of the DIP Agreement, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any of the Collateral, without the prior written consent of the Agent and/or an Order of the Court, after notice and hearing, approving such disposition.

75.     All post-petition advances under the DIP Agreement are made in reliance on this Financing Order and so long as such advances and the Pre-Petition Claims remain unpaid and any Letters of Credit remain outstanding, there shall not at any time be entered in any Debtor's Case any other order that, except as consented to by the Agent, (a) authorizes the use of Cash Collateral or the sale, lease, or other disposition of the Collateral unless (1) the cash proceeds will satisfy the obligations under the DIP Facility in full and (2) the Letters of Credit will be cancelled and/or replaced on terms and conditions satisfactory to the applicable issuing Pre-Petition Lender, (b) authorizes the obtaining of credit or the incurring of indebtedness secured by

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                     Page 31 of 41

Dallas 1551873v.1

a lien or security interest in property in which the Lenders hold or assert liens or security interests, or (c) grants to any claim a priority administrative claim status that is equal or superior to the superpriority status granted to the Lenders herein.

76.     The terms hereunder and under the DIP Facility Documents, the security interests and liens granted to the Lenders under this Financing Order, and the rights of the Agent and the Lenders pursuant to this Financing Order with respect to the Collateral, and treatment of the Pre-Petition Claims shall not be altered, modified, extended, impaired, or affected by any plan of reorganization of any Debtor without the prior written approval of the Agent.

77.     The terms and provisions of this Financing Order and any actions taken pursuant hereto shall survive entry of any order that may be entered converting to chapter 7 or dismissing a Debtor's Case, except for the Debtors' authority to use Cash Collateral and any obligations of the Agent or Post-Petition Lenders under the DIP Facility Documents (all of which shall immediately terminate upon entry of such an order).  The terms and provisions of this Financing Order, as well as the priorities in payment, liens, and security interests granted pursuant to this Financing Order and the DIP Facility Documents, shall continue in these or any superseding cases under the Bankruptcy Code of the Debtors, and such priorities in payment, liens, and security interests shall maintain their priority as provided by this Financing Order until the Pre-Petition Claims and the DIP Facility are indefeasibly paid and satisfied in full by their terms and discharged and the Agent and Lenders shall have no further obligation or financial accommodation to the Debtors.

78.     The provisions of this Financing Order shall inure to the benefit of the Debtors, the Lenders, and the Agent, and they shall be binding upon (a) the Debtors and their respective successors and assigns, including any trustees or other fiduciaries hereafter appointed as legal

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                          Page 32 of 41

Dallas 1551873v.1

representatives of any Debtor or with respect to property of the estate of any Debtor, whether under chapter 11 of the Bankruptcy Code, any confirmed plan, or any subsequent chapter 7 case, and (b) all creditors of the Debtors and other parties in interest.

79.     If any or all of the provisions of this Financing Order are hereafter modified, vacated, or stayed without the prior written agreement of the Agent, such modification, vacation, or stay shall not affect (a) the validity of any obligation, indebtedness or liability incurred by the Debtors to the Agent or any Lender before the effective date of such modification, vacation, or stay or (b) the validity or enforceability of any security interest, lien, priority or other protection authorized, created, or confirmed hereby or pursuant to the DIP Facility Documents. Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations, or liabilities incurred by the Debtors to the Agent or any Lender before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Financing Order, and the Agent and the Lenders shall be entitled to all the rights, remedies, privileges, and benefits granted herein and pursuant to the DIP Facility Documents with respect to all such indebtedness, obligations, or liabilities.

80.     To the extent the terms and conditions of the DIP Agreement are in conflict with the terms and conditions of this Financing Order, the terms and conditions of this Financing Order shall control.

81.     No approval, agreement, or consent requested of the Lenders or Agent by the Debtors pursuant to the terms of this Financing Order or otherwise shall be inferred from any action, inaction, or acquiescence of the Lenders or Agent other than a writing acceptable to the Agent that is signed by the Agent and expressly shows such approval, agreement or consent,

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                Page 33 of 41

Dallas 1551873v.1

without limitation. Nothing herein shall in any way affect the rights of the Agent or Lenders as to any non-Debtor entity, without limitation.

82.     Nothing herein shall be deemed or construed to waive, limit, or modify the rights of the Agent or the Lenders to obtain further adequate protection and other statutory protections for the use of the Collateral and Cash Collateral, or to seek other relief in these Cases in accordance with any provision of the Bankruptcy Code or applicable law, and all of the Debtors' rights to contest any such requests are preserved.

83.     Unless expressly and specifically provided otherwise herein, nothing herein shall be deemed or construed to waive, limit, modify or prejudice the claims, rights, protections, privileges and defenses of the Agent and Lenders afforded pursuant to Title 11 of the United States Code including, without limitation, those claims, rights, protections, privileges and defenses afforded the Agent and Lenders pursuant to Bankruptcy Code §§ 361, 363, 506, 507, 546, 547, 548, 549, 550, 553, 555, 556, 559, 560, 561 and 562.

84.     This Financing Order, and the findings of fact and conclusions of law contained herein, shall be effective upon signature by the Court, and may be relied upon by the Lenders, the Agent, and the Debtors without the necessity of entry into the docket sheet of these Cases. To the extent any findings may constitute conclusions, and vice versa, they are hereby deemed as such.

85.     This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the United States Bankruptcy Court under the Bankruptcy Code, to enforce the terms of this Financing Order and to adjudicate any and all disputes in connection therewith.

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 34 of 41

Dallas 1551873v.1

86.     All headings in this Financing Order are descriptive and for reference only, and do not have separate meaning or change any terms therein.

## RESERVATION OF RIGHTS OF PARTIES IN INTEREST/DEADLINE TO ACT

87.     Parties-in-interest (other than the Debtors) shall have seventy-five (75) days from the date of entry of this Financing Order (or, in the case of the official committee of unsecured creditors of the Debtors, if appointed, sixty (60) days from the date of appointment of such committee) to file a motion seeking authority from the Court to file a complaint pursuant to Bankruptcy Rule 7001 asserting a claim or cause of action arising out of the Pre-Petition Claim Documents, or otherwise challenging the extent, priority, validity, perfection, amount, or allowability of the Pre-Petition Lenders' claims or security interests, arising out of or related to the Pre-Petition Claim Documents or the transactions related thereto. Such motion, if filed, shall be set on the Court's docket on an expedited basis, diligently pursued by such party in interest or committee, as applicable, and if granted and not stayed upon appeal, be followed by the filing of such a complaint under Bankruptcy Rule 7001 within fifteen (15) days of the entry of an order approving such motion.

88.     Otherwise, if no action is commenced or pursued in accordance with the immediately preceding paragraph, all of the Debtors' waivers, releases, stipulations, and affirmations of the priority, extent, and validity of the Lenders' claims and interests, of any nature, as contained in the Pre-Petition Claim Documents or otherwise incorporated or set forth in this Financing Order shall be of full force and effect and forever binding upon the Debtors' bankruptcy estates and all parties-in-interest of these Cases.

## WAIVER OF CLAIMS

89.     THE DEBTORS (IN THEIR OWN RIGHT AND, SUBJECT TO THE RESERVATION OF RIGHTS OF PARTIES IN INTEREST/DEADLINE TO ACT SECTION

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 35 of 41

Dallas 1551873v.1

IMMEDIATELY ABOVE, ON BEHALF OF THEIR RESPECTIVE ESTATES, REPRESENTATIVES, DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND THEIR SUCCESSORS AND ASSIGNS, IN EACH CASE TO THE EXTENT PERMITTED BY APPLICABLE LAW) (COLLECTIVELY, THE "RELEASING PARTIES") HEREBY RELEASE, ACQUIT, FOREVER DISCHARGE AND COVENANT NOT TO SUE EACH AND EVERY LENDER AND THE AGENT AND EACH AND EVERY LENDER'S OR THE AGENT'S REPRESENTATIVES, DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND ITS SUCCESSORS AND ASSIGNS (THE "RELEASED PARTIES") FROM ANY AND ALL ACTS AND OMISSIONS OF THE RELEASED PARTIES, AND FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, AVOIDANCE ACTIONS, COUNTERCLAIMS, DEMANDS, CONTROVERSIES, COSTS, DEBTS, SUMS OF MONEY, ACCOUNTS, RECKONINGS, BONDS, BILLS, DAMAGES, OBLIGATIONS, LIABILITIES, OBJECTIONS, LEGAL PROCEEDINGS, EQUITABLE PROCEEDINGS, AND EXECUTIONS OF ANY NATURE, TYPE, OR DESCRIPTION WHICH THE RELEASING PARTIES HAVE OR MAY COME TO HAVE AGAINST THE RELEASED PARTIES THROUGH THE DATE OF THIS ORDER, TO THE EXTENT SUCH CLAIMS RELATE TO OR ARISE OUT OF THE DIP FACILITY OR THE PRE-PETITION CLAIMS OR THE MATTERS, TRANSACTIONS OR DOCUMENTS RELATED HERETO OR THERETO, AT LAW OR IN EQUITY, BY STATUTE OR COMMON LAW, IN CONTRACT, IN TORT, INCLUDING BANKRUPTCY CODE CHAPTER 5 CAUSES OF ACTION, WHETHER THE LAW OF THE UNITED STATES OR ANY OTHER COUNTRY, UNION, ORGANIZATION OF FOREIGN COUNTRIES OR OTHERWISE, KNOWN OR

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS          Page 36 of 41

Dallas 1551873v.1

UNKNOWN, SUSPECTED OR UNSUSPECTED, BUT EXCLUDING OBLIGATIONS UNDER THE DIP FACILITY ARISING AFTER THE DATE OF THIS FINANCING ORDER (COLLECTIVELY, THE "RELEASED CLAIMS"). THIS PARAGRAPH IS IN ADDITION TO AND SHALL NOT IN ANY WAY LIMIT ANY OTHER RELEASE, COVENANT NOT TO SUE, OR WAIVER BY THE RELEASING PARTIES IN FAVOR OF THE RELEASED PARTIES.

90. NOTWITHSTANDING THE FOREGOING PARAGRAPH 90 OR ANY OTHER PROVISION OF THIS FINANCING ORDER OR THE DIP FACILITY, AND FOR THE AVOIDANCE OF DOUBT, THE LENDERS AND AGENT ACKNOWLEDGE THE DISPUTE THAT FORMS THE BASIS FOR THE CLAIMS NOW PENDING BEFORE THE CIRCUIT COURT FOR THE TENTH JUDICIAL CIRCUIT, TAZEWELL COUNTY, ILLINOIS IN *Aventive Renewable Energy, Inc. v. JP Morgan Securities, Inc. and JP Morgan Chase Bank, N.A.,*case number 08 L 142. NEITHER THE RELEASE IN PARAGRAPH 90 OF THIS FINANCING ORDER NOR ANY OTHER PROVISION OF THIS FINANCING ORDER OR THE DIP FACILITY SHALL BE DEEMED TO RELEASE, PREJUDICE, OR AFFECT IN ANY WAY THE CLAIMS THAT ARE CURRENTLY ALLEGED IN THAT PROCEEDING OR ANY CLAIMS THAT IN THE FUTURE MAY BE ALLEGED IN THAT PROCEEDING, IN AN ARBITRATION PROCEEDING, OR IN A PROCEEDING IN ANY OTHER FORUM, RELATED TO OR BASED UPON IN WHOLE OR PART ON THE CLAIMS THAT ARE CURRENTLY ALLEGED IN THAT PROCEEDING.

91. Notwithstanding any due diligence period granted to other parties in interest herein, as a result of the Debtors' review of the Pre-Petition Claim Documents and the facts related thereto, the Debtors shall have no right to file a complaint pursuant to Bankruptcy Rule

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 37 of 41

Dallas 1551873v.1

7001 or otherwise, or any other pleading asserting a claim or cause of action arising out of or related to the Pre-Petition Claim Documents, the DIP Agreement, or any transactions or dealings related to same.

## NOTICE

92. The Debtors' proposed counsel shall serve this Financing Order on all of the following parties: (a) the Office of the United States Trustee; (b) the attorneys for the Agent; (c) all creditors known to Debtors who have or may assert liens against any Debtor's assets; (d) the United States Internal Revenue Service; (e) the thirty (30) largest unsecured creditors of the Debtors; and (f) all parties in interest who have filed a notice of appearance or upon whom service must be effected under the Federal Rules of Bankruptcy Procedure or the Local Rules of the District of Delaware.

93. Any notice, report, or other document required to be given hereunder may be given by U.S. mail, overnight courier, hand delivery, facsimile or e-mail addressed as follows:

if to the Agent:

Bill W. Handley
Jeff A. Tompkins
JP Morgan Chase Bank, N.A.
2200 Ross Avenue, 9th Floor
Dallas, TX 75201
Mail Code #TX1-2921
Fax: (214) 465-2594
E-mail: bill.w.handley@chase.com;
jeff.a.tompkins@chase.com

with a copy to:

William L. Wallander
Clayton T. Hufft
Vinson & Elkins L.L.P.
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, TX 75201
Fax: (214) 220-7716
E-mail: bwallander@velaw.com;
chufft@velaw.com

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS          Page 38 of 41

Dallas 1551873v.1

if to the Debtors:

Ronald Miller
Aventine Renewable Energy, Inc.
1300 South Second Street
Pekin, IL 61554
Fax:_____
E-mail: ron.miller@aventinerei.com

with a copy to:

Joel A. Waite
Matthew Lunn
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
Fax: (302) 576-3342
E-mail: jwaite@ycst.com;
mlunn@ycst.com

if to the United States Trustee:

## EXPIRATION DATE/MATURITY

94.     The Lenders' consent and Debtors' authority to use Cash Collateral and the Lenders' commitment to provide credit under the DIP Agreement and this Financing Order, subject to the funding and Budget limitations above, shall be effective upon entry of this Financing Order to and including the earlier of: (a) notice of the occurrence of an Event of Default or (b) _____, 2009, at 5:00 p.m (Eastern), at which time all of the Debtors' authority to use Cash Collateral and to obtain credit under the DIP Agreement and this Financing Order shall terminate, as shall the Post-Petition Lenders' obligation to provide the DIP Facility, unless extended by written agreement of the parties hereto, a copy of which shall be promptly filed with this Court by the Debtors (the "Expiration Date").

95.     THIS ORDER IS EFFECTIVE IMMEDIATELY.

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 39 of 41

Dallas 1551873v.1

Dated: _____, 2009
      Wilmington, Delaware

                                   _____

                                   UNITED STATES BANKRUPTCY JUDGE

**INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS**        Page 40 of 41

Dallas 1551873v.1

AGREED TO AND ACCEPTED:

INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH
COLLATERAL, OBTAINING CREDIT SECURED BY SENIOR LIENS,
AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS                    Page 41 of 41

Dallas 1551873v.1

**EXHIBIT 1**
**DIP AMENDMENT**

**Exhibit 1**
Dallas 1551873v.1

## EXHIBIT 2

## BUDGET

**Exhibit 2**
Dallas 1551873v.1