# EXHIBIT A

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549
**FORM 10-K**

[Mark One]

__X__ Annual report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the fiscal year ended December 31, 2008

OR

_____ Transition report pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for the transition period from _____ to _____ .

Commission file number 001-32922

# AVENTINE RENEWABLE ENERGY HOLDINGS, INC.

(Exact name of registrant as specified in its charter)

| Delaware | 05-0569368 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (IRS Employer Identification No.) |

| 120 North Parkway Drive Pekin, Illinois | 61554 |
|---|---|
| (Address of principal executive offices) | (Zip Code) |

(309) 347-9200
(Registrant's Telephone Number, including Area Code)

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class: | Name of exchange on which registered: |
|---|---|
| Common Stock, $0.001 par value | New York Stock Exchange |

Securities registered pursuant to Section 12(g) of the Act: None

Indicate by check mark if the Registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. YES____ NO__X__

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. YES____ NO__X__

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. YES __X__ NO____

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (§229.405 of this chapter) is not contained herein, and will not be contained, to the best of the registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. [ X ]

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer," and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

90% of the existing senior unsecured 10% fixed-rate notes by April 15, 2009 would be an event of default under our secured revolving credit facility.

Even if we are successful with the senior unsecured 10% fixed-rate note exchange offer, we do not expect to have sufficient liquidity to meet anticipated working capital, debt service and other liquidity needs during the current year unless we experience a significant improvement in ethanol margins or obtain other sources of liquidity. Based on the current spread between corn and ethanol prices, the industry is operating at or near breakeven cash margins. We experienced negative gross margins during the second half of 2008 and expect negative gross margins to continue through the first quarter of 2009 due in part to our fixed price obligations to purchase corn and natural gas at above current market prices. The current spread between ethanol and corn prices cannot support the long-term viability of the U.S. ethanol industry in general or us in particular.

In addition, although we suspended construction at both Aurora West and Mt. Vernon during the fourth quarter, we continue to have construction payment obligations to Kiewit. On March 9, 2009, the Company received a notice from Kiewit cancelling the engineering, construction and procurement contracts (EPC) for Aurora West and Mt. Vernon, referencing our failure to make a recent payment under the change order agreements dated December 31, 2008. As a result, all remaining payments due to it and its sub-contractors totaling $24.4 million at February 28, 2009 are due and payable. We are currently engaged in discussions with Kiewit to negotiate a payment schedule that falls within the economic constraints with which we are currently operating. We cannot give you any assurance that we will reach an agreement with Kiewit that works within our existing liquidity constraints.

Because our obligations to Kiewit are past due, the liens securing these obligations violate the terms of our 10% fixed rate notes and constitute a default thereunder. Unless such default is cured through payment, the release of the liens, a negotiated resolution or otherwise, the holders of our 10% fixed rate notes may accelerate the $300 million principal amount thereof upon 60 days notice. In addition, the default under our 10% fixed rate notes constitutes an event of default under our secured revolving credit facility, which is our only current source of liquidity. We have obtained a waiver from the lenders under our secured revolving credit facility until April 15, 2009. Any foreclosure on such liens by Kiewit would constitute an event of default under our amended secured revolving credit facility that is not covered by the waiver.

We remain contractually obligated to complete the suspended plants at Aurora and Mt.Vernon as well as an additional plant at Mt. Vernon capable of producing 110 million gallons of ethanol annually and may incur significant penalties because of our failure to complete these facilities as previously scheduled.

Although we are actively pursuing a number of liquidity alternatives, including seeking additional debt and equity financing and a potential sale of all or part of the company, there can be no assurance we will be successful. If we cannot obtain sufficient liquidity in the very near-term, we may need to seek to restructure under Chapter 11 of the U.S. Bankruptcy Code.

*We are contractually obligated to complete certain capacity expansions in Aurora, Nebraska and Mount Vernon, Indiana. If we fail to complete them in a timely manner, we may be subject to material penalties.*

We are contractually obligated to develop both a 113 million gallon plant adjacent to our Nebraska facility (using commercially reasonable best efforts to obtain a permit for 226 million gallon capacity) and a two-phase 226 million gallon plant in Mount Vernon, Indiana and may incur significant penalties because of our failure to complete these facilities as previously scheduled.

We may be subject to material penalties if we do not timely complete the initial 113 million gallon "phase I" of the Aurora Expansion or either the initial "phase I" or the second 113 million gallon "phase II"

19