## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| AVENTINE RENEWABLE ENERGY | ) |
| HOLDINGS, INC., a Delaware Corporation, et al., | ) Case No. 09-11214 (KG) |
| | ) |
| Debtors.[1] | ) **Re: Docket No. 15** |

### FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), AND 364(e) AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS (A) TO OBTAIN POST-PETITION SECURED FINANCING AND (B) TO UTILIZE CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTIES

Aventine Renewable Energy Holdings, Inc. ("Aventine" and together with the above-captioned debtors, collectively, the "Debtors")[2] having moved on April 8, 2009 (the "Motion") for interim and final orders authorizing it to, among other things, (i) incur postpetition secured indebtedness, (ii) grant security interests and superpriority claims, and (iii) grant adequate protection, pursuant to sections 105(a), 362, 363(c), and 364(c), (d), and (e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and having sought the following relief:

(a)     This Court's authorization, pursuant to Bankruptcy Code sections 105(a), 362, 363(c), and 364(c), (d), and (e) and Bankruptcy Rules 2002, 4001 and 9014, for (i) Aventine Renewable Energy, Inc., (ii) Aventine Renewable Energy – Mt Vernon, LLC, and (iii) Aventine Renewable Energy – Aurora West LLC, in their capacity as borrowers (the "Borrowers"), and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Term Sheet (as defined herein).

for (i) Aventine, (ii) Aventine Renewable Energy, LLC, (iii) Aventine Power, LLC, (iv) each of the Borrowers' domestic subsidiaries, and (v) any other entity who, as of the Petition Date (as defined below), was a party to the Credit Agreement (as defined below) as a guarantor thereunder, each in their capacity as guarantors (the "Guarantors"), to enter into a debtor in possession financing arrangement pursuant to the terms and conditions of that certain Debtor In Possession Credit Facility Term Sheet (as amended, restated or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Term Sheet"), a copy of which is attached hereto as Exhibit A, with Whitebox Advisors, as administrative agent (the "DIP Agent"), and the investment funds party thereto as lenders, (collectively, the "DIP Lenders"), to obtain a two-draw term loan credit facility in an aggregate principal amount not to exceed $30,000,000 available for the making of term loans by the DIP Lenders to the Borrowers (the "DIP Facility" and, the loans under such facility, the "DIP Loans") on the terms and conditions of the DIP Term Sheet (together with the Interim Order (as defined below), this Final Order (as defined below) and any and all documents, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, as may be amended hereafter from time to time, collectively, the "DIP Facility Documents");

(b)     This Court's ordering, pursuant to Bankruptcy Code sections 364(c)(1), (2), (3), and 364(d), that the obligations of the Debtors under the DIP Facility Documents (collectively, the "DIP Obligations") are, as more specifically set forth in the Interim Order and this Final Order:

i.     granted superpriority administrative claim status under Bankruptcy Code section 364(c)(1), having priority over any and all administrative expenses of any kind or nature, including, without limitation, the kinds specified in or arising or ordered under Bankruptcy Code sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113, and 1114, subject and subordinate only to, upon the occurrence and during the continuance of an Event of Default, the payment of the Carve-Out (as defined below) on the terms and conditions set forth herein;

ii.    secured under Bankruptcy Code sections 364(c)(2), 364(c)(3), and 364(d)(1) by valid, enforceable, non-avoidable and fully perfected, first priority priming liens on and senior security interests in all of the property, assets and other interests in property and assets of the Debtors, and all other "property of the estate" (within the meaning of the Bankruptcy Code) of the Debtors, of any kind or nature whatsoever, real or personal, tangible, intangible or mixed, now existing or hereafter acquired or created, subject and subordinate only to (A) the Permitted Priority Liens and (B) the Carve-Out on the terms and conditions set forth herein;

(c)    This Court's approval pursuant to Bankruptcy Code sections 363 and 364 of the form and manner of adequate protection set forth herein to be provided to the Prepetition Lenders;

(d)    This Court's scheduling of an interim hearing (the "Interim Hearing") pursuant to Bankruptcy Rule 4001(c)(2) to consider the entry of an interim order (the "Interim Order") which, among other things, (i) approves, on an interim basis, the postpetition secured financing to be made pursuant to the DIP Facility Documents, (ii) authorizes the Debtors to obtain a DIP Loan on an interim basis in accordance with the DIP Facility Documents and following the entry of this Interim Order, in the aggregate principal amount of up to $15,000,000 (the "Interim Borrowing"), and (iii) grants adequate protection to the Prepetition Agent for the benefit of itself and the Prepetition Lenders, as provided in the Interim Order;

(e)    This Court's scheduling, pursuant to Bankruptcy Rule 4001(c)(2), of a hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") which, among other things, (i) approves, on a final basis, the DIP Facility Documents, (ii) authorizes, on a final basis, the DIP Loans to be made pursuant to the DIP Facility Documents in an aggregate principal amount of up to $30,000,000, the availability of which shall be limited pursuant to the budget attached hereto as Exhibit B (the "Approved Budget") and the variances from such Approved Budget permitted herein, and (iii) grants, on a final basis, adequate protection to the Prepetition Agent for the benefit of itself and the Prepetition Lenders as provided in this Final Order;

(f)     This Court's finding, pursuant to Bankruptcy Rules 2002 and 4001(c)(1), and the Local Rules of this Court that notice of the Final Hearing was sufficient having been given to (i) the United States Trustee (the "U.S. Trustee"), (ii) counsel to the DIP Lenders, (iii) counsel to any known secured creditors of record, (iv) counsel to the Prepetition Agent, (v) the thirty (30) largest unsecured creditors of the Debtors, (vi) any party asserting a lien against any of the Debtors' assets, (vii) the Internal Revenue Service and (viii) counsel to the official committee of unsecured creditors appointed in these Chapter 11 Cases (the "Committee" and collectively, the "Notice Parties"); and such notice being sufficient and adequate, and no other or further notice being required; and

(g)     The Interim Hearing having been held on April 14, 2009; and this Court having entered the Interim Order of April 14, 2009 [Docket No. 65] authorizing the Debtors to obtain a DIP Loan in the amount of the Interim Borrowing and scheduling the Final Hearing to consider entry of an order authorizing the balance of the amount set forth in the DIP Facility; and the Final Hearing having been held on May 5, 2009; and based upon all of the pleadings filed with this Court, the evidence presented at the Interim Hearing, the Final Hearing and the entire record herein; and this Court having heard and resolved or overruled all objections to the relief requested in the Motion; and this Court having noted the appearances of all parties in interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and their creditors; and after due deliberation and consideration, and sufficient cause appearing therefor:

**IT IS HEREBY FOUND:**[3]

A.     Petition Date. On April 7, 2009 (the "Petition Date"), the Debtors commenced their Chapter 11 Cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052

managing their affairs as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in the Chapter 11 Cases.

B.     Jurisdiction; Venue. This Court has jurisdiction over the Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. §§157(b)(2)(D) and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D). Venue for the Chapter 11 Cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409.

C.     Prepetition Loan Documents. Certain of the Debtors are borrowers under that certain Credit Agreement, dated as of March 23, 2007 (as amended, the "Credit Agreement"), by and between (i) Aventine Renewable Energy, Inc., (ii) Aventine Renewable Energy – Mt Vernon, LLC, and (iii) Aventine Renewable Energy – Aurora West LLC as Borrowers, certain other loan parties thereto, the Prepetition Lenders (as defined below) and JPMorgan Chase Bank, N.A., as administrative agent (the "Prepetition Agent") for certain lenders under the Credit Agreement (the "Prepetition Lenders"). Pursuant to the Credit Agreement and all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, instruments, amendments, and any other agreements delivered pursuant thereto or in connection therewith (collectively with the Credit Agreement, the "Prepetition Loan Documents"), the Prepetition Lenders provided the Debtors with a revolving credit facility up to the aggregate principal amount of $200,000,000, a letter of credit sub-facility up to the aggregate face amount of $25,000,000 and a swingline loan sub-facility of up to the aggregate principal amount of $25,000,000. The original Credit Agreement was amended on March 10, 2009.

D.     Prepetition Indebtedness. For purposes of this Final Order, (i) the term "Prepetition Lender Debt" shall mean all indebtedness and other amounts owed, as of the Petition Date, to the Prepetition Lenders under the Prepetition Loan Documents, including, without limitation, all Obligations (as defined in the Credit Agreement).

E.     Prepetition Liens. To secure the Prepetition Lender Debt under the Prepetition Loan Documents, the Prepetition Lenders assert that the Debtors granted the Prepetition Lenders liens and security interests (the "Prepetition Lender Liens") upon and in

substantially all of the Debtors' property and assets, as and to the extent set forth in the Credit Agreement and the ancillary documents thereto (the "Prepetition Collateral").

F.     Debtors' Stipulations.  In requesting postpetition financing under the DIP Facility Documents, the Debtors acknowledge, represent, stipulate, and agree that:

(i)     in entering into the DIP Facility Documents, and as consideration therefor, the Debtors hereby agree that until such time as all DIP Obligations are indefeasibly paid in full in cash and the commitments related thereto are terminated in accordance with the terms of the DIP Facility Documents, the Debtors shall not in any way grant, seek to grant, or cause to be granted any lien and/or claim that is senior to or *pari passu* with any of the liens, security interests and claims provided under the Interim Order or this Final Order to the DIP Agent or the DIP Lenders, including, without limitation, by offering a subsequent lender or any other party a superior or *pari passu* lien or claim pursuant to Bankruptcy Code section 364(d), or otherwise, except with respect to Permitted Priority Liens and the Carve-Out;

(ii)     neither the DIP Agent nor the DIP Lenders are or shall be deemed to be control persons or insiders of the Debtors by virtue of any of the actions taken by such parties in respect of or in connection with the DIP Obligations;

(iii)     as of the Petition Date, the Debtors have not brought, and are not aware of, any claims or causes of action belonging to the Debtors that exist or are likely to arise against the DIP Agent or the DIP Lenders; and

(iv)     as of the Petition Date, there were no other liens on or security interests in the Prepetition Collateral except for the Prepetition Lender Liens and the Permitted Priority Liens.

G.     Cash Collateral.  For purposes of this Final Order, the term "Cash Collateral" shall mean and include all "cash collateral," as defined in Bankruptcy Code section 363, in which the DIP Agent, the DIP Lenders, the Prepetition Agent and/or the Prepetition Lenders, as applicable, have a lien, security interest or other interest (including, without

limitation, any adequate protection liens or security interests), in each case whether existing on the Petition Date, arising pursuant to the Interim Order, this Final Order or otherwise.

H.    Purpose and Necessity of Financing. The Debtors require the financing described in the Motion to fund, among other things, ongoing working capital requirements of the Debtors consistent with the terms set forth in the DIP Facility Documents, and for other purposes permitted by the DIP Facility Documents. If the Debtors do not obtain authorization to borrow under the DIP Facility Documents and the DIP Loans are not approved, the Debtors will suffer immediate and irreparable harm. The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under Bankruptcy Code section 503, or other financing under Bankruptcy Code sections 364(c) or (d), on equal or more favorable terms than those set forth in the DIP Facility Documents based on the totality of the circumstances. Moreover, a loan facility in the amount provided by the DIP Facility Documents is not available to the Debtors without granting the DIP Agent, for the benefit of the DIP Lenders, superpriority claims, priming liens, and security interests, pursuant to Bankruptcy Code sections 364(c)(1), (2), (3) and 364(d), as provided in the Interim Order, this Final Order and the DIP Facility Documents. After considering all alternatives, the Debtors have concluded, in the exercise of their prudent business judgment, that the credit facility provided under the DIP Facility Documents represents the best financing package available to it and is in the best interests of the estate and its creditors. The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and adequately protect any non-consenting parties' interests in the Prepetition Collateral.

I.    Use of Cash Collateral. The Debtors also require the use of Cash Collateral to operate their businesses. Without the use of Cash Collateral, the Debtors will not be able to meet their cash requirements for working capital needs. The DIP Agent does not consent to the use of Cash Collateral except on the terms and conditions, and for the purposes, specified herein and in the DIP Facility Documents. The adequate protection provided herein and other

benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and adequately protect any non-consenting parties' interests in the Prepetition Collateral.

J.  Good Cause. The ability of the Debtors to obtain sufficient working capital and liquidity and use of Cash Collateral under the Interim Order, this Final Order and the DIP Facility Documents is vital to the Debtors' estates and creditors. The liquidity to be provided under the DIP Facility Documents and through the use of the Cash Collateral will enable the Debtors to continue to operate their business in the ordinary course and preserve the value of the Debtors' business. The Debtors' estates will be immediately and irreparably harmed if this Final Order is not entered. Good cause has, therefore, been shown for the relief sought in the Motion.

K.  Good Faith. The DIP Facility Documents have been negotiated in good faith and at arm's-length by and among the Debtors, the DIP Agent and the DIP Lenders. The DIP Facility and/or other financial accommodations made to the Debtors by the DIP Agent and the DIP Lenders pursuant to the Interim Order, this Final Order and/or the DIP Facility Documents shall be deemed to have been extended by the DIP Agent and the DIP Lenders in good faith, as that term is used in Bankruptcy Code section 364(e), and the DIP Agent and the DIP Lenders shall be entitled to all protections afforded thereunder, including, without limitation, the full protection of Bankruptcy Code section 364(e) in the event that the Interim Order, this Final Order or any provision thereof is vacated, reversed or modified, on appeal or otherwise. The terms of the DIP Facility Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

L.  Consideration. The Debtors will receive and have received fair and reasonable consideration in exchange for access to the DIP Loans, the use of Cash Collateral, and all other financial accommodations provided under the DIP Facility Documents, the Interim Order and this Final Order.

M.     Notice. Sufficient and adequate notice of the Final Hearing and the entry of this Final Order has been given in accordance with Bankruptcy Rule 4001, and no other or further notice need be given for entry of this Final Order.

N.     Immediate Entry of Final Order. The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). The Motion and this Final Order comply with Local Bankruptcy Rule 4001-2. The permission granted herein to enter into the DIP Facility Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Final Order is in the best interests of the Debtors' estate and creditors as its implementation will, among other things, allow for access to the financing necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing business and further enhance the Debtors' prospects for a successful restructuring. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED:**

1.     Disposition. The Motion is granted on a final basis, subject to the terms set forth herein. Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled on their merits. This Final Order shall be valid, binding on all parties-in-interest, and fully effective immediately upon entry notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014. The terms and provisions of the DIP Facility Documents are approved on a final basis.

2.     Authorization.

(a)     The Debtors are hereby authorized to immediately obtain DIP Loans, pursuant to the terms of this Final Order and subject to the terms of the DIP Facility Documents. Available financing and advances under the DIP Term Sheet shall be made to fund, in accordance with the DIP Facility Documents, (i) the working capital and general corporate needs

of the Debtors and the costs of the Chapter 11 Cases in accordance with the Approved Budget (and the variances permitted thereto), and (ii) provide adequate protection, in accordance with the terms of the DIP Term Sheet as modified and otherwise set forth herein, to the Prepetition Agent for the benefit of itself and the Prepetition Lenders.

(b)     Subject to the terms of this Final Order and the DIP Facility Documents, the Debtors are authorized to use Cash Collateral in which the DIP Agent, the DIP Lenders, the Prepetition Agent and/or the Prepetition Lenders may have an interest, in accordance with the terms, conditions, and limitations set forth in this Final Order and/or the DIP Facility Documents, without further approval by this Court. The Prepetition Lenders are directed promptly to turn over to the Debtors as directed by the Debtors, all Cash Collateral received or held by them; provided that the Prepetition Lenders are granted the adequate protection as hereinafter set forth. Any dispute in connection with the use of Cash Collateral in accordance with the DIP Facility Documents, the Interim Order and this Final Order shall be heard by this Court.

3.     Authority to Execute and Deliver Necessary Documents.

(a)     The Debtors are authorized to negotiate, prepare, enter into, and deliver the DIP Facility Documents, in each case including any amendments thereto. The Debtors are further authorized and directed to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security agreements, and mortgages or deeds of trust encumbering all of the Collateral and securing all of the Debtors' obligations under the DIP Facility Documents, including payment of all DIP Obligations in cash that are requested by the DIP Agent.

(b)     The Debtors are hereby further authorized to (i) perform all of their obligations under the DIP Facility Documents, and such other agreements as may be required by the DIP Facility Documents to give effect to the terms of the financing provided for therein and in this Final Order, and (ii) perform all acts required under the DIP Facility Documents and this Final Order, including, without limitation, the payment of fees, and the reimbursement of present and future costs and expenses (including without limitation, the DIP Agent's and DIP Lenders'

attorneys' and other advisors' fees and expenses), paid or incurred by the DIP Agent or DIP Lenders as provided for in this Final Order and the DIP Facility Documents. All such unpaid fees, commissions, costs, and other expenses shall be included and constitute part of the principal amount of the DIP Obligations and be secured by the Postpetition Liens.

(c) All obligations under the DIP Facility Documents shall constitute valid and binding obligations of the Debtors, enforceable against them and their successors and assigns (including, without limitation, any successor trustee or other estate representative in the Chapter 11 Cases or subsequent or superseding chapter 7 or Chapter 11 Cases (each, a "Successor Case")), in accordance with the terms of the DIP Facility Documents and the terms of the Interim Order and this Final Order. No obligation, payment, transfer or grant of security under the DIP Facility Documents, the Interim Order or this Final Order shall be voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under Bankruptcy Code section 502(d)) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4. DIP Lenders' Superpriority Claim. The DIP Agent, for the benefit of itself and the DIP Lenders, was granted upon entry of the Interim Order an allowed superpriority administrative expense claim (the "Superpriority Claim") pursuant to Bankruptcy Code section 364(c)(1) for all DIP Obligations, having priority over any and all other administrative claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under Bankruptcy Code sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726, 1113, and 1114 or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof (excluding any proceeds or property recovered in connection with the pursuit of

claims or causes of action arising under chapter 5 of the Bankruptcy Code, if any (the "Avoidance Actions")); provided that the Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to the payment of the Carve-Out. Except as set forth herein, no other superpriority claims shall be granted or allowed in the Chapter 11 Cases.

5. **DIP Agent's Lien Priority.**

(a) To secure the DIP Obligations, the DIP Agent was granted, upon entry of the Interim Order, for the benefit of itself and the DIP Lenders, valid, enforceable, non-avoidable and fully perfected, first priority priming liens on and senior security interests (collectively, the "Postpetition Liens") in all Prepetition Collateral, all of the other property, assets and interests in property and assets of the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or Successor Case), and all "property of the estate" (within the meaning of the Bankruptcy Code) of the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or Successor Case), of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, including, without limitation, accounts, documents, inventory, equipment, capital stock in subsidiaries, investment property, instruments, chattel paper, commercial tort claims, cash, cash equivalents, securities accounts, deposit accounts, commodity accounts, real estate, leasehold interests, contracts, patents, copyrights, trademarks, causes of action (excluding Avoidance Actions), and other general intangibles, and all products and proceeds thereof (collectively, the "Collateral"), subject and subordinate only to (i) the Permitted Priority Liens and (ii) the Carve-Out.

(b) The Postpetition Liens shall not at any time be (i) made subject or subordinate to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under Bankruptcy Code sections 363 or 364(d) or otherwise, other than the Permitted Priority Liens and the Carve-Out or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estate under Bankruptcy Code section 551.

(c)     Upon entry of the Interim Order, the Postpetition Liens were deemed fully perfected liens and security interests, effective and perfected without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements or other agreements or instruments, such that no additional steps need be taken by the DIP Agent or the DIP Lenders to perfect such interests. Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors or other parties in order for the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other Collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the transactions granting the DIP Agent, for the benefit of itself and the DIP Lenders, the Postpetition Liens on such fee, leasehold or other interest or other Collateral or the proceeds of any assignment, sale or other transfer thereof.

(d)     The Postpetition Liens, Superpriority Claim, and other rights and remedies granted under this Final Order to the DIP Agent, for the benefit of the DIP Lenders, shall continue in the Chapter 11 Cases and in any Successor Case, and such liens and security interests shall maintain their first priority as provided in this Final Order until all the DIP Obligations have been indefeasibly paid in full in cash and completely satisfied and the DIP Lenders' commitments have been terminated in accordance with the DIP Facility Documents.

(e)     The Debtors (and/or their legal and financial advisors) will (i) maintain books, records and accounts to the extent and as required by the DIP Facility Documents, (ii) cooperate, consult with, and provide to the DIP Agent and DIP Lenders all such information as required or allowed under the DIP Facility Documents, the provisions of the Interim Order, this Final Order or that is afforded to any official committee appointed in the Chapter 11 Cases and/or such committee's respective legal or financial advisors, (iii) permit representatives of the DIP Agent and DIP Lenders such rights to visit and inspect any of their respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct

a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as and to the extent required by the DIP Facility Documents, (iv) permit representatives of the DIP Agent and the DIP Lenders to consult with the Debtors' management on matters concerning the general status of the Debtors' business, financial condition and operations as and to the extent required by the DIP Facility Documents, and (v) provide to the DIP Agent and the DIP Lenders all such information provided to the Prepetition Agent and Prepetition Lenders during the Chapter 11 Cases.

6. <u>Fees</u>. All fees, costs and/or expenses payable or reimbursable by the Debtors as set forth in the DIP Facility Documents are hereby approved. The Debtors are hereby authorized to pay all such fees, costs, and expenses in accordance with the terms of the DIP Facility Documents and this Final Order, without the DIP Agent, the DIP Lenders or their respective counsel having to file any further application with this Court for approval or payment of such fees, costs or expenses. Any such fees, costs and expenses incurred by professionals retained by the DIP Agent and DIP Lenders shall be paid within ten (10) calendar days of delivery of a summary invoice to the Debtors, with a copy to the U.S. Trustee and any official committee appointed in these cases; <u>provided</u>, <u>however</u>, that if the Debtors, U.S. Trustee or any official committee objects to the reasonableness of such fees and expenses and cannot resolve the objection within five (5) business days of service of such invoice(s), the Debtors, U.S. Trustee or any official committee, as the case may be, shall file and serve upon such professional an objection with the Court (the "<u>Fee Objection</u>") limited to the issue of the reasonableness of the disputed fees and expenses; <u>provided, further</u>, that the Debtors shall timely pay in accordance with this Final Order the undisputed fees, costs and expenses reflected on any invoice to which a Fee Objection has been timely filed. All such unpaid fees, costs and expenses of the DIP Agent and DIP Lenders, including, without limitation, all fees referred to in the DIP Facility Documents (including, without limitation, all attorneys' and other professionals' fees and

expenses), shall constitute DIP Obligations and shall be secured by the Collateral and afforded all priorities and protections afforded to the DIP Obligations under the Interim Order, this Final Order and the DIP Facility Documents.

7.    Mandatory Repayments. 100% of the net proceeds from any and all assets sales (other than sales of inventory in the ordinary course of the Debtors' business), insurance and condemnation proceeds (unless the Debtors promptly inform the DIP Agent that such proceeds are to be used by the Debtors to repair or replace damaged property, and are in fact so used within sixty (60) calendar days of receipt), and other extraordinary receipts (other than tax refunds, the receipt of which is anticipated in the Approved Budget) shall be applied to repay outstanding DIP Loans.

8.    Amendments, Consents, Waivers, and Modifications. The Debtors, with the express written consent of the Required DIP Lenders, may enter into any non-material amendments, consents, waivers or modifications to the DIP Facility Documents without the need for further notice and hearing or any order of this Court; provided, however, that (a) amendments and waivers that affect the rights, obligations or duties of the DIP Agent shall also require the consent of the DIP Agent, and (b) without the consent of each DIP Lender, no such amendment or waiver shall (i) increase the lending commitment of any DIP Lender, (ii) reduce the amount of any payment of principal, interest or fees required thereunder (other than any mandatory prepayment), (iii) postpone the date of any scheduled payment thereunder, (iv) release all or substantially all of the Collateral or release any Debtor from any of its obligations in respect of the DIP Facility, or (v) amend the provisions of the DIP Facility Documents with respect to foregoing or the definition of "Required DIP Lenders"; provided, further, however, that the Debtors shall provide the U.S. Trustee and the respective counsel to the Prepetition Agent and the Committee with notice of any non-material modification to the DIP Facility Documents.

9.    Termination of Postpetition Credit and Cash Collateral Usage. Notwithstanding anything in the Interim Order or this Final Order to the contrary, the DIP Lenders' obligation to make DIP Loans in accordance with the DIP Facility Documents and the DIP Agent's consent to

the use of Cash Collateral shall automatically terminate without any further action by this Court or the DIP Agent or DIP Lenders, upon the earliest to occur of: (i) one year after the commencement of the chapter 11 cases, (ii) the consummation of a sale of substantially all of the assets of the Debtors approved by the Required DIP Lenders, (iii) the effective date of a plan of reorganization in respect of a Debtor in the Chapter 11 Cases, (iv) the date the DIP Loans become due and payable, whether at stated maturity, upon an event of default or otherwise, (v) the expiration of the Approved Budget, (vi) the acceptance by a Debtor of any offer or bid for the purchase of all or substantially all of the assets of a Debtor or all of the equity of a reorganized Debtor which is unacceptable to the Required DIP Lenders, unless the proceeds of such offer or bid are deemed sufficient, in the discretion of the DIP Lenders, to pay in full in cash the DIP Obligations, or (vii) the date on which any Debtor files a motion with the Bankruptcy Court for authority to proceed with the sale or liquidation of a Debtor (or any material portion of the assets of a Debtor), unless the proceeds of such sale or liquidation are deemed sufficient, in the discretion of the DIP Lenders, to pay in full in cash the DIP Obligations (the "<u>Termination Date</u>").

      10.    <u>Adequate Protection for Prepetition Lenders</u>. The Debtors have requested that the Prepetition Lenders consent to (which they have not), among other things, (i) the Debtors' use of Cash Collateral and the other Prepetition Collateral proceeds, and (ii) the incurrence of the DIP Obligations by the Borrower under the DIP Facility Documents and the Debtors' granting of priming liens in connection therewith. The Debtors acknowledge and stipulate that the Prepetition Lenders are entitled, pursuant to Bankruptcy Code sections 361, 363(e), and 364(d)(1), to adequate protection of their interests in the Prepetition Collateral, including the Cash Collateral, in exchange for the Debtors' use of such Prepetition Collateral, including to the extent of the aggregate diminution in value, if any, of the Prepetition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition Collateral, and the priming of the Prepetition Agent's security interests and liens in the Prepetition Collateral by the

Postpetition Liens being granted to the DIP Agent and the DIP Lenders pursuant to the DIP Facility Documents, the Interim Order and this Final Order, as applicable. As adequate protection, the Prepetition Agent on behalf of the Prepetition Lenders is hereby granted the protections described in clauses (a) through (c) below, which shall be referred to collectively as the "Adequate Protection Obligations"):

(a)     Adequate Protection Liens.  Pursuant to Bankruptcy Code sections 361, 363(c) and 364(d), as adequate protection of the interests of the Prepetition Lenders in the Prepetition Collateral against any diminution in value of such interests in the Prepetition Collateral on account of (i) depreciation, physical deterioration, use, sale, loss, or decline in market value, (ii) the granting of the Postpetition Liens, (iii) the Debtors' use of Cash Collateral and other Prepetition Collateral, and (iv) the imposition of the automatic stay, the Debtors hereby grant to the Prepetition Agent on behalf of the Prepetition Lenders, continuing valid, binding, enforceable and perfected postpetition security interests in and liens on the Collateral (the "Replacement Liens").  The Replacement Liens shall be junior in priority only to: (i) Permitted Priority Liens; (ii) the Carve-Out; (iii) the Postpetition Liens; and (iv) the Prepetition Liens on the Prepetition Collateral.  The Replacement Liens shall be senior to all other security interests in, liens on, or claims against any of the Collateral.

(b)     Adequate Protection Claim.  As further adequate protection of the interests of the Prepetition Lenders in the Prepetition Collateral against any diminution in value of such interests in the Prepetition Collateral on account of (i) depreciation, physical deterioration, use, sale, loss, or decline in market value, (ii) the granting of the Postpetition Liens, (iii) the Debtors' use of Cash Collateral and other Prepetition Collateral, and (iv) the imposition of the automatic stay, the Prepetition Agent on behalf of the Prepetition Lenders is hereby granted as and to the extent provided by Bankruptcy Code section 507(b) an allowed superpriority administrative expense claim in the Chapter 11 Cases and any Successor Case (the "Adequate Protection Priority Claim").  Except as set forth herein, the Adequate Protection Priority Claim shall have priority over all administrative expense claims and unsecured claims against the Debtors or their

estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 or otherwise whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof (including, without limitation, any proceeds or property recovered in connection with Avoidance Actions, if any); provided, however, that the Adequate Protection Priority Claim shall be junior in priority to the Superpriority Claim (other than with respect to proceeds of Avoidance Actions), the Postpetition Liens and the Carve-Out.

(c)     Interest; Reporting.  As additional adequate protection for the use of the Prepetition Collateral (including Cash Collateral) by the Debtors, and in accordance with Bankruptcy Code sections 361, 363(e), and 364(d), the Prepetition Agent on behalf of the Prepetition Lenders shall receive, as applicable, from the Debtors (i) the payment of adequate protection payments in an amount equal to interest (and letter of credit fees) on the Prepetition Lender Debt at the default contractual rate until such time as the Prepetition Lender Debt is paid in full, (ii) the same documentation and reports provided by the Debtors to the DIP Agent and DIP Lenders pursuant to the terms of the DIP Term Sheet, the Interim Order and/or this Final Order, (iii) weekly borrowing base calculations (consistent with past practices), (iv) a weekly crush margin calculation (in a form to be reasonably agreed upon by the Debtors and the Prepetition Agent), (v) access, on a confidential basis, to the Debtors' electronic data room, and (vi) such other reporting that may be agreed to by the Debtors upon the reasonable request of the Prepetition Agent.  The DIP Agent, on behalf of the DIP Lenders, shall receive the same documentation and reports provided by the Debtors to the Prepetition Agent pursuant to the terms of this paragraph.  In addition, the Committee shall receive the same documentation and

reports provided to the DIP Agent ,on behalf of the DIP Lenders, pursuant to the terms of the DIP Term Sheet, the Interim Order and/or this Final Order.

(d) <u>Access to Collateral.</u> The Prepetition Agent and its consultants shall have access, for purposes of conducting a site visit and review of the Debtors' business records, business premises and the Collateral in accordance with past practices between the parties, provided that (i) the Prepetition Agent shall conduct its initial post-petition site review in the month of July 2009, with the right to conduct subsequent site reviews no more often than every three months thereafter (unless otherwise agreed), and (ii) such access shall be upon reasonable advance notice to the Debtors taking into account the other demands placed upon the Debtors and shall be conducted during normal business hours. The Debtors shall reasonably cooperate with the Prepetition Agent regarding such reviews and shall reasonably make their employees and professionals available to the Prepetition Agent and its professionals and consultants to conduct such reviews, all in accordance with prepetition practices.

(e) <u>Prepetition Agent's Professional Fees.</u> As additional adequate protection for the use of the Prepetition Collateral (including Cash Collateral) by the Debtors, the Debtors are hereby authorized and directed to pay, as adequate protection payments and after the application in full of all prepetition retainers (including to prepetition balances), the reasonable post-petition fees and expenses of the Prepetition Agent's primary and local counsel and one financial advisor, to the extent such fees and expenses are otherwise payable under the Prepetition Loan Documents, without such professionals representing the Prepetition Agent having to file any further application with this Court for approval or payment of such fees and expenses, subject to the procedures set forth in this paragraph. Any such fees and expenses that are incurred by such professionals retained by the Prepetition Agent shall be paid within fifteen (15) calendar days of delivery of an invoice, which may be redacted for privilege (the inadvertent disclosure of a privileged item in such invoices by failing to redact shall not be deemed to destroy the privilege with respect thereto), to the Debtors, with a copy to the counsel to the DIP Agent, U.S. Trustee and counsel to the Committee; provided, however, that if the Debtors, DIP

Agent, U.S. Trustee or Committee objects to the reasonableness of such fees and expenses and cannot resolve the objection within ten (10) calendar days of service of such invoice(s), the Debtors, the DIP Agent, U.S. Trustee or Committee, as the case may be, shall file and serve an objection to the disputed fees and expenses; provided, further, that the Debtors shall timely pay in accordance with this Final Order, the undisputed fees and expenses reflected on any invoice to which an objection has been timely filed.

(f) <u>Prepetition Lenders' Professional Fees</u>. As additional adequate protection for the use of the Prepetition Collateral (including Cash Collateral) by the Debtors, the Debtors are hereby authorized and directed to pay, as adequate protection payments, the reasonable pre and post-petition fees and expenses of the Prepetition Lenders' professionals (i) in an amount not to exceed $150,000 in the aggregate for the period through May 5, 2009 and (ii) in an amount not to exceed $25,000 in the aggregate for all such professionals, for each calender month beginning with the month of May 2009 (provided that the amount for May 2009 shall be prorated for the period May 6, 2009 through May 31, 2009), on a cumulative basis, in each case to the extent such fees and expenses are otherwise payable under the Prepetition Loan Documents, without such professionals representing the Prepetition Lenders having to file any further application with this Court for approval or payment of such fees and expenses, subject to the procedures set forth in this paragraph. Any such fees and expenses that are incurred by such professionals retained by the Prepetition Lenders shall be paid within fifteen (15) calendar days of delivery of an invoice, which may be redacted for privilege (the inadvertent disclosure of a privileged item in such invoices by failing to redact shall not be deemed to destroy the privilege with respect thereto), to the Debtors, with a copy to the counsel to the DIP Agent, U.S. Trustee and counsel to the Committee; provided, however, that if the Debtors, DIP Agent, U.S. Trustee or Committee objects to the reasonableness of such fees and expenses and cannot resolve the objection within ten (10) calendar days of service of such invoice(s), the Debtors, the DIP Agent, U.S. Trustee or Committee, as the case may be, shall file and serve an objection to the disputed fees and expenses; provided, further, that the Debtors shall timely pay in accordance with this Final

Order, the undisputed fees and expenses reflected on any invoice to which an objection has been timely filed.

(g) <u>Prepetition Agent Updates</u>. Per the Debtors' agreement, as reflected on the record of the Final Hearing, and subject to confidentiality restrictions and the execution of a confidentiality agreement, a member of Debtors' management and representatives of the Debtors' financial and legal advisors, as appropriate, will make themselves available approximately every two weeks (or on such other schedule and/or at such other times as may be agreed to by the parties) for a teleconference with the Prepetition Agent and its legal and financial advisors and the Prepetition Lenders, for the purpose of providing the Prepetition Agent with an update of the Debtors' operations and financial performance and the status of the Debtors' efforts to restructure the Debtors' business and balance sheet and emerge from these cases.

(h) The adequate protection payments being made to the Prepetition Agent and the Prepetition Lenders pursuant to this Final Order are without prejudice to the rights of the Prepetition Agent and Prepetition Lenders to assert as a part of their claims in these cases additional amounts to which they believe they may be entitled under Section 506(b) of the Bankruptcy Code or otherwise, and all other parties' rights to review, object or seek other relief with respect to any claims asserted by the Prepetition Agent and the Prepetition Lenders are reserved.

11. <u>Carve-Out</u>.

(a) Upon the occurrence and during the continuance of an Event of Default under the DIP Facility Documents, payment of any amounts on account of the Postpetition Liens and the Superpriority Claim shall be subject and subordinate only to payment of: (i) amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and all fees required to be paid to the Clerk of the Bankruptcy Court, which are incurred after the first business day after effective delivery of a Carve-Out Trigger Notice (as defined below); (ii) allowed expenses incurred by any member of the Committee, and allowed fees, expenses and costs of attorneys, accountants and other

professionals retained in the Chapter 11 Cases by the Debtors or the Committee pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503 or 1103 ("Professionals") and owed pursuant to such Professionals' respective engagement letters (other than any success fee, transaction fee, or other similar fee set forth in such Professionals' respective engagement letter) to the extent permitted under the Approved Budget for such respective Professionals in each case, which are actually incurred prior to the business day following delivery by the DIP Agent of a Carve-Out Trigger Notice, whether or not allowed prior to or after such date; and (iii) allowed expenses of any member of the Committee, and allowed fees and expenses of Professionals, in each case incurred after the first business day after effective delivery of a Carve-Out Trigger Notice not to exceed $2,000,000 in the aggregate, subject to the rights of the DIP Agent and/or the DIP Lenders to object to the allowance of any such fees and expenses (the immediately proceeding clauses (i), (ii) and (iii), collectively, the "Carve-Out"). Following the occurrence and during the continuance of an Event of Default, any payments actually made to such Professionals during such continuance of an Event of Default pursuant to sub-clause (ii) under Bankruptcy Code sections 327, 328, 330, 331, 503 or 1103 or otherwise, shall not be paid from the proceeds of any DIP Loan or Collateral until such time as all retainers, if any, held by such professionals have been reduced to zero. "Carve-Out Trigger Notice" shall mean a written notice delivered by the DIP Agent to the Debtors and their counsel which notice may be delivered following the occurrence and during the continuation of an Event of Default.

(b)     No portion of the Carve-Out may be used in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, objection or other litigation against the DIP Agent or any of the DIP Lenders.

(c)     So long as no Event of Default has occurred, the proceeds of any DIP Loan may be used by the Borrowers to pay the fees and expenses of Professionals to the extent permitted under the Approved Budget (including holdbacks imposed by this Court). The DIP Agent's and DIP Lenders' obligation to fund or otherwise pay the Carve-Out expenses shall be added to and made a part of the DIP Obligations, secured by the Collateral, and entitle the DIP

Agent and DIP Lenders to all of the rights, claims, liens, priorities and protections under the Interim Order, this Final Order, the DIP Facility Documents, the Bankruptcy Code, and/or applicable law. Payment of any Carve-Out expenses, whether by or on behalf of the DIP Agent and DIP Lenders, shall not and shall not be deemed to reduce the DIP Obligations and shall not and shall not be deemed to subordinate any of the DIP Agent's or DIP Lenders' liens and security interests in the Collateral or their Superpriority Claim to any junior prepetition or postpetition lien, interest, or claim in favor of any other party. The DIP Agent and DIP Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals in the Chapter 11 Cases incurred in connection with the Chapter 11 Cases or any Successor Case under any chapter of the Bankruptcy Code. Nothing in the Interim Order or this Final Order or otherwise shall be construed to obligate the DIP Agent or DIP Lenders in any way to pay compensation to or reimburse expenses of any Professional in the Chapter 11 Cases, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(d) No liens, claims, interests or priority status, other than the Carve-Out and the Permitted Priority Liens, having a lien or administrative priority superior to or *pari passu* with that of the Postpetition Liens or the Superpriority Claim granted by the Interim Order or this Final Order, shall be granted while any portion of the DIP Obligations remain outstanding, or any commitment under the DIP Facility Documents remains in effect, without the prior written consent of the DIP Agent.

(e) No party shall be entitled, directly or indirectly, to (i) charge the Carve-Out or the Collateral, whether by operation of Bankruptcy Code sections 105, 506(c) or 552(b) or otherwise or (ii) direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of Collateral after an Event of Default under the DIP Facility Documents, or termination or breach under the DIP Facility Documents.

12. <u>Release</u>. The Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in any Chapter 11 Cases or Successor Case),

forever and irrevocably (i) release, discharge, and acquit the DIP Agent, each of the DIP Lenders, in their capacity as DIP Lenders, and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any so-called "lender liability" or equitable subordination claims or defenses, solely with respect to or relating to the negotiation and entry into the DIP Facility Documents, and (ii) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and nonavoidability of the Postpetition Liens and Superpriority Claims.

13. <u>Limitation on Additional Surcharges</u>. So long as the Termination Date has not occurred, no action, inaction or acquiescence by the DIP Agent or the DIP Lenders, including funding the Debtors' ongoing operations under the Interim Order or this Final Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP Agent or the DIP Lenders to a charge against the Collateral pursuant to Bankruptcy Code sections 506(c), 552(b) or 105(a), and no such costs, fees or expenses shall be so charged against the Collateral without the prior written consent of the DIP Agent, to the extent of its interests in such Collateral. The DIP Agent and the DIP Lenders shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

14. <u>Additional Perfection Measures</u>. The Postpetition Liens and the Replacement Liens were perfected by operation of law immediately upon entry of the Interim Order. None of the Debtors, the DIP Agent, or the Prepetition Agent shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office,

Copyright Office or any similar agency with respect to intellectual property, or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the Postpetition Liens or the Replacement Liens.

(a)     The DIP Agent or the Prepetition Agent may, but shall not be obligated to, obtain consents from any landlord, licensor or other party in interest, file mortgages, financing statements, notices of lien or similar instruments, or otherwise record or perfect such security interests and liens, in which case:

i.     all such documents were deemed to have been recorded and filed as of the time and on the date of entry of the Interim Order; and

ii.     no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(b)     In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the DIP Agent or the Prepetition Agent may, but shall not be obligated to, file a true and complete copy of the Interim Order or this Final Order in any place at which any such instruments would or could be filed, together with a description of Collateral or Prepetition Collateral, as applicable, and such filings by the DIP Agent or the Prepetition Agent shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of the Interim Order.

15.     Application of Collateral Proceeds.  To the extent required by this Final Order and the DIP Facility Documents, after the occurrence of an Event of Default, the Debtors are hereby authorized and directed to remit to the DIP Agent, for the benefit of the DIP Lenders, one-hundred percent (100%) of all collections on, and proceeds of, the Collateral, including, but not limited to, all accounts receivable collections, proceeds of sales of inventory, fixed assets, and any other assets, including sales in and outside the ordinary course of business, and all other cash or cash equivalents which shall at any time on or after the Petition Date come into the possession

or control of the Debtors, or to which the Debtors shall become entitled at any time, and the automatic stay provisions of Bankruptcy Code section 362 are hereby modified to permit the DIP Agent and the DIP Lenders to retain and apply all collections, remittances, and proceeds of the Collateral in accordance with this Final Order and the DIP Facility Documents to the DIP Obligations, first to fees, costs and expenses owed under the DIP Facility Documents, then to interest, and then to principal.

16. <u>Access to Collateral</u>. Notwithstanding anything contained herein to the contrary, and without limiting any other rights or remedies of the DIP Agent or the DIP Lenders contained in the Interim Order, this Final Order or the DIP Facility Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Facility Documents, upon five (5) business days' written notice to the Debtors and any landlord, lienholder, licensor or other third party owner of any leased or licensed premises or intellectual property that an Event of Default under the DIP Facility Documents or a default by the Debtors of any of its obligations under the Interim Order or this Final Order has occurred and is continuing, the DIP Agent (i) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor, and the DIP Agent or the DIP Lenders (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable lease or license and to use any and all trademarks, tradenames, copyrights, licenses, patents or any other similar assets of Debtors, which are owned by or subject to a lien of any third party and which are used by Debtors in its businesses, in either the case of subparagraph (i) or (ii) of this paragraph without interference from lienholders or licensors thereunder, subject to the rights of such lienholders or licensors under applicable law; <u>provided, however</u>, that the DIP Agent or the DIP Lenders shall pay only rent and additional rent, fees, royalties or other obligations of the Debtors that first arise after the DIP Agent's or the DIP Lenders' written notice referenced above and that are payable during the period of such occupancy or use by the DIP Agent or the DIP

Lenders, as the case may be, calculated on a *per diem* basis. Nothing herein shall require the Debtors, the DIP Agent or the DIP Lenders to assume any lease or license under Bankruptcy Code section 365(a) as a precondition to the rights afforded to the DIP Agent and the DIP Lenders in this paragraph.

17. Cash Management Systems. The Debtors are authorized to maintain their cash management system in a manner consistent with the DIP Facility Documents, the Interim Order, this Final Order, and the order of this Court approving the maintenance of the Debtors' cash management system, provided, however, that such order is on terms and conditions acceptable to the DIP Agent and such order is not inconsistent with the terms specified herein and the DIP Facility Documents.

18. Events of Default. The occurrence of any of the following shall constitute an Event of Default under this Final Order upon notice by the DIP Agent to the Debtors and respective counsel to the Prepetition Agent and the Committee:

(a) The Borrowers shall fail to pay any principal of any of the DIP Loans extended under the DIP Facility when the same becomes due and payable; or

(b) The Borrowers shall fail to pay any interest on the DIP Loans or any fee or other amount due with respect to the DIP Obligations after such interest, fee, or other amount becomes due and payable; or

(c) Any representation or warranty made by the Borrowers or the Guarantors in the DIP Term Sheet, the Interim Order or this Final Order, or that is contained in any certificate, document or financial or other statement furnished by it at any time under or in connection with the DIP Term Sheet or any such other DIP Facility Document shall prove to have been inaccurate in any material respect on or as of the date made or deemed made or furnished; or

(d) Any Debtor shall breach or violate any term, covenant or agreement contained in the DIP Facility Documents, the Interim Order or this Final Order; or

(e)     An Event of Default shall occur under and as defined in the DIP Term Sheet, the Interim Order or this Final Order; or

(f)     Conversion of any Borrower's or Guarantor's Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code; or

(g)     The appointment of a trustee in any Borrower's or Guarantor's Chapter 11 Case without the consent of the Required DIP Lenders; or

(h)     The appointment of an examiner in any Borrower's or Guarantor's Chapter 11 Case with expanded powers without the consent of the Required DIP Lenders; or

(i)     The dismissal of any Borrower's or Guarantor's Chapter 11 Case; or

(j)     The entry of any order modifying, reversing, revoking, staying, rescinding, vacating or amending the Interim Order or this Final Order without the express prior written consent of the Required DIP Lenders; or

(k)     Intentionally Deleted; or

(l)     A change in executive management shall occur (which shall be deemed to consist of the Chief Executive Officer, the Chief Financial Officer and the Chief Operations Officer of the Debtors), unless (i) a person acceptable to the Required DIP Lenders is appointed to fill the vacancy caused by such change or (ii) a process for replacing such person is agreed upon by the Required DIP Lenders, in each case within ten (10) business days following such change; or

(m)     A plan of reorganization is filed that is not acceptable to the DIP Lenders (unless such plan is determined by the DIP Lenders, in their discretion, to result in the payment in full in cash of all obligations due under the DIP Facility); or

(n)     The Borrowers or Guarantors shall attempt to vacate or modify the Interim Order or the Final Order over the objection of the Required DIP Lenders; or

(o)     The Bankruptcy Court shall enter an order granting relief from the automatic stay to the holder or holders of any other security interest or lien (other than the DIP

Lenders) in any Collateral to permit the pursuit of any judicial or non-judicial transfer or other remedy against any of the Collateral; or

(p)     Any provision of the documents relating to the DIP Loans shall cease to be valid and binding on the Borrowers and Guarantors, or any Borrower or Guarantor shall so assert in any pleading filed in any court; or

(q)     Any Debtor shall bring or consent to any motion or application in the Chapter 11 Cases: (i) to obtain working capital financing from any person other than the DIP Lenders under section 364(d) of the Bankruptcy Code (other than with respect to a financing used, in whole or part, to repay in full in cash all obligations due under the DIP Facility); or (ii) to obtain financing from any person other than the DIP Lenders under section 364(c) of the Bankruptcy Code (other than with respect to a financing used, in whole or part, to repay in full in cash all obligations due under the DIP Facility); or (iii) to grant any lien that is *pari passu* or senior to any lien granted to the DIP Agent under the Interim Order or Final Order, except as permitted therein; or (iv) to recover from any portion of the Collateral any costs or expenses of preserving or disposing of such Collateral under section 506(c) of the Bankruptcy Code; or (v) to grant a superpriority claim, other than that granted in the Interim Order or this Final Order (and other than with respect to the Carve-Out), which is *pari passu* with or senior to any of the claims of the DIP Agent and the DIP Lenders against any Debtor under the DIP Term Sheet, the Interim Order, this Final Order or the DIP Facility Documents (or there shall arise or be granted any superpriority claim *pari passu* or senior to any such claims); or

(r)     Any other party shall seek and obtain allowance of any order in the Chapter 11 Cases to recover from any portions of the Collateral any costs or expenses of preserving or disposing of such Collateral under section 506(c) of the Bankruptcy Code; or

(s)     An order shall be entered by the Bankruptcy Court confirming a plan of reorganization or liquidation in any of the Chapter 11 Cases (or any Debtor shall propose a plan of reorganization or liquidation in any of the Chapter 11 Cases) that does not contain a provision

for payment of all of the obligations due under the DIP Facility by an indefeasible payment in full in cash of such obligations on or before the effective date of such plan; or

(t)    An order shall be entered by the Bankruptcy Court, or any Debtor shall make a motion for an order of the Bankruptcy Court, dismissing any of the Chapter 11 Cases that does not contain a provision for payment of all of the obligations due under the DIP Facility by an indefeasible payment in full in cash of such obligations; or

(u)    There shall occur an Excess Budget Variance unless waived by the Required DIP Lenders; or

(v)    (i) Any Debtor shall enter into, or the Bankruptcy Court shall approve, any debtor-in-possession credit facility in the Chapter 11 Cases (except as expressly permitted in the DIP Term Sheet) without the consent of the Required DIP Lenders, that in any way is inconsistent with any of the provisions of the DIP Term Sheet, the Interim Order or this Final Order or otherwise adversely affects the rights, remedies, claims, liens or bankruptcy priorities of the DIP Lenders as established by the DIP Term Sheet, the Interim Order or this Final Order, or (ii) any Debtor shall seek approval of, or the Bankruptcy Court shall approve, any order permitting the use of cash collateral of any Debtor in the Chapter 11 Cases (except as expressly permitted herein), without the consent of the Required DIP Lenders, that in any way is inconsistent with any of the provisions of the DIP Term Sheet, the Interim Order or this Final Order or otherwise adversely affects the rights, remedies, claims, liens or bankruptcy priorities of the DIP Lenders as established by the DIP Term Sheet, the Interim Order or this Final Order; or

(w)    The Borrowers shall fail to provide an Approved Budget that is acceptable to the Required DIP Lenders in accordance with the terms set forth in the DIP Term Sheet, the Interim Order or this Final Order; or

(x)    The Borrowers shall make any payment (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any prepetition indebtedness, unless approved by the Required DIP Lenders or as authorized by the Bankruptcy Court after notice and hearing; or

(y)     The Borrowers shall for any reason fail to remit to the DIP Agent and the DIP Lenders all net proceeds from the sale, disposition, collection, or other realization upon the Debtors' assets for application in accordance with and to the extent required in accordance with the terms set forth herein and/or in the DIP Term Sheet.

19.     Automatic Stay Modified.

(a)     Subject to the provisions of subparagraphs (b) and (c) hereof, the automatic stay provisions of Bankruptcy Code section 362 hereby are, to the extent applicable, vacated, and modified to the extent necessary to allow the DIP Agent and DIP Lenders:

i.     whether or not a Default or an Event of Default under the DIP Facility Documents or a default by the Debtors of any of its obligations under the Interim Order or this Final Order has occurred, to require all cash, checks or other collections or proceeds from Collateral received by the Debtors to be deposited in accordance with the requirements of the DIP Facility Documents, and to apply any amounts so deposited and other amounts paid to or received by the DIP Agent or the DIP Lenders under the DIP Facility Documents in accordance with any requirements of the DIP Facility Documents;

ii.     in the event of a default or upon the occurrence of an Event of Default under the DIP Facility Documents or a default by the Debtors of any of its obligations under the Interim Order or this Final Order, and subject to five (5) business days prior written notice (the "Waiting Period") to the Debtors, its counsel, counsel to the Prepetition Agent, counsel to the Committee, and the U.S. Trustee (except as provided in this clause (ii) of this paragraph), to exercise all rights and remedies provided for in the DIP Facility Documents, the Interim Order, this Final Order or under other applicable bankruptcy and nonbankruptcy law to effect the repayment of the DIP Obligations to the extent permitted under the DIP Facility Documents, the Interim Order and/or this Final Order (including the right to setoff funds in accounts maintained by the Debtors with any of the DIP Lenders or the DIP Agent to repay the DIP Obligations, as to which such prior written notice shall not be required) without requiring prior authorization of this Court in order to exercise such rights and remedies.  In the event the

DIP Agent gives notice pursuant to this subparagraph and the Prepetition Agent files a motion with the Court to prevent such exercise of remedies, the Prepetition Agent shall be entitled to an expedited hearing on such motion (with all parties' rights reserved to oppose any relief requested by the Prepetition Agent in such motion).

iii.    immediately upon the occurrence of an Event of Default under the DIP Facility Documents or a default by the Debtors of any of its obligations under the Interim Order, this Final Order or the DIP Facility Documents, without providing any prior notice thereof (A) the DIP Agent, for the benefit of the DIP Lenders, may charge interest at the default rates pursuant to the DIP Term Sheet, (B) neither the DIP Agent nor the DIP Lenders shall have any further obligation to provide financing under the DIP Facility Documents, the Interim Order, this Final Order or otherwise, and may, in their sole discretion, terminate all commitments with respect to the DIP Facility, (C) declare all DIP Obligations to be immediately due and payable; (D) freeze monies or balances in the Debtors' accounts, and (E) after the expiration of the Waiting Period any authorization to use Cash Collateral shall terminate.

(b)    During the Waiting Period, the Debtors shall not use any Cash Collateral or any DIP Facility proceeds to pay any expenses except those provided for in the Approved Budget that were actually incurred prior to an Event of Default, but which remain unpaid at the time of an Event of Default. In no event will expenses under the Approved Budget be considered incurred until the week such expenses are listed in the Approved Budget.

(c)    The rights and remedies of the DIP Agent and DIP Lenders specified herein are cumulative and not exclusive of any rights or remedies that the DIP Agent and DIP Lenders may have under the DIP Facility Documents or otherwise. The Debtors shall cooperate fully with the DIP Agent and DIP Lenders in their exercise of rights and remedies, whether against the Collateral or otherwise. This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of the Interim Order or this Final Order and relating to the application, re-imposition or continuance of the automatic stay of Bankruptcy Code section 362(a), use of Cash Collateral, or other injunctive relief requested.

20.    Budget. Attached as Exhibit B hereto and incorporated by reference is a budget (the "Approved Budget") setting forth a 13-week budget ("Original Budget Period") which reflects on a line-item basis the Borrowers' anticipated cumulative cash receipts and disbursements on a weekly basis and all necessary and required cumulative expenses (subject to a permitted variance for such cumulative cash receipts, disbursements and expenses each not to exceed 15% on a cumulative basis from the commencement of the Approved Budget to the date of determination, to be tested initially with respect to the period ending April 24, 2009 and thereafter at the end of each weekly period (but on a cumulative basis as aforesaid) covered by such Approved Budget) which the Borrowers expect to incur during each week of the Approved Budget. Not later than one month prior to the expiration of the Original Budget Period, the Borrowers shall provide to the DIP Agent and the Required DIP Lenders an updated budget for an additional 13-week period in substantially the same format as the previous budget, which upon acceptance by the Required DIP Lenders, shall become the Approved Budget (a copy of which shall be promptly provided to the Committee and the Prepetition Agent); provided, however, that a new budget may be effectuated at any time with the consent of the Required DIP Lenders. In the event the Borrowers and the Required DIP Lenders fail to agree upon a new budget by the end of the previously Approved Budget, the DIP Facility will terminate upon the expiration of the last Approved Budget. The Debtors' actual disbursements and cash receipts (and the reporting of such disbursements and receipts) shall conform to the requirements of the DIP Term Sheet, the Interim Order and this Final Order. The DIP Agent and DIP Lenders shall have no obligation with respect to the Debtors' use of the proceeds of the DIP Loans, the Collateral or Cash Collateral, and shall not be obligated to ensure or monitor the Debtors' compliance with the Approved Budget or to pay (directly or indirectly from their Collateral) any expenses incurred or authorized to be incurred pursuant to the Approved Budget. Funds borrowed under the DIP Term Sheet and Cash Collateral used under the Interim Order or this Final Order shall be used by the Debtors in accordance with the Interim Order, this Final Order and the DIP Term Sheet, as applicable  The DIP Agent's consent to any Approved Budget shall

not be construed as consent to the use of any Cash Collateral or a commitment to continue to provide funding under the DIP Facility after the occurrence of an Event of Default or beyond the Termination Date.

21. _Reporting_. The Debtors are authorized and directed to provide to the DIP Agent the following documentation and reports: (i) weekly reports of cash receipts and disbursements and incurred expenses (including any variances from the Approved Budget for the cumulative period from the commencement of the Approved Budget to the end of such weekly period), commencing with the weekly period ending April 10, 2009; (ii) copies of all reports filed with the Office of the United States Trustee within two (2) business days after such filing; and (iii) such additional financial or other information concerning the acts, conduct, property, assets, liabilities, operations, financial condition, and transactions of the Debtors, or concerning any matter that may affect the administration of the estates, as the DIP Agent or the Required DIP Lenders may from time to time reasonably request within ten (10) business days of any such request (the "Reporting Information"). All Reporting Information shall be in accordance with accounting principles and bookkeeping practices consistently applied with past accounting principles and bookkeeping practices and reporting of the Debtors to the Prepetition Lenders. The DIP Agent and its respective agents and advisors shall have full access, upon reasonable notice during normal business hours, to the Debtors' business records, business premises, and to the Collateral to enable the DIP Agent or its agents and advisors to (a) review, appraise, and evaluate the physical condition of the Collateral, (b) inspect and review the financial records and all other records of the Debtors concerning the operation of the Debtors' business, and (c) evaluate the Debtors' overall financial condition and all other records relating to the operations of the Debtors. The Debtors shall fully cooperate with the DIP Agent regarding such reviews, evaluations, and inspections, and shall make their employees and professionals available to the DIP Agent and its professionals and consultants to conduct such reviews, evaluations, and inspections

22.    Insurance Policies.  Upon entry of the Interim Order, the DIP Agent and DIP Lenders were each named as additional insureds and loss payees, as applicable, on each insurance policy maintained by the Debtors which in any way relates to the Collateral.  The Debtors are authorized and directed to take any actions necessary to have the DIP Agent, on behalf of the DIP Lenders, be added as an additional insured and loss payee on each insurance policy.

23.    Successors and Assigns.  The DIP Facility Documents and the provisions of the Interim Order and this Final Order shall be binding upon the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, and each of their respective successors and assigns including, without limitation, any trustee, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtors under any chapter of the Bankruptcy Code.  The provisions of the Interim Order and this Final Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest.

24.    Binding Nature of Agreement.  Each of the DIP Facility Documents to which the Debtors are or will become a party shall constitute legal, valid, and binding obligations of the Debtors party thereto, enforceable in accordance with their terms.  The DIP Facility Documents have been properly executed and delivered to the DIP Agent or the DIP Lenders by the Debtors. The rights, remedies, powers, privileges, liens, and priorities of the DIP Agent and the DIP Lenders provided for in this Final Order and in the DIP Facility Documents shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order), by any plan of reorganization or liquidation in the Chapter 11 Cases, by the dismissal or conversion of the Chapter 11 Cases or in any Successor Case under the Bankruptcy Code unless and until the DIP Obligations have first been indefeasibly paid in full in cash and completely satisfied and the commitments terminated in accordance with the DIP Facility Documents.

25.    Subsequent Reversal or Modification.  This Final Order is entered pursuant to Bankruptcy Code section 364, and Bankruptcy Rules 4001(b) and (c), granting the DIP Agent and the DIP Lenders all protections afforded by Bankruptcy Code section 364(e).  If any or all of the provisions of the Interim Order or this Final Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtors to the DIP Agent and the DIP Lenders, prior to the date of receipt by the DIP Agent and the DIP Lenders of written notice of the effective date of such action or (ii) the validity and enforceability of any lien or priority authorized or created under the Interim Order or this Final Order or pursuant to the DIP Facility Documents.  Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by the Debtors to the DIP Agent and the DIP Lenders prior to written notice to the DIP Agent and the DIP Lenders of the effective date of such action, shall be governed in all respects by the original provisions of the Interim Order or this Final Order, as applicable, and the DIP Agent and the DIP Lenders shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Facility Documents with respect to all such indebtedness, obligations or liability.

26.    Restriction on Use of Lender's Funds.  The Superpriority Claim, the Postpetition Liens, the Replacement Liens, and the Prepetition Liens shall be senior to, and no proceeds from the DIP Facility, Collateral or proceeds thereof, Cash Collateral or proceeds thereof, or any portion of the Carve-Out may be used to pay, any claims for services rendered by any of the Professionals retained by the Debtors (or any successor trustee or other estate representative in the Chapter 11 Cases or any Successor Case), any creditor or party in interest, any committee or any other party to (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to Bankruptcy Code section 364(c) or (d), or otherwise, other than from the DIP Lenders; and/or (b) investigate, assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or

adverse to the interests of, in any capacity, the DIP Agent or the DIP Lenders or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, or action, including, without limitation, (i) any Avoidance Actions or other actions arising under Chapter 5 of the Bankruptcy Code; (ii) any so-called "lender liability" claims and causes of action; (iii) any action with respect to the validity and extent of the DIP Obligations or the validity, extent, and priority of the Postpetition Liens; (iv) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the Postpetition Liens; and/or (v) any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) the DIP Agent's or the DIP Lenders' assertion, enforcement or realization on the Cash Collateral or the Collateral in accordance with the DIP Facility Documents, the Interim Order or this Final Order.

27.     Priming and Subordination of Liens.  For avoidance of doubt, and notwithstanding anything to the contrary herein, all liens on the Collateral in existence on the date hereof (other than Permitted Priority Liens) shall be primed by the Postpetition Liens and the Replacement Liens, and shall be subordinate to the Postpetition Liens and the Replacement Liens.  For the avoidance of doubt, to the extent Kiewit Energy Company holds valid, perfected, unavoidable construction/mechanics liens on certain of the Debtors assets, such liens are not being primed by the liens granted to the DIP Lenders pursuant to this Order.  In addition, for the avoidance of doubt, to the extent the Indiana Port Commission holds valid, perfected, unavoidable liens on certain of the Debtors' assets that were senior to any liens held by the Prepetition Lenders as of the Petition Date, then such liens are not being primed by the liens granted to the DIP Lenders pursuant to this Final Order.

28.     Collateral Rights.  In the event that any party who has both received notice of the Final Hearing and holds a lien or security interest in Collateral or Prepetition Collateral that is junior and/or subordinate to the Postpetition Liens, the Replacement Liens or the Prepetition Liens in such Collateral or Prepetition Collateral receives or is paid the proceeds of such Collateral or Prepetition Collateral, or receives any other payment with respect thereto from any

other source, prior to indefeasible payment in full in cash and the complete satisfaction of all DIP Obligations under the DIP Facility Documents and the termination of the commitments in accordance with the DIP Facility Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such Collateral in trust for the DIP Lenders and shall immediately turn over such proceeds (i) first for application to the DIP Obligations under the DIP Facility Documents in accordance with the DIP Facility Documents and this Final Order until indefeasibly paid in full, and (ii) second for application to the Adequate Protection Claims.

29. <u>No Waiver</u>. Except as otherwise specifically provided herein, neither the Interim Order nor this Final Order shall be construed in any way as a waiver or relinquishment of any rights that the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Lenders may have to bring or be heard on any matter brought before this Court.

30. <u>No Waiver by Failure to Seek Relief</u>. The failure of the DIP Agent or DIP Lenders to seek relief or otherwise exercise their rights and remedies under the Interim Order, this Final Order, the DIP Facility Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights thereunder, or otherwise of the DIP Agent or the DIP Lenders.

31. <u>Limits on Lender's Liability</u>. Nothing in the Interim Order, this Final Order or in any of the DIP Facility Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent and the DIP Lenders of any liability for any claims arising from any and all activities by the Debtors in the operation of its business or in connection with its restructuring efforts.

32. <u>Priority of Terms</u>. To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Facility Documents, the Motion, the Interim Order, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Final Order, on the other hand, unless such term or provision herein is phrased

in terms of "as defined in" or "as more fully described in" the DIP Facility Documents, the terms and provisions of this Final Order shall govern.

33. <u>No Third Party Beneficiary</u>. Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

34. <u>Survival</u>. Except as otherwise provided herein, (a) the protections afforded to the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders under the Interim Order and/or this Final Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of the Chapter 11 Cases or (ii) converting the Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the Postpetition Liens, the Replacement Liens, the Superpriority Claim and the Adequate Protection Claim shall continue in the Chapter 11 Cases, in any such successor case or after any such dismissal. Except as otherwise provided herein, the Postpetition Liens, the Replacement Liens, the Superpriority Claim and the Adequate Protection Claim shall maintain their priorities as provided in this Final Order and the DIP Facility Documents, and shall not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness (except with respect to any additional financing to be provided by the DIP Agent and the DIP Lenders in accordance with the Final Order), or any conversion of the Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of the Chapter 11 Cases, or by any other act or omission until (i) all DIP Obligations are indefeasibly paid in full in cash and completely satisfied, and the commitments under the DIP Facility Documents are terminated in accordance therewith, and (ii) the Prepetition Lender Debt has been indefeasibly repaid in full.

35. Intentionally Deleted.

36. Intentionally Deleted.

37. <u>Proofs of Claim</u>. The DIP Agent and DIP Lenders are hereby relieved of the requirement to file proofs of claim in these Chapter 11 Cases with respect to any DIP Obligations and any other claims or liens granted hereunder or created hereby.

38.     Entry of Final Order; Effect.  This Final Order shall take effect immediately upon execution hereof, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, and the Clerk of this Court is hereby directed to enter this Final Order on this Court's docket in the Chapter 11 Cases.

39.     Retention of Jurisdiction.  This Court shall retain jurisdiction over all matters pertaining to the implementation, interpretation and enforcement of the Interim Order, this Final Order and/or the DIP Facility Documents.

40.     Binding Effect of Final Order.   The terms of this Final Order shall be binding on any trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

Dated: May 6, 2009

Kevin Gross
UNITED STATES BANKRUPTCY JUDGE