IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**, a Delaware Corporation, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 09-11214 (KG)<br><br>(Jointly Administered)<br><br>Hearing Date: January 13, 2010 at 3:00 p.m. (ET)<br>Objection Deadline: January 6, 2010 at 4:00 p.m. (ET) |

## MOTION OF THE DEBTORS FOR AN ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO (I) PAY THE WORK FEES OF THE POTENTIAL EXIT FINANCING LENDER; (II) PROVIDE THE DEPOSIT TO THE POTENTIAL EXIT FINANCING LENDER; AND (III) PROVIDE INDEMNIFICATION TO THE POTENTIAL EXIT FINANCING LENDER

Aventine Renewable Energy Holdings, Inc., a Delaware corporation, and certain of its direct and indirect subsidiaries, the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby move this Court (the "Motion"), pursuant to sections 363(b) and 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order, substantially in the form attached hereto as Exhibit A, authorizing the Debtors to (i) pay the fees and expenses (the "Work Fees") of PNC Bank, National Association (together with its affiliates, "PNC") in connection with evaluating, preparing, submitting, and negotiating a senior secured revolving exit credit facility providing gross cash proceeds in an aggregate amount of up to $20,000,000 (the "Exit Facility"); (ii) provide an expense deposit to PNC in the amount of $50,000 to reimburse costs and expenses incurred in evaluating, preparing and submitting the Exit Facility and/or preparing and negotiating definitive

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

documentation for the proposed Exit Facility (the "Deposit"); and (iii) provide indemnification to PNC for losses, claims, damages, expenses and liabilities arising out of or related to the transactions contemplated by the Term Sheet (as defined below). In support of this Motion, the Debtors, by and through their undersigned counsel, respectfully state as follows:

## JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code.

## GENERAL BACKGROUND

2. On April 7, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. The Debtors' cases are being jointly administered for procedural purposes pursuant to Bankruptcy Rule 1015(b).

4. On April 23, 2009, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner.

## THE PLAN OF REORGANIZATION AND THE ABL CREDIT FACILITY

5. On December 4, 2009, the Debtors filed *Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Dated as of December 4, 2009* (as it may be amended, supplemented or modified, the "Plan") and the related disclosure statement (as

it may be amended, supplemented or modified, the "Disclosure Statement"). The hearing to consider adequacy of the information contained in the Disclosure Statement is currently scheduled for January 13, 2010.

6. A key element of the restructuring proposed through the Plan and a condition precedent to the effectiveness of the Plan is the availability of exit financing that provides sufficient capital for the Debtors to meet their cash obligations under the Plan upon emergence. Specifically, Article XII(K)(1) of the Plan provides that the Plan shall not become effective unless and until "the Reorganized Debtors shall have entered into the ABL Credit Facility." Accordingly, this condition must either be satisfied or waived in accordance with the terms of the Plans in order for the Effective Date (as defined in the Plan) to occur.

7. PNC has provided the Debtors with a non-binding preliminary term sheet (the "Term Sheet") that will serve as the basis for the negotiation and documentation the Exit Facility. The Debtors are currently contemplating that the Exit Facility will serve as the ABL Credit Facility under the Plan. In order for PNC to proceed with the credit due diligence investigation, the Term Sheet provides that, among other things, the Debtors will (i) pay the costs and expenses associated with providing PNC certain documentation and information associated with the credit and due diligence investigation of the Debtors; (ii) provide $50,000 to PNC to serve as a refundable deposit; and (iii) provide customary indemnification to PNC.

8. The Debtors anticipate that PNC will attempt to exercise its right to syndicate its portion of the Exit Facility with one or more Potential Lenders. However, no commitments have been made at this time and any actual commitment is subject to each Potential Lender's diligence and review of all written information and data (prepared by the

Debtors and made available to PNC) concerning the Debtors or the transactions contemplated in the Term Sheet.

9. It is customary that potential lenders request that debtors seeking exit financing agree to indemnify and hold harmless such lenders and their affiliates. PNC has requested that the Debtors agree to indemnify and hold harmless PNC and each director, officer, employee and affiliate thereof (each, an "Indemnified Person"), from and against any or all losses, claims, damages, expenses and liabilities incurred by any Indemnified Party that arise out of or relate to any investigation or other proceeding (including any threatened investigation or litigation or other proceeding and whether or not such Indemnified Person is a party thereto) relating to the Term Sheet or the transactions contemplated therein, including, without limitation, the reasonable fees and disbursements of counsel (which fees and disbursements may include, but are not limited to, reasonable fee and disbursements of in-house counsel incurred in connection with any of the foregoing), but excluding any of the foregoing claimed by any Indemnified Person to the extent incurred by reason of the gross negligence or willful misconduct of such Indemnified Person as determined by a final nonappeable judgment of court (the "Indemnification").

10. By providing the Work Fees, Deposit and Indemnification, the Debtors will be able to proceed with PNC in a financing process to support confirmation and the consummation of the Plan. In addition, the Debtors believe that the relief requested will ultimately lead to the Debtors obtaining the most favorable terms for the ABL Credit Facility.

11. Absent the payment of the Work Fees, the Deposit and Indemnification, PNC is unwilling to proceed with the diligence process work needed to complete an exit financing commitment. As such, paying the Work Fees and the Deposit and agreeing to

indemnify PNC pursuant to the terms of the Indemnification, will move these chapter 11 cases forward and facilitate the Debtors' exit from Chapter 11 under the terms of the Plan. Under these circumstances, the Debtors believe that the relief requested herein is an appropriate exercise of their business judgment and is in the best interests of their estates.

## RELIEF REQUESTED

12. By this Motion, the Debtors respectfully request entry of an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, authorizing the Debtors to (i) pay the Work Fees of PNC with respect to their provision of exit financing to the Debtors; (ii) provide the Deposit to PNC to reimburse costs and expenses incurred in evaluating, preparing and submitting the Exit Facility and/or preparing and negotiating definitive documentation for such Exit Facility; and (iii) provide PNC the Indemnification with respect to the exit financing contemplated under the Term Sheet.

## BASIS FOR RELIEF REQUESTED

13. In pertinent part, section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Courts in this circuit interpreting section 363(b) of the Bankruptcy Code have generally approved the use, sale, or lease of estate property out of the ordinary course of business where there exists a sound business justification for the proposed transaction. See, e.g., Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996) (noting that courts defer to a trustee's judgment concerning use of property under section 363(b) when there is a legitimate business justification); In re Montgomery Ward Holding Corp., 242 B.R. 142, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business

purpose justifies such actions."); In re Delaware and Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business judgment" test for the use of property under section 363). Moreover, pursuant to section 105(a) of the Bankruptcy Code, a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

14. A debtor has the burden of establishing that a valid business purpose exists for the use of estate property in a manner that is not ordinary course of business. See In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); In re Montgomery Ward Holding, Corp., 242 B.R. at 154. However, once a debtor articulates a valid business justification, a presumption arises that the debtor's decision is made "on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)). The business judgment rule therefore shields a debtor's management from judicial second guessing, and mandates that a court approve a debtor's business decision unless that decision is the product of bad faith or gross abuse of discretion. See id; see also In re Global Crossing, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

15. There are substantial business justifications for allowing the Debtors to pay the Work Fees and Deposit to PNC and to provide PNC with the Indemnification. PNC has advised the Debtors that it will not engage in the challenging and likely time-consuming exercise of preparing and providing the Debtors with the Exit Facility absent the ability of the Debtors to

pay the Work Fees or the Deposit and provide the Indemnification. The Debtors are currently anticipating that that the Exit Facility negotiated and documented with PNC will be the ABL Credit Facility under the Plan. Entering into the ABL Credit Facility is a condition precedent to the effectiveness of the Plan and is a condition that must be satisfied or waived in accordance with the terms of the Plan.

16. The Debtors believe that proceeding with and facilitating the due diligence, underwriting and documentation of the Exit Facility that will meet the Debtors' needs and the Plan's financing requirements with respect to the ABL Credit Facility will lead to a cost-effective exit facility and the Debtors' successful emergence from chapter 11. Further, the payment of Work Fees and Deposit to cover the reasonable out-of-pocket expenses of PNC in connection with diligence efforts is customary under the circumstances. The Debtors further believe that Deposit amount is reasonable and modest in light of the anticipated amount of the ABL Credit Facility, which is $20 million. The Debtors further believe that the authority to pay the Work Fees and provide the Deposit is appropriate and necessary under the circumstances.

17. Similar relief requested in this Motion has been granted to other debtors in this jurisdiction in other chapter 11 cases. See RathGibson Inc., Case No. 09-12452 (CSS) (Bankr. D. Del. Sept. 15, 2009); In re Pliant Corp., Case No. 09-10443 (MFW) (Bankr. D. Del. May 13, 2009); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Mar. 4, 2009); In re Sea Containers Ltd., Case No. 06-11156 (KJC) (Bankr. D. Del. Nov. 20, 2007); In re Calpine Corp., Case No. 05-60200 (BRL) (Bankr. S.D.N.Y. June 20, 2007); In re Pliant Corp., Case No. 06-10001 (MFW) (Bankr. D. Del. May 5, 2006); In re Meridian Automotive Systems – Composite Operations, Inc., Case No. 05-11168 (MFW) (Bankr. D. Del. June 16, 2005); In re Federal-Mogul Global Inc., Case No. 01-10578 (RTL) (Bankr. D. Del. Oct. 1, 2004); In re Exide

Techs., Case No. 02-11125 (KJC) (Bankr. D. Del. Sept. 12, 2003); In re ANC Rental Corp., Case No. 01-11200 (MFW) (Bankr. D. Del. April 2, 2003); In re Integrated Health Servs., Inc., Case No. 00-389 (MFW) (Bankr. D. Del. Oct. 10, 2002).

18. In sum, the Debtors, in their business judgment, believe that the relief requested in this Motion is reasonable and will maximize value of their assets for the benefit of creditors. Subject to this Motion, PNC will utilize its expertise and resources to create an exit financing facility that will facilitate the Debtors' contemplated confirmation and exit timetable. Since obtaining access to funds under the proposed ABL Credit Facility will enable the Debtors to consummate the Plan (if approved), which the Debtors believe will maximize value to creditors, payment of the Work Fees and the expense Deposit, as well as providing the Indemnification, is an appropriate exercise of the Debtors' business judgment and in the best interests of the estate.

## NOTICE

19. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel to the agent for the Debtors' prepetition secured lenders; (iv) counsel to the agent for the Debtors' postpetition secured lenders; (v) counsel to the Backstop Purchasers (as defined in the Plan); and (vi) those parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief herein, the Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein and such other and further relief as is just and proper under the circumstances.

Dated: Wilmington, Delaware
December 22, 2009

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____
James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Matthew B. Lunn (No. 4119)
Ryan M. Bartley (No. 4985)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Debtors and Debtors in Possession*