## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**, a Delaware Corporation, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 09-11214 (KG)<br><br>(Jointly Administered)<br><br>**Hearing Date: January 13, 2010 at 3:00 p.m. (ET)**<br>**Objection Deadline: January 5, 2010 at 4:00 p.m. (ET)** |

**DEBTORS' MOTION FOR ORDER (I) APPROVING THE DISCLOSURE STATEMENT; (II) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE PLAN, INCLUDING (A) APPROVING FORM AND MANNER OF SOLICITATION PROCEDURES, (B) APPROVING THE FORM AND NOTICE OF THE CONFIRMATION HEARING, (C) ESTABLISHING RECORD DATE AND APPROVING PROCEDURES FOR DISTRIBUTION OF SOLICITATION PACKAGES, (D) APPROVING FORMS OF BALLOTS, (E) ESTABLISHING DEADLINE FOR RECEIPT OF BALLOTS, AND (F) APPROVING PROCEDURES FOR VOTE TABULATIONS; (III) ESTABLISHING DEADLINE AND PROCEDURES FOR FILING OBJECTIONS TO (A) CONFIRMATION OF THE PLAN, AND (B) THE DEBTORS' PROPOSED CURE AMOUNTS FOR UNEXPIRED LEASES AND EXECUTORY CONTRACTS TO BE ASSUMED PURSUANT TO THE PLAN; (IV) APPROVING THE SENIOR SECURED NOTES OFFERING PROCEDURES; AND (V) GRANTING RELATED RELIEF**

The debtors and debtors in possession in the above-captioned jointly administered cases (collectively, the "Debtors") hereby submit this motion (the "Motion") pursuant to sections 1125 and 1126 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2002, 3016, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3017-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for the entry of the proposed order, attached hereto as Exhibit I (the "Proposed Order"),

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. ("ARE Holdings") (9368), Aventine Renewable Energy, LLC ("ARE LLC") (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

(i) approving the Disclosure Statement for the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated as of December 4, 2009 (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Proposed Disclosure Statement"); (ii) establishing procedures for solicitation and tabulation of votes to accept or reject the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated as of December 4, 2009 (including all exhibits thereto and as the same may be further amended, modified or supplemented from time to time, the "Plan")[2] including (a) approving the form and manner of the solicitation packages, (b) approving the form and manner of notice of the Confirmation Hearing (as defined below), (c) establishing a record date and approving procedures for distributing solicitation packages, (d) approving the forms of ballots, including the Class 5 Master Ballot and Class 9(a) Master Ballot (each as defined below), (e) establishing the deadline for the receipt of ballots, and (f) approving procedures for tabulating acceptances and rejections of the Plan; (iii) establishing the deadline and procedures for filing objections to (a) confirmation of the Plan, and (b) the Debtors' proposed cure amounts for unexpired leases and executory contracts to be assumed pursuant to the Plan; (iv) approving the Secured Notes Offering Procedures (as defined below); and (v) granting related relief.  In support of the Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b) and venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are

---

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement, as applicable.

sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3018, and 3020, and Local Rule 3017-1.

## BACKGROUND

2. On April 7, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Each Debtor is continuing to operate its business and manage its properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. The Debtors' cases are being jointly administered for procedural purposes pursuant to Bankruptcy Rule 1015(b).

4. On April 23, 2009, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors (the "Committee"). No request has been made for the appointment of a trustee or examiner.

5. On December 4, 2009, the Debtors filed the Proposed Disclosure Statement and Plan. A hearing to consider the adequacy of the information contained in the Proposed Disclosure Statement (the "Disclosure Statement Hearing") is currently scheduled for January 13, 2009 at 3:00 p.m. (ET).

## RELIEF REQUESTED

6. By this Motion, the Debtors respectfully request entry of an order (i) approving the Proposed Disclosure Statement as containing "adequate information" as that term is defined in section 1125(a)(1) of the Bankruptcy Code; (ii) establishing procedures for solicitation and tabulation of votes to accept or reject the Plan, including (a) approving the form and manner of the solicitation packages, (b) approving the form and manner of notice of the Confirmation Hearing (as defined below), (c) establishing a record date and approving

procedures for distributing solicitation packages, (d) approving the forms of ballots, including the Class 5 Master Ballot and Class 9(a) Master Ballot, (e) establishing the deadline for the receipt of ballots, and (f) approving procedures for tabulating acceptances and rejections of the Plan; (iii) establishing the deadline and procedures for filing objections to (a) confirmation of the Plan, and (b) the Debtors' proposed cure amounts for unexpired leases and executory contracts to be assumed pursuant to the Plan; (iv) approving the Secured Notes Offering Procedures, and (v) granting related relief.

## BASIS FOR RELIEF

### I.    Approval of the Disclosure Statement

7.    Pursuant to section 1125 of the Bankruptcy Code, a plan proponent must provide holders of impaired claims with "adequate information" regarding a debtor's proposed plan of reorganization.  In that regard, section 1125(a)(1) of the Bankruptcy Code provides in pertinent part that:

> "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).  Thus, a debtor's disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders entitled to vote on the plan.  See In re Phoenix Petroleum Co., 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001); In re Dakota Rail, Inc., 104 B.R. 138, 142 (Bankr. D. Minn. 1989); see also In re Copy Crafters Quickprint Inc., 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (adequacy of disclosure statement "is to be determined on a case-specific basis under a flexible standard that

can promote the policy of chapter 11 towards fair settlement through a negotiation process between informed interested parties"). Fundamentally, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." In re Ferretti, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

8.      In examining the adequacy of the information contained in a disclosure statement, a bankruptcy court has broad discretion. See Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.), 844 F.2d 1142, 1157 (5th Cir. 1988); see also In re Oxford Homes, 204 B.R. 264, 269 (Bankr. D. Me. 1997) (finding that Congress intentionally drew vague contours of what constitutes adequate information so that bankruptcy courts could exercise discretion to tailor them to each case's particular circumstances); In re Dakota Rail, 104 B.R. at 143 (holding that the bankruptcy court has "wide discretion to determine . . . whether a disclosure statement contains adequate information, without burdensome, unnecessary, and cumbersome detail"). This grant of discretion was intended to facilitate the effective reorganization of a debtor in the broad range of businesses in which chapter 11 debtors engage and the broad range of circumstances that accompany chapter 11 cases. See H.R. Rep. No. 595-95, 1st Sess. 408-09 (1977). "In reorganization cases, there is frequently great uncertainty. Therefore, the need for flexibility is greatest." Id. at 409. Accordingly, the determination of whether a disclosure statement contains adequate information is to be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. See In re Phoenix Petroleum, 278 B.R. at 393; Kirk v. Texaco, Inc., 82 B.R. 678, 682 (S.D.N.Y. 1988) ("[t]he legislative history could hardly be more clear in granting broad discretion to bankruptcy judges under § 1125(a)").

5

9. In that regard, courts generally examine whether the disclosure statement contains, if applicable, information such as:

a) the circumstances that gave rise to the filing of the bankruptcy petition;

b) an explanation of the available assets and their value;

c) the anticipated future of the debtor;

d) the source of the information provided in the disclosure statement;

e) one or more disclaimers, which typically indicate that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

f) the condition and performance of the debtor while in chapter 11;

g) claims against the estate;

h) a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

i) the accounting and valuation methods used to produce the financial information in the disclosure statement;

j) the future management of the debtor, including the amount of compensation to be paid to any insiders, directors and/or officers of the debtor;

k) a summary of the plan of reorganization or liquidation;

l) an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

m) the collectability of any accounts receivable;

n) any financial information, valuations or pro forma projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

o) the risks to creditors and interest holders under the plan;

p) the actual or projected value that can be obtained from avoidable transfers;

q)   the existence, likelihood and possible success of nonbankruptcy litigation;

r)   the tax consequences of the plan; and

s)   the relationship of the debtor with its affiliates.

See, e.g., In re Scioto Valley Mortgage Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988); see also Oxford Homes, 104 B.R. at 269 (using similar list). This list is not meant to be comprehensive and a debtor need not provide all the information on the list. Rather, the court must decide what is appropriate in each case. See Ferretti, 128 B.R. at 18-19 (adopting similar list); see also Phoenix Petroleum, 278 B.R. at 393 (making use of similar list but cautioning that "no one list of categories will apply in every case").

10.   Excluding exhibits, the Proposed Disclosure Statement exceeds 100 pages in length and contains more than sufficient detail to permit holders of claims entitled to vote on the Plan to make an informed judgment whether to accept or reject the Plan. Indeed, substantially all of the factors identified in the Scioto Valley Mortgage case, to the extent applicable to the Debtors' cases, are covered in detail in the Disclosure Statement. The Debtors have made every effort to produce a disclosure statement that renders the Plan and process understandable. The Debtors believe that the Proposed Disclosure Statement contains "adequate information" as that phrase is defined in section 1125(a)(1) of the Bankruptcy Code. Accordingly, the Debtors request that the Proposed Disclosure Statement be approved.

**II.    Establishing Procedures for Solicitation of the Plan**

A.    Approval of Form and Manner of Solicitation Package

11.   Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims for the purpose of soliciting their votes and providing adequate notice of the hearing on confirmation of a plan of reorganization:

Upon approval of a disclosure statement,—except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders—the debtor in possession, trustee, proponent of the plan, or clerk as the court orders shall mail to all creditors and equity security holders, and in a chapter 11 reorganization case shall transmit to the United States trustee:

    (1)   the plan or a court-approved summary of the plan;

    (2)   the disclosure statement approved by the court;

    (3)   notice of the time within which acceptances and rejections of the plan may be filed; and

    (4)   any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.

In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Rule 2002(b), and a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the plan.

Fed. R. Bankr. P. 3017(d).

    12.    As further discussed below, after the Court has approved the Proposed Disclosure Statement (as approved, the "Disclosure Statement") as containing adequate information pursuant to section 1125 of the Bankruptcy Code, the Debtors propose to distribute by first class mail to parties in classes entitled to vote on the Plan (the "Voting Classes")[3] the

---

[3]    The Voting Classes consist of: (i) Classes 2(a)-2(f) (Prepetition Secured Credit Facility Claims); (ii) Class 4(b) (Kiewit Aurora West Secured Claim); (iii) Classes 5(a)-5(f) (Prepetition Unsecured Notes Claims); (iv) Classes 6(a)-6(f) (General Unsecured Claims); (v) Classes 7(a)-7(f) (Convenience Claims); and (vi) Class 9(a) (Equity Interests in ARE Holdings and ARE LLC as substantively consolidated and merged in accordance with the Plan).

Confirmation Hearing Notice (as defined below), as well as a package containing solicitation materials (the "Solicitation Package") including:

a)  the Court's Order approving the Proposed Disclosure Statement (the "Disclosure Statement Order"), excluding the exhibits annexed thereto;

b)  the appropriate ballot (each a "Ballot," the proposed forms of which are annexed to the Proposed Order as Exhibit B), together with a return envelope and either a paper copy or a copy in "pdf" format on CD-ROM of the Disclosure Statement (with the Plan and other exhibits annexed thereto); and

c)  such other materials as the Court may direct.

The Debtors submit that such materials and manner of service satisfy the requirements of Bankruptcy Rule 3017(d).

B.  Approval of Form and Manner of Confirmation Hearing Notice

13.  As indicated above, upon approval of the Proposed Disclosure Statement, the Debtors will serve by first class mail upon the appropriate parties either (i) written notice (the "Confirmation Hearing Notice") substantially in the form annexed to the Proposed Order as Exhibit A, of (a) the Court's approval of the Proposed Disclosure Statement, (b) the deadline for voting on the Plan, (c) the date of the Confirmation Hearing (as defined below), and (d) the deadline and procedures for filing objections to the confirmation of the Plan, together with the Solicitation Package, or (ii) a Notice of Non-Voting Status (as defined below).  The Debtors submit that such materials and manner of service satisfy the requirements of Bankruptcy Rule 3017(d).

C.  Establishment of Record Date and Approving of
    Procedures for Distribution of Solicitation Packages

14.  Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan of reorganization, "creditors and equity security

holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.

15.    The Debtors propose to assemble ownership lists of the Debtors' claims and securities as of the date that an order is entered approving the Proposed Disclosure Statement, and the Debtors request that the Court establish such date as the record date (the "Record Date") for purposes of determining the creditors and interest holders that are entitled to vote (subject to the voting procedures set forth below) on the Plan or, in the case of non-voting classes, for purposes of determining the creditors and interest holders to receive certain plan-related materials. The Debtors expect that they will be able to commence distribution of the Solicitation Package to the Voting Classes and distribute the Confirmation Hearing Notice and other appropriate notices to parties not entitled to vote on the plan on or before the date that is seven (7) days after the date of the entry of the Disclosure Statement Order (the "Solicitation Commencement Date").

16.    The Debtors shall cause to be distributed the Disclosure Statement Order (excluding exhibits thereto), the Confirmation Hearing Notice, the Disclosure Statement (together with the Plan and other exhibits annexed thereto) and such other materials as the Court may direct to, among other parties (to the extent such parties did not otherwise receive the Solicitation Package):

        (a)      the United States Trustee for the District of Delaware;

        (b)      counsel for the Committee;

        (c)      counsel to the agent for the Debtors' prepetition secured lenders;

                                                                            

(d)        counsel to the agent for the Debtors' postpetition secured lenders;

(e)        the indenture trustee (the "Indenture Trustee") for the Debtors' prepetition senior unsecured 10% notes due 2017 issued (the "Pre-Petition Notes") and its counsel;

(f)        the Securities and Exchange Commission;

(g)        the United States Attorney's Office for the District of Delaware;

(h)        the Department of Justice;

(i)        the Internal Revenue Service (including the Delaware and Washington D.C. offices);

(j)        the Environmental Protection Agency;

(k)        relevant federal, state and local taxing authorities at their statutory addresses;

(l)        relevant state and local environmental agencies; and

(m)        all parties who have filed a request for service of all pleadings pursuant to and in accordance with Bankruptcy Rule 2002 as of the day prior to service.

17.      The Plan and Disclosure Statement also will be available via the internet at http://www.deb.uscourts.gov and http://www.aventineinfo.com.  In addition, the Debtors will provide parties in interest with a paper or electronic copy of the Disclosure Statement upon written request to:  Young Conaway Stargatt & Taylor, LLP, Attn: Debbie Laskin, The Brandywine Building, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware 19899; dlaskin@ycst.com.

18.      To the extent that holders of Administrative Claims, DIP Financing Claims, Fee Claims and Priority Tax Claims are not otherwise entitled to receive a Solicitation Package, on the Solicitation Commencement Date, the Debtors will commence distribution of the Disclosure Statement Order (excluding exhibits thereto), the Confirmation Hearing Notice,

11

the Disclosure Statement (together with the Plan and other exhibits annexed thereto) and such other materials as the Court may direct to all known holders of such Claims

19.     The Debtors anticipate that some of the notices served in these cases, including notices of the Disclosure Statement Hearing, notices of the bar dates established in these cases and notices of the commencement of these cases, have been or may be returned. The Debtors believe that it would be costly and inefficient to distribute the Solicitation Package to the same addresses to which undeliverable notices were distributed. Therefore, the Debtors seek the Court's approval for a departure from the strict notice rule, excusing the Debtors from distributing Solicitation Packages to those entities listed at such addresses if the Debtors are unable to obtain accurate addresses for such entities before the Solicitation Commencement Date after having exercised good faith efforts to locate a more current address. Further, if the Debtors send Solicitation Packages, which are deemed undeliverable, and, in good faith cannot obtain more current addresses, the Debtors seek to be excused from attempting to re-deliver Solicitation Packages to such entities. The Debtors submit that good cause exists for implementing the aforementioned notice and service procedures.

D.     Approval of Forms of Ballot and Procedures for Distribution to Beneficial Holders, and Notices to Deemed Rejecting Classes

20.     Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot to "creditors and equity security holders entitled to vote on the plan." The Debtors propose to distribute to certain creditors and interest holders, as described below, Ballots substantially in the forms annexed as Exhibit B to the Proposed Order. The forms of the Ballots are based upon Official Form No. 14 but have been modified to address the particular aspects of these chapter 11 cases and to include certain additional information that the Debtors believe to be relevant and appropriate for the class of claims that is entitled to vote to accept or reject the Plan. The

12

Debtors propose that they may, in their reasonable discretion, provide creditors in Class 2 and Class 5 a single Ballot with respect to all of the Debtors rather than requiring such creditors to vote their claims as against each of the Debtors on separate Ballots.

21.    The Debtors request that, within three (3) days of the Record Date, the Agent (the "Pre-Petition Agent") for the Debtors' prepetition secured lenders (the "Pre-Petition Lenders") provide to the Balloting Agent (as defined below) a written list of the holders of claims in Class 2, including contact information and voting amount for each such creditor (the "Class 2 Voting List"), as of the Record Date. Only holders of Class 2 Claims listed on the Class 2 Voting List will be entitled to vote, and such creditors will only be entitled to vote in the amount set forth in the Class 2 Voting List, except as otherwise set forth herein or pursuant to any order of the Court. With respect to Class 2, the Balloting Agent shall provide the Pre-Petition Agent, with sufficient copies of the Solicitation Packages and the appropriate Ballot and the Pre-Petition Agent will be required to send the Solicitation Packages to the lenders holding Class 2 Claims.

22.    The Debtors propose that the Indenture Trustee be responsible for distributing Solicitation Packages to holders of Class 5 Claims, as well as collecting, tabulating and submitting the votes cast in Class 5. Accordingly, the Debtors have also prepared a master ballot (the "Class 5 Master Ballot") to be distributed to and completed by the Indenture Trustee. Holders of Class 5 Claims should not submit individual Ballots to the Balloting Agent. The Debtors also request that they not be required to distribute any Ballots to individual creditors asserting claims based solely on their ownership of the Pre-Petition Notes and that the Balloting Agent not be required to tabulate any Ballots cast in Class 5 other than the Class 5 Master Ballot.

DB02:8937123.10                          068125.1001

23.     The Debtors propose that the Indenture Trustee be required to forward Solicitation Packages, including individual Class 5 Ballots and Subscription Forms (as defined below),[4] to the holders of Class 5 Claims for voting and include a return envelope provided by and addressed to the Indenture Trustee. The Debtors request that the holders of Class 5 Claims return their completed individual Ballots (but not Subscription Forms) to the Indenture Trustee so that they are received by the date that is three (3) business days prior to the Voting Deadline or such earlier date as may be established by the Indenture Trustee, in the exercise of its reasonable discretion. The holders of Class 5 Claims should return their completed Subscription Forms to the Debtors so that they are received no later than 5:00 p.m. (prevailing Eastern Time) on February 17, 2010. The Indenture Trustee shall collect the individual Ballots, tabulate the votes submitted by the holders of claims within Class 5 and record them on the Class 5 Master Ballot. The Indenture Trustee shall submit one Class 5 Master Ballot on behalf of Class 5 to the Balloting Agent, as well as all original copies of the individual Ballots cast in Class 5, so as to be received on or before the Voting Deadline.

24.     In addition, the Debtors intend to deliver Ballots to the record holders of Equity Interests in Class 9(a), including, without limitation, brokers, banks, commercial banks, transfer agents, trust companies, dealers or other agents or nominees (each an "Equity Voting Nominee"). Each Equity Voting Nominee will receive a master ballot for Class 9(a) (each a "Class 9(a) Master Ballot") and sufficient Solicitation Packages with individual Class 9(a) Ballots to distribute to the beneficial holders of the Equity Interests included in Class 9(a) (the "Beneficial Owners").[5] The Debtors propose that each Equity Voting Nominee be responsible

---

[4]  The Balloting Agent shall distribute sufficient Solicitation Packages to the Indenture Trustee for all holders of Class 5 Claims.

[5]  Upon request from any Equity Voting Nominee, additional Solicitation Packages and individual Class 9(a) Ballots will be provided.

for distributing Solicitation Packages to holders of Class 9(a) Claims, as well as collecting, tabulating and submitting the votes cast in Class 9(a). Holders of Class 9(a) Equity Interests should not submit individual Ballots to the Balloting Agent.[6]

25.    The Debtors propose that each Equity Voting Nominee be required to forward Solicitation Packages, including individual Class 9(a) Ballots, to the Beneficial Owners for voting and include a return envelope provided by and addressed to such Equity Voting Nominee. The Debtors request that the Beneficial Owners return their completed individual Ballot to their respective Equity Voting Nominee so that they are received by the date that is three (3) business days prior to the Voting Deadline or such earlier date as may be established by the respective Equity Voting Nominee, in the exercise of its reasonable discretion. Each Equity Voting Nominee shall collect the individual Ballots, tabulate the votes submitted by the holders of Class 9(a) Equity Interests and record them on its respective Class 9(a) Master Ballot. The Equity Voting Nominee shall submit its respective Class 9(a) Master Ballot, as well as all original copies of the individual Ballots cast in Class 9(a) that it has received from Beneficial Owners, so as to be received on or before the Voting Deadline.

26.    Other than the holders of claims in Class 2 and Class 5 and interests in Class 9(a) who will receive Ballots from their respective representatives as set forth above, the appropriate Ballot forms with respect to each Debtor will be distributed to the holders of Claims in the remaining Voting Classes entitled to vote on the Plan.

27.    Consistent with section 1126(f) of the Bankruptcy Code and Bankruptcy Rule 3017(d), with respect to holders of claims or interests in (i) Classes 1(a)-1(f) (Other Priority Claims); (ii) Classes 3(a)-3(f) (Other Secured Claims); (iii) Class 4(a) (Kiewit Mt. Vernon

---

[6]    Upon written request to the Debtors, the Debtors will reimburse the Pre-Petition Agent, the Indenture Trustee and any Voting Nominee for their reasonable out-of-pocket costs and expenses incurred in connection with the distribution and collection of ballots.

Secured Claim); and (iv) Classes 8(a)-8(f) (Intercompany Claims) (collectively, the "Unimpaired Creditors"), which classes are conclusively presumed to have accepted the Plan, since the Unimpaired Creditors are deemed to accept the Plan, the Debtors propose to send to such creditors the Confirmation Hearing Notice and a notice substantially in the form annexed to the Proposed Order as Exhibit C (the "Notice of Non-Voting Status").

28. In addition, consistent with section 1126(g) of the Bankruptcy Code and Bankruptcy Rule 3017(d), with respect to holders of interests in Classes 9(b)-9(f) (equity interests in Debtors other than ARE Holdings and ARE LLC) (collectively, the "Rejecting Equity Holders"), which classes are conclusively presumed to reject the Plan, in lieu of a Solicitation Package, the Debtors propose to send to such claimants the Confirmation Hearing Notice and the Notice of Non-Voting Status.

29. The Notice of Non-Voting Status sets forth, among other things, the manner in which a copy of the Plan and Disclosure Statement may be obtained. The Debtors submit that such notice satisfies the requirements of the Bankruptcy Code and Bankruptcy Rule 3017(d). Accordingly, the Debtors request that the Court determine that they are not required to distribute copies of the Plan, Disclosure Statement, or Disclosure Statement Order to any of the Unimpaired Creditors, which are deemed to accept the Plan, or to any of the Rejecting Equity Holders, which are deemed to reject the Plan, unless requested by any of the Unimpaired Creditors or Rejecting Equity Holders in writing.

E.    Establishment of Deadline for Receipt of Ballots

30. Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, the Court shall fix a time within which the holders of claims or equity security interests may accept or reject a plan. The Debtors anticipate commencing the solicitation period within seven (7) days after the entry of the Disclosure Statement Order and

DB02:8937123.10                     068125.1001

propose an approximately twenty-eight (28) days solicitation period in these cases. Based on such schedule, the Debtors propose that in order to be counted as a vote to accept or reject the Plan, each Ballot must be properly executed, completed, and delivered to the Balloting Agent so as to be received by the Balloting Agent no later than 4:00 p.m. (prevailing Eastern Time) on February 17, 2010 or such other date as agreed to by the Debtors or otherwise ordered by the Court (the "Voting Deadline"). The Debtors submit that such solicitation period is a sufficient period within which creditors can make an informed decision to accept or reject the Plan.

   F.  Approval of Procedures for Vote Tabulation

     31.  Section 1126(c) of the Bankruptcy Code provides as follows:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

     32.  Section 1126(d) of the Bankruptcy Code provides as follows:

> A class of interests has accepted a plan if such plan has been accepted by holders of such interests, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount of the allowed interests of such class held by holders of such interests, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(d).

Further, Bankruptcy Rule 3018(a) provides that "the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." Fed. R. Bankr. P. 3018(a).

a)   *Retention of Garden City as Balloting Agent*

33.   On the Petition Date, the Debtors filed an application for an order approving the Debtors' agreement with Garden City to, among other things, assist the Debtors as their claims, noticing and balloting agent (the "Balloting Agent"), as well as to maintain the official claims register [Docket No. 6].  On April 9, 2009, the Court entered an order approving the Debtors' application to retain Garden City [Docket No. 29].  Accordingly, Garden City, or its agents, will perform all services relating to the solicitation of votes on the Plan (the "Balloting Services"), including, without limitation:

(i)   mailing the notice of hearing to consider confirmation of the Plan;

(ii)   identifying voting and non-voting creditors and equity security holders;

(iii)   preparing voting reports by class and voting amount as well as maintaining all such information their records and databases;

(iv)   printing ballots specific to each creditor, indicating that the creditor is a member of a class entitled to vote under the Plan, the amount of such creditor's claim for voting purposes and other relevant information;

(v)   coordinating the mailing of ballots and providing an affidavit verifying the mailing of ballots;

(vi)   receiving ballots and tabulating the votes on the Plan; and

(vii)   providing any other balloting related services as the Debtors may from time to time request including, without limitation, providing testimony at the confirmation hearing with respect to the Balloting Services and the results of the vote on the Plan.

b)   *Ballot Tabulation*

34.   For purposes of voting on the Plan, with respect to all creditors of the Debtors, the Debtors propose that the amount of a claim used to tabulate acceptance or rejection of the Plan should be, as applicable:

18

a. The claim listed in the Debtors' schedules of assets and liabilities (the "Schedules"); provided that (i) such claim is not scheduled as contingent, unliquidated, undetermined or disputed and (ii) no proof of claim has been timely filed (or otherwise deemed timely filed by the Court under applicable law); provided, further, that no party whose claim has been indefeasibly paid, in full or in part, shall only be permitted to vote the unpaid amount of such claim, if any, to accept or reject the Plan.

b. The noncontingent and liquidated amount specified in a proof of claim timely filed with the Court or Garden City (or otherwise deemed timely filed by the Court under applicable law) to the extent the proof of claim is not the subject of an objection filed no later than **February 3, 2010** ("Voting Objection Deadline") (or, if such claim has been resolved for allowance and/or voting purposes pursuant to a stipulation or order entered by the Court, or otherwise resolved by the Court, the amount set forth in such stipulation or order).

c. The amount temporarily allowed by the Court for voting purposes, pursuant to Bankruptcy Rule 3018(a), provided that such allowance for voting purposes be after notice consistent with the procedures set forth herein, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

d. Except as otherwise provided in subsection (c) hereof, with respect to Ballots cast by alleged creditors whose claims (i) are not listed on the Debtors' schedule of liabilities or (ii) are listed as disputed, contingent and/or unliquidated on the Debtors' schedule of liabilities, but who have timely filed proofs of claim in unliquidated or unknown amounts that are not the subject of an objection filed before the commencement of the Confirmation Hearing, such Ballots shall be counted in determining whether the numerosity requirement of section 1126(c) of the Bankruptcy Code has been met, but shall not be counted in determining whether the aggregate claim amount requirement has been met.

35. Additionally, the Debtors seek authorization from this Court to object to

any claim (as defined in section 101(5) of the Bankruptcy Code) solely for Plan voting purposes

by filing a determination motion (the "Determination Motion") no later than the Voting

Objection Deadline. Further, if a creditor casts a Ballot and has timely filed a proof of claim (or

has otherwise had a proof of claim deemed timely filed by the Court under applicable law), but

the creditor's claim is the subject of an objection filed no later than the Voting Objection Deadline, the Debtors request, in accordance with Bankruptcy Rule 3018, that the creditor's Ballot not be counted, unless such claim is temporarily allowed by the Court for voting purposes, pursuant to Bankruptcy Rule 3018(a), after a Claims Estimation Motion (as defined below) is filed.[7] Notwithstanding the foregoing, if an objection to a claim requests that such claim be reclassified and/or allowed in a fixed, reduced amount, such claimant's Ballot shall be counted in such reduced amount and/or as the reclassified category.

36. If a creditor seeks to have its claim temporarily allowed for purposes of voting to accept or reject the Plan pursuant to Bankruptcy Rule 3018(a), the Debtors request that such creditor be required to file a motion (the "Claims Estimation Motion") for such temporary allowance by the later of (a) the Voting Objection Deadline, or (b) if such claim is the subject of an objection or a Determination Motion, seven (7) days after the filing of the applicable objection or Determination Motion.

37. In the event that a Determination Motion or Claims Estimation Motion is filed, the Debtors request that the Court allow the non-moving party to file a reply to such motion by the later of (i) the Voting Objection Deadline, or (ii) seven (7) days after the filing of the applicable motion (the "Voting Objection Reply Deadline"), and that a hearing, subject to the Court's availability, be scheduled within seven (7) days of the Voting Objection Reply Deadline but in no event later than the Confirmation Hearing. The Debtors further request that the ruling by the Court on any Determination Motion or Claims Estimation Motion be considered a ruling

---

[7] This proposed procedure is consistent with section 1126 of the Bankruptcy Code, which provides that a plan may be accepted or rejected by the holder of a claim allowed under section 502 of the Bankruptcy Code. In turn, section 502(a) of the Bankruptcy Code provides that a filed proof of claim is deemed allowed "unless a party in interest . . . objects." 11 U.S.C. § 502(a).

with respect to the allowance of the claim(s) under Bankruptcy Rule 3018 and such claim(s) would be counted, for voting purposes only, in the amount determined by the Court.

38. The Debtors propose that in the event that a claimant reaches an agreement with the Debtors as to the treatment of its claim for voting purposes, a stipulation setting forth that agreement shall be presented to the Court for approval by notice of proposed stipulation and order, with presentment upon three (3) business days' notice to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; and (c) counsel to the Backstop Purchasers (together with the Debtors, collectively, the "Notice Parties").

39. The Debtors further request that the following voting procedures and standard assumptions be used in tabulating the Ballots:

a.    For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate claims held by a single creditor in a particular class will be aggregated as if such creditor held one claim against the Debtors in such class, and the votes related to such claims will be treated as a single vote to accept or reject the Plan.

b.    Creditors must vote all of their claims within a particular class either to accept or reject the Plan and may not split their vote. Accordingly, a Ballot (or multiple Ballots with respect to multiple claims within a single class) that partially rejects and partially accepts the Plan will not be counted.

c.    Ballots that fail to indicate an acceptance or rejection of the Plan or that indicate both acceptance and rejection of the Plan, but which are otherwise properly executed and received prior to the Voting Deadline, will not be counted.

d.    Only Ballots that are timely received with signatures will be counted. Unsigned Ballots will not be counted.

e.    Ballots postmarked prior to the Voting Deadline, but received after the Voting Deadline, will not be counted.

f.    Ballots which are illegible, or contain insufficient information to permit the identification of the creditor, will not be counted.

DB02:8937123.10
068125.1001

g.    Whenever a creditor casts more than one Ballot voting the same claim prior to the Voting Deadline, the last valid Ballot received prior to the Voting Deadline shall be deemed to reflect the voter's intent and supersede any prior Ballots.

h.    If a creditor simultaneously casts inconsistent duplicate Ballots with respect to the same claim, such Ballots shall not be counted.

i.    Each creditor shall be deemed to have voted the full amount of its claim.

j.    Unless otherwise ordered by the Court, questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots shall be determined by the Balloting Agent and the Debtors, which determination shall be final and binding.

40.    Similar procedures have been approved in other chapter 11 cases. See, e.g., In re Interlake Material Handling, Inc., Case No. 09-10019 (KJC) (Bankr. D. Del. Jul. 1, 2009); In re Blue Tulip Corporation, Case No. 09-10015 (KG) (Bankr. D. Del. Apr. 22, 2009); In re KMCVNO, Inc., Case No. 08-10600 (BLS) (Bankr. D. Del. Jan. 5, 2009); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW) (Bankr. D. Del. Dec. 17, 2008); In re American Home Mortgage Holdings, Inc., Case No. 07-11047 (CSS) (Bankr. D. Del. Dec. 1, 2008). The Debtors submit that such procedures provide for a fair and equitable voting process.

III.    **Establishment of Deadline and Procedures for Filing Objections to Confirmation of the Plan**

A.    Scheduling the Confirmation Hearing

41.    Bankruptcy Rule 3017(c) provides:

On or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation.

Fed. R. Bankr. P. 3017(c).

42.    In accordance with Bankruptcy Rule 3017(c), the Debtors request that a hearing on confirmation of the Plan (the "Confirmation Hearing") be scheduled, subject to the Court's availability, for February 24, 2010 at 3:00 p.m. (ET).

43.    The Confirmation Hearing may be continued from time to time by the Court or the Debtors without further notice other than adjournments announced in open court. The proposed timing for the Confirmation Hearing is in compliance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and will enable the Debtors to pursue confirmation of the Plan in a timely fashion in order to ensure confirmation and consummation of the Plan within the timeframe contemplated by the Backstop Commitment Agreement.

B.    Establishing Procedures for Notice of the Confirmation Hearing

44.    Bankruptcy Rules 2002(b) and (d) require not less than twenty-eight days' notice to all creditors and equity security holders of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan. In accordance with Bankruptcy Rules 2002 and 3017(d), the Debtors propose to provide to all creditors and equity security holders a copy of the Confirmation Hearing Notice, setting forth (a) the date of approval of the Disclosure Statement, (b) the Record Date, (c) the Voting Deadline, (d) the time fixed for filing objections to confirmation of the Plan, and (e) the time, date, and place for the Confirmation Hearing. Such notice will be sent contemporaneously with the Solicitation Packages at least twenty-eight (28) days prior to the deadline to object to confirmation of the Plan.

45.    Bankruptcy Rule 2002(1) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." In addition to mailing the Confirmation Hearing Notice, the Debtors propose to publish the Confirmation Hearing Notice, at least twenty-eight (28) days before the deadline to file objections to confirmation of the Plan, in the national edition of the New York Times or Wall

Street Journal. Additionally, the Debtors will post the Confirmation Hearing Notice electronically on their reorganization website at http://www.aventineinfo.com. The Debtors believe that publication of the Confirmation Hearing Notice will provide sufficient notice of the approval of the Disclosure Statement, the Record Date, the Voting Deadline, the time fixed for filing objections to confirmation of the Plan, and the time, date, and place of the Confirmation Hearing to persons who do not otherwise receive actual written notice by mail as provided for in the Disclosure Statement Order.

46.    The Debtors submit that the foregoing procedures will provide adequate notice of the Confirmation Hearing and, accordingly, request that the Court approve such notice as adequate.

C.    Establishing Procedures for the Filing
       of Objections to Confirmation of the Plan

47.    Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." The Confirmation Hearing Notice provides, and the Debtors request that the Court direct that objections to confirmation of the Plan or proposed modifications to the Plan, if any, must:

(a)    be in writing;

(b)    state the name and address of the objecting party and the amount and nature of the claim or interest of such party;

(c)    state with particularity the basis and nature of any objection to the Plan and, if practicable, proposed modification to the Plan that would resolve such objection; and

(d)    be filed, together with proof of service, with the Court and served so that they are received by the Notice Parties, no later than **4:00 p.m. (prevailing Eastern Time), on February 17, 2010** which deadline may be extended by the Debtors (the "Confirmation Objection Deadline"). The proposed timing for filing and service of objections and proposed modifications, if any, will afford the Court, the Debtors, and other parties in interest sufficient time to

DB02:8937123.10    068125.1001

consider the objections and proposed modifications prior to the Confirmation Hearing.

## IV.  Asserting Proposed Cure Amounts for Contracts Assumed Pursuant to the Plan

48.    Article X(A) of the Plan sets forth the treatment of all executory contracts, unexpired leases and employment agreements to which the Debtors were a party prior to the Petition Date that were not (i) assumed in the chapter 11 cases prior to the Confirmation Date, (ii) rejected in the chapter 11 cases prior to the Confirmation Date, or (iii) specifically rejected pursuant to the Plan (collectively, the "Contracts and Leases").  The Plan provides that, to the extent not previously assumed in the chapter 11 cases, all executory contracts and unexpired leases existing between any Debtor and any person or entity shall be assumed (collectively, the "Assumed Contracts and Leases") except for (i) executory contacts or unexpired leases that were rejected before the Confirmation Date, (ii) employment agreements that were terminated or rejected prior to the Confirmation Date, and (iii) contracts and unexpired leases being rejected pursuant to the Plan, including without limitation those identified in the Plan Supplement (collectively, the "Rejected Contracts and Leases"), which contracts and unexpired leases are deemed rejected by the applicable Debtor as of the corresponding rejection dates set forth in the Plan Supplement.  Moreover, Article X(B) of the Plan requires the Debtors to cure any and all undisputed defaults in the Assumed Contracts and Leases in accordance with section 365 of the Bankruptcy Code within 30 days of entry of a Final Order determining the applicable cure amount, or as may otherwise be agreed to by the parties.  The Debtors will mail or cause to be mailed to all of the known counterparties to each of the Contracts and Leases a Confirmation Hearing Notice and the Contract Party Notice (as defined below).[8]

---

[8]    Parties to Contracts and Leases that have filed claims that are entitled to vote on the Plan in accordance with the procedures set forth in section II above will also receive the appropriate Solicitation Package.

49.     Section 365(b) of the Bankruptcy Code also requires the Debtors to cure or provide adequate assurance that the Debtors will promptly cure existing defaults under the Assumed Contracts and Leases.  Establishing the amounts to be paid in satisfaction of all such cure obligations is an important element of Plan confirmation and feasibility.  To aid in the implementation of the Plan, the Debtors seek to establish a procedure for determining cure amounts ("Cure Amounts") and a deadline for objections relating to contracts and leases that may be assumed pursuant to the Plan.  The Debtors will provide parties to the Assumed Contracts and Leases with proposed Cure Amounts for the period through and including December 31, 2009.  The Debtors intend to pay all undisputed amounts that come due under the Assumed Contracts and Leases in the ordinary course on and after January 1, 2010, and, accordingly, the Debtors submit that parties to the Assumed Contracts and Leases need not submit Cure Objections with respect to amounts coming due in the ordinary course on and after January 1, 2010.

50.     To facilitate a prompt resolution of cure disputes and objections relating to the assumption of these agreements, the Debtors propose the following deadlines and procedures:[9]

> i.     the Debtors will cause the *Notice of (I) Possible Assumption of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto* (the "Contract Party Notice"), in a form substantially similar to the form attached to the Proposed Order as Exhibit D, to be served on the non-debtor parties to all executory contracts and unexpired leases to be assumed as part of the Plan on the Solicitation Commencement Date.  Among other things, the Contract Party Notice shall set forth the amounts outstanding for the period through and including December 31, 2009 that the Debtors believe must be paid in order to cure all monetary defaults under each of the Assumed Contracts and Leases;

> ii.    the non-debtor parties to the Assumed Contracts and Leases shall have until the Cure Objection Deadline (as defined below) to object (a

---

[9]    Receipt of a Contract Party Notice does not constitute a determination by the Debtors to assume any executory contract or unexpired lease; the Debtors may still decide not to assume any executory contract or unexpired lease through the Plan or otherwise.

"Cure Objection") to the (a) Cure Amounts listed by the Debtors and to propose alternative cure amounts, and/or (b) proposed assumption of the Assumed Contracts and Leases under the Plan;

iii.    any party objecting to the Cure Amount(s), whether or not such party previously has filed a proof of claim with respect to amounts due under the applicable Assumed Contract or Lease, or objecting to the potential assumption of such Assumed Contract or Lease, shall be required to file and serve a Cure Objection, in writing, setting forth with specificity any and all cure obligations that the objecting party asserts must be cured or satisfied in respect of the Assumed Contract or Lease and/or any and all objections to the potential assumption of such Assumed Contract or Lease, together with all documentation supporting such cure claim or objection, upon each of the Notice Parties so that the Cure Objection is actually received by them no later than **4:00p.m. (ET) on February 10, 2010**, as may be extended by the Debtors (the "Cure Objection Deadline"); provided, however, that if the Debtors amend the Contract Party Notice or any related pleading that lists the Assumed Contracts and Leases to add a contract or lease or to reduce the cure amount thereof, except where such reduction was based upon the mutual agreement of the parties, the non-debtor party thereto shall have at least seven (7) calendar days after service of such amendment to object thereto or to propose an alternative cure amount(s). If a Cure Objection is timely filed and the parties are unable to settle such Cure Objection, the Bankruptcy Court shall determine the amount of any disputed Cure Amount(s) or objection to assumption at a hearing to be held at the time of the Confirmation Hearing or such other hearing date to which the parties may mutually agree. The Debtors may, in their sole discretion, extend the Cure Objection Deadline without further notice, but are not obligated to do so; and

iv.    in the event that no Cure Objection is timely filed with respect to an Assumed Contract or Lease, the counterparty to such Assumed Contract or Lease shall be deemed to have consented to the assumption of the Assumed Contract or Lease and the Cure Amount proposed by the Debtors and shall be forever enjoined and barred from seeking any additional amount(s) on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtors, their estates or the Reorganized Debtors. In addition, if no timely Cure Objection is filed with respect to an Assumed Contract or Lease, upon the Effective Date of the Plan, the Reorganized Debtors and the counterparty to such Assumed Contract or Lease shall enjoy all of the rights and benefits under the Assumed Contract or Lease without the necessity of obtaining any party's written consent to the Debtors' assumption of the Assumed Contract or Lease, and

DB02:8937123.10

068125.1001

> such counterparty shall be deemed to have waived any right to
> object, consent, condition or otherwise restrict the Debtors'
> assumption of the Assumed Contract or Lease.

The inclusion of an Assumed Contract or Lease in the Contract Party Notice is without prejudice

to the Debtors' right to modify their election to assume or to reject such Assumed Contract or

Lease prior to the entry of a final, non-appealable order (which order may be the order

confirming the Plan) deeming any such Assumed Contract or Lease assumed or rejected, and

inclusion in the Contract Party Notice is <u>not</u> a final determination that any Assumed Contract or

Lease will, in fact, be assumed.

     51.    The Debtors submit that the foregoing procedures will help facilitate the

resolution of any issues concerning Cure Amounts and/or objections regarding whether an

Assumed Contract or Lease satisfies the requirements for assumption, while adequately

protecting the rights of the counterparties to the Assumed Contracts and Leases, and therefore

request approval of such procedures.

## V.   The Secured Notes Offering Procedures and the Subscription Form are Appropriate Under the Circumstances

     52.    The Plan also contemplates that certain holders of Claims in Class 5 shall

have the right to participate in the optional purchase of Senior Secured Notes and Noteholder

New Equity (as such terms are defined in the Plan) (the "Offering"). As more fully set forth in

the Disclosure Statement and the offering procedures attached to the Plan as Exhibit B (the

"<u>Secured Notes Offering Procedures</u>"),[10] the Offering will take place along the same timeline as

solicitation of voting on the Plan. In connection with the Offering, on the Solicitation

Commencement Date, the Indenture Trustee will distribute, or cause to be distributed, a

subscription form (including instructions) substantially in the form attached to the Solicitation

---

[10]   The Secured Notes Offering Procedures are attached to the Proposed Order as <u>Exhibit E</u> and are incorporated herein by reference.

Order as Exhibit F (the "Subscription Form") to holders of Claims in Class 5. The Debtors

submit that the Secured Notes Offering Procedures and the Subscription Form are appropriate

under the circumstances and request the Court's approval in connection therewith.

## NOTICE

53.     Notice of this Motion will be provided to: (i) the Office of the United

States Trustee; (ii) counsel to the Committee; (iii) counsel to the Agent for the Debtors'

Prepetition Secured Lenders; (iv) counsel to the Backstop Purchasers; and (v) all parties entitled

to notice under Local Rule 2002-1(b). In light of the nature of the relief requested herein, the

Debtors submit that no other or further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter the

Proposed Order, substantially in the form attached hereto as Exhibit I, and grant such other and

further relief as this Court deems just and proper.

Dated: Wilmington, Delaware
          December 22, 2009

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Ryan M. Bartley
James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Matthew B. Lunn (No. 4119)
Ryan M. Bartley (No. 4985)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone:     (302) 571-6600
Facsimile:      (302) 571-1253

*Counsel to the Debtors and Debtors in Possession*