# **EXHIBIT I**

Proposed Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **AVENTINE RENEWABLE ENERGY HOLDINGS, INC.,** a Delaware Corporation, *et al.,* | Case No. 09-11214 (KG) |
| Debtors.[1] | (Jointly Administered) |
| | **Ref. Docket No. ___** |

**ORDER (I) APPROVING THE DISCLOSURE STATEMENT; (II) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE PLAN, INCLUDING (A) APPROVING FORM AND MANNER OF SOLICITATION PROCEDURES, (B) APPROVING THE FORM AND NOTICE OF THE CONFIRMATION HEARING, (C) ESTABLISHING RECORD DATE AND APPROVING PROCEDURES FOR DISTRIBUTION OF SOLICITATION PACKAGES, (D) APPROVING FORMS OF BALLOTS, (E) ESTABLISHING DEADLINE FOR RECEIPT OF BALLOTS, AND (F) APPROVING PROCEDURES FOR VOTE TABULATIONS; (III) ESTABLISHING DEADLINE AND PROCEDURES FOR FILING OBJECTIONS TO (A) CONFIRMATION OF THE PLAN, AND (B) THE DEBTORS' PROPOSED CURE AMOUNTS FOR UNEXPIRED LEASES AND EXECUTORY CONTRACTS ASSUMED PURSUANT TO THE PLAN; (IV) APPROVING THE SECURED NOTES OFFERING PROCEDURES; AND (V) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the debtors and debtors in possession in the above-captioned cases (each a "Debtor" and, collectively, the "Debtors") for entry of an order, pursuant to sections 1125 and 1126 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rules 2002, 3016, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3017-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion, the Plan or the Disclosure Statement, as applicable.

District of Delaware (the "Local Rules"): (i) approving the Proposed Disclosure Statement for the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated as of December 4, 2009 (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Proposed Disclosure Statement"); (ii) establishing procedures for solicitation and tabulation of votes to accept or reject the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (including all exhibits thereto and as the same may be further amended, modified or supplemented from time to time, the "Plan"), including (a) approving the form and manner of the solicitation packages, (b) approving the form and manner of notice of the Confirmation Hearing, (c) establishing a record date and approving procedures for distributing solicitation packages, (d) approving the forms of ballots, (e) establishing the deadline for the receipt of ballots, and (f) approving procedures for tabulating acceptances and rejections of the Plan; (iii) establishing the deadline and procedures for filing (a) objections to confirmation of the Plan, and (b) the Debtors' proposed cure amounts for unexpired leases and executory contracts assumed pursuant to the Plan; (iv) approving the Secured Notes Offering Procedures; and (v) granting related relief; and it appearing that due adequate and sufficient notice of the Motion has been given under the circumstances; and it further appearing that due adequate and sufficient notice pursuant to Bankruptcy Rule 2002(b) of the hearing to approve the Disclosure Statement has been given; and after due deliberation and upon the Court's determination that the relief requested in the Motion is in the best interests of the Debtors, their estates and creditors and other parties in interest; and sufficient cause appearing thereof,

DB02:8937123.10 068125.1001

**IT IS HEREBY FOUND THAT:**

A.     Notice of the Motion and the Disclosure Statement Hearing was served as proposed in the Motion, and such notice constitutes good and sufficient notice to all interested parties and no other or further notice need be provided.

B.     The Proposed Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code.

C.     The forms of ballot annexed hereto as <u>Exhibit B</u> are sufficiently consistent with Official Form No. 14 and adequately address the particular needs of these chapter 11 cases and are appropriate for each of the class of claims that is entitled to vote to accept or reject the Plan.

D.     Ballots need not be provided to the holders of claims and interests in (i) Class 1 (Other Priority Claims), (ii) Class 3 (Other Secured Claims), (iii) Class 4(a) (Kiewit Mt. Vernon Secured Claim), and (iv) Class 8 (Intercompany Claims), because such holders are deemed to accept the Plan.

E.     Ballots need not be provided to the holders of interests in Classes 9(b)-9(f) (equity interests in Debtors other than ARE Holdings and ARE LLC), because such holders are deemed to reject the Plan.

F.     The period, set forth below, during which the Debtors may solicit acceptances to the Plan is a reasonable and adequate period of time under the circumstances for creditors to make an informed decision to accept or reject the Plan.

G.     The procedures for the solicitation and tabulation of votes to accept or reject the Plan (as more fully set forth in the Motion and below) provide for a fair and equitable voting process and are consistent with section 1126 of the Bankruptcy Code.

DB02:8937123.10                                                                                    068125.1001

H.     The Secured Notes Offering Procedures and Subscription Form, attached hereto as Exhibits E and F, respectively, are appropriate under the circumstances.

I.     The notice substantially in the form annexed hereto as Exhibit A (the "Confirmation Hearing Notice") and the procedures set forth below for providing such notice to all creditors and equity security holders of the time, date, and place of the hearing to consider confirmation of the Plan (the "Confirmation Hearing") and the contents of the Solicitation Packages (as defined below) comply with Bankruptcy Rules 2002 and 3017, and service of such materials as set forth herein constitutes sufficient notice to all interested parties.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is GRANTED.

2.     The Proposed Disclosure Statement is APPROVED (as so approved, the "Disclosure Statement").

3.     The record date is established as **January 13, 2010** (the "Record Date") for purposes of this Order and determining which creditors are entitled to vote on the Plan and which creditors and interest holders receive materials which include notices of non-voting status.

4.     The Debtors are authorized and empowered to commence distribution of the Confirmation Hearing Notice, on or before the date that is seven (7) days after the date of entry of this Disclosure Statement Order (the "Solicitation Commencement Date").

5.     The Debtors are authorized and empowered to commence distribution of the packages containing solicitation materials (the "Solicitation Packages") to the Voting Classes including (a) this Order (without the exhibits annexed hereto) and (b) a ballot, together with a

DB02:8937123.10

068125.1001

return envelope and the Disclosure Statement (with the Plan and other exhibits annexed thereto)[3] no later than the Solicitation Commencement Date.

6.    By the Solicitation Commencement Date, the Debtors shall commence or cause service of a copy of (i) this Order (without the exhibits annexed hereto), (ii) the Confirmation Hearing Notice, and (iii) the Disclosure Statement (together with the Plan and other exhibits annexed thereto) to, among other parties (to the extent such parties did not otherwise receive Solicitation Packages):

(a)    the United States Trustee for the District of Delaware;

(b)    counsel for the Committee;

(c)    counsel to the agent for the Debtors' prepetition secured lenders;

(d)    counsel to the agent for the Debtors' postpetition secured lenders;

(e)    the Indenture Trustee for the Debtors' Pre-Petition Notes and its counsel;

(f)    the Securities and Exchange Commission;

(g)    the United States Attorney's Office for the District of Delaware;

(h)    the Department of Justice;

(i)    the Internal Revenue Service (including the Delaware and Washington D.C. offices);

(j)    the Environmental Protection Agency;

(k)    relevant federal, state and local taxing authorities at their statutory addresses;

(l)    relevant state and local environmental agencies; and

(m)    all parties who have filed a request for service of all pleadings pursuant to and in accordance with Bankruptcy Rule 2002 as of the day prior to service.

---

[3]    To the extent the Debtors are required to distribute copies of the Plan and/or Disclosure Statement, the Debtors may distribute either paper copies or electronic copies in "pdf" format on CD-ROM, at their sole discretion; provided, that the Debtors shall make paper copies available upon written request by a party in interest.

7.     The Ballots, including the Class 5 Master Ballot and Class 9(a) Master Ballot, which shall be in substantially the forms annexed hereto as <u>Exhibit B</u> are approved.

8.     Within three (3) days of the Record Date, the Pre-Petition Agent shall provide to the Balloting Agent a written list of the Pre-Petition Lenders holding claims in Class 2 as of the Record Date, including contact information and voting amount for each such creditor (the "<u>Class 2 Voting List</u>").  Only holders of Class 2 Claims listed on the Class 2 Voting List will be entitled to vote, and such creditors will only be entitled to vote in the amount set forth in the Class 2 Voting List, except as otherwise set forth herein or pursuant to any order of the Court. With respect to Class 2, the Balloting Agent shall provide the Pre-Petition Agent, with sufficient copies of the Solicitation Packages and the appropriate ballot and the Pre-Petition Agent shall be required to send the Solicitation Packages to the lenders holding Class 2 Claims.

9.     For the holders of Claims in Class 5, the Debtors shall distribute the Class 5 Master Ballot and sufficient Solicitation Packages containing individual Class 5 Ballots and the Subscription Forms to the Indenture Trustee.  The Indenture Trustee shall forward Solicitation Packages, including individual Class 5 Ballots and the Subscription Forms, to the holders of Class 5 Claims for voting and include a return envelope provided by and addressed to the Indenture Trustee.  The holders of Class 5 Claims shall return their completed individual Ballots (but not the Subscription Forms) to the Indenture Trustee so that the individual Ballots are received by the date that is three (3) business days prior to the Voting Deadline or such earlier date as may be established by the Indenture Trustee, in the exercise of its reasonable discretion. The holders of Class 5 Claims should return their completed Subscription Forms to the Debtors so that they are received no later than **5:00 p.m. (prevailing Eastern Time) on February 17, 2010**.  The Indenture Trustee shall collect the individual Ballots, tabulate the votes submitted by

DB02:8937123.10                                                                                                              068125.1001

the holders of claims within Class 5 and record them on the Class 5 Master Ballot. The Indenture Trustee shall submit one Class 5 Master Ballot on behalf of Class 5 to the Balloting Agent, as well as all of the individual Ballots cast in Class 5, so as to be received on or before the Voting Deadline.

10.     The Debtors shall not be required to distribute any ballots to individual creditors asserting claims based solely on their ownership of the Pre-Petition Notes, and holders of Class 5 Claims should not submit individual ballots to the Balloting Agent. The Balloting Agent shall not tabulate any ballots cast in Class 5 other than the Class 5 Master Ballot.

11.     The Debtors may, in their reasonable discretion, provide creditors in Class 2 and Class 5 a single ballot with respect to all of the Debtors rather than requiring such creditors to vote their claims as against each of the Debtors on separate ballots.

12.     For holders of interests in Class 9(a), the Debtors shall distribute to each Equity Voting Nominee a Class 9(a) Master Ballot and sufficient Solicitation Packages, including individual Class 9(a) Ballots, to distribute to the Beneficial Owners holding Equity Interests in Class 9(a). Each Equity Voting Nominee shall forward Solicitation Packages, including individual Class 9(a) Ballots, to the Beneficial Owners for voting and include a return envelope provided by and addressed to such Equity Voting Nominee. Each Beneficial Owner shall return its completed individual Ballot to its respective Equity Voting Nominee so that the individual Ballot is received by the date that is three (3) business days prior to the Voting Deadline or such earlier date as may be established by its respective Equity Voting Nominee, in the exercise of the Equity Voting Nominee's reasonable discretion. Each Equity Voting Nominee shall collect the individual Ballots, tabulate the votes submitted by the holders of Class 9(a) Equity Interests and record them on its respective Class 9(a) Master Ballot. Each Equity

Voting Nominee shall submit its Class 9(a) Master Ballot, as well as all original copies of the individual Ballots cast in Class 9(a) that it has received from Beneficial Owners, so as to be received on or before the Voting Deadline.

13.     The actual and reasonable costs of the Pre-Petition Agent, the Indenture Trustee and each Equity Voting Nominee of soliciting, collecting and tabulating the individual ballots shall be borne by the Debtors.

14.     Solicitation Packages, which shall include individual Ballots, shall be distributed to holders, as of the Record Date, of claims in Classes 2(a)-2(f) (Prepetition Secured Credit Facility Claims), Class 4(b) (Kiewit Aurora West Secured Claim), Classes 5(a)-5(f) (Prepetition Unsecured Notes Claims), Classes 6(a)-6(f) (General Unsecured Claims), Classes 7(a)-7(f) (Convenience Claims), and Class 9(a) (Equity Interests in ARE Holdings and ARE LLC as substantively consolidated and merged in accordance with the Plan), which classes are designated under the Plan as entitled to vote to accept or reject the Plan.

15.     In addition to receiving a Solicitation Package, holders of Claims in Classes 5(a) – 5(f) (Prepetition Unsecured Notes Claims) shall receive the Secured Notes Offering Procedures and a Subscription Form, substantially in the forms attached hereto as Exhibit E and Exhibit F, respectively.

16.     A copy of the Confirmation Hearing Notice, and a notice of non-voting status, substantially in the form annexed hereto as Exhibit C (the "Notice of Non-Voting Status"), shall be distributed to holders, as of the Record Date, of unimpaired claims in (i) Class 1(a)-1(f) (Other Priority Claims), (ii) Classes 3(a)-3(f) (Other Secured Claims), (iii) Class 4(a) (Kiewit Mt. Vernon Secured Claim), and (iv) Classes 8(a)-8(f) (Intercompany Claims) that are deemed to accept the Plan.  The Debtors are not required to distribute copies of the Plan,

Disclosure Statement, or this Order to any holder of a claim of interest in Class 1, Classes 3(a)-3(f), Class 4(a), or Classes 8(a)-8(f), unless such holder makes a specific request in writing for the same.

17.    A copy of the Confirmation Hearing Notice and a Notice of Non-Voting Status shall be distributed to holders, as of the Record Date, of impaired claims in Classes 9(b)-9(f) (equity interests in Debtors other than ARE Holdings and ARE LLC) that are deemed to reject the Plan. The Debtors are not required to distribute copies of the Plan, Disclosure Statement, or this Order to any holder of a claim of interest in Classes 9(b)-9(f) unless such holder makes a specific request in writing for the same.

18.    To the extent that holders of Administrative Claims, DIP Financing Claims, Fee Claims and Priority Tax Claims are not otherwise entitled to receive a Solicitation Package, on the Solicitation Commencement Date, the Debtors will commence distribution of the Disclosure Statement Order (excluding exhibits thereto), the Confirmation Hearing Notice, the Disclosure Statement (together with the Plan and other exhibits annexed thereto) and such other materials as the Court may direct to all known holders of such Claims.

19.    With respect to addresses from which one or more prior notices served in these cases were returned as undeliverable or from which mailing made pursuant to this Order are returned as undeliverable, the Debtors are excused from distributing Solicitation Packages to those entities listed at such addresses if the Debtors are unable to obtain accurate addresses for such entities before the Solicitation Commencement Date after having exercised good faith efforts to locate more current addresses. Failure to attempt to re-deliver Solicitation Packages to such entities will not constitute inadequate notice of the Confirmation Hearing, the Voting Deadline, or a violation of Bankruptcy Rule 3017(d).

20. All ballots must be properly executed, completed, and the original thereof shall be delivered by first class mail, overnight mail, or mail delivery to the Balloting Agent so as to be actually received by no later than the Voting Deadline. Ballots cast by facsimile, email or other electronic transmission will not be counted.

21. For purposes of voting on the Plan, the amount of a claim held by a creditor or the number of any interests held by an interest holder shall be determined pursuant to the following guidelines:

a. The claim listed in the Debtors' Schedules; provided that (i) such claim is not scheduled as contingent, unliquidated, undetermined or disputed and (ii) no proof of claim has been timely filed (or otherwise deemed timely filed by the Court under applicable law); provided, further, that no party whose claim has been indefeasibly paid, in full or in part, shall only be permitted to vote the unpaid amount of such claim, if any, to accept or reject the Plan.

b. The noncontingent and liquidated amount specified in a proof of claim timely filed with the Court or Garden City (or otherwise deemed timely filed by the Court under applicable law) to the extent the proof of claim is not the subject of an objection filed no later than **February 3, 2010** ("Voting Objection Deadline") (or, if such claim has been resolved for allowance and/or voting purposes pursuant to a stipulation or order entered by the Court, or otherwise resolved by the Court, the amount set forth in such stipulation or order

c. The amount temporarily allowed by the Court for voting purposes, pursuant to Bankruptcy Rule 3018(a), provided that such allowance for voting purposes be after notice consistent with the procedures set forth herein, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

d. Except as otherwise provided in subsection (c) hereof, with respect to ballots cast by alleged creditors whose claims (i) are not listed on the Debtors' schedule of liabilities or (ii) are listed as disputed, contingent and/or unliquidated on the Debtors' schedule of liabilities, but who have timely filed proofs of claim in unliquidated or unknown amounts that are not the subject of an objection filed before the commencement of the Confirmation Hearing, such ballots shall be counted in determining whether the numerosity requirement of section 1126(c) of the Bankruptcy Code

11

has been met, but shall not be counted in determining whether the aggregate claim amount requirement has been met.

22. The Debtors may object to any claim (as defined in section 101(5) of the Bankruptcy Code) solely for Plan voting purposes by filing a Determination Motion no later than the Voting Objection Deadline. Further, if a creditor casts a ballot and has timely filed a proof of claim (or has otherwise had a proof of claim deemed timely filed by the Court under applicable law), but the creditor's claim is the subject of an objection filed no later than the Voting Objection Deadline, the Debtors request, in accordance with Bankruptcy Rule 3018, that the creditor's ballot not be counted, unless such claim is temporarily allowed by the Court for voting purposes, pursuant to Bankruptcy Rule 3018(a), and after a Claims Estimation Motion (as defined below) is filed. Notwithstanding the foregoing, if an objection to a claim requests that such claim be reclassified and/or allowed in a fixed, reduced amount, such claimant's ballot shall be counted in such reduced amount and/or as the reclassified category.

23. If a creditor seeks to have its claim temporarily allowed for purposes of voting to accept or reject the Plan pursuant to Bankruptcy Rule 3018(a), the Debtors request that such creditor be required to file a motion (the "Claims Estimation Motion") for such by the later of (a) the Voting Objection Deadline, or (b) if such claim is the subject of an objection or a Determination Motion, seven (7) days after the filing of the applicable objection or Determination Motion.

24. In the Event that a Determination Motion or Claims Estimation Motion is filed, the Debtors request that the Court allow the non-moving party to file a reply to such motion by the later of (i) the Voting Objection Deadline, or (ii) seven (7) days after the filing of the applicable motion (the "Voting Objection Reply Deadline"), and that a hearing, subject to the Court's availability, be scheduled within seven (7) days of the Voting Objection Reply Deadline

DB02:8937123.10

068125.1001

but in no event later than the Confirmation Hearing. The Debtors further request that the ruling by the Court on any Determination Motion or Claims Estimation Motion be considered a ruling with respect to the allowance of the claim(s) under Bankruptcy Rule 3018 and such claim(s) would be counted, for voting purposes only, in the amount determined by the Court.

25. The Debtors propose that in the event that a claimant reaches an agreement with the Debtors as to the treatment of its claim for voting purposes, a stipulation setting forth that agreement shall be presented to the Court for approval by notice of proposed stipulation and order, with presentment upon three (3) business days' notice to the Notice Parties.

26. The following voting procedures and standard assumptions shall be used in tabulating the Ballots:

a. For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate claims held by a single creditor in a particular class will be aggregated as if such creditor held one claim against the Debtors in such class, and the votes related to such claims will be treated as a single vote to accept or reject the Plan.

b. Creditors must vote all of their claims within a particular class either to accept or reject the Plan and may not split their vote. Accordingly, a Ballot (or multiple Ballots with respect to multiple claims within a single class) that partially rejects and partially accepts the Plan will not be counted.

c. Ballots that fail to indicate an acceptance or rejection of the Plan or that indicate both acceptance and rejection of the Plan, but which are otherwise properly executed and received prior to the Voting Deadline, will not be counted.

d. Only Ballots that are timely received with signatures will be counted. Unsigned Ballots will not be counted.

e. Ballots postmarked prior to the Voting Deadline, but received after the Voting Deadline, will not be counted.

f. Ballots which are illegible, or contain insufficient information to permit the identification of the creditor, will not be counted.

DB02:8937123.10 068125.1001

g.     Whenever a creditor casts more than one Ballot voting the same claim prior to the Voting Deadline, the last valid Ballot received prior to the Voting Deadline shall be deemed to reflect the voter's intent and supersede any prior Ballots.

h.     If a creditor simultaneously casts inconsistent duplicate Ballots with respect to the same claim, such Ballots shall not be counted.

i.     Each creditor shall be deemed to have voted the full amount of its claim.

j.     Unless otherwise ordered by the Court, questions as to the validity, form, eligibility (including time of receipt), acceptance, and revocation or withdrawal of Ballots shall be determined by the Balloting Agent and the Debtors, which determination shall be final and binding.

27.     Any objection, comment or response to confirmation of the Plan (including any supporting memoranda) must be in writing, served on the parties identified below, and filed with the Court, together with proof of service, such that the foregoing are received by such parties and the Court on or before **4:00 p.m. (prevailing Eastern Time) on February 17, 2010,** which deadline may be extended by the Debtors (the "Confirmation Objection Deadline"). The Court shall consider only timely filed written objections. All objections not timely filed and served in accordance with the provisions of the Motion are hereby deemed waived. Objections to confirmation of the Plan should provide proposed language to remedy such objections and shall be served on the following parties: (i) Young Conaway Stargatt & Taylor, LLP; The Brandywine Building; 1000 West Street, 17th Floor; P.O. Box 391; Wilmington, Delaware 19899-0391 (Attn.: Joel A. Waite, Esq. and Matthew B. Lunn, Esq.), counsel to the Debtors; (ii) the United States Trustee for the District of Delaware; 844 King Street, Suite 2207, Lockbox #35; Wilmington, Delaware 19801 (Attn.: Mark S. Kenney, Esq.); (iii) Greenberg Traurig, LLP; The Nemours Building; 1007 North Orange Street, Suite 1200; Wilmington, Delaware 19801 (Attn: Donald Detweiler, Esq.), counsel to the Committee; and (iv) Akin, Gump, Strauss, Hauer

& Feld, LLP; One Bryant Park; New York, New York 10036 (Attn: Michael Stamer, Esq. and Shaya Rochester, Esq.), counsel to the Backstop Purchasers (collectively, the "Notice Parties").

28.    The Debtors, the Committee and any other party supporting the Plan shall be afforded an opportunity to file a response to any objection to confirmation of the Plan, prior to the commencement of the Confirmation Hearing.

29.    In accordance with section 1125(e) of the Bankruptcy Code, to the fullest extent permitted by law, none of the Debtors, the Backstop Purchasers, or their respective directors, officers, employees, shareholders, members, partners, agents or representatives (including attorneys, accountants, financial advisors and investment bankers), each solely in their capacity as such, shall have any liability on account of soliciting votes on the Plan or participating in such solicitation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase of securities.

30.    The Confirmation Hearing Notice is approved.

31.    The Confirmation Hearing will be held at **3:00 p.m. (prevailing Eastern Time) on February 24, 2010**; provided, however, that the Confirmation Hearing may be continued from time to time by the Court or the Debtors, other than an announcement at or before the Confirmation Hearing or any adjourned Confirmation Hearing.

32.    The Debtors shall mail to all creditors and equity security holders a copy of the Confirmation Hearing Notice. The Debtors shall also publish the Confirmation Hearing Notice at least twenty-eight (28) days before the last date to object to confirmation of the Plan in the national edition of the New York Times or the Wall Street Journal. Additionally, the Debtors

DB02:8937123.10                                    068125.1001

will post the Confirmation Hearing Notice electronically on their reorganization website http://www.aventineinfo.com.

33.  Objections to confirmation of the Plan, if any, must: (a) be made in writing; (b) state with particularity the legal and factual ground therefor, and, if practicable, propose modification to the Plan that would resolve such objection; (c) conform to the Bankruptcy Rules and Local Rules; and (d) be served so as to be received by each of the Notice Parties no later than the Confirmation Objection Deadline.

34.  Objections to confirmation of the Plan not timely filed and served in the manner set forth above shall not be considered by the Court and shall be overruled.

35.  The following procedures are approved for establishing the Cure Amounts for the executory contracts and leases to be assumed pursuant to the Plan:

    i.    the Debtors will cause the *Notice of (I) Possible Assumption of Contracts and Leases, (II) Fixing of Cure Amounts, and (III) Deadline to Object Thereto*, substantially in the form attached hereto as <u>Exhibit D</u>, to be served on the non-debtor parties to all executory contracts and unexpired leases to be assumed as part of the Plan on the Solicitation Commencement Date. Among other things, the Contract Party Notice shall set forth the amount that the Debtors believe must be paid in order to cure all monetary defaults under each of the Assumed Contracts and Leases;

    ii.    the non-debtor parties to the Assumed Contracts and Leases shall have until the Cure Objection Deadline (as defined below) to object (a "<u>Cure Objection</u>") to the (a) Cure Amounts listed by the Debtors and to propose alternative cure amounts, and/or (b) proposed assumption of the Assumed Contracts and Leases under the Plan;

    iii.    any party objecting to the Cure Amount(s), whether or not such party previously has filed a proof of claim with respect to amounts due under the applicable Assumed Contract or Lease, or objecting to the potential assumption of such Assumed Contract or Lease, shall be required to file and serve a Cure Objection, in writing, setting forth with specificity any and all cure obligations that the objecting party asserts must be cured or satisfied in respect of the Assumed Contract or Lease and/or any and all objections to the potential assumption of such Assumed Contract or Lease, together

with all documentation supporting such cure claim or objection, upon each of the Notice Parties so that the Cure Objection is actually received by them no later than **4:00p.m. (ET) on February 10, 2010**, as may be extended by the Debtors (the "Cure Objection Deadline"); provided, however, that if the Debtors amend the Contract Party Notice or any related pleading that lists the Assumed Contracts and Leases to add a contract or lease or to reduce the cure amount thereof, except where such reduction was based upon the mutual agreement of the parties, the non-debtor party thereto shall have at least seven (7) calendar days after service of such amendment to object thereto or to propose an alternative cure amount(s). If a Cure Objection is timely filed and the parties are unable to settle such Cure Objection, the Bankruptcy Court shall determine the amount of any disputed Cure Amount(s) or objection to assumption at a hearing to be held at the time of the Confirmation Hearing or such other hearing date to which the parties may mutually agree. The Debtors may, in their sole discretion, extend the Cure Objection Deadline without further notice, but are not obligated to do so; and

iv.    in the event that no Cure Objection is timely filed with respect to an Assumed Contract or Lease, the counterparty to such Assumed Contract or Lease shall be deemed to have consented to the assumption of the Assumed Contract or Lease and the Cure Amount proposed by the Debtors and shall be forever enjoined and barred from seeking any additional amount(s) on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtors, their estates or the Reorganized Debtors. In addition, if no timely Cure Objection is filed with respect to an Assumed Contract or Lease, upon the Effective Date of the Plan, the Reorganized Debtors and the counterparty to such Assumed Contract or Lease shall enjoy all of the rights and benefits under the Assumed Contract or Lease without the necessity of obtaining any party's written consent to the Debtors' assumption of the Assumed Contract or Lease, and such counterparty shall be deemed to have waived any right to object, consent, condition or otherwise restrict the Debtors' assumption of the Assumed Contract or Lease.

The Contract Party Notice shall include Cure Amounts through and including December 31, 2009. The Debtors shall pay all underlined_start undisputed underlined_end amounts arising in the ordinary course under each Assumed Contract or Lease on and after January 1, 2010, and, accordingly, counterparties to the Assumed Contracts and Leases should not submit Cure Objections on account of Cure Amounts

DB02:8937123.10

068125.1001

of any <u>undisputed</u> amounts arising in the ordinary course under the Assumed Contracts and Leases on and after January 1, 2010.

36. The inclusion of an Assumed Contract or Lease in the Contract Party Notice is without prejudice to the Debtors' right to modify their election to assume or to reject such Assumed Contract or Lease prior to the entry of a final, non-appealable order (which order may be the order confirming the Plan) deeming any such Assumed Contract or Lease assumed or rejected, and inclusion in the Contract Party Notice is <u>not</u> a final determination that any Assumed Contract or Lease will, in fact, be assumed.

37. The Secured Notes Offering Procedures and Subscription Form are approved, and the Debtors are authorized to expend funds as are necessary to implement the Secured Notes Offering Procedures.

38. The Debtors are authorized to take or refrain from taking any action necessary or appropriate to implement the terms of and the relief granted in this Order without seeking further order of the Court, including, but not limited to, the making of any payments reasonably necessary to perform the actions and distributions contemplated herein.

39. The Debtors are authorized to make nonsubstantive changes to the Disclosure Statement, Plan, ballots, Confirmation Hearing Notice, the Contract Party Notice, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package prior to their distribution.

DB02:8937123.10

068125.1001

40.     The Court shall retain jurisdiction with respect to all matters related to this

Order.

Dated: Wilmington, Delaware
              _____, 2009

                              _____
                              The Honorable Kevin Gross
                              United States Bankruptcy Judge

DB02:8937123.10                                    068125.1001

# EXHIBIT A

Confirmation Hearing Notice

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**, a Delaware Corporation, *et al.*, | Case No. 09-11214 (KG) |
| Debtors.[1] | (Jointly Administered) |
| | **Conf. Hearing Date: February 24, 2010 at 3:00 p..m. (ET)**<br>**Conf. Obj. Deadline: February 17, 2010 at 4:00 p.m. (ET)** |

### NOTICE OF (I) APPROVAL OF DISCLOSURE STATEMENT, (II) DEADLINE FOR VOTING ON THE PLAN, (III) HEARING TO CONSIDER CONFIRMATION OF THE PLAN, AND (IV) DEADLINE FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN

TO:    HOLDERS OF CLASS 2, CLASS 4(b), CLASS 5, CLASS 6, CLASS 7, AND CLASS 9(a) CLAIMS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

    1.    YOUR VOTE IS BEING SOLICITED IN CONNECTION WITH THE DEBTORS' JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE DATED AS OF DECEMBER 4, 2009 (THE "PLAN").[2] YOU SHOULD CAREFULLY REVIEW THE MATERIAL SET FORTH IN THE DISCLOSURE STATEMENT ENCLOSED HEREWITH (AND IN THE EXHIBITS ATTACHED THERETO) IN ORDER TO MAKE AN INDEPENDENT DETERMINATION AS TO WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.

### APPROVAL OF DISCLOSURE STATEMENT

    2.    By Order dated January **[13]**, 2010 (the "Disclosure Statement Order"), the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") approved the Disclosure Statement for the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated as of December 4, 2009 (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Disclosure Statement") as containing adequate information within the meaning of section 1125 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

### DEADLINE FOR VOTING ON THE PLAN

    3.    By the Disclosure Statement Order, the Bankruptcy Court established **February 17, 2010 at 4:00 p.m. (prevailing Eastern Time)** (the "Voting Deadline") as the deadline by which ballots accepting or rejecting the Plan must be received. To be counted, your orginal ballot (which is enclosed herewith) must actually be **received** on or before the Voting Deadline by The Garden City Group, Inc. (the "Balloting Agent") at the following address: (i) by first class mail, The Garden City Group, Inc., Attn: Aventine Voting Agent, P.O. Box 9000 #6527, Merrick, NY 11566-9000; or (ii) by overnight mail or hand delivery, The Garden City Group, Inc., Attn: Aventine Voting Agent, 105 Maxess Road, Melville, NY 11747. Ballots cast by facsimile, email or other electronic transmission will not be counted.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

[2]    All capitalized terms used but not specifically defined herein shall have the meaning ascribed to them in the Plan.

## RELEASE, INJUNCTION AND EXCULPATION PROVISIONS CONTAINED IN PLAN

4.      PLEASE TAKE FURTHER NOTICE THAT ARCTICLE VII OF THE PLAN CONTAINS CERTAIN RELEASE, INJUNCTION AND EXCULPATION PROVISIONS. YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, INJUNCTION AND EXCULPATION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.

## CONFIRMATION HEARING

5.      On **February 24, 2010 at 3:00 p.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard, a hearing (the "Confirmation Hearing") will be held before the Honorable Kevin Gross in the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, 6th Floor, Courtroom No. 3, Wilmington, Delaware 19801 to consider confirmation of the Plan, as the same may be amended or modified, and for such other and further relief as may be just. The Confirmation Hearing may be adjourned from time to time without further notice to creditors or other parties in interest, other than by an announcement of such an adjournment in open court at the Confirmation Hearing or any adjournment thereof or an appropriate filing with the Bankruptcy Court. The Plan may be modified in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Plan and other applicable law, without further notice, prior to or as a result of the Confirmation Hearing.

## DEADLINE FOR OBJECTIONS TO CONFIRMATION OF THE PLAN

6.      Objections, if any, to confirmation of the Plan, including any supporting memoranda, must be in writing, filed with the clerk of the Bankruptcy Court, 3rd Floor, 824 N. Market Street, Wilmington, Delaware 19801 together with proof of service, and shall: (a) state the name and address of the objecting party and the amount of its claim or the nature of its interest in the Debtors' chapter 11 cases; (b) state with particularity the provision or provisions of the Plan objected to and for any objection asserted, the legal and factual basis for such objections; (c) provide proposed language to remedy any objection asserted; and (d) be served by hand delivery or in a manner as will cause such objection to be **received** on or before **February 17, 2010 at 4:00 p.m. (prevailing Eastern Time)**, upon: (i) Young Conaway Stargatt & Taylor, LLP; The Brandywine Building; 1000 West Street, 17th Floor; P.O. Box 391; Wilmington, Delaware 19899-0391 (Attn.: Joel A. Waite, Esq. and Matthew B. Lunn, Esq.), counsel to the Debtors; (ii) Greenberg Traurig, LLP; The Nemours Building; 1007 North Orange Street, Suite 1200; Wilmington, Delaware 19801 (Attn: Scott Cousins, Esq., Donald Detweiler, Esq., and Victoria Counihan, Esq.), counsel to the Committee; (iii) Akin, Gump, Strauss, Hauer & Feld, LLP; One Bryant Park; New York, New York 10036 (Attn: Michael Stamer, Esq.), counsel to the Backstop Purchasers; and (iv) the United States Trustee for the District of Delaware; 844 King Street, Suite 2207, Lockbox #35; Wilmington, Delaware 19801 (Attn.: Mark S. Kenney, Esq.). Any objections not filed and served as set forth above will not be considered by the Bankruptcy Court.

Dated:  Wilmington, Delaware         YOUNG CONAWAY STARGATT & TAYLOR, LLP
        January [__], 2010

                                     _____
                                     James L. Patton, Jr. (No. 2202)
                                     Joel A. Waite (No. 2925)
                                     Matthew B. Lunn (No. 4119)
                                     Ryan M. Bartley (No. 4985)
                                     The Brandywine Building
                                     1000 West Street, 17th Floor
                                     Wilmington, DE 19801
                                     Telephone:     (302) 571-6600
                                     Facsimile:     (302) 571-1253

                                     *Counsel to the Debtors and Debtors in Possession*

# EXHIBIT B

Proposed Forms of Ballot

Class 2 ⊡ Ballot

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| **AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**, a Delaware Corporation, *et al.*, | Case No. 09-11214 (KG) |
| Debtors.[1] | (Jointly Administered) |

**CLASS 2(●) BALLOT FOR ACCEPTING OR REJECTING THE DEBTORS' JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE DATED AS OF DECEMBER 4, 2009 WITH RESPECT TO [INSERT DEBTOR]**

---

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS ON February 17, 2010 AT 4:00 P.M. (PREVAILING EASTERN TIME). YOUR BALLOT MUST BE ACTUALLY RECEIVED BY THIS DEADLINE IN ORDER TO BE COUNTED.**

---

This ballot (the "<u>Ballot</u>") is submitted to you to solicit your vote to accept or reject the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated as of December 4, 2009 (including all exhibits thereto and as amended, modified or supplemented from time to time, the "<u>Plan</u>")[2] with respect to **[INSERT DEBTOR]**, submitted by the debtors in possession in the above-captioned jointly administered cases, (collectively, the "<u>Debtors</u>") and described in the related disclosure statement (the "<u>Disclosure Statement</u>") approved by order of the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>"). The Disclosure Statement provides information to assist you in deciding how to vote your Ballot. If you do not have a Disclosure Statement, you may obtain a copy free of charge on the dedicated webpage related to these cases of the Debtors' Balloting Agent, The Garden City Group, Inc. (http://www.aventineinfo.com). Copies of the Disclosure Statement are also available for inspection during regular business hours at the office of the clerk of the Bankruptcy Court, 3rd Floor, 824 N. Market Street, Wilmington, Delaware 19801. In addition, copies of the Disclosure Statement may be obtained free of charge by request to Debbie Laskin (dlaskin@ycst.com) or may be obtained for a charge through Delaware Document Retrieval, 2 East 7th Street, 2nd Floor, Wilmington, Delaware 19801, or viewed on the Internet at the Bankruptcy Court's website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined have the meanings given to them in the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount <u>and</u> more than one-half in number of the Claims in each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et seq.</u> (the "<u>Bankruptcy Code</u>"). If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

To have your vote counted, you must complete, sign, and return this Ballot by regular mail, overnight delivery, or hand delivery to: The Garden City Group, Inc., Attn: Aventine Voting Agent, P.O. Box 9000 #6527 Merrick, NY 11566-9000; or by overnight, hand delivery, or courier to: The Garden City Group, Inc., Attn: Aventine Voting Agent, 105 Maxess Road, Merrick, NY 11566-9000, so that it is <u>received</u> by the deadline indicated above. <u>Ballots submitted by facsimile, email or other electronic transmission will not be counted.</u>

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

[2]  Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed in the Plan.

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

---

PLEASE COMPLETE ITEMS 1, 2, AND 3.  IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES,
THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

---

**Item 1.  Class Vote.**  The undersigned, a holder of a Class 2(●) Claim, in the amount set forth below, votes to (check <u>one</u> box):

    ☐    **Accept** the Plan.      ☐    **Reject** the Plan.

Creditor: _____    Claim Amount: $ _____

Taxpayer Identification Number: _____

**Item 2.  Optional Release Election.**  Check this box if you elect <u>not</u> to grant the releases contained in Article VII(J) of the Plan and elect <u>not</u> to consent to the related injunction.  Election to withhold consent is at your option.  If you submit your Ballot without this box checked, you will be deemed to consent to the releases set forth in Article VII(J) of the Plan and the related injunction to the fullest extent permitted by applicable law.

    ☐    The undersigned elects <u>not</u> to grant the releases contained in Article VII(J) of the Plan and elects <u>not</u> to consent to the related injunction.

**Item 3.  Acknowledgments.**  By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant.  The undersigned understands that an otherwise properly completed, executed and timely returned Ballot that does not indicate either acceptance or rejection of the Plan or indicates both acceptance and rejection of the Plan will not be counted.

 

_____
Name of Creditor

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

# VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1. In the boxes provided in Item 1 of the Ballot, please indicate either acceptance or rejection of the Plan. Complete the Ballot by providing all the information requested and sign, date and return the Ballot to The Garden City Group, Inc. (the "Balloting Agent") at the following address:

| By mail: | By hand delivery, overnight or courier: |
|---|---|
| **The Garden City Group, Inc.** | **The Garden City Group, Inc.** |
| **Attn: Aventine Voting Agent** | **Attn: Aventine Voting Agent** |
| **P.O. Box 9000 #6527** | **105 Maxess Road** |
| **Merrick, NY 11566-9000** | **Merrick, NY 11566** |

**Ballots must be *received* by the Balloting Agent on or before February 17, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "Voting Deadline").** If a Ballot is received after the Voting Deadline, it will not be counted (even if post-marked prior to the Voting Deadline). An envelope addressed to the Balloting Agent is enclosed for your convenience. Ballots submitted by facsimile, email or other electronic transmission will not be counted. If neither the "accept" nor "reject" box is checked in Item 1 for an otherwise properly completed, executed and timely returned Ballot, the Ballot will not be counted.

2. If you hold Claims in more than one voting Class under the Plan (*e.g.*, you hold a Class 5(a) claim and a Class 6(a) claim) you should receive a Ballot for each such category of Claims, coded by Class number and description, and a set of solicitation materials. **Each Ballot you receive is for voting only your Claims described on the Ballot. Please complete and return each Ballot you receive. The attached Ballot is designated only for voting Class 2(•) Claims.** You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different Claims within a single Class under the Plan and the Ballots are not voted in the same manner, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted. **Further, inconsistent duplicate Ballots with respect to the same claim shall not be counted.**

3. Your Claim has been **temporarily allowed solely for purposes of voting** to accept or reject the Plan in accordance with certain tabulation rules approved by the Bankruptcy Court (the "Tabulation Rules"). The Tabulation Rules are set forth in the Solicitation Order. The temporary allowance of your Claim for voting purposes does not constitute an allowance of your Claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtors in any other context (*e.g.*, the right of the Debtors to contest the amount or validity of any Claim for purposes of allowance under the Plan). If you wish to challenge the temporary allowance of your Claim for voting purposes, you must file a motion, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, for an order temporarily allowing your Claim in a different amount or classification for purposes of voting to accept or reject the Plan and serve such motion on the Debtors so that it is received no later than **fourteen days before the Voting Deadline (February 3, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "Voting Objection Reply Deadline"));** provided, that if your Claim is the subject of a Determination Motion or an objection that is filed on or before the Voting Objection Reply Deadline, you shall have an additional seven (7) days to file a response to such Determination Motion or objection. Unless the Bankruptcy Court orders otherwise, your Claim will not be counted as a vote in excess of the amount as determined in accordance with the Tabulation Rules, regardless of the amount identified in Item 1 of the Ballot. If a lesser amount is identified in Item 1 of the Ballot, your Claim will be counted as a vote in such lesser amount.

4. The Ballot does not constitute and will not be deemed a proof of claim or an assertion of a Claim or equity interest.

5. If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received Ballot will supersede any prior Ballots.

6. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

7. PLEASE RETURN YOUR BALLOT PROMPTLY. THE BALLOTING AGENT WILL *NOT* ACCEPT BALLOTS BY FACSIMILE, E-MAIL OR OTHER ELECTRONIC TRANSMISSION.

8. IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE BALLOTING AGENT AT (631) 470-5000. DO NOT CONTACT THE BALLOTING AGENT FOR LEGAL ADVICE. THE BALLOTING AGENT CANNOT AND WILL NOT PROVIDE PARTIES WITH LEGAL ADVICE.

Class 4(b) Ballot

| | |
|---|---|
| In re: | Chapter 11 |
| **AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**, a Delaware Corporation, *et al.*, | Case No. 09-11214 (KG) |
| Debtors.[1] | (Jointly Administered) |

**CLASS 4(b) BALLOT FOR ACCEPTING OR REJECTING THE DEBTORS' JOINT PLAN OF
REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE DATED AS OF
DECEMBER 4, 2009 WITH RESPECT TO AVENTINE RENEWABLE ENERGY – AURORA WEST, LLC**

---

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS ON February 17,
2010 AT 4:00 P.M. (PREVAILING EASTERN TIME).  YOUR BALLOT MUST BE
ACTUALLY RECEIVED BY THIS DEADLINE IN ORDER TO BE COUNTED.**

---

This ballot (the "Ballot") is submitted to you to solicit your vote to accept or reject the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated as of December 4, 2009 (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan")[2] with respect to Aventine Renewable Energy – Aurora West, LLC, submitted by the debtors in possession in the above-captioned jointly administered cases, (collectively, the "Debtors") and described in the related disclosure statement (the "Disclosure Statement") approved by order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  The Disclosure Statement provides information to assist you in deciding how to vote your Ballot.  If you do not have a Disclosure Statement, you may obtain a copy free of charge on the dedicated webpage related to these cases of the Debtors' Balloting Agent, The Garden City Group, Inc. (http://www.aventineinfo.com).  Copies of the Disclosure Statement are also available for inspection during regular business hours at the office of the clerk of the Bankruptcy Court, 3rd Floor, 824 N. Market Street, Wilmington, Delaware 19801.  In addition, copies of the Disclosure Statement may be obtained free of charge by request to Debbie Laskin (dlaskin@ycst.com) or may be obtained for a charge through Delaware Document Retrieval, 2 East 7th Street, 2nd Floor, Wilmington, Delaware 19801, or viewed on the Internet at the Bankruptcy Court's website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website.  You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined have the meanings given to them in the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Claims in each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").  If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

To have your vote counted, you must complete, sign, and return this Ballot by regular mail, overnight delivery, or hand delivery to: The Garden City Group, Inc., Attn: Aventine Voting Agent, P.O. Box 9000 #6527 Merrick, NY 11566-9000; or by overnight, hand delivery, or courier to: The Garden City Group, Inc., Attn: Aventine Voting Agent, 105 Maxess Road, Merrick, NY 11566-9000, so that it is **received** by the deadline indicated above.  Ballots submitted by facsimile, email or other electronic transmission will not be counted.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872).  The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

[2]  Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed in the Plan.

068125.1001

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ITEMS 1, 2, AND 3.  IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES,
THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1.  Class Vote.**  The undersigned, a holder of a Class 4(b) Claim, in the amount set forth below, votes to (check <u>one</u> box):

☐ **Accept** the Plan.            ☐ **Reject** the Plan.

Creditor: _____    Claim Amount: $ _____

Taxpayer Identification Number: _____

**Item 2.  Optional Release Election.**  Check this box if you elect <u>not</u> to grant the releases contained in Article VII(J) of the Plan and elect <u>not</u> to consent to the related injunction.  Election to withhold consent is at your option.  If you submit your Ballot without this box checked, you will be deemed to consent to the releases set forth in Article VII(J) of the Plan and the related injunction to the fullest extent permitted by applicable law.

☐ The undersigned elects <u>not</u> to grant the releases contained in Article VII(J) of the Plan and elects <u>not</u> to consent to the related injunction.

**Item 3.  Acknowledgments.**  By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant.  The undersigned understands that an otherwise properly completed, executed and timely returned Ballot that does not indicate either acceptance or rejection of the Plan or indicates both acceptance and rejection of the Plan will not be counted.

_____
Name of Creditor

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.    In the boxes provided in Item 1 of the Ballot, please indicate either acceptance or rejection of the Plan.  Complete the Ballot by providing all the information requested and sign, date and return the Ballot to The Garden City Group, Inc. (the "Balloting Agent") at the following address:

| By mail:<br><br>**The Garden City Group, Inc.**<br>**Attn: Aventine Voting Agent**<br>**P.O. Box 9000 #6527**<br>**Merrick, NY 11566-9000** | By hand delivery, overnight or courier:<br><br>**The Garden City Group, Inc.**<br>**Attn: Aventine Voting Agent**<br>**105 Maxess Road**<br>**Merrick, NY 11566** |
|---|---|

**Ballots must be *received* by the Balloting Agent on or before February 17, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "Voting Deadline")**.  If a Ballot is received after the Voting Deadline, it will not be counted (even if post-marked prior to the Voting Deadline).  An envelope addressed to the Balloting Agent is enclosed for your convenience.  Ballots submitted by facsimile, email or other electronic transmission will not be counted.  If neither the "accept" nor "reject" box is checked in Item 1 for an otherwise properly completed, executed and timely returned Ballot, the Ballot will not be counted.

2.    If you hold Claims in more than one voting Class under the Plan (*e.g.*, you hold a Class 5(a) claim and a Class 6(a) claim) you should receive a Ballot for each such category of Claims, coded by Class number and description, and a set of solicitation materials.  **Each Ballot you receive is for voting only your Claims described on the Ballot.  Please complete and return each Ballot you receive.  The attached Ballot is designated only for voting Class 4(b) Claims.**  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different Claims within a single Class under the Plan and the Ballots are not voted in the same manner, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.  **Further, inconsistent duplicate Ballots with respect to the same claim shall not be counted.**

3.    Your Claim has been **temporarily allowed solely for purposes of voting** to accept or reject the Plan in accordance with certain tabulation rules approved by the Bankruptcy Court (the "Tabulation Rules").  The Tabulation Rules are set forth in the Solicitation Order.  The temporary allowance of your Claim for voting purposes does not constitute an allowance of your Claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtors in any other context (*e.g.*, the right of the Debtors to contest the amount or validity of any Claim for purposes of allowance under the Plan).  If you wish to challenge the temporary allowance of your Claim for voting purposes, you must file a motion, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, for an order temporarily allowing your Claim in a different amount or classification for purposes of voting to accept or reject the Plan and serve such motion on the Debtors so that it is received no later than **fourteen days before the Voting Deadline (February 3, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "Voting Objection Reply Deadline"))**; provided, that if your Claim is the subject of a Determination Motion or an objection that is filed on or before the Voting Objection Reply Deadline, you shall have an additional seven (7) days to file a response to such Determination Motion or objection.  Unless the Bankruptcy Court orders otherwise, your Claim will not be counted as a vote in excess of the amount as determined in accordance with the Tabulation Rules, regardless of the amount identified in Item 1 of the Ballot.  If a lesser amount is identified in Item 1 of the Ballot, your Claim will be counted as a vote in such lesser amount.

4.    The Ballot does not constitute and will not be deemed a proof of claim or an assertion of a Claim or equity interest.

5.    If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received Ballot will supersede any prior Ballots.

6.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

7.    PLEASE RETURN YOUR BALLOT PROMPTLY.  THE BALLOTING AGENT WILL *NOT* ACCEPT BALLOTS BY FACSIMILE, E-MAIL OR OTHER ELECTRONIC TRANSMISSION.

8.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE BALLOTING AGENT AT (631) 470-5000.  DO NOT CONTACT THE BALLOTING AGENT FOR LEGAL ADVICE.  THE BALLOTING AGENT CANNOT AND WILL NOT PROVIDE PARTIES WITH LEGAL ADVICE.

Class 5 Master Ballot

| | |
|---|---|
| In re: | Chapter 11 |
| **AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**, a Delaware Corporation, *et al.*, | Case No. 09-11214 (KG) |
| Debtors.[1] | (Jointly Administered) |

## CLASS 5 MASTER BALLOT FOR ACCEPTING OR REJECTING THE DEBTORS' JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE DATED AS OF DECEMBER 4, 2009

**PLEASE READ AND FOLLOW THE INSTRUCTIONS CAREFULLY. PLEASE COMPLETE, SIGN AND DATE THIS MASTER BALLOT AND RETURN IT TO THE BALLOTING AGENT BY (A) FIRST CLASS MAIL TO: THE GARDEN CITY GROUP, INC., ATTN: AVENTINE VOTING AGENT, P.O. BOX 9000 #6527 MERRICK, NY 11566-9000; OR (B) OVERNIGHT, HAND DELIVERY, OR COURIER TO: THE GARDEN CITY GROUP, INC., ATTN: AVENTINE VOTING AGENT, 105 MAXESS ROAD, MERRICK, NY 11566-9000. IF THIS MASTER BALLOT HAS NOT BEEN RECEIVED BY THE BALLOTING AGENT BY FEBRUARY 17, 2010 AT 4:00 P.M. EASTERN TIME, UNLESS SUCH TIME IS EXTENDED (THE "<u>VOTING DEADLINE</u>"), THE VOTES AND RELEASE ELECTIONS OF YOUR CUSTOMERS WILL NOT BE COUNTED. THEREFORE, YOU MUST ALLOW SUFFICIENT TIME TO BE SURE THAT THE MASTER BALLOT IS RECEIVED BY THE BALLOTING AGENT BY THE VOTING DEADLINE.**

Deutsche Bank National Trust Company, as successor in interest to Wells Fargo Bank, N.A., ("<u>You</u>," "<u>YOU</u>" or "<u>you</u>"), as indenture trustee under that certain indenture, dated March 27, 2007, as amended from time to time, by and among ARE Holdings, as issuer, and ARE, LLC, ARE, Inc., Aventine Power, ARE-Aurora West and ARE – Mt. Vernon, each as guarantors, and Wells Fargo Bank, N.A., must deliver the completed, executed Master Ballot so that it is actually *received* by the Balloting Agent on or before the Voting Deadline. For each completed, executed Ballot returned to you by a beneficial owner (each an "<u>Individual Ballot</u>"), you must retain a copy of such Individual Ballot in your files for one year from the Voting Deadline.

This master ballot (the "<u>Master Ballot</u>") is to be used by you, as indenture trustee for beneficial owners of the Class 5 Prepetition Unsecured Notes Claims, to transmit the votes of such creditors in respect of their claim to accept or reject Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated as of December 4, 2009 (as may be amended, the "<u>Plan</u>"),[2] which is proposed by the above-captioned debtors and debtors in possession (the "<u>Debtors</u>").

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed in the Plan.

By Order dated [●] (the "Solicitation Order"), the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") approved the Disclosure Statement for the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated as of December 4, 2009 (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Disclosure Statement") as containing adequate information within the meaning of section 1125 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). These documents are contained on the CD-ROM sent to you with this ballot. Any party may request, at the Debtors' expense, hard copies of the Disclosure Statement, together with the Plan and other exhibits annexed thereto, from the Balloting Agent. The Solicitation Order also contains important information regarding the balloting process. Please also read the Solicitation Order and the instructions sent with this Ballot prior to submitting this Ballot.

All capitalized terms used in this Master Ballot but not otherwise defined herein shall have the meanings given to such terms in the Solicitation Order or Plan, as applicable. This Master Ballot is being sent to Voting Nominees to use to cast votes to accept or reject the Plan on behalf of and in accordance with the Ballots cast by the beneficial holders of claims in Class 5(a) through (f).

**Item 1 - CERTIFICATION OF AUTHORITY TO VOTE.** The Undersigned certifies that as of January 13, 2010, (the "Record Date"), the Undersigned (please check applicable box):

☐   Is an indenture trustee for the beneficial owners of the aggregate principal amount of $315,000,000 listed in Items 2 and 3 below that is the registered holder of such securities; or

☐   Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by an indenture trustee that is the registered holder of the aggregate principal amount of $315,000,000 listed in Items 2 and 3 below; or

☐   Has been granted a proxy (an original of which is attached hereto) from an indenture trustee that is the registered holder of the aggregate principal amount of $315,000,000 listed in Items 2 and 3 and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the beneficial owners of the Class 5 Prepetition Unsecured Notes Claims described below.

**Item 2 - TABULATION OF BENEFICIAL OWNER VOTING.** The undersigned certifies that:

A.   **Class 5(a) Claims Against the Substantively Consolidated Estates of Aventine Renewable Energy Holdings, Inc. and Aventine Renewable Energy, LLC**

**Acceptances.** _____ beneficial owners of Class 5(a) Prepetition Unsecured Notes Claims against the substantively consolidated estates of Aventine Renewable Energy Holdings, Inc. and Aventine Renewable Energy, LLC in the aggregate unpaid principal amount of $_____ have delivered duly completed Class 5(a) Prepetition Unsecured Notes Claims – Individual Ballots to the undersigned (or, such information was derived from Individual Ballots that have been summarized in intermediary Master Ballots delivered to the undersigned) voting to **ACCEPT** the Plan; and

**Rejections.** _____ beneficial owners of Class 5(a) Prepetition Unsecured Notes Claims against the substantively consolidated estates of Aventine Renewable Energy Holdings, Inc. and Aventine Renewable Energy, LLC in the aggregate unpaid principal amount of $_____ have delivered duly completed Class 5(a) Prepetition Unsecured Notes Claims – Individual Ballots to the undersigned (or, such information was derived from Individual

DB02:8945256.7

068125.1001

Ballots that have been summarized in intermediary Master Ballots delivered to the undersigned) voting to **REJECT** the Plan.

**B.      Class 5(b) Claims Against Aventine Renewable Energy, Inc.**

**Acceptances.** _____ beneficial owners of Class 5(b) Prepetition Unsecured Notes Claims against Aventine Renewable Energy, Inc. in the aggregate unpaid principal amount of $_____ have delivered duly completed Class 5(b) Prepetition Unsecured Notes Claims – Individual Ballots to the undersigned (or, such information was derived from Individual Ballots that have been summarized in intermediary Master Ballots delivered to the undersigned) voting to **ACCEPT** the Plan; and

**Rejections.** _____ beneficial owners of Class **5(b) Prepetition Unsecured Notes Claims against Aventine Renewable Energy, Inc. in the aggregate unpaid principal amount of** $_____ **have delivered duly completed Class 5(b) Prepetition** Unsecured Notes Claims – Individual Ballots to the undersigned (or, such information was derived from Individual Ballots that have been summarized in intermediary Master Ballots delivered to the undersigned) voting to **REJECT** the Plan.

**C.      Class 5(c) Claims Against Aventine Renewable Energy – Aurora West, LLC**

**Acceptances.** _____ beneficial owners of Class 5(c) Prepetition Unsecured Notes Claims against Aventine Renewable Energy – Aurora West, LLC in the aggregate unpaid principal amount of $_____ have delivered duly completed Class 5(c) Prepetition Unsecured Notes Claims – Individual Ballots to the undersigned (or, such information was derived from Individual Ballots that have been summarized in intermediary Master Ballots delivered to the undersigned) voting to **ACCEPT** the Plan; and

**Rejections.** _____ beneficial owners of Class 5(c) Prepetition Unsecured Notes Claims against Aventine Renewable Energy – Aurora West, LLC in the aggregate unpaid principal amount of $_____ have delivered duly completed Class 5(c) Prepetition Unsecured Notes Claims – Individual Ballots to the undersigned (or, such information was derived from Individual Ballots that have been summarized in intermediary Master Ballots delivered to the undersigned) voting to **REJECT** the Plan.

**D.      Class 5(d) Claims Against Aventine Renewable Energy – Mt. Vernon, LLC**

**Acceptances.** _____ beneficial owners of Class 5(d) Prepetition Unsecured Notes Claims against Aventine Renewable Energy – Mt. Vernon, LLC in the aggregate unpaid principal amount of $_____ have delivered duly completed Class 5(d) Prepetition Unsecured Notes Claims – Individual Ballots to the undersigned (or, such information was derived from Individual Ballots that have been summarized in intermediary Master Ballots delivered to the undersigned) voting to **ACCEPT** the Plan; and

**Rejections.** _____ beneficial owners of Class 5(d) Prepetition Unsecured Notes Claims against Aventine Renewable Energy – Mt. Vernon, LLC in the aggregate unpaid principal amount of $_____ have delivered duly completed Class 5(d) Prepetition Unsecured Notes Claims – Individual Ballots to the undersigned (or, such information was derived from Individual Ballots that have been summarized in intermediary Master Ballots delivered to the undersigned) voting to **REJECT** the Plan.

DB02:8945256.7                                                                                      068125.1001

E.   **Class 5(e) Claims Against Aventine Power, LLC**

**Acceptances.** _____ beneficial owners of Class 5(e) Prepetition Unsecured Notes Claims against Aventine Power, LLC in the aggregate unpaid principal amount of $_____ have delivered duly completed Class 5(e) Prepetition Unsecured Notes Claims – Individual Ballots to the undersigned (or, such information was derived from Individual Ballots that have been summarized in intermediary Master Ballots delivered to the undersigned) voting to **ACCEPT** the Plan; and

**Rejections.** _____ beneficial owners of Class 5(e) Prepetition Unsecured Notes Claims against Aventine Power, LLC in the aggregate unpaid principal amount of $_____ have delivered duly completed Class 5(e) Prepetition Unsecured Notes Claims – Individual Ballots to the undersigned (or, such information was derived from Individual Ballots that have been summarized in intermediary Master Ballots delivered to the undersigned) voting to **REJECT** the Plan.

F.   **Class 5(f) Claims Against Nebraska Energy, L.L.C.**

**Acceptances.** _____ beneficial owners of Class 5(f) Prepetition Unsecured Notes Claims against Nebraska Energy, L.L.C. in the aggregate unpaid principal amount of $_____ have delivered duly completed Class 5(f) Prepetition Unsecured Notes Claims – Individual Ballots to the undersigned (or, such information was derived from Individual Ballots that have been summarized in intermediary Master Ballots delivered to the undersigned) voting to **ACCEPT** the Plan; and

**Rejections.** _____ beneficial owners of Class 5(f) Prepetition Unsecured Notes Claims against Nebraska Energy, L.L.C. in the aggregate unpaid principal amount of $_____ have delivered duly completed Class 5(f) Prepetition Unsecured Notes Claims – Individual Ballots to the undersigned (or, such information was derived from Individual Ballots that have been summarized in intermediary Master Ballots delivered to the undersigned) voting to **REJECT** the Plan.

**Item 3 – TRANSMITTAL OF VOTES FROM INDIVIDUAL NOTEHOLDER BALLOTS.** The undersigned transmits the votes of beneficial owners of the Class 5(a) through 5(f) Prepetition Unsecured Notes Claims as fully set forth on the annexed addendum to this Master Ballot and certifies that the parties listed on the annexed addendum are beneficial owners, as of the Record Date, and have delivered to the undersigned, as Voting Nominee, Ballots casting such votes, which, as set forth in each column therein, indicate the aggregate principal amount voted for each claim, whether such claim is voted to accept or reject the Plan, and whether the holder of such claim has elected <u>not</u> to grant the releases contained in Article VII(J) of the Plan and elected <u>not</u> to consent to the related injunction.

DB02:8945256.7                                                                 068125.1001

**Item 4 - CERTIFICATION.** By signing this Master Ballot, the undersigned certifies that: (a) each beneficial owner of the Class 5 Prepetition Unsecured Notes Claims whose votes are being transmitted by this Master Ballot has been provided with a copy of the Plan, Disclosure Statement, Solicitation Order and a Ballot for voting their Claims; and (b) it is the registered holder of Claims to which this ballot pertains and/or has full power and authority to vote to accept or reject the Plan. The undersigned also acknowledges that the solicitation of votes in Class 5 to accept or reject the Plan is subject to all the terms and conditions set forth in the Solicitation Order, dated January 13, 2010.

_____

Name of Voting Nominee

_____

Participant Number

_____

Signature

_____

If by Authorized Agent, Name and Title

_____

Street Address

_____

City, State and Zip Code

_____

Telephone Number

_____

Date Complete

**In order to vote Class 5 Claims to accept or reject the Plan, please complete, sign and date this Master Ballot and promptly return it at the following address so as to be received on or prior to the Voting Deadline:**

| By mail: | By hand delivery, overnight or courier: |
|---|---|
| **The Garden City Group, Inc.** | **The Garden City Group, Inc.** |
| **Attn: Aventine Voting Agent** | **Attn: Aventine Voting Agent** |
| **P.O. Box 9000 #6527** | **105 Maxess Road** |
| **Merrick, NY 11566-9000** | **Merrick, NY 11566** |

**BALLOTS RECEIVED BY FACSIMILE OR OTHER ELECTRONIC MEANS OR RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED.**

DB02:8945256.7                                                              068125.1001

## ADDENDUM TO MASTER BALLOT

**A.     Class 5(a) Claims Against the Substantively Consolidated Estates of Aventine Renewable Energy Holdings, Inc. and Aventine Renewable Energy, LLC**

| Your Customer Name or Account Number for Each Beneficial Owner of a Class 5(a) Prepetition Unsecured Notes Claim and name of each beneficial owner voting on the Plan | Principal Number of Notes Voted | Principal Amount of Class 5(a) Prepetition Unsecured Notes Claims Voted to ACCEPT the Plan[*] | Principal Amount of Class 5(a) Prepetition Unsecured Notes Claims Voted to REJECT the Plan[*] | Election (i) to opt out of the releases contained in Article VII(J) of the Plan and (ii) not to consent to the related injunction |
|---|---|---|---|---|
| 1. | | $ | $ | |
| 2. | | $ | $ | |
| 3. | | $ | $ | |
| 4. | | $ | $ | |
| 5. | | $ | $ | |
| 6. | | $ | $ | |
| 7. | | $ | $ | |
| 8. | | $ | $ | |
| TOTALS | | $ | $ | |

[If space is insufficient, attach additional sheets in same format.]

---

[*]     Please note that each beneficial owner must vote all of his, her, or its Claims to accept or reject the Plan and may not split such vote.

**B.     Class 5(b) Claims Against Aventine Renewable Energy, Inc.**

| Your Customer Name or Account Number for Each Beneficial Owner of a Class 5(b) Prepetition Unsecured Notes Claim and name of each beneficial owner voting on the Plan | Principal Number of Notes Voted | Principal Amount of Class 5(b) Prepetition Unsecured Notes Claims Voted to ACCEPT the Plan* | Principal Amount of Class 5(b) Prepetition Unsecured Notes Claims Voted to REJECT the Plan* | Election (i) to opt out of the releases contained in Article VII(J) of the Plan and (ii) not to consent to the related injunction |
|---|---|---|---|---|
| 1. | | $ | $ | |
| 2. | | $ | $ | |
| 3. | | $ | $ | |
| 4. | | $ | $ | |
| 5. | | $ | $ | |
| 6. | | $ | $ | |
| 7. | | $ | $ | |
| 8. | | $ | $ | |
| TOTALS | | $ | $ | |

[If space is insufficient, attach additional sheets in same format.]

---

\*     Please note that each beneficial owner must vote all of his, her, or its Claims to accept or reject the Plan and may not split such vote.

Addendum Page B-1
Summary of Claims Against ARE Inc.

### C. Class 5(c) Claims Against Aventine Renewable Energy – Aurora West, LLC

| Your Customer Name or Account Number for Each Beneficial Owner of a Class 5(c) Prepetition Unsecured Notes Claim and name of each beneficial owner voting on the Plan | Principal Number of Notes Voted | Principal Amount of Class 5(c) Prepetition Unsecured Notes Claims Voted to ACCEPT the Plan* | Principal Amount of Class 5(c) Prepetition Unsecured Notes Claims Voted to REJECT the Plan* | Election (i) to opt out of the releases contained in Article VII(J) of the Plan and (ii) not to consent to the related injunction |
|---|---|---|---|---|
| 1. | | $ | $ | |
| 2. | | $ | $ | |
| 3. | | $ | $ | |
| 4. | | $ | $ | |
| 5. | | $ | $ | |
| 6. | | $ | $ | |
| 7. | | $ | $ | |
| 8. | | $ | $ | |
| TOTALS | | $ | $ | |

[If space is insufficient, attach additional sheets in same format.]

---

* Please note that each beneficial owner must vote all of his, her, or its Claims to accept or reject the Plan and may not split such vote.

**D.  Class 5(d) Claims Against Aventine Renewable Energy – Mt. Vernon, LLC**

| Your Customer Name or Account Number for Each Beneficial Owner of a Class 5(d) Prepetition Unsecured Notes Claim and name of each beneficial owner voting on the Plan | Principal Number of Notes Voted | Principal Amount of Class 5(d) Prepetition Unsecured Notes Claims Voted to ACCEPT the Plan* | Principal Amount of Class 5(d) Prepetition Unsecured Notes Claims Voted to REJECT the Plan* | Election (i) to opt out of the releases contained in Article VII(J) of the Plan and (ii) not to consent to the related injunction |
|---|---|---|---|---|
| 1. | | $ | $ | |
| 2. | | $ | $ | |
| 3. | | $ | $ | |
| 4. | | $ | $ | |
| 5. | | $ | $ | |
| 6. | | $ | $ | |
| 7. | | $ | $ | |
| 8. | | $ | $ | |
| TOTALS | | $ | $ | |

[If space is insufficient, attach additional sheets in same format.]

---

* Please note that each beneficial owner must vote all of his, her, or its Claims to accept or reject the Plan and may not split such vote.

**E.      Class 5(e) Claims Against Aventine Power, LLC**

| Your Customer Name or Account Number for Each Beneficial Owner of a Class 5(e) Prepetition Unsecured Notes Claim and name of each beneficial owner voting on the Plan | Principal Number of Notes Voted | Principal Amount of Class 5(e) Prepetition Unsecured Notes Claims Voted to ACCEPT the Plan* | Principal Amount of Class 5(e) Prepetition Unsecured Notes Claims Voted to REJECT the Plan* | Election (i) to opt out of the releases contained in Article VII(J) of the Plan and (ii) not to consent to the related injunction |
|---|---|---|---|---|
| 1. | | $ | $ | |
| 2. | | $ | $ | |
| 3. | | $ | $ | |
| 4. | | $ | $ | |
| 5. | | $ | $ | |
| 6. | | $ | $ | |
| 7. | | $ | $ | |
| 8. | | $ | $ | |
| TOTALS | | $ | $ | |

[If space is insufficient, attach additional sheets in same format.]

---

*      Please note that each beneficial owner must vote all of his, her, or its Claims to accept or reject the Plan and may not split such vote.

Addendum Page E-1
Summary of Claims Against Aventine Power

**F.    Class 5(f) Claims Against Nebraska Energy, L.L.C.**

| Your Customer Name or Account Number for Each Beneficial Owner of a Class 5(f) Prepetition Unsecured Notes Claim and name of each beneficial owner voting on the Plan | Principal Number of Notes Voted | Principal Amount of Class 5(f) Prepetition Unsecured Notes Claims Voted to ACCEPT the Plan[*] | Principal Amount of Class 5(f) Prepetition Unsecured Notes Claims Voted to REJECT the Plan[*] | Election (i) to opt out of the releases contained in Article VII(J) of the Plan and (ii) not to consent to the related injunction |
|---|---|---|---|---|
| 1. | | $ | $ | |
| 2. | | $ | $ | |
| 3. | | $ | $ | |
| 4. | | $ | $ | |
| 5. | | $ | $ | |
| 6. | | $ | $ | |
| 7. | | $ | $ | |
| 8. | | $ | $ | |
| TOTALS | | $ | $ | |

[If space is insufficient, attach additional sheets in same format.]

---

[*]    Please note that each beneficial owner must vote all of his, her, or its Claims to accept or reject the Plan and may not split such vote.

# VOTING INSTRUCTIONS

**VOTING DEADLINE:**

The Voting Deadline is February 17, 2010 at 4:00 p.m. Eastern Time, unless such time is extended. To have the votes of the holders of the Prepetition Unsecured Notes[1] counted, you must complete, sign, and return this master ballot (the "Master Ballot") so that it is received by the Balloting Agent at the address set forth in the Master Ballot on or before the Voting Deadline. Accordingly, you should immediately transmit the enclosed Solicitation Packages, including Individual Ballots, to the holders of record of the Prepetition Unsecured Notes, as of January 13, 2010, with a return envelope addressed to you with instructions that the holders of the Prepetition Unsecured Notes return their Individual Ballots to you so as to be received at least three (3) business days prior to the Voting Deadline.

**HOW TO VOTE:**

If you are transmitting the votes of any beneficial owners of the Class 5 Prepetition Unsecured Notes Claims, other than yourself, you must deliver the Class 5(a), 5(b), 5(c), 5(d), 5(e), or 5(f) Individual Ballot to the beneficial owner, along with the Plan, Disclosure Statement, Solicitation Order, Confirmation Hearing Notice and other materials requested to be forwarded, and take the necessary actions to enable such beneficial owners to complete and execute such Ballot voting to accept or reject the Plan, and to return the completed, executed Individual Ballot to you at least three (3) business days prior to the Voting Deadline to enable you to complete the Master Ballot and deliver it to the Balloting agent before the Voting Deadline.

With respect to all of the Ballots returned to you, you must properly complete the Master Ballot, as follows:

    i.    Indicate in Item 2 the total votes to accept or reject the Plan with respect to each Debtor or consolidated Debtors;

    ii.    Transcribe the votes from the Individual Ballots in the addendum to the Master Ballot referenced in Item 3 thereof and indicate whether each beneficial holder (i) voted to accept or reject the Plan and (ii) elected to opt out of the releases set forth in Article VII(J) of the Plan and elected not to consent to the related injunction;

IMPORTANT: BENEFICIAL OWNERS MAY NOT SPLIT THEIR VOTES. EACH BENEFICIAL OWNER MUST VOTE ALL OF HIS, HER OR ITS CLASS 5 CLAIM AGAINST EACH DEBTOR EITHER TO ACCEPT OR REJECT THE PLAN. IF ANY BENEFICIAL OWNER HAS ATTEMPTED TO SPLIT SUCH VOTE, PLEASE CONTACT THE BENEFICIAL OWNER TO CORRECT ITS BALLOT OR THE BALLOTING AGENT IMMEDIATELY.

    iii.    Review the certification in Item 4 of the Master Ballot;

    iv.    Ensure that each Individual Ballot is signed and the certification is complete;

    v.    Sign and date the Master Ballot;

    vi.    Independently verify and confirm the accuracy of the information provided with respect to each beneficial owner of Class 5 Claims;

---

[1]     All capitalized terms used in the Master Ballot or these instructions but not otherwise defined therein shall have the meaning ascribed to them in the Plan or Solicitation Order, as applicable.

vii. If additional space is required to respond to any item on the Master Ballot, please use additional sheets of paper clearly marked to indicate the applicable Item of the Master Ballot to which you are responding;

viii. You must deliver the completed, executed Master Ballot and all original copies of the Individual Ballots so that they are actually *received* by the Balloting Agent on or before the Voting Deadline. For each completed, executed Ballot returned to you by a beneficial owner, you must retain a copy of such Ballot in your files for one year from the Voting Deadline;

ix. Votes cast by beneficial owners will be applied against the positions held by such entities in the applicable security as of the Record Date, as evidenced by the record and depository listings. Votes submitted by a voting nominee, pursuant to a Master Ballot, will not be counted in excess of the Record Amount of such securities held by such voting nominee;

x. To the extent that conflicting votes or "overvotes" are submitted by a voting nominee, the Balloting Agent, in good faith, will attempt to reconcile discrepancies with the Voting Nominees;

xi. To the extent that overvotes on a Master Ballot are not reconcilable prior to the preparation of the vote certification, the Balloting Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot that contained the overvote, but only to the extent of the Voting Nominee's position in the applicable security; and

xii. After the Voting Deadline, no vote may be withdrawn without the prior consent of the Debtors.

PLEASE NOTE:

This Master Ballot is not a letter of transmittal and may not be used for any purpose other than to cast votes to accept or reject the Plan. Holders should not surrender, at this time, certificates representing their securities. The Balloting Agent will not accept delivery of any such certificates surrendered together with a Master Ballot or Ballot.

No Ballot or Master Ballot shall constitute or be deemed to be a proof of claim or equity interest or an assertion of a claim or equity interest.

No fees or commissions or other remuneration will be payable to any Voting Nominee. Upon written request, however, the Debtors will reimburse you for reasonable, actual and necessary out-of-pocket expenses associated with the distribution of the Solicitation Packages to your clients, the tabulation of the ballots and the completion of this Master Ballot, as set forth in the Solicitation Order.

**PLEASE MAIL THIS MASTER BALLOT PROMPTLY.**
**IF YOU BELIEVE THAT YOU ARE MISSING ANY MATERIALS FROM THE SOLICITATION PACKAGE, THAT YOU HAVE RECEIVED THE WRONG BALLOT, OR IF YOU HAVE QUESTIONS REGARDING THIS BALLOT, OR THE VOTING PROCEDURES, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CALL THE BALLOTING AGENT AT (631) 470-5000. DO NOT CONTACT THE BALLOTING AGENT FOR LEGAL ADVICE. THE BALLOTING AGENT CANNOT AND WILL NOT PROVIDE PARTIES WITH LEGAL ADVICE.**

Class 5 [•] Ballot

| | |
|---|---|
| In re: | Chapter 11 |
| **AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**, a Delaware Corporation, *et al.*, | Case No. 09-11214 (KG) |
| Debtors.[1] | (Jointly Administered) |

**CLASS 5(●) BALLOT FOR ACCEPTING OR REJECTING THE DEBTORS' JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE DATED AS OF DECEMBER 4, 2009 WITH RESPECT TO [INSERT DEBTOR]**

---

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS ON February 17, 2010 AT 4:00 P.M. (PREVAILING EASTERN TIME) (THE "VOTING DEADLINE"). YOU MUST RETURN THIS BALLOT TO THE INDENTURE TRUSTEE AT LEAST THREE (3) BUSINESS DAYS PRIOR TO THE VOTING DEADLINE TO ENSURE THAT YOUR BALLOT IS ACTUALLY COUNTED AND SUBMITTED WITH THE MASTER BALLOT.**

---

This ballot (the "Ballot") is submitted to you to solicit your vote to accept or reject the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated as of December 4, 2009 (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan")[2] with respect to **[INSERT DEBTOR]**, submitted by the debtors in possession in the above-captioned jointly administered cases, (collectively, the "Debtors") and described in the related disclosure statement (the "Disclosure Statement") approved by order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Disclosure Statement provides information to assist you in deciding how to vote your Ballot. If you do not have a Disclosure Statement, you may obtain a copy free of charge on the dedicated webpage related to these cases of the Debtors' Balloting Agent, The Garden City Group, Inc. (http://www.aventineinfo.com). Copies of the Disclosure Statement are also available for inspection during regular business hours at the office of the clerk of the Bankruptcy Court, 3rd Floor, 824 N. Market Street, Wilmington, Delaware 19801. In addition, copies of the Disclosure Statement may be obtained free of charge by request to Debbie Laskin (dlaskin@ycst.com) or may be obtained for a charge through Delaware Document Retrieval, 2 East 7th Street, 2nd Floor, Wilmington, Delaware 19801, or viewed on the Internet at the Bankruptcy Court's website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined have the meanings given to them in the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Claims in each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

To have your vote counted, you must complete, sign, and return this Ballot by regular mail, overnight delivery, courier, or hand delivery to the Prepetition Indenture Trustee, Deutsche Bank National Trust Company, so that it is **received** at least **three (3)**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

[2]    Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed in the Plan.

**business days** prior to the deadline indicated above. Ballots submitted by facsimile, email or other electronic transmission will not be counted.

### PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.

<div style="border:1px solid black">

**PLEASE COMPLETE ITEMS 1, 2, AND 3. IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

</div>

**Item 1. Class Vote.** The undersigned, a holder of a Class 5(•) Claim, in the amount set forth below, votes to (check <u>one</u> box):

☐    **Accept** the Plan.          ☐    **Reject** the Plan.

Creditor: _____    Claim Amount: $ _____

Taxpayer Identification Number: _____

**Item 2. Optional Release Election.** Check this box if you elect <u>not</u> to grant the releases contained in Article VII(J) of the Plan and elect <u>not</u> to consent to the related injunction. Election to withhold consent is at your option. If you submit your Ballot without this box checked, you will be deemed to consent to the releases set forth in Article VII(J) of the Plan and the related injunction to the fullest extent permitted by applicable law.

☐    The undersigned elects <u>not</u> to grant the releases contained in Article VII(J) of the Plan and elects <u>not</u> to consent to the related injunction.

**Item 3. Acknowledgments.** By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant. The undersigned understands that an otherwise properly completed, executed and timely returned Ballot that does not indicate either acceptance or rejection of the Plan or indicates both acceptance and rejection of the Plan will not be counted.

_____
Name of Creditor

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.      In the boxes provided in Item 1 of the Ballot, please indicate either acceptance or rejection of the Plan.  Complete the Ballot by providing all the information requested and sign, date and return the Ballot to Deutsche Bank National Trust Company (the "Indenture Trustee") in the return envelope provided by the Indenture Trustee and enclosed with the Solicitation Materials.

Ballots must be *received* by The Garden City Group, Inc. (the "Balloting Agent") on or before February 17, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "Voting Deadline").  If a Ballot is received after the Voting Deadline, it will not be counted.

The Indenture Trustee will submit your Class 5 Ballot along with its Master Ballot to the Balloting Agent. **Accordingly, you must transmit your Class 5 Ballot to the Indenture Trustee for inclusion in the Master Ballot so as to be received by the Indenture Trustee at least three (3) business days prior to the Voting Deadline.** An envelope addressed to the Indenture Trustee is enclosed for your convenience.  DO NOT SUBMIT YOUR CLASS 5 BALLOT DIRECTLY TO THE BALLOTING AGENT.

If neither the "accept" nor "reject" box is checked in Item 1 for an otherwise properly completed, executed and timely returned Ballot, the Ballot will not be counted.

2.      If you hold Claims in more than one voting Class under the Plan (*e.g.*, you hold a Class 5(a) claim and a Class 6(a) claim) you should receive a Ballot for each such category of Claims, coded by Class number and description, and a set of solicitation materials.  **Each Ballot you receive is for voting only your Claims described on the Ballot.  Please complete and return each Ballot you receive as directed in the instructions accompanying each Ballot.  The attached Ballot is designated only for voting Class 5(●) Claims.**  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different Claims within a single Class under the Plan and the Ballots are not voted in the same manner, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.  **Further, inconsistent duplicate Ballots with respect to the same claim shall not be counted.**

3.      Your Claim has been **temporarily allowed solely for purposes of voting** to accept or reject the Plan in accordance with certain tabulation rules approved by the Bankruptcy Court (the "Tabulation Rules").  The Tabulation Rules are set forth in the Solicitation Order.  The temporary allowance of your Claim for voting purposes does not constitute an allowance of your Claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtors in any other context (*e.g.*, the right of the Debtors to contest the amount or validity of any Claim for purposes of allowance under the Plan).  If you wish to challenge the temporary allowance of your Claim for voting purposes, you must file a motion, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, for an order temporarily allowing your Claim in a different amount or classification for purposes of voting to accept or reject the Plan and serve such motion on the Debtors so that it is received no later than **fourteen days before the Voting Deadline (February 3, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "Voting Objection Reply Deadline")); provided,** that if your Claim is the subject of a Determination Motion or an objection that is filed on or before the Voting Objection Reply Deadline, you shall have an additional seven (7) days to file a response to such Determination Motion or objection.  Unless the Bankruptcy Court orders otherwise, your Claim will not be counted as a vote in excess of the amount as determined in accordance with the Tabulation Rules, regardless of the amount identified in Item 1 of the Ballot.  If a lesser amount is identified in Item 1 of the Ballot, your Claim will be counted as a vote in such lesser amount.

4.      The Ballot does not constitute and will not be deemed a proof of claim or an assertion of a Claim or equity interest.

5.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received Ballot will supersede any prior Ballots.

6.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

7.      PLEASE RETURN YOUR BALLOT PROMPTLY TO THE INDENTURE TRUSTEE.  BALLOTS SUBMITTED BY FACSIMILE, E-MAIL OR OTHER ELECTRONIC TRANSMISSION WILL *NOT* BE ACCEPTED.

8.      IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE BALLOTING AGENT AT (631) 470-5000.  DO NOT CONTACT THE BALLOTING AGENT FOR LEGAL ADVICE.  THE BALLOTING AGENT CANNOT AND WILL NOT PROVIDE PARTIES WITH LEGAL ADVICE.

Class 6(●) Ballot

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**, a Delaware Corporation, *et al.*, | Case No. 09-11214 (KG) |
| Debtors.[1] | (Jointly Administered) |

## CLASS 6(●) BALLOT FOR ACCEPTING OR REJECTING THE DEBTORS' JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE DATED AS OF DECEMBER 4, 2009 WITH RESPECT TO [INSERT DEBTOR]

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS ON February 17, 2010 AT 4:00 P.M. (PREVAILING EASTERN TIME). YOUR BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THIS DEADLINE IN ORDER TO BE COUNTED.**

This ballot (the "<u>Ballot</u>") is submitted to you to solicit your vote to accept or reject the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated as of December 4, 2009 (including all exhibits thereto and as amended, modified or supplemented from time to time, the "<u>Plan</u>")[2] with respect to **[INSERT DEBTOR]**, submitted by the debtors in possession in the above-captioned jointly administered cases, (collectively, the "<u>Debtors</u>") and described in the related disclosure statement (the "<u>Disclosure Statement</u>") approved by order of the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>"). The Disclosure Statement provides information to assist you in deciding how to vote your Ballot. If you do not have a Disclosure Statement, you may obtain a copy free of charge on the dedicated webpage related to these cases of the Debtors' Balloting Agent, The Garden City Group, Inc. (http://www.aventineinfo.com). Copies of the Disclosure Statement are also available for inspection during regular business hours at the office of the clerk of the Bankruptcy Court, 3rd Floor, 824 N. Market Street, Wilmington, Delaware 19801. In addition, copies of the Disclosure Statement may be obtained free of charge by request to Debbie Laskin (dlaskin@ycst.com) or may be obtained for a charge through Delaware Document Retrieval, 2 East 7th Street, 2nd Floor, Wilmington, Delaware 19801, or viewed on the Internet at the Bankruptcy Court's website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined have the meanings given to them in the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount <u>and</u> more than one-half in number of the Claims in each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et seq.</u> (the "<u>Bankruptcy Code</u>"). If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code. To have your vote counted, you must complete, sign, and return this Ballot by regular mail, overnight delivery, or hand delivery to: The Garden City Group, Inc., Attn: Aventine Voting Agent, P.O. Box 9000 #6527 Merrick, NY 11566-9000; or by overnight, hand delivery, or courier to: The Garden City Group, Inc., Attn: Aventine Voting Agent, 105 Maxess Road, Merrick, NY 11566-9000, so that it is **<u>received</u>** by the deadline indicated above. <u>Ballots submitted by facsimile, email or other electronic transmission will not be counted.</u>

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

[2]    Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed in the Plan.

> **PLEASE COMPLETE ITEMS 1, 2, AND 3. IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES,
> THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.**

**Item 1. Class Vote.** The undersigned, a holder of a Class 6(●) Claim, in the amount set forth below, votes to (check <u>one</u> box):

    ☐    **Accept** the Plan.        ☐    **Reject** the Plan.

Creditor: _____      Claim Amount: $ _____

Taxpayer Identification Number: _____

**Item 2. Optional Release Election.** Check this box if you elect <u>not</u> to grant the releases contained in Article VII(J) of the Plan and elect <u>not</u> to consent to the related injunction. Election to withhold consent is at your option. If you submit your Ballot without this box checked, you will be deemed to consent to the releases set forth in Article VII(J) of the Plan and the related injunction to the fullest extent permitted by applicable law.

    ☐    The undersigned elects <u>not</u> to grant the releases contained in Article VII(J) of the Plan and elects <u>not</u> to consent to the related injunction.

**Item 3. Acknowledgments.** By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant. The undersigned understands that an otherwise properly completed, executed and timely returned Ballot that does not indicate either acceptance or rejection of the Plan or indicates both acceptance and rejection of the Plan will not be counted.

 

_____
Name of Creditor

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

**VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT**

1.     In the boxes provided in Item 1 of the Ballot, please indicate either acceptance or rejection of the Plan.  Complete the Ballot by providing all the information requested and sign, date and return the Ballot to The Garden City Group, Inc. (the "Balloting Agent") at the following address:

| By mail: | By hand delivery, overnight or courier: |
|---|---|
| **The Garden City Group, Inc.** | **The Garden City Group, Inc.** |
| **Attn: Aventine Voting Agent** | **Attn: Aventine Voting Agent** |
| **P.O. Box 9000 #6527** | **105 Maxess Road** |
| **Merrick, NY 11566-9000** | **Merrick, NY 11566** |

        **Ballots must be** *received* **by the Balloting Agent on or before February 17, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "Voting Deadline").**  If a Ballot is received after the Voting Deadline, it will not be counted.  An envelope addressed to the Balloting Agent is enclosed for your convenience.  Ballots submitted by facsimile, email or other electronic transmission will not be counted.  If neither the "accept" nor "reject" box is checked in Item 1 for an otherwise properly completed, executed and timely returned Ballot, the Ballot will not be counted.

2.    If you hold Claims in more than one voting Class under the Plan (*e.g.*, you hold a Class 5(a) claim and a Class 6(a) claim) you should receive a Ballot for each such category of Claims, coded by Class number and description, and a set of solicitation materials.  **Each Ballot you receive is for voting only your Claims described on the Ballot.  Please complete and return each Ballot you receive.  The attached Ballot is designated only for voting Class 6(•) Claims.**  You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan.  Accordingly, if you return more than one Ballot voting different Claims within a single Class under the Plan and the Ballots are not voted in the same manner, those Ballots will not be counted.  An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted.  **Further, inconsistent duplicate Ballots with respect to the same claim shall not be counted.**

3.    Your Claim has been **temporarily allowed solely for purposes of voting** to accept or reject the Plan in accordance with certain tabulation rules approved by the Bankruptcy Court (the "Tabulation Rules").  The Tabulation Rules are set forth in the Solicitation Order.  The temporary allowance of your Claim for voting purposes does not constitute an allowance of your Claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtors in any other context (*e.g.*, the right of the Debtors to contest the amount or validity of any Claim for purposes of allowance under the Plan).  If you wish to challenge the temporary allowance of your Claim for voting purposes, you must file a motion, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, for an order temporarily allowing your Claim in a different amount or classification for purposes of voting to accept or reject the Plan and serve such motion on the Debtors so that it is received no later than **fourteen days before the Voting Deadline (February 3, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "Voting Objection Reply Deadline"));** provided, that if your Claim is the subject of a Determination Motion or an objection that is filed on or before the Voting Objection Reply Deadline, you shall have an additional seven (7) days to file a response to such Determination Motion or objection.  Unless the Bankruptcy Court orders otherwise, your Claim will not be counted as a vote in excess of the amount as determined in accordance with the Tabulation Rules, regardless of the amount identified in Item 1 of the Ballot.  If a lesser amount is identified in Item 1 of the Ballot, your Claim will be counted as a vote in such lesser amount.

4.    The Ballot does not constitute and will not be deemed a proof of claim or an assertion of a Claim or equity interest.

5.    If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received Ballot will supersede any prior Ballots.

6.    NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

7.    PLEASE RETURN YOUR BALLOT PROMPTLY.  THE BALLOTING AGENT WILL *NOT* ACCEPT BALLOTS BY FACSIMILE, E-MAIL OR OTHER ELECTRONIC TRANSMISSION.

8.    IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE BALLOTING AGENT AT (631) 470-5000.  DO NOT CONTACT THE BALLOTING AGENT FOR LEGAL ADVICE.  THE BALLOTING AGENT CANNOT AND WILL NOT PROVIDE PARTIES WITH LEGAL ADVICE.

Class 7⦿ Ballot

| | |
|---|---|
| In re: | Chapter 11 |
| **AVENTINE RENEWABLE ENERGY HOLDINGS, INC.,** a Delaware Corporation, *et al.*, | Case No. 09-11214 (KG) |
| Debtors.[1] | (Jointly Administered) |

**CLASS 7(●) BALLOT FOR ACCEPTING OR REJECTING THE DEBTORS' JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE DATED AS OF DECEMBER 4, 2009 WITH RESPECT TO [INSERT DEBTOR]**

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS ON February 17, 2010 AT 4:00 P.M. (PREVAILING EASTERN TIME). YOUR BALLOT MUST BE ACTUALLY RECEIVED BY THIS DEADLINE IN ORDER TO BE COUNTED.**

This ballot (the "Ballot") is submitted to you to solicit your vote to accept or reject the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated as of December 4, 2009 (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan")[2] with respect to **[INSERT DEBTOR]**, submitted by the debtors in possession in the above-captioned jointly administered cases, (collectively, the "Debtors") and described in the related disclosure statement (the "Disclosure Statement") approved by order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Disclosure Statement provides information to assist you in deciding how to vote your Ballot. If you do not have a Disclosure Statement, you may obtain a copy free of charge on the dedicated webpage related to these cases of the Debtors' Balloting Agent, The Garden City Group, Inc. (http://www.aventineinfo.com). Copies of the Disclosure Statement are also available for inspection during regular business hours at the office of the clerk of the Bankruptcy Court, 3rd Floor, 824 N. Market Street, Wilmington, Delaware 19801. In addition, copies of the Disclosure Statement may be obtained free of charge by request to Debbie Laskin (dlaskin@ycst.com) or may be obtained for a charge through Delaware Document Retrieval, 2 East 7th Street, 2nd Floor, Wilmington, Delaware 19801, or viewed on the Internet at the Bankruptcy Court's website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined have the meanings given to them in the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount and more than one-half in number of the Claims in each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

To have your vote counted, you must complete, sign, and return this Ballot by regular mail, overnight delivery, or hand delivery to: The Garden City Group, Inc., Attn: Aventine Voting Agent, P.O. Box 9000 #6527 Merrick, NY 11566-9000; or by overnight, hand delivery, or courier to: The Garden City Group, Inc., Attn: Aventine Voting Agent, 105 Maxess Road, Merrick, NY 11566-9000, so that it is **received** by the deadline indicated above. Ballots submitted by facsimile, email or other electronic transmission will not be counted.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed in the Plan.

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.**

PLEASE COMPLETE ITEMS 1, 2, AND 3. IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES,
THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Class Vote.** The undersigned, a holder of a Class 7(•) Claim, in the amount set forth below, votes to (check <u>one</u> box):

☐ **Accept** the Plan. ☐ **Reject** the Plan.

Creditor: _____ Claim Amount: $ _____

Taxpayer Identification Number: _____

**Item 2. Optional Release Election.** Check this box if you elect <u>not</u> to grant the releases contained in Article VII(J) of the Plan and elect <u>not</u> to consent to the related injunction. Election to withhold consent is at your option. If you submit your Ballot without this box checked, you will be deemed to consent to the releases set forth in Article VII(J) of the Plan and the related injunction to the fullest extent permitted by applicable law.

☐ The undersigned elects <u>not</u> to grant the releases contained in Article VII(J) of the Plan and elects <u>not</u> to consent to the related injunction.

**Item 3. Acknowledgments.** By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials and certifies that the undersigned is the claimant or has the power and authority to vote to accept or reject the Plan on behalf of the claimant. The undersigned understands that an otherwise properly completed, executed and timely returned Ballot that does not indicate either acceptance or rejection of the Plan or indicates both acceptance and rejection of the Plan will not be counted.

_____
Name of Creditor

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.      In the boxes provided in Item 1 of the Ballot, please indicate either acceptance or rejection of the Plan. Complete the Ballot by providing all the information requested and sign, date and return the Ballot to The Garden City Group, Inc. (the "Balloting Agent") at the following address:

| By mail: | By hand delivery, overnight or courier: |
|---|---|
| **The Garden City Group, Inc.**<br>**Attn: Aventine Voting Agent**<br>**P.O. Box 9000 #6527**<br>**Merrick, NY 11566-9000** | **The Garden City Group, Inc.**<br>**Attn: Aventine Voting Agent**<br>**105 Maxess Road**<br>**Merrick, NY 11566** |

**Ballots must be** *received* **by the Balloting Agent on or before February 17, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "Voting Deadline").** If a Ballot is received after the Voting Deadline, it will not be counted. An envelope addressed to the Balloting Agent is enclosed for your convenience. Ballots submitted by facsimile, email or other electronic transmission will not be counted. If neither the "accept" nor "reject" box is checked in Item 1 for an otherwise properly completed, executed and timely returned Ballot, the Ballot will not be counted.

2.      If you hold Claims in more than one voting Class under the Plan (*e.g.*, you hold a Class 5(a) claim and a Class 6(a) claim) you should receive a Ballot for each such category of Claims, coded by Class number and description, and a set of solicitation materials. **Each Ballot you receive is for voting only your Claims described on the Ballot. Please complete and return each Ballot you receive. The attached Ballot is designated only for voting Class 7(●) Claims.** You must vote all your Claims within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different Claims within a single Class under the Plan and the Ballots are not voted in the same manner, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted. **Further, inconsistent duplicate Ballots with respect to the same claim shall not be counted.**

3.      Your Claim has been **temporarily allowed solely for purposes of voting** to accept or reject the Plan in accordance with certain tabulation rules approved by the Bankruptcy Court (the "Tabulation Rules"). The Tabulation Rules are set forth in the Solicitation Order. The temporary allowance of your Claim for voting purposes does not constitute an allowance of your Claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtors in any other context (*e.g.*, the right of the Debtors to contest the amount or validity of any Claim for purposes of allowance under the Plan). If you wish to challenge the temporary allowance of your Claim for voting purposes, you must file a motion, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, for an order temporarily allowing your Claim in a different amount or classification for purposes of voting to accept or reject the Plan and serve such motion on the Debtors so that it is received no later than **fourteen days before the Voting Deadline (February 3, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "Voting Objection Reply Deadline"));** provided, that if your Claim is the subject of a Determination Motion or an objection that is filed on or before the Voting Objection Reply Deadline, you shall have an additional seven (7) days to file a response to such Determination Motion or objection. Unless the Bankruptcy Court orders otherwise, your Claim will not be counted as a vote in excess of the amount as determined in accordance with the Tabulation Rules, regardless of the amount identified in Item 1 of the Ballot. If a lesser amount is identified in Item 1 of the Ballot, your Claim will be counted as a vote in such lesser amount.

4.      The Ballot does not constitute and will not be deemed a proof of claim or an assertion of a Claim or equity interest.

5.      If you cast more than one Ballot voting the same Claim prior to the Voting Deadline, the latest received Ballot will supersede any prior Ballots.

6.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

7.      PLEASE RETURN YOUR BALLOT PROMPTLY. THE BALLOTING AGENT WILL *NOT* ACCEPT BALLOTS BY FACSIMILE, E-MAIL OR OTHER ELECTRONIC TRANSMISSION.

8.      IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE BALLOTING AGENT AT (631) 470-5000. DO NOT CONTACT THE BALLOTING AGENT FOR LEGAL ADVICE. THE BALLOTING AGENT CANNOT AND WILL NOT PROVIDE PARTIES WITH LEGAL ADVICE.

Class 9(a) Master Ballot

| | |
|---|---|
| In re: | Chapter 11 |
| **AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**, a Delaware Corporation, *et al.*, | Case No. 09-11214 (KG) |
| Debtors.[1] | (Jointly Administered) |

**CLASS 9(a) MASTER BALLOT FOR ACCEPTING OR REJECTING THE DEBTORS' JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE DATED AS OF DECEMBER 4, 2009**

**PLEASE READ AND FOLLOW THE INSTRUCTIONS CAREFULLY. PLEASE COMPLETE, SIGN AND DATE THIS MASTER BALLOT AND RETURN IT TO THE BALLOTING AGENT BY (A) FIRST CLASS MAIL TO: THE GARDEN CITY GROUP, INC., ATTN: AVENTINE VOTING AGENT, P.O. BOX 9000 #6527 MERRICK, NY 11566-9000; OR (B) OVERNIGHT, HAND DELIVERY, OR COURIER TO: THE GARDEN CITY GROUP, INC., ATTN: AVENTINE VOTING AGENT, 105 MAXESS ROAD, MERRICK, NY 11566-9000. IF THIS MASTER BALLOT HAS NOT BEEN RECEIVED BY THE BALLOTING AGENT BY FEBRUARY 17, 2010 AT 4:00 P.M. EASTERN TIME, UNLESS SUCH TIME IS EXTENDED (THE "VOTING DEADLINE"), THE VOTES AND RELEASE ELECTIONS OF YOUR CUSTOMERS WILL NOT BE COUNTED. THEREFORE, YOU MUST ALLOW SUFFICIENT TIME TO BE SURE THAT THE MASTER BALLOT IS RECEIVED BY THE BALLOTING AGENT BY THE VOTING DEADLINE.**

You ("You," "YOU" or "you"), as Equity Voting Nominee of certain shares of Aventine Renewable Energy Holdings, Inc., must deliver the completed, executed Master Ballot so that it is actually *received* by the Balloting Agent on or before the Voting Deadline. For each completed, executed Ballot returned to you by a beneficial owner, you must retain a copy of such Ballot in your files for one year from the Voting Deadline.

This master ballot (the "Master Ballot") is to be used by you, as registered holder, trustee, broker, bank, commercial bank, trust company, dealer, or other agent or nominee (each of the foregoing, an "Equity Voting Nominee"), for beneficial owners of the Class 9(a) Equity Interest in Aventine Renewable Energy Holdings, Inc.., to transmit the votes of such creditors in respect of their interest to accept or reject Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated as of December 4, 2009 (as may be amended, the "Plan"),[2] which is proposed by the above-captioned debtors and debtors in possession (the "Debtors").

By Order dated [•] (the "Solicitation Order"), the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") approved the Disclosure Statement for the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated as of December 4, 2009 (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Disclosure

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

[2]  Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed in the Plan.

Statement") as containing adequate information within the meaning of section 1125 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). These documents are contained on the CD-ROM sent to you with this ballot. Any party may request, at the Debtors' expense, hard copies of the Disclosure Statement, together with the Plan and other exhibits annexed thereto, from the Balloting Agent. The Solicitation Order also contains important information regarding the balloting process. Please also read the Solicitation Order and the instructions sent with this Ballot prior to submitting this Ballot.

All capitalized terms used in this Master Ballot but not otherwise defined herein shall have the meanings given to such terms in the Solicitation Order or Plan, as applicable. This Master Ballot is being sent to Equity Voting Nominees to use to cast votes to accept or reject the Plan on behalf of and in accordance with the Ballots cast by the beneficial holders of equity interests in Class 9(a).

**Item 1 - CERTIFICATION OF AUTHORITY TO VOTE.** The Undersigned certifies that as of January 13, 2010, (the "Record Date"), the Undersigned (please check applicable box):

☐     Is a registered holder, trustee, broker, bank, commercial bank, trust company, dealer, or other agent or nominee, or a beneficial owner, of the aggregate principal amount of shares in Aventine Renewable Energy Holdings, Inc. listed in Items 2 and 3 below that is the registered holder of such securities; or

☐     Is acting under a power of attorney and/or agency (a copy of which will be provided upon request) granted by a registered holder, trustee, broker, bank, commercial bank, trust company, dealer, or other agent or nominee, or a beneficial owner that is the registered holder of the aggregate principal amount of shares in Aventine Renewable Energy Holdings, Inc. listed in Items 2 and 3 below; or

☐     Has been granted a proxy (an original of which is attached hereto) from a registered holder, trustee, broker, bank, commercial bank, trust company, dealer, or other agent or nominee, or a beneficial owner, that is the registered holder of the aggregate principal amount of shares listed in Items 2 and 3 and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the beneficial owners of the shares in Aventine Renewable Energy Holdings, Inc. described below.

**Item 2 - TABULATION OF BENEFICIAL OWNER VOTING.** The undersigned certifies that:

**Acceptances.** _____ beneficial owners of Class 9(a) Equity Interests in Aventine Renewable Energy Holdings, Inc. with an aggregate number of shares in the amount of _____ have delivered duly completed individual Ballots for holders of Class 9(a) Equity Interests in Aventine Renewable Energy Holdings, Inc. to the undersigned (or, such information was derived from individual Ballots that have been summarized in intermediary Master Ballots delivered to the undersigned) voting to **ACCEPT** the Plan; and

**Rejections.** _____ beneficial owners of Class 9(a) Equity Interests in Aventine Renewable Energy Holdings, Inc. with an aggregate number of shares in the amount of _____ have delivered duly completed Class 9(a) Equity Interests in Aventine Renewable Energy Holdings, Inc. – individual Ballots to the undersigned (or, such information was derived from individual Ballots that have been summarized in intermediary Master Ballots delivered to the undersigned) voting to **REJECT** the Plan.

**Item 3 – TRANSMITTAL OF VOTES FROM INDIVIDUAL BALLOTS.** The undersigned transmits the votes of beneficial owners of the Class 9(a) Equity Interests in Aventine Renewable Energy Holdings, Inc. as fully set forth on the annexed addendum to this Master Ballot and certifies that the parties listed on the annexed addendum are beneficial owners, as of the Record Date, and have delivered to the undersigned, as Equity Voting Nominee, Ballots casting such votes, which, as set forth in each column therein, indicate the aggregate principal number of shares for each holder, whether such shares are voted to accept or reject the Plan, and whether the holder of such shares has elected <u>not</u> to grant the releases contained in Article VII(J) of the Plan and elected <u>not</u> to consent to the related injunction.

**Item 4 - CERTIFICATION.** By signing this Master Ballot, the undersigned certifies that: (a) each beneficial owner of the Class 9(a) Equity Interests in Aventine Renewable Energy Holdings, Inc. whose votes are being transmitted by this Master Ballot has been provided with a copy of the Plan, Disclosure Statement, Solicitation Order and a Ballot for voting their Equity Interests; and (b) it is the registered holder of Equity Interests to which this ballot pertains and/or has full power and authority to vote to accept or reject the Plan. The undersigned also acknowledges that the solicitation of votes in Class 9(a) to accept or reject the Plan is subject to all the terms and conditions set forth in the Solicitation Order, dated January 13, 2010.

<div style="text-align:center">

_____
Name of Voting Nominee

_____
Participant Number

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Street Address

_____
City, State and Zip Code

_____
Telephone Number

_____
Date Complete

</div>

**In order to vote Class 9(a) Equity Interests to accept or reject the Plan, please complete, sign and date this Master Ballot and promptly return it to the Balloting Agent at the following address so as to be received on or prior to the Voting Deadline:**

| By mail: | By hand delivery, overnight or courier: |
|---|---|
| **The Garden City Group, Inc.** <br> **Attn: Aventine Voting Agent** <br> **P.O. Box 9000 #6527** <br> **Merrick, NY 11566-9000** | **The Garden City Group, Inc.** <br> **Attn: Aventine Voting Agent** <br> **105 Maxess Road** <br> **Merrick, NY 11566** |

**BALLOTS RECEIVED BY FACSIMILE OR OTHER ELECTRONIC MEANS OR RECEIVED AFTER THE VOTING DEADLINE WILL NOT BE COUNTED.**

## ADDENDUM TO MASTER BALLOT

## Class 9(a) Equity Interests in Aventine Renewable Energy Holdings, Inc.

| Your Customer Name or Account Number for Each Beneficial Owner of a Class 9(a) Interest and name of each beneficial owner voting on the Plan | Number of Shares in Class 9(a) voted to ACCEPT the Plan* | Number of Shares in Class 9(a) voted to REJECT the Plan* | Election (i) to opt out of the releases contained in Article VII(J) of the Plan and (ii) not to consent to the related injunction |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| TOTALS | | | |

---

\* Please note that each beneficial owner must vote all of his, her, or its Equity Interests to accept or reject the Plan and may not split such vote.

## VOTING INSTRUCTIONS

**VOTING DEADLINE:**

The Voting Deadline is February 17, 2010 at 4:00 p.m. Eastern Time, unless such time is extended. To have the votes of the holders of Equity Interests in Aventine Renewable Energy Holdings, Inc.[1] counted, you must complete, sign, and return this master ballot (the "Master Ballot") so that it is received by the Balloting Agent at the address set forth in the Master Ballot on or before the Voting Deadline. Accordingly, you should immediately transmit the enclosed Solicitation Packages, including individual Ballots, to the holders of record of Equity Interests in Aventine Renewable Energy Holdings, Inc., as of January 13, 2010, with a return envelope addressed to you with instructions that the holders of Equity Interests in Aventine Renewable Energy Holdings, Inc. return their individual Ballots to you so as to be received at least three (3) business days prior to the Voting Deadline.

**HOW TO VOTE:**

If you are transmitting the votes of any beneficial owners of the Class 9(a) Equity Interests in Aventine Renewable Energy Holdings, Inc., other than yourself, you must deliver the Class 9(a) individual Ballot to the beneficial owner, along with the Plan, Disclosure Statement, Solicitation Order, Confirmation Hearing Notice and other materials requested to be forwarded, and take the necessary actions to enable such beneficial owners to complete and execute such Ballot voting to accept or reject the Plan, and to return the completed, executed individual Ballot to you at least three (3) business days prior to the Voting Deadline to enable you to complete the Master Ballot and deliver it to the Balloting agent before the Voting Deadline.

With respect to all of the Ballots returned to you, you must properly complete the Master Ballot, as follows:

    i.    Indicate in Item 2 the total shares voted to accept or reject the Plan with respect to the Debtor Aventine Renewable Energy Holdings, Inc.;

    ii.    Transcribe the votes from the individual Ballots in the addendum to the Master Ballot referenced in Item 3 thereof and indicate whether each beneficial holder (i) voted to accept or reject the Plan and (ii) elected to opt out of the releases set forth in Article VII(J) of the Plan and elected not to consent to the related injunction;

IMPORTANT: BENEFICIAL OWNERS MAY NOT SPLIT THEIR VOTES. EACH BENEFICIAL OWNER MUST VOTE ALL OF HIS, HER OR ITS CLASS 9(a) EQUITY INTERESTS EITHER TO ACCEPT OR REJECT THE PLAN. IF ANY BENEFICIAL OWNER HAS ATTEMPTED TO SPLIT SUCH VOTE, PLEASE CONTACT THE BENEFICIAL OWNER TO CORRECT ITS BALLOT OR THE BALLOTING AGENT IMMEDIATELY.

    iii.    Review the certification in Item 4 of the Master Ballot;

    iv.    Ensure that each individual Ballot is signed and the certification is complete;

    v.    Sign and date the Master Ballot;

---

[1] All capitalized terms used in the Master Ballot or these instructions but not otherwise defined therein shall have the meaning ascribed to them in the Plan or Solicitation Order, as applicable.

vi.    Independently verify and confirm the accuracy of the information provided with respect to each beneficial owner of Class 9(a) Equity Interests;

vii.   If additional space is required to respond to any item on the Master Ballot, please use additional sheets of paper clearly marked to indicate the applicable Item of the Master Ballot to which you are responding;

viii.  You must deliver the completed, executed Master Ballot and all original copies of the individual Ballots so that they are actually *received* by the Balloting Agent on or before the Voting Deadline. For each completed, executed Ballot returned to you by a beneficial owner, you must retain a copy of such Ballot in your files for one year from the Voting Deadline;

ix.    Votes cast by beneficial owners will be applied against the positions held by such entities in the applicable security as of the Record Date, as evidenced by the record and depository listings. Votes submitted by a voting nominee, pursuant to a Master Ballot, will not be counted in excess of the Record Amount of such securities held by such voting nominee;

x.     To the extent that conflicting votes or "overvotes" are submitted by a voting nominee, the Balloting Agent, in good faith, will attempt to reconcile discrepancies with the Voting Nominees;

xi.    To the extent that overvotes on a Master Ballot are not reconcilable prior to the preparation of the vote certification, the Balloting Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot that contained the overvote, but only to the extent of the Voting Nominee's position in the applicable security; and

xii.   After the Voting Deadline, no vote may be withdrawn without the prior consent of the Debtors.

PLEASE NOTE:

This Master Ballot is not a letter of transmittal and may not be used for any purpose other than to cast votes to accept or reject the Plan. Holders should not surrender, at this time, certificates representing their securities. The Balloting Agent will not accept delivery of any such certificates surrendered together with a Master Ballot or Ballot.

No Ballot or Master Ballot shall constitute or be deemed to be a proof of claim or equity interest or an assertion of a claim or equity interest.

No fees or commissions or other remuneration will be payable to any Voting Nominee. Upon written request, however, the Debtors will reimburse you for reasonable, actual and necessary out-of-pocket expenses associated with the distribution of the Solicitation Packages to your clients, the tabulation of the ballots and the completion of this Master Ballot, as set forth in the Solicitation Order.

**PLEASE MAIL THIS MASTER BALLOT PROMPTLY.**

**IF YOU BELIEVE THAT YOU ARE MISSING ANY MATERIALS FROM THE SOLICITATION PACKAGE, THAT YOU HAVE RECEIVED THE WRONG BALLOT, OR IF**

YOU HAVE QUESTIONS REGARDING THIS BALLOT, OR THE VOTING PROCEDURES, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CALL THE BALLOTING AGENT AT (631) 470-5000.  DO NOT CONTACT THE BALLOTING AGENT FOR LEGAL ADVICE.  THE BALLOTING AGENT CANNOT AND WILL NOT PROVIDE PARTIES WITH LEGAL ADVICE.

Class 9(a) Ballot

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**, a Delaware Corporation, *et al.*, | Case No. 09-11214 (KG) |
| Debtors.[1] | (Jointly Administered) |

## CLASS 9(a) BALLOT FOR ACCEPTING OR REJECTING THE DEBTORS' JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE DATED AS OF DECEMBER 4, 2009 WITH RESPECT TO AVENTINE RENEWABLE ENERGY HOLDINGS, INC. AND AVENTINE RENEWABLE ENERGY, LLC AS SUBSTANTIVELY CONSOLIDATED AND MERGED IN ACCORDANCE WITH THE PLAN

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS ON February 17, 2010 AT 4:00 P.M. (PREVAILING EASTERN TIME) (THE "VOTING DEADLINE"). YOU MUST RETURN THIS BALLOT TO THE APPLICABLE EQUITY VOTING NOMINEE AT LEAST THREE (3) BUSINESS DAYS PRIOR TO THE VOTING DEADLINE TO ENSURE THAT YOUR BALLOT IS ACTUALLY COUNTED AND SUBMITTED WITH THE MASTER BALLOT.**

This ballot (the "Ballot") is submitted to you to solicit your vote to accept or reject the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Dated as of December 4, 2009 (including all exhibits thereto and as amended, modified or supplemented from time to time, the "Plan")[2] with respect to Aventine Renewable Energy Holdings, Inc., submitted by the debtors in possession in the above-captioned jointly administered cases, (collectively, the "Debtors") and described in the related disclosure statement (the "Disclosure Statement") approved by order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Disclosure Statement provides information to assist you in deciding how to vote your Ballot. If you do not have a Disclosure Statement, you may obtain a copy free of charge on the dedicated webpage related to these cases of the Debtors' Balloting Agent, The Garden City Group, Inc. (http://www.aventineinfo.com). Copies of the Disclosure Statement are also available for inspection during regular business hours at the office of the clerk of the Bankruptcy Court, 3rd Floor, 824 N. Market Street, Wilmington, Delaware 19801. In addition, copies of the Disclosure Statement may be obtained free of charge by request to Debbie Laskin (dlaskin@ycst.com) or may be obtained for a charge through Delaware Document Retrieval, 2 East 7th Street, 2nd Floor, Wilmington, Delaware 19801, or viewed on the Internet at the Bankruptcy Court's website (http://www.deb.uscourts.gov) by following the directions for accessing the ECF system on such website. You should review the Disclosure Statement and the Plan before you vote. You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan. Capitalized terms used in this Ballot or the attached instructions that are not otherwise defined have the meanings given to them in the Plan.

The Plan can be confirmed by the Bankruptcy Court and thereby made binding on you if it is accepted by the holders of at least two-thirds in amount of the allowed Interests of each impaired Class who vote on the Plan and if the Plan otherwise satisfies the applicable requirements of section 1129(a) under title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). If the requisite acceptances are not obtained, the Bankruptcy Court nonetheless may confirm the Plan if it finds that the Plan (a) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (b) otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

[2]   Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed in the Plan.

To have your vote counted, you must complete, sign, and return this Ballot by regular mail, overnight delivery, courier, or hand delivery to the applicable Equity Voting Nominee, so that it is **received** at least **three (3) business days** prior to the Voting Deadline indicated above. Ballots submitted by facsimile, email or other electronic transmission will not be counted.

## PLEASE READ THE ATTACHED VOTING INFORMATION AND INSTRUCTIONS BEFORE COMPLETING THIS BALLOT.

PLEASE COMPLETE ITEMS 1, 2, AND 3. IF THIS BALLOT IS NOT SIGNED ON THE APPROPRIATE LINES, THIS BALLOT WILL NOT BE VALID OR COUNTED AS HAVING BEEN CAST.

**Item 1. Class Vote.** The undersigned, a holder of a Class 9(a) Equity Interest, in the amount set forth below, votes to (check <u>one</u> box):

☐ **Accept** the Plan. ☐ **Reject** the Plan.

Creditor: _____ Number of Shares: _____

Taxpayer Identification Number: _____

**Item 2. Optional Release Election.** Check this box if you elect <u>not</u> to grant the releases contained in Article VII(J) of the Plan and elect <u>not</u> to consent to the related injunction. Election to withhold consent is at your option. If you submit your Ballot without this box checked, you will be deemed to consent to the releases set forth in Article VII(J) of the Plan and the related injunction to the fullest extent permitted by applicable law.

☐ The undersigned elects <u>not</u> to grant the releases contained in Article VII(J) of the Plan and elects <u>not</u> to consent to the related injunction.

**Item 3. Acknowledgments.** By signing this Ballot, the undersigned acknowledges receipt of the Disclosure Statement and the other applicable solicitation materials and certifies that the undersigned is the interest holder or has the power and authority to vote to accept or reject the Plan on behalf of the interest holder. The undersigned understands that an otherwise properly completed, executed and timely returned Ballot that does not indicate either acceptance or rejection of the Plan or indicates both acceptance and rejection of the Plan will not be counted.

_____
Name of Interest Holder

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Date Completed

## VOTING INFORMATION AND INSTRUCTIONS FOR COMPLETING THE BALLOT

1.      In the boxes provided in Item 1 of the Ballot, please indicate either acceptance or rejection of the Plan. Complete the Ballot by providing all the information requested and sign, date and return the Ballot to the applicable Equity Voting Nominee in the return envelope provided by the applicable Equity Voting Nominee and enclosed with the Solicitation Materials.

Ballots must be *received* by The Garden City Group, Inc. (the "Balloting Agent") on or before February 17, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "Voting Deadline"). If a Ballot is received after the Voting Deadline, it will not be counted.

The applicable Equity Voting Nominee will submit your Class 9(a) Ballot along with its Master Ballot to the Balloting Agent. **Accordingly, you must transmit your Class 9(a) Ballot to the applicable Equity Voting Nominee for inclusion in the Master Ballot so as to be received by the applicable Equity Voting Nominee at least three (3) business days prior to the Voting Deadline.** An envelope addressed to applicable Equity Voting Nominee is enclosed for your convenience. DO NOT SUBMIT YOUR CLASS 5 BALLOT DIRECTLY TO THE BALLOTING AGENT.

2.      If you hold Claims or Interests in more than one voting Class under the Plan (*e.g.*, you hold a Class 5(a) claim and a Class 6(a) claim) you should receive a Ballot for each such category of Claims or Interests, coded by Class number and description, and a set of solicitation materials. **Each Ballot you receive is for voting only your Claims described on the Ballot. Please complete and return each Ballot you receive. The attached Ballot is designated only for voting Class 9(a) Equity Interests.** You must vote all your Interests within a single Class under the Plan either to accept or reject the Plan. Accordingly, if you return more than one Ballot voting different Interests within a single Class under the Plan and the Ballots are not voted in the same manner, those Ballots will not be counted. An otherwise properly executed Ballot that attempts to partially accept and partially reject the Plan likewise will not be counted. **Further, inconsistent duplicate Ballots with respect to the same claim or interest shall not be counted.**

3.      Your Interest has been **temporarily allowed solely for purposes of voting** to accept or reject the Plan in accordance with certain tabulation rules approved by the Bankruptcy Court (the "Tabulation Rules"). The Tabulation Rules are set forth in the Solicitation Order. The temporary allowance of your Claim for voting purposes does not constitute an allowance of your Claim for purposes of distribution under the Plan and is without prejudice to the rights of the Debtors in any other context (*e.g.*, the right of the Debtors to contest the amount or validity of any Claim for purposes of allowance under the Plan). If you wish to challenge the temporary allowance of a Claim for voting purposes, you must file a motion, pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure, for an order temporarily allowing such Claim in a different amount or classification for purposes of voting to accept or reject the Plan and serve such motion on the Debtors so that it is received no later than **fourteen days before the Voting Deadline (February 3, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "Voting Objection Reply Deadline"));** provided, that if such Claim is the subject of a Determination Motion or an objection filed on or before the Voting Objection Reply Deadline, the affected holder shall have an additional seven (7) days to file a response to such Determination Motion or objection. Unless the Bankruptcy Court orders otherwise, a Claim will not be counted as a vote in excess of the amount as determined in accordance with the Tabulation Rules, regardless of the amount identified in Item 1 of the Ballot. If a lesser amount of shares is identified in Item 1 of the Ballot, your Interest will be counted as a vote in such lesser amount.

4.      The Ballot does not constitute and will not be deemed a proof of claim or an assertion of a Claim or Equity Interest.

5.      If you cast more than one Ballot voting the same Interest prior to the Voting Deadline, the latest received Ballot will supersede any prior Ballots.

6.      NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

7.      PLEASE RETURN YOUR BALLOT PROMPTLY. THE BALLOTING AGENT WILL *NOT* ACCEPT BALLOTS BY FACSIMILE, E-MAIL OR OTHER ELECTRONIC TRANSMISSION.

8.      IF YOU HAVE RECEIVED A DAMAGED BALLOT OR HAVE LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THIS BALLOT OR THE VOTING PROCEDURES, PLEASE CALL THE BALLOTING AGENT AT (631) 470-5000. DO NOT CONTACT THE BALLOTING AGENT FOR LEGAL ADVICE. THE BALLOTING AGENT CANNOT AND WILL NOT PROVIDE PARTIES WITH LEGAL ADVICE.

# EXHIBIT C

## Notice of Non-Voting Status

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**, a Delaware Corporation, *et al.*, | Case No. 09-11214 (KG) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF NON-VOTING STATUS

**PLEASE TAKE NOTICE THAT:**

1.        By order entered on January [13], 2009 (the "<u>Disclosure Statement Order</u>"), the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") approved the Debtors' Disclosure Statement with Respect to the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated December 4, 2009 (as it may be amended and/or modified, the "<u>Disclosure Statement</u>"), filed by Aventine Renewable Energy Holdings, Inc. and its affiliates, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), and authorized the Debtors to solicit votes to accept or reject the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated December 4, 2009 (as it may be amended and/or modified, the "<u>Plan</u>"), annexed as <u>Exhibit A</u> to the Disclosure Statement. All capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Plan.

2.        UNDER THE TERMS OF THE PLAN, HOLDERS OF "OTHER PRIORITY CLAIMS" (CLASS 1), "OTHER SECURED CLAIMS" (CLASS 3), "KIEWIT MT. VERNON SECURED CLAIM" (CLASS 4(a)), AND "INTERCOMPANY CLAIMS" (CLASS 8) WILL RECEIVE PAYMENT IN FULL OF THEIR CLAIMS AND, ACCORDINGLY, ARE (A) CONCLUSIVELY PRESUMED TO HAVE ACCEPTED THE PLAN, AND (B) NOT ENTITLED TO VOTE ON THE PLAN ON ACCOUNT OF SUCH CLAIMS AND INTERESTS.

3.        FURTHERMORE, UNDER THE TERMS OF THE PLAN, HOLDERS OF "EQUITY INTERESTS" IN DEBTORS OTHER THAN ARE HOLDINGS AND ARE LLC AS SUBSTANTIVELY CONSOLIDATED AND MERGED IN ACCORDANCE WITH THE PLAN (CLASSES 9(b)-9(g)) WILL NEITHER RECEIVE NOR RETAIN ANY CONSIDERATION NOR RETAIN ANY PROPERTY UNDER THE PLAN AND, ACCORDINGLY, ARE (A) CONCLUSIVELY PRESUMED TO HAVE REJECTED THE PLAN, AND (B) NOT ENTITLED TO VOTE ON THE PLAN ON ACCOUNT OF SUCH CLAIMS AND INTERESTS.

4.        **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU HAVE BEEN IDENTIFIED AS HOLDING A CLAIM OR INTEREST IN ONE OF THE CLASSES IDENTIFIED ABOVE THAT ARE NOT ENTITLED TO VOTE ON THE PLAN.**

---

[1]        The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

5. Articles VII(D) and VII(E) of the Plan contain the following injunctive provisions:

*Except as otherwise expressly specified in the Plan, after the Effective Date, any holder of such discharged Claim shall be precluded from asserting against the Debtors, the Reorganized Debtors, or any of their respective assets or properties, any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the entry of the Confirmation Order.*

*Except as otherwise expressly provided in the Plan, the Confirmation Order, or a separate order of the Court, all entities who have held, hold, or may hold Claims against the Debtors that arose before or were held as of the Effective Date, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Reorganized Debtors, with respect to any such Claim, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors or the Reorganized Debtors on account of any such Claim, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or the Reorganized Debtors or against the property or interests in property of the Debtors on account of any such Claim and (d) asserting any right of setoff, or subrogation of any kind against any obligation due from the Debtors or the Reorganized Debtors or against the property or interests in property of the Debtors on account of any such Claim. Such injunction shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtors) and their respective properties and interests in property. Such injunction shall not apply in respect of Ordinary Course Administrative Claims.*

6. Articles VII(I) and VII(J) of the Plan contain the following releases:

*On the Effective Date, the Debtors and the Reorganized Debtors, on behalf of themselves and their estates, shall be deemed to release unconditionally the Released Parties from any and all claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon actions taken solely in their respective capacities described above or any omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan, except that (i) no individual shall be released from any act or omission that constitutes gross negligence or willful misconduct, (ii) the Reorganized Debtors shall not relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set-off or recoupment against any Claims of any such persons asserted against the Debtors, and (iii) the foregoing release shall not apply to any obligations that remain outstanding in respect of loans or advances made to individuals by the Debtors.*

*On the Effective Date, all Persons who (a) directly or indirectly, have held, hold, or may hold Claims, (b) vote to accept the Plan as set forth on the relevant Ballot, and (c) do not mark their Ballot to indicate their refusal to grant the releases provided in this paragraph, shall be deemed, by virtue of their receipt of Distributions and/or other treatment contemplated under the Plan, to have forever released and covenanted with the Released Parties not to (y) sue or otherwise seek recovery from any of the Released Parties on account of any Claim, including but not limited to any Claim based upon tort, breach of contract, violations of federal or state securities laws or otherwise, based upon any act, occurrence, or failure to act from the beginning of time through the Effective Date in any way related to the Debtors or their business and affairs or (z) assert against any of the Released Parties any claim, obligation, right, cause of action or liability that any holder of a Claim or Interest may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan, provided, however, (i) none of the Released Parties shall be released from any claim based*

on any act or omission that constitutes gross negligence or willful misconduct, (ii) the foregoing release shall not apply to Ordinary Course Administrative Claims and Fee Claims, and (iii) obligations arising under the Plan. Notwithstanding anything to the contrary in the Plan, the releases of the Released Parties shall extend only to claims arising against such Released Parties in their capacity as parties in interest in the Chapter 11 Cases.

7. **Article VII(K)(1) of the Plan contains the following Exculpation and Limitation of Liability:**

*The Released Parties (i) shall have no liability whatsoever to any holder or purported holder of an Administrative Claim, Claim, or Equity Interest for any act or omission in connection with, or arising out of, the Plan, the Disclosure Statement, the negotiation of the Plan, the negotiation of the documents included in the Plan Supplement, the pursuit of approval of the Disclosure Statement or the solicitation of votes for confirmation of the Plan, the Chapter 11 Cases, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, or any transaction contemplated by the Plan or Disclosure Statement or in furtherance thereof except for any act or omission that constitutes willful misconduct or gross negligence as determined by a Final Order, and (ii) in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Released Parties from liability.*

8. **Article VII(K)(2) of the Plan contains the following Injunction in Respect of the Released Parties:**

*Pursuant to section 105 of the Bankruptcy Code, no holder or purported holder of an Administrative Claim, Claim or Equity Interest shall be permitted to commence or continue any action, employment of process, or any act to collect, offset, or recover any Claim against any of the Released Parties that accrued on or prior to the Effective Date and that has been released or waived pursuant to Article VII(I) or VII(J).*

9. Copies of the Disclosure Statement Order, the Plan and the Disclosure Statement are available for inspection on the Court's website at http://ecf.deb.uscourts.gov. A login and password to the Court's Public Access to Electronic Court Records ("PACER") website are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov. Copies of the Disclosure Statement Order, the Plan and the Disclosure Statement may also be examined between the hours of 8:00 A.M. and 4:00 P.M., Monday through Friday at the Office of the Clerk of the Bankruptcy Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801. Copies may also be obtained online at the website of the Debtors' claims agent, The Garden City Group, Inc. ("Garden City"), at http://www.aventineinfo.com, or by written request to Garden City at the following address and telephone number: **[Insert Appropriate The Garden City Group, Inc. Address and Phone Number]**.

## DEADLINE FOR OBJECTIONS TO CONFIRMATION OF THE PLAN

10. Objections, if any, to confirmation of the Plan, including any supporting memoranda, must be in writing, filed with the clerk of the Bankruptcy Court, 3rd Floor, 824 N. Market Street, Wilmington, Delaware 19801 together with proof of service, and shall: (a) state the name and address of the objecting party and the amount of its claim or the nature of its interest in the Debtors' chapter 11 cases; (b) state with particularity the provision or provisions of the Plan objected to and for any objection asserted, the legal and factual basis for such objections; (c) provide proposed language to remedy any objection asserted; and (d) be served by hand delivery or in a manner as will cause such objection to be

**received** on or before **February 17, 2010 at 4:00 p.m. (prevailing Eastern Time)**, upon: (i) Young Conaway Stargatt & Taylor, LLP; The Brandywine Building; 1000 West Street, 17th Floor; P.O. Box 391; Wilmington, Delaware 19899-0391 (Attn.: Joel A. Waite, Esq. and Matthew B. Lunn, Esq.), counsel to the Debtors; (ii) Greenberg Traurig, LLP; The Nemours Building; 1007 North Orange Street, Suite 1200; Wilmington, Delaware 19801 (Attn: Scott Cousins, Esq., Donald Detweiler, Esq., and Victoria Counihan, Esq.), counsel to the Committee; (iii) Akin, Gump, Strauss, Hauer & Feld, LLP; One Bryant Park; New York, New York 10036 (Attn: Michael Stamer, Esq.), counsel to the Backstop Purchasers; and (iv) the United States Trustee for the District of Delaware; 844 King Street, Suite 2207, Lockbox #35; Wilmington, Delaware 19801 (Attn.: Mark S. Kenney, Esq.). Any objections not filed and served as set forth above will not be considered by the Bankruptcy Court.

Dated: Wilmington, Delaware
       January [___], 2010        YOUNG CONAWAY STARGATT & TAYLOR, LLP
                           The Brandywine Building
                           1000 West Street, 17th Floor
                           Wilmington, Delaware 19801

                           Counsel to the Debtors and Debtors in Possession

# EXHIBIT D

Cure Notice

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**, a Delaware Corporation, *et al.*, | Case No. 09-11214 (KG) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF (I) POSSIBLE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES (II) FIXING OF CURE AMOUNTS AND (III) DEADLINE TO OBJECT THERETO

**PLEASE TAKE NOTICE** that on December 22, 2009, Aventine Renewable Energy Holdings, Inc. and its affiliated debtors and debtors-in-possession in the above captioned cases (each a "Debtor," and collectively, the "Debtors") filed in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") *Debtors' Motion for Order (I) Approving the Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, Including (A) Approving Form and Manner of Solicitation Procedures, (B) Approving the Form and Notice of the Confirmation Hearing, (C) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (D) Approving Forms of Ballots, (E) Establishing Deadline for Receipt of Ballots, and (F) Approving Procedures for Vote Tabulations; (III) Establishing Deadline and Procedures for Filing Objections to (A) Confirmation of the Plan, and (B) the Debtors' Proposed Cure Amounts for Unexpired Leases of Executory Contracts Assumed Pursuant to the Plan; (IV) Approving the Secured Notes Offering Procedures; and (V) Granting Related Relief* [Docket No. ___] (the "Solicitation Motion"). The Solicitation Motion sought approval of, among other things, procedures for the fixing of Cure Amounts (as defined below) in connection with the potential assumption of certain executory contracts and unexpired leases (collectively, the "Contracts") pursuant to the *Debtors' Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code dated as of December 4, 2009* (the "Plan"), and the deadline to object to such Cure Amounts or assumptions.

**PLEASE TAKE FURTHER NOTICE** that on the schedule annexed hereto as Exhibit 1, the Debtors have indicated the cure amounts, calculated as of December 31, 2009,[2] that the Debtors believe must be paid to compensate the non-Debtor parties for any actual

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

[2]   The Debtors will pay amounts due after December 31, 2009, in the ordinary course as and when such undisputed amounts come due. Accordingly, parties are not required to assert Cure Objections for amounts coming due under the applicable Assumed Contract or Lease on or after January 1, 2010.

pecuniary losses arising from any defaults under the Debtors' executory contracts and unexpired leases (each an "Assumed Contract or Lease" and collectively, the "Assumed Contracts and Leases") being assumed under the Plan with such non-Debtor parties (in each instance, the "Cure Amount").[3]

PLEASE TAKE FURTHER NOTICE that any party objecting to the Cure Amounts, whether or not such party previously has filed a proof of claim with respect to amounts due under the applicable agreement, or objecting to the potential assumption of such Contract(s), shall be required to file and serve an objection, in writing, setting forth with specificity any and all cure obligations that the objecting party asserts must be cured or satisfied in respect of the Contracts and/or any and all objections to the potential assumption of such agreements, together with all documentation supporting such cure claim or objection. Any objections to the proposed assumption of the Contract(s) and/or the corresponding Cure Amount(s), must be filed with the Clerk of the Bankruptcy Court for the District of Delaware, Third Floor, 824 Market Street, Wilmington, Delaware 19801, and served upon each of the following notice parties so that the objection is received no later than **February 10, 2010 at 4:00 p.m. prevailing Eastern Time** (the "Cure Objection Deadline"):

The Debtors:  Aventine Renewable Energy Holdings, Inc., 120 North Parkway Drive, Pekin, Illinois 61554, attention: George T. Henning and Chris Nichols, Esq., with a copy to Young Conaway Stargatt & Taylor, LLP, 1000 West Street, 17th Floor, P.O. Box 391, Wilmington, Delaware 19801, attention: Joel A. Waite, Esq. and Matthew B. Lunn, Esq.

The Creditors Committee:  Greenberg Traurig, LLP, The Nemours Building, 1007 North Orange Street, Suite 1200, Wilmington, Delaware 19801, attention:  Donald Detweiler, Esq.

The Backstop Purchasers:  Akin, Gump, Strauss, Hauer & Feld, LLP, One Bryant Park, New York, New York 10036, attention: Michael Stamer, Esq.

The Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, attention:  Mark S. Kenney, Esq.

PLEASE TAKE FURTHER NOTICE that if an objection is timely filed and the parties are unable to settle such objection, a hearing with respect to the assumption of your Contract and/or your Cure Amount will be held at the time of the Confirmation Hearing (**February 24, 2010 at 3:00 p.m. (ET)**) or such other hearing date to which the parties may mutually agree before the Honorable Kevin Gross in the United States Bankruptcy Court for the District of Delaware, 6th Floor, 824 Market Street, Wilmington, Delaware 19801.

PLEASE TAKE FURTHER NOTICE that in the event that no Cure Objection is timely filed with respect to an Assumed Contract or Lease, the counterparty to such Assumed Contract or Lease shall be deemed to have consented to the Cure Amount proposed by the

---

[3]    To the extent that any Contract previously has been rejected in part, with respect to certain locations or equipment covered by a Contract, the inclusion of such Contract on Exhibit 1 refers solely to the proposed assumption of those portions of the Contract not previously rejected pursuant to Court Order.

Debtors and shall be forever enjoined and barred from seeking any additional amount(s) on account of the Debtors' cure obligations under section 365 of the Bankruptcy Code or otherwise from the Debtors, their estates or the Reorganized Debtors. In addition, if no timely Cure Objection is filed with respect to an Assumed Contract or Lease, upon the Effective Date of the Plan, the Reorganized Debtors and the counterparty to such Subject Contract shall enjoy all of the rights and benefits under the Assumed Contract or Lease without the necessity of obtaining any party's written consent to the Debtors' assumption of the Subject Contract, and such counterparty shall be deemed to have waived any right to object, consent, condition or otherwise restrict the Debtors' assumption of the Assumed Contract or Lease.

**PLEASE TAKE FURTHER NOTICE** that if you agree with assumption of your Contract and the Cure Amount indicated, you need not take any further action.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors amend the list of Assumed Contracts and Leases and/or Cure Amounts annexed hereto, or any related pleading that lists the Assumed Contracts and Leases to add a contract or lease or to reduce the Cure Amounts, except where such reduction was based upon the mutual agreement of the parties, the affected non-debtor party(ies) shall be provided prompt notice and shall have at least seven (7) calendar days to object thereto or to propose an alternative Cure Amount(s).

**PLEASE TAKE FURTHER NOTICE** that the inclusion of a Contract herein is without prejudice to the Debtors' right to modify their election to assume or to reject such Contract prior to the entry of a final, non-appealable order (which order may be the confirmation order) deeming such Contract assumed or rejected, and inclusion of a Contract herein is not a final determination that such Contract will, in fact, be assumed.

**PLEASE TAKE FURTHER NOTICE** that the inclusion of a Contract herein shall not constitute or be deemed to be a determination or admission by the Debtors that such document is, in fact, an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code (all rights with respect thereto being expressly reserved).

Dated: Wilmington, Delaware
      January [_____], 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Matthew B. Lunn (No. 4119)
Ryan M. Bartley (No. 4985)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone:    (302) 571-6600
Facsimile:     (302) 571-1253

*Counsel to the Debtors and Debtors in Possession*

068125.1001

# **EXHIBIT 1**

Proposed Cure Amounts

# EXHIBIT E

## Secured Notes Offering Procedures

| To: | Holders of Pre-Petition Claims Relating to the 10% Senior Notes Referenced Below |
| From: | Aventine Renewable Energy Holdings, Inc. |
| Re: | Commitments with respect to the proposed Aventine Senior Secured Notes |
| Date: | January [●], 2010 |

You are receiving this notice (this "Notice") and these procedures (including the attached exhibits, and together with the Notice, the "Procedures") in your capacity as a holder of a pre-petition claim (a "Pre-Petition Noteholder") with respect to the 10% Senior Notes due 2017 ("Pre-Petition Notes") of Aventine Renewable Energy Holdings, Inc. (the "ARE Holdings, Inc.").

*Senior Secured Notes*

In connection with and upon the emergence of ARE Holdings, Inc. and certain of its affiliates (collectively, the "Debtors") from Chapter 11 proceedings pursuant to a confirmed plan of reorganization (the "Plan"), reorganized ARE Holdings, Inc. (the "Issuer") expects to offer and sell (the "Offering") no less than $105,000,000 in aggregate principal amount (the "Offering Amount") of its senior secured notes (the "Senior Secured Notes") and shares of the Issuer's common stock issued pursuant to the Plan ("New Equity") in an amount equal to 20% of the New Equity outstanding on the effective date of the Plan ("Noteholder New Equity"), subject to dilution by (i) any stock awards issued on or after the effective date of the Plan (the "Effective Date") and (ii) the exercise of any warrants issued pursuant to the Plan. The proposed Offering will be made (1) on a pro rata basis to each Pre-Petition Noteholder which certifies its status as either a Qualified Institutional Buyer or Accredited Investor pursuant to Section 4 of the Subscription Form attached hereto as Exhibit A (each an "Eligible Offeree") and (2) to the extent less than all of the Senior Secured Notes and the Noteholder New Equity are issued to the Pre-Petition Noteholders, to certain Pre-Petition Noteholders who have agreed to backstop the Offering (the "Backstop Purchasers") pursuant to that certain commitment letter agreement dated on or about December 3, 2009 among the Backstop Purchasers and ARE Holdings, Inc. (the "Backstop Commitment Agreement"), and will be substantially on the terms described in the Plan. The Senior Secured Notes and the Noteholder New Equity will be offered together in units (each, a "Unit") and may not be purchased separately. Each Unit, consisting of $1,000 in face amount of Senior Secured Notes and a pro rata portion of the Noteholder New Equity, will be issued and sold for an aggregate cash consideration of $952.38. For a more detailed description of the terms of the proposed Offering, please see the Plan.

*Invitation*

This Notice constitutes an invitation to holders of record (or purchasers party to binding trade confirms not yet settled (the "Unsettled Trades")) of Pre-Petition Notes as of 5:00 p.m., New York time, constituting an Eligible Offeree on the deadline to vote on the Plan, which the Debtors anticipate will be February 17, 2010 (the "Subscription Deadline") (such holders and

purchasers party to Unsettled Trades, collectively, the "Eligible Subscribers") to subscribe for and purchase in the Offering (such holdings and Unsettled Trades, collectively, the "Eligible Holdings") their pro rata portion of the Units, subject to the conditions set forth in this Notice and these Procedures.

**If you have entered into an Unsettled Trade with respect to Pre-Petition Notes, we urge you to distribute this Notice and the Procedures to the counterparty to such Unsettled Trade. Until we receive notice of an Unsettled Trade with respect to Pre-Petition Notes, we have no way of knowing the counterparties to such Unsettled Trade, and thus we cannot distribute this Notice and the Procedures to such counterparty.**

In order to subscribe for and purchase Units in the proposed Offering, the Eligible Subscriber and/or its Affiliates[1] must be the holder of record of Pre-Petition Notes or a purchaser party to Unsettled Trades, as applicable, as of the Subscription Deadline. Eligible Subscribers will need to certify their holdings of Pre-Petition Notes and the amount of Unsettled Trades as of the Subscription Deadline. The rights of each Eligible Subscriber to participate in the Offering are not transferable. Any such transfer or attempted transfer shall be null and void, and no purported transferee shall be treated as the holder of any rights to participate in the Offering. Once an Eligible Subscriber has properly delivered its Subscription Form, such exercise cannot be revoked, rescinded or modified.

In order for an Eligible Subscriber to subscribe for and purchase Units in the proposed Offering, it must deliver (1) an executed Subscription Form, in the form attached hereto as Exhibit A (a "Subscription Form"), (2) original executed copies of the tax document required by the Subscription Form, and (3) to the extent required to resolve any discrepancy with respect to Eligible Holdings relating to Unsettled Trades, documents reasonably satisfactory to the Debtors to confirm the entry into, and the principal amount of Pre-Petition Notes subject to, Unsettled Trades, in each case, before 5:00 p.m. Eastern time on the Subscription Deadline. Subscription Forms must be submitted in the prescribed form without alteration. The Debtors have the right to reject any Subscription Form, in their reasonable discretion, which does not conform or is not properly completed and executed or does not include all additional documentation and deliveries required thereby. Executed Subscription Forms must be delivered to the Debtors via email or fax no later than the Subscription Deadline of 5:00 p.m., New York time, on February 17, 2010 as follows:

Address:     [●]
Fax:          [●]
Email:       [●]
Attention:   [●]

If the Debtors for any reason do not receive from a given Eligible Subscriber a duly completed Subscription Form on or prior to the Subscription Deadline in accordance with these Procedures, such Eligible Subscriber shall be deemed to have relinquished and waived its right to participate in the Offering.

---

[1] For purposes of this Notice and the Procedures, the term Affiliates shall additionally include commonly advised or managed funds.

NONE OF THE DEBTORS OR THE BACKSTOP PURCHASERS NOR ANY AGENT ACTING ON OUR OR THEIR BEHALF MAKES ANY RECOMMENDATION AS TO WHETHER OR NOT ELIGIBLE SUBSCRIBERS SHOULD ACCEPT THIS INVITATION TO SUBSCRIBE FOR UNITS IN THE PROPOSED OFFERING. EACH ELIGIBLE SUBSCRIBER MUST MAKE ITS OWN DECISION AS TO WHETHER IT WILL SUBSCRIBE FOR UNITS. ELIGIBLE SUBSCRIBERS SHOULD CONSULT THEIR OWN ADVISORS AS TO WHETHER THEY SHOULD SUBSCRIBE FOR UNITS.

*Subscription in the Proposed Offering*

The Subscription Form attached hereto as <u>Exhibit A</u> requires that each Eligible Subscriber commit to subscribe for its "<u>Subscription Amount</u>". The Subscription Amount with respect to any Eligible Offeree shall be the product of (1) the Offering Amount and (2) the percentage determined by dividing (a) the aggregate principal amount of Pre-Petition Notes held by such Eligible Offeree by (b) the aggregate principal amount of all Pre-Petition Notes outstanding as of the Petition Date.

*Allocation of Units*

Following the Subscription Deadline, each Eligible Subscriber will be allocated its Subscription Amount. If the proposed Offering is not fully subscribed by close of business on the Subscription Deadline, each Backstop Purchaser will purchase its respective Commitment Percentage (as defined in the term sheet relating to the Senior Secured Notes) of the Units not purchased by Eligible Offerees.

*Allocation and Settlement Procedure*

Allocations of the Units will be made ratably among the Eligible Offerees substantially in accordance with this Notice and the Procedures. The Debtors will provide notice of such allocations (a "<u>Preliminary Allocation Notice</u>") to each Eligible Subscriber that elects to participate in the proposed Offering. Allocations will be based on executed Subscription Forms meeting the terms set forth in this Notice and the Procedures. Preliminary Allocation Notices will be sent to participants as soon as reasonably practicable after the Subscription Deadline (the "<u>Allocation Date</u>"). The Allocation Date is expected to be on the third Business Day following the Subscription Deadline. The Preliminary Allocation Notices shall set forth, among other things, wire transfer instructions and the full amount of the Eligible Subscriber's allocation in the proposed Offering. Preliminary allocation amounts are subject to change. Each Eligible Subscriber shall submit its full amount of the Eligible Subscriber's allocation in the proposed Offering (the "<u>Allocated Funding Amount</u>") in immediately available funds no later than the close of business on the Business Day immediately prior to the Effective Date (the "<u>Funding Date</u>"). If the Debtors for any reason do not receive from a given Eligible Subscriber its Allocated Funding Amount in immediately available funds on or prior to the Funding Date, such Eligible Subscriber shall be deemed to have relinquished and waived its right to participate in the Offering. As promptly as reasonably practicable following the Funding Date, each Eligible Subscriber will receive notice of such Eligible Subscriber's final Allocated Funding Amount.

*Exemption from Registration under the Securities Act*

The Offering is being made to Eligible Subscribers only. It is the intention of the Debtors that the Senior Secured Notes and the Noteholder New Equity issued pursuant to the Offering to the Eligible Subscribers shall be exempt from registration under the Securities Act of 1933, as amended (the "Securities Act"), by virtue of one or more available exemptions therefrom provided under the Securities Act, including, without limitation, by virtue of section 4(2) thereof. Unlike the New Equity issued to holders of general unsecured claims against the Debtors, the Noteholder New Equity and the Senior Secured Notes issued to the Eligible Subscribers pursuant to the Offering will not be exempt from registration under the Securities Act by virtue of section 1145 of the Bankruptcy Code.

*Tax and Other Requirements*

Subscribers will be required to provide to the Debtors and the Backstop Purchasers documentation reasonably requested by the Debtors and the Backstop Purchasers to establish satisfaction of ownership requirements with respect to the Pre-Petition Notes. Failure to satisfy such requirements or timely provide such documentation may result in a failure to receive an allocation in the proposed Offering or the rescission of any outstanding allocation.

Prospective subscribers should discuss the tax implications of a subscription with their own tax advisors.

*Validity of Exercise of Subscription Rights*

All questions concerning the timeliness, viability, form and eligibility of any exercise of subscription rights of an Eligible Subscriber shall be determined by the Debtors, whose good faith determinations shall be final and binding. The Debtors, in their discretion, may waive any defect or irregularity, or permit a defect or irregularity to be corrected within such times as they may determine, or reject the purported exercise of any Eligible Subscriber's subscription rights hereunder. Subscription Forms shall be deemed not to have been received or accepted until all irregularities have been waived or cured within such time as the Debtors determine in their discretion. The Debtors shall use commercially reasonable efforts to give notice to any Eligible Subscribers regarding any defect or irregularity in connection with any purported exercise of subscription rights hereunder by such subscriber and, may permit such defect or irregularity to be cured within such time as they may determine in good faith to be appropriate; provided, however, that the Debtors and the Backstop Purchasers shall not incur any liability for failure to give such notification.

*Indemnification of Backstop Purchasers*

Pursuant to the Backstop Commitment Agreement, the Debtors or the Issuer, as the case may be, have agreed to indemnify and hold harmless the Backstop Purchasers and their affiliates and each of their respective directors, officers, partners, members, representatives, employees, agents, attorneys, financial advisors, restructuring advisors and other professional advisors, each of the foregoing solely in their capacities as such with respect to the transactions contemplated by the Backstop Commitment Agreement (each an "Indemnified Person") from and against any and all losses, claims, damages, liabilities and expenses, joint or several, to which any such Indemnified Person may incur, have asserted against it or be involved in as a result of or arising

DB02:9065239.1

068125.1001

out of or in any way related to the Backstop Commitment Agreement, the Backstop Commitment, the Offering, the Plan, the use of proceeds of the Senior Secured Notes or any related transaction or any claim, litigation, investigation or proceeding relating to any of the foregoing, regardless of whether any of such Indemnified Persons is a party thereto, and to reimburse each of such Indemnified Persons within 10 days after demand for any reasonable legal or other expenses incurred in connection with any of the foregoing; provided, however, that the foregoing indemnity shall not, as to any Indemnified Person, apply to losses, claims, damages, liabilities or related expenses to the extent they have resulted from the bad faith, willful misconduct or gross negligence of such Indemnified Person.

Notwithstanding any other provision to the contrary, no Indemnified Person shall be liable to the Debtors or their estates for any special, indirect, consequential or punitive damages in connection with its activities related to the Backstop Commitment Letter, the Backstop Commitment, the Offering, the Plan or the use of proceeds of the Senior Secured Notes. The terms set forth in this indemnification section shall survive termination of the Backstop Commitment Letter and shall remain in full force and effect regardless of whether the Offering is consummated.

The terms set forth in this indemnification section shall survive termination of the Backstop Commitment Letter and shall remain in full force and effect regardless of whether the Offering is consummated.

*Potential Change in Procedures*

The Debtors, subject to the consent of the Backstop Purchasers, reserve the right, but will not be obligated, at any time and from time to time, to extend the offer described herein beyond the dates noted herein and to amend the offer and the procedures described herein. The Debtors, subject to the consent of the Backstop Purchasers, will provide you notice of any extension, waiver, material amendment or termination of the Notice and the Procedures.

*Questions*

If you have any questions regarding the proposed Offering, please contact any of the following people at [•]:

[•]
Phone: [•]
Email: [•]

[•]
Phone: [•]
Email: [•]

Thank you for your consideration.

# SUBSCRIPTION FORM

## REORGANIZED AVENTINE RENEWABLE ENERGY HOLDINGS, INC.

To:    [●]
        Email: [●]
        Fax: [●]
        Attn: [●]

From:  Electing Eligible Subscriber identified below

Date:  [●], 2009

### Section 1 –Election Amount

Eligible Holdings, excluding Unsettled Traded
(with respect to itself and all Affiliates):[2]      $_____

Eligible Holdings with respect to Unsettled
Trades                                $_____

Name of counterparty with respect to Unsettled
Trades set forth above:

Total Eligible Holdings (with respect to itself
and all Affiliates) (Pre-Petition Notes Eligible
Holdings plus Unsettled Trades)      $_____

Subscription Amount

(Offering Amount x (Total Eligible Holdings    $_____
divided by $[●]))

If all or a portion of the holdings listed above is held by Affiliates of the prospective purchaser,
please provide the amount held by each Affiliate:

| Affiliate Name | Principal Amount |
|---|---|
| | |
| | |

---

[2] Once this Subscription Form is submitted, such amount may not be transferred or, with respect to
Unsettled Trades, terminated until after the Subscription Deadline.

If all or a portion of the holdings listed above are on account of Unsettled Trades, please provide the name of the record holder of the applicable Pre-Petition Notes:

| Name of Record Holder | Principal Amount |
| --- | --- |
| | |
| | |
| | |

By executing this Subscription Form, the undersigned directs the trustee under the Pre-Petition Notes to provide to the Debtor and the Backstop Purchasers any purchaser information requested by the Debtor and the Backstop Purchasers.

## Section 2 – Administrative Details

Issuer Information
Reorganized Aventine Renewable Energy Holdings, Inc.
120 North Parkway Drive
Pekin, IL 61554

Issuer Wire Instructions
[●]
[●]
Account Name: [●]
Number: [●]

It is very important that all of the requested information be completed accurately and that this Subscription Form be returned promptly. If your institution is sub-allocating its allocation, please fill out a Subscription Form for each legal entity.

Legal Name of purchaser to appear in documentation (include all Affiliates proposed to hold all or a portion of the Units):

Legal Name of Record Holder                    Principal Amount


Signature Block Information: _____

Type of Entity: _____

(Bank, Asset Manager, Broker/Dealer, CLO/CDO; Finance Company, Hedge Fund, Insurance, Mutual Fund, Pension Fund, Other Regulated Investment Fund, Special Purpose Vehicle, Other-please specify)

Purchaser Parent (if applicable): _____

Purchaser Domestic Address

_____

DB02:9065239.1        068125.1001

_____

_____

| Contacts/Notification Methods | | |
|---|---|---|
| | **Primary Contact** | **Secondary Contact** |
| Name: | _____ | _____ |
| Company: | _____ | _____ |
| Title: | _____ | _____ |
| Address: | _____ | _____ |
| | _____ | _____ |
| Telephone: | _____ | _____ |
| Facsimile: | _____ | _____ |
| E-Mail Address: | _____ | _____ |

## Section 3 – Tax Documents

NON-U.S. PURCHASERS:

*I.*    *Corporations*:

If your institution is incorporated outside of the United States for U.S. federal income tax purposes, <u>and</u> is the beneficial owner of the interest and other income it receives, you must complete one of the following two tax forms, as applicable to your institution: *a.) Form W-8BEN (Certificate of Foreign Status of Beneficial Owner)* or *b.) Form W-8ECI (Income Effectively Connected to a U.S. Trade or Business)*, in each case claiming complete exemption from U.S. federal withholding tax.

If your institution is claiming complete exemption from U.S. federal withholding tax under Section 871(h) or 881(c) of the Internal Revenue Code of 1986, as amended, with respect to payments of "portfolio interest", you must complete the following two tax forms: *a.) Exhibit G (Non-Bank Certificate)* and *b.) Form W-8BEN (Certificate of Foreign Status of Beneficial Owner)*.

A U.S. taxpayer identification number is required for any institution submitting Form W–8ECI. It is also required on Form W-8BEN for certain institutions claiming the benefits of a tax treaty with the U.S. Please refer to the instructions when completing the form applicable to your

institution. In addition, please be advised that U.S. tax regulations do not permit the acceptance of faxed forms. **An original tax form must be submitted.**

*II.    Flow-Through Entities*:

If your institution is organized outside the U.S., and is classified for U.S. federal income tax purposes as either a Partnership, Trust, Qualified or Non-Qualified Intermediary, or other non-U.S. flow-through entity, an original *Form W-8IMY (Certificate of Foreign Intermediary, Foreign Flow-Through Entity, or Certain US Branches for United States Tax Withholding)* must be completed by the intermediary together with a withholding statement claiming complete exemption from U.S. federal withholding tax. Flow-through entities other than Qualified Intermediaries are required to include tax forms for each of the underlying beneficial owners.

Please refer to the instructions when completing this form. In addition, please be advised that U.S. tax regulations do not permit the acceptance of faxed forms. **Original tax form(s) must be submitted.**

U.S. PURCHASERS:

If your institution is incorporated or organized <u>within</u> the United States, you must complete and return *Form W-9 (Request for Taxpayer Identification Number and Certification). Please be advised that we request that you submit an original Form W-9.*

**[The applicable tax form for your institution must be completed and returned on or before [●]].** Failure to provide the proper tax form when requested may subject your institution to U.S. tax withholding.

**Section 4 – Qualified Status**

By executing this Subscription Form, I certify that I am either (check one box):

☐    a "Qualified Institutional Buyer" (as such term is defined in Annex 1 hereto) that is acting for either my own account or accounts of certain Qualified Institutional Buyers; or

☐    an "Accredited Investor" (as such term is defined in Annex 2 hereto) or acting for accounts of certain Accredited Investors.

**Section 5 – Certifications**

By executing this Subscription Form, I certify that (i) I am the holder, or the authorized signatory of the holder, of Pre-Petition Notes in the amounts set forth herein, (ii) I am, or such holder is, entitled to participate in the proposed Offering to the extent of my, or such holder's Subscription Amount indicated under Section 1 above, and (iii) I am, or such holders is, an Eligible Subscriber.

EXECUTED this _____ day of _____, 20__:

PURCHASER NAME:

By: _____
Name: _____
Title: _____

DB02:9065239.1

068125.1001

"Qualified Institutional Buyer" means:

(1)     Any of the following entities, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with the entity:

    (a)     Any insurance company as defined in Section 2(a)(13) of the Securities Act of 1933, as amended (the "Securities Act");

    (b)     Any investment company registered under the Investment Company Act of 1940 (the "Investment Company Act") or any business development company as defined in Section 2(a)(48) of the Investment Company Act;

    (c)     Any small business investment company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958;

    (d)     Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees;

    (e)     Any employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974;

    (f)     Any trust fund whose trustee is a bank or trust company and whose participants are exclusively plans of the types identified in subparagraph (1)(d) or (e) above, except trust funds that include as participants individual retirement accounts or H.R. 10 plans;

    (g)     Any business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940 (the "Investment Advisors Act");

    (h)     Any organization described in Section 501(c)(3) of the Internal Revenue Code, corporation (other than a bank as defined in Section 3(a)(2) of the Securities Act or a savings and loan association or other institution referenced in Section 3(a)(5)(A) of the Securities Act or a foreign bank or savings and loan association or equivalent institution), partnership, or Massachusetts or similar business trust; or

    (i)     Any investment adviser registered under the Investment Advisers Act;

(2)     Any dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $10 million of securities of issuers that are not affiliated with the dealer, provided that securities constituting the whole or a part of an unsold allotment to or subscription by a dealer as a participant in a public offering shall not be deemed to be owned by such dealer;

(3)    Any dealer registered pursuant to Section 15 of the Exchange Act acting in a riskless principal transaction on behalf of a qualified institutional buyer;

(4)    Any investment company registered under the Investment Company Act, acting for its own account or for the accounts of other qualified institutional buyers, that is part of a family of investment companies which own in the aggregate at least $100 million in securities of issuers, other than issuers that are affiliated with the investment company or are part of such family of investment companies. "Family of investment companies" means any two or more investment companies registered under the Investment Company Act, except for a unit investment trust whose assets consist solely of shares of one or more registered investment companies, that have the same investment adviser (or, in the case of unit investment trusts, the same depositor), provided that:

(a)    Each series of a series company (as defined in Rule 18f-2 under the Investment Company Act) shall be deemed to be a separate investment company; and

(b)    Investment companies shall be deemed to have the same adviser (or depositor) if their advisers (or depositors) are majority-owned subsidiaries of the same parent, or if one investment company's adviser (or depositor) is a majority-owned subsidiary of the other investment company's adviser (or depositor);

(5)    Any entity, all of the equity owners of which are qualified institutional buyers, acting for its own account or the accounts of other qualified institutional buyers; and

(6)    Any bank as defined in Section 3(a)(2) of the Securities Act, any savings and loan association or other institution as referenced in Section 3(a)(5)(A) of the Securities Act, or any foreign bank or savings and loan association or equivalent institution, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with it and that has an audited net worth of at least $25 million as demonstrated in its latest annual financial statements, as of a date not more than 16 months preceding the date of sale under the rule in the case of a U.S. bank or savings and loan association, and not more than 18 months preceding such date of sale for a foreign bank or savings and loan association or equivalent institution.

For purposes of the foregoing definition:

In determining the aggregate amount of securities owned and invested on a discretionary basis by an entity, the following instruments and interests shall be excluded: bank deposit notes and certificates of deposit; loan participations; repurchase agreements; securities owned but subject to a repurchase agreement; and currency, interest rate and commodity swaps.

(1)    The aggregate value of securities owned and invested on a discretionary basis by an entity shall be the cost of such securities, except where the entity reports its securities holdings in its financial statements on the basis of their market value, and no current information with respect to the cost of those securities has been published. In the latter event, the securities may be valued at market for purposes of this definition.

(2)     In determining the aggregate amount of securities owned by an entity and invested on a discretionary basis, securities owned by subsidiaries of the entity that are consolidated with the entity in its financial statements prepared in accordance with generally accepted accounting principles may be included if the investments of such subsidiaries are managed under the direction of the entity, except that, unless the entity is a reporting company under Section 13 or 15(d) of the Exchange Act, securities owned by such subsidiaries may not be included if the entity itself is a majority-owned subsidiary that would be included in the consolidated financial statements of another enterprise.

(3)     "Riskless principal transaction" means a transaction in which a dealer buys a security from any person and makes a simultaneous offsetting sale of such security to a qualified institutional buyer, including another dealer acting as riskless principal for a qualified institutional buyer.

DB02:9065239.1

068125.1001

"Accredited Investor" means:

(1)    Any bank as defined in Section 3(a)(2) of the Securities Act, or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to Section 15 of the Exchange Act; any insurance company as defined in Section 2(a)(13) of the Securities Act; any investment company registered under the Investment Company Act or a business development company as defined in section 2(a)(48) of the Investment Company Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

(2)    Any private business development company as defined in Section 202(a)(22) of the Investment Advisers Act;

(3)    Any organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(4)    Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) of the Securities Act;

(5)    Any entity in which all of the equity owners are Accredited Investors;

(6)    Any director or executive officer of the issuer;

(7)    Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of purchase exceeds $1,000,000; or

(8)    Any natural person with an income in excess of $200,000 during each of the previous two years who reasonably expects to have income in excess of $200,000 during the current year, or joint income with such person's spouse in excess of $300,000 during each of the previous two years and reasonably expects to have joint income in excess of $300,000 during the current year.

# EXHIBIT F

## Subscription Form

# SUBSCRIPTION FORM

## REORGANIZED AVENTINE RENEWABLE ENERGY HOLDINGS, INC.

To:     [●]
        Email: [●]
        Fax: [●]
        Attn: [●]

From:   Electing Eligible Subscriber identified below

Date:   [●], 2009

## Section 1 –Election Amount

Eligible Holdings, excluding Unsettled Traded
(with respect to itself and all Affiliates):[1]                  $_____

Eligible Holdings with respect to Unsettled
Trades                                                           $_____

Name of counterparty with respect to Unsettled
Trades set forth above:

Total Eligible Holdings (with respect to itself
and all Affiliates) (Pre-Petition Notes Eligible
Holdings plus Unsettled Trades)                                 $_____

Subscription Amount

(Offering Amount x (Total Eligible Holdings                     $_____
divided by $[●]))

If all or a portion of the holdings listed above is held by Affiliates of the prospective purchaser,
please provide the amount held by each Affiliate:

| Affiliate Name | Principal Amount |
|---|---|
|  |  |
|  |  |
|  |  |

If all or a portion of the holdings listed above are on account of Unsettled Trades, please provide
the name of the record holder of the applicable Pre-Petition Notes:

---

[1] Once this Subscription Form is submitted, such amount may not be transferred or, with respect to
Unsettled Trades, terminated until after the Subscription Deadline.

| Name of Record Holder | Principal Amount |
|---|---|
|  |  |
|  |  |
|  |  |

By executing this Subscription Form, the undersigned directs the trustee under the Pre-Petition Notes to provide to the Debtor and the Backstop Purchasers any purchaser information requested by the Debtor and the Backstop Purchasers.

## Section 2 – Administrative Details

Issuer Information
Reorganized Aventine Renewable Energy Holdings, Inc.
120 North Parkway Drive
Pekin, IL 61554

Issuer Wire Instructions
[●]
[●]
Account Name: [●]
Number: [●]

It is very important that all of the requested information be completed accurately and that this Subscription Form be returned promptly. If your institution is sub-allocating its allocation, please fill out a Subscription Form for each legal entity.

Legal Name of purchaser to appear in documentation (include all Affiliates proposed to hold all or a portion of the Units):

Legal Name of Record Holder                    Principal Amount


Signature Block Information: _____

Type of Entity: _____

(Bank, Asset Manager, Broker/Dealer, CLO/CDO; Finance Company, Hedge Fund, Insurance, Mutual Fund, Pension Fund, Other Regulated Investment Fund, Special Purpose Vehicle, Other-please specify)

Purchaser Parent (if applicable): _____

Purchaser Domestic Address


_____


_____

068125.1001

## Contacts/Notification Methods

|  | Primary Contact | Secondary Contact |
|---|---|---|
| Name: | _____ | _____ |
| Company: | _____ | _____ |
| Title: | _____ | _____ |
| Address: | _____ | _____ |
|  | _____ | _____ |
| Telephone: | _____ | _____ |
| Facsimile: | _____ | _____ |
| E-Mail Address: | _____ | _____ |

## Section 3 – Tax Documents

### NON-U.S. PURCHASERS:

*I.*   *Corporations:*

If your institution is incorporated outside of the United States for U.S. federal income tax purposes, and is the beneficial owner of the interest and other income it receives, you must complete one of the following two tax forms, as applicable to your institution: *a.) Form W-8BEN (Certificate of Foreign Status of Beneficial Owner)* or *b.) Form W-8ECI (Income Effectively Connected to a U.S. Trade or Business)*, in each case claiming complete exemption from U.S. federal withholding tax.

If your institution is claiming complete exemption from U.S. federal withholding tax under Section 871(h) or 881(c) of the Internal Revenue Code of 1986, as amended, with respect to payments of "portfolio interest", you must complete the following two tax forms: *a.) Exhibit G (Non-Bank Certificate)* and *b.) Form W-8BEN (Certificate of Foreign Status of Beneficial Owner)*.

A U.S. taxpayer identification number is required for any institution submitting Form W-8ECI. It is also required on Form W-8BEN for certain institutions claiming the benefits of a tax treaty with the U.S. Please refer to the instructions when completing the form applicable to your institution. In addition, please be advised that U.S. tax regulations do not permit the acceptance of faxed forms. **An original tax form must be submitted.**

*II.*    *Flow-Through Entities*:

If your institution is organized outside the U.S., and is classified for U.S. federal income tax purposes as either a Partnership, Trust, Qualified or Non-Qualified Intermediary, or other non-U.S. flow-through entity, an original *Form W-8IMY (Certificate of Foreign Intermediary, Foreign Flow-Through Entity, or Certain US. Branches for United States Tax Withholding)* must be completed by the intermediary together with a withholding statement claiming complete exemption from U.S. federal withholding tax.  Flow-through entities other than Qualified Intermediaries are required to include tax forms for each of the underlying beneficial owners.

Please refer to the instructions when completing this form.  In addition, please be advised that U.S. tax regulations do not permit the acceptance of faxed forms.  **Original tax form(s) must be submitted.**

U.S. PURCHASERS:

If your institution is incorporated or organized <u>within</u> the United States, you must complete and return *Form W-9 (Request for Taxpayer Identification Number and Certification).  Please be advised that we request that you submit an original Form W-9.*

**[The applicable tax form for your institution must be completed and returned on or before [●]]**.  Failure to provide the proper tax form when requested may subject your institution to U.S. tax withholding.

**Section 4 – Qualified Status**

By executing this Subscription Form, I certify that I am either (check one box):

☐    a "Qualified Institutional Buyer" (as such term is defined in Annex 1 hereto) that is acting for either my own account or accounts of certain Qualified Institutional Buyers; or

☐    an "Accredited Investor" (as such term is defined in Annex 2 hereto) or acting for accounts of certain Accredited Investors.

**Section 5 – Certifications**

By executing this Subscription Form, I certify that (i) I am the holder, or the authorized signatory of the holder, of Pre-Petition Notes in the amounts set forth herein, (ii) I am, or such holder is, entitled to participate in the proposed Offering to the extent of my, or such holder's Subscription Amount indicated under Section 1 above, and (iii) I am, or such holders is, an Eligible Subscriber.

EXECUTED this ____ day of ____, 20__:

PURCHASER NAME:

_____

By:    _____
Name: _____

Title: _____

"Qualified Institutional Buyer" means:

(1)     Any of the following entities, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with the entity:

(a)     Any insurance company as defined in Section 2(a)(13) of the Securities Act of 1933, as amended (the "Securities Act");

(b)     Any investment company registered under the Investment Company Act of 1940 (the "Investment Company Act") or any business development company as defined in Section 2(a)(48) of the Investment Company Act;

(c)     Any small business investment company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958;

(d)     Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees;

(e)     Any employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974;

(f)     Any trust fund whose trustee is a bank or trust company and whose participants are exclusively plans of the types identified in subparagraph (1)(d) or (e) above, except trust funds that include as participants individual retirement accounts or H.R. 10 plans;

(g)     Any business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940 (the "Investment Advisors Act");

(h)     Any organization described in Section 501(c)(3) of the Internal Revenue Code, corporation (other than a bank as defined in Section 3(a)(2) of the Securities Act or a savings and loan association or other institution referenced in Section 3(a)(5)(A) of the Securities Act or a foreign bank or savings and loan association or equivalent institution), partnership, or Massachusetts or similar business trust; or

(i)     Any investment adviser registered under the Investment Advisers Act;

(2)     Any dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $10 million of securities of issuers that are not affiliated with the dealer, provided that securities constituting the whole or a part of an unsold allotment to or subscription by a dealer as a participant in a public offering shall not be deemed to be owned by such dealer;

(3) Any dealer registered pursuant to Section 15 of the Exchange Act acting in a riskless principal transaction on behalf of a qualified institutional buyer;

(4) Any investment company registered under the Investment Company Act, acting for its own account or for the accounts of other qualified institutional buyers, that is part of a family of investment companies which own in the aggregate at least $100 million in securities of issuers, other than issuers that are affiliated with the investment company or are part of such family of investment companies. "Family of investment companies" means any two or more investment companies registered under the Investment Company Act, except for a unit investment trust whose assets consist solely of shares of one or more registered investment companies, that have the same investment adviser (or, in the case of unit investment trusts, the same depositor), provided that:

    (a) Each series of a series company (as defined in Rule 18f-2 under the Investment Company Act) shall be deemed to be a separate investment company; and

    (b) Investment companies shall be deemed to have the same adviser (or depositor) if their advisers (or depositors) are majority-owned subsidiaries of the same parent, or if one investment company's adviser (or depositor) is a majority-owned subsidiary of the other investment company's adviser (or depositor);

(5) Any entity, all of the equity owners of which are qualified institutional buyers, acting for its own account or the accounts of other qualified institutional buyers; and

(6) Any bank as defined in Section 3(a)(2) of the Securities Act, any savings and loan association or other institution as referenced in Section 3(a)(5)(A) of the Securities Act, or any foreign bank or savings and loan association or equivalent institution, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with it and that has an audited net worth of at least $25 million as demonstrated in its latest annual financial statements, as of a date not more than 16 months preceding the date of sale under the rule in the case of a U.S. bank or savings and loan association, and not more than 18 months preceding such date of sale for a foreign bank or savings and loan association or equivalent institution.

For purposes of the foregoing definition:

In determining the aggregate amount of securities owned and invested on a discretionary basis by an entity, the following instruments and interests shall be excluded: bank deposit notes and certificates of deposit; loan participations; repurchase agreements; securities owned but subject to a repurchase agreement; and currency, interest rate and commodity swaps.

(1) The aggregate value of securities owned and invested on a discretionary basis by an entity shall be the cost of such securities, except where the entity reports its securities holdings in its financial statements on the basis of their market value, and no current information with respect to the cost of those securities has been published. In the latter event, the securities may be valued at market for purposes of this definition.

(2)     In determining the aggregate amount of securities owned by an entity and invested on a discretionary basis, securities owned by subsidiaries of the entity that are consolidated with the entity in its financial statements prepared in accordance with generally accepted accounting principles may be included if the investments of such subsidiaries are managed under the direction of the entity, except that, unless the entity is a reporting company under Section 13 or 15(d) of the Exchange Act, securities owned by such subsidiaries may not be included if the entity itself is a majority-owned subsidiary that would be included in the consolidated financial statements of another enterprise.

(3)     "Riskless principal transaction" means a transaction in which a dealer buys a security from any person and makes a simultaneous offsetting sale of such security to a qualified institutional buyer, including another dealer acting as riskless principal for a qualified institutional buyer.

DB02:9065249.1     068125.1001

"Accredited Investor" means:

(1)     Any bank as defined in Section 3(a)(2) of the Securities Act, or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to Section 15 of the Exchange Act; any insurance company as defined in Section 2(a)(13) of the Securities Act; any investment company registered under the Investment Company Act or a business development company as defined in section 2(a)(48) of the Investment Company Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

(2)     Any private business development company as defined in Section 202(a)(22) of the Investment Advisers Act;

(3)     Any organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(4)     Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) of the Securities Act;

(5)     Any entity in which all of the equity owners are Accredited Investors;

(6)     Any director or executive officer of the issuer;

(7)     Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of purchase exceeds $1,000,000; or

(8)     Any natural person with an income in excess of $200,000 during each of the previous two years who reasonably expects to have income in excess of $200,000 during the current year, or joint income with such person's spouse in excess of $300,000 during each of the previous two years and reasonably expects to have joint income in excess of $300,000 during the current year.

068125.1001