# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| AVENTINE RENEWABLE ENERGY ) | Case No. BK 09-11214 (KG) |
| HOLDINGS, INC., a Delaware Company, ) | |
| *et al.*, ) | (Jointly Administered) |
| ) | |
| Debtors[1]. ) | Objection Deadline: December 28, 2009 |
| ) | Hearing Date: January 13, 2010 |
| ) | Re: D.I. 592 |

## KIEWIT ENERGY COMPANY'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105, 363, 503, 1123 AND 1125 OF THE BANKRUPTCY CODE (I) APPROVING THE DEBTORS' ENTRY INTO THE BACKSTOP COMMITMENT AGREEMENT RELATED TO THE OFFERING OF NEW NOTES AND EQUITY, AND (II) AUTHORIZING THE DEBTORS' PAYMENT OF RELATED FEES, EXPENSES, AND INDEMNIFICATION TO THE BACKSTOP PURCHASERS

Kiewit Energy Company, a Delaware corporation ("Kiewit") objects to Debtors' Motion for Entry of an Order Pursuant to Sections 105, 363, 503, 1123 and 1125 of the Bankruptcy Code (I) Approving the Debtors' Entry into the Backstop Commitment Agreement Related to the Offering of New Notes and Equity, and (II) Authorizing the Debtors' Payment of Related Fees, Expenses, and Indemnification to the Backstop Purchasers[2] (the "Motion").

## PRELIMINARY STATEMENT

Kiewit raises this objection on several grounds including the following:

a. The Motion represents a "sub rosa" plan which, if approved, would bind the Debtors and the estates to a financing package tied to a plan of reorganization prior to approval of a disclosure statement for such plan as required by 11 U.S.C. § 1125.

b. The Disclosure Statement as currently proposed cannot be approved because it does

---

[1] These Cases have been administratively consolidated under this case number. The Debtors in these Chapter 11 Cases, along with the case number of each Debtor's cases are: Aventine Renewable Energy Holdings, Inc. 09-11214 (KG), Aventine Renewable Energy, LLC 09-11215 (KG), Aventine Renewable Energy, Inc. 09-11216 (KG), Aventine Renewable Energy – Aurora West, LLC 09-11217(KG), Aventine Renewable Energy – Mt. Vernon, LLC 09-11218(KG), Aventine Power, LLC 09-11219 (KG), and Nebraska Energy, L.L.C. 09-11220 (KG).

not contain the necessary disclosures required by 11 U.S.C. § 1125 including without limitation: (i) inadequate or no disclosures regarding why such financing is allegedly needed; (ii) multiple choice treatment of Kiewit's Class 4(b) secured claim which prevents Kiewit from being able to make an informed decision regarding its right to elect 11 U.S.C. § 1111(b) treatment for this claim; thereby causing the Debtors' financial projections to be speculative; (iii) conflicting disclosures regarding the status of Kiewit's lien and whether the Backstop Purchasers are to be granted a priming lien under 11 U.S.C. § 364(d) over Kiewit's Class 4(b) secured claim; (iv) if the Backstop Purchasers are being granted a priming lien under 11 U.S.C. §364(d) over Kiewit's Class 4 (b) secured claim how Kiewit will be adequately protected; (v) inadequate disclosures of the alternatives presented to the Debtors which they rejected in favor of the Plan.

c. The Motion is premature. It is simply inexplicable why, by its terms[3], the Debtors would grant the Backstop Purchasers not only a right to payment of their expenses including attorneys fees incurred to negotiate a plan that may never be confirmed, but in addition a $3,000,000.00 break-up fee that is earned without ever providing a penny of financing.

As discussed below the Motion as presented should not be approved unless and until the disclosure statement for a plan requiring such financing is approved, and the break-up fee should only be allowed if such plan is confirmed.

## BACKGROUND

1. On December 4, 2009, the Debtors filed their Disclosure Statement for Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Disclosure Statement") together with the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan"). Objections to the Disclosure Statement are required to be filed

---

[2] Capitalized terms not otherwise defined herein shall have meanings ascribed to them in the Motion.
[3] Only a term sheet and letter agreement is provided and not the actual financing documents which calls into question the sufficiency of disclosure of the parties' proposed financing arrangement.

by January 5, 2010, and a hearing is set for approval of the Disclosure Statement "and any changes or modifications thereto" for January 13, 2010 at 3:00 p.m.

2. Contemporaneously with the filing of the Disclosure Statement and Plan, on December 4, 2009, the Debtors filed the Motion. Objections to the Motion, however, are due December 28, 2009, and a hearing on any such objections is also set for January 13, 2010 at 3:00 p.m.

3. The Backstop Purchasers are former investors in the Debtors which for a time held subordinated secured debt until they were deleveraged prior to the Debtors' bankruptcy filing. Once deleveraged, the Backstop Purchasers became de facto equity.

4. Prior to the Petition Date the Backstop Purchasers or some portion of them negotiated with Debtors to finance the bankruptcy case. Ultimately the Backstop Purchasers supplied the Debtor-in-Possession financing for these proceedings which they now intend to repay to themselves by means of the Offering. Having reached the plan stage of this case the Debtors apparently with the support and direction of the Backstop Purchasers have proposed a plan of reorganization. The Plan if consummated would pay off the existing senior secured prepetition lender and DIP Financing and leave the Backstop Purchasers as the sole senior secured creditor of the Reorganized Debtors. It would also give the Backstop Purchasers an equity play as it purports to award them 20% of the equity of the Reorganized Debtors.

5. By the Motion the Backstop Purchasers are proposing to releverage their positions, and become "senior secured lenders" by providing a $105,000,000.00 senior secured note offering, if the Plan is approved. If the Plan is not approved they are proposing, by the Motion, to be paid their expenses including attorney fees, as well as an additional $3,000,000.00 as a break-up fee.

6. Kiewit is not a lender, but a construction company which entered into engineering, procurement, and construction services contracts (the "EPC Contracts") to construct two of the Debtors' facilities, one owned by Aventine Renewable Energy—Mt. Vernon, LLC and located in Mt. Vernon, Indiana ("ARE—Mt. Vernon"), and the second owned by Aventine Renewable Energy—Aurora West, LLC and located in Aurora, Nebraska ("ARE—Aurora West"). Prior to the Petition Date construction at ARE—Mt. Vernon and ARE—Aurora West was stopped and Kiewit terminated the respective EPC Contracts. As of the Petition Date Kiewit was owed $7,930,706.00 for construction performed at ARE—Mt. Vernon and $15,281,808.00 for construction performed at ARE—Aurora West. ARE Holdings has guaranteed payment to Kiewit of these obligations, and Kiewit has submitted its claims with the claims agent as required by the claims bar date order entered in this case. Kiewit incorporates each proof of claim herein by this reference.

7. On February 10, 2009 and February 9, 2009, Kiewit perfected its construction lien as against the real estate and improvements located at ARE—Mt. Vernon and ARE—Aurora West, respectively. Kiewit's ARE—Aurora West construction lien is a first priority lien on the real estate and improvements located at ARE—Aurora West. Kiewit's ARE—Mt. Vernon construction lien is a first priority lien on its improvement located at ARE—Mt. Vernon.[4]

## BASIS FOR OBJECTION

8. Although the Debtors have filed the Motion independently of the Plan and Disclosure Statement, Kiewit submits the three are inextricably intertwined, because the financing sought to be approved is only necessary if the Disclosure Statement is approved and the proposed Plan confirmed. If neither occur, if any variation to the Plan is made to which the Backstop Purchasers do not agree, or if a liquidation occurs which reduces Debtors' "ethanol

---

[4] The real estate at ARE—Mt. Vernon is owned by the Port Authority of the State of Indiana and is leased by the Debtors.

4

production capacity by more than 50%," then the Motion requires the Debtors' estates to nevertheless fund not only the out of pocket expenses of the Backstop Purchasers, but also a break-up fee of $3,000,000.00 while allowing the Backstop Purchasers to avoid any obligations under the financing proposal.

9. The Backstop Commitment Agreement provides that the Backstop Purchasers' commitment to purchase the senior secured notes terminates if an Approval Order for the Motion is not entered by January 14, 2010. It further provides that notwithstanding the Backstop's Purchasers' right to terminate the deal, they can nevertheless receive the break-up fee even though they have advanced no funds beyond their expenses to which they are also entitled to be reimbursed. Kiewit submits that granting such treatment under the Motion prior to approval of the Disclosure Statement is a premature and unnecessary burden on these estate which could deprive these estates of $3,000,000.00 with no benefit even being received by these estates.

10. As Collier's states, break-up fees and similar protection "are only appropriate where the prospective [lender] provides something of value to the estate in exchange, typically setting a floor" for the transaction. *See* 3 Collier on Bankruptcy ¶ 363.08[6] at 363-18 (Alan N. Resnick & Henry J. Sommer, 15th ed. rev. 2009) (discussing the appropriate time for break-up fees). Similarly, the break-up fee should be paid only if the failure of transaction as proposed is outside of the recipient's control. *Id.* Yet, here, the Motion proposes a break-up fee that the Backstop Purchasers can trigger simply by their unilateral refusal to agree to revisions to the Plan which places the failure of the transaction within and not outside the Backstop Purchasers' control.

11. The Second Circuit has noted the prime importance of disclosure in the reorganization process. *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994). The disclosure requirement is not limited to adequate disclosure under Section 1125 in the disclosure

statement, but extends "during the entire reorganization process." *Id.* (citing *In re V. Savino Oil & Heating Co.*, 99 B.R. 518, 526 (Bankr.E.D.N.Y. 1989). Similarly, while a debtor is not obligated to disclose whether it will object or allow a claim in a disclosure statement, once affirmative statements are made the claimants have a right to rely upon them. *See In re Burkey Lumber Company*, 149 B.R. 177, 180 (Bankr.D.Colo. 1993) (holding a claimant was entitled to rely on statements in a Disclosure Statement which indicated its claim would be paid in full.).

12. The Backstop Commitment Agreement is contrary to the terms of the proposed Plan and contradicts statements in the Disclosure Statement because it purports to grant the Backstop Purchasers a secured (seemingly priming) lien on all the assets (real and personal) of the Debtors' subsidiaries through secured guarantees given by all ARE Holdings' subsidiaries including ARE—Aurora West. See, Exhibit "A" to Plan/Term Sheet at p. 3. At the same time the Disclosure Statement and Plan purport (as one of three alternatives) to grant Kiewit a lien in the same priority as its mechanics lien held on the Petition Date. See, Disclosure Statement at p. 13, 40; Plan at 27, 28. Kiewit's construction ("mechanics") lien was a first priority lien as of the Petition Date on the ARE—Aurora West plant and real estate and neither the Disclosure Statement nor the Motion explains the apparent conflict or how it will be resolved. Further, to the extent the Debtors are planning to use this Motion as a mechanism to grant disguised priming liens under 11 U.S.C. § 364(d) there is no disclosure of how Kiewit will be adequately protected as required thereby. Moreover, the Debtors advance no support for the notion that they can grant super priority liens through the plan process, especially without complying with Section 1129(b). This renders the Motion and Disclosure Statement misleading and in direct conflict with the Backstop Commitment Agreement.

13. The Motion states that the Debtors solicited interest in the financing or the sale of the Debtors, and received expressions of interest which were rejected in favor of the proposed

treatment of the Backstop Purchasers under the Motion. However, neither the Disclosure Statement nor the Motion discloses what those expressions of interest consisted of or why the proposal by the Backstop Purchasers was preferable in Debtors' "business judgment". Further, reliance upon a "business judgment test" is misplaced if the true treatment is meant to be a priming lien under 11 U.S.C. § 364(d). This lack of disclosure should be remedied to describe the types and level of interest received in detail.

14. Because an important element of the Backstop Agreement relies upon the swift approval of the Disclosure Statement and Plan, it is important to understand the shortcomings of the Disclosure Statement in its current form. The Disclosure Statement as filed cannot be approved because in addition to the contradictory information referenced in paragraph 12 above, it does not contain adequate information necessary to enable Kiewit or other holders of claims against the Debtors to make an informed decision regarding the Plan and Backstop Financing as required by 11 U.S.C. § 1125 because at minimum it omits the following information[5]:

    (a) With respect to ARE—Aurora West the Disclosure Statement describes three "possible" treatments but does not state which treatment the Debtors intend to pursue, leaving Kiewit and all other parties to speculate whether Kiewit's claim against ARE—Aurora West will be paid in full, the collateral abandoned to Kiewit (in which case disclosure of the treatment of any deficiency claim held by Kiewit needs to be addressed), or treated in some other undisclosed manner. This is particularly important information to Kiewit, because Kiewit is entitled to make an election under 11 U.S.C. § 1111. Kiewit cannot determine based upon the multiple choice treatments offered under the Disclosure Statement and Plan for its

---

[5] Kiewit's objections to the Disclosure Statement are summarized herein. Kiewit will file its formal objection to the Disclosure Statement, which is incorporated herein. In addition, Kiewit reserves the right to adopt any other objections to approval of the Disclosure Statement raised by other parties which are not inconsistent with Kiewit's position or interests.

secured claim at ARE—Aurora West whether such an election is in its best interests. For example, Kiewit may well choose to elect such treatment if the first option is chosen by Debtors and they retain the plant, but it may not wish such option if the plant is abandoned to it. Further, disclosure of the treatment for Kiewit's secured ARE—Aurora West claim is important to not only Kiewit but all creditors because the financial projections post Q1 2012 rely on completion of ARE—Aurora West which clearly will not occur if the plant is abandoned. See Plan Exhibit "D", Assumption 1.

(b) The Debtors' financial projections are based on speculation regarding the completion of both ARE—Mt. Vernon (in Q4 2010) and ARE—Aurora West (in Q1 2012), however the Plan makes no commitment to complete construction of either facility, nor discloses the effect of abandoning construction of one or both facilities on those projections, nor describes Debtors' ability to survive post confirmation without these plants completion. Compare, Plan Exhibit "D", Assumption 1, and Disclosure Statement pp. 31-32.

(c) The Debtors' speculative financial projections similarly are based upon a "best case scenario" that the company's material agreements with CGB and Aurora Coop will be assumed (Plan, Exhibit "D"). However, the Disclosure Statement states some or all of those contracts may be rejected (Disclosure Statement, p. 32). The impact of rejection of some or all of Aurora Coop's agreements on such projections is not disclosed, nor is its effect on completion of the ARE—Aurora West facility. These disclosures should be made.

(d) The liquidation values for ARE—Aurora West and ARE-Mt. Vernon are purportedly based on the balance sheet values which are neither included nor

adequately described, which, with respect to ARE—Mt. Vernon and ARE—Aurora West, reflect an additional discount, the rationale for which is also undisclosed.

(e) The Plan as presented is not feasible since it does not provide Kiewit either the indubitable equivalent of its claim or fair and equitable treatment as required for confirmation under 11 U.S.C. § 1129(b). Similarly, if the Plan is seeking to prime Kiewit's liens under 11 U.S.C. § 364(d) in favor of the Backstop Purchasers then it fails because it does not provide adequate protection and violates 11 U.S.C. § 364(d) and 11 U.S.C. § 1129(a)(2). While Kiewit continues to work with the Debtors for a negotiated resolution of the treatment of its claims, it cannot vote for the Plan as proposed. With regard to Kiewit's secured claim against ARE—Aurora West, the Plan as proposed eliminates Kiewit's deficiency claim if the Debtors either (a) default on their payment under the proposed non-recourse five year note option or (b) if the plant is returned. Based on the liquidation values Debtors propose for ARE—Aurora West of $2.4M to $5M Kiewit would in such event have a right to an unsecured deficiency claim of between approximately $13.4 M and $10.8 M. Since the Plan provides a recovery to other unsecured creditors it violates the absolute priority rule as proposed by excluding Kiewit from the unsecured pool and requiring that Kiewit accept an uncollateralized non-recourse note, or return of collateral with a fraction of the value of its claim in full satisfaction of those claims.

(f) The Plan further discriminates against Kiewit in the following particulars:

    (i) By providing the Backstop Purchasers a 13% fully secured and recourse note obligation while purporting to limit Kiewit, a secured

9

creditor, to a 5% non-recourse note secured by a depreciating unfinished plant; and,

(ii) By exonerating and releasing Aventine Holdings from any obligations under their existing guaranty of ARE—Mt. Vernon's and ARE—Aurora West's obligations to Kiewit without any consideration.

(g) While the Disclosure Statement does not challenge the validity of Kiewit's claims regarding ARE—Mt. Vernon and ARE—Aurora West, it states the claims will be paid 100% either in cash on the Initial Distribution Date or over time (See, Disclosure Statement at pp. 12-13), and represents the claim regarding ARE—Mt. Vernon is unimpaired, it does not "allow" any of the Kiewit claims, and does not state whether they will be allowed or objected to by the Debtors. Kiewit is entitled to disclosure of the Debtors' intent regarding these claims so it can decide whether the treatment proposed is real or illusory.

15. The Disclosure Statement cannot be approved as presented for the reasons described above. If the Disclosure State is not approved by January 14, 2010, but the Motion is, the Backstop Purchasers are entitled under the Backstop Commitment Agreement to payment of the break-up fee whether or not they ever end up financing a penny of the Debtors' ultimate reorganization. This is not fair and equitable as absent the provision of any financing the Backstop Purchasers are nothing more than unsecured creditors and de facto equity which should not be provided a windfall at Kiewit's and the other creditors' expense.

WHEREFORE, Kiewit Energy Company, a Delaware corporation, secured creditor, respectfully requests that the Court deny the Motion, and grant such other and further relief as it deems appropriate.

DATED this 28th day of December, 2009.

Respectfully submitted,

Kiewit Energy Company, secured creditor,

By: _____
Ronald S. Gellert (DE 4259)
Eckert Seamans Cherin & Mellott LLC
300 Delaware Avenue
Suite 1210
Wilmington, DE 19801
(302) 425-0430
(302) 425-0432 fax

And

Robert J. Bothe, NE Bar #15018
James J. Niemeier, NE Bar #18838
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
(402) 341-3070
(402) 341-0216 fax

**Attorneys for Kiewit Energy Company**

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I am not less than 18 years of age and that on this 28th day of December, 2009, I caused a true and correct copy of:

KIEWIT ENERGY COMPANY'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105, 363, 503, 1123 AND 1125 OF THE BANKRUPTCY CODE (I) APPROVING THE DEBTORS' ENTRY INTO THE BACKSTOP COMMITMENT AGREEMENT RELATED TO THE OFFERING OF NEW NOTES AND EQUITY, AND (II) AUTHORIZING THE DEBTORS' PAYMENT OF RELATED FEES, EXPENSES, AND INDEMNIFICATION TO THE BACKSTOP PURCHASERS

Upon the following parties via first class United States Mail, postage prepaid:

Ronald S. Gellert

## SERVICE LIST

Mark S. Kenney, Esq.
Office of the United States Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19899-0035

James L. Patton, Esq.
Joel A. Waite, Esq.
Matthew B. Lunn, Esq.
Ryan M. Bartley, Esq.
Young, Conaway, Stargatt & Taylor
1000 West Street, 17th Floor
PO Box 391
Wilmington, DE 19899-0391

Dennis A. Meloro, Esq.
Donald J. Detweiler, Esq.
Greenberg Traurig
1007 North Orange Street, Suite 1200
Wilmington, DE 19801