IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**, a Delaware Corporation, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-11214 (KG)<br><br>Jointly Administered<br><br>Objection Deadline: Dec. 28, 2009 @ 4:00 pm<br>Hearing Date: January 13, 2010 @ 3:00 pm<br><br>Re Docket No. 592 |

**OBJECTION TO DEBTORS' MOTION FOR ENTRY
OF AN ORDER PURSUANT TO SECTIONS 105, 363, 503, 1123 AND 1125
OF THE BANKRUPTCY CODE (I) APPROVING THE DEBTORS' ENTRY
INTO THE BACKSTOP COMMITMENT AGREEMENT RELATED TO THE
OFFERING OF NEW NOTES AND EQUITY, AND (II) AUTHORIZING
THE DEBTORS' PAYMENT OF RELATED FEES, EXPENSES,
AND INDEMNIFICATION TO THE BACKSTOP PURCHASERS**

Andrew Shirley (the "Objector"), a holder of equity interests (the "Equity Interests") of Aventine Renewable Energy Holdings, Inc. ("ARE Holdings") hereby objects (the "Objection") to the Debtors' motion for entry of an order (i) approving the Debtors' entry into the Backstop Commitment Agreement dated December 3, 2009 (the "Backstop Commitment Agreement") and (ii) authorizing the Debtors' payment of related fees, expenses, and indemnification to the Backstop Purchasers [Docket No. 592] (the "Motion"), pursuant to sections 105(a), 363(b), and 503 of title 11, United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). In support of this Objection, the Objector respectfully represents as follows:[1]

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

## BACKGROUND

1. On April 7, 2009 each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

2. On December 4, 2009, the Debtors filed their Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Dated as of December 4, 2009 [Docket No. 587] (the "Plan"). The Plan provides for a reorganization of the Debtors' business operations, with ARE Holdings maintaining a direct or indirect 100% ownership interest of each of the other operating Debtors upon emergence. The Plan provides for virtually no recovery to holders of Equity Interests.

3. In furtherance of the Plan, the Debtors filed the Motion, which seeks Bankruptcy Court authorization for the Debtors' entry into an expensive and burdensome backstop arrangement whereby certain entities have agreed to guarantee the financing of the Debtors' exit from bankruptcy in exchange for substantial compensation and a variety of protections.

## OBJECTION

4. As described by the Debtors in the Motion, the Backstop Commitment Agreement is a key component of the Plan as it is intended to provide financing to fund distributions thereunder and provide working capital for the Debtors upon their exit from bankruptcy. While the Objector does not object to the mechanism of a backstop commitment to fund exit obligations generally, the Debtors' entry into this particular Backstop Commitment

Agreement is not only premature, its terms offend traditional notions of the sound exercise of business judgment. As a result, the relief requested in the Debtors' Motion should be denied.

A. **The Backstop Commitment Agreement is Premature**

5. Entry into the Backstop Commitment Agreement is premature because the Plan it seeks to support is not confirmable. As the Objector will show in connection with the Disclosure Statement and/or Confirmation Hearing, the Plan cannot be confirmed over the objection of holders of Equity Interests because it is premised on an enterprise valuation that drastically underestimates the true value of the Debtors' businesses. The Plan provides unsecured creditors with a recovery of substantially greater than 100 percent, unfairly and impermissibly diluting the recovery to which holders of Equity Interests are entitled. Moreover, the Plan, as drafted, will provide the holders of Equity Interests with property having a value that is less than what such holders would receive in a liquidation of the Debtors, in violation of Section 1129(a)(7) of the Bankruptcy Code.

6. The unconfirmable nature of the Plan renders any request for related financing, such as financing contemplated by the Backstop Commitment Agreement, premature. The Bankruptcy Court should not authorize entry into any agreement when the underlying purpose of such agreement cannot possibly be met. Worse yet, once the Backstop Commitment Agreement is executed, any amendment to the Plan will trigger a Backstop Termination Event which could result in the Debtors' obligation to pay the Break Up Fee to the detriment of the Debtors' estates and all creditors and interest holders. While not necessarily unduly burdensome on a stand-alone basis, the Break Up Fee, when coupled with the other protections and compensation awarded to the Backstop Purchasers, is overly generous and inappropriate.

Where, as here, the requested relief carries the risk of significantly depleting estate resources, such relief should only be granted in connection with a confirmable plan of reorganization.

**B. Entry into the Backstop Commitment Agreement Does Not Reflect the Sound Exercise of the Debtors' Business Judgment**

7. The decision to enter into the Backstop Commitment Agreement does not reflect the sound exercise of the Debtors' business judgment, and thus the relief requested should be denied on that basis.

8. Section 363(b)(1) states that "after notice and a hearing, [the debtor-in-possession] may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A court can authorize a debtor to use property of the estate pursuant to Section 363(b)(1) only when such use is an exercise of the debtor's sound business judgment and when the use of the property is proposed in good faith. *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d. Cir. 1996); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991). The Debtors bear the burden of establishing that a valid business purpose exists for the use of estate property in a manner that is not in the ordinary course of business. *In re Lionel Corp.*, 722 F.2d 1063, 1070-71 (2d. Cir. 1983).

9. The Debtors cannot meet the burden imposed by the law because the terms of the Backstop Commitment Agreement are so onerous that the Debtors agreement thereto cannot possibly reflect the sound exercise of prudent business judgment. The 7.6% original issue discount (a value of $8 million) and 13% cash coupon are, simply stated, usurious and do not reflect current market conditions. Furthermore, the $3 million Break Up Fee, together with an undisclosed amount of additional expense reimbursement and 20% of the New Equity is an inappropriate and excessive "protection" for the Backstop Purchasers. Because such terms

cannot possibly reflect the sound exercise of the Debtors' business judgment, the relief requested in the Motion should be denied.

## CONCLUSION

WHEREFORE, the Objector respectfully requests entry of an order denying the Debtors' Motion and granting the Objector such other and further relief as is just and appropriate.

Dated: December 28, 2009
Wilmington, Delaware

Respectfully submitted,
CROSS & SIMON, LLC

_____
Joseph Grey (ID 2358)
913 North Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
jgrey@crosslaw.com

*Attorneys for Andrew Shirley*