IN THE UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AVENTINE RENEWABLE ENERGY | ) | Case No. BK 09-11214 (KG) |
| HOLDINGS, INC., a Delaware Company, | ) | |
| *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors[1]. | ) | Objection Deadline: January 5, 2010 at 4:00 p.m. |
| | ) | Hearing Date: January 13, 2010 at 3:00 p.m. |
| | ) | |
| | ) | Re: D.I. 588, 619 |
| | ) | |

**KIEWIT ENERGY COMPANY'S OBJECTIONS TO: (I) (D.I. 588) DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE DATED, AS OF DECEMBER 4, 2009; (II) (D.I. 619) DEBTORS' MOTION FOR ORDER (I) APPROVING THE DISCLOSURE STATEMENT; (II) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE PLAN, INCLUDING (A) APPROVING FORM AND MANNER OF SOLICITATION PROCEDURES, (B) APPROVING THE FORM AND NOTICE OF THE CONFIRMATION HEARING, (C) ESTABLISHING RECORD DATE AND APPROVING PROCEDURES FOR DISTRIBUTION OF SOLICITATION PACKAGES, (D) APPROVING FORMS OF BALLOTS, (E) ESTABLISHING DEADLINE FOR RECEIPT OF BALLOTS, AND (F) APPROVING PROCEDURES FOR VOTE TABULATION; (III) ESTABLISHING DEADLINE AND PROCEDURES FOR FILING OBJECTIONS TO (A) CONFIRMATION OF THE PLAN, AND (B) THE DEBTORS' PROPOSED CURE AMOUNTS FOR UNEXPIRED LEASES AND EXECUTORY CONTRACTS TO BE ASSUMED PURSUANT TO THE PLAN; (IV) APPROVING THE SENIOR SECURED NOTES OFFERING PROCEDURES; AND (V) GRANTING RELATED RELIEF**

Kiewit Energy Company, a Delaware corporation and secured creditor ("Kiewit") hereby objects to D.I. 588 the Disclosure Statement for Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Dated, as of December 4, 2009 (the "Disclosure Statement") and (D.I. 619) the Debtors' Motion for Order (i) Approving the Disclosure Statement; (ii)

---

[1] These Cases have been administratively consolidated under this case number. The Debtors in these Chapter 11 Cases, along with the case number of each Debtor's cases are: Aventine Renewable Energy Holdings, Inc. 09-11214 (KG), Aventine Renewable Energy, LLC 09-11215 (KG), Aventine Renewable Energy, Inc. 09-11216 (KG), Aventine Renewable Energy – Aurora West, LLC 09-11217(KG), Aventine Renewable Energy – Mt. Vernon, LLC 09-11218(KG), Aventine Power, LLC 09-11219 (KG), and Nebraska Energy, L.L.C. 09-11220 (KG).

{M0783549.1}

Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, Including (a) Approving Form and Manner of Solicitation Procedures, (b) Approving the Form and Notice of the Confirmation Hearing, (c) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (d) Approving Forms of Ballots, (e) Establishing Deadline for Receipt of Ballots, and (f) Approving Procedures for Vote Tabulation; (iii) Establishing Deadline and Procedures for Filing Objections to (a) Confirmation of the Plan, and (b) The Debtors' Proposed Cure Amounts for Unexpired Leases and Executory Contracts to be Assumed Pursuant to the Plan; (iv) Approving the Senior Secured Notes Offering Procedures; and (v) Granting Related Relief (hereinafter the Approval and Procedure Motion").[2] In addition, to these objections, Kiewit has filed an objection (D.I. 628) to the Debtors' Motion for Entry of an Order Pursuant to Sections 105, 363, 503, 1123 and 1125 of the Bankruptcy Code (I) Approving the Debtors' Entry into the Backstop Commitment Agreement Related to the Offering of New Notes and Equity, and (II) Authorizing the Debtors' Payment of Related Fees, Expenses, and Indemnification to the Backstop Purchasers (the "Backstop Financing Motion") and related Motion of the Debtors for an Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code Authorizing the Debtors to (i) Pay the Work Fees of the Potential Exit Financing Lender; (ii) Provide the Deposit to the Potential Exit Financing Lender; and (iii) Provide Indemnification to the Potential Exit Financing Lender (the "Work Fee Motion"). Kiewit's objections to the Backstop Financing Motion and the Work Fee Motion are jointly referred to herein as the "Kiewit Objections". Kiewit incorporates the Kiewit Objections as additional objections to its objections to the Disclosure Statement and Approval and Procedures Motion set forth herein.

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Dated, as of December 4, 2009 (the "Plan").

## PRELIMINARY STATEMENT

Kiewit's objections are based on the grounds that the Disclosure Statement, as currently proposed, should not be approved because it does not contain the necessary disclosures required by 11 U.S.C. § 1125. In summary, the Disclosure Statement does not contain adequate information to allow Kiewit to make an informed decision regarding the Plan for the following reasons: (i) multiple choice treatment of Kiewit's Class 4(b) secured claim which prevents Kiewit from being able to make an informed decision regarding its treatment under the Plan, its right to elect 11 U.S.C. § 1111(b) treatment for this claim; and which causes the Debtors' financial projections to be speculative; (ii) conflicting disclosures regarding the status of Kiewit's lien and whether the Backstop Purchasers are to be granted a priming lien under 11 U.S.C. § 364(d) over Kiewit's Class 4(b) secured claim; (iii) if the Backstop Purchasers are being granted a priming lien under 11 U.S.C. §364(d) over Kiewit's Class 4 (b) secured claim how Kiewit will be adequately protected and/or receive the indubitable equivalent of its claims; and (iv) inadequate disclosures of the reorganization and exit financing alternatives presented to the Debtors which they rejected in favor of the alternative contained in the Plan.

For the reasons set forth herein, Kiewit submits that the Disclosure Statement and Approval and Procedures Motion cannot be approved as presented and should be denied pending Debtors' submission of a Disclosure Statement containing the adequate information required by 11 U.S.C. § 1125(a).

## BACKGROUND

1. On December 4, 2009, the Debtors filed their Disclosure Statement for Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Disclosure Statement") together with the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan"). Objections to the Disclosure Statement are required to be filed

{M0783549.1}3

by January 5, 2010, and a hearing is set for approval of the Disclosure Statement and "and any changes or modifications thereto" for January 13, 2010 at 3:00 p.m.

2. Contemporaneously with the filing of the Disclosure Statement and Plan, on December 4, 2009, the Debtors filed the Financing Motion, and Kiewit objected to the Financing Motion by the December 28, 2009 deadline. A hearing on Kiewit's and any other objections to the Financing Motion is also set for January 13, 2010 at 3:00 p.m.

3. The Backstop Purchasers are former investors in the Debtors which for a time held subordinated secured debt until they were deleveraged prior to the Debtors' bankruptcy filing. Once deleveraged, the Backstop Purchasers became de facto equity.

4. Prior to the Petition Date, the Backstop Purchasers or some portion of them negotiated with Debtors to finance the bankruptcy case. Ultimately, the Backstop Purchasers supplied the Debtor-in-Possession financing for these proceedings which they now intend to repay to themselves by means of the Offering. Having reached the plan stage of this case, the Debtors apparently, with the support and direction of the Backstop Purchasers, have proposed a plan of reorganization. The Plan, if consummated, would pay off the existing senior secured prepetition lender and DIP Financing and leave the Backstop Purchasers as the sole senior secured creditor of the Reorganized Debtors. It would also give the Backstop Purchasers an equity play as it purports to award them 20% of the equity of the Reorganized Debtors, and grant them a $3,000,000.00 break-up fee if the Disclosure Statement is not approved by January 14, 2010 or if the Plan is not confirmed. This fee is earned whether or not a penny of financing or other value is ever provided to the Debtors.

5. Kiewit is not a lender, but a construction company which entered into engineering, procurement, and construction services contracts (the "EPC Contracts") to construct

two of the Debtors' facilities, one owned by Aventine Renewable Energy—Mt. Vernon, LLC and located in Mt. Vernon, Indiana ("ARE—Mt. Vernon"), and the second owned by Aventine Renewable Energy—Aurora West, LLC and located in Aurora, Nebraska ("ARE—Aurora West"). Prior to the Petition Date, construction at ARE—Mt. Vernon and ARE—Aurora West was stopped and Kiewit terminated the respective EPC Contracts. As of the Petition Date, Kiewit was owed $7,930,706.00 for construction performed at ARE—Mt. Vernon and $15,281,808.00 for construction performed at ARE—Aurora West. ARE Holdings has guaranteed payment to Kiewit of these obligations, and Kiewit has submitted its claims with the claims agent as required by the claims bar date order entered in this case. Kiewit incorporates each proof of claim herein by this reference.

6. On February 10, 2009 and February 9, 2009, Kiewit perfected its construction lien as against the real estate and improvements located at ARE—Mt. Vernon and ARE—Aurora West, respectively. Kiewit's ARE—Aurora West construction lien is a first priority lien on the real estate and improvements located at ARE—Aurora West. Kiewit's ARE—Mt. Vernon construction lien is a first priority lien on its improvement located at ARE—Mt. Vernon.[3]

7. The Disclosure Statement and Plan classify Kiewit's secured claims in two classes, Class 4(a) which is the ARE—Mt. Vernon claim and Class 4(b) which is the ARE—Aurora West claim.

8. Kiewit's ARE—Mt. Vernon claim is listed as unimpaired in the Disclosure Statement. The proposed treatment of Kiewit's ARE—Mt. Vernon claims is stated as follows:

> - Class 4(a) is the Secured Claim of Kiewit Energy Company arising under those certain Engineering, Procurement and Construction Services Fixed Price Contracts enter into by Kiewit Energy Company and ARE—Mt. Vernon.

---

[3] The real estate at ARE—Mt. Vernon is owned by the Port Authority of the State of Indiana and is leased by the Debtors.

- Except as otherwise provided in the Plan, on the Initial Distribution Date, if the Kiewit Mr. Vernon Secured Claim is Allowed as of the Effective Date, and otherwise, as soon as practicable after the Kiewit Mt. Vernon Secured Claim is Allowed, the holder of such allowed Kiewit Mt. Vernon Secured Claim shall receive from ARE—Mt. Vernon, in full satisfaction and release of, and in exchange for, such Allowed Kiewit Mt. Vernon Secured Claim, Cash equal to the amount of such Allowed Kiewit Mt. Vernon Secured Claim, and any and all Liens held on account of such claim against ARE—Mt. Vernon's assets shall be extinguished, nullified and void.

- Class 4(a) is unimpaired under the Plan. The holders of the Allowed Kiewit Mt. Vernon Secured Claims are conclusively presumed to have accepted the Plan and the votes of holders of Allowed Kiewit Mt. Vernon Secured Claims in Class 4(a) therefore shall not be solicited.

Plan at p. 40.

9. In contrast, Kiewit's ARE—Aurora West claim is listed as impaired. The proposed treatment of Kiewit's ARE—Aurora West secured claim is stated as a set of possible alternative treatments as follows:

- Class 4(b) is the Secured Claim of Kiewit Energy Company arising under those certain Engineering, Procurement and Construction Services Fixed Price Contracts entered into by Kiewit Energy Company and ARE—Aurora West.

- On the Initial Distribution Date, if the Kiewit Aurora West Secured Claims is Allowed as of the Effective Date, and otherwise, as soon as practicable after the Kiewit Aurora West Secured Claim is Allowed, the holder of such Allowed Kiewit Aurora West Secured Claim shall, at the option of the Debtor (subject to the consent of the Majority Backstop Purchasers), receive, in full satisfaction, settlement and release of, and in exchange for, such Allowed Kiewit Aurora West Secured Claim, one of the following distributions: (a) (i) an initial payment of $4 million (the "Initial Kiewit Payment"), (ii) a secured non-recourse note, in the form to be set forth in the Plan Supplement (subject to the Backstop Purchaser Approval Condition), in a face amount equal to the amount of the Allowed Kiewit Aurora West Secured Claim less the Initial Payment, which among other things provides for a term of five years and interest payments at the rate of 5% per annum, and (iii) retention of a Lien with the same priority and on the same assets that presently secure the Allowed Kiewit Aurora West Secured Claim; or (b) the Collateral securing the Allowed Kiewit Aurora West Secured Claim; or (c) such other treatment permitted under Section 1129 of the Bankruptcy Code as may be agreed upon in writing between ARE—Aurora West (subject to the consent of the Majority Backstop Purchasers) and the holder of the Allowed Kiewit Aurora West Secured Claim.

- Class 4(b) is impaired under the Plan. The holders of Allowed Kiewit Aurora West Secured Claims in Class 4(b) are entitled to vote to accept or reject the Plan.

Plan at pp. 40-41.

## BASIS FOR OBJECTION

10. The Bankruptcy Code requires that a debtor provide a disclosure statement which contains "adequate information" regarding its proposed plan of reorganization to allow "a hypothetical investor of the relevant class to make an informed judgment about the Plan". 11 U.S.C. § 1125(a). "Adequate information" is defined to mean information "in sufficient detail as far as reasonably practicable" to allow such informed judgment by the hypothetical investor. *Id.* "In order to satisfy due process [the creditors] had to receive notice that specified the treatment of their class of claim and allowed them to make an informed judgment about [the] Chapter 11 plan." *See* 7 Collier on Bankruptcy ¶ 1125.02[3] at 1125-15 n. 22 (Alan N. Resnick & Henry J. Sommer, 15th ed. rev. 2009) (quoting *In re Barton Industries*, 104 F.3d 1241, 1245 (10th Cir. 1997). As the Debtors correctly note in their Approval and Procedures Motion, "[f]undamentally, a disclosure statement "must clearly and succinctly inform the average [impaired creditor] what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." Approval and Procedures Motion at ¶ 7, p. 5 (citing *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). As to the treatment of Kiewit's Class 4(b) claim, the Disclosure Statement satisfies none of these elements. It fails to definitively tell Kiewit what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution.

11. The Disclosure Statement as presented does not provide the required adequate information to allow Kiewit, the holder of an impaired secured claim (Class 4(b)), to make an informed judgment regarding the Plan for at least the following reasons:

    (a) The Disclosure Statement as noted above describes three "possible" treatments for Kiewit's Class 4(b) secured claim, but does not state which treatment the Debtors intend to pursue, leaving Kiewit and all other parties to speculate whether Kiewit's claim against ARE—Aurora West will be paid in full, the collateral abandoned to Kiewit (in which case disclosure of the treatment of any deficiency claim held by Kiewit needs to be addressed), or treated in some other undisclosed manner. This is particularly important information to Kiewit, because Kiewit is entitled to make an election under 11 U.S.C. § 1111(b)(2). Kiewit cannot determine based upon the multiple choice treatments offered under the Disclosure Statement and Plan for its secured claim at ARE—Aurora West whether such an election is in its best interests. For example, Kiewit may well choose to elect such treatment if the first option is chosen by Debtors and they retain the plant, but it may not wish such option if the plant is abandoned to it depending on the treatment of its deficiency claim which is also not disclosed.

    (b) Similarly, the Disclosure Statement's failure to disclose the intended treatment for Kiewit's secured ARE—Aurora West claim is important to not only Kiewit but all creditors because the financial projections post Q1 2012 rely on completion of ARE—Aurora West which clearly will not occur if the plant is abandoned. See Plan Exhibit "D", Assumption 1. In addition, while the Debtors' financial projections accompanying the Disclosure Statement rely upon the ability

to raise and additional $50 M in Q2 2011 to complete ARE—Aurora West, they do not disclose either what will happen to those projections if the plant is not built, nor what they intend to do with the plant at that point, i.e. abandon it to Kiewit or take other action. Kiewit, under option (a) of the Plan, would nevertheless be forced to sit tight for another five years with only minimal payments on a approximately $10M claim secured by a depreciating unfinished ethanol facility that has a current liquidation value according to the Debtors of only $2.4M to $5M before being able to realize on its collateral.

(c) The Debtors' financial projections are based on the completion of both ARE—Mt. Vernon (in Q4 2010) and ARE—Aurora West (in Q1 2012), however the Plan makes no commitment to complete construction of either facility, does not disclose the effect of abandoning construction of one or both facilities on those projections, nor describes Debtors' ability to survive post confirmation without these plants completion. Compare, Plan Exhibit "D", Assumption 1, and Disclosure Statement pp. 31-32.

(d) The Debtors' speculative financial projections similarly are based upon a "best case scenario" that the company's material agreements with CGB and Aurora Coop will be assumed (Plan, Exhibit "D"). However, the Disclosure Statement states some or all of those contracts may be rejected (Disclosure Statement, p. 32). The impact of rejection of some or all of Aurora Coop's agreements on such projections is not disclosed, nor is its affect on the completion of the ARE—Aurora West facility. These disclosures should be made.

(e) The liquidation values for ARE—Aurora West and ARE-Mt. Vernon are

purportedly based on the balance sheet values which are neither included nor adequately described, and which, with respect to ARE—Mt. Vernon and ARE—Aurora West, reflect an additional discount, the rationale for which is also undisclosed. The Disclosure Statement should disclose these items, and in addition, should disclose why the valuation for ARE—Aurora West is now substantially less than that estimated by Houlihan Lokey on which the Debtors relied for their priming DIP Facility in this case.

(f)   The Plan as presented is not feasible since it does not provide Kiewit either the indubitable equivalent of its claim or fair and equitable treatment as required for confirmation under 11 U.S.C. § 1129(b). Similarly, if the Plan is seeking to prime Kiewit's liens under 11 U.S.C. § 364(d) in favor of the Backstop Purchasers, then it fails because it does not provide adequate protection and violates 11 U.S.C. § 364(d) and 11 U.S.C. § 1129(a)(2). While Kiewit continues to work with the Debtors for a negotiated resolution of the treatment of its claims, it cannot vote for the Plan as proposed. With regard to Kiewit's secured claim against ARE—Aurora West, the Plan as proposed eliminates Kiewit's deficiency claim if the Debtors either (a) default on their payment under the proposed non-recourse five year note option or (b) if the plant is returned. Based on the liquidation values Debtors propose for ARE—Aurora West of $2.4M to $5.0M, Kiewit would in such event have a right to an unsecured deficiency claim of between approximately $13.4M and $10.8M. Since the Plan provides a recovery to other unsecured creditors, it violates the absolute priority rule as proposed by excluding Kiewit from the unsecured pool and requiring that Kiewit accept an

uncollateralized non-recourse note, or return of collateral with a fraction of the value of its claim in full satisfaction of that claim.

(g) The Plan further discriminates against Kiewit in the following particulars:

- By providing the Backstop Purchasers a 13% fully secured and recourse note obligation plus a 20% equity interest while purporting to limit Kiewit, a fellow secured creditor, to a 5% non-recourse note secured by a depreciating unfinished plant; and,

- By exonerating and releasing Aventine Holdings from any obligations under their existing guaranty of ARE—Mt. Vernon's and ARE—Aurora West's obligations to Kiewit without any consideration.

(h) The Disclosure Statement does not challenge the validity of Kiewit's claims regarding ARE—Mt. Vernon and ARE—Aurora West, states the claims will be paid 100% either in cash on the Initial Distribution Date or over time (See, Disclosure Statement at pp. 12-13), and represents the claim regarding ARE—Mt. Vernon is unimpaired, however it does not purport to "allow" any of the Kiewit claims, and does not state whether Debtors will object thereto. Kiewit is entitled to disclosure of the Debtors' intent regarding these claims so it can decide whether the treatment proposed is real or illusory.

12. The Disclosure Statement should not be approved as presented as it fails to provide adequate information so that Kiewit can make an informed judgment regarding the Plan for the reasons described above.

WHEREFORE, Kiewit Energy Company, a Delaware corporation, secured creditor, respectfully requests that the Court deny the Disclosure Statement and Approval and Procedures Motion until such time as adequate information is inserted therein, and grant such other and further relief as it deems appropriate.

DATED this 5th day of January, 2010.

Respectfully submitted,

Kiewit Energy Company

_____
Ronald S. Gellert
Eckert Seamans Cherin & Mellott LLC
300 Delaware Avenue
Suite 1210
Wilmington, DE 19801
(302) 425-0430
(302) 425-0432 fax

And

Robert J. Bothe, NE Bar #15018
James J. Niemeier, NE Bar #18838
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
(402) 341-3070
(402) 341-0216 fax

**Attorneys for Kiewit Energy Company**