IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>**AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**, a Delaware Corporation, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-11214 (KG)<br><br>Jointly Administered<br><br>Objection Deadline: Jan. 5, 2010 @ 4:00 pm<br>Hearing Date: Jan. 13th, 2010 at 3:00 pm<br>Regarding Docket No. 619 |

## OBJECTION TO DEBTORS' MOTION FOR ORDER (I) APPROVING THE DISCLOSURE STATEMENT; (II) ESTABLISHING PROCEDURES FOR SOLICITATION AND TABULATION OF VOTES TO ACCEPT OR REJECT THE PLAN, INCLUDING (A) APPROVING FORM AND MANNER OF SOLICITATION PROCEDURES, (B) APPROVING THE FORM AND NOTICE OF THE CONFIRMATION HEARING, (C) ESTABLISHING RECORD DATE AND APPROVING PROCEDURES FOR DISTRIBUTION OF SOLICITATION PACKAGES, (D) APPROVING FORMS OF BALLOTS, (E) ESTABLISHING DEADLINE FOR RECEIPT OF BALLOTS, AND (F) APPROVING PROCEDURES FOR VOTE TABULATIONS; (III) ESTABLISHING DEADLINE AND PROCEDURES FOR FILING OBJECTIONS TO (A) CONFIRMATION OF THE PLAN, AND (B) THE DEBTORS' PROPOSED CURE AMOUNTS FOR UNEXPIRED LEASES AND EXECUTORY CONTRACTS TO BE ASSUMED PURSUANT TO THE PLAN; (IV) APPROVING THE SENIOR SECURED NOTES OFFERING PROCEDURES; AND (V) GRANTING RELATED RELIEF

Andrew Shirley ("Shirley"), as a beneficial holder of equity interests (the "Equity Interests") of Aventine Renewable Energy Holdings, Inc. ("ARE Holdings") by and through its undersigned counsel, hereby objects to the *Debtors' Motion for Order (i) Approving the Disclosure Statement; (ii) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, including (A) Approving Form and Manner of Solicitation Procedures, (B) Approving the Form and Notice of the Confirmation Hearing, (C) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (D) Approving Forms of Ballots, (E) Establishing Deadline for Receipt of Ballots, and (F) Approving Procedures for Vote Tabulations; (iii) Establishing Deadline and Procedures for Filing*

1

*Objections to (A) Confirmation of the Plan, and (B) the Debtors' Proposed Cure Amounts for Unexpired Leases and Executory Contracts to be Assumed pursuant to the Plan; (iv) Approving the Senior Secured Notes Offering Procedures; and (v) Granting Related Relief* filed on December 22, 2009 [Docket No. 619] (the "Debtors' Motion"), and respectfully represents as follows:

## PRELIMINARY STATEMENT[1]

This Court should not approve the Disclosure Statement in its present form. First, it fails to provide information necessary to allow a reasonable Equity Interest holder to make an informed judgment as to whether to vote to accept or reject the Plan. Among other things, the Disclosure Statement fails to explain why the Debtors' debt securities are trading at an equated enterprise value that is more than 50% higher than the enterprise value set forth in the Disclosure Statement. It does not value the Warrants being provided to holders of Equity Interests. It fails to address the recent upturn in the ethanol industry or substantively discuss key litigations that may bring substantial value to the estate. The discussion of the Houlihan valuation lacks detail, rendering it impossible for any stockholder to determine whether the Plan – which provides Equity Interests with little if any recovery - is fair and equitable.

Not only is more disclosure crucial to empower Equity Interests to make an informed vote on the Plan, but it is essential to enable the Court to determine whether or not the Plan is confirmable. The Plan is premised upon the basis that the Debtors are insolvent. Yet using the Debtors' own projections, it appears that there could be a potentially substantial recovery for equity, and that the Plan impermissibly pays certain creditors more than 100 percent of their claims to the detriment of stockholders. Accordingly, before the Disclosure Statement is

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Motion.

2

approved, the Debtors should be required to provide more information with respect to their valuation analysis in order to show that the Plan is not patently unconfirmable as a matter of law.

## BACKGROUND

1. On April 7, 2009, each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On December 4, 2009, the Debtors filed their Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Docket No. 587] (as the same may be amended, the "Plan"), and their Disclosure Statement for Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as the same may be amended, the "Disclosure Statement").

3. In general terms, the Plan provides for the payment in cash in full of all unclassified and priority claims and secured claims (with some limited exceptions). Holders of Unsecured Claims receive their pro rata share of 80% of the common stock of the Reorganized Debtors (allocated among the various Debtors), while holders of Equity Interests in ARE Holdings receive the Warrants.

4. In addition to their pro rata share of 80% of the reorganized Debtors' common stock, holders of Senior Unsecured Note Claims - but no other creditors - are entitled to receive their pro rata share of 20% of the remaining common stock to the extent such parties participate in a rights offering for new debt underwritten by the Backstop Purchasers.

5. The Plan and the proposed distribution scheme are based on the financial projections and valuation analysis contained in Section VIII and Exhibit D of the Disclosure Statement. Based upon the limited metrics employed by the Debtors' professionals, the Debtors

3

have endorsed a valuation range of $220 million to $260 million for their businesses as going concerns.

6. On December 23, 2009, Shirley requested that the U.S. Trustee appoint an official committee of equity security holders to provide holders of Equity Interests with a collective voice in the Debtors' bankruptcy cases. That request remains pending.

## OBJECTION

### A. The Disclosure Statement Provides Insufficient Information and Should not be Approved.

7. Bankruptcy Code Section 1125(b) prohibits the solicitation of votes to accept or reject a plan from creditors or equity holders "unless, at the time of or before such solicitation, there is transmitted… a written disclosure statement approved… by the court as containing adequate information." 11 U.S.C. § 1125(b). "Adequate information" is defined as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of the holders of claims or interests of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

8. The requirement for adequate information is "crucial to the effective functioning of the federal bankruptcy system[;] . . . the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.)*, 848 F.2d 414 (3d Cir. 1988)); *In re E. Redley Corp.*, 16 B.R. 429, 430 (Bankr. E.D. Pa. 1982) ("[t]he requirement that a disclosure statement contain adequate information serves to present the parties entitled to vote on the plan with an opportunity to independently

4

evaluate the merits of the proposed plan... Without information sufficient to allow parties voting on the plan the opportunity to arrive at an independent and informed judgment, the disclosure statement cannot be approved").

9. "Adequate information" under section 1125 is "determined by the facts and circumstances of each case." *See Oneida*, 848 F.2d at 417 (citing H.R. Rep. No. 595, 97th Cong., 2d Sess. 266 (1977)). Here, valuation is a key issue for holders of Equity Interests, who are being asked to vote in favor of the Plan. Yet, as set forth below, the Disclosure Statement is deficient in numerous respects, rendering it impossible for holders of Equity Interests to form a reasoned view as to whether to support or reject the Plan.

10. <u>Additional Disclosure With Respect to Valuation</u>. Whether one uses the Debtors' own cash flows or simply looks to the market for the Debtors' publicly-traded bonds or equity, there is a very strong argument to be made for the Debtors' solvency. Yet the valuation analysis performed by Houlihan Lokey Howard & Zukin Capital, Inc. ("<u>Houlihan</u>") appears to conclude that the Debtors are insolvent. That analysis provides that unsecured creditors will receive anything from between less than one cent to approximately 50 cents on the dollar under the Plan, even though the Debtors' unsecured bonds were recently trading at roughly 95 cents on the dollar. To enable holders of Equity Interests to understand this discrepancy, more information regarding the process undertaken by Houlihan is required.

11. Shirley submits that at a minimum, the Disclosure Statement should set forth some basic information regarding the analysis performed by Houilhan. For example, although the Disclosure Statement provides that Houlihan performed three valuation methodologies (the comparable company analysis, discounted cash flow analysis, and precedent transaction analysis), it fails to set forth the percentage weight ascribed to each methodology.

Moreover, the Disclosure Statement fails to reference which comparable companies and precedent transactions were utilized in the analysis and omits any detailed disclosure of any discounts applied by Houlihan (for example, estimated completion costs of the plants, risk-adjustments, and discounts to account for purported control premiums). In particular, with respect to the discounted cash flow analysis, the Disclosure Statement does not include the terminal value used, the multiple for that terminal value, or even the applicable discount rate used to discount the cash flows. Without this basic information, it is impossible for holders of Equity Interests to understand the valuation on which their recovery is based.

12. **Additional Disclosure With Respect to Equity Recovery.** The Disclosure Statement fails to provide any meaningful recovery analysis for Equity Interests, other than to say that their recovery on account of the Warrants is likely to be "de minimis". The Debtors should disclose what, if any, analysis they have performed with respect to the Warrants, and the results (if any) of that analysis. Only then can Equity Interest holders determine whether or not to vote in favor of the Plan.

13. A similar issue arises with respect to the fact that, even if holders of Equity Interests vote in favor of the Plan, as drafted, they still might not receive any recovery. This is because the Plan and Disclosure Statement reserve the rights of the Debtors to cancel the Warrants (even after the vote on the Plan has concluded). The Disclosure Statement should make clear to all Equity Interests that, even if they vote in favor of the Plan, there is still a chance that they may not be entitled to the Warrants under the Plan.

14. Finally, the Disclosure Statement provides that, notwithstanding anything set forth in the Plan, no creditor will be entitled to receive more than 100% on account of its claims. See Disclosure Statement at pages 2 and 43. This provision may avoid the need to re-

solicit votes if the Court determines that the reorganized equity being allocated to unsecured creditors would provide them with more than payment in full on account of their claims. Nonetheless, the Disclosure Statement is devoid of any provision or waterfall providing that, to the extent creditors are deemed paid in full, the residual value shall be reallocated to holders of Equity Interests. Similarly, the Disclosure Statement should explain, in its discussion of the Backstop Commitment Agreement (see Disclosure Statement pp. 29 - 31) the effect (if any) that any such reallocation would have on the binding nature of the Backstop Commitment Agreement.

15. Additional Disclosure With Respect to Creditor Recovery. The Disclosure Statement provides that unsecured creditors will receive a recovery of between less than 1% to 50% on account of their claims. See Disclosure Statement at p. 14. Yet the Debtors' publicly-traded bonds are trading at multiples of these estimated recoveries (the Debtors' Senior Unsecured Notes recently traded at roughly 95% principal amount). The Disclosure Statement should disclose the reasons of which the Debtors are aware - if any - that might explain this significant discrepancy, and whether or not the Debtors or any of their professionals have performed an analysis as to this discrepancy.

16. In addition, the Disclosure Statement (page 14) provides that holders of the Prepetition Unsecured Note Claims are entitled to their pro rata share of the Unsecured Claims Stock Pool, but fails to mention that such holders are also entitled to their pro rata share of an additional 20% of the reorganized Debtors' common stock. Along similar lines, the Disclosure Statement fails to set forth any rationale why only certain holders of the Senior Unsecured Notes - and no other creditors or holders of Equity Interests - are entitled to

participate in the Rights Offering. If there is any rationale or reason for this distinction, it should be set forth in the Disclosure Statement, as it is directly relevant to the confirmability of the Plan.

17. <u>Other General Disclosure Issues.</u> As noted above, Shirley recently requested the appointment of an official equity committee. Although the Office of the United States Trustee has yet to respond to this request, Shirley respectfully submits that the pending request is of enough import to warrant disclosure in the Disclosure Statement. The Disclosure Statement should also note that certain equity holders have argued (and may argue at confirmation) that the plan impermissibly pays certain creditors over 100% of their claims to the detriment of holders of Equity Interests.

18. In section of the Disclosure Statement entitled "Events Leading to the Commencement of Chapter 11 Cases", the Debtors reference a potentially significant litigation involving the Auction Rate Securities. (<u>See</u> Disclosure Statement at p. 24). Yet neither the current status of this litigation nor the potential recoveries are discussed in section of the Disclosure Statement concerning estate litigations.

19. In the discussion of substantive consolidation (<u>see</u> Disclosure Statement page 48), the Debtors should discuss the effect (if any) that they believe substantive consolidation will have on holders of Equity Interests, and any analysis the Debtors have performed on this issue. If the Debtors have not performed an analysis, they should say so.

**B.    Absent Additional Information, It Appears that the Plan Described in the Disclosure Statement is Patently Unconfirmable.**

20. Courts may reject a debtor's disclosure statement when the disclosure statement describes a plan that is not confirmable as a matter of law. *In re Curtis Ctr. Ltd., P'Ship*, 195 B.R. 631, 638 (Bankr. E.D. Pa. 1996) (disapproving of a disclosure statement where

the plan it described was patently unconfirmable as a result of an improper classification scheme); *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 333 (E.D. Pa. 1987).

    21.  Under section 1129(b) of the Bankruptcy Code, a court may cram-down a class of interests only if it is "fair and equitable" with respect to each dissenting class. *In re Cellular Info. Sys., Inc., C.I.S.*, 171 B.R. 926, 937 (Bankr. S.D.N.Y. 1994); *see In re Labrum & Doak, LLP*, 227 B.R. 372, 381 (Bankr. E.D. Pa. 1998). With respect to holders of interests, section 1129(b)(2) of the Bankruptcy Code defines the phrase "fair and equitable" to include the following requirements:

> (C) With respect to a class of interests –
>
> (i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or
>
> (ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

While not expressly detailed in the statutory language, courts have found that an important corollary to the absolute priority rule of section 1129(b)(2) is that senior classes may not receive more than full compensation on account of their claims. *See In re Exide Technologies*, 303 B.R. 48 (Bankr. D. Del. 2003); *In re Genesis Health Ventures, Inc.* 266 B.R. 591 (Bankr. D. Del. 2001); *Kipperman v. Onex Corp.*, 411 B.R. 805 (N.D. Ga. 2009). If the Plan provides more than 100% recovery to certain creditors while providing holders of Equity Interests with only de minimis Warrants, it is unconfirmable as a matter of law to the extent holders of Equity Interests vote against the Plan. Adequate disclosure regarding valuation is therefore crucial to stockholders.

22. Here, despite Shirley's written request to the U.S. Trustee, no official equity committee has been formed, much less had sufficient time or discovery to fully test valuation set forth in connection with Plan. In addition, for many of the reasons set forth above, the draft Disclosure Statement renders it impossible to determine whether the Disclosure Statement valuation is credible. Accordingly, while Shirley does not intend to fully litigate valuation with respect to the Disclosure Statement hearing, in approving the Disclosure Statement, the Court should at least make a threshold determination that the Plan is not patently unconfirmable. This determination can only be made, Shirley submits, if the Disclosure Statement addresses the disclosure issues raised above and, in particular, provides the requested information with respect to valuation.

## CONCLUSION

WHEREFORE, Shirley respectfully requests entry of an order denying the Debtors' Motion and granting such other and further relief as is just and appropriate.

Dated: January 5, 2009

CROSS & SIMON, LLC

_____
Joseph Grey (ID 2358)
913 North Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
jgrey@crosslaw.com

and

**GIBSON, DUNN & CRUTCHER LLP**
Matthew J. Williams, Esquire
200 Park Avenue
New York, NY 10022
Telephone: 212-351-4000

*Counsel for Andrew Shirley*