U.S. Bankruptcy Court
RECEIVED
JAN 04 2010
Judge_____

To the Honorable Judge Kevin Gross
c/o Mark S. Kenney, Esq.
Office of the United States Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19801
Dated: December 23, 2009

Honorable Judge Gross,

I am an Aventine Renewable Energy stockholder writing in reference to Case No. 09-11214-KG, which I have been following on the Case Dockets. I currently own ( 110,000 ) shares of Aventine stock.

I am writing to express my wholehearted disagreement with the Debtors Disclosure Statement and Proposed Plan of Reorganization (the Plan). The primary reasons for my disagreement with these proposals are outlined below.

1) Disclosure Statement Exhibit D – "Summary of Key Business Plan Assumptions" contains projections of future "plant EBITDA margins" that range from 44% to 56% of the actual plant EBITDA margins that Aventine has posted in their Monthly Operating Reports during the 7 month period they have been operating as a Debtor-In-Possession. The Debtors extremely low future margin projections do not reflect the realities of current corn-based ethanol margins, or the current markets that Aventine operates within. FASB Statement of Financial Accounting Standards No. 157, "Fair Value Measurements", paragraphs 5 and 7 require valuations to be based on "the measurement date", not past dates, or some other unspecified date. The Debtors future "plant EBITDA margin" projections should begin with values consistent with recent actual operating margins realized during their post-petition operating period. These future margin projections directly impact the valuations contained in Exhibit D rendering the entire valuation contained in Exhibit D and the proposed Plan inaccurate and unrealistic. In addition, the market factors that resulted in breakeven and negative operating margins prior to their Chapter 11 filing are no longer in play. These include unprecedented commodity bubbles in both fuel and corn prices during 2008 (followed by rapidly collapsing commodity prices), excess ethanol production capacity in 2007 and 2008 due to "overbuilding" of the industry, and excess RINS carried into 2008 and 2009 from oversupply in previous years. These market factors have largely corrected themselves and the supply and demand balance for ethanol is in synch now, resulting in higher prices for the fuel and reasonable if not very good operating margins.

2) It is obvious from the operating results contained in the Monthly Operating Reports that Aventine doesn't need to have their initial Proposed Plan approved and exit CH 11 immediately, or even within the next several months, as they have been doing very well operating their business over these past 7 months and margins are currently very favorable. November plant EBITDA margins were $0.66/gallon and greater than margins realized in the preceding 3 month period. This is in contrast to a company that is in Chapter 11 and losing money each month. I respectfully ask that you consider this fact when reviewing recent motions the Debtors have made to expedite their exit from Chapter 11 and transfer the equity in this company to the creditors. I honestly believe these recent motions are rooted in a concerted effort to get the initial "Proposed Plan" through without any input from other interested parties.

3) The Proposed Plan and Disclosure Statement were developed without adequate consideration of the current owners of the company (the stockholders). It is obvious the Debtors and their creditors have structured the "Proposed Plan" for the benefit of the creditors and to the detriment of the equity holders. Aventine's current balance sheet indicates total assets of approximately $700M, total liabilities of approximately $443M, and stockholders equity of approximately $257M. This strong balance sheet affords Aventine financing options that are not normally available to companies in Chapter 11 with insolvent balance sheets.

4) Disclosure Statement Exhibit E – "Liquidation Analysis" values Aventines two unfinished plants that are between 85% and 90% complete at less than 2% of the capital expenditures to date used to construct the plants. These are brand new state-of-the-art dry mill plants designed by Delta-T Corporation and set up for future expansion to double their initial 113M gallon/year capacities. Aventine has invested over $490M in these facilities over the last 2-1/2 years and the Debtors Liquidation Analysis assigns recovery values of between $4M and $8M to these assets. The unconscionable low valuation of these two brand new nearly completed assets alone speaks to the intent of those who developed the Liquidation Analysis and renders the entire Liquidation Analysis faulty. Even in the event that these assets would be sold to used equipment dealers for dismantling and removal, the processing equipment residing at these plants (fans, heat exchangers, distillation columns, rotary dryers, tanks, pumps, loading equipment, etc.) would bring many times the liquidation value contained in Exhibit E.

5) There are numerous options that Aventine could pursue to satisfy all of their creditor claims in full in order to exit Chapter 11 with significant value preserved for the existing stockholders. One key to these other options is to reinstate the existing $300M in unsecured bonds, paying the $15.5M interest due and all other costs of reinstatement. All of the other creditor claims can be paid off with either cash generated during bankruptcy (currently at $56.5M), additional secured financing (that is now readily available), issuing additional shares of stock in a secondary offering, or a combination of these sources of funds. Aventine's total of all known creditor claims that must be satisfied in order to emerge from bankruptcy is approximately $135M. Raising this amount of funds is easily achievable in light of Aventines strong balance sheet and the current and near future operating margins for their business.

6) A significant number of the stockholders in Aventine have recently joined the "Aventine Stockholders Alliance" behind the leadership of Mr. Andrew Shirley, a holder of over 2.1% of the outstanding shares. Mr. Shirley is an experienced investment professional and a principal in Ivory Capital with offices in Los Angeles and New York. In a recent update from Mr. Shirley, he reports that more than 50 Aventine stockholders representing more than 15% of the outstanding shares have joined the Alliance. I respectfully ask the Court to consider the interests of the existing owners of the company (stockholders) to allow sufficient time for the Aventine Investors Alliance to submit a Plan of Reorganization that is fair and equitable to all parties, satisfies all creditor constituencies in full, and preserves at least a portion of the existing stockholders equity.

Thank you for your time and consideration of the above information and my requests submitted as an Aventine stockholder. Please feel free to contact me if you have any question.

Herschel C. Patton

hpattonsprint@earthlink.net

(801) 943 7484