# EXHIBIT 1

# Reply

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**, a Delaware Corporation, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 09-11214 (KG)<br><br>(Jointly Administered)<br><br>**Docket Ref. No. 588** |

## REPLY OF THE DEBTORS TO THE OBJECTIONS OF CERTAIN PURPORTED EQUITY HOLDERS TO THE DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE DATED, AS OF DECEMBER 4, 2009

Aventine Renewable Energy Holdings, Inc. ("ARE Holdings") and its affiliated debtors and debtors in possession (together with ARE Holdings, collectively, the "Debtors") hereby submit this reply (the "Reply") in support of, and in response to the objections submitted by the Objectors[2] (each an "Objection" and collectively, the "Objections") to, the *Disclosure Statement for Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Dated, as of December 4, 2009* (the "Original Disclosure Statement") [Docket No. 588].[3] In support of this Reply, the Debtors respectfully state:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

[2] The "Objectors," who are each purported shareholders of ARE Holdings, are: Andrew Shirley ("Shirley"), Herschel C. Patton ("Patton"), William & Shelia Toomey (together, the "Toomeys"), and Michael J. Welsh ("Welsh").

[3] Contemporaneous with filing the Original Disclosure Statement, the Debtors filed the *Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Dated, as of December 4, 2009* (the "Original Plan") [Docket No. 587].

## Preliminary Statement

1. On December 4, 2009, the Debtors filed the Original Plan and Original Disclosure Statement. Since filing the Original Plan and Original Disclosure Statement, the Debtors have engaged in negotiations with certain parties regarding the treatment of such parties' claims under the Original Plan. The Debtors have reached a resolution with certain parties resulting in amendments to the Original Plan (the "Amended Plan") and Original Disclosure Statement (the "Amended Disclosure Statement").[4] The Amended Disclosure Statement exceeds 100 pages, plus exhibits, and provides additional information, as compared to the Original Disclosure Statement, to allow holders of claims and interests in these cases to vote on the Amended Plan.

2. The Objectors, unsatisfied with the fact that the Debtors' enterprise value does not entitle equity holders to a meaningful distribution under any plan of reorganization in these cases, have opposed the Debtors' proposed reorganization, commencing with the filing of various objections to the adequacy of the Debtors' disclosure statement.[5] The ultimate issue that underlies the Objections—the Debtors' total enterprise value—is an issue that the Court need not, and should not, decide in connection with the approval of the Amended Disclosure Statement. Instead, the hearing on the Amended Disclosure Statement is intended to address, and should be confined to, the adequacy of the Debtors' disclosure for purposes of enabling an informed vote on the Amended Plan.

---

[4] Capitalized terms used, but not defined herein, shall have the meanings ascribed to them in Amended Plan and the Amended Disclosure Statement, as the case may be.

[5] Shirley has also requested that the Office of the United States Trustee (the "UST") appoint an Official Committee of Equity Holders. Based on, among other considerations, the fact that equity holders are substantially out of the money, the Debtors, the Committee and the Backstop Purchasers have communicated to the UST their objection to the appointment of an Official Committee of Equity Holders. On January 11, 2009, the UST denied Shirley's request.

3.   The confirmation issues raised by the Objection are without merit and, nevertheless, do not rise to the level of rendering the Amended Plan unconfirmable on its face. The fact that the Objectors oppose ultimate confirmation of the Amended Plan (an issue that will be addressed by the Court at the Confirmation Hearing) should not block approval of the Amended Disclosure Statement and the commencement of solicitation of votes to accept or reject the Amended Plan.

4.   The Debtors have amended the Original Disclosure Statement to incorporate the resolution of certain objections, various updates and other revisions in an attempt to address some of the Objectors' issues with respect to the adequacy of the information. The Debtors submit that the Amended Disclosure Statement contains adequate information. For the convenience of the Court, the Debtors have attached hereto as <u>Exhibit A</u>, a summary of the Objections and the additional disclosures the Debtors have made, if necessary, in an attempt to resolve the issues. The remaining disclosure issues raised by the Objectors either (a) are not necessary to provide sufficient information and, in some cases, constitute extraneous, argumentative or misleading matters which could confuse the creditors or equity holders entitled to vote on the Amended Plan, or (b) raise issues which relate to the confirmation of the Amended Plan and not disclosure issues. Under the applicable standard for approval of a disclosure statement, the remaining requests in the Objections for additional disclosure would not provide additional benefit to the creditors and equity holders to enable them to vote to accept or reject the Amended Plan.

### **Reply**

5.   The Debtors have received what amounts to six responses to approval of the Original Disclosure Statement from the following parties: the Prepetition Agent [Docket No.

649], Kiewit Energy Company ("Kiewit") [Docket No. 643], Pension Benefits Guaranty Corporation (the "PBGC") [informal response], the Creditors Committee [informal response], Shirley and the remaining Objectors. The Debtors have worked diligently to resolve the responses of the Prepetition Agent, Kiewit, the PBGC and the Creditors Committee, which resolutions are reflected in the Amended Plan and Amended Disclosure Statement.

6. The sole remaining objections to the Original Disclosure Statement are the objection of Andrew Shirley [Docket No. 644] and the late-filed, essentially identical objections of four other dissident shareholders, Patton, the Toomeys and Welsh [Docket Nos. 656, 657 and 658, respectively] (collectively, the "Objections"). The Objections can be pared down to two broad categories: (i) the Original Plan cannot be confirmed on its face because it is predicated on an inaccurate valuation, and (ii) additional information regarding the Debtors' valuation is required in order to solicit votes to accept or reject the Original Plan (and now the Amended Plan). For the reasons set forth below and in Exhibit A attached hereto, the Amended Plan is confirmable on its face and the Amended Disclosure Statement contains adequate disclosure for purposes of soliciting votes to accept or reject the Amended Plan.

I. **The Amended Plan is Confirmable on Its Face.**

*(a) Objectors' Contentions Related to Valuation Do Not Render the Amended Plan Unconfirmable on Its Face*

7. In the few cases where courts have determined that a plan is "patently unconfirmable" at a hearing on the disclosure statement, the disclosure statements described plans that were "so fatally flawed that confirmation [is] impossible." In re U.S. Brass Corp., 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996). The Objectors contend that the Original Plan was unconfirmable on its face due to deficiencies in the Debtors' valuation that result in violations of the "absolute priority rule" (11 U.S.C. § 1129(b)) and the "best interests tests" (11 U.S.C. §

4

1129(a)(7)). See Shirley DS Objection ¶¶ 20-22; Shirley Backstop Obj., ¶ 5. Courts have declined to address issues arising under section 1129 of the Bankruptcy Code at the hearing on the approval of a disclosure statement and have held that these issues are properly reserved until the hearing on confirmation. See In re Cardinal Congregate I, 121 B.R. 760, 763-64 (Bankr. S.D. Ohio 1990) (objections to, inter alia, classification, treatment of claims, and protection of creditor interests properly addressed at confirmation hearing); In re Dakota Rail, Inc., 104 B.R. 138, 144 (Bankr. D. Minn. 1989) (whether plan could be confirmed without violating Absolute Priority Rule was not ripe for determination at disclosure statement hearing). Although the Objectors contend that the Debtors' valuation is wrong, which in turn results in certain violations of section 1129 of the Bankruptcy Code, this contention alone does not render the Amended Plan unconfirmable on its face. See, e.g., In re US Brass Corp., 194 B.R. at 420 (approving disclosure statements for competing plans over objections that plans could not be confirmed due to disputes between the debtor and a specially appointed committee over the value of certain assets, claims and contributions contemplated under each parties' plan and noting that disclosure of this dispute in both disclosure statements was sufficient). Simply put, the dispute over valuation, and its effect on the Debtors' ability to confirm the Amended Plan is an issue that should be considered, if at all, at the Confirmation Hearing. See id., at 422 (stating that disapproval of disclosure statement based on confirmation objections "is discretionary and must be used carefully so as not to convert the disclosure statement hearing into a confirmation hearing, and to insure that due process concerns are protected.").

*(b) The Debtors Are Not Required to Demonstrate Whether the Amended Plan Can Be Confirmed at the Disclosure Statement Hearing*

8. It is widely acknowledged that the disclosure statement hearing should not be converted into a premature hearing on plan confirmation. See, e.g., In re U.S. Brass Corp., 194

5

B.R. at 422 (court must be careful so as not to convert disclosure statement hearing into confirmation hearing); In re Cardinal Congregate I, 121 B.R. at 763-64 (objections to, inter alia, classification, treatment of claims, and protection of creditor interests properly addressed at confirmation hearing); In re Dakota Rail, Inc., 104 B.R. at 144 (whether plan could be confirmed without violating Absolute Priority Rule was not ripe for determination at disclosure statement hearing). Approval of a disclosure statement is an interlocutory action in the course of a chapter 11 reorganization leading to a confirmation hearing at which all parties have ample opportunity to object to confirmation of the plan. In re Waterville Timeshare Group, 67 B.R. 412, 413 (Bankr. D.N.H. 1986); see also Abel v. Shugrue (In re Ionosphere Clubs, Inc.), 179 B.R. 24, 26-27 (S.D.N.Y. 1995) (almost without exception, courts have found that orders approving disclosure statements are interlocutory); In re Copy Crafters Quickprint, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) ("[C]are must be taken to ensure that the hearing on the disclosure statement does not turn into a confirmation hearing").

9. The Court's focus should be on the adequacy of, and the probability that a hypothetical investor can make an informed judgment based on, the information provided in the disclosure statement. As one court has noted:

> If the creditors oppose their treatment in the plan, but the Disclosure Statement contains adequate information, issues respecting the plan's confirmability will await the hearing on confirmation. Therefore, the Debtor need not obtain creditors' approval of the plan; it need only provide them with adequate information as that term is defined in 11 U.S.C. § 1125(a)(1).

In re Scioto Valley Mortgage Co., 88 B.R. 168, 172 (Bankr. S.D. Ohio 1988). The Amended Disclosure Statement contains adequate information for purposes of soliciting votes to accept or reject the Amended Plan.

10. The Debtors will be prepared at the confirmation hearing to respond to any objections directed at the confirmability of the Amended Plan. Until such time, these objections are premature. See, e.g., In re Cardinal Congregate I, 121 B.R. at 764 ("The objections raised as to the confirmability of the [Plan] may or may not ultimately be found meritorious; however, the Court will not determine such objections and the related issues at this juncture."); In re Dakota Rail, Inc., 104 B.R. at 144 (whether plan could be confirmed without violating Absolute Priority Rule was not ripe for determination at disclosure statement hearing).

## II. The Amended Disclosure Statement Contains Adequate Information Within the Meaning of Section 1125 of the Bankruptcy Code.

11. Nearly all of the alleged infirmities raised by the Objections focus on a single issue—valuation. While raised as objections to the Original Disclosure Statement, such objections are confirmation objections and, as stated above, should be deferred until the appropriate time—the Confirmation Hearing. Indeed, the Bankruptcy Code does not require a disclosure statement to contain a valuation of the debtor or an appraisal of its assets. See 11 U.S.C. § 1125(b) ("The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets."). The Objectors have voiced their opposition to the Debtors' plan to reorganize their businesses and emerge from chapter 11 while only providing holders of Class 9(a) Equity Interests with Warrants. No level of disclosure will resolve the divergence in the fundamental views of the Debtors and the Objectors as to the Debtors' total enterprise value. The Debtors have disclosed the fact that the Objectors dispute the Debtors' valuation, and the Objectors will have a full and fair opportunity to litigate this issue, if it remains, at the Confirmation Hearing.

12. As set forth on <u>Exhibit A</u> attached hereto, the Debtors have made certain changes to the Original Disclosure Statement to provide additional disclosures, where appropriate, to

7
DB02:9130529.6
068125.1001

respond to the Objections and as a result of the plan amendments embodied in the Amended Plan and Amended Disclosure Statement. For the reasons more fully set forth on <u>Exhibit A</u>, any issues raised by the Objections that actually relate to the Debtors' disclosures—rather than the Debtors' valuation—have been adequately addressed.

13. The Amended Disclosure Statement provides adequate disclosures and information to allow parties entitled to vote on the Amended Plan to evaluate the Debtors' proposed restructuring and such parties' treatment under the Amended Plan and to ultimately make an informed decision on whether to accept or reject the Amended Plan. Therefore, the Objections should be overruled because the Amended Disclosure Statement satisfies section 1125 of the Bankruptcy Code in all respects.

## RESERVATION OF RIGHTS

14. The Debtors reserve their rights to amend, modify or supplement this Reply and to address at the Disclosure Statement Hearing any issues raised by parties in opposition to approval of the Original Disclosure Statement and the Amended Disclosure Statement, whether or not such matters have been addressed herein. Further, the Debtors reserve the right to further amend the Amended Disclosure Statement to address any objections with respect to the approval of the adequacy of the Amended Disclosure Statement.

WHEREFORE, the Debtors respectfully request that this Court (i) overrule the Objections, (ii) approve the Amended Disclosure Statement as containing adequate information and (iii) grant such other relief as is just and appropriate.

Dated: Wilmington, Delaware
January 12, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/

James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Matthew B. Lunn (No. 4119)
Ryan M. Bartley (No. 4985)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

*Counsel to the Debtors and Debtors in Possession*

# EXHIBIT A

**Chart of Responses to the Objection**

| Purported Inadequacy of the Disclosure Statement | |
|---|---|
| **Objection** | **Response and/or Status** |
| 1. The Disclosure Statement fails to discuss key litigation and its effect on the value of the estate. (Shirley DS Obj., at "Preliminary Statement," p. 2 and ¶ 18). | While the Debtors believe that the information in the Original Disclosure Statement was sufficient, the Debtors have nonetheless included further information as to the current status of the litigation and the amount the Debtors asserted in the complaint. See Amended Disclosure Statement, at Art. V. |
| 2. The Disclosure Statement contains insufficient information regarding Houlihan Lokey's preparation of its valuation analysis to determine that the Debtors are insolvent, including what relative percentages Houlihan Lokey attributed to its three valuation methodologies, what comparable companies and precedent transactions were used, what, if any, discounts Houlihan Lokey used in preparing its analysis, and what assumptions and values were used by Houlihan Lokey in preparing its discounted cash flow analysis. (Shirley DS Obj., at ¶ 11). | The level of detail regarding the valuation analysis and conclusions meets and, in many instances, exceeds the level of detail contained in other disclosure statements approved by the Court. The type of information Mr. Shirley requests be included is typically requested through the formal discovery process in connection with a confirmation hearing. Moreover, such information is of a nature that would not enable the typical person to make an informed decision as to whether to vote to accept or reject the Plan.<br><br>The Debtors believe that the Original Disclosure Statement contained more than adequate information with respect to the valuation analysis and conclusion, especially in light of section 1125(b) of the Bankruptcy Code which allows the Court to "approve a disclosure statement without a valuation of the debtor." 11 U.S.C. § 1125(b). The Debtors, however, have determined to include additional information with respect to the valuation analysis and conclusion, including, the weighting of the three valuation methodologies in determining their valuation, the company used for the comparable company analysis, and the parameters applicable to the Debtors precedent transaction analysis. See Amended Disclosure Statement, at Art. X. |

## Purported Inadequacy of the Disclosure Statement

| | Objection | Response and/or Status |
|---|---|---|
| 3. | The Disclosure Statement fails to disclose sufficient information with respect to the Warrants, including, among other things, that the Warrants may be cancelled. (Shirley DS Obj., at ¶ 12, 13). | The Debtors believe that the Amended Disclosure Statement contains adequate information as the Plan, which is attached to the Amended Disclosure Statement and includes the Warrant Term Sheet attached as Exhibit C. The Warrant Term Sheet contains sufficient information as it provides, among other things, the number of Warrants, the exercise price, duration, exercise mechanism, absence of registration rights and anti-dilution provision. The Debtors have included in the Amended Disclosure Statement an explanation as to why the Warrants have not been valued by the Debtors, (see Disclosure Statement, at Art. II (note 3)) and highlighted that holders of Class 9(a) Equity Interests may not receive the Warrants even if they vote to accept the Plan. See Amended Disclosure Statement, at Art. VII(B)(5)(j). |
| 4. | The Disclosure Statement fails to disclose whether, if the Court determines that the distributions to unsecured creditors under the Plan result in payment to unsecured creditors of more than 100%, (a) the equity issued under the Plan to unsecured creditors in excess of the full amount of their claim will be distributed to holders of Class 9(a) Equity Interest, and (b) the Backstop Commitment Agreement will remain binding. (Shirley DS Obj., at ¶ 14). | Mr. Shirley misreads the provision. The provision of the Original Plan is intended to deal with circumstances where an entity holds claims against multiple Debtors. The Debtors, nonetheless, have amended the Original Plan to clarify holders of Claims are not entitled to receive a distribution of more than 100% of their Allowed Claim. Further, the Amended Plan is premised on a valuation in which the Equity Interests are out of the money. The Debtors do not intend to provide for a reallocation of equity mechanism. Accordingly, to the extent that the Court determines that the Debtors failed to meet the requirements of section 1129 of the Bankruptcy Code, the Amended Plan cannot be confirmed without further being amended. |

## Purported Inadequacy of the Disclosure Statement

| Objection | Response and/or Status |
|---|---|
| 5. The Disclosure Statement fails to disclose the trading levels of the Prepetition Unsecured Notes and the relationship of trading levels in the Prepetition Unsecured Notes to the Debtors' enterprise value. (Shirley DS Obj., at ¶ 15). | The type of information Mr. Shirley requests is not typically included in a disclosure statement as the information is unreliable. In fact, the Debtors are not aware of any disclosure statement that contains that type of information. The Prepetition Unsecured Notes are not traded on a national exchange resulting in the inability to accurately verify trading information. Even if the Debtors were able to verify trade prices, quantity and timing, there are a variety of reasons why an entity trades in notes at a certain price point and at a given time. Put differently, because of the inherent unreliability of the trading information for the Prepetition Unsecured Notes, the trading level of the Prepetition Unsecured Notes has no effect on the Debtors' valuation analysis. Accordingly, the inclusion of such information is not required or necessary to comply with section 1125 of the Bankruptcy Code. |

| Purported Inadequacy of the Disclosure Statement | |
|---|---|
| **Objection** | **Response and/or Status** |
| 6. The Disclosure Statement fails to disclose that holders of the Prepetition Unsecured Note Claims are entitled to share in the Noteholders New Equity. (Shirley DS Obj., at ¶ 16). | The Amended Disclosure Statement states that parties purchasing Senior Secured Notes (which parties are limited to holders of Prepetition Unsecured Notes) receive their pro rata share of the Noteholder New Equity (see Amended Disclosure Statement, at Art. VII(D)(1)(b). To the extent that the Objectors contend that the holders of Prepetition Unsecured Note Claims who do not participate in the Senior Secured Notes Offering are entitled, as a matter of right, to their pro rata share of the Noteholder New Equity, this assertion is incorrect. Only parties who actually participate in the Senior Secured Notes Offering, by purchasing Senior Secured Notes, are entitled to receive their pro rata share of the Noteholder New Equity.<br><br>Sufficient disclosure regarding who is entitled to share in the Noteholder New Equity and on what conditions was provided in the Original Disclosure Statement. Accordingly, the Debtors believe that the Amended Disclosure Statement contains adequate information. |
| 7. The Disclosure Statement fails to disclose why participation in the Senior Secured Notes Offering is limited to the holders of Prepetition Unsecured Note Claims. (Shirley DS Obj., at ¶ 16). | The Original Disclosure Statement already provided that participation in the Senior Secured Notes Offering was determined by the Backstop Purchasers as part of their offer to backstop the Senior Secured Notes Offering. The Debtors have included additional language in the Amended Disclosure Statement to clarify that only holders of the Prepetition Unsecured Notes are entitled to participate in the Senior Secured Notes Offering. See Amended Disclosure Statement, at Art. VI(M). Accordingly, the Amended Disclosure Statement contains adequate information. |

DB02:9135207.3

068125.1001

| Purported Inadequacy of the Disclosure Statement | |
|---|---|
| Objection | Response and/or Status |
| 8. The Disclosure Statement should disclose that Mr. Shirley has made a request to the United States Trustee to appoint an official committee of equity holders (an "Equity Committee"). (Shirley DS Obj., at ¶ 17). | The Debtors have included a provision in the Amended Disclosure Statement that Mr. Shirley has requested the appointment of an equity committee. See Amended Disclosure Statement, at Art. VI(D). Accordingly, the Debtors believe that this issue as to adequate information is moot. |
| 9. The Disclosure Statement should disclose that Mr. Shirley and certain other equity holders in ARE Holdings dispute the Debtors' valuation and may argue at confirmation that the Debtors' valuation is inaccurate and results in the payment of certain creditors more than 100% of their claims. (Shirley DS Obj., at ¶ 17). | The Debtors have included a provision in the Amended Disclosure Statement that Mr. Shirley disputes the Debtors' valuation analysis and conclusion and that his valuation is the basis for the request to the Office of the United States Trustee for the appointment of an official committee of equity security holders. See Amended Disclosure Statement, at Art. VI(D). Accordingly, the Debtors believe that this issue as to adequate information is moot. |
| 10. The Disclosure Statement fails to discuss what effect, if any, the Debtors believe that the substantive consolidation and merger of ARE LLC into ARE Holdings will have on holders of Equity Interests. (Shirley DS Obj., at ¶ 19) | The Debtors do not believe that substantive consideration will affect the distributions under the Plan to holders of Allowed Class 9(a) Equity Interests and have provided as such in the Amended Disclosure Statement. See Amended Disclosure Statement, at Art. VII(D)(3). Accordingly, the Debtors believe that this issue as to adequate information is moot. |