# EXHIBIT E

## Secured Notes Offering Procedures

To:     Holders of Pre-Petition Claims Relating to the 10% Senior Notes Referenced Below

From:   Aventine Renewable Energy Holdings, Inc.

Re:     Commitments with respect to the proposed Aventine Senior Secured Notes

Date:   January [●], 2010

---

You are receiving this notice (this "Notice") and these procedures (including the attached exhibits, and together with the Notice, the "Procedures") in your capacity as a holder of a pre-petition claim (a "Pre-Petition Noteholder") with respect to the 10% Senior Notes due 2017 ("Pre-Petition Notes") of Aventine Renewable Energy Holdings, Inc. (the "ARE Holdings, Inc.").

*Senior Secured Notes*

In connection with and upon the emergence of ARE Holdings, Inc. and certain of its affiliates (collectively, the "Debtors") from Chapter 11 proceedings pursuant to a confirmed plan of reorganization (the "Plan"), reorganized ARE Holdings, Inc. (the "Issuer") expects to offer and sell (the "Offering") no less than $105,000,000 in aggregate principal amount (the "Offering Amount") of its senior secured notes (the "Senior Secured Notes") and shares of the Issuer's common stock issued pursuant to the Plan ("New Equity") in an amount equal to 20% of the New Equity outstanding on the effective date of the Plan ("Noteholder New Equity"), subject to dilution by (i) any stock awards issued on or after the effective date of the Plan (the "Effective Date") and (ii) the exercise of any warrants issued pursuant to the Plan. The proposed Offering will be made (1) on a pro rata basis to each Pre-Petition Noteholder which certifies its status as either a Qualified Institutional Buyer or Accredited Investor pursuant to Section 4 of the Subscription Form attached hereto as Exhibit A (each an "Eligible Offeree") and (2) to the extent less than all of the Senior Secured Notes and the Noteholder New Equity are issued to the Pre-Petition Noteholders, to certain Pre-Petition Noteholders who have agreed to backstop the Offering (the "Backstop Purchasers") pursuant to that certain commitment letter agreement dated on or about December 3, 2009 among the Backstop Purchasers and ARE Holdings, Inc. (the "Backstop Commitment Agreement"), and will be substantially on the terms described in the Plan. The Senior Secured Notes and the Noteholder New Equity will be offered together in units (each, a "Unit") and may not be purchased separately. Each Unit, consisting of $1,000 in face amount of Senior Secured Notes and a pro rata portion of the Noteholder New Equity, will be issued and sold for an aggregate cash consideration of $952.38. For a more detailed description of the terms of the proposed Offering, please see the Plan.

*Invitation*

This Notice constitutes an invitation to holders of record (or purchasers party to binding trade confirms not yet settled (the "Unsettled Trades")) of Pre-Petition Notes as of 5:00 p.m., New York time, constituting an Eligible Offeree on the deadline to vote on the Plan, which the Debtors anticipate will be February 17, 2010 (the "Subscription Deadline") (such holders and

purchasers party to Unsettled Trades, collectively, the "Eligible Subscribers") to subscribe for and purchase in the Offering (such holdings and Unsettled Trades, collectively, the "Eligible Holdings") their pro rata portion of the Units, subject to the conditions set forth in this Notice and these Procedures.

**If you have entered into an Unsettled Trade with respect to Pre-Petition Notes, we urge you to distribute this Notice and the Procedures to the counterparty to such Unsettled Trade. Until we receive notice of an Unsettled Trade with respect to Pre-Petition Notes, we have no way of knowing the counterparties to such Unsettled Trade, and thus we cannot distribute this Notice and the Procedures to such counterparty.**

In order to subscribe for and purchase Units in the proposed Offering, the Eligible Subscriber and/or its Affiliates[1] must be the holder of record of Pre-Petition Notes or a purchaser party to Unsettled Trades, as applicable, as of the Subscription Deadline. Eligible Subscribers will need to certify their holdings of Pre-Petition Notes and the amount of Unsettled Trades as of the Subscription Deadline. The rights of each Eligible Subscriber to participate in the Offering are not transferable. Any such transfer or attempted transfer shall be null and void, and no purported transferee shall be treated as the holder of any rights to participate in the Offering. Once an Eligible Subscriber has properly delivered its Subscription Form, such exercise cannot be revoked, rescinded or modified.

In order for an Eligible Subscriber to subscribe for and purchase Units in the proposed Offering, it must deliver (1) an executed Subscription Form, in the form attached hereto as Exhibit A (a "Subscription Form"), (2) original executed copies of the tax document required by the Subscription Form, and (3) to the extent required to resolve any discrepancy with respect to Eligible Holdings relating to Unsettled Trades, documents reasonably satisfactory to the Debtors to confirm the entry into, and the principal amount of Pre-Petition Notes subject to, Unsettled Trades, in each case, before 5:00 p.m. Eastern time on the Subscription Deadline. Subscription Forms must be submitted in the prescribed form without alteration. The Debtors have the right to reject any Subscription Form, in their reasonable discretion, which does not conform or is not properly completed and executed or does not include all additional documentation and deliveries required thereby. Executed Subscription Forms must be delivered to the Debtors via email or fax no later than the Subscription Deadline of 5:00 p.m., New York time, on February 17, 2010 as follows:

Address:    [●]
Fax:        [●]
Email:      [●]
Attention:  [●]

If the Debtors for any reason do not receive from a given Eligible Subscriber a duly completed Subscription Form on or prior to the Subscription Deadline in accordance with these Procedures, such Eligible Subscriber shall be deemed to have relinquished and waived its right to participate in the Offering.

---

[1] For purposes of this Notice and the Procedures, the term Affiliates shall additionally include commonly advised or managed funds.

2

NONE OF THE DEBTORS OR THE BACKSTOP PURCHASERS NOR ANY AGENT ACTING ON OUR OR THEIR BEHALF MAKES ANY RECOMMENDATION AS TO WHETHER OR NOT ELIGIBLE SUBSCRIBERS SHOULD ACCEPT THIS INVITATION TO SUBSCRIBE FOR UNITS IN THE PROPOSED OFFERING. EACH ELIGIBLE SUBSCRIBER MUST MAKE ITS OWN DECISION AS TO WHETHER IT WILL SUBSCRIBE FOR UNITS. ELIGIBLE SUBSCRIBERS SHOULD CONSULT THEIR OWN ADVISORS AS TO WHETHER THEY SHOULD SUBSCRIBE FOR UNITS.

*Subscription in the Proposed Offering*

The Subscription Form attached hereto as Exhibit A requires that each Eligible Subscriber commit to subscribe for its "Subscription Amount". The Subscription Amount with respect to any Eligible Offeree shall be the product of (1) the Offering Amount and (2) the percentage determined by dividing (a) the aggregate principal amount of Pre-Petition Notes held by such Eligible Offeree by (b) the aggregate principal amount of all Pre-Petition Notes outstanding as of the Petition Date.

*Allocation of Units*

Following the Subscription Deadline, each Eligible Subscriber will be allocated its Subscription Amount. If the proposed Offering is not fully subscribed by close of business on the Subscription Deadline, each Backstop Purchaser will purchase its respective Commitment Percentage (as defined in the term sheet relating to the Senior Secured Notes) of the Units not purchased by Eligible Offerees.

*Allocation and Settlement Procedure*

Allocations of the Units will be made ratably among the Eligible Offerees substantially in accordance with this Notice and the Procedures. The Debtors will provide notice of such allocations (a "Preliminary Allocation Notice") to each Eligible Subscriber that elects to participate in the proposed Offering. Allocations will be based on executed Subscription Forms meeting the terms set forth in this Notice and the Procedures. Preliminary Allocation Notices will be sent to participants as soon as reasonably practicable after the Subscription Deadline (the "Allocation Date"). The Allocation Date is expected to be on the third Business Day following the Subscription Deadline. The Preliminary Allocation Notices shall set forth, among other things, wire transfer instructions and the full amount of the Eligible Subscriber's allocation in the proposed Offering. Preliminary allocation amounts are subject to change. Each Eligible Subscriber shall submit its full amount of the Eligible Subscriber's allocation in the proposed Offering (the "Allocated Funding Amount") in immediately available funds no later than the close of business on the Business Day immediately prior to the Effective Date (the "Funding Date"). If the Debtors for any reason do not receive from a given Eligible Subscriber its Allocated Funding Amount in immediately available funds on or prior to the Funding Date, such Eligible Subscriber shall be deemed to have relinquished and waived its right to participate in the Offering. As promptly as reasonably practicable following the Funding Date, each Eligible Subscriber will receive notice of such Eligible Subscriber's final Allocated Funding Amount.

3

*Exemption from Registration under the Securities Act*

The Offering is being made to Eligible Subscribers only. It is the intention of the Debtors that the Senior Secured Notes and the Noteholder New Equity issued pursuant to the Offering to the Eligible Subscribers shall be exempt from registration under the Securities Act of 1933, as amended (the "Securities Act"), by virtue of one or more available exemptions therefrom provided under the Securities Act, including, without limitation, by virtue of section 4(2) thereof. Unlike the New Equity issued to holders of general unsecured claims against the Debtors, the Noteholder New Equity and the Senior Secured Notes issued to the Eligible Subscribers pursuant to the Offering will not be exempt from registration under the Securities Act by virtue of section 1145 of the Bankruptcy Code.

*Tax and Other Requirements*

Subscribers will be required to provide to the Debtors and the Backstop Purchasers documentation reasonably requested by the Debtors and the Backstop Purchasers to establish satisfaction of ownership requirements with respect to the Pre-Petition Notes. Failure to satisfy such requirements or timely provide such documentation may result in a failure to receive an allocation in the proposed Offering or the rescission of any outstanding allocation.

Prospective subscribers should discuss the tax implications of a subscription with their own tax advisors.

*Validity of Exercise of Subscription Rights*

All questions concerning the timeliness, viability, form and eligibility of any exercise of subscription rights of an Eligible Subscriber shall be determined by the Debtors, whose good faith determinations shall be final and binding. The Debtors, in their discretion, may waive any defect or irregularity, or permit a defect or irregularity to be corrected within such times as they may determine, or reject the purported exercise of any Eligible Subscriber's subscription rights hereunder. Subscription Forms shall be deemed not to have been received or accepted until all irregularities have been waived or cured within such time as the Debtors determine in their discretion. The Debtors shall use commercially reasonable efforts to give notice to any Eligible Subscribers regarding any defect or irregularity in connection with any purported exercise of subscription rights hereunder by such subscriber and, may permit such defect or irregularity to be cured within such time as they may determine in good faith to be appropriate; provided, however, that the Debtors and the Backstop Purchasers shall not incur any liability for failure to give such notification.

*Indemnification of Backstop Purchasers*

Pursuant to the Backstop Commitment Agreement, the Debtors or the Issuer, as the case may be, have agreed to indemnify and hold harmless the Backstop Purchasers and their affiliates and each of their respective directors, officers, partners, members, representatives, employees, agents, attorneys, financial advisors, restructuring advisors and other professional advisors, each of the foregoing solely in their capacities as such with respect to the transactions contemplated by the Backstop Commitment Agreement (each an "Indemnified Person") from and against any and all losses, claims, damages, liabilities and expenses, joint or several, to which any such Indemnified Person may incur, have asserted against it or be involved in as a result of or arising

4

out of or in any way related to the Backstop Commitment Agreement, the Backstop Commitment, the Offering, the Plan, the use of proceeds of the Senior Secured Notes or any related transaction or any claim, litigation, investigation or proceeding relating to any of the foregoing, regardless of whether any of such Indemnified Persons is a party thereto, and to reimburse each of such Indemnified Persons within 10 days after demand for any reasonable legal or other expenses incurred in connection with any of the foregoing; provided, however, that the foregoing indemnity shall not, as to any Indemnified Person, apply to losses, claims, damages, liabilities or related expenses to the extent they have resulted from the bad faith, willful misconduct or gross negligence of such Indemnified Person.

Notwithstanding any other provision to the contrary, no Indemnified Person shall be liable to the Debtors or their estates for any special, indirect, consequential or punitive damages in connection with its activities related to the Backstop Commitment Letter, the Backstop Commitment, the Offering, the Plan or the use of proceeds of the Senior Secured Notes. The terms set forth in this indemnification section shall survive termination of the Backstop Commitment Letter and shall remain in full force and effect regardless of whether the Offering is consummated.

The terms set forth in this indemnification section shall survive termination of the Backstop Commitment Letter and shall remain in full force and effect regardless of whether the Offering is consummated.

*Potential Change in Procedures*

The Debtors, subject to the consent of the Backstop Purchasers, reserve the right, but will not be obligated, at any time and from time to time, to extend the offer described herein beyond the dates noted herein and to amend the offer and the procedures described herein. The Debtors, subject to the consent of the Backstop Purchasers, will provide you notice of any extension, waiver, material amendment or termination of the Notice and the Procedures.

*Questions*

If you have any questions regarding the proposed Offering, please contact any of the following people at [●]:

[●]
Phone: [●]
Email: [●]

[●]
Phone: [●]
Email: [●]

Thank you for your consideration.

**EXHIBIT A**

# SUBSCRIPTION FORM

## REORGANIZED AVENTINE RENEWABLE ENERGY HOLDINGS, INC.

To: [●]
    Email: [●]
    Fax: [●]
    Attn: [●]

From: Electing Eligible Subscriber identified below

Date: [●], 2009

## Section 1 –Election Amount

Eligible Holdings, excluding Unsettled Traded (with respect to itself and all Affiliates):[2]  $_____

Eligible Holdings with respect to Unsettled Trades  $_____

Name of counterparty with respect to Unsettled Trades set forth above:

Total Eligible Holdings (with respect to itself and all Affiliates) (Pre-Petition Notes Eligible Holdings plus Unsettled Trades)  $_____

Subscription Amount

(Offering Amount x (Total Eligible Holdings divided by $[●]))  $_____

If all or a portion of the holdings listed above is held by Affiliates of the prospective purchaser, please provide the amount held by each Affiliate:

| Affiliate Name | Principal Amount |
|---|---|
| | |
| | |

---

[2] Once this Subscription Form is submitted, such amount may not be transferred or, with respect to Unsettled Trades, terminated until after the Subscription Deadline.

If all or a portion of the holdings listed above are on account of Unsettled Trades, please provide the name of the record holder of the applicable Pre-Petition Notes:

| Name of Record Holder | Principal Amount |
|---|---|
|  |  |
|  |  |
|  |  |

By executing this Subscription Form, the undersigned directs the trustee under the Pre-Petition Notes to provide to the Debtor and the Backstop Purchasers any purchaser information requested by the Debtor and the Backstop Purchasers.

**Section 2 – Administrative Details**

Issuer Information
Reorganized Aventine Renewable Energy Holdings, Inc.
120 North Parkway Drive
Pekin, IL 61554

Issuer Wire Instructions
[●]
[●]
Account Name: [●]
Number: [●]

It is very important that all of the requested information be completed accurately and that this Subscription Form be returned promptly. If your institution is sub-allocating its allocation, please fill out a Subscription Form for each legal entity.

Legal Name of purchaser to appear in documentation (include all Affiliates proposed to hold all or a portion of the Units):

| Legal Name of Record Holder | Principal Amount |
|---|---|
|  |  |

Signature Block Information: _____

Type of Entity: _____

(Bank, Asset Manager, Broker/Dealer, CLO/CDO; Finance Company, Hedge Fund, Insurance, Mutual Fund, Pension Fund, Other Regulated Investment Fund, Special Purpose Vehicle, Other- please specify)

Purchaser Parent (if applicable): _____

Purchaser Domestic Address

_____

|  | Contacts/Notification Methods | |
|---|---|---|
|  | Primary Contact | Secondary Contact |
| Name: | | |
| Company: | | |
| Title: | | |
| Address: | | |
| Telephone: | | |
| Facsimile: | | |
| E-Mail Address: | | |

### Section 3 – Tax Documents

NON-U.S. PURCHASERS:

*I.    Corporations*:

If your institution is incorporated outside of the United States for U.S. federal income tax purposes, and is the beneficial owner of the interest and other income it receives, you must complete one of the following two tax forms, as applicable to your institution: *a.) Form W-8BEN (Certificate of Foreign Status of Beneficial Owner)* or *b.) Form W-8ECI (Income Effectively Connected to a U.S. Trade or Business)*, in each case claiming complete exemption from U.S. federal withholding tax.

If your institution is claiming complete exemption from U.S. federal withholding tax under Section 871(h) or 881(c) of the Internal Revenue Code of 1986, as amended, with respect to payments of "portfolio interest", you must complete the following two tax forms: *a.) Exhibit G (Non-Bank Certificate)* and *b.) Form W-8BEN (Certificate of Foreign Status of Beneficial Owner)*.

A U.S. taxpayer identification number is required for any institution submitting Form W-8ECI. It is also required on Form W-8BEN for certain institutions claiming the benefits of a tax treaty with the U.S. Please refer to the instructions when completing the form applicable to your

8

DB02:9065239.1                                                                                                          068125.1001

institution. In addition, please be advised that U.S. tax regulations do not permit the acceptance of faxed forms. **An original tax form must be submitted.**

II.  *Flow-Through Entities*:

If your institution is organized outside the U.S., and is classified for U.S. federal income tax purposes as either a Partnership, Trust, Qualified or Non-Qualified Intermediary, or other non-U.S. flow-through entity, an original *Form W-8IMY (Certificate of Foreign Intermediary, Foreign Flow-Through Entity, or Certain US. Branches for United States Tax Withholding)* must be completed by the intermediary together with a withholding statement claiming complete exemption from U.S. federal withholding tax. Flow-through entities other than Qualified Intermediaries are required to include tax forms for each of the underlying beneficial owners.

Please refer to the instructions when completing this form. In addition, please be advised that U.S. tax regulations do not permit the acceptance of faxed forms. **Original tax form(s) must be submitted.**

U.S. PURCHASERS:

If your institution is incorporated or organized <u>within</u> the United States, you must complete and return *Form W-9 (Request for Taxpayer Identification Number and Certification)*. Please be advised that we request that you submit an original Form W-9.

**[The applicable tax form for your institution must be completed and returned on or before [●]].** Failure to provide the proper tax form when requested may subject your institution to U.S. tax withholding.

**Section 4 – Qualified Status**

By executing this Subscription Form, I certify that I am either (check one box):

☐ a "Qualified Institutional Buyer" (as such term is defined in Annex 1 hereto) that is acting for either my own account or accounts of certain Qualified Institutional Buyers; or

☐ an "Accredited Investor" (as such term is defined in Annex 2 hereto) or acting for accounts of certain Accredited Investors.

**Section 5 – Certifications**

By executing this Subscription Form, I certify that (i) I am the holder, or the authorized signatory of the holder, of Pre-Petition Notes in the amounts set forth herein, (ii) I am, or such holder is, entitled to participate in the proposed Offering to the extent of my, or such holder's Subscription Amount indicated under Section 1 above, and (iii) I am, or such holders is, an Eligible Subscriber.

EXECUTED this ____ day of ____, 20__:

PURCHASER NAME:

_____

By: _____
Name: _____
Title: _____

# ANNEX A

"Qualified Institutional Buyer" means:

(1) Any of the following entities, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with the entity:

(a) Any insurance company as defined in Section 2(a)(13) of the Securities Act of 1933, as amended (the "<u>Securities Act</u>");

(b) Any investment company registered under the Investment Company Act of 1940 (the "<u>Investment Company Act</u>") or any business development company as defined in Section 2(a)(48) of the Investment Company Act;

(c) Any small business investment company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958;

(d) Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees;

(e) Any employee benefit plan within the meaning of Title I of the Employee Retirement Income Security Act of 1974;

(f) Any trust fund whose trustee is a bank or trust company and whose participants are exclusively plans of the types identified in subparagraph (1)(d) or (e) above, except trust funds that include as participants individual retirement accounts or H.R. 10 plans;

(g) Any business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940 (the "<u>Investment Advisors Act</u>");

(h) Any organization described in Section 501(c)(3) of the Internal Revenue Code, corporation (other than a bank as defined in Section 3(a)(2) of the Securities Act or a savings and loan association or other institution referenced in Section 3(a)(5)(A) of the Securities Act or a foreign bank or savings and loan association or equivalent institution), partnership, or Massachusetts or similar business trust; or

(i) Any investment adviser registered under the Investment Advisers Act;

(2) Any dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended (the "<u>Exchange Act</u>"), acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $10 million of securities of issuers that are not affiliated with the dealer, provided that securities constituting the whole or a part of an unsold allotment to or subscription by a dealer as a participant in a public offering shall not be deemed to be owned by such dealer;

A-1

DB02:9065239.1                                                                                                                                          068125.1001

(3) Any dealer registered pursuant to Section 15 of the Exchange Act acting in a riskless principal transaction on behalf of a qualified institutional buyer;

(4) Any investment company registered under the Investment Company Act, acting for its own account or for the accounts of other qualified institutional buyers, that is part of a family of investment companies which own in the aggregate at least $100 million in securities of issuers, other than issuers that are affiliated with the investment company or are part of such family of investment companies. "Family of investment companies" means any two or more investment companies registered under the Investment Company Act, except for a unit investment trust whose assets consist solely of shares of one or more registered investment companies, that have the same investment adviser (or, in the case of unit investment trusts, the same depositor), provided that:

(a) Each series of a series company (as defined in Rule 18f-2 under the Investment Company Act) shall be deemed to be a separate investment company; and

(b) Investment companies shall be deemed to have the same adviser (or depositor) if their advisers (or depositors) are majority-owned subsidiaries of the same parent, or if one investment company's adviser (or depositor) is a majority-owned subsidiary of the other investment company's adviser (or depositor);

(5) Any entity, all of the equity owners of which are qualified institutional buyers, acting for its own account or the accounts of other qualified institutional buyers; and

(6) Any bank as defined in Section 3(a)(2) of the Securities Act, any savings and loan association or other institution as referenced in Section 3(a)(5)(A) of the Securities Act, or any foreign bank or savings and loan association or equivalent institution, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with it and that has an audited net worth of at least $25 million as demonstrated in its latest annual financial statements, as of a date not more than 16 months preceding the date of sale under the rule in the case of a U.S. bank or savings and loan association, and not more than 18 months preceding such date of sale for a foreign bank or savings and loan association or equivalent institution.

For purposes of the foregoing definition:

In determining the aggregate amount of securities owned and invested on a discretionary basis by an entity, the following instruments and interests shall be excluded: bank deposit notes and certificates of deposit; loan participations; repurchase agreements; securities owned but subject to a repurchase agreement; and currency, interest rate and commodity swaps.

(1) The aggregate value of securities owned and invested on a discretionary basis by an entity shall be the cost of such securities, except where the entity reports its securities holdings in its financial statements on the basis of their market value, and no current information with respect to the cost of those securities has been published. In the latter event, the securities may be valued at market for purposes of this definition.

DB02:9065239.1    068125.1001

(2) In determining the aggregate amount of securities owned by an entity and invested on a discretionary basis, securities owned by subsidiaries of the entity that are consolidated with the entity in its financial statements prepared in accordance with generally accepted accounting principles may be included if the investments of such subsidiaries are managed under the direction of the entity, except that, unless the entity is a reporting company under Section 13 or 15(d) of the Exchange Act, securities owned by such subsidiaries may not be included if the entity itself is a majority-owned subsidiary that would be included in the consolidated financial statements of another enterprise.

(3) "Riskless principal transaction" means a transaction in which a dealer buys a security from any person and makes a simultaneous offsetting sale of such security to a qualified institutional buyer, including another dealer acting as riskless principal for a qualified institutional buyer.

"Accredited Investor" means:

(1) Any bank as defined in Section 3(a)(2) of the Securities Act, or any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to Section 15 of the Exchange Act; any insurance company as defined in Section 2(a)(13) of the Securities Act; any investment company registered under the Investment Company Act or a business development company as defined in section 2(a)(48) of the Investment Company Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in Section 3(21) of such Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

(2) Any private business development company as defined in Section 202(a)(22) of the Investment Advisers Act;

(3) Any organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(4) Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506(b)(2)(ii) of the Securities Act;

(5) Any entity in which all of the equity owners are Accredited Investors;

(6) Any director or executive officer of the issuer;

(7) Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of purchase exceeds $1,000,000; or

(8) Any natural person with an income in excess of $200,000 during each of the previous two years who reasonably expects to have income in excess of $200,000 during the current year, or joint income with such person's spouse in excess of $300,000 during each of the previous two years and reasonably expects to have joint income in excess of $300,000 during the current year.