# Exhibit D

## Term Sheet for the ABL Credit Facility

# PRELIMINARY MEMORANDUM OF TERMS AND CONDITIONS FOR

# AVENTINE RENEWABLE ENERGY HOLDINGS, INC.

## <u>THIS IS A PROPOSAL ONLY, NOT A COMMITMENT</u>

**Borrower(s):** Aventine Renewable Energy Holdings, Inc. and Subsidiaries (Subject to PNC legal review)

**Guarantor:** To be determined based on final legal structure

**Agent:** PNC Bank, National Association ("PNC")

**Lender:** PNC Bank, National Association ("Bank")

**Purpose:** The proceeds will be used for general working capital purposes upon the exit by Borrower of Chapter 11 under the United States Bankruptcy Code.

**Total Financing:** Up to $20,000,000 in senior secured exit financing.

**Credit Facility:** **Revolving Credit Facility ("Revolver")** of up to $20,000,000.

Advances as follows, with criteria of eligibility and reserves as determined by PNC:
- Up to 85% of Eligible Accounts Receivable aged up to 60 days past due not to exceed 90 days from invoice date, cross aged on the basis of 50% or more past due; plus
- Up to 50% of Eligible Raw, In-Transit Ethanol, and Finished Goods Ethanol Inventories; less
- Specific Reserves identified by PNC from time to time; less
- Availability Block of $2,000,000 at all times.

Sublimits:
(i) Up to $12,000,000 available for Letters of Credit to be fully reserved from availability.
(ii) TBD sublimits for Eligible Raw, In-Transit Ethanol, and Finished Goods Ethanol Inventories.

**Amortization:** Revolver: Available for borrowing and reborrowing until maturity, subject to a borrowing base.

**Maturity:** Three (3) years from the closing date.

4

074658.-0000/30347312v.4

| | |
|---|---|
| **Interest Rates:** | **Revolver:** PNC Base Rate floating plus 3.00% or 30, 60 or 90 day PNC Eurodollar Rate plus 6.00%. |
| | The Borrower shall pay Letter of Credit fees equal to the applicable spread over the PNC Eurodollar Rate on the aggregate face amount of the Letters of Credit issued under the Revolver. In addition, the Borrower shall pay a Letter of Credit fronting fee of 1/4% per annum to the Agent as the fronting bank, payable quarterly in arrears. |
| | The "Base Rate" shall mean, for any day, a fluctuating per annum rate of interest equal to the highest of (i) the interest rate per annum announced from time to time by the Administrative Agent at its Principal Office as its then prime rate, which rate may not be the lowest rate then being charged commercial borrowers by the Administrative Agent, (ii) the Federal Funds Open Rate plus ½ of 1%, and (iii) the one month LIBOR rate plus 100 basis points (1%). Interest on borrowings at the Base Rate is calculated on an actual/360 day basis and is payable monthly |
| | Interest on PNC Eurodollar Rate borrowings is calculated on an actual/360 day basis and is payable the earlier of quarterly or on the last day of each interest rate period. PNC Eurodollar Rate pricing will be adjusted for any statutory reserves. |
| **Default Rate:** | 2% over the applicable rate. |
| **Collateral:** | First priority perfected security interest in all of the Borrower's present and future and where ever located (i) accounts, (ii) inventory, (iii) general intangibles and contract rights in each case pertaining to or arising from accounts and inventory, (iv) investment property and deposit accounts (other than the Indenture collateral account) and Cash Collateral, (v) all rights to the payment of money pertaining to or arising out of Collateral, (vi) instruments pertaining to or arising out of Collateral, (vii) documents, (viii) chattel paper, (ix) licenses, trademarks, trade names, patents, copyrights, license and distribution rights (other than intellectual property necessary to operate the plants), (x) pledge of stock of Borrower(s) and (xi) proceeds of all of the foregoing. "Collateral" shall not include (x) proceeds of pledged stock of a Borrower to the extent attributable to the real property or other non-Collateral assets of such Borrower, (y) accounts arising from the disposition of equipment or real estate or (z) equipment or real estate. |
| **Deposit Fee:** | $50,000 due and payable upon execution of the proposal letter. Such Deposit Fee shall be refundable to the Borrower (less costs and expenses incurred by PNC, including fees and disbursements of outside counsel) only in the event that PNC does not approve this transaction substantially on the terms proposed herein. If the transaction is approved, the unused balance of the deposit fee will be applied to the Closing Fee. |

5

| | |
|---|---|
| **Commitment Fee:** | $250,000 due upon the execution of a commitment letter. The Commitment Fee shall be nonrefundable and applied to the Closing Fee, less expenses incurred, should the transaction close. |
| **Facility Fee:** | 1.00% per annum on the unused portion of the Revolver. This fee shall be calculated on the basis of a 360 day year for the actual number of days elapsed and will be payable monthly in arrears. |
| **Closing Fee:** | 1.50% of the Total Financing due at closing. |
| **Collateral Management Fee:** | $2,500 per month (audits are an additional $850 per man-day plus Expenses). |
| **Prepayment Fee:** | 3.0% of the Total Financing if repaid within one year from the closing date, reducing to 2.0% if repaid within two years, reducing to 1% if repaid within three years. This fee will not apply if the Total Financing is repaid within 90 days prior to maturity. |
| **Expenses:** | All expenses including reasonable legal, accounting, appraisal, audit, searches and the filing and recording of UCC filings and other security interest, and any other expenses in reference to structuring, documenting, underwriting, closing, monitoring or enforcing the agreements shall be for the account of the Borrower. |
| **Conditions Precedent:** | Including, but not limited to, the following |

1) Final terms of (i) the Borrower's plan of reorganization filed with the United States Bankruptcy Court ("POR") and (ii) all orders of the United States Bankruptcy Court approving, implementing or affecting the POR, and this proposal letter, shall be in form and substance reasonably acceptable to PNC.

2) The POR shall have been confirmed by an order entered by the United States Bankruptcy Court (the "Confirmation Order") in form and substance reasonably acceptable to PNC and which has not been stayed by the United States Bankruptcy Court or by any other court having jurisdiction to issue any such stay. The Confirmation Order shall have been entered upon proper notice to all parties to be bound by the POR, all as may be required by the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and any applicable local bankruptcy rules.

3) No material adverse change in the condition, financial or otherwise, operations, properties, assets or prospects of the Borrower or Guarantor.

4) No material threatened or pending litigation or material contingent obligations.

5) Negotiation, execution and delivery of all definitive organizational and financing documents, credit agreements, and evidence of filing of all collateral documents satisfactory to PNC. Documentation to include a satisfactory form of Indenture and other documentation related to the $105,000,000 senior secured notes to be provided by the Backstop Purchasers (as defined in the POR) together with an acceptable Intercreditor Agreement between PNC and the collateral agent on behalf of the holders of the senior secured notes.

6) Satisfactory legal opinions.

7) Evidence that all actions necessary, or in the opinion of PNC desirable, to perfect and protect the security interest of PNC have been taken.

8) Evidence that Borrower is in compliance with all pertinent Federal, State and local regulations including, but not limited to, those with respect to OSHA and ERISA.

9) Satisfactory asset-based field audit to be completed by examiners selected by PNC. The field audit will include a review of the Borrower's books and records, the material customer contracts, the payment history of all major customers, as well as satisfactory trade references.

10) Satisfactory review by the Bank of all other material contracts, including but not limited to, acquisition agreements (specifying sellers representations and warranties), all vendor supply, customer warranty and employment agreements.

11) Borrower to have aggregate minimum excess revolving credit availability and cash at closing of $65,000,000 after fees, expenses, reserve for Letters of Credit, and subtraction of trade payables over 60 days past due not otherwise on formal extended terms. A borrowing base certificate satisfactory to PNC will evidence such availability.

12) Satisfactory receipt and review of (i) annual and interim financial statements, (ii) monthly projections for the first twelve months following closing, and (iii) annual projections for the fiscal years 2010, 2011, and 2012 demonstrating the Borrower's ability to service the proposed financing.

7

13) Customer Remittances: All customers shall be directed to make remittances to a lockbox or blocked account approved and controlled by PNC. Customer remittances shall be credited to the Borrower's account one (1) business day following the business day PNC receives such remittance via check, wire transfer or electronic depository check.

14) Execution and delivery of a satisfactory pledge agreement pursuant to which Borrower has pledged to PNC not less than $5,000,000 which shall be held by PNC as cash collateral (the "Cash Collateral").

**Covenants:** Including but not limited to maintenance of corporate existence, payment on indebtedness and taxes when due, financial reporting requirements, delivery of certificate of non-default, limitation on dividends, distributions and stock repurchases, limitation on capital expenditures, restriction and quality standards with respect to investments, limitation on other debt, limitation on other liens or guarantees, limitation on change of control, no change in nature of business, limitations on mergers or acquisitions, no change in fiscal year, no additional subsidiaries and limitation on the sale of assets.

Other than a limitation on capital expenditures to be agreed upon, there shall not be any financial covenants.

**Events of Default:** Appropriate events of default, including but not limited, to the following:

1) Any non-payment when due of interest and/or principal of any advance, loan or drawing under the Credit Facilities, or any fee thereunder. Payment defaults to include violation of the borrowing base.

2) Any breach of any representation or warranty when made subject to materiality qualifications acceptable to PNC.

3) Any violation in any respect of any affirmative or negative covenant.

4) Any of the security interests or liens granted by the Collateral Documents ceases to be a valid, binding and enforceable first priority security interest.

5) Any default related to other material indebtedness by Borrower, which has continued beyond the grace period or for a period of time sufficient to permit the acceleration of such indebtedness.

6) Any bankruptcy, insolvency, attachment, receivership or similar proceeding shall be instituted by or against Borrower or potential Guarantor.

7) Any judgment for the payment of money in excess of $1,000,000 shall be rendered against Borrower or any Guarantor unless the same shall be contested in good faith, and Borrower or such Guarantor establishes reserves satisfactory to PNC

**Governing Law:** Illinois

074658.-0000/30347312v.4