## Exhibit I

## Corporate Governance Documents for Reorganized Debtors

# <u>Exhibit I-1</u>

**Aventine Renewable Energy Holdings, Inc. Certificate of Incorporation**

**THIRD AMENDED AND RESTATED**
**CERTIFICATE OF INCORPORATION**

**OF**

**AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**

Aventine Renewable Energy Holdings, Inc., a corporation organized and existing under the laws of the State of Delaware, DOES HEREBY CERTIFY AS FOLLOWS:

1.  The name of the Corporation is "Aventine Renewable Energy Holdings, Inc.". The Corporation was originally incorporated under the name "CP RS Holdings, Inc.", and the original certificate of incorporation was filed with the Secretary of State of the State of Delaware on February 10, 2003 and a first amended and restated certificate of incorporation was filed on May 28, 2003 and a second amended and restated certificate of incorporation was filed on December 19, 2005.

2.  This Third Amended and Restated Certificate of Incorporation was duly adopted in accordance with the provisions of Sections 103, 245 and 303 of the General Corporation Law of the State of Delaware in order, among other things, to put into effect and carry out the confirmation order entered by the United States Bankruptcy Court for the District of Delaware on [●], 2010 in the reorganization proceeding styled In re Aventine Renewable Energy Holdings, Inc., *et al.*, Case No. 09-11214(KG), which confirmed the Joint Plan of Reorganization of the Corporation, as amended, filed pursuant to Section 1121(a) of Chapter 11 of Title 11 of the United States Code (the "*Plan*").

3.  This Third Amended and Restated Certificate of Incorporation restates, integrates and further amends the provisions of the amended and restated certificate of incorporation of the Corporation.

4.  The text of the Third Amended and Restated Certificate of Incorporation is hereby restated and amended to read in its entirety as follows:

ARTICLE I
NAME

The name of the corporation is "Aventine Renewable Energy Holdings, Inc." (the "*Corporation*").

ARTICLE II
PURPOSE

The purpose for which the Corporation is organized is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware (the "*DGCL*").

## ARTICLE III
## REGISTERED AGENT

The street address of the registered office of the Corporation in the State of Delaware is 1209 Orange Street in the City of Wilmington, County of New Castle, and the name of the Corporation's registered agent at such address is Corporation Trust Company.

## ARTICLE IV
## CAPITALIZATION

Section 4.1    Authorized Capital Stock.

(a)    The total number of shares of all classes of capital stock that the Corporation is authorized to issue is 20,000,000 shares, consisting of 15,000,000 shares of common stock, par value $0.001 per share (the "*Common Stock*"), and 5,000,000 shares of preferred stock, par value $0.001 per share (the "*Preferred Stock*").

(b)    Notwithstanding any other provision in this Article IV, pursuant to Section 1123(a)(6) of Chapter 11 of Title 11 of the United States Code, the Corporation will not issue non-voting equity securities (which shall not be deemed to include any warrants or options to purchase capital stock of the Corporation); *provided, however*, that this provision (1) will have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (2) will have such force and effect, if any, only for so long as such section is in effect and applicable to the Corporation or any of its wholly-owned subsidiaries and (3) in all events may be amended or eliminated in accordance with applicable law as from time to time in effect.

Section 4.2    Preferred Stock.

(a)    The Preferred Stock may be issued from time to time in one or more series. The Board of Directors (the "*Board*") is hereby expressly authorized to provide for the issuance of shares of Preferred Stock in one or more series and to establish from time to time the number of shares to be included in each such series and to fix the voting powers, if any, designations, powers, preferences and relative, participating, optional and other special rights, if any, of each such series and the qualifications, limitations and restrictions thereof, as shall be stated in the resolution(s) adopted by the Board providing for the issuance of such series and included in a certificate of designations (a "*Preferred Stock Designation*") filed pursuant to the DGCL.

(b)    The number of authorized shares of Preferred Stock may be increased or decreased (but not below the number of shares thereof then outstanding) by an amendment to this Certificate adopted by the affirmative vote of the holders of a majority of the outstanding shares of Common Stock, without a vote of the holders of the Preferred Stock, or any series thereof, unless a vote of any such holders of Preferred Stock is required pursuant to another provision of this Certificate (including any Preferred Stock Designation).

Section 4.3    Common Stock.

(a)   The holders of shares of Common Stock shall be entitled to one vote for each such share on each matter properly submitted to the stockholders on which the holders of shares of Common Stock are entitled to vote. Except as otherwise required by law or this Certificate (including any Preferred Stock Designation), at any annual or special meeting of the stockholders the Common Stock shall have the exclusive right to vote for the election of directors and on all other matters properly submitted to a vote of the stockholders.

(b)   Subject to the rights of the holders of Preferred Stock, the holders of shares of Common Stock shall be entitled to receive such dividends and other distributions (payable in cash, property or capital stock of the Corporation) when, as and if declared thereon by the Board from time to time out of any assets or funds of the Corporation legally available therefor and shall share equally on a per share basis in such dividends and distributions.

(c)   In the event of any voluntary or involuntary liquidation, dissolution or winding-up of the Corporation, after payment or provision for payment of the debts and other liabilities of the Corporation, and subject to the rights of the holders of Preferred Stock in respect thereof, the holders of shares of Common Stock shall be entitled to receive all the remaining assets of the Corporation available for distribution to its stockholders, ratably in proportion to the number of shares of Common Stock held by them.

ARTICLE V
BOARD OF DIRECTORS

Section 5.1   Board Powers.

The business and affairs of the Corporation shall be managed by, or under the direction of, the Board. In addition to the powers and authority expressly conferred upon the Board by statute, this Certificate or the bylaws ("*Bylaws*") of the Corporation, the Board is hereby empowered to exercise all such powers and do all such acts and things as may be exercised or done by the Corporation, subject, nevertheless, to the provisions of the DGCL, this Certificate and any Bylaws adopted by the stockholders; *provided, however*, that no Bylaws hereafter adopted by the stockholders shall invalidate any prior act of the Board that would have been valid if such Bylaws had not been adopted.

Section 5.2   Number, Election and Term.

(a)   The number of directors of the Corporation shall be five; provided, however, that the number of directors may be modified from time to time exclusively by the Board pursuant to a resolution adopted by at least 66⅔% of the Whole Board, subject to Section 5.2(c) and Section 5.4, and no decrease in the number of directors constituting the Board of Directors shall shorten the term of any incumbent director. For purposes of this Certificate, "*Whole Board*" shall mean the total number of directors the Corporation would have assuming there are no vacancies.

(b)   The name of each director of the Corporation is as follows:

| Name of Director |
| --- |
| Eugene Davis |
| Thomas L. Manuel |
| Kurt M. Cellar |
| Carney Hawks |
| Doug Silverman |

(c)     Subject to <u>Section 5.5</u> and the immediately following sentence, directors shall be elected at each annual meeting of stockholders and shall hold office until the next annual meeting and until his or her successor has been elected and qualified, subject, however, to such director's earlier death, resignation, retirement, disqualification or removal. Each director of the Corporation named in <u>Section 5.2(b)</u> shall hold office until the annual meeting for 2011 and until his successor has been elected and qualified, subject, however, to such director's earlier death, resignation, retirement, disqualification or removal.

(d)     Unless and except to the extent that the Bylaws shall so require, the election of directors need not be by written ballot.

Section 5.3     <u>Newly Created Directorships and Vacancies</u>.

Subject to <u>Section 5.5</u>, newly created directorships resulting from an increase in the number of directors and any vacancies on the Board resulting from death, resignation, retirement, disqualification, removal or other cause may be filled solely by a majority vote of the directors then in office, even if less than a quorum, or by a sole remaining director (and not by the stockholders), and any director so chosen shall hold office until the next annual election or until his or her successor has been elected and qualified, subject, however, to such director's earlier death, resignation, retirement, disqualification or removal.

Section 5.4     <u>Removal</u>.

Subject to <u>Section 5.5</u>, any or all of the directors may be removed from office at any time, with or without cause by the affirmative vote of holders of a majority of the voting power of all then outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class.

Section 5.5     <u>Preferred Stock – Directors</u>.

Notwithstanding any other provision of this <u>Article V</u>, and except as otherwise required by law, whenever the holders of one or more series of Preferred Stock shall have the right, voting separately by class or series, to elect one or more directors, the term of office, the filling of vacancies, the removal from office and other features of such directorships shall be governed by the terms of such series of Preferred Stock as set forth in this Certificate (including any Preferred Stock Designation).

# ARTICLE VI
## BYLAWS

In furtherance and not in limitation of the powers conferred upon it by law, the Board shall have the power to adopt, amend, alter or repeal the Bylaws. The affirmative vote of a majority of the Whole Board shall be required to adopt, amend, alter or repeal the Bylaws. The Bylaws also may be adopted, amended, altered or repealed by the stockholders; *provided*, *however*, that in addition to any vote of the holders of any class or series of capital stock of the Corporation required by law or by this Certificate, the affirmative vote of the holders of at least a majority of the voting power of all then outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required for the stockholders to adopt, amend, alter or repeal the Bylaws.

# ARTICLE VII
## MEETINGS OF STOCKHOLDERS

Section 7.1    Action by Written Consent.

Except as otherwise expressly provided by the terms of any series of Preferred Stock Designation permitting the holders of such series of Preferred Stock to act by written consent or permitted in this Certificate or by the Bylaws, any action required or permitted to be taken by stockholders of the Corporation must be effected at a duly called annual or special meeting of the stockholders, unless the Board approves in advance of the taking of such action by means of written consent in lieu of a meeting of the stockholders.

Section 7.2    Meetings.

Except as otherwise required by law, special meetings of stockholders of the Corporation may be called only by (i) the Chairman of the Board, (ii) the Chief Executive Officer, (iii) the Board pursuant to a resolution adopted by a majority of the Whole Board, or (iv) a request of the holders of at least a majority of the voting power of all then outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors.

Section 7.3    Advance Notice.

Advance notice of stockholder nominations for the election of directors and of business to be brought by stockholders before any meeting of the stockholders of the Corporation shall be given in the manner provided in the Bylaws.

# ARTICLE VIII
## LIMITED LIABILITY; INDEMNIFICATION

Section 8.1    Limitation of Personal Liability.

No person who is or was a director of the Corporation shall be personally liable to the Corporation or any of its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent such exemption from liability or limitation thereof is not permitted by the DGCL as the same exists or hereafter may be amended. If the DGCL is hereafter

amended to authorize corporate action further limiting or eliminating the liability of directors, then the liability of a director to the Corporation or its stockholders shall be limited or eliminated to the fullest extent permitted by the DGCL, as so amended. Any repeal or amendment of this Section 8.1 by the stockholders of the Corporation or by changes in law, or the adoption of any other provision of this Certificate inconsistent with this Section 8.1 will, unless otherwise required by law, be prospective only (except to the extent such amendment or change in law permits the Corporation to further limit or eliminate the liability of directors) and shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or amendment or adoption of such inconsistent provision with respect to acts or omissions occurring prior to such repeal or amendment or adoption of such inconsistent provision.

Section 8.2    Indemnification.

(a)    Each person who is or was made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "*proceeding*") by reason of the fact that he or she is or was a director or officer of the Corporation or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, limited liability company, joint venture, trust or other enterprise, including service with respect to an employee benefit plan and/or direct or indirect subsidiary (hereinafter a "*Covered Person*"), whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized or permitted by applicable law, as the same exists or may hereafter be amended, against all expense, liability and loss (including, without limitation, attorneys' fees, judgments, fines, ERISA excise taxes and penalties and amounts paid in settlement) reasonably incurred or suffered by such Covered Person in connection with such proceeding, and such right to indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators. The right to indemnification conferred by this Section 8.2 shall be a contract right that shall fully vest at the time the Covered Person first assumes his or her position as a director or officer of the Corporation and shall include the right to be paid by the Corporation the expenses incurred in defending or otherwise participating in any such proceeding in advance of its final disposition, subject to the delivery by such Covered Person of any undertakings, if any, required by the DGCL (as it may be amended or modified from time to time) at such time .

(b)    The rights conferred on any Covered Person by this Section 8.2 shall not be exclusive of any other rights that any Covered Person may have or hereafter acquire under law, this Certificate, the Bylaws, an agreement, vote of stockholders or disinterested directors, or otherwise.

(c)    Any repeal or amendment of this Section 8.2 by the stockholders of the Corporation or by changes in law, or the adoption of any other provision of this

Certificate inconsistent with this Section 8.2, will, unless otherwise required by law, be prospective only (except to the extent such amendment or change in law permits the Corporation to provide broader indemnification rights on a retroactive basis than permitted prior thereto), and will not in any way diminish or adversely affect any right or protection existing at the time of such repeal or amendment or adoption of such inconsistent provision in respect of any act or omission occurring prior to such repeal or amendment or adoption of such inconsistent provision.

(d)     This Section 8.2 shall not limit the right of the Corporation, to the extent and in the manner authorized or permitted by law, to indemnify and to advance expenses to persons other than Covered Persons.

## ARTICLE IX
## AMENDMENT OF CERTIFICATE OF INCORPORATION

The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate, in the manner now or hereafter prescribed by this Certificate and the DGCL; and, except as set forth in Article VIII, all rights, preferences and privileges herein conferred upon stockholders, directors or any other persons by and pursuant to this Certificate in its present form or as hereafter amended are granted subject to the right reserved in this Article; provided, however, that, (i) notwithstanding any other provision of this Certificate, and in addition to any other vote that may be required by law, the affirmative vote of the holders of at least a majority of the voting power of all then outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required to amend, alter or repeal, or adopt any provision as part of this Certificate inconsistent with the purpose and intent of, Section 4.1(b), Article V (with the exception of Section 5.2(a)), Article VI, Article VII or this Article IX and (ii) notwithstanding any other provision of this Certificate, and in addition to any other vote that may be required by law, the affirmative vote of the holders of at least 66⅔% of the shares of all then outstanding shares of Common Stock, voting together as a single class, shall be required (a) to amend, alter or repeal Section 5.2(a), or (b) to alter the approvals required set forth in this clause (ii).

## ARTICLE X
## DGCL SECTION 203

Effective as of the business day immediately following the date on which this Certificate is filed, the Corporation expressly elects to be governed by DGCL Section 203, as amended or modified from time to time.

IN WITNESS WHEREOF, Aventine Renewable Energy Holdings, Inc. has caused this Certificate to be duly executed in its name and on its behalf by its [●] this [●] day of [●], 2010.

AVENTINE RENEWABLE ENERGY
HOLDINGS, INC.


By: _____
        Name: **[●]**
        Title: **[●]**

<u>**Exhibit I-2**</u>

**Aventine Renewable Energy Holdings, Inc. Bylaws**

[SECOND] AMENDED AND RESTATED

BYLAWS

OF

AVENTINE RENEWABLE ENERGY HOLDINGS, INC.,

a Delaware corporation

(the "*Corporation*")

(Adopted as of [●], 2010)

# [SECOND] AMENDED AND RESTATED BYLAWS

## OF

## AVENTINE RENEWABLE ENERGY HOLDINGS, INC.

## ARTICLE I
## OFFICES

**Section 1.1    Registered Office.**  The registered office of the Corporation within the State of Delaware shall be located at 1209 Orange Street in the City of Wilmington, County of New Castle, and the name of the Corporation's registered agent at such address is Corporation Trust Company.

**Section 1.2    Additional Offices.**  The Corporation may, in addition to its registered office in the State of Delaware, have such other offices and places of business, both within and outside the State of Delaware, as the Board of Directors of the Corporation (the "*Board*") may from time to time determine or as the business and affairs of the Corporation may require.

## ARTICLE II
## STOCKHOLDERS MEETINGS

**Section 2.1    Annual Meetings.**  The annual meeting of stockholders shall be held at such place and time and on such date as shall be determined by the Board and stated in the notice of the meeting, provided that the Board may in its sole discretion determine that the meeting shall not be held at any place, but may instead be held solely by means of remote communication pursuant to Section 9.5(a). At each annual meeting, the stockholders shall elect directors of the Corporation and may transact any other business as may properly be brought before the meeting.

**Section 2.2    Special Meetings.**  Except as otherwise required by applicable law or provided in the Corporation's Third Amended and Restated Certificate of Incorporation, as the same may be further amended or restated from time to time (the "*Certificate of Incorporation*"), special meetings of stockholders, for any purpose or purposes, may be called only by (i) the Chairman of the Board, (ii) the Chief Executive Officer, (iii) the Board pursuant to a resolution adopted by a majority of the Whole Board (as defined below), or (iv) a request of the holders of at least a majority of the voting power of all then outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors.  Special meetings of stockholders shall be held at such place and time and on such date as shall be determined by the Board and stated in the Corporation's notice of the meeting, provided that the Board may in its sole discretion determine that the meeting shall not be held at any place, but may instead be held solely by means of remote communication pursuant to Section 9.5(a). "*Whole Board*" shall mean the total number of directors the Corporation would have assuming there are no vacancies.

**Section 2.3    Notices.**  Notice of each stockholders meeting stating the place, if any, date and time of the meeting, the means of remote communication, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such meeting, and the record date for determining the stockholders entitled to vote at the meeting if such date is

different from the record date for determining stockholders entitled to notice of the meeting shall be given in the manner permitted by Section 9.3 to each stockholder entitled to vote thereat as of the record date for determining the stockholders entitled to notice of the meeting. Such notice shall be given by the Corporation not less than 10 nor more than 60 days before the date of the meeting. If said notice is for a stockholders meeting other than an annual meeting, it shall in addition state the purpose or purposes for which the meeting is called, and the business transacted at such meeting shall be limited to the matters so stated in the Corporation's notice of meeting (or any supplement thereto). Any meeting of stockholders as to which notice has been given may be postponed, and any special meeting of stockholders as to which notice has been given may be cancelled, by the Board upon public announcement (as defined in Section 2.7(c)) given before the date previously scheduled for such meeting.

**Section 2.4   Quorum.** Except as otherwise provided by applicable law, the Certificate of Incorporation or these Bylaws, the presence, in person or by proxy, at a stockholders meeting of the holders of shares of outstanding capital stock of the Corporation representing a majority of the voting power of all outstanding shares of capital stock of the Corporation entitled to vote at such meeting shall constitute a quorum for the transaction of business at such meeting, except that when specified business is to be voted on by a class or series of stock voting as a class, the holders of shares representing a majority of the voting power of the outstanding shares of such class or series shall constitute a quorum of such class or series for the transaction of such business. If a quorum shall not be present or represented by proxy at any meeting of the stockholders, the chairman of the meeting may adjourn the meeting from time to time in the manner provided in Section 2.6 until a quorum shall attend. The stockholders present at a duly convened meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum. Shares of its own stock belonging to the Corporation or to another corporation, if a majority of the voting power of the shares entitled to vote in the election of directors of such other corporation is held, directly or indirectly, by the Corporation, shall neither be entitled to vote nor be counted for quorum purposes; provided, however, that the foregoing shall not limit the right of the Corporation or any such other corporation to vote shares held by it in a fiduciary capacity.

**Section 2.5   Voting of Shares.**

(a)   Voting Lists. The Secretary shall prepare, or shall cause the officer or agent who has charge of the stock ledger of the Corporation to prepare, at least 10 days before every meeting of stockholders, a complete list of the stockholders of record entitled to vote at the meeting (provided, however, if the record date for determining the stockholders entitled to vote is less than 10 days before the meeting date, the list shall reflect the stockholders entitled to vote as of the tenth day before the meeting date), arranged in alphabetical order for each class of stock and showing the address and the number of shares registered in the name of each stockholder. Nothing contained in this Section 2.5(a) shall require the Corporation to include electronic mail addresses or other electronic contact information on such list. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours for a period of at least 10 days prior to the meeting: (i) on a reasonably accessible electronic network, provided that the information required to gain access to such list is provided with the notice of the meeting, or (ii) during ordinary business hours, at the principal place of business of the Corporation. If the Corporation determines to make the list available on an

electronic network, the Corporation may take reasonable steps to ensure that such information is available only to stockholders of the Corporation.  If the meeting is to be held at a place, then the list of stockholders entitled to vote at the meeting shall be produced and kept at the time and place of the meeting during the whole time thereof, and may be examined by any stockholder who is present.   If a meeting of stockholders is to be held solely by means of remote communication as permitted by Section 9.5(a), then such list shall be open to the examination of any stockholder during the whole time of the meeting on a reasonably accessible electronic network, and the information required to access such list shall be provided with the notice of meeting.  The stock ledger shall be the only evidence as to who are the stockholders entitled to examine the list required by this Section 2.5(a) or to vote in person or by proxy at any meeting of stockholders.

(b)  Manner of Voting.  At any stockholders meeting, every stockholder entitled to vote may vote in person or by proxy.  If authorized by the Board, the voting by stockholders or proxyholders at any meeting conducted by remote communication may be effected by a ballot submitted by electronic transmission (as defined in Section 9.3), provided that any such electronic transmission must either set forth or be submitted with information from which the Corporation can determine that the electronic transmission was authorized by the stockholder or proxyholder.  The Board, in its discretion, or the chairman of the meeting of stockholders, in such person's discretion, may require that any votes cast at such meeting shall be cast by written ballot.

(c)  Proxies.  Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy, but no such proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period.  Proxies need not be filed with the Secretary of the Corporation until the meeting is called to order, but shall be filed with the Secretary before being voted.  Without limiting the manner in which a stockholder may authorize another person or persons to act for such stockholder as proxy, either of the following shall constitute a valid means by which a stockholder may grant such authority.

(i)  A stockholder may execute a writing authorizing another person or persons to act for such stockholder as proxy.  Execution may be accomplished by the stockholder or such stockholder's authorized officer, director, employee or agent signing such writing or causing such person's signature to be affixed to such writing by any reasonable means, including, but not limited to, by facsimile signature.

(ii)  A stockholder may authorize another person or persons to act for such stockholder as proxy by transmitting or authorizing the transmission of an electronic transmission to the person who will be the holder of the proxy or to a proxy solicitation firm, proxy support service organization or like agent duly authorized by the person who will be the holder of the proxy to receive such transmission, provided that any such electronic transmission must either set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the stockholder.

Any copy, facsimile telecommunication or other reliable reproduction of the writing or transmission authorizing another person or persons to act as proxy for a stockholder may be substituted or used in lieu of the original writing or transmission for any and all purposes for which the original writing or transmission could be used; provided that such copy, facsimile telecommunication or other reproduction shall be a complete reproduction of the entire original writing or transmission.

(d) <u>Required Vote</u>. Subject to the rights of the holders of one or more series of preferred stock of the Corporation ("**Preferred Stock**"), voting separately by class or series, to elect directors pursuant to the terms of one or more series of Preferred Stock, the election of directors shall be determined by a plurality of the votes cast by the stockholders present in person or represented by proxy at the meeting and entitled to vote thereon. All other matters shall be determined by the vote of a majority of the votes cast by the stockholders present in person or represented by proxy at the meeting and entitled to vote thereon, unless the matter is one upon which, by applicable law, the Certificate of Incorporation, these Bylaws or applicable stock exchange rules, a different vote is required, in which case such provision shall govern and control the decision of such matter.

(e) <u>Inspectors of Election</u>. The Board may, and shall if required by law, in advance of any meeting of stockholders, appoint one or more persons as inspectors of election, who may be employees of the Corporation or otherwise serve the Corporation in other capacities, to act at such meeting of stockholders or any adjournment thereof and to make a written report thereof. The Board may appoint one or more persons as alternate inspectors to replace any inspector who fails to act. If no inspectors of election or alternates are appointed by the Board, the chairman of the meeting shall appoint one or more inspectors to act at the meeting. Each inspector, before discharging his or her duties, shall take and sign an oath faithfully to execute the duties of inspector with strict impartiality and according to the best of his or her ability. The inspectors shall ascertain and report the number of outstanding shares and the voting power of each; determine the number of shares present in person or represented by proxy at the meeting and the validity of proxies and ballots; count all votes and ballots and report the results; determine and retain for a reasonable period a record of the disposition of any challenges made to any determination by the inspectors; and certify their determination of the number of shares represented at the meeting and their count of all votes and ballots. No person who is a candidate for an office at an election may serve as an inspector at such election. Each report of an inspector shall be in writing and signed by the inspector or by a majority of them if there is more than one inspector acting at such meeting. If there is more than one inspector, the report of a majority shall be the report of the inspectors.

**Section 2.6    Adjournments**. Any meeting of stockholders, annual or special, may be adjourned by the chairman of the meeting, from time to time, whether or not there is a quorum, to reconvene at the same or some other place. Notice need not be given of any such adjourned meeting if the date, time and place, if any, thereof, and the means of remote communication, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken. At the adjourned meeting the stockholders, or the holders of any class or series of stock entitled to vote separately as a class, as the case may be, may transact any business that might have been transacted at the original meeting. If the adjournment is for more than 30 days, notice of the

adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting. If after the adjournment a new record date for stockholders entitled to vote is fixed for the adjourned meeting, the Board shall fix a new record date for notice of such adjourned meeting in accordance with Section 2.3, and shall give notice of the adjourned meeting to each stockholder of record entitled to vote at such adjourned meeting as of the record date fixed for notice of such adjourned meeting.

**Section 2.7    Advance Notice for Business.**

(a)    Annual Meetings of Stockholders. No business may be transacted at an annual meeting of stockholders, other than business that is either (i) specified in the Corporation's notice of meeting (or any supplement thereto) given by or at the direction of the Board, (ii) otherwise properly brought before the annual meeting by or at the direction of the Board or (iii) otherwise properly brought before the annual meeting by any stockholder of the Corporation (x) who is a stockholder of record on the date of the giving of the notice provided for in this Section 2.7(a) and who is entitled to vote at such annual meeting and (y) who complies with the notice procedures set forth in this Section 2.7(a) (unless such notice procedures are otherwise waived in accordance with Section 2.7(a)(iv)). Except for proposals properly made in accordance with Rule 14a-8 under the Securities Exchange Act of 1934, as amended (the "*Exchange Act*"), and included in the notice of meeting given by or at the direction of the Board, the foregoing clause (iii) shall be the exclusive means for a stockholder to propose business to be brought before an annual meeting of stockholders. Stockholders seeking to nominate persons for election to the Board must comply with Section 3.2, and this Section 2.7 shall not be applicable to nominations.

(i)    In addition to any other applicable requirements, for business (other than nominations) to be properly brought before an annual meeting by a stockholder, such stockholder must have given timely notice thereof in proper written form to the Secretary of the Corporation and such business must otherwise be a proper matter for stockholder action. Subject to Section 2.7(a)(iv), a stockholder's notice to the Secretary with respect to such business, to be timely, must (x) comply with the provisions of this Section 2.7(a)(i) and (y) be timely updated by the times and in the manner required by the provisions of Section 2.7(a)(iii). A stockholder's notice must be received by the Secretary at the principal executive offices of the Corporation not later than the close of business on the 90th day nor earlier than the opening of business on the 120th day before the anniversary date of the immediately preceding annual meeting of stockholders; provided, however, that if the annual meeting is called for a date that is more than 30 days earlier or more than 60 days later than such anniversary date, notice by the stockholder to be timely must be so received not earlier than the opening of business on the 120th day before the meeting and not later than the later of (x) the close of business on the 90th day before the meeting or (y) the close of business on the 10th day following the day on which public announcement of the date of the annual meeting is first made by the Corporation. The public announcement of an adjournment or postponement of an annual meeting shall not commence a new time period for the giving of a stockholder's notice as described in this Section 2.7(a).

(ii)     To be in proper written form, a stockholder's notice to the Secretary with respect to any business (other than nominations) must set forth (A) as to each such matter such stockholder proposes to bring before the annual meeting (1) a brief description of the business desired to be brought before the annual meeting and any material interest in such business of such stockholder and any Stockholder Associated Person (as defined below), individually or in the aggregate, (2) the text of the proposal or business (including the text of any resolutions proposed for consideration and if such business includes a proposal to amend these Bylaws, the text of the proposed amendment) and (3) the reasons for conducting such business at the annual meeting, (B) the name and address of the stockholder proposing such business, as they appear on the Corporation's books, (C) the class or series and number of shares of capital stock of the Corporation that are owned of record or are directly or indirectly owned beneficially by such stockholder and by any Stockholder Associated Person, (D) any option, warrant, convertible security, stock appreciation right, swap or similar right with an exercise or conversion privilege or a settlement payment or mechanism at a price related to any class or series of shares of the Corporation or with a value derived in whole or in part from the value of any class or series of shares of the Corporation, whether or not such instrument or right is subject to settlement in the underlying class or series of shares of the Corporation or otherwise (a "*Derivative Instrument*") directly or indirectly owned beneficially by such stockholder or by any Stockholder Associated Person and any other direct or indirect opportunity of such stockholder or any Stockholder Associated Person to profit or share in any profit derived from any increase or decrease in the value of shares of the Corporation, (E) any proxy (other than a revocable proxy or consent given in response to a solicitation made pursuant to Section 14(a) of the Exchange Act by way of a solicitation statement filed on Schedule 14A), contract, arrangement, understanding or relationship pursuant to which such stockholder or any Stockholder Associated Person has a right to vote any shares of the Corporation, (F) any short interest in any security of the Corporation held by such stockholder or any Stockholder Associated Person (for purposes of this Section 2.7 a person shall be deemed to have a short interest in a security if such person directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has the opportunity to profit or share in any profit derived from any decrease in the value of the subject security), (G) any rights beneficially owned, directly or indirectly, by such stockholder or Stockholder Associated Person to dividends on the shares of the Corporation that are separated or separable from the underlying shares of the Corporation, (H) any proportionate interest in shares of the Corporation or Derivative Instruments held, directly or indirectly, by a general or limited partnership in which such stockholder or any Stockholder Associated Person is a general partner or, directly or indirectly, beneficially owns an interest in a general partner, (I) any performance-related fees (other than an asset-based fee) that such stockholder or any Stockholder Associated Person is entitled to based on any increase or decrease in the value of shares of the Corporation or Derivative Instruments, if any, including without limitation any such interests held by members of such stockholder's or any Stockholder Associated Person's immediate family sharing the same household, (J) a description of all agreements, arrangements or understandings (written or oral) between or among such stockholder, any Stockholder Associated Person or any other person or persons (including their names) in connection with the proposal of such business by such

stockholder, (K) any other information relating to such stockholder and any Stockholder Associated Person that would be required to be disclosed in a proxy statement or other filings required to be made in connection with solicitations of proxies for election of directors (even if an election contest is not involved), or would be otherwise required, in each case pursuant to Section 14 of the Exchange Act and the rules and regulations promulgated thereunder, (L) a representation that such stockholder intends to appear in person or by proxy at the annual meeting to bring such business before the meeting, and (M) a statement of whether such stockholder or any Stockholder Associated Person intends, or is part of a group that intends, to solicit proxies in connection with the proposal.

(iii)    A stockholder providing notice of business proposed to be brought before an annual meeting shall further update and supplement such notice, if necessary, so that the information provided or required to be provided in such notice pursuant to this Section 2.7(a) shall be true and correct as of the record date for the meeting and as of the date that is 10 business days prior to the meeting or any adjournment or postponement thereof, and such update and supplement shall be delivered to, or mailed and received by, the Secretary at the principal executive offices of the Corporation (x) in the case of the update and supplement required to be made as of the record date, not later than five business days after the record date for the meeting and (y) in the case of the update and supplement required to be made as of 10 business days prior to the meeting or any adjournment or postponement thereof, as applicable, not later than eight business days prior to the date for the meeting or any adjournment or postponement thereof, if practicable (or if not practicable, on the first practicable date prior to the date for the meeting or such adjournment or postponement thereof).

(iv)    Notwithstanding Section 2.9, the foregoing notice requirements of this Section 2.7(a) may be waived by holders of at least a majority of the voting power of all then outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, by written consent without prior Board approval.  Further, the foregoing notice requirements shall be deemed satisfied by a stockholder as to any proposal (other than nominations) if the stockholder has notified the Corporation of such stockholder's intention to present such proposal at an annual meeting in compliance with Rule 14a-8 (or any successor thereof) of the Exchange Act, and such stockholder's proposal has been included in a proxy statement prepared by the Corporation to solicit proxies for such annual meeting.  No business shall be conducted at the annual meeting of stockholders except business brought before the annual meeting in accordance with the procedures set forth in this Section 2.7(a); provided, however, that once business has been properly brought before the annual meeting in accordance with such procedures, nothing in this Section 2.7(a) shall be deemed to preclude discussion by any stockholder of any such business.  If the Board or the chairman of the annual meeting determines that any stockholder proposal was not made in accordance with the provisions of this Section 2.7(a) or that the information provided in a stockholder's notice does not satisfy the information requirements of this Section 2.7(a), such proposal shall not be presented for action at the annual meeting. Notwithstanding the foregoing provisions of this Section 2.7(a), if the stockholder (or a qualified representative of the stockholder) does not appear at the annual meeting of

stockholders of the Corporation to present the proposed business, such proposed business shall not be transacted, notwithstanding that proxies in respect of such matter may have been received by the Corporation.

(v)     In addition to the provisions of this Section 2.7(a), a stockholder shall also comply with all applicable requirements of the Exchange Act and the rules and regulations thereunder with respect to the matters set forth herein. Nothing in this Section 2.7(a) shall be deemed to affect any rights of stockholders to request inclusion of proposals in the Corporation's proxy statement pursuant to Rule 14a-8 under the Exchange Act.

(b)     Special Meetings of Stockholders. Only such business shall be conducted at a special meeting of stockholders as shall have been brought before the meeting pursuant to the Corporation's notice of meeting. Nominations of persons for election to the Board may be made at a special meeting of stockholders at which directors are to be elected pursuant to the Corporation's notice of meeting only pursuant to Section 3.2.

(c)     Definitions. For purposes of these Bylaws, "*public announcement*" shall mean disclosure in a press release reported by the Dow Jones News Service, Associated Press or comparable national news service or in a document publicly filed by the Corporation with the Securities and Exchange Commission pursuant to Sections 13, 14 or 15(d) of the Exchange Act; and "*Stockholder Associated Person*" shall mean for any stockholder (i) any person controlling, directly or indirectly, or acting in concert with, such stockholder, (ii) any beneficial owner of shares of stock of the Corporation owned of record or beneficially by such stockholder, or (iii) any person controlling, controlled by or under common control with such person referred to in the preceding clauses (i) and (ii).

Section 2.8     Conduct of Meetings. The chairman of each annual and special meeting of stockholders shall be the Chairman of the Board or, in the absence (or inability or refusal to act) of the Chairman of the Board, the Chief Executive Officer (if he or she shall be a director) or, in the absence (or inability or refusal to act of the Chief Executive Officer or if the Chief Executive Officer is not a director, the Chief Operating Officer (if he or she shall be a director) or, in the absence (or inability or refusal to act) of the Chief Operating Officer or if the Chief Operating Officer is not a director, such other person as shall be appointed by the Board. The date and time of the opening and the closing of the polls for each matter upon which the stockholders will vote at a meeting shall be announced at the meeting by the chairman of the meeting. The Board may adopt such rules and regulations for the conduct of the meeting of stockholders as it shall deem appropriate. Except to the extent inconsistent with these Bylaws or such rules and regulations as adopted by the Board, the chairman of any meeting of stockholders shall have the right and authority to convene and to adjourn the meeting, to prescribe such rules, regulations and procedures and to do all such acts as, in the judgment of such chairman, are appropriate for the proper conduct of the meeting. Such rules, regulations or procedures, whether adopted by the Board or prescribed by the chairman of the meeting, may include, without limitation, the following: (a) the establishment of an agenda or order of business for the meeting; (b) rules and procedures for maintaining order at the meeting and the safety of those present; (c) limitations on attendance at or participation in the meeting to stockholders of record of the Corporation, their duly authorized and constituted proxies or such other persons as the

chairman of the meeting shall determine; (d) restrictions on entry to the meeting after the time fixed for the commencement thereof; and (e) limitations on the time allotted to questions or comments by participants. Unless and to the extent determined by the Board or the chairman of the meeting, meetings of stockholders shall not be required to be held in accordance with the rules of parliamentary procedure. The secretary of each annual and special meeting of stockholders shall be the Secretary or, in the absence (or inability or refusal to act) of the Secretary, an Assistant Secretary so appointed to act by the chairman of the meeting. In the absence (or inability or refusal to act) of the Secretary and all Assistant Secretaries, the chairman of the meeting may appoint any person to act as secretary of the meeting.

**Section 2.9     Consents in Lieu of Meeting.** Except as otherwise expressly provided by the terms of any series of Preferred Stock permitting the holders of such series of Preferred Stock to act by written consent, the Certificate of Incorporation or these Bylaws, any action required or permitted to be taken by the stockholders of the Corporation must be effected at a duly called annual or special meeting of the stockholders of the Corporation, unless the Board approves in advance the taking of such action by means of written consent of stockholders, in which case such action may be taken without a meeting, without prior notice and without a vote at a duly convened meeting, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum voting power that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the Corporation to its registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary of the Corporation. Every written consent shall bear the date of signature of each stockholder who signs the consent and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the date the earliest dated consent is delivered to the Corporation, a written consent or consents signed by a sufficient number of holders to take such action are delivered to the Corporation by delivery to the Corporation's registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary. Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested. An electronic transmission consenting to the action to be taken and transmitted by a stockholder, proxyholder or a person or persons authorized to act for a stockholder or proxyholder shall be deemed to be written, signed and dated for purposes hereof if such electronic transmission sets forth or is delivered with information from which the Corporation can determine that such transmission was transmitted by a stockholder or proxyholder (or by a person authorized to act for a stockholder or proxyholder) and the date on which such stockholder, proxyholder or authorized person transmitted such transmission. The date on which such electronic transmission is transmitted shall be deemed to be the date on which such consent was signed. No consent given by electronic transmission shall be deemed to have been delivered until such consent is reproduced in paper form and delivered to the Corporation by delivery either to the Corporation's registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary of the Corporation. Delivery made to the Corporation's registered office shall be made by hand or by certified or registered mail, return receipt requested. Notwithstanding the limitations on delivery in the previous sentence, consents given by electronic transmission may be otherwise delivered to the Corporation's principal place of business or to the Secretary if, to the extent, and in the manner provided by resolution of the Board. Any copy, facsimile or other reliable reproduction of a consent in writing may be substituted or used in lieu of the original writing for any and all purposes for

which the original writing could be used; provided that such copy, facsimile or other reproduction shall be a complete reproduction of the entire original writing. Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for notice of such meeting had been the date that written consents signed by a sufficient number of holders were delivered to the Corporation as provided in this Section 2.9.

# ARTICLE III
# DIRECTORS

## Section 3.1    Powers; Number and Qualification.

(a)    The business and affairs of the Corporation shall be managed by or under the direction of the Board, which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation or by these Bylaws required to be exercised or done by the stockholders. The number of directors of the Corporation shall be five; provided, however, that the number of directors may be modified from time to time exclusively by the Board pursuant to a resolution adopted by at least 66⅔% of the Whole Board and no decrease in the number of directors constituting the Board of Directors shall shorten the term of any incumbent director. Directors need not be stockholders or residents of the State of Delaware.

(b)    Subject to the rights of one or more series of Preferred Stock and the immediately following sentence, directors shall be elected at each annual meeting of stockholders and shall hold office until the next annual meeting and until his or her successor has been elected and qualified, subject, however, to such director's earlier death, resignation, retirement, disqualification or removal. Each director of the Corporation named in the Certificate of Incorporation shall hold office until the annual meeting for 2011 and until his successor has been elected and qualified, subject, however, to such director's earlier death, resignation, retirement, disqualification or removal.

## Section 3.2    Advance Notice for Nomination of Directors.

(a)    Only persons who are nominated in accordance with the following procedures shall be eligible for election as directors by the stockholders of the Corporation, except as may be otherwise provided by the terms of one or more series of Preferred Stock with respect to the rights of holders of one or more series of Preferred Stock to elect directors. Nominations of persons for election to the Board at any annual meeting of stockholders, or at any special meeting of stockholders called for the purpose of electing directors as set forth in the Corporation's notice of such special meeting, may be made (i) by or at the direction of the Board or (ii) by any stockholder of the Corporation (x) who is a stockholder of record on the date of the giving of the notice provided for in this Section 3.2 and who is entitled to vote in the election of directors at such meeting and (y) who complies with the notice procedures set forth in this Section 3.2 (unless such notice procedures are otherwise waived in accordance with Section 3.2(g)).

(b)     In addition to any other applicable requirements, for a nomination to be made by a stockholder, such stockholder must have given timely notice thereof in proper written form to the Secretary of the Corporation. To be timely, a stockholder's notice to the Secretary must (x) comply with the provisions of this Section 3.2(b) and (y) be timely updated by the times and in the manner required by the provisions of Section 3.2(e). A stockholder's notice must be received by the Secretary at the principal executive offices of the Corporation (i) in the case of an annual meeting, not later than the close of business on the 90th day nor earlier than the opening of business on the 120th day before the anniversary date of the immediately preceding annual meeting of stockholders; provided, however, that if the annual meeting is called for a date that is more than 30 days earlier or more than 60 days after such anniversary date, notice by the stockholder to be timely must be so received not earlier than the opening of business on the 120th day before the meeting and not later than the later of (x) the close of business on the 90th day before the meeting or (y) the close of business on the 10th day following the day on which public announcement of the date of the annual meeting is first made by the Corporation; and (ii) in the case of a special meeting of stockholders called for the purpose of electing directors, not earlier than the opening of business on the 120th day before the meeting and not later than the later of (x) the close of business on the 90th day before the meeting or (y) the close of business on the 10th day following the day on which public announcement of the date of the special meeting is first made by the Corporation. The public announcement of an adjournment or postponement of an annual meeting or special meeting shall not commence a new time period for the giving of a stockholder's notice as described in this Section 3.2.

(c)     Notwithstanding anything in paragraph (b) to the contrary, if the number of directors to be elected to the Board at an annual meeting is greater than the number of directors whose terms expire on the date of the annual meeting and there is no public announcement by the Corporation naming all of the nominees for the additional directors to be elected or specifying the size of the increased Board before the close of business on the 90th day prior to the anniversary date of the immediately preceding annual meeting of stockholders, a stockholder's notice required by this Section 3.2 shall also be considered timely, but only with respect to nominees for the additional directorships created by such increase that are to be filled by election at such annual meeting, if it shall be received by the Secretary at the principal executive offices of the Corporation not later than the close of business on the 10th day following the date on which such public announcement was first made by the Corporation.

(d)     To be in proper written form, a stockholder's notice to the Secretary must set forth (i) as to each person whom the stockholder proposes to nominate for election as a director (A) the name, age, business address and residence address of the person, (B) the principal occupation or employment of the person, (C) the class or series and number of shares of capital stock of the Corporation that are owned of record or are directly or indirectly owned beneficially by the person, (D) any Derivative Instrument directly or indirectly owned beneficially by such nominee and any other direct or indirect opportunity to profit or share in any profit derived from any increase or decrease in the value of shares of the Corporation and (E) any other information relating to the person that would be required to be disclosed in a proxy statement or other filings required to be made in connection with solicitations of proxies for election of directors pursuant to Section 14 of the Exchange Act and the rules and regulations promulgated thereunder; and (ii) as to the stockholder giving the notice (A) the name and address of such stockholder as they appear on the Corporation's books, (B) the class or series and

number of shares of capital stock of the Corporation that are owned of record or are directly or indirectly owned beneficially by such stockholder and by any Stockholder Associated Person, (C) any Derivative Instrument directly or indirectly owned beneficially by such stockholder or Stockholder Associated Person and any other direct or indirect opportunity of such stockholder or any Stockholder Associated Person to profit or share in any profit derived from any increase or decrease in the value of shares of the Corporation, (D) any proxy (other than a revocable proxy or consent given in response to a solicitation made pursuant to Section 14(a) of the Exchange Act by way of a solicitation statement filed on Schedule 14A), contract, arrangement, understanding or relationship pursuant to which such stockholder or any Stockholder Associated Person has a right to vote any shares of the Corporation, (E) any short interest in any security of the Corporation held by such stockholder or any Stockholder Associated Person (for purposes of this Section 3.2 a person shall be deemed to have a short interest in a security if such person directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has the opportunity to profit or share in any profit derived from any decrease in the value of the subject security), (F) any rights beneficially owned, directly or indirectly, by such stockholder or Stockholder Associated Person to dividends on the shares of the Corporation that are separated or separable from the underlying shares of the Corporation, (G) any proportionate interest in shares of the Corporation or Derivative Instruments held, directly or indirectly, by a general or limited partnership in which such stockholder or any Stockholder Associated Person is a general partner or, directly or indirectly, beneficially owns an interest in a general partner, (H) any performance-related fees (other than an asset-based fee) that such stockholder or any Stockholder Associated Person is entitled to based on any increase or decrease in the value of shares of the Corporation or Derivative Instruments, if any, including without limitation any such interests held by members of such stockholder's or any Stockholder Associated Person's immediate family sharing the same household, (I) a description of all agreements, arrangements or understandings (written or oral) between or among such stockholder, any Stockholder Associated Person, any proposed nominee or any other person or persons (including their names) pursuant to which the nomination or nominations are to be made by such stockholder, (J) a representation that such stockholder intends to appear in person or by proxy at the meeting to nominate the persons named in its notice, (K) any other information relating to such stockholder and any Stockholder Associated Person that would be required to be disclosed in a proxy statement or other filings required to be made in connection with solicitations of proxies for election of directors (even if an election contest is not involved), or would be otherwise required, in each case pursuant to Section 14 of the Exchange Act and the rules and regulations promulgated thereunder, (L) a description of all direct and indirect compensation and other material monetary agreements, arrangements and understandings during the past three years, and any other material relationships, between or among such stockholder or any Stockholder Associated Person, or others acting in concert therewith, on the one hand, and each proposed nominee, and his or her respective affiliates and associates, or others acting in concert therewith, on the other hand, including, without limitation all information that would be required to be disclosed pursuant to Rule 404 promulgated under Regulation S-K if the stockholder making the nomination and any Stockholder Associated Person, or any person acting in concert therewith, was the "registrant" for purposes of such rule and the nominee was a director or executive officer of such registrant and (M) a statement of whether such stockholder or any Stockholder Associated Person intends, or is part of a group that intends, to solicit proxies for the election of

the proposed nominee. Such notice must be accompanied by a written consent of each proposed nominee to being named as a nominee and to serve as a director if elected.

(e)     A stockholder providing notice of a director nomination shall further update and supplement such notice, if necessary, so that the information provided or required to be provided in such notice pursuant to this Section 3.2 shall be true and correct as of the record date for the meeting and as of the date that is 10 business days prior to the meeting or any adjournment or postponement thereof, and such update and supplement shall be delivered to, or mailed and received by, the Secretary at the principal executive offices of the Corporation (x) in the case of the update and supplement required to be made as of the record date, not later than five business days after the record date for the meeting and (y) in the case of the update and supplement required to be made as of 10 business days prior to the meeting or any adjournment or postponement thereof, as applicable, not later than eight business days prior to the date for the meeting or any adjournment or postponement thereof, if practicable (or if not practicable, on the first practicable date prior to the date for the meeting or such adjournment or postponement thereof). In addition, at the request of the Board, a proposed nominee shall furnish to the Secretary of the Corporation within ten days after receipt of such request such information as may reasonably be required by the Corporation to determine the eligibility of such proposed nominee to serve as an independent director of the Corporation or that could be material to a reasonable stockholder's understanding of the independence, or lack thereof, of such nominee, and if such information is not furnished within such time period, the notice of such director's nomination shall not be considered to have been timely given for purposes of this Section 3.2.

(f)     If the Board or the chairman of the meeting of stockholders determines that any nomination was not made in accordance with the provisions of this Section 3.2, then such nomination shall not be considered at the meeting in question. Notwithstanding the foregoing provisions of this Section 3.2, if the stockholder (or a qualified representative of the stockholder) does not appear at the meeting of stockholders of the Corporation to present the nomination, such nomination shall be disregarded, notwithstanding that proxies in respect of such nomination may have been received by the Corporation.

(g)     Notwithstanding Section 2.9, the foregoing notice requirements of Section 3.2 may be waived by holders of at least a majority of the voting power of all then outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, by written consent without prior Board approval.

(h)     In addition to the provisions of this Section 3.2, a stockholder shall also comply with all of the applicable requirements of the Exchange Act and the rules and regulations thereunder with respect to the matters set forth herein. Nothing in this Section 3.2 shall be deemed to affect any rights of the holders of Preferred Stock to elect directors pursuant to the Certificate of Incorporation, as it may be amended hereafter to so provide, or the right of the Board to fill newly created directorships and vacancies on the Board pursuant to the Certificate of Incorporation.

**Section 3.3    Compensation**.    Unless otherwise restricted by the Certificate of Incorporation or these Bylaws, the Board shall have the authority to fix the compensation of directors. The directors may be reimbursed their expenses, if any, of attendance at each meeting

of the Board and may be paid either a fixed sum for attendance at each meeting of the Board or other compensation as director. No such payment shall preclude any director from serving the Corporation in any other capacity and receiving compensation therefor. Members of committees of the Board may be allowed like compensation and reimbursement of expenses for service on the committee.

# ARTICLE IV
# BOARD MEETINGS

**Section 4.1    Annual Meetings**.  The Board shall meet as soon as practicable after the adjournment of each annual stockholders meeting at the place of the annual stockholders meeting unless the Board shall fix another time and place and give notice thereof in the manner required herein for special meetings of the Board. No notice to the directors shall be necessary to legally convene this meeting, except as provided in this Section 4.1.

**Section 4.2    Regular Meetings**.  Regularly scheduled, periodic meetings of the Board may be held without notice at such times, dates and places as shall from time to time be determined by the Board.

**Section 4.3    Special Meetings**.  Special meetings of the Board (a) may be called by the Chairman of the Board or Chief Executive Officer and (b) shall be called by the Chairman of the Board, Chief Executive Officer or Secretary on the written request of at least a majority of directors then in office, or the sole director, as the case may be, and shall be held at such time, date and place as may be determined by the person calling the meeting or, if called upon the request of directors or the sole director, as specified in such written request.  Notice of each special meeting of the Board shall be given, as provided in Section 9.3, to each director (i) at least 24 hours before the meeting if such notice is oral notice given personally or by telephone or written notice given by hand delivery or by means of a form of electronic transmission and delivery; (ii) at least two days before the meeting if such notice is sent by a nationally recognized overnight delivery service; and (iii) at least five days before the meeting if such notice is sent through the United States mail and in each case such notice shall specify the business to be transacted at and/or the purpose of such special meeting.  If the Secretary shall fail or refuse to give such notice, then the notice may be given by the officer who called the meeting or the directors who requested the meeting.  Any and all business that may be transacted at a regular meeting of the Board may be transacted at a special meeting if notice shall have been given as provided for above or such notice is not required or has been waived in accordance with the last sentence of this Section 4.3.  A special meeting may be held at any time without notice if all the directors have waived notice of the meeting in accordance with Section 9.4.

**Section 4.4    Quorum; Required Vote**.  A majority of the Whole Board shall constitute a quorum for the transaction of business at any meeting of the Board, and the act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the Board, except as may be otherwise specifically provided by applicable law, the Certificate of Incorporation or these Bylaws.  If a quorum shall not be present at any meeting, a majority of the directors present may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum is present.

**Section 4.5   Consent In Lieu of Meeting.**   Unless otherwise restricted by the Certificate of Incorporation or these Bylaws, any action required or permitted to be taken at any meeting of the Board or any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions (or paper reproductions thereof) are filed with the minutes of proceedings of the Board or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

**Section 4.6   Organization.**   The chairman of each meeting of the Board shall be the Chairman of the Board or, in the absence (or inability or refusal to act) of the Chairman of the Board, the Chief Executive Officer (if he or she shall be a director) or, in the absence (or inability or refusal to act) of the Chief Executive Officer or if the Chief Executive Officer is not a director, the Chief Operating Officer (if he or she shall be a director) or in the absence (or inability or refusal to act) of the Chief Operating Officer or if the Chief Operating Officer is not a director, a chairman elected from the directors present. The Secretary shall act as secretary of all meetings of the Board. In the absence (or inability or refusal to act) of the Secretary, an Assistant Secretary shall perform the duties of the Secretary at such meeting. In the absence (or inability or refusal to act) of the Secretary and all Assistant Secretaries, the chairman of the meeting may appoint any person to act as secretary of the meeting.

## ARTICLE V
## COMMITTEES OF DIRECTORS

**Section 5.1   Establishment.**   The Board may by resolution passed by a majority of the Whole Board designate one or more committees, each committee to consist of one or more of the directors of the Corporation. Each committee shall keep regular minutes of its meetings and report the same to the Board when required. The Board shall have the power at any time to fill vacancies in, to change the membership of, or to dissolve any such committee.

**Section 5.2   Available Powers.**   Any committee established pursuant to Section 5.1 hereof, to the extent permitted by applicable law and by resolution of the Board, shall have and may exercise all of the powers and authority of the Board in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers that may require it.

**Section 5.3   Alternate Members.**   The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of such committee.

**Section 5.4   Procedures.**   Unless the Board otherwise provides, the time, date, place, if any, and notice of meetings of a committee shall be determined by such committee. At meetings of a committee, a majority of the number of members of the committee (but not including any alternate member, unless such alternate member has replaced any absent or disqualified member at the time of, or in connection with, such meeting) shall constitute a quorum for the transaction of business. The act of a majority of the members present at any meeting at which a quorum is present shall be the act of the committee, except as otherwise specifically provided by applicable

law, the Certificate of Incorporation, these Bylaws or the Board. If a quorum is not present at a meeting of a committee, the members present may adjourn the meeting from time to time, without notice other than an announcement at the meeting, until a quorum is present. Unless the Board otherwise provides and except as provided in these Bylaws, each committee designated by the Board may make, alter, amend and repeal rules for the conduct of its business. In the absence of such rules each committee shall conduct its business in the same manner as the Board is authorized to conduct its business pursuant to Article III and Article IV of these Bylaws.

## ARTICLE VI
## OFFICERS

**Section 6.1    Officers**. The officers of the Corporation elected by the Board shall be a Chairman of the Board, a Chief Executive Officer, a Chief Operating Officer, a Chief Financial Officer, a Secretary and such other officers (including without limitation a President, Chief Commodities Officer, Chief Accounting and Compliance Officer, Vice Presidents, Assistant Secretaries, Treasurers and Assistant Treasurers) as the Board from time to time may determine. Officers elected by the Board shall each have such powers and duties as generally pertain to their respective offices, subject to the specific provisions of this Article VI. Such officers shall also have such powers and duties as from time to time may be conferred by the Board. The Chairman of the Board, Chief Executive Officer or Chief Operating Officer may also appoint such other officers (including without limitation one or more Vice Presidents and Controllers) as may be necessary or desirable for the conduct of the business of the Corporation. Such other officers shall have such powers and duties and shall hold their offices for such terms as may be provided in these Bylaws or as may be prescribed by the Board or, if such officer has been appointed by the Chairman of the Board, Chief Executive Officer or Chief Operating Officer, as may be prescribed by the appointing officer.

(a)    Chairman of the Board. The Chairman of the Board shall preside when present at all meetings of the stockholders and the Board. The Chairman of the Board shall advise and counsel the Chief Executive Officer and other officers and shall exercise such powers and perform such duties as shall be assigned to or required of the Chairman of the Board from time to time by the Board or these Bylaws.

(b)    Chief Executive Officer. The Chief Executive Officer shall be the chief executive officer of the Corporation, shall have general supervision of the affairs of the Corporation and general control of all of its business subject to the ultimate authority of the Board, and shall be responsible for the execution of the policies of the Board. In the absence (or inability or refusal to act) of the Chairman of the Board, the Chief Executive Officer (if he or she shall be a director) shall preside when present at all meetings of the stockholders and the Board.

(c)    Chief Operating Officer. The Chief Operating Officer shall be the chief operating officer of the Corporation and shall, subject to the authority of the Chief Executive Officer and the Board, have general management and control of the day-to-day business operations of the Corporation and shall consult with and report to the Chief Executive Officer. The Chief Operating Officer shall put into operation the business policies of the Corporation as determined by the Chief Executive Officer and the Board and as communicated to the Chief Operating Officer by the Chief Executive Officer and the Board. The Chief Operating Officer

shall make recommendations to the Chief Executive Officer on all operational matters that would normally be reserved for the final executive responsibility of the Chief Executive Officer. In the absence (or inability or refusal to act) of the Chairman of the Board and Chief Executive Officer, the Chief Operating Officer (if he or she shall be a director) shall preside when present at all meetings of the stockholders and the Board.

(d) <u>Chief Financial Officer</u>. The Chief Financial Officer shall keep and maintain, or cause to be kept and maintained, adequate and correct books and records of account of the Corporation. The Chief Financial Officer shall receive and deposit all moneys and other valuables belonging to the Corporation in the name and to the credit of the Corporation and shall disburse the same only in such manner as the Chief Executive Officer or the other appropriate officers of the Corporation may from time to time determine, shall render, whenever requested, an account of all his transactions as Chief Financial Officer and of the financial condition of the Corporation, and shall perform such further duties as the Chairman of the Board, the Chief Executive Officer, the Certificate of Incorporation, these Bylaws or the Board may prescribe.

(e) <u>Vice Presidents</u>. In the absence (or inability or refusal to act) of the Chief Operating Officer, the Vice President (or in the event there be more than one Vice President, the Vice Presidents in the order designated by the Board) shall perform the duties and have the powers of the Chief Operating Officer. Any one or more of the Vice Presidents may be given an additional designation of rank or function. The Vice Presidents shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(f) <u>Secretary</u>.

(i) The Secretary shall attend all meetings of the stockholders, the Board and (as required) committees of the Board and shall record the proceedings of such meetings in books to be kept for that purpose. The Secretary shall give, or cause to be given, notice of all meetings of the stockholders and special meetings of the Board and shall perform such other duties as may be prescribed by the Board, the Chairman of the Board, Chief Executive Officer or the Chief Operating Officer. The Secretary shall have custody of the corporate seal of the Corporation and the Secretary, or any Assistant Secretary, shall have authority to affix the same to any instrument requiring it, and when so affixed, it may be attested by his or her signature or by the signature of such Assistant Secretary. The Board may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing thereof by his or her signature.

(ii) The Secretary shall keep, or cause to be kept, at the principal executive office of the Corporation or at the office of the Corporation's transfer agent or registrar, if one has been appointed, a stock ledger, or duplicate stock ledger, showing the names of the stockholders and their addresses, the number and classes of shares held by each and, with respect to certificated shares, the number and date of certificates issued for the same and the number and date of certificates cancelled.

(g) <u>Assistant Secretaries</u>. The Assistant Secretary or, if there be more than one, the Assistant Secretaries in the order determined by the Board shall, in the absence (or

inability or refusal to act) of the Secretary, perform the duties and have the powers of the Secretary.

(h) _Treasurer_. The Treasurer shall perform all duties commonly incident to that office (including, without limitation, the care and custody of the funds and securities of the Corporation which from time to time may come into the Treasurer's hands and the deposit of the funds of the Corporation in such banks or trust companies as the Board, the Chief Executive Officer or the Chief Financial Officer may authorize), to the extent not performed by the Chief Financial Officer, and shall perform such other duties as the Chairman of the Board, the Chief Executive Officer, the Chief Financial Officer, the Certificate of Incorporation, these Bylaws or the Board may prescribe. The Treasurer shall, in the absence (or inability or refusal to act) of the Chief Financial Officer, perform the duties and have the powers of the Chief Financial Officer.

(i) _Assistant Treasurers_. The Assistant Treasurer or, if there shall be more than one, the Assistant Treasurers in the order determined by the Board shall, in the absence (or inability or refusal to act) of the Treasurer, perform the duties and exercise the powers of the Treasurer.

**Section 6.2   Term of Office; Removal; Vacancies**.  The elected officers of the Corporation shall be elected annually by the Board at its first meeting held after each annual meeting of stockholders. All officers elected by the Board shall hold office until the next annual meeting of the Board and until their successors are duly elected and qualified or until their earlier death, resignation, retirement, disqualification, or removal from office. Any officer may be removed, with or without cause, at any time by the Board. Any officer appointed by the Chairman of the Board, Chief Executive Officer or Chief Operating Officer may also be removed, with or without cause, by the Chairman of the Board, Chief Executive Officer or Chief Operating Officer, as the case may be, unless the Board otherwise provides. Any vacancy occurring in any elected office of the Corporation may be filled by the Board. Any vacancy occurring in any office appointed by the Chairman of the Board, Chief Executive Officer or Chief Operating Officer may be filled by the Chairman of the Board, Chief Executive Officer or Chief Operating Officer, as the case may be, unless the Board then determines that such office shall thereupon be elected by the Board, in which case the Board shall elect such officer.

**Section 6.3   Other Officers**.  The Board may delegate the power to appoint such other officers and agents, and may also remove such officers and agents or delegate the power to remove same, as it shall from time to time deem necessary or desirable.

**Section 6.4   Multiple Officeholders; Stockholder and Director Officers**.  Any number of offices may be held by the same person unless the Certificate of Incorporation or these Bylaws otherwise provide. Officers need not be stockholders or residents of the State of Delaware.

## ARTICLE VII
## SHARES

**Section 7.1   Certificated and Uncertificated Shares**.  The shares of the Corporation shall be represented by certificates, provided that the Board may provide by resolution or

resolutions that some or all of any or all classes or series of its stock shall be uncertificated shares. Any such resolution shall not apply to shares represented by a certificate until such certificate is surrendered to the Corporation. Notwithstanding the adoption of such a resolution by the Board, every holder of stock represented by certificates shall be entitled to have a certificate signed in accordance with <u>Section 7.3</u> representing the number of shares registered in certificate form. The Corporation shall not have power to issue a certificate representing shares in bearer form.

**Section 7.2  Multiple Classes of Stock.** If the Corporation shall be authorized to issue more than one class of stock or more than one series of any class, the Corporation shall (a) cause the powers, designations, preferences and relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences or rights to be set forth in full or summarized on the face or back of any certificate that the Corporation issues to represent shares of such class or series of stock or (b) in the case of uncertificated shares, within a reasonable time after the issuance or transfer of such shares, send to the registered owner thereof a written notice containing the information required to be set forth on certificates as specified in clause (a) above; provided, however, that, except as otherwise provided by applicable law, in lieu of the foregoing requirements, there may be set forth on the face or back of such certificate or, in the case of uncertificated shares, on such written notice a statement that the Corporation will furnish without charge to each stockholder who so requests the powers, designations, preferences and relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences or rights.

**Section 7.3  Signatures.** Each certificate representing capital stock of the Corporation shall be signed by or in the name of the Corporation by (a) the Chairman of the Board, the Chief Executive Officer, the Chief Operating Officer or a Vice President and (b) the Treasurer, an Assistant Treasurer, the Secretary or an Assistant Secretary of the Corporation. Any or all the signatures on the certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, such certificate may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar on the date of issue.

**Section 7.4  Consideration and Payment for Shares.**

(a)  Subject to applicable law and the Certificate of Incorporation, shares of stock may be issued for such consideration, having in the case of shares with par value a value not less than the par value thereof, and to such persons, as determined from time to time by the Board. The consideration may consist of any tangible or intangible property or benefit to the Corporation including cash, promissory notes, services performed, contracts for services to be performed or other securities.

(b)  Subject to applicable law and the Certificate of Incorporation, shares may not be issued until the full amount of the consideration has been paid, unless upon the face or back of each certificate issued to represent any partly paid shares of capital stock or upon the books and records of the Corporation in the case of partly paid uncertificated shares, there shall

have been set forth the total amount of the consideration to be paid therefor and the amount paid thereon up to and including the time said certificate representing certificated shares or said uncertificated shares are issued.

### Section 7.5    Lost, Destroyed or Wrongfully Taken Certificates.

(a)    If an owner of a certificate representing shares claims that such certificate has been lost, destroyed or wrongfully taken, the Corporation shall issue a new certificate representing such shares or such shares in uncertificated form if the owner: (i) requests such a new certificate before the Corporation has notice that the certificate representing such shares has been acquired by a protected purchaser; (ii) if requested by the Corporation, delivers to the Corporation a bond sufficient to indemnify the Corporation against any claim that may be made against the Corporation on account of the alleged loss, wrongful taking or destruction of such certificate or the issuance of such new certificate or uncertificated shares; and (iii) satisfies other reasonable requirements imposed by the Corporation.

(b)    If a certificate representing shares has been lost, apparently destroyed or wrongfully taken, and the owner fails to notify the Corporation of that fact within a reasonable time after the owner has notice of such loss, apparent destruction or wrongful taking and the Corporation registers a transfer of such shares before receiving notification, the owner shall be precluded from asserting against the Corporation any claim for registering such transfer or a claim to a new certificate representing such shares or such shares in uncertificated form.

### Section 7.6    Transfer of Stock.

(a)    If a certificate representing shares of the Corporation is presented to the Corporation with a stock power or other indorsement requesting the registration of transfer of such shares or an instruction is presented to the Corporation requesting the registration of transfer of uncertificated shares, the Corporation shall register the transfer as requested if:

(i)    in the case of certificated shares, the certificate representing such shares has been surrendered;

(ii)    (A) with respect to certificated shares, the indorsement is made by the person specified by the certificate as entitled to such shares; (B) with respect to uncertificated shares, an instruction is made by the registered owner of such uncertificated shares; or (C) with respect to certificated shares or uncertificated shares, the indorsement or instruction is made by any other appropriate person or by an agent who has actual authority to act on behalf of the appropriate person;

(iii)    the Corporation has received a guarantee of signature of the person signing such indorsement or instruction or such other reasonable assurance that the indorsement or instruction is genuine and authorized as the Corporation may request;

(iv)    the transfer does not violate any restriction on transfer imposed by the Corporation that is enforceable in accordance with Section 7.8(a); and

(v)     such other conditions for such transfer as shall be provided for under applicable law have been satisfied.

(b)     Whenever any transfer of shares shall be made for collateral security and not absolutely, the Corporation shall so record such fact in the entry of transfer if, when the certificate for such shares is presented to the Corporation for transfer or, if such shares are uncertificated, when the instruction for registration of transfer thereof is presented to the Corporation, both the transferor and transferee request the Corporation to do so.

**Section 7.7     Registered Stockholders.**  Before due presentment for registration of transfer of a certificate representing shares of the Corporation or of an instruction requesting registration of transfer of uncertificated shares, the Corporation may treat the registered owner as the person exclusively entitled to inspect for any proper purpose the stock ledger and the other books and records of the Corporation, vote such shares, receive dividends or notifications with respect to such shares and otherwise exercise all the rights and powers of the owner of such shares, except that a person who is the beneficial owner of such shares (if held in a voting trust or by a nominee on behalf of such person) may, upon providing documentary evidence of beneficial ownership of such shares and satisfying such other conditions as are provided under applicable law, may also so inspect the books and records of the Corporation.

**Section 7.8     Effect of the Corporation's Restriction on Transfer.**

(a)     A written restriction on the transfer or registration of transfer of shares of the Corporation or on the amount of shares of the Corporation that may be owned by any person or group of persons, if permitted by the Delaware General Corporation Law (the "*DGCL*") and noted conspicuously on the certificate representing such shares or, in the case of uncertificated shares, contained in a notice sent by the Corporation to the registered owner of such shares within a reasonable time after the issuance or transfer of such shares, may be enforced against the holder of such shares or any successor or transferee of the holder including an executor, administrator, trustee, guardian or other fiduciary entrusted with like responsibility for the person or estate of the holder.

(b)     A restriction imposed by the Corporation on the transfer or the registration of shares of the Corporation or on the amount of shares of the Corporation that may be owned by any person or group of persons, even if otherwise lawful, is ineffective against a person without actual knowledge of such restriction unless: (i) the shares are certificated and such restriction is noted conspicuously on the certificate; or (ii) the shares are uncertificated and such restriction was contained in a notice sent by the Corporation to the registered owner of such shares within a reasonable time after the issuance or transfer of such shares.

**Section 7.9     Regulations.**  The Board shall have power and authority to make such additional rules and regulations, subject to any applicable requirement of law, as the Board may deem necessary and appropriate with respect to the issue, transfer or registration of transfer of shares of stock or certificates representing shares.  The Board may appoint one or more transfer agents or registrars and may require for the validity thereof that certificates representing shares bear the signature of any transfer agent or registrar so appointed.

# ARTICLE VIII
# INDEMNIFICATION

**Section 8.1    Right to Indemnification**.  Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "*proceeding*"), by reason of the fact that he or she is or was a director or officer of the Corporation or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, limited liability company, joint venture, trust or other enterprise, including service with respect to an employee benefit plan and/or direct or indirect subsidiary (hereinafter a "*Covered Person*"), whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized or permitted by applicable law, as the same exists or may hereafter be amended, against all expense, liability and loss (including, without limitation, attorneys' fees, judgments, fines, ERISA excise taxes and penalties and amounts paid in settlement) reasonably incurred or suffered by such Covered Person in connection with such proceeding; provided, however, that, except as provided in Section 8.3 with respect to proceedings to enforce rights to indemnification, the Corporation shall indemnify a Covered Person in connection with a proceeding (or part thereof) initiated by such Covered Person only if such proceeding (or part thereof) was authorized by the Board.

**Section 8.2    Right to Advancement of Expenses**.  In addition to the right to indemnification conferred in Section 8.1, a Covered Person shall also have the right to be paid by the Corporation the expenses (including, without limitation, attorneys' fees) incurred in defending, testifying, or otherwise participating in any such proceeding in advance of its final disposition (hereinafter an "*advancement of expenses*"); provided, however, that, if the DGCL requires, an advancement of expenses incurred by a Covered Person in his or her capacity as a director or officer of the Corporation (and not in any other capacity in which service was or is rendered by such Covered Person, including, without limitation, service to an employee benefit plan) shall be made only upon delivery to the Corporation of an undertaking (hereinafter an "*undertaking*"), by or on behalf of such Covered Person, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal (hereinafter a "*final adjudication*") that such Covered Person is not entitled to be indemnified for such expenses under this Article VIII or otherwise.

**Section 8.3    Right of Indemnitee to Bring Suit**.  If a claim under Section 8.1 or Section 8.2 is not paid in full by the Corporation within 60 days after a written claim therefor has been received by the Corporation, except in the case of a claim for an advancement of expenses, in which case the applicable period shall be 20 days, the Covered Person may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim.  If successful in whole or in part in any such suit, or in a suit brought by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Covered Person shall also be entitled to be paid the expenses of prosecuting or defending such suit.  In (a) any suit brought by the Covered Person to enforce a right to indemnification hereunder (but not in a suit brought by a Covered Person to enforce a right to an advancement of expenses) it shall be a

defense that, and (b) in any suit brought by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Corporation shall be entitled to recover such expenses upon a final adjudication that, the Covered Person has not met any applicable standard for indemnification set forth in the DGCL. Neither the failure of the Corporation (including its directors who are not parties to such action, a committee of such directors, independent legal counsel, or its stockholders) to have made a determination prior to the commencement of such suit that indemnification of the Covered Person is proper in the circumstances because the Covered Person has met the applicable standard of conduct set forth in the DGCL, nor an actual determination by the Corporation (including a determination by its directors who are not parties to such action, a committee of such directors, independent legal counsel, or its stockholders) that the Covered Person has not met such applicable standard of conduct, shall create a presumption that the Covered Person has not met the applicable standard of conduct or, in the case of such a suit brought by the Covered Person, shall be a defense to such suit. In any suit brought by the Covered Person to enforce a right to indemnification or to an advancement of expenses hereunder, or by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that the Covered Person is not entitled to be indemnified, or to such advancement of expenses, under this Article VIII or otherwise shall be on the Corporation.

**Section 8.4     Non-Exclusivity of Rights.**   The rights provided to Covered Persons pursuant to this Article VIII shall not be exclusive of any other right that any Covered Person may have or hereafter acquire under applicable law, the Certificate of Incorporation, these Bylaws, an agreement, a vote of stockholders or disinterested directors, or otherwise.

**Section 8.5     Insurance.**   The Corporation may maintain insurance, at its expense, to protect itself and/or any director, officer, employee or agent of the Corporation or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under the DGCL.

**Section 8.6     Indemnification of Other Persons.**   This Article VIII shall not limit the right of the Corporation to the extent and in the manner authorized or permitted by law to indemnify and to advance expenses to persons other than Covered Persons. Without limiting the foregoing, the Corporation may, to the extent authorized from time to time by the Board, grant rights to indemnification and to the advancement of expenses to any employee or agent of the Corporation and to any other person who is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to an employee benefit plan, to the fullest extent of the provisions of this Article VIII with respect to the indemnification and advancement of expenses of Covered Persons under this Article VIII.

**Section 8.7     Amendments.**   Any repeal or amendment of this Article VIII by the Board or the stockholders of the Corporation or by changes in applicable law, or the adoption of any other provision of these Bylaws inconsistent with this Article VIII, shall, to the extent permitted by applicable law, be prospective only (except to the extent such amendment or change in applicable law permits the Corporation to provide broader indemnification rights to Covered Persons on a retroactive basis than permitted prior thereto), and will not in any way diminish or

adversely affect any right or protection existing hereunder in respect of any act or omission occurring prior to such repeal or amendment or adoption of such inconsistent provision.

**Section 8.8    Certain Definitions.** For purposes of this Article VIII, (a) references to "other enterprise" shall include any employee benefit plan; (b) references to "fines" shall include any excise taxes assessed on a person with respect to an employee benefit plan; (c) references to "serving at the request of the Corporation" shall include any service that imposes duties on, or involves services by, a person with respect to any employee benefit plan, its participants, or beneficiaries; and (d) a person who acted in good faith and in a manner such person reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan shall be deemed to have acted in a manner "not opposed to the best interest of the Corporation" for purposes of Section 145 of the DGCL.

**Section 8.9    Contract Rights.** The rights provided to Covered Persons pursuant to this Article VIII (a) shall be contract rights based upon good and valuable consideration, pursuant to which a Covered Person may bring suit as if the provisions of this Article VIII were set forth in a separate written contract between the Covered Person and the Corporation, (b) shall fully vest at the time the Covered Person first assumes his or her position as a director or officer of the Corporation, (c) are intended to be retroactive and shall be available with respect to any act or omission occurring prior to the adoption of this Article VIII, (d) shall continue as to a Covered Person who has ceased to be a director or officer of the Corporation, and (e) shall inure to the benefit of the Covered Person's heirs, executors and administrators.

**Section 8.10    Severability.** If any provision or provisions of this Article VIII shall be held to be invalid, illegal or unenforceable for any reason whatsoever: (a) the validity, legality and enforceability of the remaining provisions of this Article VIII shall not in any way be affected or impaired thereby; and (b) to the fullest extent possible, the provisions of this Article VIII (including, without limitation, each such portion of this Article VIII containing any such provision held to be invalid, illegal or unenforceable) shall be construed so as to give effect to the intent manifested by the provision held invalid, illegal or unenforceable.

**ARTICLE IX**
**MISCELLANEOUS**

**Section 9.1    Place of Meetings.** If the place of any meeting of stockholders, the Board or committee of the Board for which notice is required under these Bylaws is not designated in the notice of such meeting, such meeting shall be held at the principal business office of the Corporation; provided, however, if the Board has, in its sole discretion, determined that a meeting shall not be held at any place, but instead shall be held by means of remote communication pursuant to Section 9.5 hereof, then such meeting shall not be held at any place.

**Section 9.2    Fixing Record Dates.**

(a)    In order that the Corporation may determine the stockholders entitled to notice of any meeting of stockholders or any adjournment thereof, the Board may fix a record date, which shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which record date shall not be more than 60 nor less than 10 days before the

date of such meeting. If the Board so fixes a record date, such date shall also be the record date for determining the stockholders entitled to vote at such meeting unless the Board determines, at the time it fixes such record date, that a later date on or before the date of the meeting shall be the date for making such determination. If no record date is fixed by the Board, the record date for determining stockholders entitled to notice of and to vote at a meeting of stockholders shall be at the close of business on the business day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the business day next preceding the day on which the meeting is held. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board may fix a new record date for determination of stockholders entitled to vote at the adjourned meeting, and in such case shall also fix as the record date for stockholders entitled to notice of such adjourned meeting the same or an earlier date as that fixed for determination of stockholders entitled to vote in accordance with the foregoing provisions of this Section 9.2(a) at the adjourned meeting.

(b)     In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than 60 days prior to such action. If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board adopts the resolution relating thereto.

(c)     In order that the Corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting in accordance with Section 2.9, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which date shall not be more than 10 days after the date upon which the resolution fixing the record date is adopted by the Board. If no record date has been fixed by the Board, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board is otherwise required, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in the State of Delaware, its principal place of business, or the Secretary of the Corporation. Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested. If no record date has been fixed by the Board and prior action by the Board is otherwise required, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board adopts the resolution taking such prior action.

### Section 9.3     Means of Giving Notice.

(a)     Notice to Directors.  Whenever under applicable law, the Certificate of Incorporation or these Bylaws notice is required to be given to any director, such notice shall be given either (i) in writing and sent by hand delivery, through the United States mail, or by a nationally recognized overnight delivery service for next day delivery, (ii) by means of facsimile telecommunication or other form of electronic transmission, or (iii) by oral notice given

personally or by telephone. A notice to a director will be deemed given as follows: (i) if given by hand delivery, orally, or by telephone, when actually received by the director, (ii) if sent through the United States mail, when deposited in the United States mail, with postage and fees thereon prepaid, addressed to the director at the director's address appearing on the records of the Corporation, (iii) if sent for next day delivery by a nationally recognized overnight delivery service, when deposited with such service, with fees thereon prepaid, addressed to the director at the director's address appearing on the records of the Corporation, (iv) if sent by facsimile telecommunication, when sent to the facsimile transmission number for such director appearing on the records of the Corporation, (v) if sent by electronic mail, when sent to the electronic mail address for such director appearing on the records of the Corporation, or (vi) if sent by any other form of electronic transmission, when sent to the address, location or number (as applicable) for such director appearing on the records of the Corporation.

(b)　　Notice to Stockholders. Whenever under applicable law, the Certificate of Incorporation or these Bylaws notice is required to be given to any stockholder, such notice may be given (i) in writing and sent either by hand delivery, through the United States mail, or by a nationally recognized overnight delivery service for next day delivery, or (ii) by means of a form of electronic transmission consented to by the stockholder, to the extent permitted by, and subject to the conditions set forth in Section 232 of the DGCL. A notice to a stockholder shall be deemed given as follows: (i) if given by hand delivery, when actually received by the stockholder, (ii) if sent through the United States mail, when deposited in the United States mail, with postage and fees thereon prepaid, addressed to the stockholder at the stockholder's address appearing on the stock ledger of the Corporation, (iii) if sent for next day delivery by a nationally recognized overnight delivery service, when deposited with such service, with fees thereon prepaid, addressed to the stockholder at the stockholder's address appearing on the stock ledger of the Corporation, and (iv) if given by a form of electronic transmission consented to by the stockholder to whom the notice is given and otherwise meeting the requirements set forth above, (A) if by facsimile transmission, when directed to a number at which the stockholder has consented to receive notice, (B) if by electronic mail, when directed to an electronic mail address at which the stockholder has consented to receive notice, (C) if by a posting on an electronic network together with separate notice to the stockholder of such specified posting, upon the later of (1) such posting and (2) the giving of such separate notice, and (D) if by any other form of electronic transmission, when directed to the stockholder. A stockholder may revoke such stockholder's consent to receiving notice by means of electronic communication by giving written notice of such revocation to the Corporation. Any such consent shall be deemed revoked if (1) the Corporation is unable to deliver by electronic transmission two consecutive notices given by the Corporation in accordance with such consent and (2) such inability becomes known to the Secretary or an Assistant Secretary or to the Corporation's transfer agent, or other person responsible for the giving of notice; provided, however, the inadvertent failure to treat such inability as a revocation shall not invalidate any meeting or other action.

(c)　　Electronic Transmission. "*Electronic transmission*" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process, including but not limited to transmission by telex, facsimile telecommunication, electronic mail, telegram and cablegram.

(d) <u>Notice to Stockholders Sharing Same Address</u>. Without limiting the manner by which notice otherwise may be given effectively by the Corporation to stockholders, any notice to stockholders given by the Corporation under any provision of the DGCL, the Certificate of Incorporation or these Bylaws shall be effective if given by a single written notice to stockholders who share an address if consented to by the stockholders at that address to whom such notice is given. A stockholder may revoke such stockholder's consent by delivering written notice of such revocation to the Corporation. Any stockholder who fails to object in writing to the Corporation within 60 days of having been given written notice by the Corporation of its intention to send such a single written notice shall be deemed to have consented to receiving such single written notice.

(e) <u>Exceptions to Notice Requirements</u>. Whenever notice is required to be given, under the DGCL, the Certificate of Incorporation or these Bylaws, to any person with whom communication is unlawful, the giving of such notice to such person shall not be required and there shall be no duty to apply to any governmental authority or agency for a license or permit to give such notice to such person. Any action or meeting that shall be taken or held without notice to any such person with whom communication is unlawful shall have the same force and effect as if such notice had been duly given. If the action taken by the Corporation is such as to require the filing of a certificate with the Secretary of State of Delaware, the certificate shall state, if such is the fact and if notice is required, that notice was given to all persons entitled to receive notice except such persons with whom communication is unlawful.

Whenever notice is required to be given by the Corporation, under any provision of the DGCL, the Certificate of Incorporation or these Bylaws, to any stockholder to whom (1) notice of two consecutive annual meetings of stockholders and all notices of stockholder meetings or of the taking of action by written consent of stockholders without a meeting to such stockholder during the period between such two consecutive annual meetings, or (2) all, and at least two payments (if sent by first-class mail) of dividends or interest on securities during a 12-month period, have been mailed addressed to such stockholder at such stockholder's address as shown on the records of the Corporation and have been returned undeliverable, the giving of such notice to such stockholder shall not be required. Any action or meeting that shall be taken or held without notice to such stockholder shall have the same force and effect as if such notice had been duly given. If any such stockholder shall deliver to the Corporation a written notice setting forth such stockholder's then-current address, the requirement that notice be given to such stockholder shall be reinstated. If the action taken by the Corporation is such as to require the filing of a certificate with the Secretary of State of Delaware, the certificate need not state that notice was not given to persons to whom notice was not required to be given pursuant to Section 230(b) of the DGCL. The exception in subsection (1) of the first sentence of this paragraph to the requirement that notice be given shall not be applicable to any notice returned as undeliverable if the notice was given by electronic transmission.

**Section 9.4    Waiver of Notice**. Whenever any notice is required to be given under applicable law, the Certificate of Incorporation, or these Bylaws, a written waiver of such notice, signed before or after the date of such meeting by the person or persons entitled to said notice, or a waiver by electronic transmission by the person entitled to said notice, shall be deemed equivalent to such required notice. All such waivers shall be kept with the books of the Corporation. Attendance at a meeting shall constitute a waiver of notice of such meeting, except

where a person attends for the express purpose of objecting to the transaction of any business on the ground that the meeting was not lawfully called or convened.

### Section 9.5    Meeting Attendance via Remote Communication Equipment.

    (a)    <u>Stockholder Meetings</u>. If authorized by the Board in its sole discretion, and subject to such guidelines and procedures as the Board may adopt, stockholders and proxyholders not physically present at a meeting of stockholders may, by means of remote communication:

    (i)    participate in a meeting of stockholders; and

    (ii)    be deemed present in person and vote at a meeting of stockholders, whether such meeting is to be held at a designated place or solely by means of remote communication, provided that (A) the Corporation shall implement reasonable measures to verify that each person deemed present and permitted to vote at the meeting by means of remote communication is a stockholder or proxyholder, (B) the Corporation shall implement reasonable measures to provide such stockholders and proxyholders a reasonable opportunity to participate in the meeting and to vote on matters submitted to the stockholders, including an opportunity to read or hear the proceedings of the meeting substantially concurrently with such proceedings, and (C) if any stockholder or proxyholder votes or takes other action at the meeting by means of remote communication, a record of such votes or other action shall be maintained by the Corporation.

    (b)    <u>Board Meetings</u>. Unless otherwise restricted by applicable law, the Certificate of Incorporation or these Bylaws, members of the Board or any committee thereof may participate in a meeting of the Board or any committee thereof by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other. Such participation in a meeting shall constitute presence in person at the meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting was not lawfully called or convened.

### Section 9.6    Dividends.
The Board may from time to time declare, and the Corporation may pay, dividends (payable in cash, property or shares of the Corporation's capital stock) on the Corporation's outstanding shares of capital stock, subject to applicable law and the Certificate of Incorporation.

### Section 9.7    Reserves.
The Board may set apart out of the funds of the Corporation available for dividends a reserve or reserves for any proper purpose and may abolish any such reserve.

### Section 9.8    Contracts and Negotiable Instruments.
Except as otherwise provided by applicable law, the Certificate of Incorporation or these Bylaws, any contract, bond, deed, lease, mortgage or other instrument may be executed and delivered in the name and on behalf of the Corporation by such officer or officers or other employee or employees of the Corporation as the Board may from time to time authorize. Such authority may be general or confined to

specific instances as the Board may determine. The Chairman of the Board, the Chief Executive Officer, the Chief Operating Officer or any Vice President may execute and deliver any contract, bond, deed, lease, mortgage or other instrument in the name and on behalf of the Corporation. Subject to any restrictions imposed by the Board, the Chairman of the Board, Chief Executive Officer, Chief Operating Officer or any Vice President may delegate powers to execute and deliver any contract, bond, deed, lease, mortgage or other instrument in the name and on behalf of the Corporation to other officers or employees of the Corporation under such person's supervision and authority, it being understood, however, that any such delegation of power shall not relieve such officer of responsibility with respect to the exercise of such delegated power.

**Section 9.9    Fiscal Year**.  The fiscal year of the Corporation shall be fixed by the Board.

**Section 9.10    Seal**.  The Board may adopt a corporate seal, which shall be in such form as the Board determines.  The seal may be used by causing it or a facsimile thereof to be impressed, affixed or otherwise reproduced.

**Section 9.11    Books and Records**.  The books and records of the Corporation may be kept within or outside the State of Delaware at such place or places as may from time to time be designated by the Board.

**Section 9.12    Resignation**.  Any director, committee member or officer may resign by giving notice thereof in writing or by electronic transmission to the Chairman of the Board, the Chief Executive Officer, the Chief Operating Officer or the Secretary.  The resignation shall take effect at the time specified therein, or at the time of receipt of such notice if no time is specified or the specified time is earlier than the time of such receipt.  Unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

**Section 9.13    Surety Bonds**.  Such officers, employees and agents of the Corporation (if any) as the Chairman of the Board, Chief Executive Officer, the Chief Operating Officer or the Board may direct, from time to time, shall be bonded for the faithful performance of their duties and for the restoration to the Corporation, in case of their death, resignation, retirement, disqualification or removal from office, of all books, papers, vouchers, money and other property of whatever kind in their possession or under their control belonging to the Corporation, in such amounts and by such surety companies as the Chairman of the Board, Chief Executive Officer, Chief Operating Officer or the Board may determine.  The premiums on such bonds shall be paid by the Corporation and the bonds so furnished shall be in the custody of the Secretary.

**Section 9.14    Securities of Other Corporations**.  Powers of attorney, proxies, waivers of notice of meeting, consents in writing and other instruments relating to securities owned by the Corporation may be executed in the name of and on behalf of the Corporation by the Chairman of the Board, Chief Executive Officer, Chief Operating Officer or any Vice President. Any such officer, may, in the name of and on behalf of the Corporation, take all such action as any such officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation in which the Corporation may own securities, or to consent in writing, in the name of the Corporation as such holder, to any action by such corporation, and at any such meeting or with respect to any such consent shall possess and may exercise any and all rights and

power incident to the ownership of such securities and which, as the owner thereof, the Corporation might have exercised and possessed. The Board may from time to time confer like powers upon any other person or persons.

**Section 9.15  Amendments**. The Board shall have the power to adopt, amend, alter or repeal the Bylaws; provided, however, that (i) Section 3.1(a) and (ii) the votes necessary to amend, alter or repeal Section 3.1(a) may only be amended, altered or repealed by the affirmative vote of at least 66⅔% of the Whole Board.  Subject to the foregoing, the affirmative vote of a majority of the Whole Board shall be required to adopt, amend, alter or repeal the Bylaws. The Bylaws also may be adopted, amended, altered or repealed by the stockholders; provided, however, that (i) in addition to any vote of the holders of any class or series of capital stock of the Corporation required by applicable law or the Certificate of Incorporation, the affirmative vote of the holders of at least a majority of the voting power of all outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required for the stockholders to adopt, amend, alter or repeal the Bylaws (with the exception of Section 3.1(a)) and (ii) in addition to any vote of the holders of any class or series of capital stock of the Corporation required by applicable law or the Certificate of Incorporation, the affirmative vote of the holders of at least 66⅔% of the shares of all then outstanding shares of common stock of the Corporation, par value $0.001 per share, voting together as a single class, shall be required for the stockholders to (a) amend, alter or repeal Section 3.1(a) or (b) alter the approvals required set forth in this clause (ii).

**Exhibit I-3**

**Certificate of Merger Merging Aventine Renewable Energy, LLC Into Aventine Renewable Energy Holdings, Inc.**

## CERTIFICATE OF MERGER
## MERGING
## AVENTINE RENEWABLE ENERGY, LLC
## INTO
## AVENTINE RENEWABLE ENERGY HOLDINGS, INC.

Pursuant to Section 264 of the General Corporation Law of the State of Delaware and Section 18-209 of the Delaware Limited Liability Company Act, the undersigned corporation hereby certifies that:

1.　The name and domicile of the parties to the merger are:

| Name | State of Domicile |
|---|---|
| Aventine Renewable Energy Holdings, Inc. | Delaware |
| Aventine Renewable Energy, LLC | Delaware |

2.　An agreement of merger (the "**Agreement**") has been approved, adopted, certified, executed and acknowledged by each of the parties to the merger in accordance with Section 264 of the General Corporation Law of the State of Delaware and Section 18-209 of the Delaware Limited Liability Company Act.

3.　The name of the surviving entity is "Aventine Renewable Energy Holdings, Inc.", a Delaware corporation (the "**Corporation**").

4.　The certificate of incorporation of the Corporation will be the certificate of incorporation of the surviving entity.

5.　The executed Agreement is on file at the office of the Corporation located at 120 North Parkway Drive, Pekin, Illinois 61554.

6.　A copy of the Agreement will be furnished by the Corporation on request and without cost to any stockholder of the Corporation or any member of Aventine Renewable Energy, LLC.

**[Signature Page Follows.]**

IN WITNESS WHEREOF, Aventine Renewable Energy Holdings, Inc. has caused this Certificate to be executed by an authorized officer on [●] day of [●], 2010.

AVENTINE RENEWABLE ENERGY HOLDINGS, INC.

By: _____
        Name: [●]
        Title:  [●]

<u>**Exhibit I-4**</u>

**Agreement of Merger Merging Aventine Renewable Energy, LLC Into Aventine
Renewable Energy Holdings, Inc.**

# AGREEMENT OF MERGER
## MERGING
## AVENTINE RENEWABLE ENERGY, LLC
## INTO
## AVENTINE RENEWABLE ENERGY HOLDINGS, INC.

This Agreement of Merger (the "***Agreement***") is entered into on this [●] day of [●], 2010 by and between AVENTINE RENEWABLE ENERGY HOLDINGS, INC., a Delaware corporation (the "***Corporation***"), and AVENTINE RENEWABLE ENERGY, LLC, a Delaware limited liability company ("***ARE LLC***").

WHEREAS, pursuant to that certain First Amended Joint Plan of Reorganization of the Corporation dated January 13, 2010 as confirmed pursuant to the confirmation order entered by the United States Bankruptcy Court for the District of Delaware on [●], 2010 in the reorganization proceeding styled In re Aventine Renewable Energy Holdings, Inc., *et al.*, Case No. 09-11214 (KG), ARE LLC shall merge with and into the Corporation (the "***Merger***") in accordance with Section 264 of the General Corporation Law of the State of Delaware and Section 18-209 of the Delaware Limited Liability Company Act (the "***Applicable Laws***"); and

WHEREAS, the assets, debts, liabilities, obligations, restrictions, disabilities and duties of ARE LLC and the Corporation shall be allocated hereunder as provided under the Applicable Laws, and the Corporation shall survive the Merger, all upon the terms and subject to the conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual benefits to be derived from this Agreement and the Merger, the parties hereto agree as follows:

## ARTICLE I
## THE MERGER

At the Effective Time (as hereinafter defined), ARE LLC shall be merged with and into the Corporation in accordance with the Applicable Laws, and the separate existence of ARE LLC shall cease and the Corporation shall thereafter continue as the surviving corporation (the "***Surviving Corporation***") under the laws of the State of Delaware.

## ARTICLE II
## THE SURVIVING CORPORATION

At the Effective Time, the Certificate of Incorporation of the Corporation, as in effect immediately prior to the Effective Time, shall be the Certificate of Incorporation of the Surviving Corporation.

At the Effective Time, the Bylaws of the Corporation, as in effect immediately prior to the Effective Time, shall be the Bylaws of the Surviving Corporation.

At the Effective Time, the officers and directors of the Corporation shall be the officers and directors of the Surviving Corporation until their successors are elected and have qualified or their earlier death, resignation or removal.

## ARTICLE III
## MANNER AND BASIS OF CONVERTING SHARES AND INTERESTS

The manner and basis of converting the ownership interests of ARE LLC into shares, obligations, or other securities of the Surviving Corporation or any other corporation or, in whole or in part, into cash or other property and the manner and basis of converting rights to acquire ownership interests of ARE LLC into rights to acquire shares, obligations, or other securities of the Surviving Corporation or any other corporation or, in whole or in part, into cash or other property are as follows:

(a)    At the Effective Time, each membership interest of ARE LLC, shall, by virtue of the Merger and without any action on the part of the holder thereof, be automatically cancelled and retired, shall cease to exist and shall no longer be outstanding.

(b)    Upon and from and after the Effective Time, all property, rights, privileges, powers and franchises of ARE LLC shall vest in the Surviving Corporation, and all liabilities and obligations of ARE LLC shall become liabilities and obligations of the Surviving Corporation.

## ARTICLE IV
## EFFECT OF MERGER

At the Effective Time, all property (including, without limitation, the real, personal and intangible property), rights, privileges, powers and franchises of ARE LLC shall vest in the Surviving Corporation, and all liabilities and obligations of ARE LLC shall become liabilities and obligations of the Surviving Corporation.

## ARTICLE V
## EFFECTIVE TIME

Subject to the terms and conditions of this Agreement, a certificate of merger (the "*Certificate of Merger*") (a copy of which is attached hereto as Exhibit A), shall be duly prepared, executed and acknowledged by the Surviving Entity and thereafter delivered to the Secretary of State of the State of Delaware for filing as provided in the Applicable Laws. The Merger shall be effective immediately upon the filing of the Certificate of Merger (the "*Effective Time*").

[Signature Page Follows]

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed on its behalf as of the day and year first written above.

AVENTINE RENEWABLE ENERGY HOLDINGS, INC.

By: _____
        Name:  [●]
        Title:  [●]


AVENTINE RENEWABLE ENERGY, LLC

By: _____
        Name:  [●]
        Title:  [●]

# EXHIBIT A

CERTIFICATE OF MERGER

(see attached)

## Exhibit I-5

**Aventine Renewable Energy, Inc. Bylaws**

# AMENDED AND RESTATED BYLAWS

## OF

## AVENTINE RENEWABLE ENERGY, INC.

\* \* \* \* \*

These Amended and Restated Bylaws were duly adopted by the Board of Directors of Aventine Renewable Energy, Inc. on [●], 2010:

## ARTICLE 1
## OFFICES

Section 1.01  *Registered Office.*  The registered office shall be in the City of Wilmington, County of New Castle, State of Delaware.

Section 1.02  *Other Offices.*  The Corporation may also have offices at such other places both within and without the State of Delaware as the Board of Directors may from time to time determine or the business of the Corporation may require.

Section 1.03  *Books.*  The books of the Corporation may be kept within or without the State of Delaware as the Board of Directors may from time to time determine or the business of the Corporation may require.

## ARTICLE 2
## MEETINGS OF STOCKHOLDERS

Section 2.01  *Time and Place of Meetings.*  All meeting of stockholders shall be held at such place, either within or without the State of Delaware, on such date and at such time as may be determined from time to time by the Board of Directors (or the Chairman in the absence of a designation by the Board of Directors).

Section 2.02  *Annual Meetings.*  Unless directors are elected by written consent in lieu of an annual meeting as permitted by the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended ("*Delaware Law*"), an annual meeting of stockholders shall be held for the election of directors and to transact such other business as may properly be brought before the meeting.  Stockholders may, unless the certificate of incorporation otherwise provides, act by written consent to elect directors.

Section 2.03  *Special Meetings.*  Special meetings of stockholders may be called by the Board of Directors or the Chairman of the Board and shall be called by the Secretary at the request in writing of holders of record of a majority of the outstanding capital stock of the Corporation entitled to vote.  Such request shall state the purpose or purposes of the proposed meeting.

Section 2.04  *Notice of Meetings and Adjourned Meetings; Waivers of Notice.*  (a) Whenever stockholders are required or permitted to take any action at a meeting, a written notice

of the meeting shall be given which shall state the place, if any, date and hour of the meeting, the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called. Unless otherwise provided by Delaware Law, such notice shall be given not less than 10 nor more than 60 days before the date of the meeting to each stockholder of record entitled to vote at such meeting. Unless these bylaws otherwise require, when a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time, place, if any, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, are announced at the meeting at which the adjournment is taken. At the adjourned meeting, the Corporation may transact any business which might have been transacted at the original meeting. If the adjournment is for more than 30 days, or after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

(b)     A written waiver of any such notice signed by the person entitled thereto, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to notice. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends the meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Business transacted at any special meeting of stockholders shall be limited to the purposes stated in the notice.

Section 2.05   *Quorum.*  Unless otherwise provided under the certificate of incorporation or these bylaws and subject to Delaware Law, the presence, in person or by proxy, of the holders of a majority of the outstanding capital stock of the Corporation entitled to vote at a meeting of stockholders shall constitute a quorum for the transaction of business. If, however, such quorum shall not be present or represented at any meeting of the stockholders, the stockholders present in person or represented by proxy shall adjourn the meeting, without notice other than announcement at the meeting, until a quorum shall be present or represented. At such adjourned meeting at which a quorum shall be present or represented any business may be transacted which might have been transacted at the meeting as originally notified.

Section 2.06   *Voting.*  (a) Unless otherwise provided in the certificate of incorporation and subject to Delaware Law, each stockholder shall be entitled to one vote for each outstanding share of capital stock of the Corporation held by such stockholder. Any share of capital stock of the Corporation held by the Corporation shall have no voting rights. Unless otherwise provided by Delaware Law, the certificate of incorporation or these bylaws, the election of directors shall be determined by a plurality of the votes cast by the stockholders present, in person or by written proxy, at a meeting of stockholders and entitled to vote thereon. All other matters shall be determined by the affirmative vote of a majority of the shares of capital stock of the Corporation present, in person or by written proxy, at a meeting of stockholders and entitled to vote on the subject matter.

(b)     Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to a corporate action in writing without a meeting may authorize another

person or persons to act for him by written proxy, but no such proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period.

Section 2.07  *Action by Consent.*  (a)  Unless otherwise provided in the certificate of incorporation, any action required to be taken at any annual or special meeting of stockholders, or any action which may be taken at any annual or special meeting of stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding capital stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the Corporation in accordance with Section 2.07(b).  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for such meeting had been the date that written consents signed by a sufficient number of stockholders to take the action were delivered to the Corporation as provided in Section 2.07(b).

(b)  Every written consent shall bear the date of signature of each stockholder who signs the consent, and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the earliest dated consent delivered in the manner required by this section and Delaware Law to the Corporation, written consents signed by a sufficient number of holders to take action are delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded. Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

Section 2.08  *Organization.*  At each meeting of stockholders, the Chairman of the Board, if one shall have been elected, or in the Chairman's absence or if one shall not have been elected, the director designated by the vote of the majority of the directors present at such meeting, shall act as chairman of the meeting.  The Secretary (or in the Secretary's absence or inability to act, the person whom the chairman of the meeting shall appoint secretary of the meeting) shall act as secretary of the meeting and keep the minutes thereof.

Section 2.09  *Order of Business.*  The order of business at all meetings of stockholders shall be as determined by the chairman of the meeting.

ARTICLE 3
DIRECTORS

Section 3.01  *General Powers.*  Except as otherwise provided in Delaware Law or the certificate of incorporation, the business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors; *provided* that the Corporation shall not take (and shall not cause or permit its subsidiaries to take) any of the actions set forth on Annex I hereto without the approval of a majority of the entire Board of Directors.

Section 3.02  *Number, Election and Term of Office.*  The number of directors which shall constitute the whole Board shall be fixed from time to time by resolution of the Board of Directors but shall not be less than one or more than five.  The directors shall be elected at the annual meeting of the stockholders by written ballot, except as provided in Section 2.02 and Section 3.12 herein, and each director so elected shall hold office until such director's successor is elected and qualified or until such director's earlier death, resignation or removal.  No decrease in the number of directors constituting the Board of Directors shall shorten the term of any incumbent director.  Directors need not be stockholders.

Section 3.03  *Quorum and Manner of Acting.*  Unless the certificate of incorporation or these bylaws require a greater number, a majority of the total number of directors shall constitute a quorum for the transaction of business, and the affirmative vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors.  When a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken.  At the adjourned meeting, the Board of Directors may transact any business which might have been transacted at the original meeting.  If a quorum shall not be present at any meeting of the Board of Directors the directors present thereat shall adjourn the meeting, from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

Section 3.04  *Time and Place of Meetings.*  The Board of Directors shall hold its meetings at such place, either within or without the State of Delaware, and at such time as may be determined from time to time by the Board of Directors (or the Chairman in the absence of a determination by the Board of Directors).

Section 3.05  *Annual Meeting.*  The Board of Directors shall meet for the purpose of organization, the election of officers and the transaction of other business, as soon as practicable after each annual meeting of stockholders, on the same day and at the same place where such annual meeting shall be held.  Notice of such meeting need not be given.  In the event such annual meeting is not so held, the annual meeting of the Board of Directors may be held at such place either within or without the State of Delaware, on such date and at such time as shall be specified in a notice thereof given in the manner as hereinafter provided in Section 3.07 herein or in a waiver of notice thereof signed by any director who chooses to waive the requirement of notice.

Section 3.06  *Regular Meetings.*  After the place and time of regular meetings of the Board of Directors shall have been determined and notice thereof shall have been once given to each member of the Board of Directors, regular meetings may be held without further notice being given.

Section 3.07  *Special Meetings.*  Special meetings of the Board of Directors may be called by the Chairman of the Board or the President and shall be called by the Chairman of the Board, President or Secretary on the written request of a majority of the directors.  Notice of special meetings of the Board of Directors shall be given to each director at least three days before the date of the meeting in such manner as is determined by the Board of Directors.

Section 3.08  *Committees*.  The Board of Directors may designate one or more committees, each committee to consist of one or more of the directors of the Corporation.  The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.  In the absence or disqualification of a member of a committee, the member or members present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member.  Any such committee, to the extent provided in the resolution of the Board of Directors, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it; but no such committee shall have the power or authority to: (a) approve or adopt, or recommend to the stockholders, any action or matter expressly required by Delaware Law to be submitted to the stockholders for approval or (b) adopt, amend or repeal any bylaw of the Corporation.  Each committee shall keep regular minutes of its meetings and report the same to the Board of Directors when required.

Section 3.09  *Action by Consent*.  Unless otherwise restricted by the certificate of incorporation or these bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting, if all members of the Board of committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions, are filed with the minutes of proceedings of the Board or committee.  Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Section 3.10  *Telephonic Meetings*.  Unless otherwise restricted by the certificate of incorporation or these bylaws, members of the Board of Directors, or any committee designated by the Board of Directors, may participate in a meeting of the Board of Directors, or such committee, as the case may be, by means of a conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at the meeting.

Section 3.11  *Resignation*.  Any director may resign at any time by giving notice in writing or by electronic transmission to the Board of Directors or to the Secretary of the Corporation.  The resignation of any director shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 3.12  *Vacancies*.  Unless otherwise provided in the certificate of incorporation, vacancies and newly created directorships resulting from any increase in the authorized number of directors elected by all the stockholders having the right to vote as a single class may be filled by a majority of the directors then in office, although less than a quorum, or by a sole remaining director.  Whenever the holders of any class or classes of stock or series thereof are entitled to elect one or more directors by the certificate of incorporation, vacancies and newly created directorships of such class or classes or series may be filled by a majority of directors elected by such class or classes or series thereof then in office, or by a sole remaining director so elected.

Each director so chosen shall hold office until his successor is elected and qualified, or until his earlier death, resignation or removal. If there are no directors in office, then an election of directors may be held in accordance with Delaware Law. Unless otherwise provided in the certificate of incorporation, when one or more directors shall resign from the Board, effective at a future date, a majority of the directors then in office, including those who have so resigned, shall have the power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective, and each director so chosen shall hold office as provided in the filling of other vacancies.

Section 3.13    *Removal.* Any director or the entire Board of Directors may be removed, with or without cause, at any time by the affirmative vote of the holders of a majority of the outstanding capital stock of the Corporation then entitled to vote at any election of directors and the vacancies thus created may be filled in accordance with Section 3.12 herein.

Section 3.14    *Compensation.* Unless otherwise restricted by the certificate of incorporation or these bylaws, the Board of Directors shall have authority to fix the compensation of directors, including fees and reimbursement of expenses.

ARTICLE 4
OFFICERS

Section 4.01    *Principal Officers.* The principal officers of the Corporation shall be a President, one or more Vice Presidents, a Treasurer and a Secretary who shall have the duty, among other things, to record the proceedings of the meetings of stockholders and directors in a book kept for that purpose. The Corporation may also have such other principal officers, including one or more Controllers, as the Board may in its discretion appoint. One person may hold the offices and perform the duties of any two or more of said offices, except that no one person shall hold the offices and perform the duties of President and Secretary.

Section 4.02    *Election, Term of Office and Remuneration.* The principal officers of the Corporation shall be elected annually by the Board of Directors at the annual meeting thereof. Each such officer shall hold office until his successor is elected and qualified, or until his earlier death, resignation or removal. The remuneration of all officers of the Corporation shall be fixed by the Board of Directors. Any vacancy in any office shall be filled in such manner as the Board of Directors shall determine.

Section 4.03    *Subordinate Officers.* In addition to the principal officers enumerated in Section 4.01 herein, the Corporation may have one or more Assistant Treasurers, Assistant Secretaries and Assistant Controllers and such other subordinate officers, agents and employees as the Board of Directors may deem necessary, each of whom shall hold office for such period as the Board of Directors may from time to time determine. The Board of Directors may delegate to any principal officer the power to appoint and to remove any such subordinate officers, agents or employees.

Section 4.04    *Resignations.* Any officer may resign at any time by giving written notice to the Board of Directors (or to a principal officer if the Board of Directors has delegated to such principal officer the power to appoint and to remove such officer). The resignation of any officer

shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 4.05 *Powers and Duties*. The officers of the Corporation shall have such powers and perform such duties incident to each of their respective offices and such other duties as may from time to time be conferred upon or assigned to them by the Board of Directors.

ARTICLE 5
GENERAL PROVISIONS

Section 5.01 *Fixing the Record Date*. (a) In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which record date shall not be more than 60 nor less than 10 days before the date of such meeting. If no record date is fixed by the Board of Directors, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; *provided* that the Board of Directors may fix a new record date for the adjourned meeting.

(b)     In order that the Corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which date shall not be more than 10 days after the date upon which the resolution fixing the record date is adopted by the Board of Directors. If no record date has been fixed by the Board of Directors, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is required by Delaware Law, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded. Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested. If no record date has been fixed by the Board of Directors and prior action by the Board of Directors is required by Delaware Law, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board of Directors adopts the resolution taking such prior action.

(c)     In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted,

and which record date shall be not more than 60 days prior to such action. If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

Section 5.02   *Dividends.*  Subject to limitations contained in Delaware Law and the certificate of incorporation, the Board of Directors may declare and pay dividends upon the shares of capital stock of the Corporation, which dividends may be paid either in cash, in property or in shares of the capital stock of the Corporation.

Section 5.03   *Year.*  The fiscal year of the Corporation shall commence on January 1 and end on December 31 of each year.

Section 5.04   *Corporate Seal.*  The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware". The seal may be used by causing it or a facsimile thereof to be impressed, affixed or otherwise reproduced.

Section 5.05   *Voting of Stock Owned by the Corporation.*  The Board of Directors may authorize any person, on behalf of the Corporation, to attend, vote at and grant proxies to be used at any meeting of the stockholders of any corporation (except this Corporation) in which the Corporation may hold stock.

Section 5.06   *Amendments.*  Except with regard to Section 3.01 and Annex I, these bylaws or any of them, may be altered, amended or repealed, or new bylaws may be made, by the stockholders entitled to vote thereon at any annual or special meeting thereof or by the Board of Directors.

(a)  *Charter and Bylaws.*  Alter, repeal, amend or adopt any provision of the charter, bylaws, or other similar governance documents of the Corporation or any of its subsidiaries.

(b)  *Stock Issuances and Repurchases.*  (i) Issue or sell, (ii) redeem, purchase or otherwise acquire or (iii) convert, exchange, cancel or retire, any shares of its capital stock, phantom equity or similar rights or interests (collectively, "*Securities*") or any warrants, options or other rights to purchase, substitute for or acquire any Securities or securities convertible into or exchangeable for any Securities except for issuances of capital stock upon exercise of stock options with approval of the Board of Directors pursuant to and in accordance with the terms of a stock option plan approved by the Board of Directors;

(c)  *Dissolution.*  (i) Dissolve or liquidate, or adopt any plan of dissolution or liquidation, (ii) consent to or commence any suit, proceeding or other action, file a petition or consent to a petition (A) under any existing or future law of any jurisdiction relating to bankruptcy, insolvency, reorganization of relief debtors, seeking to have an order for relief entered with respect to it, or seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, winding up, liquidation, dissolution, composition or other relief with respect to it, or (B) seeking appointment of a receiver, liquidator, assignee, trustee, custodian or other similar official for it or all or any substantial part of its assets, (iii) make any assignment for the benefit of creditors, (iv) admit in writing its inability to pay its debts generally as they become due, (v) voluntarily dissolve itself or (vi) take any corporate action in furtherance of any such actions;

(d)  *Business Combinations; Reorganizations; Reclassifications.*  Effect (i) any merger, consolidation or any other business combination or (ii) any reorganization, recapitalization, reclassification, spin-off, partial or complete liquidation, extraordinary dividend, split-up, distribution to stockholders or combination of the securities of the Corporation or any of its subsidiaries;

(e)  *Asset Sales and Acquisitions.*  Sell, lease, out-license or otherwise dispose of, purchase, lease, in-license or otherwise acquire any assets or property having an aggregate value of more than $500,000 in any transaction or series of related transactions other than (i) sales of ethanol, by-products and co-products inventory in the ordinary course consistent with past practices and (ii) purchases of raw materials in the ordinary course consistent with past practices;

(f)  *Business Scope.*  Make any material change in the nature, short or long-term business strategy, or geographic or market scope of the business of the Corporation or its subsidiaries;

(g)  *Annual Budget.*  Adopt or materially modify the annual budget or business plan or any short or long-term strategic plan of the Corporation or its subsidiaries;

(h)  *Material Contracts.*  Enter into, amend, modify, supplement or terminate any material contract, agreement or obligation, except (i) contracts for the sale of ethanol, by-products and co-products inventory in the ordinary course consistent with past practices, (ii)

contracts for purchases of raw materials in the ordinary course consistent with past practices and (iii) as otherwise expressly permitted pursuant to this Annex I;

(i) *Hedging.* Enter into, supplement, modify or terminate any interest rate, currency or commodity derivative (whether or not for hedging purposes), except in accordance with the hedging guidelines from time to time adopted by the Board of Directors;

(j) *Other Ventures.* Enter into any material partnership, joint venture, limited liability company, operating or other similar agreement or arrangement or any material marketing alliance or marketing agreement;

(k) *Limitations or Exclusivity Obligations.* Enter into any contract that (i) limits (or would limit) the freedom of the Corporation or any subsidiary to compete in any line of business or with any person or in any area in any material respect or (ii) contains exclusivity obligations or restrictions binding on the Corporation or any subsidiary;

(l) *Capital Expenditures.* Make or commit to make any capital expenditure, other than (i) capital expenditures included in the annual business plan and budget approved by the Board of Directors pursuant to paragraph (g) above and (ii) capital expenditures not included in any such business plan and budget that do not exceed $100,000 in the aggregate in any twelve-month period;

(m) *Certain Employee Matters.* (i) Appoint or remove any officer or other senior management personnel, (ii) change the compensation, bonus or other benefits payable to any director, officer or key employee or (iii) enter into, establish, adopt or amend (except as required by law) any bonus, profit-sharing, retirement, compensation or other benefit plan, arrangement or agreement covering any director, officer, manager or employee;

(n) *Indebtedness; Guarantees; Liens.* Except as otherwise expressly permitted under this Annex I, create, incur, assume, guarantee or otherwise become liable under any indebtedness for borrowed money or create, incur, assume or suffer to exist any lien on the property or assets of the Corporation or its subsidiaries other than liens that do not materially affect the value or use of its assets and properties;

(o) *Extensions of Credit; Investments.* Make, directly or indirectly, any advance, loan, extension of credit or capital contribution to, or other investment in, any person (other than extensions of trade credit in the ordinary course consistent with past practices);

(p) *Litigation.* Institute, terminate or settle any litigation, arbitration, proceeding, dispute or claim in excess of $100,000 (including any tax claim or audit adjustment);

(q) *Regulatory and Tax Status.* Approve or engage in any transaction affecting its regulatory or tax status, except for changes required by applicable laws or regulation;

(r) *Accounting; Tax.* Make any change in the financial accounting principles or the accounting or tax policies (including changing any annual tax accounting period) except for changes required by generally accepted accounting principles or applicable law or regulation;

(s)    *Retention of Certain Professionals.*  Employ, retain or remove any auditor, investment banker, financial advisor, primary or transaction legal counsel or person serving in a similar capacity; or

(t)    agree or commit to do any of the foregoing.

## <u>Exhibit I-6</u>

## Aventine Renewable Energy, Inc. Charter

SECOND AMENDED AND RESTATED

CERTIFICATE OF INCORPORATION

OF

AVENTINE RENEWABLE ENERGY, INC.

\*\*\*\*\*

Aventine Renewable Energy, Inc. (the "*Corporation*"), a corporation organized and existing under the laws of the State of Delaware, does hereby certify as follows:

1. (a)   The present name of the Corporation is Aventine Renewable Energy, Inc.; and

(b)   The name under which the Corporation was originally incorporated is Williams Ethanol Services, Inc., and the dates of filing the original Certificate of Incorporation of the Corporation and the Amended and Restated Certificate of Incorporation with the Secretary of State of the State of Delaware are May 10, 1995 and May 30, 2003, respectively.

2.   The Board of Directors of the Corporation duly adopted resolutions proposing to amend and restate the Amended and Restated Certificate of Incorporation of the Corporation, and thereafter, pursuant to such resolutions of the Board of Directors of the Corporation, a consent was signed by the sole stockholder of the Corporation.

3.   This Second Amended and Restated Certificate of Incorporation was duly adopted in accordance with the provisions of Sections 103, 245 and 303 of the General Corporation Law of the State of Delaware in order, among other things, to put into effect and carry out the confirmation order entered by the United States Bankruptcy Court for the District of Delaware on [●], 2010 in the reorganization proceeding styled In re Aventine Renewable Energy Holdings, Inc., *et al.*, Case No. 09-11214(KG), which confirmed the First Amended Joint Plan of Reorganization of the Corporation dated January 13, 2010.

The Amended Certificate of Incorporation of the Company is hereby amended and restated to read in its entirety as follows:

*FIRST*:  The name of the Corporation is Aventine Renewable Energy, Inc.

*SECOND*:  The address of the Corporation's registered office in the State of Delaware is Corporation Trust Center, 1209 Orange Street, City of Wilmington, County of New Castle, Delaware 19801.  The name of its registered agent at such address is the Corporation Trust Company.

*THIRD*:  The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended ("*Delaware Law*").

*FOURTH*:  (1) The total number of shares of all classes of capital stock that the Corporation is authorized to issue is 1,000 shares, consisting of 1,000 shares of common stock, par value $1.00 per share (the "***Common Stock***").

(2)  Notwithstanding any other provision in this ARTICLE FOURTH, pursuant to Section 1123(a)(6) of Chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***"), the Corporation will not issue non-voting equity securities (which shall not be deemed to include any warrants or options to purchase capital stock of the Corporation); *provided, however,* that this provision (a) will have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (b) will have such force and effect, if any, only for so long as such section is in effect and applicable to the Corporation or any of its wholly-owned subsidiaries and (c) in all events may be amended or eliminated in accordance with , and to the extent permitted by, applicable law as from time to time in effect.

*FIFTH*:  The management of the Corporation shall vest in the Board of Directors, subject to Section 3.01 of the bylaws of the Corporation.

*SIXTH*:  (1) Meetings of stockholders may be held within or without the State of Delaware, as the bylaws may provide.

(2)  Stockholders may act by written consent in lieu of meeting pursuant to Section 228 of Delaware Law.

*SEVENTH*:  In furtherance and not in limitation of the powers conferred by the laws of the State of Delaware:

(1)  The Board of Directors shall have the power to adopt, amend or repeal the bylaws of the Corporation, subject to and in compliance with the terms of such bylaws.

(2)  The books of the Corporation may be kept at such place within or without the State of Delaware as the bylaws of the Corporation may provide or as may be designated from time to time by the Board of Directors.

(3)  Elections of directors need not be written by ballot unless the bylaws of the Corporation shall so provide.

*EIGHTH*:  The Corporation expressly elects not to be governed by Section 203 of Delaware Law.

*NINTH*:  (1) A director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director to the fullest extent permitted by Delaware Law.

(2)(a)  Each person (and the heirs, executors or administrators of such person) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was a director or officer of the Corporation or is or was serving at the request of the Corporation as a director or officer of another corporation,

partnership, joint venture, trust or other enterprise (each, an "***Indemnified Person***"), shall be indemnified and held harmless by the Corporation to the fullest extent permitted by Delaware Law, except as may otherwise be provided in any written agreement between such Indemnified Person and the Corporation. The right to indemnification conferred in this ARTICLE NINTH shall also include the right to be paid by the Corporation the expenses incurred in connection with any such proceeding in advance of its final disposition to the fullest extent authorized by Delaware Law. The right to indemnification conferred in this ARTICLE NINTH shall be a contract right.

(b)     The Corporation may, by action of its Board of Directors, provide indemnification to such of the employees and agents of the Corporation to such extent and to such effect as the Board of Directors shall determine to be appropriate and authorized by Delaware Law.

(3)     The Corporation shall have power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss incurred by such person in any such capacity or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against such liability under Delaware Law.

(4)     The rights and authority conferred in this ARTICLE NINTH shall not be exclusive of any other right which any person may otherwise have or hereafter acquire.

(5)     Neither the amendment nor repeal of this ARTICLE NINTH, nor the adoption of any provision of this Second Amended and Restated Certificate of Incorporation or the bylaws of the Corporation, nor, to the fullest extent permitted by Delaware Law, any modification of law, shall eliminate or reduce the effect of this ARTICLE NINTH in respect of any acts or omissions occurring prior to such amendment, repeal, adoption or modification.

*TENTH*:  The Corporation, subject to and in compliance with the above ARTICLE NINTH, reserves the right to amend this Second Amended and Restated Certificate of Incorporation in any manner permitted by Delaware Law and all rights and power conferred herein on stockholders, directors and officer, if any, are subject to this reserved power.

IN WITNESS WHEREOF, the undersigned has caused this Second Amended and Restated Certificate of Incorporation to be duly executed in its corporate name by its duly authorized officer.

Dated: [●], 2010

AVENTINE RENEWABLE ENERGY, INC.

By: _____
       Name: [●]
       Title: [●]

## Exhibit I-7

### Aventine Renewable Energy - Aurora West LLC Agreement

# AMENDED AND RESTATED
## LIMITED LIABILITY COMPANY AGREEMENT
### OF
## AVENTINE RENEWABLE ENERGY – AURORA WEST, LLC

This Amended and Restated Limited Liability Company Agreement (this "*Agreement*") of Aventine Renewable Energy – Aurora West, LLC is entered into on this [●] day of [●], 2010 by Aventine Renewable Energy Holdings, Inc., a Delaware corporation, as the sole member. Aventine Renewable Energy Holdings, Inc., and any other person who, at such time, is admitted to the Company (as defined below) as a member in accordance with the terms of this Agreement, is a "*Member*".

WHEREAS, Aventine Renewable Energy, LLC ("*ARE*") formed Aventine Renewable Energy – Aurora West, LLC, a Delaware limited liability company (the "*Company*"), on August 2, 2006, pursuant to that certain Limited Liability Company Agreement dated August 11, 2006 (the "*Original Agreement*");

WHEREAS, pursuant to that certain Agreement of Merger dated [●], 2010, ARE merged with and into the Member;

WHEREAS, pursuant to this Agreement, the Member desires to amend and restate the Original Agreement as provided herein;

WHEREAS, in accordance with the First Amended Joint Plan of Reorganization of the Corporation dated January 13, 2010 (the "*Plan*") as confirmed pursuant to the confirmation order entered by the United States Bankruptcy Court for the District of Delaware on [●], 2010 in the reorganization proceeding styled In re Aventine Renewable Energy Holdings, Inc., *et al.*, Case No. 09-11214(KG), on the effective date of the Plan all membership interests in the Company outstanding immediately prior to the effective date of this Agreement were automatically and, without any action on the part of the respective holders thereof, cancelled and concurrently the Member was admitted as the sole member of, and became the holder of all limited liability company interests in, the Company; and

WHEREAS, the Member desires to amend and restate in its entirety the limited liability company agreement of the Company in this Agreement.

NOW, THEREFORE, the Member hereby agrees as follows:

1.   *Name*.  The name of the limited liability company formed hereby is Aventine Renewable Energy – Aurora West, LLC.

2.   *Filing of Certificates*.  The Member, as an authorized person, within the meaning of the Delaware Limited Liability Company Act (6 *Del.C.* §18-101, *et seq.*), as amended from time to time (the "*Act*"), shall execute, deliver and file, or cause the execution, delivery and filing of, all certificates required or permitted by the Act to be filed in the Office of the Secretary of State of the State of Delaware and any other certificates, notices or documents required or permitted by law for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

3. *Purposes*. The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be formed under the Act.

4. *Powers*. In furtherance of its purposes, but subject to all of the provisions of this Agreement, the Company shall have and may exercise all the powers now or hereafter conferred by Delaware law on limited liability companies formed under the Act. The Company shall have the power to do any and all acts necessary, appropriate, proper, advisable, incidental or convenient to or for the protection and benefit of the Company, and shall have, without limitation, any and all of the powers that may be exercised on behalf of the Company by the Member.

5. *Principal Business Office*. The principal business office of the Company shall be located at such location as may hereafter be determined by the Member.

6. *Registered Office; Registered Agent*. The address of the registered office and the name and address of the registered agent of the Company in the State of Delaware is c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, City of Wilmington, County of New Castle, Delaware 19801.

7. *Member*. The name and the mailing address of the Member are as follows:

| Name | Address |
|------|---------|
| Aventine Renewable Energy Holdings, Inc. | 120 North Parkway Drive<br>Pekin, IL 61554 |

8. *Limited Liability*. Except as required by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

9. *Non-Voting Securities*. Notwithstanding any other provision in this Agreement, pursuant to Section 1123(a)(6) of Chapter 11 of Title 11 of the United States Code, the Company will not issue non-voting equity securities (which shall not be deemed to include any warrants or options to purchase capital stock of the Company); *provided, however*, that this provision (a) will have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (b) will have such force and effect, if any, only for so long as such section is in effect and applicable to the Company or any of its wholly-owned subsidiaries and (c) in all events may be amended or eliminated in accordance with, and to the extent permitted by, applicable law as from time to time in effect.

10. *Capital Contributions*. The Member is deemed admitted as the member of the Company upon its execution and delivery of this Agreement. The Member may, but is not obligated to make any capital contribution to the Company.

11. *Allocation of Profits and Losses*. The Company's profits and losses shall be allocated solely to the Member.

12. *Distributions.* Subject to the limitations of Section 18-607 of the Act and any other applicable law, distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member.

13. *Management.* In accordance with Section 18-402 of the Act, management of the Company shall be vested in the Member. The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the State of Delaware. The Member has the authority to bind the Company.

14. *Officers.* The Member may, from time to time as it deems advisable, select natural persons who are employees or agents of the Company and designate them as officers of the Company (the "*Officers*") and assign titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person. Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office. Any delegation pursuant to this Section 14 may be revoked at any time by the Member. An Officer may be removed with or without cause by the Member.

15. *Other Business.* The Member may engage in or possess an interest in other business ventures of every kind and description, independently or with others. The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

16. *Exculpation and Indemnification.* (a) To the extent, at law or equity, a Member or Officer has duties (including fiduciary duties) to the Company or any other Member, the duties of such Members and Officers are hereby eliminated to the fullest extent permitted by the laws of the State of Delaware.

(b) Each person (and the heirs, executors or administrators of such person) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was a Member or Officer, shall be indemnified and held harmless by the Company to the fullest extent permitted by the laws of the State of Delaware for directors and officers of corporations organized under the laws of the State of Delaware. The right to indemnification under this Section 16 shall also include the right to be paid by the Company the expenses incurred in connection with any proceeding in advance of its final disposition to the fullest extent authorized by Delaware law. Any indemnity under this Section 16 shall be provided out of and to the extent of Company assets only, and no Member shall have personal liability on account hereof.

17. *Assignments.* The Member may at any time assign in whole or in part its limited liability company interest in the Company. If the Member transfers all of its interest in the Company pursuant to this Section 17, the transferee shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of

this Agreement. Such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

18. *Resignation.* The Member may at any time resign from the Company. If the Member resigns pursuant to this Section 18, an additional Member shall be admitted to the Company, subject to Section 19 hereof, upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective immediately prior to the resignation, and, immediately following such admission, the resigning Member shall cease to be a member for the Company.

19. *Admission of Additional Members.* One or more additional members of the Company may be admitted to the Company with the written consent of the Member.

20. *Dissolution.* (a) The Company shall dissolve and its affairs shall be wound up upon the first to occur of: (i) the written consent of the Member or (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

(b) In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets or proceeds from sale of the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

21. *Separability of Provisions.* If any provision of this Agreement or the application thereof is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable to any extent, the remainder of this Agreement and the application of such provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

22. *Entire Agreement.* This Agreement constitutes the entire agreement of the Member with respect to the subject matter hereof.

23. *Governing Law.* This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of law principles).

24. *Amendments.* This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

25. *Sole Benefit of Member.* The provisions of this Agreement are intended solely to benefit the Member and, to the fullest extent permitted by applicable law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor shall be a third-party beneficiary of this Agreement), and the Member shall have no duty or obligation to any creditor of the Company to make any contributions or payments to the Company.

26. *Effectiveness.* This Agreement shall become effective when the Member shall have executed and delivered the Agreement to the Company.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the [●]day of [●], 2010.

Aventine Renewable Energy Holdings, Inc.

By: _____
    Name: [●]
    Title: [●]

**Exhibit I-8**

**Aventine Renewable Energy - Mt Vernon LLC Agreement**

# AMENDED AND RESTATED
# LIMITED LIABILITY COMPANY AGREEMENT
## OF
# AVENTINE RENEWABLE ENERGY – MT VERNON, LLC

This Amended and Restated Limited Liability Company Agreement (this "*Agreement*") of Aventine Renewable Energy – Mt Vernon, LLC is entered into on this [●] day of [●], 2010 by Aventine Renewable Energy Holdings, Inc., a Delaware corporation, as the sole member. Aventine Renewable Energy Holdings, Inc., and any other person who, at such time, is admitted to the Company (as defined below) as a member in accordance with the terms of this Agreement, is a "*Member*".

WHEREAS, Aventine Renewable Energy, LLC ("*ARE*") formed Aventine Renewable Energy – Mt Vernon, LLC, a Delaware limited liability company (the "*Company*"), on August 23, 2006, pursuant to that certain Limited Liability Company Agreement dated August [●], 2006 (the "*Original Agreement*");

WHEREAS, pursuant to that certain Agreement of Merger dated [●], 2010, ARE merged with and into the Member;

WHEREAS, pursuant to this Agreement, the Member desires to amend and restate the Original Agreement as provided herein;

WHEREAS, in accordance with the First Amended Joint Plan of Reorganization of the Corporation dated January 13, 2010 (the "*Plan*") as confirmed pursuant to the confirmation order entered by the United States Bankruptcy Court for the District of Delaware on [●], 2010 in the reorganization proceeding styled In re Aventine Renewable Energy Holdings, Inc., *et al.*, Case No. 09-11214(KG), on the effective date of the Plan all membership interests in the Company outstanding immediately prior to the effective date of this Agreement were automatically and, without any action on the part of the respective holders thereof, cancelled and concurrently the Member was admitted as the sole member of, and became the holder of all limited liability company interests in, the Company; and

WHEREAS, the Member desires to amend and restate in its entirety the limited liability company agreement of the Company in this Agreement.

NOW, THEREFORE, the Member hereby agrees as follows:

1.      *Name.*  The name of the limited liability company formed hereby is Aventine Renewable Energy – Mt Vernon, LLC.

2.      *Filing of Certificates.*  The Member, as an authorized person, within the meaning of the Delaware Limited Liability Company Act (6 *Del.C.* §18-101, *et seq.*), as amended from time to time (the "*Act*"), shall execute, deliver and file, or cause the execution, delivery and filing of, all certificates required or permitted by the Act to be filed in the Office of the Secretary of State of the State of Delaware and any other certificates, notices or documents required or permitted by law for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

3.   *Purposes*.  The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be formed under the Act.

4.   *Powers*.  In furtherance of its purposes, but subject to all of the provisions of this Agreement, the Company shall have and may exercise all the powers now or hereafter conferred by Delaware law on limited liability companies formed under the Act.  The Company shall have the power to do any and all acts necessary, appropriate, proper, advisable, incidental or convenient to or for the protection and benefit of the Company, and shall have, without limitation, any and all of the powers that may be exercised on behalf of the Company by the Member.

5.   *Principal Business Office*.  The principal business office of the Company shall be located at such location as may hereafter be determined by the Member.

6.   *Registered Office; Registered Agent*.  The address of the registered office and the name and address of the registered agent of the Company in the State of Delaware is c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, City of Wilmington, County of New Castle, Delaware 19801.

7.   *Member*.  The name and the mailing address of the Member are as follows:

| Name | Address |
|------|---------|
| Aventine Renewable Energy Holdings, Inc. | 120 North Parkway Drive Pekin, IL 61554 |

8.   *Limited Liability*.  Except as required by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

9.   *Non-Voting Securities*.  Notwithstanding any other provision in this Agreement, pursuant to Section 1123(a)(6) of Chapter 11 of Title 11 of the United States Code, the Company will not issue non-voting equity securities (which shall not be deemed to include any warrants or options to purchase capital stock of the Company); *provided, however*, that this provision (a) will have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (b) will have such force and effect, if any, only for so long as such section is in effect and applicable to the Company or any of its wholly-owned subsidiaries and (c) in all events may be amended or eliminated in accordance with, and to the extent permitted by, applicable law as from time to time in effect.

10.   *Capital Contributions*.  The Member is deemed admitted as the member of the Company upon its execution and delivery of this Agreement.  The Member may, but is not obligated to make any capital contribution to the Company.

11.   *Allocation of Profits and Losses*.  The Company's profits and losses shall be allocated solely to the Member.

12. *Distributions.* Subject to the limitations of Section 18-607 of the Act and any other applicable law, distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member.

13. *Management.* In accordance with Section 18-402 of the Act, management of the Company shall be vested in the Member. The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the State of Delaware. The Member has the authority to bind the Company.

14. *Officers.* The Member may, from time to time as it deems advisable, select natural persons who are employees or agents of the Company and designate them as officers of the Company (the "*Officers*") and assign titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person. Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office. Any delegation pursuant to this Section 14 may be revoked at any time by the Member. An Officer may be removed with or without cause by the Member.

15. *Other Business.* The Member may engage in or possess an interest in other business ventures of every kind and description, independently or with others. The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

16. *Exculpation and Indemnification.* (a) To the extent, at law or equity, a Member or Officer has duties (including fiduciary duties) to the Company or any other Member, the duties of such Members and Officers are hereby eliminated to the fullest extent permitted by the laws of the State of Delaware.

(b) Each person (and the heirs, executors or administrators of such person) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was a Member or Officer, shall be indemnified and held harmless by the Company to the fullest extent permitted by the laws of the State of Delaware for directors and officers of corporations organized under the laws of the State of Delaware. The right to indemnification under this Section 16 shall also include the right to be paid by the Company the expenses incurred in connection with any proceeding in advance of its final disposition to the fullest extent authorized by Delaware law. Any indemnity under this Section 16 shall be provided out of and to the extent of Company assets only, and no Member shall have personal liability on account hereof.

17. *Assignments.* The Member may at any time assign in whole or in part its limited liability company interest in the Company. If the Member transfers all of its interest in the Company pursuant to this Section 17, the transferee shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of

this Agreement. Such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

18. *Resignation.* The Member may at any time resign from the Company. If the Member resigns pursuant to this <u>Section 18</u>, an additional Member shall be admitted to the Company, subject to <u>Section 19</u> hereof, upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective immediately prior to the resignation, and, immediately following such admission, the resigning Member shall cease to be a member for the Company.

19. *Admission of Additional Members.* One or more additional members of the Company may be admitted to the Company with the written consent of the Member.

20. *Dissolution.* (a) The Company shall dissolve and its affairs shall be wound up upon the first to occur of: (i) the written consent of the Member or (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

(b) In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets or proceeds from sale of the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

21. *Separability of Provisions.* If any provision of this Agreement or the application thereof is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable to any extent, the remainder of this Agreement and the application of such provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

22. *Entire Agreement.* This Agreement constitutes the entire agreement of the Member with respect to the subject matter hereof.

23. *Governing Law.* This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of law principles).

24. *Amendments.* This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

25. *Sole Benefit of Member.* The provisions of this Agreement are intended solely to benefit the Member and, to the fullest extent permitted by applicable law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor shall be a third-party beneficiary of this Agreement), and the Member shall have no duty or obligation to any creditor of the Company to make any contributions or payments to the Company.

26. *Effectiveness.* This Agreement shall become effective when the Member shall have executed and delivered the Agreement to the Company.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the [●] day of [●], 2010.

Aventine Renewable Energy Holdings, Inc.

By: _____
     Name: [●]
     Title: [●]

# Exhibit I-9

## Aventine Power LLC Agreement

# AMENDED AND RESTATED
# LIMITED LIABILITY COMPANY AGREEMENT
# OF
# AVENTINE POWER, LLC

This Amended and Restated Limited Liability Company Agreement (this "*Agreement*") of Aventine Power, LLC is entered into on this [●] day of [●], 2010 by Aventine Renewable Energy Holdings, Inc., a Delaware corporation, as the sole member. Aventine Renewable Energy Holdings, Inc., and any other person who, at such time, is admitted to the Company (as defined below) as a member in accordance with the terms of this Agreement, is a "*Member*".

WHEREAS, Aventine Renewable Energy, LLC ("*ARE*") formed Aventine Power, LLC, a Delaware limited liability company (the "*Company*"), on August 2, 2006, pursuant to that certain Limited Liability Company Agreement dated August 11, 2006 (the "*Original Agreement*");

WHEREAS, pursuant to that certain Agreement of Merger dated [●], 2010, ARE merged with and into the Member;

WHEREAS, pursuant to this Agreement, the Member desires to amend and restate the Original Agreement as provided herein;

WHEREAS, in accordance with the First Amended Joint Plan of Reorganization of the Corporation dated January 13, 2010 (the "*Plan*") as confirmed pursuant to the confirmation order entered by the United States Bankruptcy Court for the District of Delaware on [●], 2010 in the reorganization proceeding styled In re Aventine Renewable Energy Holdings, Inc., *et al.*, Case No. 09-11214(KG), on the effective date of the Plan all membership interests in the Company outstanding immediately prior to the effective date of this Agreement were automatically and, without any action on the part of the respective holders thereof, cancelled and concurrently the Member was admitted as the sole member of, and became the holder of all limited liability company interests in, the Company; and

WHEREAS, the Member desires to amend and restate in its entirety the limited liability company agreement of the Company in this Agreement.

NOW, THEREFORE, the Member hereby agrees as follows:

1.  *Name.* The name of the limited liability company formed hereby is Aventine Power, LLC.

2.  *Filing of Certificates.* The Member, as an authorized person, within the meaning of the Delaware Limited Liability Company Act (6 *Del.C.* §18-101, *et seq.*), as amended from time to time (the "*Act*"), shall execute, deliver and file, or cause the execution, delivery and filing of, all certificates required or permitted by the Act to be filed in the Office of the Secretary of State of the State of Delaware and any other certificates, notices or documents required or permitted by law for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

3. *Purposes*. The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be formed under the Act.

4. *Powers*. In furtherance of its purposes, but subject to all of the provisions of this Agreement, the Company shall have and may exercise all the powers now or hereafter conferred by Delaware law on limited liability companies formed under the Act. The Company shall have the power to do any and all acts necessary, appropriate, proper, advisable, incidental or convenient to or for the protection and benefit of the Company, and shall have, without limitation, any and all of the powers that may be exercised on behalf of the Company by the Member.

5. *Principal Business Office*. The principal business office of the Company shall be located at such location as may hereafter be determined by the Member.

6. *Registered Office; Registered Agent*. The address of the registered office and the name and address of the registered agent of the Company in the State of Delaware is c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, City of Wilmington, County of New Castle, Delaware 19801.

7. *Member*. The name and the mailing address of the Member are as follows:

| **Name** | **Address** |
| --- | --- |
| Aventine Renewable Energy Holdings, Inc. | 120 North Parkway Drive Pekin, IL 61554 |

8. *Limited Liability*. Except as required by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

9. *Non-Voting Securities*. Notwithstanding any other provision in this Agreement, pursuant to Section 1123(a)(6) of Chapter 11 of Title 11 of the United States Code, the Company will not issue non-voting equity securities (which shall not be deemed to include any warrants or options to purchase capital stock of the Company); *provided, however*, that this provision (a) will have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (b) will have such force and effect, if any, only for so long as such section is in effect and applicable to the Company or any of its wholly-owned subsidiaries and (c) in all events may be amended or eliminated in accordance with, and to the extent permitted by, applicable law as from time to time in effect.

10. *Capital Contributions*. The Member is deemed admitted as the member of the Company upon its execution and delivery of this Agreement. The Member may, but is not obligated to make any capital contribution to the Company.

11. *Allocation of Profits and Losses*. The Company's profits and losses shall be allocated solely to the Member.

12. *Distributions*. Subject to the limitations of Section 18-607 of the Act and any other applicable law, distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member.

13. *Management*. In accordance with Section 18-402 of the Act, management of the Company shall be vested in the Member. The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the State of Delaware. The Member has the authority to bind the Company.

14. *Officers*. The Member may, from time to time as it deems advisable, select natural persons who are employees or agents of the Company and designate them as officers of the Company (the "***Officers***") and assign titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person. Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office. Any delegation pursuant to this Section 14 may be revoked at any time by the Member. An Officer may be removed with or without cause by the Member.

15. *Other Business*. The Member may engage in or possess an interest in other business ventures of every kind and description, independently or with others. The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

16. *Exculpation and Indemnification*. (a) To the extent, at law or equity, a Member or Officer has duties (including fiduciary duties) to the Company or any other Member, the duties of such Members and Officers are hereby eliminated to the fullest extent permitted by the laws of the State of Delaware.

(b) Each person (and the heirs, executors or administrators of such person) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was a Member or Officer, shall be indemnified and held harmless by the Company to the fullest extent permitted by the laws of the State of Delaware for directors and officers of corporations organized under the laws of the State of Delaware. The right to indemnification under this Section 16 shall also include the right to be paid by the Company the expenses incurred in connection with any proceeding in advance of its final disposition to the fullest extent authorized by Delaware law. Any indemnity under this Section 16 shall be provided out of and to the extent of Company assets only, and no Member shall have personal liability on account hereof.

17. *Assignments*. The Member may at any time assign in whole or in part its limited liability company interest in the Company. If the Member transfers all of its interest in the Company pursuant to this Section 17, the transferee shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of

this Agreement. Such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

18. *Resignation.* The Member may at any time resign from the Company. If the Member resigns pursuant to this Section 18, an additional Member shall be admitted to the Company, subject to Section 19 hereof, upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective immediately prior to the resignation, and, immediately following such admission, the resigning Member shall cease to be a member for the Company.

19. *Admission of Additional Members.* One or more additional members of the Company may be admitted to the Company with the written consent of the Member.

20. *Dissolution.* (a) The Company shall dissolve and its affairs shall be wound up upon the first to occur of: (i) the written consent of the Member or (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

(b) In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets or proceeds from sale of the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

21. *Separability of Provisions.* If any provision of this Agreement or the application thereof is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable to any extent, the remainder of this Agreement and the application of such provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

22. *Entire Agreement.* This Agreement constitutes the entire agreement of the Member with respect to the subject matter hereof.

23. *Governing Law.* This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of law principles).

24. *Amendments.* This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

25. *Sole Benefit of Member.* The provisions of this Agreement are intended solely to benefit the Member and, to the fullest extent permitted by applicable law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor shall be a third-party beneficiary of this Agreement), and the Member shall have no duty or obligation to any creditor of the Company to make any contributions or payments to the Company.

26. *Effectiveness.* This Agreement shall become effective when the Member shall have executed and delivered the Agreement to the Company.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the [●] day of [●], 2010.

Aventine Renewable Energy Holdings, Inc.

By: _____
      Name: [●]
      Title: [●]

**Exhibit I-10**

**Nebraska Energy Amendment to Certificate of Formation**

# CERTIFICATE OF AMENDMENT OF
# ARTICLES OF ORGANIZATION OF
# NEBRASKA ENERGY, L.L.C.

The undersigned hereby certify as follows for the purpose of amending the Articles of Organization of Nebraska Energy, L.L.C., a Kansas limited liability company (the "***Company***"), in accordance with the Kansas Revised Limited Liability Company Act:

1.  The name of the Company is Nebraska Energy, L.L.C.

2.  Article SEVENTH of the Articles of Organization is hereby amended in its entirety to read as follows:

    SEVENTH.  The management of the Company shall be vested in its members, with the members having such voting rights and authority as may be set forth from time to time in the Company's Operating Agreement.  The names and addresses of the members are as follows:

| Name | Address |
| --- | --- |
| Aventine Renewable Energy Holdings, Inc. | 120 North Parkway Drive Pekin, IL 61554 |
| Aventine Renewable Energy, Inc. | 120 North Parkway Drive Pekin, IL 61554 |

IN WITNESS WHEREOF, the undersigned, being all of the members of the Company have executed this instrument as of the [●] day of [●], 2010.

Aventine Renewable Energy Holdings, Inc.

By: _____
    Name: [●]
    Title: [●]


Aventine Renewable Energy, Inc.

By: _____
    Name: [●]
    Title: [●]

# Exhibit I-11

## Nebraska Energy Amendment to LLC Agreement

# AMENDMENT TO THE

## AMENDED AND RESTATED OPERATING AGREEMENT

### OF

## NEBRASKA ENERGY, L.L.C.

THIS AMENDMENT TO THE AMENDED AND RESTATED OPERATING AGREEMENT OF NEBRASKA ENERGY, L.L.C. (the "*Amendment*") is made effective as of _____, by and between AVENTINE RENEWABLE ENERGY, INC., a Delaware corporation ("*ARE*"), and AVENTINE RENEWABLE ENERGY HOLDINGS, INC., a Delaware corporation ("*Holdings*," and collectively with ARE, the "*Members*"), and shall be binding upon such Members as may be added pursuant to the terms of the LLC Agreement as amended by this Amendment.

WHEREAS, pursuant to that certain Agreement of Merger dated [●], 2010, Aventine Renewable Energy, LLC merged with and into Holdings;

WHEREAS, in accordance with the First Amended Joint Plan of Reorganization of the Corporation dated January 13, 2010 (the "*Plan*") as confirmed pursuant to the confirmation order entered by the United States Bankruptcy Court for the District of Delaware on [●], 2010 in the reorganization proceeding styled In re Aventine Renewable Energy Holdings, Inc., *et al.*, Case No. 09-11214(KG), on the effective date of the Plan all membership interests in Nebraska Energy, L.L.C. outstanding immediately prior to the effective date of this Amendment were automatically and, without any action on the part of the respective holders thereof, cancelled and concurrently the Members were admitted as the members of, and became the holders of all limited liability company interests in, the Company;

WHEREAS, pursuant to this Amendment, the Members desire to amend Schedule A of the Amended and Restated Operating Agreement of Nebraska Energy, L.L.C., dated September 1, 1994, as amended by Amendment I, dated October 27, 1997, and an Amendment, dated as of February 9, 2001 (collectively, the "*LLC Agreement*") to reflect the current Members.

NOW THEREFORE, the undersigned, intending to be legally bound hereby, agree as follows:

1. Schedule A to the LLC Agreement is hereby deleted in its entirety and Schedule A attached to this Amendment is hereby inserted in its place.

2. A new Section 12.16 is hereby added to the LLC Agreement, to read as follows:

"Non-Voting Securities. Notwithstanding any other provision in this Agreement, pursuant to Section 1123(a)(6) of Chapter 11 of Title 11 of the United States Code, the Company will not issue non-voting equity securities (which shall

not be deemed to include any warrants or options to purchase capital stock of the Company); provided, however, that this provision (a) will have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (b) will have such force and effect, if any, only for so long as such section is in effect and applicable to the Company or any of its wholly-owned subsidiaries and (c) in all events may be amended or eliminated in accordance with, and to the extent permitted by, applicable law as from time to time in effect."

3.　　Except as modified by this Amendment, the Members hereby ratify and confirm the terms of the LLC Agreement in all respects.

*{Signature Page Follows}*

IN WITNESS WHEREOF, intending to be legally bound hereby, the Members executed this First Amendment to the Amended and Restated Operating Agreement of Nebraska Energy, L.L.C. as of the ___ day of _____, 2010.

ATTEST:                          **MEMBERS:**

                                 AVENTINE RENEWABLE ENERGY HOLDINGS, INC.

_____            By: _____
                                 Name:
                                 Title:


                                 AVENTINE RENEWABLE ENERGY, INC.

_____            By: _____
                                 Name:
                                 Title:

## Schedule A

| Name and Address | Percentage Interest |
| --- | --- |
| Aventine Renewable Energy Holdings, Inc.<br>120 North Parkway Drive<br>Pekin, IL 61554 | 78.42% |
| Aventine Renewable Energy, Inc.<br>120 North Parkway Drive<br>Pekin, IL 61554 | 21.58% |