# MICHAEL J. WELSH, P.E., S.E.
CONSULTING STRUCTURAL ENGINEER
300 WEST PERSHING STREET   MORTON, IL   61550

February 17, 2010

**Via email and U.S. mail**

**Addendum to Docket 738 Objection and Complaint
Aventine Bankruptcy Case 09-11214–KG**



Mr. Alan Maza
U.S. Securities and Exchange Commission
3 World Financial Center
17th Floor
New York, NY 10281

Mr. Maza,

I am writing to provide incremental information regarding possible securities trading violations that may be related to the conflict-of-interest issue outlined in my February 1, 2010 letter in reference to Aventine Renewable Energy Holdings, Inc. ("Aventine") Delaware bankruptcy Court Case No. 09-11214-KG. Please refer to Aventine Case Docket 738 for the original Complaint and Objection and detailed information regarding the perceived conflict-of-interest between the Minneapolis branch of Houlihan, Lokey, Howard, and Zukin Capital, Inc. ("Houlihan") and Minneapolis based hedge fund Whitebox Advisors ("Whitebox") one of Aventines major creditors holding unsecured Notes.

BACKGROUND

As an Aventine stockholder, I have been closely following the Case Dockets, news regarding Aventine's bankruptcy, and the stock trading and price movements of AVRNQ very closely from the beginning of Aventine's Chapter 11 filing. I have also followed Aventine's SEC filings, press releases, and other publicly available information regarding Aventine and the thanol industry in general from the time of their initial public offering in spring of 2006.

As expected with bankruptcies, Aventines stock price fell dramatically during time periods preceding and after their Chapter 11 filing in early April 2009. After coming off lows at the time of the filing, the stock traded in a fairly narrow range between about $0.10 and $0.21 during the period May 11 through September 15, or approximately 4 months. Daily trading volumes during the period August 12 through September 15 were particularly low ranging from less than 100k shares to a maximum of around 300k shares. During this period there was almost no news from the company or other significant sources of information.

However, during the trading sessions from September 16 through September 23 daily trading volumes increased significantly ranging from approximately 550k to 1200k with intraday prices rising significantly and ranging between $0.20 and $0.40. The volumes traded on Monday September 21

and Tuesday September 22 were particularly large at over 1 million shares, exceeding the average volumes over the preceding four months by a factor of about 4.

As an investor, this brief upside period left a lasting impression on me. Essentially, there was no positive news on the company, including press releases, docket information, SEC filings, message boards, etc. In fact, many Aventine stock investors and watchers on message boards were trying to find out why the stock had finally broken out to the upside on heavy volume. No one had a good explanation for the reason behind the move up.

After this mid-September period when both volume and stock price advanced strongly, the stock sold off slightly, to around $0.30, and then went on to trade higher in early October after the Debtwire article was released on October 8 describing Aventines "stand-alone" plan of reorganization. I believe the upward movement in the stock price after early October (mostly on low daily volumes) until early December was largely the result of investor perception that the "margin squeeze" that began in late 2008 for corn-based ethanol producers was truly over and that the company was not going to be sold off or broken up, but would emerge from bankruptcy intact. In addition, fuel prices (both RBOB and ethanol) had recovered and stabilized and ethanol producer crush margins were hitting 2-1/2 year highs during this period.

STATEMENT OF POSSIBLE SECURITIES TRADING VIOLATIONS

My concern with regard to possible securities trading violations is centered on the September 16 through September 23 period when both trading volumes and prices increased significantly, seemingly without any news that would move the price. I have been reviewing the detailed time entries contained in the September 2009 "Fee Applications" for Houlihan and also Greenberg, Traurig LLP ("Greenberg") in connection with Aventine's case. Below is a chronological summary of some of the detailed time entries that lead me to believe there may be a connection between the trades occurring between September 16 and September 23 (especially September 21 and 22) and the knowledge that the professionals working on Aventine's case had that warrants would be proposed in the Plan of Reorganization (the "Plan") for the existing equity holders.

STATEMENT OF FACTS AND TIMETABLE OF EVENTS

Greenberg Case Docket 524, Exhibit "B", page 4 - Time Entry 9/02, Kelly Terribile time entry stating "review precedent warrants for terms sought by unsecured creditors"

Greenberg Case Docket 524, Exhibit "B", page 4 - Time Entry 9/03, Kelly Terribile time entry stating "message regarding warrants and registration"


Greenberg Case Docket 524, Exhibit "B", page 7 - Time Entry 9/15, Donald Detweiler time entry stating "Multiple emails re: proposed warrants to equity"

Greenberg Case Docket 524, Exhibit "B", page 7 - Time Entry 9/15, Donald Detweiler time entry stating "Email Jefferies re: warrants to equity"

Greenberg Case Docket 524, Exhibit "B", page 7 - Time Entry 9/15, Donald Detweiler time entry stating "Review and analysis of revised Terms Sheet with proposed warrants to equity holders, discuss warrants with professionals"

Greenberg Case Docket 524, Exhibit "B", page 7 - Time Entry 9/15, Donald Detweiler time entry stating "Review warrant term sheet"

Houlihan Case Docket 540, Exhibit "A", page 5 - Time Entry 9/15, SS and XH traveled from Houlihan's Minneapolis office to New York

Greenberg Case Docket 524, Exhibit "B", page 4 - Time Entry 9/16, Kelly Terribile time entry stating "messages regarding warrant package for old equity"

Greenberg Case Docket 524, Exhibit "B", page 7 - Time Entry 9/16, Donald Detweiler time entry stating "Review and analysis of warrant issues; revise Term Sheets"

Houlihan Case Docket 540, Exhibit "A", page 5 and 6 - Time Entry 9/16, SS, XH, and TH attended a 3-1/2 hour meeting in New York stating "Meeting with Noteholders regarding corporate governance"

Greenberg Case Docket 524, Exhibit "B", page 7 - Time Entry 9/17, Joseph Herz time entry stating "review term sheet for equity (warrants)"

Greenberg Case Docket 524, Exhibit "B", page 7 - Time Entry 9/18, Donald Detweiler time entry stating "E-mail to Noteholders' counsel re: response to term sheets and equity request"

Link to Greenberg September Fee application (Case Docket 524) posted 10/28/2009:

http://www.aventineinfo.com/524_11214.pdf

Link to Houlihan September Fee application (Case Docket 540) posted 11/10/2009:

http://www.aventineinfo.com/540_11214.pdf

The above is only a sampling of the time entries from this period, and there may be others that may be of interest to the SEC and the Trustee if it is found that there is a problem with the stock trades that took place during this period.

After reviewing all prior Fee Applications contained in the case dockets for the above professionals, the time entries outlined in Greenberg's September Fee Application are the first time there is any

mention of a "warrant package for old equity". The above time entries, coupled with the stock volume and price movements, lead me to believe there is a strong possibility that privileged information regarding warrants in exchange for the existing equity may have been communicated inappropriately to other parties. This certainly seems possible, even though Houlihan has stated they have both "physical" and "technological" barriers in place to prevent such communications that could result in a potential conflict-of-interest.

As you know, the Fee Applications for these professionals are posted to the Case Dockets approximately one month after the period being billed, so the information contained in them is not "public information" until about one month after the period ends. For example, Greenberg's September billing was posted to the dockets on October 28, 2009. Therefore, no outside parties, or retail investors, should have known about the "warrant package for old equity" until the end of October at the earliest.

RESTATEMENT OF OBJECTION AND COMPLAINT

This Objection, submitted to the Bankruptcy Court, and this Complaint, submitted to the SEC, stem from the series of facts outlined above that I have documented with links to court documents so that they can be easily verified and substantiated.

As an Aventine stockholder, I restate my objection to the confirmation of the Debtors Plan of Reorganization ("The Plan") based on the conflict-of-interest detailed in my February 1 letter, and possible securities trading violation(s) as outlined above in this Addendum. The Plan should not be confirmed because the valuation that it is predicated upon was developed by the Debtors restructuring and financial advisor who is one of the parties to the conflict-of-interest.

The conflict-of-interest call into question all of Houlihan's services rendered to Aventine, including their advising of Aventine prior to the April 8 Chapter 11 filing, the valuation analysis of Aventine's business, the evaluation of restructuring alternatives, and the valuation of Aventines PP&E assets. Houlihan's services form the primary foundation for Aventine's Plan of Reorganization which is currently in the process of being voted upon. The Plan is the direct result of Houlihan's work on behalf of Aventine whereby they represented themselves as "disinterested professionals", with a "Compliance Group" who routinely conducts "ongoing conflict searches" to make sure they have no connections to Aventine's creditors that would

compromise their advising services. Because Houlihan is not "disinterested", and has been advising Aventine for over one year in a compromised relationship, the current Plan of Reorganization should not be approved and an alternate plan should be developed that is fair and equitable to all stakeholders, including stockholders.

REQUESTS TO THE SEC U.S. AND THE U.S. TRUSTEE

I respectfully request the SEC investigate the possibility of securities trading violations taking place in mid-September 2009 as a result of the communication of privileged information regarding warrants being exchanged for existing equity outlined above.

I respectfully request the Court refrain from approving the current Plan of Reorganization that was developed based on Houlihan Lokeys extremely low valuation of Aventine performed in their capacity as restructuring advisors to Aventine in light of their conflict-of-interest and breach of duty to Aventine in the performance of their duties as restructuring advisor.

I respectfully request that the Court, counsel to the SEC, and the US Trustee support the formation of an Official Equity Committee to represent stockholders interests in Aventine's bankruptcy case. Accordingly, I respectfully request the U.S. Trustee solicit interest among equity stockholders to serve on an official equity committee. Many of the stockholders are already communicating with each other informally and are knowledgeable about Aventine and the ethanol industry in general.

To date, stockholders have been excluded from representation by both Aventine's Board of Directors and the Court. Aventine's Board has not performed its fiduciary duty to protect the interests of all creditors and stakeholders, including stockholders. At stake is over $262,000,000 in stockholders equity in this solvent and profitable fuel production company.

If the Court will permit an equity committee, within approximately three months time a Plan of Reorganization can be developed that allows Aventine to restructure in a way that all creditor constituencies can be paid in full. The key to this restructuring is reinstating the $300M in senior unsecured bonds under their original terms. The present Plan of Reorganization is based on an extremely low valuation developed by Houlihan that unfairly leaves most creditors with substantially reduced payouts and transfers the equity in this company to the holders of the 10% Senior Unsecured Bonds.

CLOSING REMARKS

I have two closing remarks I ask the Court to consider regarding the work performed by the professionals engaged in Aventine's bankruptcy case. First, it is very telling that as early as the first week in September, the professionals working on this bankruptcy restructuring had already determined that there would be warrants issued to the existing equity holders. In other

words, the warrants were being built into the Plan approximately 3 months prior to the release of the Disclosure Statement and the Plan. This completely ignores the excellent operating period for ethanol producers that occurred in October, November, and December. It also ignores more recent transactions, such as Valero's purchase of two 110MGY dry mill plants from ASA Holdings in mid-December. The dramatic recovery in the ethanol industry has continued and is continuing even today with the problems of oversupply and overbuilding largely left behind. Aventine's restructuring professionals should be considering Aventine's business and industry metrics over this time period. The gold standard for valuing a business enterprise, FAS 157 "Fair Value Measurements", requires business valuations to be based on the "measurement date", not many months prior. The fact that these professionals had already determined warrants would be issued many months before releasing the Plan, and expended significant time and effort reviewing and analyzing the warrant question, speaks directly to their intentions.

Secondly, I noticed a time entry in Greenberg Traurig's September Fee Application from September 22nd for "review and analysis of application to employ American Appraisal as valuation expert". It should be obvious to any reasonable person that the valuation of a company, by its valuation expert, should precede the decision that stockholders are only to be left with warrants instead of a portion of the existing shareholders value. The fact that these professionals had already determined warrants would be issued, even before the valuation expert was retained, speaks directly to their intentions.

Thank you for considering the above additional information regarding my Objection and Complaint.

Thank you also for considering my requests to investigate the perceived conflict-of-interest outlined in my February 1 letter, the possible securities trading violation(s) outlined above, and my request for appointment of an equity committee.

If you have any questions regarding any aspect of the above information, please contact me.


Michael J. Welsh, P.E., S.E.
300 W. Pershing Street
Morton, IL 61550
309-266-5461

mwelsh11@comcast.net


Copies to:


Executive Office for U.S. Trustees
Criminal Enforcement Unit
20 Massachusetts Avenue, NW
Washington, DC 20530


The Honorable Judge Kevin Gross
824 Market Street
3rd Floor
Wilmington, DE 19801


Mark S. Kenney, Esq.
Office of the United States Trustee
844 King Street, Room 2207
Lockbox #35
Wilmington, DE 19801

Roberta A. DeAngelis
Acting United States Trustee, Region 3
833 Chestnut Street
Suite 500
Philadelphia, PA 19107