## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**, a Delaware Corporation, *et al.*, | Case No. 09-11214 (KG) |
| Debtors.[1] | (Jointly Administered) |
| | **Docket Ref No. 678** |

## NOTICE OF FILING OF AMENDMENT TO THE PLAN SUPPLEMENT WITH RESPECT TO THE DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

PLEASE TAKE NOTICE that on January 13, 2010, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed their First Amended Joint Plan of Reorganization under chapter 11 of title 11 of the United States Code [Docket No. 678] (the "Plan") and the Disclosure Statement describing the Plan [Docket No. 679] (the "Disclosure Statement").[2]

PLEASE TAKE FURTHER NOTICE that, on February 5, 2010, the Debtors filed the Plan Supplement (the "Initial Plan Supplement Filing").

PLEASE TAKE FURTHER NOTICE that, attached hereto are certain documents which shall amend, supersede and replace the corresponding documents filed with the Initial Plan Supplement Filing.

| | |
|---|---|
| Exhibit A: | [INTENTIONALLY OMITTED] |
| Exhibit B: | [INTENTIONALLY OMITTED] |
| Exhibit C: | [INTENTIONALLY OMITTED] |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

[2] All terms not other wise defined herein shall be given the meanings ascribed to them in the Plan.

Exhibit D:      [INTENTIONALLY OMITTED]

Exhibit E:      [INTENTIONALLY OMITTED]

Exhibit F:      [INTENTIONALLY OMITTED]

Exhibit G:      Form of Warrant Agreement

Exhibit H:      List of Directors and Officers of the Reorganized Debtors

Exhibit I:      Corporate Governance Documents for Reorganized Debtors

Exhibit J:      [INTENTIONALLY OMITTED]

Exhibit K:      Schedule of Rejected Executory Contracts and Non-Residential
                Real Property Leases

PLEASE TAKE FURTHER NOTICE that with respect to the amendments to the

Schedule of Rejected Executory Contracts and Non-Residential Real Property Leases, the

Debtors have:

(i) deleted from the Schedule of Rejected Executory Contracts and Non-Residential Real Property Leases the "Electric Service Agreement for AW plant" between ARE – Aurora West and Southern Public Power District; and

(ii) added to the Schedule of Rejected Executory Contracts and Non-Residential Real Property Leases the (a) "Railroad Transportation Contract 83551 between ARE and CSXT sets out terms for rail transportation **solely as it relates to terminals in Philadelphia**" between AREI and CSX Transportation, Inc., and (b) "Seminole guaranties Nebraska Resources performance under Precedent Agreement with AW," between ARE – Aurora West and Seminole Energy Services.

PLEASE TAKE FURTHER NOTICE that the Debtors will file with the Court

copies of blacklines of the forms of the documents annexed hereto against the forms annexed to

the Initial Plan Supplement Filing.  Copies of the blacklines will be available upon request to

counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building,

1000 West Street, 17th Floor, Wilmington, DE 19801, attention:  Debbie Laskin, Paralegal; e-

mail: dlaskin@ycst.com.

PLEASE TAKE FURTHER NOTICE that the Debtors hereby reserve all rights to amend, revise or supplement any documents relating to the Plan and/or to be executed, delivered, assumed and/or performed in connection with the consummation of the Plan on the Effective Date, including the Plan Supplement.

Dated: Wilmington, Delaware
February 19, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____/s/ Ryan M. Bartley_____
James L. Patton, Jr. (No. 2202)
Joel A. Waite (No. 2925)
Matthew B. Lunn (No. 4119)
Ryan M. Bartley (No. 4985)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone:     (302) 571-6600
Facsimile:     (302) 571-1253

*Counsel to the Debtors and Debtors in Possession*

DB02:9281073.1

068125.1001

## Exhibit G

## Form of Warrant Agreement

**WARRANT AGREEMENT**

between

**AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**

and

**[_____],**
**Warrant Agent**

**Dated as of [_____ __], 2010**

**Warrants To Purchase Common Stock**

# TABLE OF CONTENTS

1.  Definitions....................................................................................................1

2.  Warrant Certificates. ..................................................................................11
    2.1.  Issuance of Warrants .......................................................................11
    2.2.  Form of Warrant Certificates ...........................................................11
    2.3.  Execution and Delivery of Warrant Certificates. ...............................12
    2.4.  Restrictions on Transfer ..................................................................12

3.  Exercise and Expiration of Warrants. ..........................................................14
    3.1.  Right to Acquire Common Stock Upon Exercise ...............................14
    3.2.  Exercise and Expiration of Warrants ................................................14
          (a)  Exercise of Warrants ...............................................................14
          (b)  Expiration of Warrants ............................................................15
          (c)  Method of Exercise .................................................................15
          (d)  Partial Exercise ......................................................................16
          (e)  Issuance of Common Stock .....................................................17
          (f)  Time of Exercise .....................................................................17
    3.3.  Application of Funds Upon Exercise of Warrants ..............................18
    3.4.  Payment of Taxes ...........................................................................18
    3.5.  Surrender of Certificates .................................................................18
    3.6.  Shares Issuable ..............................................................................18

4.  Adjustments. ..............................................................................................18
    4.1.  Adjustments ...................................................................................18
          (a)  Subdivisions and Combinations................................................18
          (b)  Common Stock Dividends .......................................................19
          (c)  Reclassifications ......................................................................19
          (d)  Property Dividends ..................................................................20
          (e)  Self-Tender Offers....................................................................20
          (f)  Distributions of Warrants ........................................................21
          (g)  Superseding Adjustment .........................................................22
          (h)  Other Provisions Applicable to Adjustments ............................22
          (i)  Adjustment to Shares Obtainable Upon Exercise......................23
          (j)  Changes in Common Stock......................................................23
          (k)  Compliance with Governmental Requirements .........................25
          (l)  Optional Tax Adjustment ........................................................25
          (m)  Warrants Deemed Exercisable ................................................25
          (n)  Notice of Adjustment ..............................................................25
          (o)  Statement on Warrant Certificates ...........................................25
          (p)  Certain Actions During Specified Period...................................26
          (q)  Certain Actions Respecting Received Cash Dividends ..............26
    4.2.  Fractional Interest ..........................................................................26

5.  Loss or Mutilation.......................................................................................26

6.  Reservation and Authorization of Common Stock. ........................................27

7.  Warrant Transfer Books. .............................................................................28

i

8.     Warrant Holders. .................................................................................................29
     8.1.    No Voting or Dividend Rights ...........................................................29
     8.2.    Rights of Action .................................................................................29
     8.3.    Treatment of Holders of Warrant Certificates ..................................30

9.     Concerning the Warrant Agent. ............................................................................30
     9.1.    Nature of Duties and Responsibilities Assumed ...............................30
     9.2.    Right to Consult Counsel ...................................................................32
     9.3.    Compensation, Reimbursement and Indemnification ......................32
     9.4.    Warrant Agent May Hold Company Securities .................................32
     9.5.    Resignation and Removal; Appointment of Successor ......................32
     9.6.    [Appointment of Countersigning Agent ...........................................33

10.    Notices. .................................................................................................................34
     10.1.   Notices Generally ...............................................................................34
     10.2.   Required Notices to Holders ..............................................................35

11.    Inspection. ............................................................................................................36

12.    Amendments. ........................................................................................................36

13.    Waivers. ................................................................................................................37

14.    Successor to Company. .........................................................................................37

15.    Headings. ..............................................................................................................37

16.    Counterparts. .........................................................................................................38

17.    Severability. ..........................................................................................................38

18.    Persons Benefiting. ...............................................................................................38

19.    Applicable Law. ....................................................................................................38

20.    Entire Agreement. .................................................................................................38

**EXHIBITS**

Exhibit A      Form of Warrant Certificate

# WARRANT AGREEMENT

AGREEMENT dated as of [_____ __], 2010 between Aventine Renewable Energy Holdings, Inc., a Delaware corporation (referred to herein as the "***Company***"), and [_____], a national banking association, as warrant agent (referred to herein as the "***Warrant Agent***").

As contemplated by that certain First Amended Joint Plan of Reorganization dated as of January 13, 2009 (as amended or supplemented from time to time, including any exhibits, supplements, annexes, appendices and schedules thereto, and as confirmed by the United States Bankruptcy Court for the District of Delaware in a Confirmation Order, the "***Plan***") pursuant to Chapter 11 of Title 11 of the United States Code, the Company proposes to issue and deliver to the holders of Allowed Class 9(a) Equity Interests its Warrant Certificates (as defined below) evidencing Warrants (as defined below) to purchase, under certain circumstances, up to an aggregate of 450,000 shares of its Common Stock (as defined below), subject to adjustment as provided herein. Each such Warrant shall entitle the registered owner thereof to purchase one share of the Common Stock, subject to adjustment as provided herein.

In consideration of the foregoing and for the purpose of defining the terms and provisions of the Warrants and the respective rights and obligations thereunder of the Company, the Warrant Agent and the record holders of the Warrant Certificates, the Company and the Warrant Agent each hereby agree as follows:

1. **Definitions.**

"***Affiliate***," of any specified Person, means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "control" when used with respect to any Person means the power to direct the management and policies of such specified Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"***Agreement***" means this agreement as originally executed or as it may from time to time be supplemented or amended by one or more agreements supplemental hereto entered into pursuant to the applicable provisions hereof.

"***Applicable Value Percentage***" means, with respect to any Property Dividend designated as an "Excluded Dividend" pursuant to the definition of "Excluded Dividend", the percentage determined by dividing (i) the portion applicable to one share of Common Stock of the fair market value (as determined reasonably and in good faith by the Board of Directors, whose determination shall be conclusive and evidenced by a Board Resolution filed with the Warrant Agent) of any and all securities, cash or other assets distributed in such Property Dividend by (ii) the Current Market Price of the Common Stock on the date for determination of stockholders entitled to receive such Property Dividend.

"***Applicable Value Percentage***" means, with respect to any Company Offer designated as an "Excluded Company Offer" pursuant to the definition of "Excluded Company Offer", the percentage determined by dividing (A) the difference between (i) the fair market value (as

determined in good faith by the Board of Directors, whose determination shall be conclusive and evidenced by a Board Resolution filed with the Warrant Agent) of the aggregate consideration payable to stockholders based on the acceptance (up to any maximum specified in the terms of the tender offer) of Purchased Shares, and (ii) the product of the Current Market Price per share on the date of the Company Offer Expiration Time and the number of Purchased Shares, by (B) the product of (i) the Current Market Price per share of the Common Stock on the date of the Company Offer Expiration Time and (ii) the number of shares of Common Stock outstanding (including any tendered shares) on the date of the Company Offer Expiration Time.

"***Board of Directors***" means either the board of directors of the Company or any duly authorized committee of that board.

"***Board Resolution***" means a copy of a resolution certified by the secretary or an assistant secretary of the Company to have been duly adopted by the Board of Directors and to be in full force and effect on the date of such certification, and delivered to the Warrant Agent.

"***Business Day***" means each Monday, Tuesday, Wednesday, Thursday and Friday which is not a legal holiday in the State of New York or a day on which banking institutions and trust companies in the state in which the Corporate Agency Office is located are authorized or obligated by law, regulation or executive order to close.

"***Cash Transaction***" means any Transaction as a result of which in accordance with Section 4.1(j) the Substituted Property receivable upon exercise of Warrants on or after the consummation thereof consists solely of cash.

"***Cash Transaction Effective Time***" means the time at which a Cash Transaction is consummated if (but only if) the Substituted Property receivable upon exercise of a Warrant as a result of such Cash Transaction exceeds the Exercise Price therefor.

"***Cashless Exercise***" has the meaning set forth in Section 3.2(c)(ii).

"***Change of Control***" means the occurrence of any of the following:

      (i)     any Person or Persons acting together that would constitute a group (for purposes of Section 13(d) of the Exchange Act, or any successor provision thereto) (a "group"), together with any Affiliates or related Persons thereof, other than any such Person, Persons, Affiliates or related Person who are Permitted Holders, is or shall become the "beneficial owner" (as such term is defined in Rule 13d-3 and Rule 13d-5 under the Exchange Act, except that in calculating the beneficial ownership of any particular "person" (as that term is used in Section 13(d)(3) of the Exchange Act), such "person" will be deemed to have beneficial ownership of all securities that such "person" has the right to acquire by conversion or exercise of other securities, whether such right is currently exercisable or is exercisable only after the passage of time or only upon the occurrence of a subsequent condition), directly or indirectly, of at least 35% of the voting power of the Company's outstanding capital stock that is at the time entitled to vote in the election of the Board of Directors ("***Voting Stock***"), and the Permitted Holders own less than such Person or group (in performing the "own less than" comparison, the holdings

of the Permitted Holders who are members of the new group shall not be counted in the shares held in the aggregate by Permitted Holders);

(ii)     any sale, lease or other transfer (other than by way of merger or consolidation), in one transaction or a series of related transactions, is made by the Company or any of its Subsidiaries of all or substantially all of the consolidated assets of the Company and the Subsidiaries, taken as a whole, to any Person;

(iii)     the Company consolidates with or merges with or into another Person or any Person consolidates with, or merges with or into, the Company, in any such event pursuant to a transaction in which immediately after the consummation thereof Persons owning a majority of the Company's Voting Stock voting immediately prior to such consummation shall cease to own a majority of such Voting Stock or, if the Company is not the surviving entity, a majority of such Voting Stock of such surviving entity; or

(iv)     the Company's stockholders approve any plan or proposal for the Company's liquidation or dissolution;

provided, however, that in no event shall the sale of the Common Stock to an underwriter or group of underwriters in privity of contract with the Company (or any other Person in privity of contract with such underwriters) be deemed to be a Change of Control unless such Common Stock is held in an investment account, in which case the investment account would be treated without giving effect to the foregoing part of this proviso.

"*Change of Control Expiration Time*" means, with respect to any Change of Control, the later of:

(A)     5:00 p.m., New York time on the date 20 days after the earlier of (x) the date on which notice of the consummation of such Change of Control has been duly given by the Company under and in accordance with the fourth paragraph of Section 10.2 and (y) the date (if any) on which notice of the possible future occurrence thereof was duly given by the Company under and in accordance with the second paragraph of Section 10.2, and

(B)     immediately after the time of consummation of such Change of Control.

"*Code*" means the Internal Revenue Code of 1986, as amended.

"*Commission*" means the Securities and Exchange Commission, or any other federal agency at the time administering the Securities Act or the Exchange Act, whichever is the relevant statute for the particular purpose.

"*Common Stock*" means any capital stock of any class or series of the Company (including, on the Original Issue Date, the Common Stock, par value $0.001 per share, of the Company) which has no preference in respect of dividends or of amounts payable in the event of any voluntary or involuntary liquidation, dissolution or winding up of the Company and which is not subject to redemption by the Company. However, subject to the provisions of Section 4.1(j), shares issuable upon exercise of Warrants shall include only shares of the class of capital stock of

the Company designated as Common Stock, par value $0.001 per share, of the Company on the Original Issue Date or shares of any class or classes resulting from any reclassification or reclassifications thereof and which have no preference in respect of dividends or of amounts payable in the event of any voluntary or involuntary liquidation, dissolution or winding up of the Company and which are not subject to redemption by the Company; provided, however, that if at any time there shall be more than one such resulting class, the shares of each such class then so issuable shall be substantially in the proportion which the total number of shares of such class resulting from all such reclassifications bears to the total number of shares of all such classes resulting from all such reclassifications.

"*Company*" means the corporation identified in the preamble hereof and its successors and assigns.

"*Company Offer*" means any tender offer (including any exchange offer) as amended from time to time made by the Company or any of its Subsidiaries for the purchase (including the acquisition pursuant to an exchange offer) of all or any portion of the outstanding shares of Common Stock.

"*Company Offer Expiration Time*" has the meaning set forth in Section 4.1(e).

"*Company Order*" means a written request or order signed in the name of the Company by its Chairman or any Co-Chairman of the Board, its Chief Executive Officer, its President, any Vice President, its Treasurer, any Assistant Treasurer, its Secretary or any Assistant Secretary, and delivered to the Warrant Agent.

"*Constituent Person*" has the meaning set forth in Section 4.1(j).

"*Corporate Agency Office*" has the meaning set forth in Section 7.

"*Corporation*" means a corporation, association, company (including limited liability company), joint-stock company, business trust or other similar entity.

"*Countersigning Agent*" means any Person authorized by the Warrant Agent to act on behalf of the Warrant Agent to countersign Warrant Certificates.

"*Current Market Price*" means on any date:

(i)     if the reference is to the per share price of Common Stock on any date herein specified and if on such date the Common Stock is listed or admitted to trading on any national securities exchange or otherwise traded in the over-the-counter market in the United States:

(A)     for the purpose of any computation under this Agreement (except under Section 4.1(e) in respect of a Company Offer or under Section 4.2), the average of the Quoted Prices for the five consecutive Trading Days selected by the Company commencing not more than 20 Trading Days before, and ending not later than, the earlier of (x) the date in question and (y) in the case of any computation under Section 4.1(d) or 4.1(f), the day before the "ex" date for the

4

issuance or distribution requiring such computation; provided, however, that if the "ex" date for any event (other than the issuance or distribution requiring such computation) that requires (or for any distribution which, but for the Company giving written notice to the Warrant Agent that the Company intends to treat such distribution as a Receivable Dividend or Received Dividend hereunder, would have required) an adjustment to the Exercise Price pursuant to Sections 4.1(a), 4.1(b), 4.1(d), 4.1(e) or 4.1(f) occurs on or after the 20th Trading Day prior to the day in question and prior to the "ex" date for the issuance or distribution requiring such computation, the Quoted Price for each Trading Day prior to the "ex" date for such other event shall be adjusted by multiplying such Quoted Price by the same fraction by which the Exercise Price is so required (or would have been required) to be adjusted pursuant to Sections 4.1(a), 4.1(b), 4.1(d), 4.1(e) or 4.1(f), as applicable, as a result of such other event; or

(B)     for the purpose of any computation under Section 4.1(e), the average of the Quoted Prices for the five consecutive Trading Days selected by the Company commencing on or after the latest (the "*Commencement Date*") of (i) the date 20 Trading Days before the date in question, (ii) the date of commencement of the tender offer requiring such computation, and (iii) the date of the last amendment, if any, of such tender offer involving a change in the maximum number of shares for which tenders are sought or a change in the consideration offered, and ending not later than the date of the Expiration Time (as defined in Section 4.1(e)) of such tender offer; provided, however, that if the "ex" date for any event (other than the tender offer requiring such computation) that requires (or for any distribution for which, but for the Company giving written notice to the Warrant Agent that the Company intends to treat such distribution as a Receivable Dividend or Received Dividend hereunder, would have required) an adjustment to the Exercise Price pursuant to Sections 4.1(a), 4.1(b), 4.1(d), 4.1(e) or 4.1(f) occurs on or after the Commencement Date and prior to the Expiration Time for the tender offer requiring such computation, the Quoted Price for each Trading Day prior to the "ex" date for such other event shall be adjusted by multiplying such Quoted Price by the same fraction by which the Exercise Price is so required (or would have been required) to be adjusted pursuant to such Sections 4.1(a), 4.1(b), 4.1(d), 4.1(e) or 4.1(f), as applicable, as a result of such other event; or

(C)     for the purposes of any computation under Section 4.2, the Quoted Price for such date or, if such date is not a Trading Day, for the next preceding Trading Day; or

(ii)     if the reference is to the per share price of Common Stock on any date herein specified and if on such date the Common Stock is not listed or admitted to trading on any national securities exchange or otherwise traded in the over-the-counter market in the United States, the amount which a willing buyer would pay a willing seller in an arm's length transaction on such date (neither being under any compulsion to buy or sell) for one share of the Common Stock as determined as of such date (x) for the purposes of any computation under this Agreement (except under Section 4.2), by an Independent

Financial Expert as set forth in value report thereof using one or more valuation methods that such Independent Financial Expert, in its best professional judgment, determines to be most appropriate or (y) for the purposes of any computation under Section 4.2, by the Treasurer or Chief Financial Officer of the Company reasonably and in good faith, whose determination shall be conclusive and evidenced by a certificate of such officer delivered to the Warrant Agent.

"*Disbursing Agent*" means the Company or any party designated by the Company in accordance with the Plan to make or facilitate distributions under and in accordance with the Plan.

"'*ex' date*" means:

(iii)    when used with respect to any issuance or distribution, the first date on which the Common Stock trades regular way on the relevant exchange or in the relevant market from which the Quoted Price was obtained without the right to receive such issuance or distribution;

(iv)    when used with respect to any subdivision or combination of shares of Common Stock, the first date on which the Common Stock trades regular way on the relevant exchange or in the relevant market after the time at which such subdivision or combination becomes effective; or

(v)    when used with respect to any tender offer, the first date on which the Common Stock trades regular way on the relevant exchange or in the relevant market after the Expiration Time of such tender offer.

"*Exchange Act*" means the Securities Exchange Act of 1934, as amended, or any successor statute thereto, and the rules and regulations of the Securities and Exchange Commission promulgated thereunder.

"*Excluded Company Offer*" means any Company Offer that is designated by the Company as such by written notice to the Warrant Agent if (but only if) the Applicable Value Percentage for such Company Offer, when added to the Applicable Value Percentages for all other Excluded Company Offers expiring, and for all Excluded Dividends paid by the Company, after the date 12 months prior to the Company Offer Expiration Time for such Company Offer and on or prior to such Company Offer Expiration Time, does not exceed 12.5%.

"*Excluded Dividend*" means any Property Dividend (other than any Received Dividend or Receivable Dividend or any dividend or distribution of rights or warrants referred to in Section 4.1(f)) that is designated by the Company as such by written notice to the Warrant Agent if (but only if) the Applicable Value Percentage for such dividend, when added to the Applicable Value Percentages for all other Excluded Dividends paid by the Company, and for all Excluded Company Offers expiring, after the date 12 months prior to the date for determination of stockholders entitled to receive such Property Dividend and on or prior to such date, does not exceed 12.5%.

"*Exercise Period*" means the period from and including the Original Issue Date to and including the Expiration Date.

"*Exercise Price*" means the exercise price per share of Common Stock, initially set at $40.94 subject to adjustment as provided in Section 4.1; provided in no event shall the Exercise Price be less than the par value per share of Common Stock.

"*Exercise Requirements*" has the meaning set forth in Section 3.2(c)(ii).

"*Expiration Time*" means the earlier of (a) 5:00 p.m., New York time on [insert date that is 5 years after the Original Issue Date], and (b) if a Change of Control occurs, the Change of Control Expiration Time therefor or, in either event, such earlier date as the Company has designated pursuant to and in accordance with Section 3.2(b).

"*Financial Expert*" means any broker or dealer registered as such under the Exchange Act that conducts an investment banking business of nationally recognized standing.

"*Holder*" means any Person in whose name at the time any Warrant Certificate is registered upon the Warrant Register and, when used with respect to any Warrant Certificate, the Person in whose name such Warrant Certificate is registered in the Warrant Register.

"*Independent Financial Expert*" means any Financial Expert selected by the Company that either (i) is reasonably acceptable to the Holders of Warrant Certificates evidencing a majority of the outstanding Warrants or (ii) is a firm (x) which does not (and whose directors, officers, employees and affiliates, to the knowledge of the Company, do not) have a material direct or indirect financial interest in the Company or any of its Affiliates (other than by virtue of compensation paid for advice or opinions referred to in the exception to clause (z)), as determined by the Board of Directors of the Company in its reasonable good faith judgment, (y) which has not been, within the last two years, and, at the time it is called upon to give independent financial advice to the Company or any of its Affiliates, is not (and none of whose directors, officers, employees or affiliates, to the knowledge of the Company, is) a promoter, director or officer of the Company or any of its Affiliates or an underwriter with respect to any of the securities of the Company or any of its Affiliates and (z) which does not provide any advice or opinions to the Company or Affiliates except as an independent financial expert in connection with this Agreement.

"*Non-Electing Share*" has the meaning set forth in Section 4.1(j).

"*Non-Surviving Transaction*" has the meaning set forth in Section 4.1(j).

"*Original Issue Date*" means [_____ __], 2010, the date on which Warrants are originally issued under this Agreement.

"*Original Restricted Holder*" means any Holder of Warrant Certificates evidencing Original Restricted Warrants executed and delivered upon registration of transfer from the Disbursing Agent to such Holder pursuant to the Plan.

*"Original Restricted Warrants"* means Warrants evidenced by Warrant Certificates bearing the legends set forth in Sections 2.4(a) and (e).

*"outstanding"* when used with respect to any Warrants, means, as of the time of determination, all Warrants theretofore originally issued under this Agreement except (i) Warrants that have been exercised pursuant to Section 3.2(a), (ii) Warrants that have expired pursuant to Section 3.2(b) and (iii) Warrants that have otherwise been acquired by the Company; provided, however, that in determining whether the Holders of the requisite amount of the outstanding Warrants have given any request, demand, authorization, direction, notice, consent or waiver under the provisions of this Agreement, Warrants owned by the Company or any Subsidiary or Affiliate of the Company shall be disregarded and deemed not to be outstanding.

*"Permitted Holders"* means [●], its Affiliates and its and its Affiliates' managed funds and accounts and (1) entities controlled by any such Persons, (2) trusts for the benefit of any such individual Persons or the spouses, issue, parents or other relatives of such individual Persons and (3) in the event of the death of any such individual Person, heirs or testamentary legatees of such Person. For purposes of this definition, "control", as used with respect to any Person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or by contract or otherwise.

*"Person"* means any individual, Corporation, partnership, joint venture, trust, unincorporated organization or government or any agency or political subdivision thereof.

*"Plan"* has the meaning specified in the Recitals of this Agreement.

*"Property Dividend"* means any payment by the Company to all holders of its Common Stock of any dividend, or any other distribution by the Company to such holders, of any shares of capital stock of the Company, evidences of indebtedness of the Company, cash or other assets (including rights, warrants or other securities (of the Company or any other Person)), other than any dividend or distribution (i) upon a merger or consolidation or sale to which Section 4.1(j) applies or (ii) of any Common Stock referred to in Section 4.1(b).

*"Purchased Shares"* has the meaning set forth in Section 4.1(e).

*"Quoted Price"* means, on any Trading Day, with respect to any security, the last reported sales price regular way or, in case no such reported sale takes place on such Trading Day, the average of the reported closing bid and asked prices regular way, in either case on the [New York Stock Exchange] or, if such security is not listed or admitted to trading on such exchange, on the principal national securities exchange on which such security is listed or admitted to trading or, if not listed or admitted to trading on any national securities exchange, or, if such security is not listed or admitted to trading on any national securities exchange, the average of the closing bid and asked prices in the over-the-counter market in the United States as furnished by any New York Stock Exchange member firm that shall be selected from time to time by the Company for that purpose.

*"Receivable Dividend"* means any Property Dividend if (but only if):

(i) on a date at least 30 days prior to the date for the determination of holders entitled to receive such dividend or distribution the Company has given notice in accordance with Section 10.1 to all Holders of Warrant Certificates and the Warrant Agent, in each case stating:

(A) the date for such determination;

(B) the fair market value (determined as specified in clause (iv) below) of the securities, cash or other assets so to be distributed applicable to one share of Common Stock;

(C) the Exercise Price then in effect;

(D) that the Warrants will be exercisable at all times during the period from the opening of business on the date such notice is given to the close of business on such date for determination (the "*Specified Period*");

(E) the number of shares of Common Stock into which one Warrant is then exercisable;

(F) that the Company intends to treat such distribution as a "Receivable Dividend" hereunder and, therefore, that no adjustment to the Exercise Price or the number of shares of Common Stock into which the Warrants are exercisable will be made as a result of such distribution; and

(G) the rights thereafter generally available to a Holder if such Holder's Warrants are not exercised during the Specified Period;

(ii) the Specified Period is at least 30 days long;

(iii) at any time during the Specified Period that any Warrant has been outstanding, such Warrant has been exercisable (or would have been exercisable but for the presence of the legend set forth in Section 2.4(e) on any Warrant Certificates); and

(iv) the fair market value (as determined reasonably and in good faith by the Board of Directors, whose determination shall be conclusive and evidenced by a Board Resolution filed with the Warrant Agent) of the securities, cash or other assets so to be distributed applicable to one share of Common Stock exceeds 150% of the Exercise Price in effect at any time during the Specified Period.

"*Received Dividend*" means any Property Dividend if (but only if):

(i) prior to the date for determination of holders of shares of Common Stock entitled to receive such dividend or distribution the Company has delivered a written notice to the Warrant Agent that the Company intends to treat such distribution as a "Received Dividend" hereunder; and

(ii) at the same time the Company makes such distribution to holders of Common Stock, the Company pays or otherwise distributes, to each Person who was the Holder of a Warrant Certificate evidencing a Warrant that was outstanding immediately after the close of business on such date for determination (whether or not such Warrant is outstanding on the date of such distribution), an amount equal to the amount of securities, cash or other assets that would have been receivable upon such distribution by a holder of the number of shares of Common Stock into which all Warrants evidenced by such Warrant Certificate are exercisable if such Warrants had been exercised in full immediately prior to such date for determination, assuming that the Warrants were exercisable (or would have been exercisable but for the presence of the legends set forth in Sections 2.4(a) and (e) on any Warrant Certificates) at the time of such date for determination into the initial number of shares of Common Stock into which a Warrant is exercisable, as adjusted from the date of this Warrant Agreement to such date for determination pursuant to Section 4 (other than any adjustment in respect of which the deferral provisions of Section 4.1(h)(iv) are then applicable).

"*Recipient*" has the meaning set forth in Section 3.2(e).

"*Restricted Securities*" has the meaning set forth in Section 2.4(a).

"*Securities Act*" means the Securities Act of 1933, as amended, or any successor statute or statutes thereto, and the rules and regulations of the Securities and Exchange Commission promulgated thereunder.

"*Specified Period*" has the meaning specified in the definition of "Receivable Dividend" in this Section 1.

"*Subsidiary*" means a Corporation more than 50% of the outstanding voting stock or equity of which is owned, directly or indirectly, by the Company or by one or more other Subsidiaries, or by the Company and one or more other Subsidiaries. For purposes of this definition, "voting stock" means stock or equity which ordinarily has voting power for the election of directors (or member of a governing body that is equivalent to a board of directors), whether at all times or only so long as no senior class of stock or equity has such voting power by reason of any contingency.

"*Substituted Property*" has the meaning set forth in Section 4.1(j).

"*Surviving Transaction*" has the meaning set forth in Section 4.1(j).

"*Trading Day*" means each Monday, Tuesday, Wednesday, Thursday and Friday, other than any day on which securities are not traded on the applicable securities exchange or in the applicable securities market.

"*Transaction*" has the meaning set forth in Section 4.1(j).

"*Voting Stock*" has the meaning set forth in the definition of "Change of Control".

"*Warrant Agent*" means the warrant agent set forth in the preamble hereof or the successor or successors of such Warrant Agent appointed in accordance with the terms hereof.

"*Warrant Certificates*" means those certain warrant certificates evidencing the Warrants, substantially in the form of Exhibit A attached hereto.

"*Warrant Register*" has the meaning set forth in Section 7.

"*Warrants*" means those certain warrants to purchase initially up to an aggregate of 450,000 shares of Common Stock at the Exercise Price, subject to adjustment pursuant to Section 4, issued hereunder.

2.    **Warrant Certificates.**

2.1.    Issuance of Warrants.    Each Warrant Certificate shall evidence the number of Warrants specified therein, and each Warrant evidenced thereby shall represent the right, subject to the provisions contained herein and therein, to purchase one share of Common Stock, subject to adjustment as provided in Section 4.

2.2.    Form of Warrant Certificates.

(a)    The Warrant Certificates evidencing the Warrants shall be in registered form only and substantially in the form attached hereto as Exhibit A, shall be dated the date on which countersigned by the Warrant Agent, shall have such insertions as are appropriate or required or permitted by this Agreement and may have such letters, numbers or other marks of identification and such legends and endorsements typed, stamped, printed, lithographed or engraved thereon as the officers of the Company executing the same may approve (execution thereof to be conclusive evidence of such approval) and as are not inconsistent with the provisions of this Agreement, or as may be required to comply with any law or with any rule or regulation pursuant thereto or with any rule or regulation of any securities exchange on which the Warrants may be listed, or to conform to usage.

(b)    Pending the preparation of definitive Warrant Certificates, temporary Warrant Certificates may be issued, which may be printed, lithographed, typewritten, mimeographed or otherwise produced, and which will be substantially of the tenor of the definitive Warrant Certificates in lieu of which they are issued.

If temporary Warrant Certificates are issued, the Company will cause definitive Warrant Certificates to be prepared without unreasonable delay.    After the preparation of definitive Warrant Certificates, the temporary Warrant Certificates shall be exchangeable for definitive Warrant Certificates evidencing Warrants of the same number and tenor upon surrender by the Holder of the temporary Warrant Certificates to the Warrant Agent at its Corporate Agency Office, without charge to such Holder.    Upon surrender for cancellation of any one or more temporary Warrant Certificates the Company shall execute and the Warrant Agent shall countersign and deliver in exchange therefor Warrant Certificates of the same tenor and for a like aggregate number of Warrants.    Until so exchanged the temporary Warrant Certificates shall in all respects be entitled to the same benefits under this Agreement as definitive Warrant Certificates.

2.3.    Execution and Delivery of Warrant Certificates.

(a)    Warrant Certificates evidencing the Warrants which may be countersigned and delivered under this Agreement are limited to Warrant Certificates evidencing 450,000 Warrants except for Warrant Certificates countersigned and delivered upon registration of transfer of, or in exchange for, or in lieu of, one or more previously countersigned Warrant Certificates pursuant to Sections 2.2(b), 3.2(d), 5 and 7.

(b)    At any time and from time to time on or after the date of this Agreement, Warrant Certificates evidencing the Warrants may be executed by the Company and delivered to the Warrant Agent for countersignature, and the Warrant Agent shall, upon receipt of a Company Order and at the direction of the Company set forth therein, countersign and deliver such Warrant Certificates to the Company for original issuance to the respective Persons entitled thereto.  The Warrant Agent is further hereby authorized to countersign and deliver Warrant Certificates as required by this Section 2.3 or by Sections 2.2, 3.2(d), 5 or 7.

(c)    The Warrant Certificates shall be executed in the corporate name and on behalf of the Company by the Chairman (or any Co-Chairman) of the Board, the Chief Executive Officer, the President or any one of the Vice Presidents of the Company under corporate seal reproduced thereon and attested to by the Secretary or one of the Assistant Secretaries of the Company, either manually or by facsimile signature printed thereon.  The Warrant Certificates shall be manually countersigned by the Warrant Agent and shall not be valid for any purpose unless so countersigned.  In case any officer of the Company whose signature shall have been placed upon any of the Warrant Certificates shall cease to be such officer of the Company before countersignature by the Warrant Agent and issue and delivery thereof, such Warrant Certificates may, nevertheless, be countersigned by the Warrant Agent and issued and delivered with the same force and effect as though such person had not ceased to be such officer of the Company, and any Warrant Certificate may be signed on behalf of the Company by such person as, at the actual date of the execution of such Warrant Certificate, shall be a proper officer of the Company, although at the date of the execution of this Warrant Agreement any such person was not such officer.

(d)    Upon the request of the Company, the Warrant Agent shall cause any Warrant Certificate issued upon original issuance to bear the legends set forth in Sections 2.4(a) and (e), the Warrants evidenced thereby constituting "*Original Restricted Warrants*" for purposes of Section 2.4.

2.4.    Restrictions on Transfer.

(a)    Each Holder of a Warrant Certificate evidencing Original Restricted Warrants, by accepting the same, agrees not to sell, assign, transfer or pledge any Original Restricted Warrants or any Common Stock issued upon any exercise of any such Original Restricted Warrants (collectively "*Restricted Securities*") except upon satisfaction of the conditions specified in this Section 2.4, which conditions are intended to ensure compliance with the provisions of the Securities Act.  The holders of the Restricted Securities will cause any proposed purchaser, assignee, transferee or pledgee of the Restricted Securities to agree to take and hold such securities subject to the provisions and conditions specified in this Section 2.4.

Each certificate representing Restricted Securities shall be stamped or otherwise imprinted with a legend in the following form (in addition to any legend required under applicable state securities laws):

> "THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR ANY APPLICABLE STATE SECURITIES LAWS, AND MAY NOT BE SOLD OR OTHERWISE TRANSFERRED, PLEDGED, OR HYPOTHECATED UNLESS AND UNTIL SUCH SECURITIES ARE REGISTERED UNDER SUCH ACT, AND SUCH STATE LAW, OR THE COMPANY RECEIVES A WRITTEN OPINION OF LEGAL COUNSEL (WHO SHALL BE, AND WHOSE LEGAL OPINION SHALL BE, REASONABLY SATISFACTORY TO THE COMPANY) ADDRESSED TO THE COMPANY TO THE EFFECT THAT SUCH REGISTRATION IS NOT REQUIRED. THE TRANSFERABILITY OF THIS SECURITY IS ALSO SUBJECT TO RESTRICTIONS CONTAINED IN THE WARRANT AGREEMENT, DATED AS OF _____ __, 2010, BETWEEN THE COMPANY AND A WARRANT AGENT, WHICH WARRANT AGREEMENT THE COMPANY WILL FURNISH TO THE HOLDER HEREOF UPON REQUEST."

(b)     The Holders of any Restricted Securities and the holders of Common Stock constituting Restricted Securities will cause any proposed purchaser, assignee, transferee or pledgee of Restricted Securities to agree to take and hold such securities subject to the provisions and conditions specified in this Section 2.4 and Section 3.2(a).

(c)     The holder of each certificate representing Restricted Securities, by accepting the same, agrees to comply in all respects with the provisions of this Section 2.4. Prior to any proposed transfer (including any transfer by means of exercising Original Restricted Warrants in such a manner as to cause the Common Stock to be registered in the name of another holder), sale, assignment or pledge of any such Restricted Securities, unless there is in effect a registration statement under the Securities Act covering the proposed transfer, sale, assignment or pledge the holder thereof shall give written notice to the Company of such holder's intention to effect such transfer, sale, assignment or pledge. Each such notice shall describe the manner and circumstances of the proposed transfer, sale, assignment or pledge in sufficient detail and shall be accompanied, at such holder's expense, by a written opinion of legal counsel (who shall be, and whose legal opinion shall be, reasonably satisfactory to the Company) addressed to the Company to the effect that the proposed transfer of the securities may be effected without registration under the Securities Act.

(d)     The legend specified in Section 2.4(a) shall also be placed on all certificates issued upon registration of transfer of, or in exchange for, or in lieu of, any certificates bearing the legend set forth in Section 2.4(a), except if such transfer is made pursuant to an effective registration statement or Rule 144 or if the holder (at such holder's expense) shall deliver a written opinion of legal counsel (who shall be, and whose legal opinion shall be,

reasonably satisfactory to the Company) addressed to the Company to the effect that such legend set forth in Section 2.4(a) is not required in order to establish compliance with any provision of the Securities Act.

(e) The following legend shall be placed by the Warrant Agent on all Warrant Certificates issued upon original issuance and as to which the Company has made a request for the placement of such legend thereon pursuant to Section 2.3(d) and on all Warrant Certificates subsequently issued under this Agreement upon registration of transfer of, or in exchange for, or in lieu of, any Warrant Certificates bearing such legend:

> "NOTWITHSTANDING ANY OTHER PROVISION OF THE WARRANTS EVIDENCED HEREBY OR THE RELATED WARRANT AGREEMENT, THE WARRANTS EVIDENCED BY THIS WARRANT CERTIFICATE MAY BE EXERCISED ONLY IF (1) THE REGISTERED HOLDER IS AN ORIGINAL RESTRICTED HOLDER, (2) A REGISTRATION STATEMENT IS IN EFFECT AS TO SUCH EXERCISE OR (3) THE COMPANY RECEIVES A WRITTEN OPINION OF LEGAL COUNSEL (WHO SHALL BE, AND WHOSE LEGAL OPINION SHALL BE, REASONABLY SATISFACTORY TO THE COMPANY) ADDRESSED TO THE COMPANY TO THE EFFECT THAT THE PROPOSED EXERCISE OF THE WARRANTS MAY BE EFFECTED WITHOUT REGISTRATION UNDER THE SECURITIES ACT."

3. **Exercise and Expiration of Warrants.**

3.1. <u>Right to Acquire Common Stock Upon Exercise</u>. Each Warrant Certificate shall, when countersigned by the Warrant Agent, entitle the Holder thereof, subject to the provisions thereof and of this Agreement, to acquire from the Company, for each Warrant evidenced thereby one share of Common Stock at the Exercise Price, subject to adjustment as provided in this Agreement. The Exercise Price, and the number of shares of Common Stock obtainable upon exercise of each Warrant, shall be adjusted from time to time as required by Section 4.1.

3.2. <u>Exercise and Expiration of Warrants</u>.

(a) <u>Exercise of Warrants</u>. Subject to and upon compliance with the terms and conditions set forth herein, a Holder of a Warrant Certificate may exercise all or any whole number of the Warrants evidenced thereby, on any Business Day from and after the Original Issue Date until the Expiration Time, for the shares of Common Stock obtainable thereunder; provided, however, that any Warrant evidenced by a Warrant Certificate bearing the legend set forth in Section 2.4(e) shall not be exercisable unless (1) the registered holder is an Original Restricted Holder, (2) a registration statement under the Securities Act is in effect as to such exercise or (3) the Company receives a written opinion of legal counsel (who shall be, and whose legal opinion shall be, reasonably satisfactory to the Company) addressed to the Company to the effect that the proposed exercise of the Warrant may be effected without registration under the Securities Act.

(b)     Expiration of Warrants.  The Warrants shall terminate and become void as of the Expiration Time.

The Company shall have the right to accelerate the time of expiration of the Warrants to 5:00 p.m., New York time, on any date after the Original Issue Date if:

(i)     (A) the Quoted Price of the Common Stock has been at least 150% of the then effective Exercise Price on at least 20 of 30 successive Trading Days in a period ending not more than 15 days prior to the date notice of such acceleration is given, (B) on each date in such period the Common Stock was listed or admitted to trading on a national securities exchange or otherwise traded in the over-the-counter market in the United States such that the Quoted Price shall be capable of determination and (C) less than 20% of the Warrants issued on the Original Issue Date remain outstanding on the date such notice of acceleration is given;

(ii)     a Cash Transaction has occurred on or prior to the date notice of such acceleration is given;

(iii)     a Transaction (other than a Cash Transaction) has occurred on or prior to the date notice of such acceleration is given and as a result hereof the Substituted Property receivable upon exercise of Warrants does not include any equity securities (as defined in Rule 3a-11-1 under the Exchange Act or any successor provision); or

(iv)     less than 5% of the Warrants issued on the Original Issue Date remain outstanding on the date such notice of acceleration is given.

In the event the time of expiration is accelerated by the Company pursuant to this Section 3.2(b), the term "Expiration Time" shall mean such accelerated time for all purposes of this Agreement.

If the Company elects to accelerate the time of expiration of the Warrants pursuant to this Section 3.2(b), the Company shall, on a date at least 30 days prior to the designated time of expiration, give notice of such designated time to the Warrant Agent and the Holders in accordance with the provisions of Section 10.1.

(c)     Method of Exercise.  In order to exercise all or any of the Warrants represented by a Warrant Certificate, the Holder thereof must:

(i)     at the Corporate Agency Office (x) surrender to the Warrant Agent the Warrant Certificate evidencing such Warrants and (y) deliver to the Warrant Agent a written notice of the Holder's election to exercise the number of the Warrants specified therein, duly executed by such Holder, which notice shall be in the form of the notice on the reverse of, or attached to, such Warrant Certificate; and

(ii)     either (x) pay to the Warrant Agent an amount, equal to the aggregate of the Exercise Price in respect of each share of Common Stock into which such Warrants are proposed to be exercised, in any combination of the following elected by such Holder: (A) cash delivered to the Warrant Agent at the Corporate Agency Office; (B)

certified bank check or official bank check in New York Clearing House funds payable to the order of the Company and delivered to the Warrant Agent at the Corporate Agency Office; or (C) wire transfer in immediately available funds, to the account (No. [_____]; ABA No. [_____]; Reference: [_____]; Attention: [_____]) of the Company at the Warrant Agent or such other account designated by the Company for such purpose in a notice to the Warrant Agent and such Holder in accordance with Section 10.1(b) or (y) if (but only if) a Cash Transaction Effective Time has occurred, in lieu of payment of the Exercise Price as provided in clause (ii)(x) hereof, elect a cashless exercise (such exercise in accordance with this Section 3.2(c)(ii), a "*Cashless Exercise*") of such Warrant by written designation to such effect specified on the exercise notice referred to in clause (i) hereof (this subsection (ii) together with subsection (i) of this Section 3.2(c) collectively, the "*Exercise Requirements*").

If the Holder duly elects a Cashless Exercise of any Warrant pursuant to clause (ii)(y) of the previous sentence, the Company shall pay to the Holder upon exercise of such Warrants a cash amount computed using the following formula:

$$X = Y \times (A-B)$$

where:

$X$ = the amount of cash to be paid to the Holder;

$Y$ = the aggregate number of Warrants being exercised;

$A$ = the Substituted Property receivable in accordance with Section 4.1(j) upon exercise of each Warrant on or after the Cash Transaction Effective Time; and

$B$ = the aggregate Exercise Price applicable to the Substituted Property receivable upon exercise of each Warrant on or after the Cash Transaction Effective Time.

During the period from and after delivery to Holders of notice of the possible future occurrence of a Change of Control pursuant to the second paragraph of Section 10.2 until the earlier of the time of consummation of such Change of Control or delivery to Holders of notice of the cancellation thereof pursuant to Section 10.2, exercise of all or any of the Warrants represented by a Warrant Certificate (including a Cashless Exercise pursuant to clause (ii)(y) of the first paragraph of this Section 3.2(c)) may be made subject to and contingent upon the consummation of such Change of Control by written notice to such effect set forth on the notice of exercise delivered pursuant to this Section 3.2(c), in which event, if such Change of Control is consummated, such exercise will be effective (subject to the other conditions to exercise specified in Section 3.2(f)) at the time of consummation of such Change of Control.

(d)     Partial Exercise.  If fewer than all the Warrants represented by a Warrant Certificate are exercised, such Warrant Certificate shall be surrendered and a new Warrant Certificate of the same tenor and for the number of Warrants which were not exercised shall be executed by the Company.  The Warrant Agent shall countersign the new Warrant Certificate, registered in such name or names, subject to the provisions of Section 7 regarding registration of

transfer and payment of governmental charges in respect thereof, as may be directed in writing by the Holder, and shall deliver the new Warrant Certificate to the Person or Persons in whose name such new Warrant Certificate is so registered. The Company, whenever required by the Warrant Agent, will supply the Warrant Agent with Warrant Certificates duly executed on behalf of the Company for such purpose.

(e)     Issuance of Common Stock.     Upon satisfaction of the Exercise Requirements, the Warrant Agent shall, when such payment is received (or promptly after receipt of such notice of exercise in the event such Holder has elected a Cashless Exercise in accordance with Section 3.2(c)), [(i) requisition from the Company's Common Stock transfer agent for issuance and delivery to or upon the written order of the registered holder of such Warrant and in such name or names as such Holder may designate, the shares of Common Stock issuable upon the exercise of such Warrants, (ii) deliver to the Company the notice of exercise received pursuant to Section 3.2(c) and (iii)] (unless a Cashless Exercise) deliver or deposit, if applicable, all funds received as instructed in writing by the Company. The Company shall thereupon, as promptly as practicable, and in any event within five Business Days after receipt by the Company of such notice of exercise, (i) except in the case of a Cashless Exercise, execute or cause to be executed and deliver or cause to be delivered to the Recipient (as defined below) a certificate or certificates representing the aggregate number of shares of Common Stock issuable upon such exercise (based upon the aggregate number of Warrants so exercised), determined in accordance with Section 3.6, together with an amount in cash in lieu of any fractional share(s), if the Company so elects pursuant to Section 4.2 or (ii) in the case of a Cashless Exercise, pay the cash amount payable upon exercise, determined pursuant to the formula set forth in Section 3.2(c), to the Recipient. The certificate or certificates so delivered (unless a Cashless Exercise) shall be, to the extent possible, in such denomination or denominations as such Holder shall request in such notice of exercise and such certificate or certificates shall be registered or otherwise placed in the name of, and delivered to, or, in the case of a Cashless Exercise, such cash amount shall be delivered to, in each case, the Holder or, subject to Section 2.4(c) and Section 3.4, such other Person as shall be designated by the Holder in such notice (the Holder or such other Person being referred to herein as the "*Recipient*").

(f)     Time of Exercise.     Each exercise of this Warrant shall be deemed to have been effected (i) immediately prior to the close of business on the day on which the Warrant Certificate representing such Warrant shall have been surrendered for exercise as provided above, together with the notice of exercise referred to above, the opinion of counsel and the notice required by Section 2.4(c) and (except in the case of a Cashless Exercise) the applicable Exercise Price, and all taxes required to be paid by Holder, if any, pursuant to Section 3.4 prior to the exercise of such Warrant have been paid or (ii) in the case of any exercise contingent upon consummation of a Change of Control pursuant to the last paragraph of Section 3.2(c), if such Change of Control is consummated, at the later of time of consummation of such Change of Control and the time specified in clause (i). At such time, subject to Section 3.2(c) and Section 4.1(h)(iv), except in the case of a Cashless Exercise, the certificates for the shares of Common Stock issuable upon such exercise as provided in Section 3.2(e) shall, if applicable, be deemed to have been issued and, for all purposes of this Agreement, the Recipient shall, to the fullest extent permitted by law, as between such Person and the Company, be deemed to be and entitled to all rights of the holder of record of such Common Stock.

3.3.    <u>Application of Funds Upon Exercise of Warrants</u>.  Any funds delivered to the Warrant Agent upon exercise of any Warrant(s) shall be held by the Warrant Agent in trust for the Company.  The Warrant Agent shall promptly deliver and pay to or upon the written order of the Company all funds received by it upon the exercise of any Warrants by bank wire transfer to an account designated by the Company or as the Warrant Agent otherwise may be directed in writing by the Company.

3.4.    <u>Payment of Taxes</u>.  The Company shall pay any and all taxes (other than income taxes) that may be payable in respect of the issue or delivery of shares of Common Stock or except in the case of a Cashless Exercise, payment of any cash amount on exercise of Warrants pursuant hereto.  The Company shall not be required, however, to pay any tax or other charge imposed in respect of any transfer involved in the issue and delivery of any certificates for shares of Common Stock or payment of cash or other property to any Recipient other than the Holder of the Warrant Certificate surrendered upon the exercise of a Warrant, and in case of such transfer or payment, the Warrant Agent and the Company shall not be required to issue or deliver any certificate or pay any cash until (a) such tax or charge has been paid or an amount sufficient for the payment thereof has been delivered to the Warrant Agent or the Company or (b) it has been established to the Company's satisfaction that any such tax or other charge that is or may become due has been paid.

3.5.    <u>Surrender of Certificates</u>.  Any Warrant Certificate surrendered for exercise (including in connection with a Cashless Exercise) shall, if surrendered to the Company, be delivered to the Warrant Agent, and all Warrant Certificates surrendered or so delivered to the Warrant Agent shall be promptly cancelled by the Warrant Agent and shall not be reissued by the Company.  The Warrant Agent shall destroy such cancelled Warrant Certificates and deliver its certificate of destruction to the Company, unless the Company shall otherwise direct.

3.6.    <u>Shares Issuable</u>.  The number of shares of Common Stock "obtainable upon exercise" of Warrants at any time shall be the number of shares of Common Stock into which such Warrants are then exercisable.  The number of shares of Common Stock "into which each Warrant is exercisable" shall be one share, subject to adjustment as provided in <u>Section 4.1</u>.

4.    **Adjustments.**

4.1.    <u>Adjustments</u>.  In order to prevent dilution of the rights granted under the Warrants and to grant the Holders certain additional rights, the Exercise Price shall be subject to adjustment from time to time as provided in this <u>Section 4.1</u> and the number of shares of Common Stock obtainable upon exercise of Warrants shall be subject to adjustment from time to time as provided in this <u>Section 4.1</u>.

(a)    <u>Subdivisions and Combinations</u>.  In the event the Company shall, at any time or from time to time after the Original Issue Date while the Warrants remain outstanding and unexpired in whole or in part, effect a subdivision (by any stock split or otherwise) of the outstanding shares of Common Stock into a greater number of shares of Common Stock (other than (x) a subdivision upon a merger or consolidation or sale to which <u>Section 4.1(j)</u> applies or (y) a stock split effected by means of a stock dividend or distribution to which <u>Section 4.1(b)</u> applies), then and in each such event the Exercise Price in effect at the opening of business on

the day after the date upon which such subdivision becomes effective shall be proportionately decreased. Conversely, if the Company shall, at any time or from time to time after the Original Issue Date while the Warrants remain outstanding and unexpired in whole or in part, effect a combination (by any reverse stock split or otherwise) of the outstanding shares of Common Stock into a smaller number of shares of Common Stock (other than a combination upon a merger or consolidation or sale to which Section 4.1(j) applies), then and in each such event the Exercise Price in effect at the opening of business on the day after the date upon which such combination becomes effective shall be proportionately increased. Any adjustment under this Section 4.1(a) shall become effective immediately after the opening of business on the day after the date upon which the subdivision or combination becomes effective.

(b)     Common Stock Dividends. In the event the Company shall, at any time or from time to time after the Original Issue Date while the Warrants remain outstanding and unexpired in whole or in part, make or issue to the holders of its Common Stock a dividend or distribution payable in, or otherwise make or issue a dividend or other distribution on any class of its capital stock payable in, shares of Common Stock (other than a dividend or distribution upon a merger or consolidation or sale to which Section 4.1(j) applies), then and in each such event the Exercise Price in effect at the opening of business on the day after the date for the determination of the holders of shares of Common Stock entitled to receive such dividend or distribution shall be decreased by multiplying such Exercise Price by a fraction (not to be greater than 1):

(i)     the numerator of which shall be the total number of shares of Common Stock issued and outstanding at the close of business on such date for determination; and

(ii)     the denominator of which shall be the total number of shares of Common Stock issued and outstanding at the close of business on such date for determination plus the number of shares of Common Stock issuable in payment of such dividend or distribution.

Any adjustment under this Section 4.1(b) shall, subject to Section 4.1(h)(iv), become effective immediately after the opening of business on the day after the date for the determination of the holders of shares of Common Stock entitled to receive such dividend or distribution.

(c)     Reclassifications. A reclassification of the Common Stock (other than any such reclassification in connection with a merger or consolidation or sale to which Section 4.1(j) applies) into shares of Common Stock and shares of any other class of stock shall be deemed:

(i)     a distribution by the Company to the holders of its Common Stock of such shares of such class of stock other than Common Stock for the purposes and within the meaning of Section 4.1(d) (and the effective date of such reclassification shall be deemed to be "the date for the determination of the holders of Common Stock entitled to receive such dividend or distribution" for the purposes and within the meaning of Section 4.1(d)); and

(ii)     if the outstanding shares of Common Stock shall be changed into a larger or smaller number of shares of Common Stock as a part of such reclassification, such

change shall be deemed a subdivision or combination, as the case may be, of the outstanding shares of Common Stock for the purposes and within the meaning of Section 4.1(a) (and the effective date of such reclassification shall be deemed to be "the date upon which such subdivision becomes effective" or "the date upon which such combination becomes effective," as applicable, for the purposes and within the meaning of Section 4.1(a)).

(d)     Property Dividends. In the event the Company shall, at any time or from time to time after the Original Issue Date while the Warrants remain outstanding and unexpired in whole or in part, make or issue a dividend or distribution to holders of Common Stock a Property Dividend (other than (x) a Receivable Dividend, a Received Dividend or an Excluded Dividend or (y) any dividend or distribution of any rights or warrants referred to in Section 4.1(f)), then and in each such event the Exercise Price in effect immediately prior to the close of business on the date for the determination of the holders of Common Stock entitled to receive such dividend or distribution shall be decreased by multiplying such Exercise Price by a fraction (not to be greater than 1):

(i)     the numerator of which shall be the Current Market Price per share of Common Stock on such date for determination minus the portion applicable to one share of Common Stock of the fair market value (as determined in good faith by the Board of Directors, whose determination shall be conclusive and evidenced by a Board Resolution filed with the Warrant Agent) of such Property Dividend so distributed; and

(ii)     the denominator of which shall be such Current Market Price per share of Common Stock.

Any adjustment under this Section 4.1(d) shall, subject to Section 4.1(h)(iv), become effective immediately prior to the opening of business on the day after the date for the determination of the holders of Common Stock entitled to receive such dividend or distribution. If the Board of Directors determines the fair market value of any Property Dividend for purposes of this Section 4.1(d) by reference to the actual or when issued trading market for any securities comprising such Property Dividend, it must in doing so consider the prices in such market over the same period used in computing the Current Market Price per share of Common Stock.

(e)     Self-Tender Offers. In the event, at any time or from time to time after the Original Issue Date while the Warrants remain outstanding and unexpired in whole or in part, a Company Offer, other than an Excluded Company Offer, shall expire, then and in each such event the Exercise Price in effect immediately prior to the close of business on the date of the last time (the "*Company Offer Expiration Time*") tenders could have been made pursuant to such Company Offer shall be decreased by multiplying such Exercise Price by a fraction (not to be greater than 1):

(i)     the numerator of which shall be equal to (A) the product of (1) the Current Market Price per share of the Common Stock on the date of the Company Offer Expiration Time and (2) the number of shares of Common Stock outstanding (including any tendered shares) on the Company Offer Expiration Time less (B) the fair market value (as determined in good faith by the Board of Directors, whose determination shall

20

be conclusive and evidenced by a Board Resolution filed with the Warrant Agent) of the aggregate consideration payable to stockholders based on the acceptance (up to any maximum specified in the terms of the Company Offer) of all shares validly tendered and not withdrawn as of the Expiration Time (the shares deemed so accepted, up to any maximum amount provided for in connection with such Company Offer, being referred to as the "*Purchased Shares*"); and

        (ii)    the denominator of which shall be equal to the product of (A) the Current Market Price per share of the Common Stock on the date of the Company Offer Expiration Time and (B) the number of shares of Common Stock outstanding (including any tendered shares) on the Company Offer Expiration Time less the number of Purchased Shares.

Any adjustment under this <u>Section 4.1(e)</u> shall become effective immediately prior to the opening of business on the day after the Company Offer Expiration Time.

        (f)    <u>Distributions of Warrants</u>. In the event the Company shall, at any time or from time to time after the Original Issue Date while the Warrants remain outstanding and unexpired in whole or in part, make or issue a dividend or distribution to all holders of its Common Stock of any warrants or other rights to subscribe for or purchase any shares of Common Stock (other than (x) a Received Dividend or a Receivable Dividend or (y) a distribution of such warrants or rights upon a merger or consolidation or sale to which <u>Section 4.1(j)</u> applies), whether or not the rights to subscribe for or purchase thereunder are immediately exercisable, and the consideration per share for which shares of Common Stock may at any time thereafter be issuable pursuant to such warrants or other rights shall be less than the Current Market Price per share of Common Stock on the date fixed for determination of the holders of Common Stock entitled to receive such dividend or distribution, then and in each such event the Exercise Price at the opening of business on the day after such date for determination shall be decreased by multiplying such Exercise Price by a fraction (not to be greater than 1):

        (i)    the numerator of which shall be the number of shares of Common Stock outstanding at the close of business on such date for determination plus the number of shares of Common Stock that the minimum consideration received and receivable by the Company for the issuance of such maximum number of shares of Common Stock pursuant to the terms of such warrants or other rights would purchase at such Current Market Price; and

        (ii)    the denominator of which shall be the number of shares of Common Stock outstanding at the close of business on such date for determination plus the maximum number of shares of Common Stock issuable pursuant to all such warrants or other rights.

Any adjustment under this <u>Section 4.1(f)</u> shall, subject to <u>Section 4.1(h)(iv)</u>, become effective immediately after the opening of business on the day after the date for the determination of the holders of shares of Common Stock entitled to receive such dividend or distribution.

Rights or warrants issued by the Company to all holders of its Common Stock entitling the holders thereof to subscribe for or purchase shares of Common Stock, which rights or warrants (A) are deemed to be transferred with such shares of Common Stock, (B) are not exercisable and (C) are also issued in respect of future issuances of Common Stock, in each case in clauses (A) through (C) until the occurrence of a specified event or events ("*Trigger Event*"), shall for purposes of this Section 4.1(f) and Section 4.1(d) not be deemed distributed until the occurrence of the earliest Trigger Event.

(g)     <u>Superseding Adjustment</u>.  In the event at any time after any adjustment of the number of shares of Common Stock into which each Warrant is exercisable shall have been made pursuant to Section 4.1(f) on the basis of the distribution of warrants or other rights or after any new adjustment of the number of shares of Common Stock into which each Warrant is exercisable shall have been made pursuant to this Section 4.1(g), such warrants or rights shall expire, and all or a portion of such warrants or rights shall not have been exercised, then, and in each such case, upon the election of the Company by written notice to the Warrant Agent, such previous adjustment in respect of such warrants or rights which have expired without exercise shall be rescinded and annulled as to any then outstanding Warrants, and the shares of Common Stock that were deemed for purposes of the computations set forth in Section 4.1(f) to have been issued by virtue of such adjustment in respect of such warrants or rights shall no longer be deemed to have been issued.

(h)     <u>Other Provisions Applicable to Adjustments</u>. The following provisions shall be applicable to the making of adjustments to the Exercise Price and the number of shares of Common Stock into which each Warrant is exercisable under this Section 4.1:

(i)     <u>Treasury Stock</u>.  The dividend or distribution of any issued shares of Common Stock owned or held by or for the account of the Company shall be deemed a dividend or distribution of shares of Common Stock for purposes of this Section 4.1.  The Company shall not make or issue any dividend or distribution on shares of Common Stock held in the treasury of the Company, including on shares of Common Stock issued on the Original Issue Date in accordance with the Plan and set aside for delivery subsequent to the Original Issue Date as provided in the Plan (until such delivery).  For the purposes of this Section 4.1, the number of shares of Common Stock at any time outstanding shall not include shares held in the treasury of the Company, including shares of Common Stock issued on the Original Issue Date in accordance with the Plan and set aside for delivery subsequent to the Original Issue Date as provided in the Plan (until such delivery), but shall include shares issuable in respect of scrip certificates issued in lieu of fractions of shares of Common Stock.

(ii)     <u>When Adjustments Are to be Made</u>.  The adjustments required by Sections 4.1(a), 4.1(b), 4.1(c), 4.1(d), 4.1(e) and 4.1(f) shall be made whenever and as often as any specified event requiring an adjustment shall occur, except that no adjustment of the Exercise Price that would otherwise be required shall be made unless and until such adjustment either by itself or with other adjustments not previously made increases or decreases the Exercise Price immediately prior to the making of such adjustment by at least 1%.  Any adjustment representing a change of less than such minimum amount (except as aforesaid) shall be carried forward and made as soon as such

adjustment, together with other adjustments required by Sections 4.1(a), 4.1(b), 4.1(c), 4.1(d), 4.1(e) and 4.1(f) and not previously made, would result in such minimum adjustment.

    (iii)    <u>Fractional Interests</u>.  In computing adjustments under this <u>Section 4</u>, fractional interests in Common Stock shall be taken into account to the nearest one-thousandth of a share.

    (iv)    <u>Deferral Of Issuance Upon Exercise</u>.  In any case in which Sections 4.1(b), 4.1(d) or 4.1(f) shall require that a decrease in the Exercise Price be made effective prior to the occurrence of a specified event and any Warrant is exercised after the time at which the adjustment became effective but prior to the occurrence of such specified event and, in connection therewith, Section 4.1(i) shall require a corresponding increase in the number of shares of Common Stock into which each Warrant is exercisable, the Company may elect to defer until the occurrence of such specified event (A) the issuance to the Holder of the Warrant Certificate evidencing such Warrant (or other Person entitled thereto) of, and the registration of such Holder (or other Person) as the record holder of, the Common Stock over and above the Common Stock issuable upon such exercise on the basis of the number of shares of Common Stock obtainable upon exercise of such Warrant immediately prior to such adjustment and to require payment in respect of such number of shares the issuance of which is not deferred on the basis of the Exercise Price in effect immediately prior to such adjustment and (B) the corresponding reduction in the Exercise Price; <u>provided</u>, <u>however</u>, that the Company shall deliver to such Holder or other person a due bill or other appropriate instrument that meets any applicable requirements of the principal national securities exchange or other market on which the Common Stock is then traded and evidences the right of such Holder or other Person to receive, and to become the record holder of, such additional shares of Common Stock, upon the occurrence of such specified event requiring such adjustment (without payment of any additional Exercise Price in respect of such additional shares).

    (i)    <u>Adjustment to Shares Obtainable Upon Exercise</u>.  Whenever the Exercise Price is adjusted as provided in this <u>Section 4.1</u>, the number of shares of Common Stock into which a Warrant is exercisable shall simultaneously be adjusted by multiplying such number of shares of Common Stock into which a Warrant is exercisable immediately prior to such adjustment by a fraction, the numerator of which shall be the Exercise Price immediately prior to such adjustment, and the denominator of which shall be the Exercise Price immediately thereafter.

    (j)    <u>Changes in Common Stock</u>.  In case at any time or from time to time after the Original Issue Date while the Warrants remain outstanding and unexpired in whole or in part, the Company shall be a party to or shall otherwise engage in any transaction or series of related transactions constituting:

    (i)    a merger of the Company into, a consolidation of the Company with, or a sale of all or substantially all of the Company's assets to, any other Person (a *"Non-Surviving Transaction"*), or

(ii)     any merger of another Person into the Company in which the previously outstanding shares of Common Stock shall be cancelled, reclassified or converted or changed into or exchanged for securities of the Company or other property (including cash) or any combination of the foregoing (a "**Surviving Transaction**"; any Non-Surviving Transaction or Surviving Transaction being herein called a "**Transaction**"),

then, as a condition to the consummation of such Transaction, the Company shall (or, in the case of any Non-Surviving Transaction, the Company shall cause such other Person to) execute and deliver to the Warrant Agent a written instrument providing that:

(x)     so long as any Warrant remains outstanding on such terms and subject to such conditions as shall be as nearly equivalent as may be practicable to the provisions set forth in this Agreement, each Warrant, upon the exercise thereof at any time on or after the consummation of such Transaction, shall be exercisable into, in lieu of the Common Stock issuable upon such exercise prior to such consummation, only the securities or other property ("**Substituted Property**") that would have been receivable upon such Transaction by a holder of the number of shares of Common Stock into which such Warrant was exercisable immediately prior to such Transaction, assuming such holder of Common Stock:

(A)     is not a Person with which the Company consolidated or into which the Company merged or which merged into the Company or to which such sale or transfer was made, as the case may be ("**Constituent Person**"), or an Affiliate of a Constituent Person; and

(B)     failed to exercise his rights of election, if any, as to the kind or amount of securities, cash and other property receivable upon such Transaction (provided that if the kind or amount of securities, cash and other property receivable upon such Transaction is not the same for each share of Common Stock held immediately prior to such Transaction by other than a Constituent Person or an Affiliate thereof and in respect of which such rights of election shall not have been exercised ("**Non-Electing Share**"), then, for the purposes of this Section 4.1(j), the kind and amount of securities, cash and other property receivable upon such Transaction by each Non-Electing Share shall be deemed to be the kind and amount so receivable per share by a plurality of the Non-Electing Shares); and

(y)     the rights and obligations of the Company (or, in the event of a Non-Surviving Transaction, such other Person) and the Holders in respect of Substituted Property shall be as nearly equivalent as may be practicable to the rights and obligations of the Company and Holders in respect of Common Stock hereunder as set forth in Section 3.1 hereof and elsewhere herein.

Such written instrument shall provide for adjustments which, for events subsequent to the effective date of such written instrument, shall be as nearly equivalent as may be practicable to the adjustments provided for in this Section 4. The above provisions of this Section 4.1(j) shall similarly apply to successive Transactions.

(k)     Compliance with Governmental Requirements.  Before taking any action in accordance with this Agreement that would cause an adjustment reducing the Exercise Price below the then par value of any of the shares of Common Stock into which the Warrants are exercisable, the Company will, to the fullest extent permitted by law, take any corporate action that may be necessary in order that the Company may validly and legally issue fully paid and non-assessable shares of such Common Stock at such adjusted Exercise Price.

(l)     Optional Tax Adjustment.  The Company may at its option, at any time during the term of the Warrants, increase the number of shares of Common Stock into which each Warrant is exercisable, or decrease the Exercise Price, in addition to those changes required by Sections 4.1(a), 4.1(b), 4.1(c), 4.1(d), 4.1(e) or 4.1(f), as deemed advisable by the Board of Directors of the Company, in order that any event treated for Federal income tax purposes as a dividend of stock or stock rights shall not be taxable to the recipients.

(m)     Warrants Deemed Exercisable.  For purposes solely of this Section 4, the number of shares of Common Stock which the holder of any Warrant would have been entitled to receive had such Warrant been exercised in full at any time or into which any Warrant was exercisable at any time shall be determined assuming such Warrant was exercisable in full at such time, although such Warrant may not be exercisable in full at such time pursuant to Section 3.2(a).

(n)     Notice of Adjustment.  Upon the occurrence of each adjustment of the Exercise Price or the number of shares of Common Stock into which a Warrant is exercisable pursuant to this Section 4.1, the Company at its expense shall promptly:

(i)     compute such adjustment in accordance with the terms hereof;

(ii)     after such adjustment becomes effective, cause to be delivered to all Holders in accordance with Section 10.1(b) a notice setting forth such adjustment (including the kind and amount of securities, cash or other property for which the Warrants shall be exercisable and the Exercise Price) and showing in detail the facts upon which such adjustment is based; and

(iii)     deliver to the Warrant Agent a certificate of the principal financial officer or the Treasurer of the Company setting forth the Exercise Price and the number of shares of Common Stock into which each Warrant is exercisable after such adjustment and setting forth a brief statement of the facts requiring such adjustment and the computation by which such adjustment was made (including a description of the basis on which the Current Market Price of the Common Stock or the fair market value of any evidences of indebtedness, shares of capital stock, securities, cash or other assets or consideration used in the computation was determined).  As provided in Section 9.1, the Warrant Agent shall be entitled to rely on such certificate and shall be under no duty or responsibility with respect to any such certificate, except to exhibit the same from time to time to any Holder desiring an inspection thereof during reasonable business hours.

(o)     Statement on Warrant Certificates.  Irrespective of any adjustment in the Exercise Price or amount or kind of shares into which the Warrants are exercisable, Warrant

Certificates theretofore or thereafter issued may continue to express the same Exercise Price initially applicable or amount or kind of shares initially issuable upon exercise of the Warrants evidenced thereby pursuant to this Agreement.

(p) <u>Certain Actions During Specified Period</u>. During any Specified Period, the Company shall not combine its outstanding shares of Common Stock into a smaller number of shares of Common Stock, effect a reclassification of its Common Stock or effect any Transaction.

(q) <u>Certain Actions Respecting Received Cash Dividends</u>. If the Company shall have given notice to the Warrant Agent of its intention to treat a distribution as a Received Dividend hereunder, the Company shall not permit the date for the determination of holders of shares of Common Stock entitled to receive any other dividend or distribution referred to in <u>Sections 4.1(b)</u> or <u>4.1(d)</u> or to receive any rights, options or warrants referred to in <u>Section 4.1(f)</u>, the date of any Company Offer Expiration Time referred to in <u>Section 4.1(e)</u>, the effective date of any subdivision or combination referred to in <u>Section 4.1(a)</u> or the date of consummation of any Transaction to be the same date as the date which is, or is the day before, the date for determination of holders of Common Stock entitled to receive such Received Dividend.

4.2.  <u>Fractional Interest</u>. The Company shall not issue fractions of shares of Common Stock upon exercise of Warrants or distribute stock certificates which evidence fractional shares of Common Stock. Whenever any fraction of a share of Common Stock would otherwise be required to be issued or distributed, the actual issuance or distribution made shall reflect a rounding of such fraction to the nearest whole share (up or down), with half shares or less being rounded down and fractions in excess of half of a share being rounded up. The holder of a Warrant by the acceptance of the Warrant expressly waives his right to receive any fractional share of Common Stock upon exercise of a Warrant. If Warrant Certificates evidencing more than one Warrant shall be presented for exercise at the same time by the same Holder, the number of full shares of Common Stock which shall be issuable upon such exercise thereof shall be computed on the basis of the aggregate number of Warrants so to be exercised.

5.  **Loss or Mutilation.**

If (a) any mutilated Warrant Certificate is surrendered to the Warrant Agent or (b) both (i) there shall be delivered to the Company and the Warrant Agent (A) a claim by a Holder as to the destruction, loss or wrongful taking of any Warrant Certificate of such Holder and a request thereby for a new replacement Warrant Certificate, and (B) such indemnity bond as may be required by them to save each of them and any agent of either of them harmless and (ii) such other reasonable requirements as may be imposed by the Company as permitted by Section 8-405 of the Uniform Commercial Code have been satisfied, then, in the absence of notice to the Company or the Warrant Agent that such Warrant Certificate has been acquired by a "protected purchaser" within the meaning of Section 8-405 of the Uniform Commercial Code, the Company shall execute and upon its written request the Warrant Agent shall countersign and deliver to the registered Holder of the lost, wrongfully taken, destroyed or mutilated Warrant Certificate, in exchange therefor or in lieu thereof, a new Warrant Certificate of the same tenor and for a like aggregate number of Warrants. At the written request of such registered Holder, the new Warrant Certificate so issued shall be retained by the Warrant Agent as having been

surrendered for exercise, in lieu of delivery thereof to such Holder, and shall be deemed for purposes of Section 3.2 to have been surrendered for exercise on the date the conditions specified in clauses (a) or (b) of the preceding sentence were first satisfied.

Upon the issuance of any new Warrant Certificate under this Section 5, the Company may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and other expenses (including the fees and expenses of the Warrant Agent and of counsel to the Company) in connection therewith.

Every new Warrant Certificate executed and delivered pursuant to this Section 5 in lieu of any lost, wrongfully taken or destroyed Warrant Certificate shall constitute an additional contractual obligation of the Company, whether or not the allegedly lost, wrongfully taken or destroyed Warrant Certificate shall be at any time enforceable by anyone, and shall be entitled to the benefits of this Agreement equally and proportionately with any and all other Warrant Certificates duly executed and delivered hereunder.

The provisions of this Section 5 are exclusive and shall preclude (to the extent lawful) all other rights or remedies with respect to the replacement of mutilated, lost, wrongfully taken, or destroyed Warrant Certificates.

6.  **Reservation and Authorization of Common Stock.**

The Company covenants that, for the duration of the Exercise Period, the Company will at all times reserve and keep available, from its authorized and unissued Common Stock solely for issuance and delivery upon the exercise of the Warrants and free of preemptive rights, such number of shares of Common Stock and other securities, cash or property as from time to time shall be issuable upon the exercise in full of all outstanding Warrants. The Company further covenants that it shall, to the fullest extent permitted by law, from time to time, take all steps necessary to increase the authorized number of shares of its Common Stock if at any time the authorized number of shares of Common Stock remaining unissued would otherwise be insufficient to allow delivery of all the shares of Common Stock then deliverable upon the exercise in full of all outstanding Warrants. The Company covenants that all shares of Common Stock issuable upon exercise of the Warrants will, upon issuance, be duly and validly issued, fully paid and nonassessable and will be free of restrictions on transfer, other than as specified in Section 2.4, and will be free from all taxes, liens and charges in respect of the issue thereof (other than taxes in respect of any transfer occurring contemporaneously or otherwise specified herein). The Company shall take all such lawful actions as may be necessary to ensure that all such shares of Common Stock may be so issued without violation of any applicable law or governmental regulation or any requirements of any domestic stock exchange upon which shares of Common Stock may be listed (except for official notice of issuance which shall be immediately delivered by the Company upon each such issuance). The Company covenants that all shares of Common Stock will, at all times that Warrants are exercisable, be duly approved for listing subject to official notice of issuance on each securities exchange, if any, on which the Common Stock is then listed. The Company covenants that the stock certificates issued to evidence any shares of Common Stock issued upon exercise of Warrants will comply with the General Corporation Law of the State of Delaware and any other applicable law.

The Company hereby authorizes and directs its current and future transfer agents for the Common Stock at all times to reserve stock certificates for such number of authorized shares as shall be requisite for such purpose. The Warrant Agent is hereby authorized to requisition from time to time from any such transfer agents stock certificates required to honor outstanding Warrants upon exercise thereof in accordance with the terms of this Agreement, and the Company hereby authorizes and directs such transfer agents to comply with all such requests of the Warrant Agent. The Company will supply such transfer agents with duly executed stock certificates for such purposes.

## 7.  Warrant Transfer Books.

The Warrant Agent will maintain an office (the "*Corporate Agency Office*") in the United States of America, where Warrant Certificates may be surrendered for registration of transfer or exchange and where Warrant Certificates may be surrendered for exercise of Warrants evidenced thereby, which office is [_____, _____] on the Original Issue Date. The Warrant Agent will give prompt written notice to all Holders of Warrant Certificates of any change in the location of such office.

The Warrant Certificates evidencing the Warrants shall be issued in registered form only. The Company shall cause to be kept at the office of the Warrant Agent designated for such purpose a warrant register (the "*Warrant Register*") in which, subject to such reasonable regulations as the Warrant Agent may prescribe and such regulations as may be prescribed by law or the rules of the exchange on which the Warrants or Common Stock are listed, the Company shall provide for the registration of Warrant Certificates and of transfers or exchanges of Warrant Certificates as herein provided.

Upon surrender for registration of transfer of any Warrant Certificate at the Corporate Agency Office, the Company shall execute, and the Warrant Agent shall countersign and deliver, in the name of the designated transferee or transferees, one or more new Warrant Certificates evidencing a like aggregate number of Warrants.

At the option of the Holder, Warrant Certificates may be exchanged at the office of the Warrant Agent upon payment of the charges hereinafter provided for other Warrant Certificates evidencing a like aggregate number of Warrants. Whenever any Warrant Certificates are so surrendered for exchange, the Company shall execute, and the Warrant Agent shall countersign and deliver, the Warrant Certificates of the same tenor and evidencing the same number of Warrants as evidenced by the Warrant Certificates surrendered by the Holder making the exchange.

All Warrant Certificates issued upon any registration of transfer or exchange of Warrant Certificates shall be the valid obligations of the Company, evidencing the same obligations, and entitled to the same benefits under this Agreement, as the Warrant Certificates surrendered for such registration of transfer or exchange.

Every Warrant Certificate surrendered for registration of transfer or exchange shall (if so required by the Company or the Warrant Agent) be duly endorsed, or be accompanied by a

written instrument of transfer in form satisfactory to the Company and the Warrant Agent, duly executed by the Holder thereof or his attorney duly authorized in writing.

No service charge shall be made for any registration of transfer or exchange of Warrant Certificates; provided, however, the Company may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any registration of transfer or exchange of Warrant Certificates.

The Warrant Agent shall, upon request of the Company from time to time, deliver to the Company such reports of registered ownership of the Warrants and such records of transactions with respect to the Warrants and the shares of Common Stock as the Company may request. The Warrant Agent shall also make available to the Company for inspection by the Company's agents or employees, from time to time as the Company may request, such original books of accounts and records maintained by the Warrant Agent in connection with the issuance and exercise of Warrants hereunder, such inspections to occur at the Corporate Agency Office during normal business hours.

The Warrant Agent shall keep copies of this Agreement and any notices given to Holders hereunder available for inspection by the Holders during normal business hours at the Corporate Agency Office. The Company shall supply the Warrant Agent from time to time with such numbers of copies of this Agreement as the Warrant Agent may request.

8. **Warrant Holders.**

8.1.    No Voting or Dividend Rights. Subject to the provisions of Sections 4.1 and 10.2 hereof and except as may be specifically provided for herein, until the exercise of any Warrant:

(i)    no Holder of a Warrant Certificate evidencing any Warrant shall have or exercise any rights by virtue hereof as a holder of Common Stock of the Company, including, without limitation, the right to vote, to receive dividends and other distributions as a holder of Common Stock or to receive notice of, or attend, meetings of, stockholders or any other proceedings of the Company;

(ii)    the consent of any such Holder shall not be required with respect to any action or proceeding of the Company;

(iii)    except with respect to any Received Dividend, no such Holder, by reason of the ownership or possession of a Warrant or the Warrant Certificate representing the same, shall have any right to receive any cash dividends, stock dividends, allotments or rights or other distributions paid, allotted or distributed or distributable to the stockholders of the Company prior to, or for which the relevant record date preceded, the date of the exercise of such Warrant; and

(iv)    no such Holder shall have any right not expressly conferred hereunder or under, or by applicable law with respect to, the Warrant Certificate held by such Holder.

8.2.    Rights of Action. All rights of action against the Company in respect of this Agreement, except rights of action vested in the Warrant Agent, are vested in the Holders of the

Warrant Certificates, and any Holder of any Warrant Certificate, without the consent of the Warrant Agent or the Holder of any other Warrant Certificate, may, in such Holder's own behalf and for such Holder's own benefit, enforce and may institute and maintain any suit, action or proceeding against the Company suitable to enforce, or otherwise in respect of, such Holder's right to exercise such Holder's Warrants in the manner provided in this Agreement.

8.3.    Treatment of Holders of Warrant Certificates.    Every Holder of a Warrant Certificate, by accepting the same, consents and agrees with the Company, with the Warrant Agent and with every subsequent holder of such Warrant Certificate that, prior to due presentment of such Warrant Certificate for registration of transfer, the Company and the Warrant Agent may treat the Person in whose name the Warrant Certificate is registered as the owner thereof for all purposes and as the Person entitled to exercise the rights granted under the Warrants, and neither the Company, the Warrant Agent nor any agent thereof shall be affected by any notice to the contrary.

9.    **Concerning the Warrant Agent.**

9.1.    Nature of Duties and Responsibilities Assumed.    The Company hereby appoints the Warrant Agent to act as agent of the Company as set forth in this Agreement.  The Warrant Agent hereby accepts the appointment as agent of the Company and agrees to perform that agency upon the terms and conditions set forth in this Agreement and in the Warrant Certificates or as the Company and the Warrant Agent may hereafter agree, by all of which the Company and the Holders of Warrant Certificates, by their acceptance thereof, shall be bound; provided, however, that the terms and conditions contained in the Warrant Certificates are subject to and governed by this Agreement or any other terms and conditions hereafter agreed to by the Company and the Warrant Agent.

The Warrant Agent shall not, by countersigning Warrant Certificates or by any other act hereunder, be deemed to make any representations as to validity or authorization of (i) the Warrants or the Warrant Certificates (except as to its countersignature thereon), (ii) any securities or other property delivered upon exercise of any Warrant, (iii) the accuracy of the computation of the number or kind or amount of stock or other securities or other property deliverable upon exercise of any Warrant, (iv) the independence of any Independent Financial Expert or (v) the correctness of any of the representations of the Company made in such certificates that the Warrant Agent receives.  The Warrant Agent shall not at any time have any duty to calculate or determine whether any facts exist that may require any adjustments pursuant to Section 4 hereof with respect to the kind and amount of shares or other securities or any property issuable to Holders upon the exercise of Warrants required from time to time.  The Warrant Agent shall have no duty or responsibility to determine the accuracy or correctness of such calculation or with respect to the methods employed in making the same.  The Warrant Agent shall not be accountable with respect to the validity or value (or the kind or amount) of any shares of Common Stock or of any securities or property which may at any time be issued or delivered upon the exercise of any Warrant or upon any adjustment pursuant to Section 4 hereof, and it makes no representation with respect thereto.  The Warrant Agent shall not be responsible for any failure of the Company to make any cash payment or to issue, transfer or deliver any shares of Common Stock or stock certificates or other securities or property upon the surrender of any

Warrant Certificate for the purpose of exercise or upon any adjustment pursuant to <u>Section 4</u> hereof or to comply with any of the covenants of the Company contained in <u>Section 4</u> hereof.

The Warrant Agent shall not (i) be liable for any recital or statement of fact contained herein or in the Warrant Certificates or for any action taken, suffered or omitted by it in good faith on the belief that any Warrant Certificate or any other documents or any signatures are genuine or properly authorized, (ii) be responsible for any failure on the part of the Company to comply with any of its covenants and obligations contained in this Agreement or in the Warrant Certificates or (iii) be liable for any act or omission in connection with this Agreement except for its own gross negligence, bad faith or willful misconduct.

The Warrant Agent is hereby authorized to accept and protected in accepting instructions with respect to the performance of its duties hereunder by Company Order and to apply to any such officer named in such Company Order for instructions (which instructions will be promptly given in writing when requested), and the Warrant Agent shall not be liable for any action taken or suffered to be taken by it in good faith in accordance with the instructions in any Company Order.

The Warrant Agent may execute and exercise any of the rights and powers hereby vested in it or perform any duty hereunder either itself or by or through its attorneys, agents or employees, <u>provided</u>, <u>however</u>, reasonable care has been exercised in the selection and in the continued employment of any such attorney, agent or employee. The Warrant Agent shall not be under any obligation or duty to institute, appear in or defend any action, suit or legal proceeding in respect hereof, unless first indemnified to its satisfaction, but this provision shall not affect the power of the Warrant Agent to take such action as the Warrant Agent may consider proper, whether with or without such indemnity. The Warrant Agent shall promptly notify the Company in writing of any claim made or action, suit or proceeding instituted against it arising out of or in connection with this Agreement.

The Company shall perform, execute, acknowledge and deliver or cause to be performed, executed, acknowledged and delivered all such further acts, instruments and assurances as may reasonably be required by the Warrant Agent in order to enable it to carry out or perform its duties under this Agreement.

The Warrant Agent shall act solely as agent of the Company hereunder and does not assume any obligation or relationship of agency or trust for or with any of the Holders or any beneficial owners of Warrants. The Warrant Agent shall not be liable except for the failure to perform such duties as are specifically set forth herein or specifically set forth in the Warrant Certificates, and no implied covenants or obligations shall be read into this Agreement against the Warrant Agent whose duties and obligations shall be determined solely by the express provisions hereof or the express provisions of the Warrant Certificates.

9.2.    Right to Consult Counsel.  The Warrant Agent may at any time consult with legal counsel satisfactory to it (who may be legal counsel for the Company), and the Warrant Agent shall incur no liability or responsibility to the Company or to any Holder for any action taken, suffered or omitted by it in good faith in accordance with the opinion or advice of such counsel.

9.3.    Compensation, Reimbursement and Indemnification.  The Company agrees to pay the Warrant Agent from time to time compensation for all fees and expenses relating to its services hereunder as the Company and the Warrant Agent may agree from time to time and to reimburse the Warrant Agent for reasonable expenses and disbursements, including reasonable counsel fees incurred in connection with the execution and administration of this Agreement. The Company further agrees to indemnify the Warrant Agent for and save it harmless against any losses, liabilities or reasonable expenses arising out of or in connection with the acceptance and administration of this Agreement, including the reasonable costs, legal fees and expenses of investigating or defending any claim of such liability, except that the Company shall have no liability hereunder to the extent that any such loss, liability or expense results from the Warrant Agent's own gross negligence, bad faith or willful misconduct.

9.4.    Warrant Agent May Hold Company Securities.  The Warrant Agent, any Countersigning Agent and any stockholder, director, officer or employee of the Warrant Agent or any Countersigning Agent may buy, sell or deal in any of the warrants or other securities of the Company or its Affiliates, become pecuniarily interested in transactions in which the Company or its Affiliates may be interested, contract with or lend money to the Company or its Affiliates or otherwise act as fully and freely as though it were not the Warrant Agent or the Countersigning Agent, respectively, under this Agreement.  Nothing herein shall preclude the Warrant Agent or any Countersigning Agent from acting in any other capacity for the Company or for any other legal entity.

9.5.    Resignation and Removal; Appointment of Successor.

(a)    The Warrant Agent may resign its duties and be discharged from all further duties and liability hereunder (except liability arising as a result of the Warrant Agent's own gross negligence, bad faith or willful misconduct) after giving 30 days' prior written notice to the Company.  The Company may remove the Warrant Agent upon 30 days' written notice, and the Warrant Agent shall thereupon in like manner be discharged from all further duties and liabilities hereunder, except as aforesaid.  The Warrant Agent shall, at the expense of the Company, cause notice to be given in accordance with Section 10.1(b) to each Holder of a Warrant Certificate of said notice of resignation or notice of removal, as the case may be.  Upon such resignation or removal, the Company shall appoint in writing a new Warrant Agent.  If the Company shall fail to make such appointment within a period of 30 calendar days after it has been notified in writing of such resignation by the resigning Warrant Agent or after such removal, then the Holder of any Warrant Certificate may apply to any court of competent jurisdiction for the appointment of a new Warrant Agent.  Any new Warrant Agent, whether appointed by the Company or by such a court, shall be a Corporation doing business under the laws of the United States or any state thereof in good standing, authorized under such laws to act as Warrant Agent, and having a combined capital and surplus of not less than $25,000,000.  The combined capital and surplus of any such new Warrant Agent shall be deemed to be the combined capital and surplus as set forth in the most recent annual report of its condition

published by such Warrant Agent prior to its appointment, provided, however, such reports are published at least annually pursuant to law or to the requirements of a Federal or state supervising or examining authority. After acceptance in writing of such appointment by the new Warrant Agent, it shall be vested with the same powers, rights, duties and responsibilities as if it had been originally named herein as the Warrant Agent, without any further assurance, conveyance, act or deed; but if for any reason it shall be reasonably necessary or expedient to execute and deliver any further assurance, conveyance, act or deed, the same shall be done at the reasonable expense of the Company and shall be legally and validly executed and delivered by the resigning or removed Warrant Agent. Not later than the effective date of any such appointment, the Company shall file notice thereof with the resigning or removed Warrant Agent. Failure to give any notice provided for in this Section 9.5(a), however, or any defect therein, shall not affect the legality or validity of the resignation or removal of the Warrant Agent or the appointment of a new Warrant Agent as the case may be.

(b) Any Corporation into which the Warrant Agent or any new Warrant Agent may be merged, or any Corporation resulting from any consolidation to which the Warrant Agent or any new Warrant Agent shall be a party, shall be a successor Warrant Agent under this Agreement without any further act, provided that such Corporation would be eligible for appointment as successor to the Warrant Agent under the provisions of Section 9.5(a). Any such successor Warrant Agent shall promptly cause notice of its succession as Warrant Agent to be given in accordance with Section 10.1(b) to each Holder of a Warrant Certificate at such Holder's last address as shown on the Warrant Register.

9.6. [Appointment of Countersigning Agent.

(a) The Warrant Agent may appoint a Countersigning Agent or Agents which shall be authorized to act on behalf of the Warrant Agent to countersign Warrant Certificates issued upon original issue and upon exchange, registration of transfer or pursuant to Section 5, and Warrant Certificates so countersigned shall be entitled to the benefits of this Warrant Agreement equally and proportionately with any and all other Warrant Certificates duly executed and delivered hereunder. Wherever reference is made in this Warrant Agreement to the countersignature and delivery of Warrant Certificates by the Warrant Agent or to Warrant Certificates countersigned by the Warrant Agent, such reference shall be deemed to include countersignature and delivery on behalf of the Warrant Agent by a Countersigning Agent and Warrant Certificates countersigned by a Countersigning Agent. Each Countersigning Agent shall be acceptable to the Company and shall at the time of appointment be a Corporation doing business under the laws of the United States of America or any State thereof in good standing, authorized under such laws to act as Countersigning Agent, and having a combined capital and surplus of not less than $25,000,000. The combined capital and surplus of any such new Countersigning Agent shall be deemed to be the combined capital and surplus as set forth in the most recent annual report of its condition published by such Countersigning Agent prior to its appointment, provided, however, such reports are published at least annually pursuant to law or to the requirements of a Federal or state supervising or examining authority.

(b) Any Corporation into which a Countersigning Agent may be merged or any Corporation resulting from any consolidation to which such Countersigning Agent shall be a party, shall be a successor Countersigning Agent without any further act, provided that such

Corporation would be eligible for appointment as a new Countersigning Agent under the provisions of Section 9.6(a), without the execution or filing of any paper or any further act on the part of the Warrant Agent or the Countersigning Agent. Any such successor Countersigning Agent shall promptly cause notice of its succession as Countersigning Agent to be given in accordance with Section 10.1(b) to each Holder of a Warrant Certificate at such Holder's last address as shown on the Warrant Register.

(c) A Countersigning Agent may resign at any time by giving 30 days' prior written notice thereof to the Warrant Agent and to the Company. The Warrant Agent may at any time terminate the agency of a Countersigning Agent by giving 30 days' prior written notice thereof to such Countersigning Agent and to the Company.

(d) The Warrant Agent agrees to pay to each Countersigning Agent from time to time reasonable compensation for its services under this Section and the Warrant Agent shall be entitled to be reimbursed for such payments, subject to the provisions of Section 9.3.

(e) Any Countersigning Agent shall have the same rights and immunities as those of the Warrant Agent set forth in Section 9.1.]

10. **Notices.**

10.1. Notices Generally.

(a) Any request, notice, direction, authorization, consent, waiver, demand or other communication permitted or authorized by this Agreement to be made upon, given or furnished to or filed with the Company or the Warrant Agent by the other party hereto or by any Holder shall be sufficient for every purpose hereunder if in writing (including telecopy communication) and shall be deemed to have been duly given or made, (i) when delivered, if delivered by hand, (ii) on the first Business Day after being delivered to a recognized courier (whose stated terms of delivery are one Business Day to the destination of such notice), (iii) three days after being deposited in the mail, first class and postage prepaid, or (iv) upon confirmation of receipt in the case of telecopy communication as follows:

If to the Company, to it at:

Aventine Renewable Energy Holdings, Inc.
120 North Parkway Drive
Pekin, IL 61555-1800
Attention: Corporation Counsel
Telecopy no.: 309-347-8541

or

If to the Warrant Agent, to it at:

[_____]
[_____]

```
[_____]
Attention:[_____]
Telecopy no.:[_____]
```

or, in either case, such other address as shall have been set forth in a notice delivered in accordance with this Section 10.1(a).

(b)     Where this Agreement provides for notice to Holders of any event, such notice shall be deemed given (unless otherwise herein expressly provided) if in writing and mailed, first-class postage prepaid, to each Holder affected by such event, at the address of such Holder as it appears in the Warrant Register, not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice.  In any case where notice to Holders is given by mail, neither the failure to mail such notice, nor any defect in any notice so mailed, to any particular Holder shall affect the sufficiency of such notice with respect to other Holders. Where this Agreement provides for notice in any manner, such notice may be waived in writing by the Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice.

In case by reason of the suspension of regular mail service or by reason of any other cause it shall be impracticable to give such notice by mail, then such notification as shall be made by a method approved by the Warrant Agent as one which would be most reliable under the circumstances for successfully delivering the notice to the addressees shall constitute a sufficient notification for every purpose hereunder.

10.2.   Required Notices to Holders.  In the event the Company shall propose:

(i)     to make or issue any dividend or other distribution to holders of Common Stock of any stock, other securities, cash, assets or property or of any rights to subscribe for or purchase any shares of stock of any class or any other securities, rights or options; or

(ii)    to effect any Transaction; or

(iii)   to effect the voluntary or involuntary dissolution, liquidation or winding-up of the Company; or

(iv)    to effect any reclassification of its Common Stock; or

(v)     to commence a Company Offer for all or a portion of the outstanding shares of Common Stock (or shall amend any such Company Offer),

then, and in each such case, the Company shall cause to be filed with the Warrant Agent and shall give to each Holder of a Warrant Certificate, in accordance with Section 10.1(b), a notice of such proposed action.  Such notice shall specify: (x) the date on which a record is to be taken for the purposes of such dividend or distribution; (y) the date on which such reclassification, Transaction, liquidation, dissolution or winding up is expected to become effective, the date as of which it is expected that holders of Common Stock of record shall be entitled to exchange their shares of Common Stock for securities, cash or other property deliverable upon such

reclassification, Transaction, liquidation, dissolution or winding up (in the case of a Transaction) and whether the Transaction is a Cash Transaction; or (z) the date on which such tender offer commenced, the date on which such tender offer is scheduled to expire unless extended, the consideration offered and the other material terms thereof (or the material terms of any amendment thereto). Such notice shall be given, in the case of any action covered by clause (i) above, at least 10 days prior to the record date for determining holders of the Common Stock for purposes of such action or, in the case of any action covered by clauses (ii) through (v) above, at least 20 days prior to the applicable effective or expiration date specified above or, in any such case, prior to such earlier time as notice thereof shall be required to be given pursuant to Rule 10b-17 under the Exchange Act.

The Company may, in its sole discretion, cause to be filed with the Warrant Agent and give to each Holder of a Warrant Certificate, in accordance with <u>Section 10.1(b)</u>, a notice of the possible further occurrence of any proposed Change of Control that has been publicly announced. Such notice shall specify the date on which such Change of Control is expected to be consummated and (assuming such Change of Control is consummated) the Expiration Time (after giving effect to such notice) and a statement to the effect that all Warrants will terminate and become void at the Expiration Time.

If at any time the Company shall cancel any of the proposed transactions for which notice has been given under the first two paragraphs of this <u>Section 10.2</u> prior to the consummation thereof, the Company shall give each Holder prompt notice of such cancellation in accordance with <u>Section 10.1(b)</u> hereof.

The Company shall cause to be filed with the Warrant Agent and shall give to each Holder of a Warrant Certificate, in accordance with <u>Section 10.1(b)</u>, a notice of the consummation of any Change of Control no later than the fifth Business Day after the consummation thereof. Such notice shall specify the time at which such Change of Control was consummated and the Expiration Time arising as a result thereof and a statement to the effect that all Warrants will terminate and become void at the Expiration Time.

11.    **Inspection.**

The Warrant Agent shall cause a copy of this Agreement to be available at all reasonable times at the office of the Warrant Agent for inspection by the Holder of any Warrant Certificate. The Warrant Agent may require such Holder to submit his Warrant Certificate for inspection by it.

12.    **Amendments.**

The Company and the Warrant Agent may, without the consent or concurrence of the Holders of the Warrant Certificates, by supplemental agreement or otherwise, amend this Agreement for the purpose of making any changes or corrections in this Agreement that (i) are required to cure any ambiguity or to correct or supplement any defective or inconsistent provision or clerical omission or mistake or manifest error herein contained or (ii) add to the covenants and agreements of the Company in this Agreement further covenants and agreements of the Company thereafter to be observed, or surrender any rights or powers reserved to or

conferred upon the Company in this Agreement; provided, however, that in either case such amendment shall not adversely affect the rights or interests of the Holders of the Warrant Certificates hereunder in any material respect. This Agreement may otherwise be amended by the Company and the Warrant Agent only with the consent of the Holders of Warrant Certificates evidencing a majority of the then outstanding Warrants, except that no amendment or waiver that affects Sections 2.4 or 3.2(a) or this Section 12 shall be effective without the approval of a majority of the Original Restricted Holders.

The Warrant Agent shall join with the Company in the execution and delivery of any such amendment unless such amendment affects the Warrant Agent's own rights, duties or immunities hereunder, in which case the Warrant Agent may, but shall not be required to, join in such execution and delivery. Upon execution and delivery of any amendment pursuant to this Section 12, such amendment shall be considered a part of this Agreement for all purposes and every Holder of a Warrant Certificate theretofore or thereafter countersigned and delivered hereunder shall be bound thereby.

Promptly after the execution by the Company and the Warrant Agent of any such amendment, the Company shall give notice to the Holders of Warrant Certificates, setting forth in general terms the substance of such amendment, in accordance with the provisions of Section 10.1(b). Any failure of the Company to mail such notice or any defect therein, shall not, however, in any way impair or affect the validity of any such amendment.

13. **Waivers.**

The Company may take any action herein prohibited, or omit to perform any act herein required to be performed by it, only if (i) the Company has obtained the written consent of Holders of Warrant Certificates evidencing a majority of the then outstanding Warrants, and (ii) any consent required pursuant to Section 12 has been obtained.

14. **Successor to Company.**

So long as Warrants remain outstanding, the Company will not enter into any Non-Surviving Transaction (as defined in Section 4.1(j)) unless the acquirer shall expressly assume by a supplemental agreement, executed and delivered to the Warrant Agent, in form reasonably satisfactory to the Warrant Agent, the due and punctual performance of every covenant of this Agreement on the part of the Company to be performed and observed and shall have provided for exercise rights in accordance with Section 4.1(j). Upon the consummation of such Non-Surviving Transaction, the acquirer shall succeed to, and be substituted for, and may exercise every right and power of, the Company under this Agreement with the same effect as if such acquirer had been named as the Company herein.

15. **Headings.**

The section headings contained in this Agreement are inserted for convenience only and will not affect in any way the meaning or interpretation of this Agreement.

16.    **Counterparts.**

This Agreement may be executed in two or more counterparts, each of which will be deemed to be an original, but all of which together constitute one and the same instrument.

17.    **Severability.**

The provisions of this Agreement will be deemed severable and the invalidity or unenforceability of any provision hereof will not affect the validity or enforceability of the other provisions hereof; provided that if any provision of this Agreement, as applied to any party or to any circumstance, is adjudged by a court or governmental body not to be enforceable in accordance with its terms, the parties agree that the court or governmental body making such determination will have the power to modify the provision in a manner consistent with its objectives such that it is enforceable, and/or to delete specific words or phrases, and in its reduced form, such provision will then be enforceable and will be enforced.

18.    **Persons Benefiting.**

This Agreement shall be binding upon and inure to the benefit of the Company and the Warrant Agent, and their respective successors and assigns and the Holders from time to time of the Warrant Certificates. Nothing in this Agreement, express or implied, is intended to confer upon any person other than the Company, the Warrant Agent and the Holders of the Warrant Certificates, any rights or remedies under or by reason of this Agreement or any part hereof. Each Holder, by acceptance of a Warrant Certificate, agrees to all of the terms and provisions of this Agreement applicable thereto.

19.    **Applicable Law.**

THIS AGREEMENT, EACH WARRANT CERTIFICATE ISSUED HEREUNDER, EACH WARRANT EVIDENCED THEREBY AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HERETO AND THERETO, INCLUDING THE INTERPRETATION, CONSTRUCTION, VALIDITY AND ENFORCEABILITY THEREOF, SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, EXCEPT TO THE EXTENT THAT THE CORPORATION LAW OF THE STATE OF INCORPORATION OF THE COMPANY SPECIFICALLY AND MANDATORILY APPLIES.

20.    **Entire Agreement.**

This Agreement sets forth the entire agreement of the parties hereto as to the subject matter hereof and supersedes all previous agreements among all or some of the parties hereto with respect thereto, whether written, oral or otherwise.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of the day and year first above written.

AVENTINE RENEWABLE ENERGY
HOLDINGS, INC., a Delaware corporation

By:_____

      Title: _____

[_____], as Warrant Agent

By:    _____

      Title: _____

## Face of Warrant Certificate

[*Insert if required pursuant to* <u>*Section 2.4(a)*</u> *of the Warrant Agreement* -- THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE BEEN ACQUIRED FOR INVESTMENT AND HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR ANY APPLICABLE STATE SECURITIES LAWS, AND MAY NOT BE SOLD OR OTHERWISE TRANSFERRED, PLEDGED, OR HYPOTHECATED UNLESS AND UNTIL SUCH SECURITIES ARE REGISTERED UNDER SUCH ACT, AND SUCH STATE LAW, OR THE COMPANY RECEIVES A WRITTEN OPINION OF LEGAL COUNSEL (WHO SHALL BE, AND WHOSE LEGAL OPINION SHALL BE, REASONABLY SATISFACTORY TO THE COMPANY) ADDRESSED TO THE COMPANY TO THE EFFECT THAT SUCH REGISTRATION IS NOT REQUIRED. THE TRANSFERABILITY OF THIS SECURITY IS ALSO SUBJECT TO RESTRICTIONS CONTAINED IN THE WARRANT AGREEMENT, DATED _____ __, 2010, BETWEEN THE COMPANY AND A WARRANT AGENT, WHICH WARRANT AGREEMENT THE COMPANY WILL FURNISH TO THE HOLDER HEREOF UPON REQUEST.]

[*Insert if required pursuant to* <u>*Section 2.4(e)*</u> *of the Warrant Agreement* -- NOTWITHSTANDING ANY OTHER PROVISION OF THE WARRANTS EVIDENCED HEREBY OR THE RELATED WARRANT AGREEMENT, THE WARRANTS EVIDENCED BY THIS WARRANT CERTIFICATE MAY BE EXERCISED ONLY IF (1) THE REGISTERED HOLDER IS AN ORIGINAL RESTRICTED HOLDER, (2) A REGISTRATION STATEMENT IS IN EFFECT AS TO SUCH EXERCISE OR (3) THE COMPANY RECEIVES A WRITTEN OPINION OF LEGAL COUNSEL (WHO SHALL BE, AND WHOSE LEGAL OPINION SHALL BE, REASONABLY SATISFACTORY TO THE COMPANY) ADDRESSED TO THE COMPANY TO THE EFFECT THAT THE PROPOSED EXERCISE OF THE WARRANTS MAY BE EFFECTED WITHOUT REGISTRATION UNDER THE SECURITIES ACT.]

### AVENTINE RENEWABLE ENERGY HOLDINGS, INC.

### WARRANT CERTIFICATE

### EVIDENCING

### WARRANTS TO PURCHASE COMMON STOCK

No.___                                              __, __, ___Warrants

THIS CERTIFIES THAT, for value received, _____, or registered assigns, is the registered owner of ___,___,___ Warrants to Purchase Common Stock of Aventine Renewable Energy Holdings, Inc., a Delaware corporation (the "***Company***", which term includes any successor thereto under the Warrant Agreement (as defined on the reverse of this Warrant Certificate), and is entitled, subject to and upon compliance with the provisions hereof and of the Warrant Agreement, at such Holder's option, at any time when the Warrants evidenced hereby

are exercisable, to purchase from the Company one share of Common Stock of the Company for each Warrant evidenced hereby, at the purchase price of $40.94 per share (as adjusted from time to time in accordance with the Warrant Agreement, the "*Exercise Price*"), payable in full at the time of purchase, the number of shares of Common Stock into which and the Exercise Price at which each Warrant shall be exercisable each being subject to adjustment as provided in Section 4 of the Warrant Agreement, subject to the right of the Holder from and after a Cash Transaction Effective Time (as defined in the Warrant Agreement) to elect to receive a cash amount upon a Cashless Exercise (as so defined) in lieu of payment of the Exercise Price and receipt of such shares of Common Stock, with such cash amount calculated in accordance with the formula set forth in the Warrant Agreement.

All shares of Common Stock issuable by the Company upon the exercise of Warrants shall, upon such issuance, be duly and validly issued and fully paid and nonassessable. The Company shall pay any and all taxes (other than income taxes) that may be payable in respect of the payment of any cash amount or the issue or delivery of shares of Common Stock on exercise of Warrants. The Company shall not be required, however, to pay any tax or other charge imposed in respect of any transfer involved in the issue and delivery of any certificates for shares of Common Stock or payment of cash to any Person (as defined in the Warrant Agreement) other than the Holder of the Warrant Certificate surrendered upon the exercise of a Warrant, and in case of such transfer or payment, the Warrant Agent and the Company shall not be required to issue or deliver any certificate or pay any cash until (a) such tax or charge has been paid or an amount sufficient for the payment thereof has been delivered to the Warrant Agent or to the Company or (b) it has been established to the Company's satisfaction that any such tax or other charge that is or may become due has been paid.

Each Warrant evidenced hereby may be exercised by the Holder hereof at the Exercise Price then in effect at any time during the period commencing on the Original Issue Date (as defined in the Warrant Agreement) and ending at the Expiration Time (as defined on the reverse side of this Warrant Certificate), subject to any restrictions on exercise set forth on the face of this Warrant Certificate or in the Warrant Agreement.

Subject to the provisions hereof and of the Warrant Agreement, the Holder of this Warrant Certificate may exercise all or any whole number of the Warrants evidenced hereby by surrendering this Warrant Certificate to the Warrant Agent at its office maintained for such purpose (the "*Corporate Agency Office*") with the form of exercise on the reverse hereof duly executed, together with (unless a Cashless Exercise permitted by the Warrant Agreement) payment in full of the Exercise Price as then in effect for each share of Common Stock receivable upon exercise of each Warrant being submitted for exercise and (in the case of a Cashless Exercise permitted by the Warrant Agreement) designation of such Cashless Exercise on such form of exercise. Any such payment of the Exercise Price (unless a Cashless Exercise permitted by the Warrant Agreement) is to be, at the option of the Holder, in any combination of (i) cash delivered to the Warrant Agent at the Corporate Agency Office, (ii) certified bank check or official bank check in New York Clearing House funds payable to the order of the Company and delivered to the Warrant Agent at the Corporate Agency Office or (iii) wire transfer in immediately available funds to such other account of the Company at such banking institution as the Company shall have designated from time to time for such purpose.

Reference is hereby made to the further provisions of (i) this Warrant Certificate set forth on the reverse hereof and (ii) the Warrant Agreement, each of which further provisions shall for all purposes have the same effect as if set forth at this place.

Unless this Warrant Certificate has been countersigned by the Warrant Agent by manual signature of an authorized officer on behalf of the Warrant Agent, this Warrant Certificate shall not be valid for any purpose and no Warrant evidenced hereby shall be exercisable.

IN WITNESS WHEREOF, the Company has caused this certificate to be duly executed.

Dated: _____ __, 20__

AVENTINE RENEWABLE ENERGY HOLDINGS, INC.

[SEAL]

By:_____
      Vice President and Treasurer

ATTEST:

_____

Countersigned:

[_____], as
Warrant Agent

[_____], as Warrant Agent

OR

By:_____
    Authorized Agent

By:_____
    as Countersigning Agent

By:_____
    Authorized Officer

**Reverse of Warrant Certificate**

**AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**

**WARRANT CERTIFICATE**

**EVIDENCING**

**WARRANTS TO PURCHASE COMMON STOCK**

The Warrants evidenced hereby are one of a duly authorized issue of Warrants of the Company designated as its Warrants to Purchase Common Stock ("*Warrants*"), limited in aggregate number to 450,000, issued under and in accordance with the Warrant Agreement, dated as of [_____ __], 2010 (the "*Warrant Agreement*"), between the Company and [_____], as warrant agent (the "*Warrant Agent*", which term includes any successor thereto permitted under the Warrant Agreement), to which Warrant Agreement and all amendments thereto reference is hereby made for a statement of the respective rights, limitations of rights, duties and immunities thereunder of the Company, the Warrant Agent, the Holders of Warrant Certificates and the owners of the Warrants evidenced thereby and of the terms upon which the Warrant Certificates are, and are to be, countersigned and delivered. A copy of the Warrant Agreement shall be available at all reasonable times at the office of the Warrant Agent for inspection by the Holder hereof.

The Warrant Agreement provides that, in addition to certain adjustments to the number of shares of Common Stock into which a Warrant is exercisable and the Exercise Price required to be made in certain circumstances, in the case of any Transaction (as defined in the Warrant Agreement), the Company shall (or, in the case of any Non-Surviving Transaction (as defined in the Warrant Agreement), the Company shall cause the other Person involved in such Transaction to) execute and deliver to the Warrant Agent a written instrument providing that (i) the Warrants evidenced hereby, if then outstanding, will be exercisable thereafter, during the period the Warrants evidenced hereby shall be exercisable as specified herein, only into the Substituted Property (as defined in the Warrant Agreement) that would have been receivable upon such Transaction by a holder of the number of shares of Common Stock that would have been issued upon exercise of such Warrant if such Warrant had been exercised in full immediately prior to such Transaction (upon certain assumptions specified in the Warrant Agreement), assuming that the Warrants evidenced hereby were exercisable at the time of such Transaction at the Exercise Price as then in effect; and (ii) the rights and obligations of the Company (or, in the case of any Non-Surviving Transaction, the other Person involved in such Transaction) and the holders in respect of Substituted Property shall be as nearly equivalent as may be practicable to the rights and obligations of the Company and Holders in respect of Common Stock.

Except as provided in the Warrant Agreement, all outstanding Warrants shall expire and all rights of the Holders of Warrant Certificates evidencing such Warrants shall terminate and cease to exist, at the Expiration Time. "*Expiration Time*" shall mean the earlier of 5:00 p.m., New York time on [_____], 20[__], and (b) if a Change of Control occurs, the Change of Control Expiration Time therefor or, in either event, such earlier date as the Company shall have designated pursuant to the Warrant Agreement upon satisfaction of certain conditions set forth in

the Warrant Agreement. "*Change of Control Expiration Time*" means, with respect to any Change of Control, the later of (A) 5:00 p.m., New York time on the date 20 days after the later of (x) the date on which notice of the consummation of such Change of Control has been duly given by the Company under and in accordance with the fourth paragraph of Section 10.2 and (y) the date (if any) on which notice of the possible future occurrence thereof was duly given by the Company under and in accordance with the second paragraph of Section 10.2 and (B) immediately after the time of consummation of such Change of Control.

In the event of the exercise of less than all of the Warrants evidenced hereby, a new Warrant Certificate of the same tenor and for the number of Warrants which are not exercised shall be issued by the Company in the name or upon the written order of the Holder of this Warrant Certificate upon the cancellation hereof.

The Warrant Certificates are issuable only in registered form in denominations of whole numbers of Warrants. Upon surrender at the office of the Warrant Agent and payment of the charges specified herein and in the Warrant Agreement, this Warrant Certificate may be exchanged for Warrant Certificates in other authorized denominations or the transfer hereof may be registered in whole or in part in authorized denominations to one or more designated transferees; provided, however, that such other Warrant Certificates issued upon exchange or registration of transfer shall evidence the same aggregate number of Warrants as this Warrant Certificate. The Company shall cause to be kept at the office of the Warrant Agent the Warrant Register in which, subject to such reasonable regulations as the Warrant Agent may prescribe and such regulations as may be prescribed by law, the Company shall provide for the registration of Warrant Certificates and of transfers or exchanges of Warrant Certificates. No service charge shall be made for any registration of transfer or exchange of Warrant Certificates; provided, however, the Company may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any registration of transfer or exchange of Warrant Certificates.

Prior to due presentment of this Warrant Certificate for registration of transfer, the Company, the Warrant Agent and any agent of the Company or the Warrant Agent may treat the Person in whose name this Warrant Certificate is registered as the owner hereof for all purposes, and neither the Company, the Warrant Agent nor any such agent shall be affected by notice to the contrary.

The Warrant Agreement permits, with certain exceptions as therein provided, the amendment thereof and the modification of the rights and obligations of the Company and the rights of the Holders of Warrant Certificates under the Warrant Agreement at any time by the Company and the Warrant Agent with the consent of the Holders of Warrant Certificates evidencing a majority of the then outstanding Warrants.

Until the exercise of any Warrant, subject to the provisions of the Warrant Agreement and except as may be specifically provided for in the Warrant Agreement, (i) no Holder of a Warrant Certificate evidencing any Warrant shall have or exercise any rights by virtue hereof as a holder of Common Stock of the Company, including, without limitation, the right to vote, to receive dividends and other distributions or to receive notice of, or attend meetings of, stockholders or any other proceedings of the Company; (ii) the consent of any such Holder shall not be required

with respect to any action or proceeding of the Company; (iii) except with respect to any Received Dividend, no such Holder, by reason of the ownership or possession of a Warrant or the Warrant Certificate representing the same, shall have any right to receive any cash dividends, stock dividends, allotments or rights or other distributions (except as specifically provided in the Warrant Agreement), paid, allotted or distributed or distributable to the stockholders of the Company prior to or for which the relevant record date preceded the date of the exercise of such Warrant; and (iv) no such Holder shall have any right not expressly conferred by the Warrant Agreement or under, or by applicable law with respect to, the Warrant Certificate held by such Holder.

This Warrant Certificate, each Warrant evidenced thereby and the Warrant Agreement shall be governed by and construed in accordance with the laws of the State of New York, except to the extent that the corporation law of the state of incorporation of the Company specifically and mandatorily applies.

All terms used in this Warrant Certificate which are defined in the Warrant Agreement shall have the meanings assigned to them in the Warrant Agreement.

Form of Exercise

In accordance with and subject to the terms and conditions hereof and of the Warrant Agreement, the undersigned registered Holder of this Warrant Certificate hereby irrevocably elects to exercise _____ Warrants evidenced by this Warrant Certificate and represents that such Holder has tendered (unless a Cash Transaction Effective Time has occurred and the fifth box below has been checked by the Holder) the Exercise Price for each of the Warrants evidenced hereby being exercised in the aggregate amount of $_____, in the indicated combination of:

☐    CASH ($_____);

☐    CERTIFIED BANK CHECK PAYABLE TO THE ORDER OF THE COMPANY ($_____);

☐    OFFICIAL BANK CHECK IN NEW YORK CLEARING HOUSE FUNDS PAYABLE TO THE ORDER OF THE COMPANY ($_____);

☐    WIRE TRANSFER IN IMMEDIATELY AVAILABLE FUNDS TO THE ACCOUNT DESIGNATED BY THE COMPANY FOR SUCH PURPOSE ($_____); OR

☐    IF (BUT ONLY IF) A CASH TRANSACTION EFFECTIVE TIME HAS OCCURRED, CASHLESS EXERCISE IN ACCORDANCE WITH THE FORMULA SET FORTH IN SECTION 3.2(c) OF THE WARRANT AGREEMENT.

If (but only if) the Company has given written notice under and in accordance with Section 10.2 of the Warrant Agreement of the possible future occurrence of a Change of Control,

exercise of _____ of the Warrants is subject to and contingent upon and to be effective (subject to the other conditions to exercise specified in the Warrant Agreement) at the time of consummation of such Change of Control referred to in the Company's notice dated _____, 20__ given pursuant to Section 10.2 of the Warrant Agreement.

The undersigned requests that the shares of Common Stock issuable upon exercise be in fully registered form in such denominations and registered in such names and delivered, together with any other property receivable upon exercise, in such manner as is specified in the instructions set forth below.

If the number of Warrants exercised is less than all of the Warrants evidenced hereby, the undersigned requests that a new Warrant Certificate representing the remaining Warrants evidenced hereby be issued and delivered to the undersigned unless otherwise specified in the instructions below.

Dated:_____  Name:_____
_____      (Please Print)
(Insert Social Security or Other Identifying
Number of Holder)       Address:_____

             _____
             _____
              Signature
          (Signature must conform in all respects to
          name of Holder as specified on the face of this
          Warrant Certificate and must bear a signature
          guarantee by a bank, trust company or member
          firm of a national securities exchange.)

Signature Guaranteed:

   Instructions (i) as to denominations and names of Common Stock issuable upon exercise and as to delivery of such securities and any other property issuable upon exercise and (ii) if applicable, as to Warrant Certificates evidencing unexercised Warrants:

<u>Assignment</u>

   (Form of Assignment To Be Executed If Holder Desires To Transfer Warrant Certificate)

   FOR VALUE RECEIVED _____ hereby sells, assigns and transfers unto

        Please insert social security or
         other identifying number

(Please print name and address including zip code)

the Warrants represented by the within Warrant Certificate and does hereby irrevocably constitute and appoint _____ Attorney, to transfer said Warrant Certificate on the books of the within-named Company with full power of substitution in the premises.

Dated:           Signature
          (Signature must conform in all respects to
          name of Holder as specified on the face of this
          Warrant Certificate and must bear a signature
          guarantee by a bank, trust company or member
          firm of a national securities exchange.)

Signature Guaranteed:

**<u>Exhibit H</u>**

**List of Directors and Officers of the Reorganized Debtors**

Article V(D) of the Plan provides that the initial board of directors for each of the Reorganized Debtors shall consist of one to five directors. In accordance with Article V(D) of the Plan, the Debtors submit the following information.

Proposed Directors:

1. Eugene Davis – *Chairman of the Board.* Mr. Davis is currently Chairman and Chief Executive Officer of PIRINATE Consulting Group, LLC ("PIRINATE"), a privately held consulting firm specializing in turnaround management, merger and acquisition consulting and hostile and friendly takeovers, proxy contests and strategic planning advisory services for domestic and international public and private business entities. Since forming PIRINATE in 1997, Mr. Davis has advised, managed, sold, liquidated and served as a Chief Executive Officer, Chief Restructuring Officer, Director, Committee Chairman and Chairman of the Board of a number of businesses operating in diverse sectors such as telecommunications, automotive, manufacturing, high-technology, medical technologies, metals, energy, financial services, consumer products and services, import-export, mining and transportation and logistics. Previously, Mr. Davis served as President, Vice Chairman and Director of Emerson Radio Corporation and Chief Executive Officer and Vice Chairman of Sport Supply Group, Inc. He began his career as an attorney and international negotiator with Exxon Corporation and Standard Oil Company (Indiana) and as a partner in two Texas-based law firms, where he specialized in corporate/securities law, international transactions and restructuring advisory. Mr. Davis graduated with a B.A. degree in International Politics from Columbia University and graduated with a Masters in International Affairs degree in International Law and Organization from the School of International Affairs of Columbia University and a J.D. from Columbia University School of Law. Mr. Davis is also a member of the Board of Directors of American Commercial Lines, Inc., Atlas Air Worldwide Holdings, Knology, Inc., Bally Total Fitness, Solutia Inc. and TerreStar Corporation.

2. Thomas L. Manuel – *Director.* From August 2006 until August 2007, Mr. Manuel was the President and Chief Executive Officer of ASAlliances Biofuels LLC ("ASA") and a member of the Board of Directors. Prior to that, Mr. Manuel was the President and Chief Operating Officer of ConAgra Meat Companies ("ConAgra Meat") from 1998 until 2000. Prior to ConAgra Meat, Mr. Manuel was President and Chief Operating Officer of ConAgra Trading and Processing from 1994 until 1998. Mr. Manuel began his career at ConAgra Foods ("ConAgra") in 1977. While at ConAgra, Mr. Manuel was part of a team that helped drive sales from $480 million to $23 billion. He served as assistant to the Chairman of ConAgra and general manager of several ConAgra business units, where he was responsible for ConAgra's international and domestic grain merchandising business. Mr. Manuel received his B.S. degree in Business Administration from the

University of Minnesota.  In between his time at ConAgra Meat and ASA, Mr. Manuel served on the boards of various companies, including Swift & Company and Data Transmission Network Corporation.

3. Kurt M. Cellar– *Director.*  From 1999 through January 2008, Mr. Cellar was a partner and Portfolio Manager at Bay Harbour Management, L.C. ("Bay Harbour").  Prior to Bay Harbour, he was an associate at Remy Investors and Consultants, Inc. ("Remy"), where he sourced and analyzed public and private investment opportunities.  Prior to Remy, Mr. Cellar was an associate at LEK/Alcar Consulting Group, Inc., a strategic management consulting firm.  Mr. Cellar received B.A. degree in Economics and Business from the University of California, Los Angeles and his M.B.A. in Finance and Entrepreneurial Management from the Wharton School at the University of Pennsylvania.  Mr. Cellar currently serves on the boards of Home Buyers Warranty, Inc., the Penn Traffic Company and RCN Corporation.

4. Carney Hawks – *Director.*  Mr. Hawks is an original partner with Brigade Capital Management ("Brigade"), a credit-focused, asset management firm founded in 2007.  Prior to joining Brigade, he was a Managing Director in the High Yield Division of MacKay Shields ("MacKay") from 1998 through 2006.  At MacKay, he worked on a team that managed over $17 billion in retail and institutional high yield assets as well as a hedge fund product.  Prior to MacKay, he was an investment banker in the Financial Entrepreneurs Group at Salomon Smith Barney.  Mr. Hawks is a graduate (with Distinction) of the University of Virginia's McIntire School of Commerce and a CFA Charterholder.  He currently serves on the board of Jacuzzi Group Worldwide.

5. Doug Silverman– *Director.*  Mr. Silverman is a Managing Partner and Co-Chief Investment Officer at Senator Investment Group LP ("Senator").  Prior to co-founding Senator in February 2008, Mr. Silverman spent nearly six years at York Global Value Partners ("York"), a hedge fund focused on value and event investing in equity and credit opportunities on a global basis, as a Managing Director and Co-Portfolio Manager.  Prior to joining York, Mr. Silverman was an investment banker in the Leveraged Finance department at Merrill, Lynch & Co.  Mr. Silverman received a B.A. degree in Economics (cum laude) from Princeton University.

In accordance with Article V(D) of the Plan, the Debtors submit the following information about the officers of the Reorganized Debtors as of the Effective Date.[1]

<u>Individuals proposed to serve as officers of the Reorganized Debtors</u>

| | | |
|---|---|---|
| 1. | Chief Executive Officer | Thomas Manuel |
| 2. | Chief Operating Officer | Thomas Manuel |
| 3. | Chief Financial Officer | To Be Determined |
| 4. | Chief Commodities Officer | Benjamin Borgen |
| 5. | Corporate Secretary | To Be Determined |
| 6. | Vice President of Human Resources | Ray Godbout |
| 7. | Vice President of Project Development | Jeffrey See |
| 8. | Chief Accounting & Compliance Officer | William J. Brennan |
| 9. | Vice President of Pekin Operations | Jeffrey A. Moery |

---

[1] The senior management of the Reorganized Debtors may change after the Effective Date.

## Exhibit I

## Corporate Governance Documents for Reorganized Debtors

<u>**Exhibit I-1**</u>

**Aventine Renewable Energy Holdings, Inc. Certificate of Incorporation**

**THIRD AMENDED AND RESTATED**
**CERTIFICATE OF INCORPORATION**

**OF**

**AVENTINE RENEWABLE ENERGY HOLDINGS, INC.**

Aventine Renewable Energy Holdings, Inc., a corporation organized and existing under the laws of the State of Delaware, DOES HEREBY CERTIFY AS FOLLOWS:

1.     The present name of the Corporation is "Aventine Renewable Energy Holdings, Inc.". The Corporation was originally incorporated under the name "CP RS Holdings, Inc.", and the original certificate of incorporation was filed with the Secretary of State of the State of Delaware on February 10, 2003 and a first amended and restated certificate of incorporation was filed on May 28, 2003 and a second amended and restated certificate of incorporation was filed on December 19, 2005.

2.     This Third Amended and Restated Certificate of Incorporation was duly adopted in accordance with the provisions of Sections 103, 245 and 303 of the General Corporation Law of the State of Delaware in order, among other things, to put into effect and carry out the confirmation order entered by the United States Bankruptcy Court for the District of Delaware on [●], 2010 in the reorganization proceeding styled In re Aventine Renewable Energy Holdings, Inc., *et al.*, Case No. 09-11214(KG), which confirmed the Joint Plan of Reorganization of the Corporation, as amended, filed pursuant to Section 1121(a) of Chapter 11 of Title 11 of the United States Code.

3.     This Third Amended and Restated Certificate of Incorporation restates, integrates and further amends the provisions of the amended and restated certificate of incorporation of the Corporation.

4.     The Third Amended and Restated Certificate of Incorporation is hereby restated and amended to read in its entirety as follows:

ARTICLE I
NAME

The name of the corporation is "Aventine Renewable Energy Holdings, Inc." (the "*Corporation*").

ARTICLE II
PURPOSE

The purpose for which the Corporation is organized is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware (the "*DGCL*").

## ARTICLE III
## REGISTERED AGENT

The address of the registered office of the Corporation in the State of Delaware is 1209 Orange Street in the City of Wilmington, County of New Castle, and the name of the Corporation's registered agent at such address is Corporation Trust Company.

## ARTICLE IV
## CAPITALIZATION

Section 4.1    Authorized Capital Stock.

(a)    The total number of shares of all classes of capital stock that the Corporation is authorized to issue is 20,000,000 shares, consisting of 15,000,000 shares of common stock, par value $0.001 per share (the "**Common Stock**"), and 5,000,000 shares of preferred stock, par value $0.001 per share (the "**Preferred Stock**").

(b)    Notwithstanding any other provision in this Article IV, pursuant to Section 1123(a)(6) of Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), the Corporation will not issue non-voting equity securities (which shall not be deemed to include any warrants or options to purchase capital stock of the Corporation); *provided, however*, that this provision (1) will have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (2) will have such force and effect, if any, only for so long as such section is in effect and applicable to the Corporation or any of its wholly-owned subsidiaries and (3) in all events may be amended or eliminated in accordance with applicable law as from time to time in effect.

(c)    In accordance with that certain order entered in the United States Bankruptcy Court for the District of Delaware, dated _____, 2010, in the reorganization proceeding styled In re Aventine Renewable Energy Holdings, Inc., *et al.*, Case No. 09-11214(KG), which confirmed the Joint Plan of Reorganization of the Corporation, as amended, filed pursuant to Section 1121(a) of the Bankruptcy Code (the "**Plan**"), pursuant to the Bankruptcy Code, (i) upon this Third Amended and Restated Certificate of Incorporation of the Corporation (this "**Certificate**") becoming effective pursuant to the DGCL and the satisfaction of all conditions to the effectiveness of the Plan (the "**Effective Time**"), each share of Common Stock, par value $0.001 per share, of the Corporation, issued and outstanding (or held as treasury shares) immediately prior to the Effective Time (the "**Old Common Stock**"), shall be automatically, and without any action on the part of the holders thereof, cancelled and (ii) any stock certificate that, immediately prior to the Effective Time, represented shares of Old Common Stock shall, from and after the Effective Time, be automatically, and without any action on the part of the holders thereof, cancelled and shall cease to represent capital stock of the Corporation.

Section 4.2    Preferred Stock.

(a)    The Preferred Stock may be issued from time to time in one or more series. The Board of Directors (the "**Board**") is hereby expressly authorized to provide

for the issuance of shares of Preferred Stock in one or more series and to establish from time to time the number of shares to be included in each such series and to fix the voting powers, if any, designations, powers, preferences and relative, participating, optional and other special rights, if any, of each such series and the qualifications, limitations and restrictions thereof, as shall be stated in the resolution(s) adopted by the Board providing for the issuance of such series and included in a certificate of designations (a "*Preferred Stock Designation*") filed pursuant to the DGCL.

(b)     The number of authorized shares of Preferred Stock may be increased or decreased (but not below the number of shares thereof then outstanding) by an amendment to this Certificate adopted by the affirmative vote of the holders of a majority of the outstanding shares of Common Stock, without a vote of the holders of the Preferred Stock, or any series thereof, unless a vote of any such holders of Preferred Stock is required pursuant to another provision of this Certificate (including any Preferred Stock Designation).

Section 4.3    Common Stock.

(a)     The holders of shares of Common Stock shall be entitled to one vote for each such share on each matter properly submitted to the stockholders on which the holders of shares of Common Stock are entitled to vote. Except as otherwise required by law or this Certificate (including any Preferred Stock Designation), at any annual or special meeting of the stockholders the Common Stock shall have the exclusive right to vote for the election of directors and on all other matters properly submitted to a vote of the stockholders.

(b)     Subject to the rights of the holders of Preferred Stock, the holders of shares of Common Stock shall be entitled to receive such dividends and other distributions (payable in cash, property or capital stock of the Corporation) when, as and if declared thereon by the Board from time to time out of any assets or funds of the Corporation legally available therefor and shall share equally on a per share basis in such dividends and distributions.

(c)     In the event of any voluntary or involuntary liquidation, dissolution or winding-up of the Corporation, after payment or provision for payment of the debts and other liabilities of the Corporation, and subject to the rights of the holders of Preferred Stock in respect thereof, the holders of shares of Common Stock shall be entitled to receive all the remaining assets of the Corporation available for distribution to its stockholders, ratably in proportion to the number of shares of Common Stock held by them.

## ARTICLE V
## BOARD OF DIRECTORS

Section 5.1    Board Powers.

The business and affairs of the Corporation shall be managed by, or under the direction of, the Board. In addition to the powers and authority expressly conferred upon the Board by

statute, this Certificate or the bylaws ("**Bylaws**") of the Corporation, the Board is hereby empowered to exercise all such powers and do all such acts and things as may be exercised or done by the Corporation, subject, nevertheless, to the provisions of the DGCL, this Certificate and any Bylaws adopted by the stockholders; *provided, however*, that no Bylaws hereafter adopted by the stockholders shall invalidate any prior act of the Board that would have been valid if such Bylaws had not been adopted.

Section 5.2    Number, Election and Term.

(a)    The number of directors of the Corporation shall be specified in the bylaws; provided, however, that the number of directors may be modified from time to time exclusively by the Board pursuant to a resolution adopted by at least 66⅔% of the Whole Board, subject to Section 5.2(c) and Section 5.4, and no decrease in the number of directors constituting the Board of Directors shall shorten the term of any incumbent director.  For purposes of this Certificate, "**Whole Board**" shall mean the total number of directors the Corporation would have assuming there are no vacancies.

(b)    The name of each director of the Corporation as of the effective time of this Certificate is as follows:

| Name of Director |
| --- |
| Eugene Davis |
| Thomas L. Manuel |
| Kurt M. Cellar |
| Carney Hawks |
| Doug Silverman |

(c)    Subject to Section 5.5 and the immediately following sentence, directors shall be elected at each annual meeting of stockholders and shall hold office until the next annual meeting and until his or her successor has been elected and qualified, subject, however, to such director's earlier death, resignation, retirement, disqualification or removal.  Each director of the Corporation named in Section 5.2(b) shall hold office until the annual meeting for 2011 and until his successor has been elected and qualified, subject, however, to such director's earlier death, resignation, retirement, disqualification or removal.

(d)    Unless and except to the extent that the Bylaws shall so require, the election of directors need not be by written ballot.

Section 5.3    Newly Created Directorships and Vacancies.

Subject to Section 5.5, newly created directorships resulting from an increase in the number of directors and any vacancies on the Board resulting from death, resignation, retirement, disqualification, removal or other cause may be filled solely by a majority vote of the directors then in office, even if less than a quorum, or by a sole remaining director (and not by the

stockholders), and any director so chosen shall hold office until the next annual election or until his or her successor has been elected and qualified, subject, however, to such director's earlier death, resignation, retirement, disqualification or removal.

Section 5.4    Removal.

Subject to Section 5.5, any or all of the directors may be removed from office at any time, with or without cause by the affirmative vote of holders of a majority of the voting power of all then outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class.

Section 5.5    Preferred Stock – Directors.

Notwithstanding any other provision of this Article V, and except as otherwise required by law, whenever the holders of one or more series of Preferred Stock shall have the right, voting separately by class or series, to elect one or more directors, the term of office, the filling of vacancies, the removal from office and other features of such directorships shall be governed by the terms of such series of Preferred Stock as set forth in this Certificate (including any Preferred Stock Designation).

ARTICLE VI
BYLAWS

In furtherance and not in limitation of the powers conferred upon it by law, the Board is expressly authorized to adopt, amend, alter or repeal the Bylaws. Except as provided therein, the affirmative vote of a majority of the Whole Board shall be required to adopt, amend, alter or repeal the Bylaws. The Bylaws also may be adopted, amended, altered or repealed by the stockholders; *provided, however*, that in addition to any vote of the holders of any class or series of capital stock of the Corporation required by law or by this Certificate, except as provided in the Bylaws, the affirmative vote of the holders of at least a majority of the voting power of all then outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required for the stockholders to adopt, amend, alter or repeal the Bylaws.

ARTICLE VII
MEETINGS OF STOCKHOLDERS

Section 7.1    Action by Written Consent.

Except as otherwise expressly provided by the terms of any series of Preferred Stock Designation permitting the holders of such series of Preferred Stock to act by written consent or permitted in this Certificate or by the Bylaws, any action required or permitted to be taken by stockholders of the Corporation must be effected at a duly called annual or special meeting of the stockholders, unless the Board approves in advance of the taking of such action by means of written consent in lieu of a meeting of the stockholders.

Section 7.2    Meetings.

Except as otherwise required by law, special meetings of stockholders of the Corporation may be called only by (i) the Chairman of the Board, (ii) the Chief Executive Officer, (iii) the Board pursuant to a resolution adopted by a majority of the Whole Board, or (iv) a request of the holders of at least 25% of the voting power of all then outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors.

Section 7.3    Advance Notice.

Advance notice of stockholder nominations for the election of directors and of business to be brought by stockholders before any meeting of the stockholders of the Corporation shall be given in the manner provided in the Bylaws.

ARTICLE VIII
LIMITED LIABILITY; INDEMNIFICATION

Section 8.1    Limitation of Personal Liability.

No person who is or was a director of the Corporation shall be personally liable to the Corporation or any of its stockholders for monetary damages for breach of fiduciary duty as a director, except to the extent such exemption from liability or limitation thereof is not permitted by the DGCL as the same exists or hereafter may be amended.  If the DGCL is hereafter amended to authorize corporate action further limiting or eliminating the liability of directors, then the liability of a director to the Corporation or its stockholders shall be limited or eliminated to the fullest extent permitted by the DGCL, as so amended.  Any repeal or amendment of this Section 8.1 by the stockholders of the Corporation or by changes in law, or the adoption of any other provision of this Certificate inconsistent with this Section 8.1 will, unless otherwise required by law, be prospective only (except to the extent such amendment or change in law permits the Corporation to further limit or eliminate the liability of directors) and shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or amendment or adoption of such inconsistent provision with respect to acts or omissions occurring prior to such repeal or amendment or adoption of such inconsistent provision.

Section 8.2    Indemnification.

(a)    Each person who is or was made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "*proceeding*") by reason of the fact that he or she is or was a director or officer of the Corporation or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, limited liability company, joint venture, trust or other enterprise, including service with respect to an employee benefit plan and/or direct or indirect subsidiary (hereinafter a "*Covered Person*"), whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized or

permitted by applicable law, as the same exists or may hereafter be amended, against all expense, liability and loss (including, without limitation, attorneys' fees, judgments, fines, ERISA excise taxes and penalties and amounts paid in settlement) reasonably incurred or suffered by such Covered Person in connection with such proceeding, and such right to indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators. The right to indemnification conferred by this Section 8.2 shall be a contract right that shall fully vest at the time the Covered Person first assumes his or her position as a director or officer of the Corporation and, to the fullest extent permitted by applicable law, shall include the right to be paid by the Corporation the expenses incurred in defending or otherwise participating in any such proceeding in advance of its final disposition, subject to the delivery by such Covered Person of any undertakings, if any, required by the DGCL (as it may be amended or modified from time to time) at such time .

      (b)     The rights conferred on any Covered Person by this Section 8.2 shall not be exclusive of any other rights that any Covered Person may have or hereafter acquire under law, this Certificate, the Bylaws, an agreement, vote of stockholders or disinterested directors, or otherwise.

      (c)     Any repeal or amendment of this Section 8.2 or by changes in law, or the adoption of any other provision of this Certificate inconsistent with this Section 8.2, will, unless otherwise required by law, be prospective only (except to the extent such amendment or change in law permits the Corporation to provide broader rights on a retroactive basis than permitted prior thereto), and will not in any way diminish or adversely affect any right or protection existing at the time of such repeal or amendment or adoption of such inconsistent provision in respect of any act or omission occurring prior to such repeal or amendment or adoption of such inconsistent provision.

      (d)     This Section 8.2 shall not limit the right of the Corporation, to the extent and in the manner authorized or permitted by law, to indemnify and to advance expenses to persons other than Covered Persons.

ARTICLE IX
AMENDMENT OF CERTIFICATE OF INCORPORATION

      The Corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate, in the manner now or hereafter prescribed by this Certificate and the DGCL; and, except as set forth in Article VIII, all rights, preferences and privileges herein conferred upon stockholders, directors or any other persons by and pursuant to this Certificate in its present form or as hereafter amended are granted subject to the right reserved in this Article; *provided, however*, that, (i) notwithstanding any other provision of this Certificate, and in addition to any other vote that may be required by law, the affirmative vote of the holders of at least a majority of the voting power of all then outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required to amend, alter or repeal, or adopt any provision as part of this Certificate inconsistent with the purpose and intent of, Section 4.1(b), Article V (with the exception of

Section 5.2(a)), Article VI, Article VII or this Article IX and (ii) notwithstanding any other provision of this Certificate, and in addition to any other vote that may be required by law, the affirmative vote of the holders of at least 66⅔% of the shares of all then outstanding shares of Common Stock, voting together as a single class, shall be required (a) to amend, alter or repeal Section 5.2(a), or (b) to alter the approvals required set forth in this clause (ii).

ARTICLE X
DGCL SECTION 203

Effective as of the business day immediately following the date on which this Certificate is filed, the Corporation expressly elects to be governed by DGCL Section 203, as amended or modified from time to time.

ARTICLE XI
EFFECTIVE TIME

Pursuant to Section 103(d) of the DGCL, this Certificate shall become effective at [•] [a.m.] (Eastern Time) on [•], 2010.

IN WITNESS WHEREOF, the undersigned has duly executed and acknowledged this Certificate on this [●] day of [●], 2010.

AVENTINE RENEWABLE ENERGY
HOLDINGS, INC.

By: _____
        Name:  [●]
        Title:  [●]

<u>**Exhibit I-2**</u>

**Aventine Renewable Energy Holdings, Inc. Bylaws**

[SECOND] AMENDED AND RESTATED

BYLAWS

OF

AVENTINE RENEWABLE ENERGY HOLDINGS, INC.,


a Delaware corporation


(the "*Corporation*")


(Adopted as of [●], 2010)

## [SECOND] AMENDED AND RESTATED
## BYLAWS

### OF

### AVENTINE RENEWABLE ENERGY HOLDINGS, INC.

## ARTICLE I
## OFFICES

**Section 1.1     Registered Office.**  The registered office of the Corporation within the State of Delaware shall be located at 1209 Orange Street in the City of Wilmington, County of New Castle, and the name of the Corporation's registered agent at such address is Corporation Trust Company.

**Section 1.2     Additional Offices.**  The Corporation may, in addition to its registered office in the State of Delaware, have such other offices and places of business, both within and outside the State of Delaware, as the Board of Directors of the Corporation (the "*Board*") may from time to time determine or as the business and affairs of the Corporation may require.

## ARTICLE II
## STOCKHOLDERS MEETINGS

**Section 2.1     Annual Meetings.**  The annual meeting of stockholders shall be held at such place and time and on such date as shall be determined by the Board and stated in the notice of the meeting, provided that the Board may in its sole discretion determine that the meeting shall not be held at any place, but may instead be held solely by means of remote communication pursuant to Section 9.5(a).  At each annual meeting, the stockholders shall elect directors of the Corporation and may transact any other business as may properly be brought before the meeting.

**Section 2.2     Special Meetings.**  Except as otherwise required by applicable law or provided in the Corporation's Third Amended and Restated Certificate of Incorporation, as the same may be further amended or restated from time to time (the "*Certificate of Incorporation*"), special meetings of stockholders, for any purpose or purposes, may be called only by (i) the Chairman of the Board, (ii) the Chief Executive Officer, (iii) the Board pursuant to a resolution adopted by a majority of the Whole Board (as defined below), or (iv) a request of the holders of at least 25% of the voting power of all then outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors.  Special meetings of stockholders shall be held at such place and time and on such date as shall be determined by the person calling the special meeting and stated in the Corporation's notice of the meeting, provided that the Board may in its sole discretion determine that the meeting shall not be held at any place, but may instead be held solely by means of remote communication pursuant to Section 9.5(a).  "*Whole Board*" shall mean the total number of directors the Corporation would have assuming there are no vacancies.

**Section 2.3     Notices.**  Notice of each stockholders meeting stating the place, if any, date and time of the meeting, the means of remote communication, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such meeting, and the

1

record date for determining the stockholders entitled to vote at the meeting if such date is different from the record date for determining stockholders entitled to notice of the meeting shall be given in the manner permitted by Section 9.3 to each stockholder entitled to vote thereat as of the record date for determining the stockholders entitled to notice of the meeting. Such notice shall be given not less than 10 nor more than 60 days before the date of the meeting. If said notice is for a stockholders meeting other than an annual meeting, it shall in addition state the purpose or purposes for which the meeting is called, and the business transacted at such meeting shall be limited to the matters so stated in the notice of meeting (or any supplement thereto). Any meeting of stockholders as to which notice has been given may be postponed, and any special meeting of stockholders as to which notice has been given may be cancelled, by the Board upon public announcement (as defined in Section 2.7(c)) given before the date previously scheduled for such meeting.

**Section 2.4    Quorum**. Except as otherwise provided by applicable law, the Certificate of Incorporation or these Bylaws, the presence, in person or by proxy, at a stockholders meeting of the holders of shares of outstanding capital stock of the Corporation representing a majority of the voting power of all outstanding shares of capital stock of the Corporation entitled to vote at such meeting shall constitute a quorum for the transaction of business at such meeting, except that when specified business is to be voted on by a class or series of stock voting as a class, the holders of shares representing a majority of the voting power of the outstanding shares of such class or series shall constitute a quorum of such class or series for the transaction of such business. If a quorum shall not be present or represented by proxy at any meeting of the stockholders, the chairman of the meeting may adjourn the meeting from time to time in the manner provided in Section 2.6 until a quorum shall attend. The stockholders present at a duly convened meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum. Shares of its own stock belonging to the Corporation or to another corporation, if a majority of the voting power of the shares entitled to vote in the election of directors of such other corporation is held, directly or indirectly, by the Corporation, shall neither be entitled to vote nor be counted for quorum purposes; provided, however, that the foregoing shall not limit the right of the Corporation or any such other corporation to vote shares held by it in a fiduciary capacity.

**Section 2.5    Voting of Shares**.

(a)    Voting Lists. The Secretary shall prepare, or shall cause the officer or agent who has charge of the stock ledger of the Corporation to prepare, at least 10 days before every meeting of stockholders, a complete list of the stockholders of record entitled to vote at the meeting (provided, however, if the record date for determining the stockholders entitled to vote is less than 10 days before the meeting date, the list shall reflect the stockholders entitled to vote as of the tenth day before the meeting date), arranged in alphabetical order for each class of stock and showing the address and the number of shares registered in the name of each stockholder. Nothing contained in this Section 2.5(a) shall require the Corporation to include electronic mail addresses or other electronic contact information on such list. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours for a period of at least 10 days prior to the meeting: (i) on a reasonably accessible electronic network, provided that the information required to gain access to such list is provided with the notice of the meeting, or (ii) during ordinary business hours, at the principal place of

business of the Corporation. If the Corporation determines to make the list available on an electronic network, the Corporation may take reasonable steps to ensure that such information is available only to stockholders of the Corporation. If the meeting is to be held at a place, then the list of stockholders entitled to vote at the meeting shall be produced and kept at the time and place of the meeting during the whole time thereof, and may be examined by any stockholder who is present. If a meeting of stockholders is to be held solely by means of remote communication as permitted by Section 9.5(a), then such list shall be open to the examination of any stockholder during the whole time of the meeting on a reasonably accessible electronic network, and the information required to access such list shall be provided with the notice of meeting. Except as otherwise provided by law, the stock ledger shall be the only evidence as to who are the stockholders entitled to examine the list required by this Section 2.5(a) or to vote in person or by proxy at any meeting of stockholders.

(b)     Manner of Voting. At any stockholders meeting, every stockholder entitled to vote may vote in person or by proxy. If authorized by the Board, the voting by stockholders or proxyholders at any meeting conducted by remote communication may be effected by a ballot submitted by electronic transmission (as defined in Section 9.3), provided that any such electronic transmission must either set forth or be submitted with information from which the Corporation can determine that the electronic transmission was authorized by the stockholder or proxyholder. The Board, in its discretion, or the chairman of the meeting of stockholders, in such person's discretion, may require that any votes cast at such meeting shall be cast by written ballot.

(c)     Proxies. Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy, but no such proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period. Proxies need not be filed with the Secretary of the Corporation until the meeting is called to order, but shall be filed with the Secretary before being voted. Without limiting the manner in which a stockholder may authorize another person or persons to act for such stockholder as proxy, either of the following shall constitute a valid means by which a stockholder may grant such authority.

(i)     A stockholder may execute a writing authorizing another person or persons to act for such stockholder as proxy. Execution may be accomplished by the stockholder or such stockholder's authorized officer, director, employee or agent signing such writing or causing such person's signature to be affixed to such writing by any reasonable means, including, but not limited to, by facsimile signature.

(ii)     A stockholder may authorize another person or persons to act for such stockholder as proxy by transmitting or authorizing the transmission of an electronic transmission to the person who will be the holder of the proxy or to a proxy solicitation firm, proxy support service organization or like agent duly authorized by the person who will be the holder of the proxy to receive such transmission, provided that any such electronic transmission must either set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the stockholder.

Any copy, facsimile telecommunication or other reliable reproduction of the writing or transmission authorizing another person or persons to act as proxy for a stockholder may be substituted or used in lieu of the original writing or transmission for any and all purposes for which the original writing or transmission could be used; provided that such copy, facsimile telecommunication or other reproduction shall be a complete reproduction of the entire original writing or transmission.

(d)     Required Vote.  Subject to the rights of the holders of one or more series of preferred stock of the Corporation (*"**Preferred Stock**"*), voting separately by class or series, to elect directors pursuant to the terms of one or more series of Preferred Stock, the election of directors shall be determined by a plurality of the votes cast by the stockholders present in person or represented by proxy at the meeting and entitled to vote thereon.  All other matters shall be determined by the vote of a majority in voting power of the shares of stock of the Corporation present in person or represented by proxy at the meeting and entitled to vote thereon, unless the matter is one upon which, by applicable law, the Certificate of Incorporation, these Bylaws or applicable stock exchange rules, a different vote is required, in which case such provision shall govern and control the decision of such matter.

(e)     Inspectors of Election.  The Board may, and shall if required by law, in advance of any meeting of stockholders, appoint one or more persons as inspectors of election, who may be employees of the Corporation or otherwise serve the Corporation in other capacities, to act at such meeting of stockholders or any adjournment thereof and to make a written report thereof.  The Board may appoint one or more persons as alternate inspectors to replace any inspector who fails to act.  If no inspectors of election or alternates are appointed by the Board, the chairman of the meeting shall appoint one or more inspectors to act at the meeting.  Each inspector, before discharging his or her duties, shall take and sign an oath faithfully to execute the duties of inspector with strict impartiality and according to the best of his or her ability.  The inspectors shall ascertain and report the number of outstanding shares and the voting power of each; determine the number of shares present in person or represented by proxy at the meeting and the validity of proxies and ballots; count all votes and ballots; determine and retain for a reasonable period a record of the disposition of any challenges made to any determination by the inspectors; and certify their determination of the number of shares represented at the meeting and their count of all votes and ballots.  No person who is a candidate for an office at an election may serve as an inspector at such election.  Each report of an inspector shall be in writing and signed by the inspector or by a majority of them if there is more than one inspector acting at such meeting.  If there is more than one inspector, the report of a majority shall be the report of the inspectors.

Section 2.6     Adjournments.  Any meeting of stockholders, annual or special, may be adjourned by the chairman of the meeting, from time to time, whether or not there is a quorum, to reconvene at the same or some other place.  Notice need not be given of any such adjourned meeting if the date, time and place, if any, thereof, and the means of remote communication, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken.  At the adjourned meeting the stockholders, or the holders of any class or series of stock entitled to vote separately as a class, as the case may be, may transact any business that might have been transacted at the original meeting.  If the adjournment is for more than 30 days, notice of the

adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting. If after the adjournment a new record date for stockholders entitled to vote is fixed for the adjourned meeting, the Board shall fix a new record date for notice of such adjourned meeting in accordance with Section 2.3, and shall give notice of the adjourned meeting to each stockholder of record entitled to vote at such adjourned meeting as of the record date fixed for notice of such adjourned meeting.

**Section 2.7    Advance Notice for Business.**

(a)    Annual Meetings of Stockholders.  No business may be transacted at an annual meeting of stockholders, other than business that is either (i) specified in the Corporation's notice of meeting (or any supplement thereto) given by or at the direction of the Board, (ii) otherwise properly brought before the annual meeting by or at the direction of the Board or (iii) otherwise properly brought before the annual meeting by any stockholder of the Corporation (x) who is a stockholder of record on the date of the giving of the notice provided for in this Section 2.7(a) and who is entitled to vote  at such annual meeting and (y) who complies with the notice procedures set forth in this Section 2.7(a) (unless such notice procedures are otherwise waived in accordance with Section 2.7(a)(iii)).  Except for proposals properly made in accordance with Rule 14a-8 under the Securities Exchange Act of 1934, as amended (the "*Exchange Act*"), and included in the notice of meeting given by or at the direction of the Board, the foregoing clause (iii) shall be the exclusive means for a stockholder to propose business to be brought before an annual meeting of stockholders.  Stockholders seeking to nominate persons for election to the Board must comply with Section 3.2, and this Section 2.7 shall not be applicable to nominations.

(i)    In addition to any other applicable requirements, for business (other than nominations) to be properly brought before an annual meeting by a stockholder, such stockholder must have given timely notice thereof in proper written form to the Secretary of the Corporation and such business must otherwise be a proper matter for stockholder action.  Subject to Section 2.7(a)(iii), a stockholder's notice to the Secretary with respect to such business, to be timely, must comply with the provisions of this Section 2.7(a)(i).  A stockholder's notice with respect to such business (other than nominations) must be received by the Secretary at the principal executive offices of the Corporation not later than the close of business on the 90th day nor earlier than the opening of business on the 120th day before the anniversary date of the immediately preceding annual meeting of stockholders; provided, however, that if the annual meeting is called for a date that is more than 30 days earlier or more than 70 days later than such anniversary date, notice by the stockholder to be timely must be so received not earlier than the opening of business on the 120th day before the meeting and not later than the later of (x) the close of business on the 90th day before the meeting or (y) the close of business on the 10th day following the day on which public announcement of the date of the annual meeting is first made by the Corporation.  The public announcement of an adjournment or postponement of an annual meeting shall not commence a new time period for the giving of a stockholder's notice as described in this Section 2.7(a).

(ii)    To be in proper written form, a stockholder's notice to the Secretary with respect to any business (other than nominations) must set forth (A) as to

each such matter such stockholder proposes to bring before the annual meeting (1) a brief description of the business desired to be brought before the annual meeting and any material interest in such business of such stockholder and any Stockholder Associated Person (as defined below), individually or in the aggregate, (2) the text of the proposal or business (including the text of any resolutions proposed for consideration and if such business includes a proposal to amend these Bylaws, the text of the proposed amendment) and (3) the reasons for conducting such business at the annual meeting, (B) the name and address of the stockholder proposing such business, as they appear on the Corporation's books, (C) the class or series and number of shares of capital stock of the Corporation that are owned of record or are directly or indirectly owned beneficially by such stockholder and by any Stockholder Associated Person, (D) any option, warrant, convertible security, stock appreciation right, swap or similar right with an exercise or conversion privilege or a settlement payment or mechanism at a price related to any class or series of shares of the Corporation or with a value derived in whole or in part from the value of any class or series of shares of the Corporation, whether or not such instrument or right is subject to settlement in the underlying class or series of shares of the Corporation or otherwise (a *"Derivative Instrument"*) directly or indirectly owned beneficially by such stockholder or by any Stockholder Associated Person and any other direct or indirect opportunity of such stockholder or any Stockholder Associated Person to profit or share in any profit derived from any increase or decrease in the value of shares of the Corporation, (E) any proxy (other than a revocable proxy or consent given in response to a solicitation made pursuant to Section 14(a) of the Exchange Act by way of a solicitation statement filed on Schedule 14A), contract, arrangement, understanding or relationship pursuant to which such stockholder or any Stockholder Associated Person has a right to vote any shares of the Corporation, (F) any short interest in any security of the Corporation held by such stockholder or any Stockholder Associated Person (for purposes of this Section 2.7 a person shall be deemed to have a short interest in a security if such person directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has the opportunity to profit or share in any profit derived from any decrease in the value of the subject security), (G) any rights beneficially owned, directly or indirectly, by such stockholder or Stockholder Associated Person to dividends on the shares of the Corporation that are separated or separable from the underlying shares of the Corporation, (H) any proportionate interest in shares of the Corporation or Derivative Instruments held, directly or indirectly, by a general or limited partnership in which such stockholder or any Stockholder Associated Person is a general partner or, directly or indirectly, beneficially owns an interest in a general partner, (I) any performance-related fees (other than an asset-based fee) that such stockholder or any Stockholder Associated Person is entitled to based on any increase or decrease in the value of shares of the Corporation or Derivative Instruments, if any, including without limitation any such interests held by members of such stockholder's or any Stockholder Associated Person's immediate family sharing the same household, (J) a description of all agreements, arrangements or understandings (written or oral) between or among such stockholder, any Stockholder Associated Person or any other person or persons (including their names) in connection with the proposal of such business by such stockholder, (K) any other information relating to such stockholder and any Stockholder Associated Person that would be required to be disclosed in a proxy statement or other

filings required to be made in connection with solicitations of proxies for election of directors (even if an election contest is not involved), or would be otherwise required, in each case pursuant to Section 14 of the Exchange Act and the rules and regulations promulgated thereunder, (L) a representation that such stockholder intends to appear in person or by proxy at the annual meeting to bring such business before the meeting, and (M) a statement of whether such stockholder or any Stockholder Associated Person intends, or is part of a group that intends, to solicit proxies in connection with the proposal.

(iii)     Notwithstanding Section 2.9, the foregoing notice requirements of this Section 2.7(a) may be waived by holders of at least a majority of the voting power of all then outstanding shares of capital stock of the Corporation entitled to vote generally, voting together as a single class, by written consent without prior Board approval. Further, the foregoing notice requirements shall be deemed satisfied by a stockholder as to any proposal (other than nominations) if the stockholder has notified the Corporation of such stockholder's intention to present such proposal at an annual meeting in compliance with Rule 14a-8 (or any successor thereof) of the Exchange Act, and such stockholder's proposal has been included in a proxy statement prepared by the Corporation to solicit proxies for such annual meeting. No business shall be conducted at the annual meeting of stockholders except business brought before the annual meeting in accordance with the procedures set forth in this Section 2.7(a); provided, however, that once business has been properly brought before the annual meeting in accordance with such procedures, nothing in this Section 2.7(a) shall be deemed to preclude discussion by any stockholder of any such business. If the Board or the chairman of the annual meeting determines that any stockholder proposal was not made in accordance with the provisions of this Section 2.7(a) or that the information provided in a stockholder's notice does not satisfy the information requirements of this Section 2.7(a), such proposal shall not be presented for action at the annual meeting. Notwithstanding the foregoing provisions of this Section 2.7(a), if the stockholder (or a qualified representative of the stockholder) does not appear at the annual meeting of stockholders of the Corporation to present the proposed business, such proposed business shall not be transacted, notwithstanding that proxies in respect of such matter may have been received by the Corporation.

(iv)     In addition to the provisions of this Section 2.7(a), a stockholder shall also comply with all applicable requirements of the Exchange Act and the rules and regulations thereunder with respect to the matters set forth herein. Nothing in this Section 2.7(a) shall be deemed to affect any rights of stockholders to request inclusion of proposals in the Corporation's proxy statement pursuant to Rule 14a-8 under the Exchange Act.

(b)     Special Meetings of Stockholders. Only such business shall be conducted at a special meeting of stockholders as shall have been brought before the meeting pursuant to the Corporation's notice of meeting. Nominations of persons for election to the Board may be made at a special meeting of stockholders at which directors are to be elected pursuant to the Corporation's notice of meeting only pursuant to Section 3.2.

(c)     Definitions.  For purposes of these Bylaws, "***public announcement***" shall mean disclosure in a press release reported by the Dow Jones News Service, Associated Press or comparable national news service or in a document publicly filed by the Corporation with the Securities and Exchange Commission pursuant to Sections 13, 14 or 15(d) of the Exchange Act; and "***Stockholder Associated Person***" shall mean for any stockholder (i) any person controlling, directly or indirectly, or acting in concert with, such stockholder, (ii) any beneficial owner of shares of stock of the Corporation owned of record or beneficially by such stockholder, or (iii) any person controlling, controlled by or under common control with such person referred to in the preceding clauses (i) and (ii).

**Section 2.8     Conduct of Meetings.**  The chairman of each annual and special meeting of stockholders shall be the Chairman of the Board or, in the absence (or inability or refusal to act) of the Chairman of the Board, the Chief Executive Officer (if he or she shall be a director) or, in the absence (or inability or refusal to act of the Chief Executive Officer or if the Chief Executive Officer is not a director, the Chief Operating Officer (if he or she shall be a director) or, in the absence (or inability or refusal to act) of the Chief Operating Officer or if the Chief Operating Officer is not a director, such other person as shall be appointed by the Board.  The date and time of the opening and the closing of the polls for each matter upon which the stockholders will vote at a meeting shall be announced at the meeting by the chairman of the meeting.  The Board may adopt such rules and regulations for the conduct of the meeting of stockholders as it shall deem appropriate.  Except to the extent inconsistent with these Bylaws or such rules and regulations as adopted by the Board, the chairman of any meeting of stockholders shall have the right and authority to convene and to adjourn the meeting, to prescribe such rules, regulations and procedures and to do all such acts as, in the judgment of such chairman, are appropriate for the proper conduct of the meeting.  Such rules, regulations or procedures, whether adopted by the Board or prescribed by the chairman of the meeting, may include, without limitation, the following: (a) the establishment of an agenda or order of business for the meeting; (b) rules and procedures for maintaining order at the meeting and the safety of those present; (c) limitations on attendance at or participation in the meeting to stockholders of record of the Corporation, their duly authorized and constituted proxies or such other persons as the chairman of the meeting shall determine; (d) restrictions on entry to the meeting after the time fixed for the commencement thereof; and (e) limitations on the time allotted to questions or comments by participants.  Unless and to the extent determined by the Board or the chairman of the meeting, meetings of stockholders shall not be required to be held in accordance with the rules of parliamentary procedure.  The secretary of each annual and special meeting of stockholders shall be the Secretary or, in the absence (or inability or refusal to act) of the Secretary, an Assistant Secretary so appointed to act by the chairman of the meeting.  In the absence (or inability or refusal to act) of the Secretary and all Assistant Secretaries, the chairman of the meeting may appoint any person to act as secretary of the meeting.

**Section 2.9     Consents in Lieu of Meeting.**  Except as otherwise expressly provided by the terms of any series of Preferred Stock permitting the holders of such series of Preferred Stock to act by written consent, the Certificate of Incorporation or these Bylaws, any action required or permitted to be taken by the stockholders of the Corporation must be effected at a duly called annual or special meeting of the stockholders of the Corporation, unless the Board approves in advance the taking of such action by means of written consent of stockholders, in which case such action may be taken without a meeting, without prior notice and without a vote at a duly

convened meeting, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum voting power that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the Corporation to its registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary of the Corporation. Every written consent shall bear the date of signature of each stockholder who signs the consent and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the date the earliest dated consent is delivered to the Corporation, a written consent or consents signed by a sufficient number of holders to take such action are delivered to the Corporation by delivery to the Corporation's registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary. Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested. An electronic transmission consenting to the action to be taken and transmitted by a stockholder, proxyholder or a person or persons authorized to act for a stockholder or proxyholder shall be deemed to be written, signed and dated for purposes hereof if such electronic transmission sets forth or is delivered with information from which the Corporation can determine that such transmission was transmitted by a stockholder or proxyholder (or by a person authorized to act for a stockholder or proxyholder) and the date on which such stockholder, proxyholder or authorized person transmitted such transmission. The date on which such electronic transmission is transmitted shall be deemed to be the date on which such consent was signed. No consent given by electronic transmission shall be deemed to have been delivered until such consent is reproduced in paper form and delivered to the Corporation by delivery either to the Corporation's registered office in the State of Delaware, the Corporation's principal place of business, or the Secretary of the Corporation. Delivery made to the Corporation's registered office shall be made by hand or by certified or registered mail, return receipt requested. Notwithstanding the limitations on delivery in the previous sentence, consents given by electronic transmission may be otherwise delivered to the Corporation's principal place of business or to the Secretary if, to the extent, and in the manner provided by resolution of the Board. Any copy, facsimile or other reliable reproduction of a consent in writing may be substituted or used in lieu of the original writing for any and all purposes for which the original writing could be used; provided that such copy, facsimile or other reproduction shall be a complete reproduction of the entire original writing. Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for notice of such meeting had been the date that written consents signed by a sufficient number of holders were delivered to the Corporation as provided in this <u>Section 2.9</u>.

## ARTICLE III
## DIRECTORS

**Section 3.1    Powers; Number and Qualification.**

(a)    The business and affairs of the Corporation shall be managed by or under the direction of the Board, which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Certificate of Incorporation or by these Bylaws required to be exercised or done by the stockholders. The number of directors of the

Corporation shall be five; provided, however, that the number of directors may be modified from time to time exclusively by the Board pursuant to a resolution adopted by at least 66⅔% of the Whole Board and no decrease in the number of directors constituting the Board of Directors shall shorten the term of any incumbent director. Directors need not be stockholders or residents of the State of Delaware.

(b) Subject to the rights of one or more series of Preferred Stock and the immediately following sentence, directors shall be elected at each annual meeting of stockholders and shall hold office until the next annual meeting and until his or her successor has been elected and qualified, subject, however, to such director's earlier death, resignation, retirement, disqualification or removal. Each director of the Corporation named in the Certificate of Incorporation shall hold office until the annual meeting for 2011 and until his successor has been elected and qualified, subject, however, to such director's earlier death, resignation, retirement, disqualification or removal.

### Section 3.2 Advance Notice for Nomination of Directors.

(a) Only persons who are nominated in accordance with the following procedures shall be eligible for election as directors by the stockholders of the Corporation, except as may be otherwise provided by the terms of one or more series of Preferred Stock with respect to the rights of holders of one or more series of Preferred Stock to elect directors. Nominations of persons for election to the Board at any annual meeting of stockholders, or at any special meeting of stockholders called for the purpose of electing directors as set forth in the Corporation's notice of such special meeting, may be made (i) by or at the direction of the Board or (ii) by any stockholder of the Corporation (x) who is a stockholder of record on the date of the giving of the notice provided for in this Section 3.2 and who is entitled to vote in the election of directors at such meeting and (y) who complies with the notice procedures set forth in this Section 3.2 (unless such notice procedures are otherwise waived in accordance with Section 3.2(f)).

(b) In addition to any other applicable requirements, for a nomination to be made by a stockholder, such stockholder must have given timely notice thereof in proper written form to the Secretary of the Corporation. To be timely, a stockholder's notice to the Secretary with respect to such nominations must comply with the provisions of this Section 3.2(b). A stockholder's notice with respect to such nominations must be received by the Secretary at the principal executive offices of the Corporation (i) in the case of an annual meeting, not later than the close of business on the 90th day nor earlier than the opening of business on the 120th day before the anniversary date of the immediately preceding annual meeting of stockholders; provided, however, that if the annual meeting is called for a date that is more than 30 days earlier or more than 70 days after such anniversary date, notice by the stockholder to be timely must be so received not earlier than the opening of business on the 120th day before the meeting and not later than the later of (x) the close of business on the 90th day before the meeting or (y) the close of business on the 10th day following the day on which public announcement of the date of the annual meeting is first made by the Corporation; and (ii) in the case of a special meeting of stockholders called for the purpose of electing directors, not earlier than the opening of business on the 120th day before the meeting and not later than the later of (x) the close of business on the 90th day before the meeting or (y) the close of business on the 10th day following the day on

which public announcement of the date of the special meeting is first made by the Corporation. The public announcement of an adjournment or postponement of an annual meeting or special meeting shall not commence a new time period for the giving of a stockholder's notice as described in this Section 3.2.

(c)     Notwithstanding anything in paragraph (b) to the contrary, if the number of directors to be elected to the Board at an annual meeting is greater than the number of directors whose terms expire on the date of the annual meeting and there is no public announcement by the Corporation naming all of the nominees for the additional directors to be elected or specifying the size of the increased Board before the close of business on the 100th day prior to the anniversary date of the immediately preceding annual meeting of stockholders, a stockholder's notice required by this Section 3.2 shall also be considered timely, but only with respect to nominees for the additional directorships created by such increase that are to be filled by election at such annual meeting, if it shall be received by the Secretary at the principal executive offices of the Corporation not later than the close of business on the 10th day following the date on which such public announcement was first made by the Corporation.

(d)     To be in proper written form, a stockholder's notice to the Secretary with respect to such nominations must set forth (i) as to each person whom the stockholder proposes to nominate for election as a director (A) the name, age, business address and residence address of the person, (B) the principal occupation or employment of the person, (C) the class or series and number of shares of capital stock of the Corporation that are owned of record or are directly or indirectly owned beneficially by the person, (D) any Derivative Instrument directly or indirectly owned beneficially by such nominee and any other direct or indirect opportunity to profit or share in any profit derived from any increase or decrease in the value of shares of the Corporation and (E) any other information relating to the person that would be required to be disclosed in a proxy statement or other filings required to be made in connection with solicitations of proxies for election of directors pursuant to Section 14 of the Exchange Act and the rules and regulations promulgated thereunder; and (ii) as to the stockholder giving the notice (A) the name and address of such stockholder as they appear on the Corporation's books, (B) the class or series and number of shares of capital stock of the Corporation that are owned of record or are directly or indirectly owned beneficially by such stockholder and by any Stockholder Associated Person, (C) any Derivative Instrument directly or indirectly owned beneficially by such stockholder or Stockholder Associated Person and any other direct or indirect opportunity of such stockholder or any Stockholder Associated Person to profit or share in any profit derived from any increase or decrease in the value of shares of the Corporation, (D) any proxy (other than a revocable proxy or consent given in response to a solicitation made pursuant to Section 14(a) of the Exchange Act by way of a solicitation statement filed on Schedule 14A), contract, arrangement, understanding or relationship pursuant to which such stockholder or any Stockholder Associated Person has a right to vote any shares of the Corporation, (E) any short interest in any security of the Corporation held by such stockholder or any Stockholder Associated Person (for purposes of this Section 3.2 a person shall be deemed to have a short interest in a security if such person directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, has the opportunity to profit or share in any profit derived from any decrease in the value of the subject security), (F) any rights beneficially owned, directly or indirectly, by such stockholder or Stockholder Associated Person to dividends on the shares of the Corporation that are separated or separable from the underlying shares of the

Corporation, (G) any proportionate interest in shares of the Corporation or Derivative Instruments held, directly or indirectly, by a general or limited partnership in which such stockholder or any Stockholder Associated Person is a general partner or, directly or indirectly, beneficially owns an interest in a general partner, (H) any performance-related fees (other than an asset-based fee) that such stockholder or any Stockholder Associated Person is entitled to based on any increase or decrease in the value of shares of the Corporation or Derivative Instruments, if any, including without limitation any such interests held by members of such stockholder's or any Stockholder Associated Person's immediate family sharing the same household, (I) a description of all agreements, arrangements or understandings (written or oral) between or among such stockholder, any Stockholder Associated Person, any proposed nominee or any other person or persons (including their names) pursuant to which the nomination or nominations are to be made by such stockholder, (J) a representation that such stockholder intends to appear in person or by proxy at the meeting to nominate the persons named in its notice, (K) any other information relating to such stockholder and any Stockholder Associated Person that would be required to be disclosed in a proxy statement or other filings required to be made in connection with solicitations of proxies for election of directors (even if an election contest is not involved), or would be otherwise required, in each case pursuant to Section 14 of the Exchange Act and the rules and regulations promulgated thereunder, (L) a description of all direct and indirect compensation and other material monetary agreements, arrangements and understandings during the past three years, and any other material relationships, between or among such stockholder or any Stockholder Associated Person, or others acting in concert therewith, on the one hand, and each proposed nominee, and his or her respective affiliates and associates, or others acting in concert therewith, on the other hand, including, without limitation all information that would be required to be disclosed pursuant to Rule 404 promulgated under Regulation S-K if the stockholder making the nomination and any Stockholder Associated Person, or any person acting in concert therewith, was the "registrant" for purposes of such rule and the nominee was a director or executive officer of such registrant and (M) a statement of whether such stockholder or any Stockholder Associated Person intends, or is part of a group that intends, to solicit proxies for the election of the proposed nominee. Such notice must be accompanied by a written consent of each proposed nominee to being named as a nominee and to serve as a director if elected.

(e)    If the Board or the chairman of the meeting of stockholders determines that any nomination was not made in accordance with the provisions of this Section 3.2, then such nomination shall not be considered at the meeting in question. Notwithstanding the foregoing provisions of this Section 3.2, if the stockholder (or a qualified representative of the stockholder) does not appear at the meeting of stockholders of the Corporation to present the nomination, such nomination shall be disregarded, notwithstanding that proxies in respect of such nomination may have been received by the Corporation.

(f)    Notwithstanding Section 2.9, the foregoing notice requirements of Section 3.2 may be waived by holders of at least a majority of the voting power of all then outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, by written consent without prior Board approval.

(g)    In addition to the provisions of this Section 3.2, a stockholder shall also comply with all of the applicable requirements of the Exchange Act and the rules and regulations

thereunder with respect to the matters set forth herein. Nothing in this <u>Section 3.2</u> shall be deemed to affect any rights of the holders of Preferred Stock to elect directors pursuant to the Certificate of Incorporation, as it may be amended in accordance with applicable law hereafter to so provide, or the right of the Board to fill newly created directorships and vacancies on the Board pursuant to the Certificate of Incorporation.

**Section 3.3    Compensation.**    Unless otherwise restricted by the Certificate of Incorporation or these Bylaws, the Board shall have the authority to fix the compensation of directors. The directors may be reimbursed their expenses, if any, of attendance at each meeting of the Board and may be paid either a fixed sum for attendance at each meeting of the Board or other compensation as director. No such payment shall preclude any director from serving the Corporation in any other capacity and receiving compensation therefor. Members of committees of the Board may be allowed like compensation and reimbursement of expenses for service on the committee.

**ARTICLE IV**
**BOARD MEETINGS**

**Section 4.1    Annual Meetings.**    The Board shall meet as soon as practicable after the adjournment of each annual stockholders meeting at the place of the annual stockholders meeting unless the Board shall fix another time and place and give notice thereof in the manner required herein for special meetings of the Board. No notice to the directors shall be necessary to legally convene this meeting, except as provided in this <u>Section 4.1</u>.

**Section 4.2    Regular Meetings.**    Regularly scheduled, periodic meetings of the Board may be held without notice at such times, dates and places as shall from time to time be determined by the Board.

**Section 4.3    Special Meetings.**    Special meetings of the Board (a) may be called by the Chairman of the Board or Chief Executive Officer and (b) shall be called by the Chairman of the Board, Chief Executive Officer or Secretary on the written request of at least a majority of directors then in office, or the sole director, as the case may be, and shall be held at such time, date and place as may be determined by the person calling the meeting or, if called upon the request of directors or the sole director, as specified in such written request. Notice of each special meeting of the Board shall be given, as provided in <u>Section 9.3</u>, to each director (i) at least 24 hours before the meeting if such notice is oral notice given personally or by telephone or written notice given by hand delivery or by means of a form of electronic transmission and delivery; (ii) at least two days before the meeting if such notice is sent by a nationally recognized overnight delivery service; and (iii) at least five days before the meeting if such notice is sent through the United States mail and in each case such notice shall specify the business to be transacted at and/or the purpose of such special meeting. If the Secretary shall fail or refuse to give such notice, then the notice may be given by the officer who called the meeting or the directors who requested the meeting. Any and all business that may be transacted at a regular meeting of the Board may be transacted at a special meeting if notice shall have been given as provided for above or such notice is not required or has been waived in accordance with the last sentence of this <u>Section 4.3</u>. A special meeting may be held at any time without notice if all the directors have waived notice of the meeting in accordance with <u>Section 9.4</u>.

**Section 4.4     Quorum; Required Vote.**  A majority of the Whole Board shall constitute a quorum for the transaction of business at any meeting of the Board, and the act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the Board, except as may be otherwise specifically provided by applicable law, the Certificate of Incorporation or these Bylaws.  If a quorum shall not be present at any meeting, a majority of the directors present may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum is present.

**Section 4.5     Consent In Lieu of Meeting.**  Unless otherwise restricted by the Certificate of Incorporation or these Bylaws, any action required or permitted to be taken at any meeting of the Board or any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions (or paper reproductions thereof) are filed with the minutes of proceedings of the Board or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

**Section 4.6     Organization.**  The chairman of each meeting of the Board shall be the Chairman of the Board or, in the absence (or inability or refusal to act) of the Chairman of the Board, the Chief Executive Officer (if he or she shall be a director) or, in the absence (or inability or refusal to act) of the Chief Executive Officer or if the Chief Executive Officer is not a director, the Chief Operating Officer (if he or she shall be a director) or in the absence (or inability or refusal to act) of the Chief Operating Officer or if the Chief Operating Officer is not a director, a chairman elected from the directors present.  The Secretary shall act as secretary of all meetings of the Board.  In the absence (or inability or refusal to act) of the Secretary, an Assistant Secretary shall perform the duties of the Secretary at such meeting.  In the absence (or inability or refusal to act) of the Secretary and all Assistant Secretaries, the chairman of the meeting may appoint any person to act as secretary of the meeting.

## ARTICLE V
## COMMITTEES OF DIRECTORS

**Section 5.1     Establishment.**  The Board may by resolution passed by a majority of the Whole Board designate one or more committees, each committee to consist of one or more of the directors of the Corporation.  Each committee shall keep regular minutes of its meetings and report the same to the Board when required.  The Board shall have the power at any time to fill vacancies in, to change the membership of, or to dissolve any such committee.

**Section 5.2     Available Powers.**  Any committee established pursuant to Section 5.1 hereof, to the extent permitted by applicable law and by resolution of the Board, shall have and may exercise all of the powers and authority of the Board in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers that may require it.

**Section 5.3     Alternate Members.**  The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of such committee.

**Section 5.4** **Procedures.** Unless the Board otherwise provides, the time, date, place, if any, and notice of meetings of a committee shall be determined by such committee. At meetings of a committee, a majority of the number of members of the committee (but not including any alternate member, unless such alternate member has replaced any absent or disqualified member at the time of, or in connection with, such meeting) shall constitute a quorum for the transaction of business. The act of a majority of the members present at any meeting at which a quorum is present shall be the act of the committee, except as otherwise specifically provided by applicable law, the Certificate of Incorporation, these Bylaws or the Board. If a quorum is not present at a meeting of a committee, the members present may adjourn the meeting from time to time, without notice other than an announcement at the meeting, until a quorum is present. Unless the Board otherwise provides and except as provided in these Bylaws, each committee designated by the Board may make, alter, amend and repeal rules for the conduct of its business. In the absence of such rules each committee shall conduct its business in the same manner as the Board is authorized to conduct its business pursuant to Article III and Article IV of these Bylaws.

## ARTICLE VI
## OFFICERS

**Section 6.1** **Officers.** The officers of the Corporation elected by the Board shall be a Chairman of the Board, a Chief Executive Officer, a Chief Operating Officer, a Chief Financial Officer, a Secretary and such other officers (including without limitation a President, Chief Commodities Officer, Chief Accounting and Compliance Officer, Vice Presidents, Assistant Secretaries, Treasurers and Assistant Treasurers) as the Board from time to time may determine. Officers elected by the Board shall each have such powers and duties as generally pertain to their respective offices, subject to the specific provisions of this Article VI. Such officers shall also have such powers and duties as from time to time may be conferred by the Board. The Chairman of the Board, Chief Executive Officer or Chief Operating Officer may also appoint such other officers (including without limitation one or more Vice Presidents and Controllers) as may be necessary or desirable for the conduct of the business of the Corporation. Such other officers shall have such powers and duties and shall hold their offices for such terms as may be provided in these Bylaws or as may be prescribed by the Board or, if such officer has been appointed by the Chairman of the Board, Chief Executive Officer or Chief Operating Officer, as may be prescribed by the appointing officer.

(a)    Chairman of the Board. The Chairman of the Board shall preside when present at all meetings of the stockholders and the Board. The Chairman of the Board shall advise and counsel the Chief Executive Officer and other officers and shall exercise such powers and perform such duties as shall be assigned to or required of the Chairman of the Board from time to time by the Board or these Bylaws.

(b)    Chief Executive Officer. The Chief Executive Officer shall be the chief executive officer of the Corporation, shall have general supervision of the affairs of the Corporation and general control of all of its business subject to the ultimate authority of the Board, and shall be responsible for the execution of the policies of the Board. In the absence (or inability or refusal to act) of the Chairman of the Board, the Chief Executive Officer (if he or she shall be a director) shall preside when present at all meetings of the stockholders and the Board.

(c)     <u>Chief Operating Officer</u>. The Chief Operating Officer shall be the chief operating officer of the Corporation and shall, subject to the authority of the Chief Executive Officer and the Board, have general management and control of the day-to-day business operations of the Corporation and shall consult with and report to the Chief Executive Officer. The Chief Operating Officer shall put into operation the business policies of the Corporation as determined by the Chief Executive Officer and the Board and as communicated to the Chief Operating Officer by the Chief Executive Officer and the Board. The Chief Operating Officer shall make recommendations to the Chief Executive Officer on all operational matters that would normally be reserved for the final executive responsibility of the Chief Executive Officer. In the absence (or inability or refusal to act) of the Chairman of the Board and Chief Executive Officer, the Chief Operating Officer (if he or she shall be a director) shall preside when present at all meetings of the stockholders and the Board.

(d)     <u>Chief Financial Officer</u>. The Chief Financial Officer shall keep and maintain, or cause to be kept and maintained, adequate and correct books and records of account of the Corporation. The Chief Financial Officer shall receive and deposit all moneys and other valuables belonging to the Corporation in the name and to the credit of the Corporation and shall disburse the same only in such manner as the Chief Executive Officer or the other appropriate officers of the Corporation may from time to time determine, shall render, whenever requested, an account of all his transactions as Chief Financial Officer and of the financial condition of the Corporation, and shall perform such further duties as the Chairman of the Board, the Chief Executive Officer, the Certificate of Incorporation, these Bylaws or the Board may prescribe.

(e)     <u>Vice Presidents</u>. In the absence (or inability or refusal to act) of the Chief Operating Officer, the Vice President (or in the event there be more than one Vice President, the Vice Presidents in the order designated by the Board) shall perform the duties and have the powers of the Chief Operating Officer. Any one or more of the Vice Presidents may be given an additional designation of rank or function. The Vice Presidents shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(f)     <u>Secretary</u>.

(i)     The Secretary shall attend all meetings of the stockholders, the Board and (as required) committees of the Board and shall record the proceedings of such meetings in books to be kept for that purpose. The Secretary shall give, or cause to be given, notice of all meetings of the stockholders and special meetings of the Board and shall perform such other duties as may be prescribed by the Board, the Chairman of the Board, Chief Executive Officer or the Chief Operating Officer. The Secretary shall have custody of the corporate seal of the Corporation and the Secretary, or any Assistant Secretary, shall have authority to affix the same to any instrument requiring it, and when so affixed, it may be attested by his or her signature or by the signature of such Assistant Secretary. The Board may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing thereof by his or her signature.

(ii)     The Secretary shall keep, or cause to be kept, at the principal executive office of the Corporation or at the office of the Corporation's transfer agent or registrar, if one has been appointed, a stock ledger, or duplicate stock ledger, showing the

names of the stockholders and their addresses, the number and classes of shares held by each and, with respect to certificated shares, the number and date of certificates issued for the same and the number and date of certificates cancelled.

(g) <u>Assistant Secretaries</u>. The Assistant Secretary or, if there be more than one, the Assistant Secretaries in the order determined by the Board shall, in the absence (or inability or refusal to act) of the Secretary, perform the duties and have the powers of the Secretary.

(h) <u>Treasurer</u>. The Treasurer shall perform all duties commonly incident to that office (including, without limitation, the care and custody of the funds and securities of the Corporation which from time to time may come into the Treasurer's hands and the deposit of the funds of the Corporation in such banks or trust companies as the Board, the Chief Executive Officer or the Chief Financial Officer may authorize), to the extent not performed by the Chief Financial Officer, and shall perform such other duties as the Chairman of the Board, the Chief Executive Officer, the Chief Financial Officer, the Certificate of Incorporation, these Bylaws or the Board may prescribe. The Treasurer shall, in the absence (or inability or refusal to act) of the Chief Financial Officer, perform the duties and have the powers of the Chief Financial Officer.

(i) <u>Assistant Treasurers</u>. The Assistant Treasurer or, if there shall be more than one, the Assistant Treasurers in the order determined by the Board shall, in the absence (or inability or refusal to act) of the Treasurer, perform the duties and exercise the powers of the Treasurer.

**Section 6.2    Term of Office; Removal; Vacancies.**   The elected officers of the Corporation shall be elected annually by the Board at its first meeting held after each annual meeting of stockholders. All officers elected by the Board shall hold office until the next annual meeting of the Board and, in the case of such officers or other officers appointed by other means, until their successors are duly elected and qualified or until their earlier death, resignation, retirement, disqualification, or removal from office. Any officer may be removed, with or without cause, at any time by the Board. Any officer appointed by the Chairman of the Board, Chief Executive Officer or Chief Operating Officer may also be removed, with or without cause, by the Chairman of the Board, Chief Executive Officer or Chief Operating Officer, as the case may be, unless the Board otherwise provides. Any vacancy occurring in any elected office of the Corporation may be filled by the Board. Any vacancy occurring in any office appointed by the Chairman of the Board, Chief Executive Officer or Chief Operating Officer may be filled by the Chairman of the Board, Chief Executive Officer or Chief Operating Officer, as the case may be, unless the Board then determines that such office shall thereupon be elected by the Board, in which case the Board shall elect such officer.

**Section 6.3    Other Officers.**  The Board may delegate the power to appoint such other officers and agents, and may also remove such officers and agents or delegate the power to remove same, as it shall from time to time deem necessary or desirable.

**Section 6.4    Multiple Officeholders; Stockholder and Director Officers.**  Any number of offices may be held by the same person unless the Certificate of Incorporation or

these Bylaws otherwise provide. Officers need not be stockholders or residents of the State of Delaware.

**ARTICLE VII**
**SHARES**

**Section 7.1  Certificated and Uncertificated Shares.** The shares of the Corporation shall be represented by certificates, provided that the Board may provide by resolution or resolutions that some or all of any or all classes or series of its stock shall be uncertificated shares. Any such resolution shall not apply to shares represented by a certificate until such certificate is surrendered to the Corporation. Notwithstanding the adoption of such a resolution by the Board, every holder of stock represented by certificates shall be entitled to have a certificate signed in accordance with Section 7.3 representing the number of shares registered in certificate form. The Corporation shall not have power to issue a certificate representing shares in bearer form.

**Section 7.2  Multiple Classes of Stock.** If the Corporation shall be authorized to issue more than one class of stock or more than one series of any class, the Corporation shall (a) cause the powers, designations, preferences and relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences or rights to be set forth in full or summarized on the face or back of any certificate that the Corporation issues to represent shares of such class or series of stock or (b) in the case of uncertificated shares, within a reasonable time after the issuance or transfer of such shares, send to the registered owner thereof a written notice containing the information required to be set forth on certificates as specified in clause (a) above; provided, however, that, except as otherwise provided by applicable law, in lieu of the foregoing requirements, there may be set forth on the face or back of such certificate or, in the case of uncertificated shares, on such written notice a statement that the Corporation will furnish without charge to each stockholder who so requests the powers, designations, preferences and relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences or rights.

**Section 7.3  Signatures.** Each certificate representing capital stock of the Corporation shall be signed by or in the name of the Corporation by (a) the Chairman of the Board or a Vice President and (b) the Treasurer, an Assistant Treasurer, the Secretary or an Assistant Secretary of the Corporation. Any or all the signatures on the certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, such certificate may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar on the date of issue.

**Section 7.4  Consideration and Payment for Shares.**

(a)  Subject to applicable law and the Certificate of Incorporation, shares of stock may be issued for such consideration, having in the case of shares with par value a value not less than the par value thereof, and to such persons, as determined from time to time by the Board. The consideration may consist of any tangible or intangible property or benefit to the

Corporation including cash, promissory notes, services performed, contracts for services to be performed or other securities.

(b)     Subject to applicable law and the Certificate of Incorporation, shares may not be issued until the full amount of the consideration has been paid, unless upon the face or back of each certificate issued to represent any partly paid shares of capital stock or upon the books and records of the Corporation in the case of partly paid uncertificated shares, there shall have been set forth the total amount of the consideration to be paid therefor and the amount paid thereon up to and including the time said certificate representing certificated shares or said uncertificated shares are issued.

### Section 7.5     Lost, Destroyed or Wrongfully Taken Certificates.

(a)     If an owner of a certificate representing shares claims that such certificate has been lost, destroyed or wrongfully taken, the Corporation shall issue a new certificate representing such shares or such shares in uncertificated form if the owner: (i) requests such a new certificate before the Corporation has notice that the certificate representing such shares has been acquired by a protected purchaser; (ii) if requested by the Corporation, delivers to the Corporation a bond sufficient to indemnify the Corporation against any claim that may be made against the Corporation on account of the alleged loss, wrongful taking or destruction of such certificate or the issuance of such new certificate or uncertificated shares; and (iii) satisfies other reasonable requirements imposed by the Corporation.

(b)     If a certificate representing shares has been lost, apparently destroyed or wrongfully taken, and the owner fails to notify the Corporation of that fact within a reasonable time after the owner has notice of such loss, apparent destruction or wrongful taking and the Corporation registers a transfer of such shares before receiving notification, the owner shall be precluded from asserting against the Corporation any claim for registering such transfer or a claim to a new certificate representing such shares or such shares in uncertificated form.

### Section 7.6     Transfer of Stock.

(a)     If a certificate representing shares of the Corporation is presented to the Corporation with a stock power or other indorsement requesting the registration of transfer of such shares or an instruction is presented to the Corporation requesting the registration of transfer of uncertificated shares, the Corporation shall register the transfer as requested if:

(i)     in the case of certificated shares, the certificate representing such shares has been surrendered;

(ii)    (A) with respect to certificated shares, the indorsement is made by the person specified by the certificate as entitled to such shares; (B) with respect to uncertificated shares, an instruction is made by the registered owner of such uncertificated shares; or (C) with respect to certificated shares or uncertificated shares, the indorsement or instruction is made by any other appropriate person or by an agent who has actual authority to act on behalf of the appropriate person;

(iii)    the Corporation has received a guarantee of signature of the person signing such indorsement or instruction or such other reasonable assurance that the indorsement or instruction is genuine and authorized as the Corporation may request;

(iv)    the transfer does not violate any restriction on transfer imposed by the Corporation that is enforceable in accordance with Section 7.8(a); and

(v)    such other conditions for such transfer as shall be provided for under applicable law have been satisfied.

(b)    Whenever any transfer of shares shall be made for collateral security and not absolutely, the Corporation shall so record such fact in the entry of transfer if, when the certificate for such shares is presented to the Corporation for transfer or, if such shares are uncertificated, when the instruction for registration of transfer thereof is presented to the Corporation, both the transferor and transferee request the Corporation to do so.

**Section 7.7    Registered Stockholders.**    Before due presentment for registration of transfer of a certificate representing shares of the Corporation or of an instruction requesting registration of transfer of uncertificated shares, the Corporation may treat the registered owner as the person exclusively entitled to inspect for any proper purpose the stock ledger and the other books and records of the Corporation, vote such shares, receive dividends or notifications with respect to such shares and otherwise exercise all the rights and powers of the owner of such shares, except (i) that a person who is the beneficial owner of such shares (if held in a voting trust or by a nominee on behalf of such person) may, upon providing documentary evidence of beneficial ownership of such shares and satisfying such other conditions as are provided under applicable law, may also so inspect the books and records of the Corporation and (ii) as otherwise provided by law.

**Section 7.8    Effect of the Corporation's Restriction on Transfer.**

(a)    A written restriction on the transfer or registration of transfer of shares of the Corporation or on the amount of shares of the Corporation that may be owned by any person or group of persons, if permitted by the Delaware General Corporation Law (the "*DGCL*") and noted conspicuously on the certificate representing such shares or, in the case of uncertificated shares, contained in a notice sent by the Corporation to the registered owner of such shares within a reasonable time after the issuance or transfer of such shares, may be enforced against the holder of such shares or any successor or transferee of the holder including an executor, administrator, trustee, guardian or other fiduciary entrusted with like responsibility for the person or estate of the holder.

(b)    A restriction imposed by the Corporation on the transfer or the registration of shares of the Corporation or on the amount of shares of the Corporation that may be owned by any person or group of persons, even if otherwise lawful, is ineffective against a person without actual knowledge of such restriction unless: (i) the shares are certificated and such restriction is noted conspicuously on the certificate; or (ii) the shares are uncertificated and such restriction was contained in a notice sent by the Corporation to the registered owner of such shares within a reasonable time after the issuance or transfer of such shares.

**Section 7.9    Regulations.** The Board shall have power and authority to make such additional rules and regulations, subject to any applicable requirement of law, as the Board may deem necessary and appropriate with respect to the issue, transfer or registration of transfer of shares of stock or certificates representing shares. The Board may appoint one or more transfer agents or registrars and may require for the validity thereof that certificates representing shares bear the signature of any transfer agent or registrar so appointed.

### ARTICLE VIII
### INDEMNIFICATION

**Section 8.1    Right to Indemnification.** Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a *"proceeding"*), by reason of the fact that he or she is or was a director or officer of the Corporation or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, limited liability company, joint venture, trust or other enterprise, including service with respect to an employee benefit plan and/or direct or indirect subsidiary (hereinafter a *"Covered Person"*), whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized or permitted by applicable law, as the same exists or may hereafter be amended, against all expense, liability and loss (including, without limitation, attorneys' fees, judgments, fines, ERISA excise taxes and penalties and amounts paid in settlement) reasonably incurred or suffered by such Covered Person in connection with such proceeding; provided, however, that, except as provided in Section 8.3 with respect to proceedings to enforce rights to indemnification, the Corporation shall indemnify a Covered Person in connection with a proceeding (or part thereof) initiated by such Covered Person only if such proceeding (or part thereof) was authorized by the Board.

**Section 8.2    Right to Advancement of Expenses.** In addition to the right to indemnification conferred in Section 8.1, a Covered Person shall to the fullest extent permitted by law also have the right to be paid by the Corporation the expenses (including, without limitation, attorneys' fees) incurred in defending, testifying, or otherwise participating in any such proceeding in advance of its final disposition (hereinafter an *"advancement of expenses"*); provided, however, that, if the DGCL requires, an advancement of expenses incurred by a Covered Person in his or her capacity as a director or officer of the Corporation (and not in any other capacity in which service was or is rendered by such Covered Person, including, without limitation, service to an employee benefit plan) shall be made only upon delivery to the Corporation of an undertaking (hereinafter an *"undertaking"*), by or on behalf of such Covered Person, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal (hereinafter a *"final adjudication"*) that such Covered Person is not entitled to be indemnified for such expenses under this Article VIII or otherwise.

**Section 8.3    Right of Indemnitee to Bring Suit.** If a claim under Section 8.1 or Section 8.2 is not paid in full by the Corporation within 60 days after a written claim therefor has

been received by the Corporation, except in the case of a claim for an advancement of expenses under Section 8.2, in which case the applicable period shall be 20 days, the Covered Person may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim.  If successful in whole or in part in any such suit, or in a suit brought by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Covered Person shall also be entitled to be paid the expenses of prosecuting or defending such suit.  In (a) any suit brought by the Covered Person to enforce a right to indemnification hereunder (but not in a suit brought by a Covered Person to enforce a right to an advancement of expenses) it shall be a defense that, and (b) in any suit brought by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Corporation shall be entitled to recover such expenses upon a final adjudication that, the Covered Person has not met any applicable standard for indemnification under the Delaware law.  Neither the failure of the Corporation (including its directors who are not parties to such action, a committee of such directors, independent legal counsel, or its stockholders)  to have made a determination prior to the commencement of such suit that indemnification of the Covered Person is proper in the circumstances because the Covered Person has met the applicable standard of conduct set forth in the DGCL, nor an actual determination by the Corporation (including a determination by its directors who are not parties to such action, a committee of such directors, independent legal counsel, or its stockholders) that the Covered Person has not met such applicable standard of conduct, shall create a presumption that the Covered Person has not met the applicable standard of conduct or, in the case of such a suit brought by the Covered Person, shall be a defense to such suit.  In any suit brought by the Covered Person to enforce a right to indemnification or to an advancement of expenses hereunder, or by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that the Covered Person is not entitled to be indemnified, or to such advancement of expenses, under this Article VIII or otherwise shall be on the Corporation.

Section 8.4     **Non-Exclusivity of Rights.**   The rights provided to Covered Persons pursuant to this Article VIII shall not be exclusive of any other right that any Covered Person may have or hereafter acquire under applicable law, the Certificate of Incorporation, these Bylaws, an agreement, a vote of stockholders or disinterested directors, or otherwise.

Section 8.5     **Insurance.**   The Corporation may maintain insurance, at its expense, to protect itself and/or any director, officer, employee or agent of the Corporation or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under the DGCL.

Section 8.6     **Indemnification of Other Persons.**   This Article VIII shall not limit the right of the Corporation to the extent and in the manner authorized or permitted by law to indemnify and to advance expenses to persons other than Covered Persons.  Without limiting the foregoing, the Corporation may, to the extent authorized from time to time by the Board, grant rights to indemnification and to the advancement of expenses to any employee or agent of the Corporation and to any other person who is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to an employee benefit plan, to the fullest

extent of the provisions of this <u>Article VIII</u> with respect to the indemnification and advancement of expenses of Covered Persons under this <u>Article VIII</u>.

**Section 8.7    Amendments.** Any repeal or amendment of this <u>Article VIII</u> by the Board or the stockholders of the Corporation or by changes in applicable law, or the adoption of any other provision of these Bylaws inconsistent with this <u>Article VIII</u>, shall, to the extent permitted by applicable law, be prospective only (except to the extent such amendment or change in applicable law permits the Corporation to provide broader indemnification rights to Covered Persons on a retroactive basis than permitted prior thereto), and will not in any way diminish or adversely affect any right or protection existing hereunder in respect of any act or omission occurring prior to such repeal or amendment or adoption of such inconsistent provision.

**Section 8.8    Certain Definitions.** For purposes of this <u>Article VIII</u>, (a) references to "other enterprise" shall include any employee benefit plan; (b) references to "fines" shall include any excise taxes assessed on a person with respect to an employee benefit plan; (c) references to "serving at the request of the Corporation" shall include any service that imposes duties on, or involves services by, a person with respect to any employee benefit plan, its participants, or beneficiaries; and (d) a person who acted in good faith and in a manner such person reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan shall be deemed to have acted in a manner "not opposed to the best interest of the Corporation" for purposes of Section 145 of the DGCL.

**Section 8.9    Contract Rights.** The rights provided to Covered Persons pursuant to this <u>Article VIII</u> (a) shall be contract rights based upon good and valuable consideration, pursuant to which a Covered Person may bring suit as if the provisions of this <u>Article VIII</u> were set forth in a separate written contract between the Covered Person and the Corporation, (b) shall fully vest at the time the Covered Person first assumes his or her position as a director or officer of the Corporation, (c) are intended to be retroactive and shall be available with respect to any act or omission occurring prior to the adoption of this <u>Article VIII</u>, (d) shall continue as to a Covered Person who has ceased to be a director or officer of the Corporation, and (e) shall inure to the benefit of the Covered Person's heirs, executors and administrators.

**Section 8.10    Severability.** If any provision or provisions of this <u>Article VIII</u> shall be held to be invalid, illegal or unenforceable for any reason whatsoever: (a) the validity, legality and enforceability of the remaining provisions of this <u>Article VIII</u> shall not in any way be affected or impaired thereby; and (b) to the fullest extent possible, the provisions of this <u>Article VIII</u> (including, without limitation, each such portion of this <u>Article VIII</u> containing any such provision held to be invalid, illegal or unenforceable) shall be construed so as to give effect to the intent manifested by the provision held invalid, illegal or unenforceable.

## ARTICLE IX
## MISCELLANEOUS

**Section 9.1    Place of Meetings.** If the place of any meeting of stockholders, the Board or committee of the Board for which notice is required under these Bylaws is not designated in the notice of such meeting, such meeting shall be held at the principal business office of the Corporation; provided, however, if the Board has, in its sole discretion, determined that a

meeting shall not be held at any place, but instead shall be held by means of remote communication pursuant to Section 9.5 hereof, then such meeting shall not be held at any place.

**Section 9.2     Fixing Record Dates.**

(a)     In order that the Corporation may determine the stockholders entitled to notice of any meeting of stockholders or any adjournment thereof, the Board may fix a record date, which shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which record date shall, unless otherwise required by law, not be more than 60 nor less than 10 days before the date of such meeting. If the Board so fixes a record date, such date shall also be the record date for determining the stockholders entitled to vote at such meeting unless the Board determines, at the time it fixes such record date, that a later date on or before the date of the meeting shall be the date for making such determination. If no record date is fixed by the Board, the record date for determining stockholders entitled to notice of and to vote at a meeting of stockholders shall be at the close of business on the business day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the business day next preceding the day on which the meeting is held. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board may fix a new record date for determination of stockholders entitled to vote at the adjourned meeting, and in such case shall also fix as the record date for stockholders entitled to notice of such adjourned meeting the same or an earlier date as that fixed for determination of stockholders entitled to vote in accordance with the foregoing provisions of this Section 9.2(a) at the adjourned meeting.

(b)     In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than 60 days prior to such action. If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board adopts the resolution relating thereto.

(c)     In order that the Corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting in accordance with Section 2.9, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which date shall not be more than 10 days after the date upon which the resolution fixing the record date is adopted by the Board. If no record date has been fixed by the Board, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board is otherwise required, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in the State of Delaware, its principal place of business, or the Secretary of the Corporation. Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested. If no record date has been fixed by the Board and prior action by the Board is otherwise required, the record date for determining

stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board adopts the resolution taking such prior action.

### Section 9.3    Means of Giving Notice.

(a)    <u>Notice to Directors</u>.  Whenever under applicable law, the Certificate of Incorporation or these Bylaws notice is required to be given to any director, such notice shall be given either (i) in writing and sent by hand delivery, through the United States mail, or by a nationally recognized overnight delivery service for next day delivery, (ii) by means of facsimile telecommunication or other form of electronic transmission, or (iii) by oral notice given personally or by telephone.  A notice to a director will be deemed given as follows:  (i) if given by hand delivery, orally, or by telephone, when actually received by the director, (ii) if sent through the United States mail, when deposited in the United States mail, with postage and fees thereon prepaid, addressed to the director at the director's address appearing on the records of the Corporation, (iii) if sent for next day delivery by a nationally recognized overnight delivery service, when deposited with such service, with fees thereon prepaid, addressed to the director at the director's address appearing on the records of the Corporation, (iv) if sent by facsimile telecommunication, when sent to the facsimile transmission number for such director appearing on the records of the Corporation, (v) if sent by electronic mail, when sent to the electronic mail address for such director appearing on the records of the Corporation, or (vi) if sent by any other form of electronic transmission, when sent to the address, location or number (as applicable) for such director appearing on the records of the Corporation.

(b)    <u>Notice to Stockholders</u>.  Whenever under applicable law, the Certificate of Incorporation or these Bylaws notice is required to be given to any stockholder, such notice may be given (i) in writing and sent either by hand delivery, through the United States mail, or by a nationally recognized overnight delivery service for next day delivery, or (ii) by means of a form of electronic transmission consented to by the stockholder, to the extent permitted by, and subject to the conditions set forth in Section 232 of the DGCL.  A notice to a stockholder shall be deemed given as follows:    (i) if given by hand delivery, when actually received by the stockholder, (ii) if sent through the United States mail, when deposited in the United States mail, with postage and fees thereon prepaid, addressed to the stockholder at the stockholder's address appearing on the stock ledger of the Corporation, (iii) if sent for next day delivery by a nationally recognized overnight delivery service, when deposited with such service, with fees thereon prepaid, addressed to the stockholder at the stockholder's address appearing on the stock ledger of the Corporation, and (iv) if given by a form of electronic transmission consented to by the stockholder to whom the notice is given and otherwise meeting the requirements set forth above, (A) if by facsimile transmission, when directed to a number at which the stockholder has consented to receive notice, (B) if by electronic mail, when directed to an electronic mail address at which the stockholder has consented to receive notice, (C) if by a posting on an electronic network together with separate notice to the stockholder of such specified posting, upon the later of (1) such posting and (2) the giving of such separate notice, and (D) if by any other form of electronic transmission, when directed to the stockholder.  A stockholder may revoke such stockholder's consent to receiving notice by means of electronic communication by giving written notice of such revocation to the Corporation.  Any such consent shall be deemed revoked if (1) the Corporation is unable to deliver by electronic transmission two consecutive notices given by the Corporation in accordance with such consent and (2) such inability becomes known

to the Secretary or an Assistant Secretary or to the Corporation's transfer agent, or other person responsible for the giving of notice; provided, however, the inadvertent failure to treat such inability as a revocation shall not invalidate any meeting or other action.

(c)   Electronic Transmission.  "*Electronic transmission*" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process, including but not limited to transmission by telex, facsimile telecommunication, electronic mail, telegram and cablegram.

(d)   Notice to Stockholders Sharing Same Address.  Without limiting the manner by which notice otherwise may be given effectively by the Corporation to stockholders, any notice to stockholders given by the Corporation under any provision of the DGCL, the Certificate of Incorporation or these Bylaws shall be effective if given by a single written notice to stockholders who share an address if consented to by the stockholders at that address to whom such notice is given. A stockholder may revoke such stockholder's consent by delivering written notice of such revocation to the Corporation. Any stockholder who fails to object in writing to the Corporation within 60 days of having been given written notice by the Corporation of its intention to send such a single written notice shall be deemed to have consented to receiving such single written notice.

(e)   Exceptions to Notice Requirements.  Whenever notice is required to be given, under the DGCL, the Certificate of Incorporation or these Bylaws, to any person with whom communication is unlawful, the giving of such notice to such person shall not be required and there shall be no duty to apply to any governmental authority or agency for a license or permit to give such notice to such person. Any action or meeting that shall be taken or held without notice to any such person with whom communication is unlawful shall have the same force and effect as if such notice had been duly given. If the action taken by the Corporation is such as to require the filing of a certificate with the Secretary of State of Delaware, the certificate shall state, if such is the fact and if notice is required, that notice was given to all persons entitled to receive notice except such persons with whom communication is unlawful.

Whenever notice is required to be given by the Corporation, under any provision of the DGCL, the Certificate of Incorporation or these Bylaws, to any stockholder to whom (1) notice of two consecutive annual meetings of stockholders and all notices of stockholder meetings or of the taking of action by written consent of stockholders without a meeting to such stockholder during the period between such two consecutive annual meetings, or (2) all, and at least two payments (if sent by first-class mail) of dividends or interest on securities during a 12-month period, have been mailed addressed to such stockholder at such stockholder's address as shown on the records of the Corporation and have been returned undeliverable, the giving of such notice to such stockholder shall not be required. Any action or meeting that shall be taken or held without notice to such stockholder shall have the same force and effect as if such notice had been duly given. If any such stockholder shall deliver to the Corporation a written notice setting forth such stockholder's then-current address, the requirement that notice be given to such stockholder shall be reinstated. If the action taken by the Corporation is such as to require the filing of a certificate with the Secretary of State of Delaware, the certificate need not state that

notice was not given to persons to whom notice was not required to be given pursuant to Section 230(b) of the DGCL. The exception in subsection (1) of the first sentence of this paragraph to the requirement that notice be given shall not be applicable to any notice returned as undeliverable if the notice was given by electronic transmission.

**Section 9.4    Waiver of Notice.**  Whenever any notice is required to be given under applicable law, the Certificate of Incorporation, or these Bylaws, a written waiver of such notice, signed before or after the date of such meeting by the person or persons entitled to said notice, or a waiver by electronic transmission by the person entitled to said notice, shall be deemed equivalent to such required notice.  All such waivers shall be kept with the books of the Corporation. Attendance at a meeting shall constitute a waiver of notice of such meeting, except where a person attends for the express purpose of objecting to the transaction of any business on the ground that the meeting was not lawfully called or convened.

**Section 9.5    Meeting Attendance via Remote Communication Equipment.**

(a)    <u>Stockholder Meetings</u>.  If authorized by the Board in its sole discretion, and subject to such guidelines and procedures as the Board may adopt, stockholders and proxyholders not physically present at a meeting of stockholders may, by means of remote communication:

(i)    participate in a meeting of stockholders; and

(ii)    be deemed present in person and vote at a meeting of stockholders, whether such meeting is to be held at a designated place or solely by means of remote communication, provided that (A) the Corporation shall implement reasonable measures to verify that each person deemed present and permitted to vote at the meeting by means of remote communication is a stockholder or proxyholder, (B) the Corporation shall implement reasonable measures to provide such stockholders and proxyholders a reasonable opportunity to participate in the meeting and to vote on matters submitted to the stockholders, including an opportunity to read or hear the proceedings of the meeting substantially concurrently with such proceedings, and (C) if any stockholder or proxyholder votes or takes other action at the meeting by means of remote communication, a record of such votes or other action shall be maintained by the Corporation.

(b)    <u>Board Meetings</u>.  Unless otherwise restricted by applicable law, the Certificate of Incorporation or these Bylaws, members of the Board or any committee thereof may participate in a meeting of the Board or any committee thereof by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other.  Such participation in a meeting shall constitute presence in person at the meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting was not lawfully called or convened.

**Section 9.6    Dividends.**  The Board may from time to time declare, and the Corporation may pay, dividends (payable in cash, property or shares of the Corporation's capital

stock) on the Corporation's outstanding shares of capital stock, subject to applicable law and the Certificate of Incorporation.

**Section 9.7     Reserves**. The Board may set apart out of the funds of the Corporation available for dividends a reserve or reserves for any proper purpose and may abolish any such reserve.

**Section 9.8     Contracts and Negotiable Instruments**. Except as otherwise provided by applicable law, the Certificate of Incorporation or these Bylaws, any contract, bond, deed, lease, mortgage or other instrument may be executed and delivered in the name and on behalf of the Corporation by such officer or officers or other employee or employees of the Corporation as the Board may from time to time authorize. Such authority may be general or confined to specific instances as the Board may determine. The Chairman of the Board, the Chief Executive Officer, the Chief Operating Officer or any Vice President may execute and deliver any contract, bond, deed, lease, mortgage or other instrument in the name and on behalf of the Corporation. Subject to any restrictions imposed by the Board, the Chairman of the Board, Chief Executive Officer, Chief Operating Officer or any Vice President may delegate powers to execute and deliver any contract, bond, deed, lease, mortgage or other instrument in the name and on behalf of the Corporation to other officers or employees of the Corporation under such person's supervision and authority, it being understood, however, that any such delegation of power shall not relieve such officer of responsibility with respect to the exercise of such delegated power.

**Section 9.9     Fiscal Year**. The fiscal year of the Corporation shall be fixed by the Board.

**Section 9.10     Seal**. The Board may adopt a corporate seal, which shall be in such form as the Board determines. The seal may be used by causing it or a facsimile thereof to be impressed, affixed or otherwise reproduced.

**Section 9.11     Books and Records**. The books and records of the Corporation may be kept within or outside the State of Delaware at such place or places as may from time to time be designated by the Board.

**Section 9.12     Resignation**. Any director, committee member or officer may resign by giving notice thereof in writing or by electronic transmission to the Chairman of the Board, the Chief Executive Officer, the Chief Operating Officer or the Secretary. The resignation is effective when delivered unless the resignation specifies a later effective date or an effective date determined upon the happening of an event or events. Unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

**Section 9.13     Surety Bonds**. Such officers, employees and agents of the Corporation (if any) as the Chairman of the Board, Chief Executive Officer, the Chief Operating Officer or the Board may direct, from time to time, shall be bonded for the faithful performance of their duties and for the restoration to the Corporation, in case of their death, resignation, retirement, disqualification or removal from office, of all books, papers, vouchers, money and other property of whatever kind in their possession or under their control belonging to the Corporation, in such amounts and by such surety companies as the Chairman of the Board, Chief Executive Officer,

Chief Operating Officer or the Board may determine. The premiums on such bonds shall be paid by the Corporation and the bonds so furnished shall be in the custody of the Secretary.

**Section 9.14  Securities of Other Corporations**. Powers of attorney, proxies, waivers of notice of meeting, consents in writing and other instruments relating to securities owned by the Corporation may be executed in the name of and on behalf of the Corporation by the Chairman of the Board, Chief Executive Officer, Chief Operating Officer or any Vice President. Any such officer, may, in the name of and on behalf of the Corporation, take all such action as any such officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation in which the Corporation may own securities, or to consent in writing, in the name of the Corporation as such holder, to any action by such corporation, and at any such meeting or with respect to any such consent shall possess and may exercise any and all rights and power incident to the ownership of such securities and which, as the owner thereof, the Corporation might have exercised and possessed. The Board may from time to time confer like powers upon any other person or persons.

**Section 9.15  Amendments**. The Board shall have the power to adopt, amend, alter or repeal the Bylaws; provided, however, that (i) Section 3.1(a) and (ii) the votes necessary to amend, alter or repeal Section 3.1(a) may only be amended, altered or repealed by the affirmative vote of at least 66⅔% of the Whole Board. Subject to the foregoing, the affirmative vote of a majority of the Whole Board shall be required to adopt, amend, alter or repeal the Bylaws. The Bylaws also may be adopted, amended, altered or repealed by the stockholders; provided, however, that (i) in addition to any vote of the holders of any class or series of capital stock of the Corporation required by applicable law or the Certificate of Incorporation, the affirmative vote of the holders of at least a majority of the voting power of all outstanding shares of capital stock of the Corporation entitled to vote generally in the election of directors, voting together as a single class, shall be required for the stockholders to adopt, amend, alter or repeal the Bylaws (with the exception of Section 3.1(a)) and (ii) in addition to any vote of the holders of any class or series of capital stock of the Corporation required by applicable law or the Certificate of Incorporation, the affirmative vote of the holders of at least 66⅔% of the shares of all then outstanding shares of common stock of the Corporation, par value $0.001 per share, voting together as a single class, shall be required for the stockholders to (a) amend, alter or repeal Section 3.1(a) or (b) alter the approvals required set forth in this clause (ii).

<u>**Exhibit I-5**</u>

**Aventine Renewable Energy, Inc. Bylaws**

# AMENDED AND RESTATED BYLAWS

## OF

## AVENTINE RENEWABLE ENERGY, INC.

* * * * *

These Amended and Restated Bylaws were duly adopted by the Board of Directors of Aventine Renewable Energy, Inc. on [●], 2010:

## ARTICLE 1
## OFFICES

Section 1.01  *Registered Office*.   The registered office shall be in the City of Wilmington, County of New Castle, State of Delaware.

Section 1.02  *Other Offices*.  The Corporation may also have offices at such other places both within and without the State of Delaware as the Board of Directors may from time to time determine or the business of the Corporation may require.

Section 1.03  *Books*.  The books of the Corporation may be kept within or without the State of Delaware as the Board of Directors may from time to time determine or the business of the Corporation may require.

## ARTICLE 2
## MEETINGS OF STOCKHOLDERS

Section 2.01  *Time and Place of Meetings*.  All meeting of stockholders shall be held at such place, either within or without the State of Delaware, on such date and at such time as may be determined from time to time by the Board of Directors (or the Chairman in the absence of a designation by the Board of Directors).

Section 2.02  *Annual Meetings*.  Unless directors are elected by written consent in lieu of an annual meeting as permitted by the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended ("**Delaware Law**"), an annual meeting of stockholders shall be held for the election of directors and to transact such other business as may properly be brought before the meeting.   Stockholders may, unless the certificate of incorporation otherwise provides, act by written consent to elect directors.

Section 2.03  *Special Meetings*.  Special meetings of stockholders may be called by the Board of Directors or the Chairman of the Board and shall be called by the Secretary at the request in writing of holders of record of a majority of the outstanding capital stock of the Corporation entitled to vote.  Such request shall state the purpose or purposes of the proposed meeting.

Section 2.04  *Notice of Meetings and Adjourned Meetings; Waivers of Notice*.  (a) Whenever stockholders are required or permitted to take any action at a meeting, a written notice

of the meeting shall be given which shall state the place, if any, date and hour of the meeting, the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called. Unless otherwise provided by Delaware Law, such notice shall be given not less than 10 nor more than 60 days before the date of the meeting to each stockholder of record entitled to vote at such meeting. Unless these bylaws otherwise require, when a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time, place, if any, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, are announced at the meeting at which the adjournment is taken. At the adjourned meeting, the Corporation may transact any business which might have been transacted at the original meeting. If the adjournment is for more than 30 days, or after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

(b)    A written waiver of any such notice signed by the person entitled thereto, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to notice. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends the meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Business transacted at any special meeting of stockholders shall be limited to the purposes stated in the notice.

Section 2.05    *Quorum.* Unless otherwise provided under the certificate of incorporation or these bylaws and subject to Delaware Law, the presence, in person or by proxy, of the holders of a majority of the outstanding capital stock of the Corporation entitled to vote at a meeting of stockholders shall constitute a quorum for the transaction of business. If, however, such quorum shall not be present or represented at any meeting of the stockholders, the stockholders present in person or represented by proxy may adjourn the meeting, without notice other than announcement at the meeting, until a quorum shall be present or represented. At such adjourned meeting at which a quorum shall be present or represented any business may be transacted which might have been transacted at the meeting as originally notified.

Section 2.06    *Voting.* (a) Unless otherwise provided in the certificate of incorporation and subject to Delaware Law, each stockholder shall be entitled to one vote for each outstanding share of capital stock of the Corporation held by such stockholder. Any share of capital stock of the Corporation held by the Corporation shall have no voting rights. Unless otherwise provided by Delaware Law, the certificate of incorporation or these bylaws, the election of directors shall be determined by a plurality of the votes cast by the stockholders present, in person or by written proxy, at a meeting of stockholders and entitled to vote thereon. All other matters shall be determined by the affirmative vote of a majority of the shares of capital stock of the Corporation present, in person or by written proxy, at a meeting of stockholders and entitled to vote on the subject matter.

(b)    Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to a corporate action in writing without a meeting may authorize another

person or persons to act for him by written proxy, but no such proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period.

Section 2.07 *Action by Consent.* (a) Unless otherwise provided in the certificate of incorporation, any action required to be taken at any annual or special meeting of stockholders, or any action which may be taken at any annual or special meeting of stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding capital stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the Corporation in accordance with Section 2.07(b). Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for such meeting had been the date that written consents signed by a sufficient number of stockholders to take the action were delivered to the Corporation as provided in Section 2.07(b).

(b) Every written consent shall bear the date of signature of each stockholder who signs the consent, and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the earliest dated consent delivered in the manner required by this section and Delaware Law to the Corporation, written consents signed by a sufficient number of holders to take action are delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded. Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested.

Section 2.08 *Organization.* At each meeting of stockholders, the Chairman of the Board, if one shall have been elected, or in the Chairman's absence or if one shall not have been elected, the director designated by the vote of the majority of the directors present at such meeting, shall act as chairman of the meeting. The Secretary (or in the Secretary's absence or inability to act, the person whom the chairman of the meeting shall appoint secretary of the meeting) shall act as secretary of the meeting and keep the minutes thereof.

Section 2.09 *Order of Business.* The order of business at all meetings of stockholders shall be as determined by the chairman of the meeting.

ARTICLE 3
DIRECTORS

Section 3.01 *General Powers.* Except as otherwise provided in Delaware Law or the certificate of incorporation, the business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors; *provided* that subject to the power of the stockholders to take such action without approval of the Board of Directors, the Corporation shall not take (and shall not cause or permit its subsidiaries to take) any of the actions set forth on Annex I hereto without the approval of a majority of the entire Board of Directors.

Section 3.02 *Number, Election and Term of Office.* The number of directors which shall constitute the whole Board shall be fixed from time to time by resolution of the Board of Directors but shall not be less than one or more than five. The directors shall be elected at the annual meeting of the stockholders by written ballot, except as provided in <u>Section 2.02</u> and <u>Section 3.12</u> herein, and each director so elected shall hold office until such director's successor is elected and qualified or until such director's earlier death, resignation or removal. No decrease in the number of directors constituting the Board of Directors shall shorten the term of any incumbent director. Directors need not be stockholders.

Section 3.03 *Quorum and Manner of Acting.* Unless the certificate of incorporation or these bylaws require a greater number, a majority of the total number of directors shall constitute a quorum for the transaction of business, and the affirmative vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors. When a meeting is adjourned to another time or place (whether or not a quorum is present), notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken. At the adjourned meeting, the Board of Directors may transact any business which might have been transacted at the original meeting. If a quorum shall not be present at any meeting of the Board of Directors the directors present thereat shall adjourn the meeting, from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

Section 3.04 *Time and Place of Meetings.* The Board of Directors shall hold its meetings at such place, either within or without the State of Delaware, and at such time as may be determined from time to time by the Board of Directors (or the Chairman in the absence of a determination by the Board of Directors).

Section 3.05 *Annual Meeting.* The Board of Directors shall meet for the purpose of organization, the election of officers and the transaction of other business, as soon as practicable after each annual meeting of stockholders, on the same day and at the same place where such annual meeting shall be held. Notice of such meeting need not be given. In the event such annual meeting is not so held, the annual meeting of the Board of Directors may be held at such place either within or without the State of Delaware, on such date and at such time as shall be specified in a notice thereof given in the manner as hereinafter provided in <u>Section 3.07</u> herein or in a waiver of notice thereof signed by any director who chooses to waive the requirement of notice.

Section 3.06 *Regular Meetings.* After the place and time of regular meetings of the Board of Directors shall have been determined and notice thereof shall have been once given to each member of the Board of Directors, regular meetings may be held without further notice being given.

Section 3.07 *Special Meetings.* Special meetings of the Board of Directors may be called by the Chairman of the Board or the President and shall be called by the Chairman of the Board, President or Secretary on the written request of a majority of the directors. Notice of special meetings of the Board of Directors shall be given to each director at least three days before the date of the meeting in such manner as is determined by the Board of Directors.

Section 3.08   *Committees*.  The Board of Directors may designate one or more committees, each committee to consist of one or more of the directors of the Corporation.  The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.  In the absence or disqualification of a member of a committee, the member or members present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member.  Any such committee, to the extent provided in the resolution of the Board of Directors, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it; but no such committee shall have the power or authority to: (a) approve or adopt, or recommend to the stockholders, any action or matter expressly required by Delaware Law to be submitted to the stockholders for approval or (b) adopt, amend or repeal any bylaw of the Corporation.  Each committee shall keep regular minutes of its meetings and report the same to the Board of Directors when required.

Section 3.09   *Action by Consent*.  Unless otherwise restricted by the certificate of incorporation or these bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting, if all members of the Board of committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions, are filed with the minutes of proceedings of the Board or committee.  Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Section 3.10   *Telephonic Meetings*.  Unless otherwise restricted by the certificate of incorporation or these bylaws, members of the Board of Directors, or any committee designated by the Board of Directors, may participate in a meeting of the Board of Directors, or such committee, as the case may be, by means of a conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at the meeting.

Section 3.11   *Resignation*.  Any director may resign at any time by giving notice in writing or by electronic transmission to the Board of Directors or to the Secretary of the Corporation.  The resignation of any director shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 3.12   *Vacancies*.  Unless otherwise provided in the certificate of incorporation, vacancies and newly created directorships resulting from any increase in the authorized number of directors elected by all the stockholders having the right to vote as a single class may be filled by a majority of the directors then in office, although less than a quorum, or by a sole remaining director.  Whenever the holders of any class or classes of stock or series thereof are entitled to elect one or more directors by the certificate of incorporation, vacancies and newly created directorships of such class or classes or series may be filled by a majority of directors elected by such class or classes or series thereof then in office, or by a sole remaining director so elected.

Each director so chosen shall hold office until his successor is elected and qualified, or until his earlier death, resignation or removal. If there are no directors in office, then an election of directors may be held in accordance with Delaware Law. Unless otherwise provided in the certificate of incorporation, when one or more directors shall resign from the Board, effective at a future date, a majority of the directors then in office, including those who have so resigned, shall have the power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective, and each director so chosen shall hold office as provided in the filling of other vacancies.

Section 3.13    *Removal.*  Any director or the entire Board of Directors may be removed, with or without cause, at any time by the affirmative vote of the holders of a majority of the outstanding capital stock of the Corporation then entitled to vote at any election of directors and the vacancies thus created may be filled in accordance with Section 3.12 herein.

Section 3.14    *Compensation.*  Unless otherwise restricted by the certificate of incorporation or these bylaws, the Board of Directors shall have authority to fix the compensation of directors, including fees and reimbursement of expenses.

ARTICLE 4
OFFICERS

Section 4.01    *Principal Officers.*  The principal officers of the Corporation shall be a President, one or more Vice Presidents, a Treasurer and a Secretary who shall have the duty, among other things, to record the proceedings of the meetings of stockholders and directors in a book kept for that purpose. The Corporation may also have such other principal officers, including one or more Controllers, as the Board may in its discretion appoint. One person may hold the offices and perform the duties of any two or more of said offices, except that no one person shall hold the offices and perform the duties of President and Secretary.

Section 4.02    *Election, Term of Office and Remuneration.*  The principal officers of the Corporation shall be elected annually by the Board of Directors at the annual meeting thereof. Each such officer shall hold office until his successor is elected and qualified, or until his earlier death, resignation or removal. The remuneration of all officers of the Corporation shall be fixed by the Board of Directors. Any vacancy in any office shall be filled in such manner as the Board of Directors shall determine.

Section 4.03    *Subordinate Officers.*  In addition to the principal officers enumerated in Section 4.01 herein, the Corporation may have one or more Assistant Treasurers, Assistant Secretaries and Assistant Controllers and such other subordinate officers, agents and employees as the Board of Directors may deem necessary, each of whom shall hold office for such period as the Board of Directors may from time to time determine. The Board of Directors may delegate to any principal officer the power to appoint and to remove any such subordinate officers, agents or employees.

Section 4.04    *Resignations.*  Any officer may resign at any time by giving written notice to the Board of Directors (or to a principal officer if the Board of Directors has delegated to such principal officer the power to appoint and to remove such officer). The resignation of any officer

shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

Section 4.05 *Powers and Duties.* The officers of the Corporation shall have such powers and perform such duties incident to each of their respective offices and such other duties as may from time to time be conferred upon or assigned to them by the Board of Directors.

ARTICLE 5
GENERAL PROVISIONS

Section 5.01 *Fixing the Record Date.* (a) In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which record date shall not be more than 60 nor less than 10 days before the date of such meeting. If no record date is fixed by the Board of Directors, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; *provided* that the Board of Directors may fix a new record date for the adjourned meeting.

(b) In order that the Corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which date shall not be more than 10 days after the date upon which the resolution fixing the record date is adopted by the Board of Directors. If no record date has been fixed by the Board of Directors, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is required by Delaware Law, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded. Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested. If no record date has been fixed by the Board of Directors and prior action by the Board of Directors is required by Delaware Law, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board of Directors adopts the resolution taking such prior action.

(c) In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted,

and which record date shall be not more than 60 days prior to such action. If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

Section 5.02    *Dividends.*  Subject to limitations contained in Delaware Law and the certificate of incorporation, the Board of Directors may declare and pay dividends upon the shares of capital stock of the Corporation, which dividends may be paid either in cash, in property or in shares of the capital stock of the Corporation.

Section 5.03    *Year.*  The fiscal year of the Corporation shall commence on January 1 and end on December 31 of each year.

Section 5.04    *Corporate Seal.*  The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware". The seal may be used by causing it or a facsimile thereof to be impressed, affixed or otherwise reproduced.

Section 5.05    *Voting of Stock Owned by the Corporation.*  The Board of Directors may authorize any person, on behalf of the Corporation, to attend, vote at and grant proxies to be used at any meeting of the stockholders of any corporation (except this Corporation) in which the Corporation may hold stock.

Section 5.06    *Amendments.*  These bylaws or any of them, may be altered, amended or repealed, or new bylaws may be made, by the stockholders entitled to vote thereon at any annual or special meeting thereof or by the Board of Directors.

(a)     *Charter and Bylaws.*  Alter, repeal, amend or adopt any provision of the charter, bylaws, or other similar governance documents of the Corporation or any of its subsidiaries.

(b)     *Stock Issuances and Repurchases.*  (i)  Issue or sell, (ii) redeem, purchase or otherwise acquire or (iii) convert, exchange, cancel or retire, any shares of its capital stock, phantom equity or similar rights or interests (collectively, "*Securities*") or any warrants, options or other rights to purchase, substitute for or acquire any Securities or securities convertible into or exchangeable for any Securities except for issuances of capital stock upon exercise of stock options with approval of the Board of Directors pursuant to and in accordance with the terms of a stock option plan approved by the Board of Directors;

(c)     *Dissolution.*  (i) Dissolve or liquidate, or adopt any plan of dissolution or liquidation, (ii) consent to or commence any suit, proceeding or other action, file a petition or consent to a petition (A) under any existing or future law of any jurisdiction relating to bankruptcy, insolvency, reorganization of relief debtors, seeking to have an order for relief entered with respect to it, or seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, winding up, liquidation, dissolution, composition or other relief with respect to it, or (B) seeking appointment of a receiver, liquidator, assignee, trustee, custodian or other similar official for it or all or any substantial part of its assets, (iii) make any assignment for the benefit of creditors, (iv) admit in writing its inability to pay its debts generally as they become due, (v) voluntarily dissolve itself or (vi) take any corporate action in furtherance of any such actions;

(d)     *Business Combinations; Reorganizations; Reclassifications.*  Effect (i) any merger, consolidation or any other business combination or (ii) any reorganization, recapitalization, reclassification, spin-off, partial or complete liquidation, extraordinary dividend, split-up, distribution to stockholders or combination of the securities of the Corporation or any of its subsidiaries;

(e)     *Asset Sales and Acquisitions.*  Sell, lease, out-license or otherwise dispose of, purchase, lease, in-license or otherwise acquire any assets or property having an aggregate value of more than $500,000 in any transaction or series of related transactions other than (i) sales of ethanol, by-products and co-products inventory in the ordinary course consistent with past practices and (ii) purchases of raw materials in the ordinary course consistent with past practices;

(f)     *Business Scope.*  Make any material change in the nature, short or long-term business strategy, or geographic or market scope of the business of the Corporation or its subsidiaries;

(g)     *Annual Budget.*  Adopt or materially modify the annual budget or business plan or any short or long-term strategic plan of the Corporation or its subsidiaries;

(h)     *Material Contracts.*  Enter into, amend, modify, supplement or terminate any material contract, agreement or obligation, except (i) contracts for the sale of ethanol, by-products and co-products inventory in the ordinary course consistent with past practices, (ii)

contracts for purchases of raw materials in the ordinary course consistent with past practices and (iii) as otherwise expressly permitted pursuant to this Annex I;

(i) *Hedging.* Enter into, supplement, modify or terminate any interest rate, currency or commodity derivative (whether or not for hedging purposes), except in accordance with the hedging guidelines from time to time adopted by the Board of Directors;

(j) *Other Ventures.* Enter into any material partnership, joint venture, limited liability company, operating or other similar agreement or arrangement or any material marketing alliance or marketing agreement;

(k) *Limitations or Exclusivity Obligations.* Enter into any contract that (i) limits (or would limit) the freedom of the Corporation or any subsidiary to compete in any line of business or with any person or in any area in any material respect or (ii) contains exclusivity obligations or restrictions binding on the Corporation or any subsidiary;

(l) *Capital Expenditures.* Make or commit to make any capital expenditure, other than (i) capital expenditures included in the annual business plan and budget approved by the Board of Directors pursuant to paragraph (g) above and (ii) capital expenditures not included in any such business plan and budget that do not exceed $100,000 in the aggregate in any twelve-month period;

(m) *Certain Employee Matters.* (i) Appoint or remove any officer or other senior management personnel, (ii) change the compensation, bonus or other benefits payable to any director, officer or key employee or (iii) enter into, establish, adopt or amend (except as required by law) any bonus, profit-sharing, retirement, compensation or other benefit plan, arrangement or agreement covering any director, officer, manager or employee;

(n) *Indebtedness; Guarantees; Liens.* Except as otherwise expressly permitted under this Annex I, create, incur, assume, guarantee or otherwise become liable under any indebtedness for borrowed money or create, incur, assume or suffer to exist any lien on the property or assets of the Corporation or its subsidiaries other than liens that do not materially affect the value or use of its assets and properties;

(o) *Extensions of Credit; Investments.* Make, directly or indirectly, any advance, loan, extension of credit or capital contribution to, or other investment in, any person (other than extensions of trade credit in the ordinary course consistent with past practices);

(p) *Litigation.* Institute, terminate or settle any litigation, arbitration, proceeding, dispute or claim in excess of $100,000 (including any tax claim or audit adjustment);

(q) *Regulatory and Tax Status.* Approve or engage in any transaction affecting its regulatory or tax status, except for changes required by applicable laws or regulation;

(r) *Accounting; Tax.* Make any change in the financial accounting principles or the accounting or tax policies (including changing any annual tax accounting period) except for changes required by generally accepted accounting principles or applicable law or regulation;

(s)    *Retention of Certain Professionals.*  Employ, retain or remove any auditor, investment banker, financial advisor, primary or transaction legal counsel or person serving in a similar capacity; or

(t)    agree or commit to do any of the foregoing.

**Exhibit I-6**

**Aventine Renewable Energy, Inc. Charter**

# SECOND AMENDED AND RESTATED

# CERTIFICATE OF INCORPORATION

## OF

## AVENTINE RENEWABLE ENERGY, INC.

*****

Aventine Renewable Energy, Inc. (the "*Corporation*"), a corporation organized and existing under the laws of the State of Delaware, does hereby certify as follows:

1.  (a)  The present name of the Corporation is Aventine Renewable Energy, Inc.; and

(b)  The name under which the Corporation was originally incorporated is Williams Ethanol Services, Inc., and the dates of filing the original Certificate of Incorporation of the Corporation and the Amended and Restated Certificate of Incorporation with the Secretary of State of the State of Delaware are May 10, 1995 and May 30, 2003, respectively.

2.  The Board of Directors of the Corporation duly adopted resolutions proposing to amend and restate the Amended and Restated Certificate of Incorporation of the Corporation, and thereafter, pursuant to such resolutions of the Board of Directors of the Corporation, a consent was signed by the sole stockholder of the Corporation.

3.  This Second Amended and Restated Certificate of Incorporation was duly adopted in accordance with the provisions of Sections 103, 245 and 303 of the General Corporation Law of the State of Delaware in order, among other things, to put into effect and carry out the confirmation order entered by the United States Bankruptcy Court for the District of Delaware on [•], 2010 in the reorganization proceeding styled In re Aventine Renewable Energy Holdings, Inc., *et al.*, Case No. 09-11214(KG), which confirmed the First Amended Joint Plan of Reorganization of the Corporation dated January 13, 2010.

The Amended and Restated Certificate of Incorporation of the Company is hereby amended and restated to read in its entirety as follows:

*FIRST*: The name of the Corporation is Aventine Renewable Energy, Inc.

*SECOND*: The address of the Corporation's registered office in the State of Delaware is Corporation Trust Center, 1209 Orange Street, City of Wilmington, County of New Castle, Delaware 19801. The name of its registered agent at such address is the Corporation Trust Company.

*THIRD*: The purpose of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of the State of Delaware as the same exists or may hereafter be amended ("*Delaware Law*").

FOURTH: (1) The total number of shares of capital stock that the Corporation is authorized to issue is 1,000 shares, consisting of 1,000 shares of common stock, par value $1.00 per share (the "**Common Stock**"), and are to be of one class.

(2)    Notwithstanding any other provision in this ARTICLE FOURTH, pursuant to Section 1123(a)(6) of Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), the Corporation will not issue non-voting equity securities (which shall not be deemed to include any warrants or options to purchase capital stock of the Corporation); *provided, however*, that this provision (a) will have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (b) will have such force and effect, if any, only for so long as such section is in effect and applicable to the Corporation or any of its wholly-owned subsidiaries and (c) in all events may be amended or eliminated in accordance with, and to the extent permitted by, applicable law as from time to time in effect.

(3)    In accordance with that certain order entered in the United States Bankruptcy Court for the District of Delaware, dated _____, 2010, in the reorganization proceeding styled In re Aventine Renewable Energy Holdings, Inc., *et al.*, Case No. 09-11214(KG), which confirmed the Joint Plan of Reorganization of the Corporation, as amended, filed pursuant to Section 1121(a) of the Bankruptcy Code (the "**Plan**"), pursuant to the Bankruptcy Code, (i) upon this Second Amended and Restated Certificate of Incorporation of the Corporation (this "**Certificate**") becoming effective pursuant to Delaware Law and the satisfaction of all conditions to the effectiveness of the Plan (the "**Effective Time**"), each share of Common Stock, par value $1.00 per share, of the Corporation, issued and outstanding (or held as treasury shares) immediately prior to the Effective Time (the "**Old Common Stock**"), shall be automatically, and without any action on the part of the holders thereof, cancelled and (ii) any stock certificate that, immediately prior to the Effective Time, represented shares of Old Common Stock shall, from and after the Effective Time, be automatically, and without any action on the part of the holders thereof, cancelled and shall cease to represent capital stock of the Corporation.

FIFTH: The business and affairs of the Corporation shall be managed by the Board of Directors.

SIXTH: (1)   Meetings of stockholders may be held within or without the State of Delaware, as the bylaws may provide.

(2)    Stockholders may act by written consent in lieu of meeting pursuant to Section 228 of Delaware Law.

SEVENTH: In furtherance and not in limitation of the powers conferred by the laws of the State of Delaware:

(1)    The Board of Directors is expressly authorized to adopt, amend or repeal the bylaws of the Corporation, subject the power of the stockholders of the Corporation to alter or repeal any bylaw whether adopted by them or otherwise.

(2)     The books of the Corporation may be kept at such place within or without the State of Delaware as the bylaws of the Corporation may provide or as may be designated from time to time by the Board of Directors.

(3)     Elections of directors need not be written by ballot unless the bylaws of the Corporation shall so provide.

*EIGHTH*:   (1) A director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director to the fullest extent permitted by Delaware Law.

(2)(a)  Each person (and the heirs, executors or administrators of such person) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was a director or officer of the Corporation or is or was serving at the request of the Corporation as a director or officer of another corporation, partnership, joint venture, trust or other enterprise (each, an "***Indemnified Person***"), shall be indemnified and held harmless by the Corporation to the fullest extent permitted by Delaware Law, except as may otherwise be provided in any written agreement between such Indemnified Person and the Corporation.  The right to indemnification conferred in this ARTICLE EIGHTH shall also include the right to be paid by the Corporation the expenses incurred in connection with any such proceeding in advance of its final disposition to the fullest extent authorized by Delaware Law, subject to the delivery by such Indemnified Person of any undertakings, if any, required by Delaware Law at such time.   The right to indemnification conferred in this ARTICLE EIGHTH shall be a contract right.

(b)     The Corporation may, by action of its Board of Directors, provide indemnification to such of the employees and agents of the Corporation to such extent and to such effect as the Board of Directors shall determine to be appropriate and authorized by Delaware Law.

(3)     The Corporation shall have power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss incurred by such person in any such capacity or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against such liability under Delaware Law.

(4)     The rights and authority conferred in this ARTICLE EIGHTH shall not be exclusive of any other right which any person may otherwise have or hereafter acquire.

(5)     Neither the amendment nor repeal of this ARTICLE EIGHTH, nor the adoption of any provision of this Certificate or the bylaws of the Corporation, nor, to the fullest extent permitted by Delaware Law, any modification of law, shall eliminate or reduce the effect of this ARTICLE EIGHTH in respect of any acts or omissions occurring prior to such amendment, repeal, adoption or modification.

*NINTH*: The Corporation reserves the right to amend this Certificate in any manner permitted by Delaware Law and all rights, preferences and privileges conferred herein on stockholders, directors or any other persons, if any, are subject to this reserved power.

IN WITNESS WHEREOF, the undersigned has duly executed and acknowledged this Certificate.

Dated: [• ], 2010

AVENTINE RENEWABLE ENERGY, INC.

By: _____

    Name: [• ]
    Title: [• ]

## Exhibit I-7

**Aventine Renewable Energy - Aurora West LLC Agreement**

# AMENDED AND RESTATED
## LIMITED LIABILITY COMPANY AGREEMENT
### OF
## AVENTINE RENEWABLE ENERGY – AURORA WEST, LLC

This Amended and Restated Limited Liability Company Agreement (this *"Agreement"*) of Aventine Renewable Energy – Aurora West, LLC is entered into on this [●] day of [●], 2010 by Aventine Renewable Energy Holdings, Inc., a Delaware corporation, as the sole member. Aventine Renewable Energy Holdings, Inc., and any other person who, at such time, is admitted to the Company (as defined below) as a member in accordance with the terms of this Agreement, is a *"Member"*.

WHEREAS, Aventine Renewable Energy, LLC (*"ARE"*) formed Aventine Renewable Energy – Aurora West, LLC, a Delaware limited liability company (the *"Company"*), on August 2, 2006, pursuant to that certain Limited Liability Company Agreement dated August 11, 2006 (the *"Original Agreement"*);

WHEREAS, pursuant to that certain Agreement of Merger dated [●], 2010, ARE merged with and into the Member and the Member thereby acquired all of the membership interests in, and became the sole member of, the Company;

WHEREAS, pursuant to this Agreement, the Member desires to amend and restate the Original Agreement as provided herein and to continue the Company without dissolution as a limited liability company;

WHEREAS, in accordance with the First Amended Joint Plan of Reorganization of the Corporation dated January 13, 2010 (as amended, the *"Plan"*), as confirmed pursuant to the confirmation order entered by the United States Bankruptcy Court for the District of Delaware on [●], 2010 in the reorganization proceeding styled In re Aventine Renewable Energy Holdings, Inc., *et al.*, Case No. 09-11214(KG), on the effective date of the Plan all membership interests in the Company outstanding immediately prior to the effective date of this Agreement were automatically and, without any action on the part of the respective holders thereof, cancelled and concurrently the Member was admitted as the sole member of, and became the holder of all membership interests in, the Company; and

WHEREAS, the Member desires to amend and restate in its entirety the limited liability company agreement of the Company in this Agreement.

NOW, THEREFORE, the Member hereby agrees as follows:

1.    *Name.*  The name of the limited liability company formed hereby is Aventine Renewable Energy – Aurora West, LLC.

2.    *Filing of Certificates.*  The Member, as an authorized person, within the meaning of the Delaware Limited Liability Company Act (6 *Del.C.* §18-101, *et seq.*), as amended from time to time (the *"Act"*), shall execute, deliver and file, or cause the execution, delivery and filing of, all certificates required or permitted by the Act to be filed in the Office of the Secretary of State of the State of Delaware and any other certificates, notices or documents required or

permitted by law for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

3. *Purposes.* The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be formed under the Act.

4. *Powers.* In furtherance of its purposes, but subject to all of the provisions of this Agreement, the Company shall have and may exercise all the powers now or hereafter conferred by Delaware law on limited liability companies formed under the Act. The Company shall have the power to do any and all acts necessary, appropriate, proper, advisable, incidental or convenient to or for the protection and benefit of the Company, and shall have, without limitation, any and all of the powers that may be exercised on behalf of the Company by the Member.

5. *Principal Business Office.* The principal business office of the Company shall be located at such location as may hereafter be determined by the Member.

6. *Registered Office; Registered Agent.* The address of the registered office and the name and address of the registered agent of the Company in the State of Delaware is c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, City of Wilmington, County of New Castle, Delaware 19801.

7. *Member.* The name and the mailing address of the Member are as follows:

| Name | Address |
|------|---------|
| Aventine Renewable Energy Holdings, Inc. | 120 North Parkway Drive<br>Pekin, IL 61554 |

8. *Limited Liability.* Except as required by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

9. *Non-Voting Securities.* Notwithstanding any other provision in this Agreement, pursuant to Section 1123(a)(6) of Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), the Company will not issue non-voting equity securities (which shall not be deemed to include any warrants or options to purchase membership interests of the Company); *provided, however*, that this provision (a) will have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (b) will have such force and effect, if any, only for so long as such section is in effect and applicable to the Company or any of its wholly-owned subsidiaries and (c) in all events may be amended or eliminated in accordance with, and to the extent permitted by, applicable law as from time to time in effect.

10. *Capital Contributions.* The Member may, but is not obligated to make any capital contribution to the Company.

11. *Allocation of Profits and Losses.* The Company's profits and losses shall be allocated solely to the Member.

12. *Distributions.* Subject to the limitations of Section 18-607 of the Act and any other applicable law, distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member.

13. *Management.* In accordance with Section 18-402 of the Act, management of the Company shall be vested in the Member. The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the State of Delaware. The Member has the authority to bind the Company.

14. *Officers.* The Member may, from time to time as it deems advisable, select natural persons who are employees or agents of the Company and designate them as officers of the Company (the "*Officers*") and assign titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person. Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office. Any delegation pursuant to this Section 14 may be revoked at any time by the Member. An Officer may be removed with or without cause by the Member.

15. *Other Business.* The Member may engage in or possess an interest in other business ventures of every kind and description, independently or with others. The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

16. *Exculpation and Indemnification.* (a) To the extent, at law or equity, a Member or Officer has duties (including fiduciary duties) to the Company or any other Member, the duties of such Members and Officers are hereby eliminated to the fullest extent permitted by the laws of the State of Delaware.

(b) Each person (and the heirs, executors or administrators of such person) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was a Member or Officer, shall be indemnified and held harmless by the Company to the fullest extent permitted by the laws of the State of Delaware for directors and officers of corporations organized under the laws of the State of Delaware. The right to indemnification under this Section 16 shall also include the right to be paid by the Company the expenses incurred in connection with any proceeding in advance of its final disposition to the fullest extent authorized by Delaware law. Any indemnity under this Section 16 shall be provided out of and to the extent of Company assets only, and no Member shall have personal liability on account hereof.

17.     *Assignments.*  The Member may at any time assign in whole or in part its limited liability company interest in the Company.  If the Member transfers all of its interest in the Company pursuant to this Section 17, the transferee shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement.  Such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

18.     *Resignation.*  The Member may at any time resign from the Company.  If the Member resigns pursuant to this Section 18, an additional Member shall be admitted to the Company, subject to Section 19 hereof, upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement.  Such admission shall be deemed effective immediately prior to the resignation, and, immediately following such admission, the resigning Member shall cease to be a member for the Company.

19.     *Admission of Additional Members.*  One or more additional members of the Company may be admitted to the Company with the written consent of the Member.

20.     *Dissolution.*  (a) The Company shall dissolve and its affairs shall be wound up upon the first to occur of: (i) the written consent of the Member or (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

        (b)     In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets or proceeds from sale of the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

21.     *Separability of Provisions.*  If any provision of this Agreement or the application thereof is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable to any extent, the remainder of this Agreement and the application of such provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

22.     *Entire Agreement.*  This Agreement constitutes the entire agreement of the Member with respect to the subject matter hereof.

23.     *Governing Law.*  This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of law principles).

24.     *Amendments.*  This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

25.     *Sole Benefit of Member.*  The provisions of this Agreement are intended solely to benefit the Member and, to the fullest extent permitted by applicable law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor shall be a third-party beneficiary of this Agreement), and the Member shall have no duty or obligation to any creditor of the Company to make any contributions or payments to the Company.

26.   *Effectiveness*.  This Agreement shall become effective when the Member shall have executed and delivered the Agreement to the Company.

[THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the [●]day of [●], 2010.

Aventine Renewable Energy Holdings, Inc.

By: _____
      Name: [●]
      Title: [●]

# Exhibit I-8

**Aventine Renewable Energy – Mt Vernon LLC Agreement**

## AMENDED AND RESTATED
## LIMITED LIABILITY COMPANY AGREEMENT
## OF
## AVENTINE RENEWABLE ENERGY – MT VERNON, LLC

This Amended and Restated Limited Liability Company Agreement (this *"Agreement"*) of Aventine Renewable Energy – Mt Vernon, LLC is entered into on this [●] day of [●], 2010 by Aventine Renewable Energy Holdings, Inc., a Delaware corporation, as the sole member. Aventine Renewable Energy Holdings, Inc., and any other person who, at such time, is admitted to the Company (as defined below) as a member in accordance with the terms of this Agreement, is a *"Member"*.

WHEREAS, Aventine Renewable Energy, LLC (*"ARE"*) formed Aventine Renewable Energy – Mt Vernon, LLC, a Delaware limited liability company (the *"Company"*), on August 23, 2006, pursuant to that certain Limited Liability Company Agreement dated August [●], 2006 (the *"Original Agreement"*);

WHEREAS, pursuant to that certain Agreement of Merger dated [●], 2010, ARE merged with and into the Member and the Member acquired all of the membership interests in, and became the sole member of, the Company;

WHEREAS, pursuant to this Agreement, the Member desires to amend and restate the Original Agreement as provided herein and to continue the Company without dissolution as a limited liability company;

WHEREAS, in accordance with the First Amended Joint Plan of Reorganization of the Corporation dated January 13, 2010 (as amended, the *"Plan"*), as confirmed pursuant to the confirmation order entered by the United States Bankruptcy Court for the District of Delaware on [●], 2010 in the reorganization proceeding styled In re Aventine Renewable Energy Holdings, Inc., *et al.*, Case No. 09-11214(KG), on the effective date of the Plan all membership interests in the Company outstanding immediately prior to the effective date of this Agreement were automatically and, without any action on the part of the respective holders thereof, cancelled and concurrently the Member was admitted as the sole member of, and became the holder of all membership interests in, the Company; and

WHEREAS, the Member desires to amend and restate in its entirety the limited liability company agreement of the Company in this Agreement.

NOW, THEREFORE, the Member hereby agrees as follows:

1.    *Name*. The name of the limited liability company formed hereby is Aventine Renewable Energy – Mt Vernon, LLC.

2.    *Filing of Certificates*. The Member, as an authorized person, within the meaning of the Delaware Limited Liability Company Act (6 *Del.C*. §18-101, *et seq*.), as amended from time to time (the *"Act"*), shall execute, deliver and file, or cause the execution, delivery and filing of, all certificates required or permitted by the Act to be filed in the Office of the Secretary of State of the State of Delaware and any other certificates, notices or documents required or

1

permitted by law for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

3. *Purposes.* The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be formed under the Act.

4. *Powers.* In furtherance of its purposes, but subject to all of the provisions of this Agreement, the Company shall have and may exercise all the powers now or hereafter conferred by Delaware law on limited liability companies formed under the Act. The Company shall have the power to do any and all acts necessary, appropriate, proper, advisable, incidental or convenient to or for the protection and benefit of the Company, and shall have, without limitation, any and all of the powers that may be exercised on behalf of the Company by the Member.

5. *Principal Business Office.* The principal business office of the Company shall be located at such location as may hereafter be determined by the Member.

6. *Registered Office; Registered Agent.* The address of the registered office and the name and address of the registered agent of the Company in the State of Delaware is c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, City of Wilmington, County of New Castle, Delaware 19801.

7. *Member.* The name and the mailing address of the Member are as follows:

| Name | Address |
|---|---|
| Aventine Renewable Energy Holdings, Inc. | 120 North Parkway Drive Pekin, IL 61554 |

8. *Limited Liability.* Except as required by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

9. *Non-Voting Securities.* Notwithstanding any other provision in this Agreement, pursuant to Section 1123(a)(6) of Chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***"), the Company will not issue non-voting equity securities (which shall not be deemed to include any warrants or options to purchase membership interests of the Company); *provided, however,* that this provision (a) will have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (b) will have such force and effect, if any, only for so long as such section is in effect and applicable to the Company or any of its wholly-owned subsidiaries and (c) in all events may be amended or eliminated in accordance with, and to the extent permitted by, applicable law as from time to time in effect.

10. *Capital Contributions.* The Member may, but is not obligated to make any capital contribution to the Company.

11. *Allocation of Profits and Losses.* The Company's profits and losses shall be allocated solely to the Member.

12. *Distributions.* Subject to the limitations of Section 18-607 of the Act and any other applicable law, distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member.

13. *Management.* In accordance with Section 18-402 of the Act, management of the Company shall be vested in the Member. The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the State of Delaware. The Member has the authority to bind the Company.

14. *Officers.* The Member may, from time to time as it deems advisable, select natural persons who are employees or agents of the Company and designate them as officers of the Company (the "*Officers*") and assign titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person. Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office. Any delegation pursuant to this <u>Section 14</u> may be revoked at any time by the Member. An Officer may be removed with or without cause by the Member.

15. *Other Business.* The Member may engage in or possess an interest in other business ventures of every kind and description, independently or with others. The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

16. *Exculpation and Indemnification.* (a) To the extent, at law or equity, a Member or Officer has duties (including fiduciary duties) to the Company or any other Member, the duties of such Members and Officers are hereby eliminated to the fullest extent permitted by the laws of the State of Delaware.

(b) Each person (and the heirs, executors or administrators of such person) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was a Member or Officer, shall be indemnified and held harmless by the Company to the fullest extent permitted by the laws of the State of Delaware for directors and officers of corporations organized under the laws of the State of Delaware. The right to indemnification under this <u>Section 16</u> shall also include the right to be paid by the Company the expenses incurred in connection with any proceeding in advance of its final disposition to the fullest extent authorized by Delaware law. Any indemnity under this <u>Section 16</u> shall be provided out of and to the extent of Company assets only, and no Member shall have personal liability on account hereof.

17.   *Assignments.*  The Member may at any time assign in whole or in part its limited liability company interest in the Company.  If the Member transfers all of its interest in the Company pursuant to this <u>Section 17</u>, the transferee shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement.  Such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

18.   *Resignation.*  The Member may at any time resign from the Company.  If the Member resigns pursuant to this <u>Section 18</u>, an additional Member shall be admitted to the Company, subject to <u>Section 19</u> hereof, upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement.  Such admission shall be deemed effective immediately prior to the resignation, and, immediately following such admission, the resigning Member shall cease to be a member for the Company.

19.   *Admission of Additional Members.*  One or more additional members of the Company may be admitted to the Company with the written consent of the Member.

20.   *Dissolution.*  (a)  The Company shall dissolve and its affairs shall be wound up upon the first to occur of: (i) the written consent of the Member or (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

(b)   In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets or proceeds from sale of the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

21.   *Separability of Provisions.*  If any provision of this Agreement or the application thereof is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable to any extent, the remainder of this Agreement and the application of such provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

22.   *Entire Agreement.*  This Agreement constitutes the entire agreement of the Member with respect to the subject matter hereof.

23.   *Governing Law.*  This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of law principles).

24.   *Amendments.*  This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

25.   *Sole Benefit of Member.*  The provisions of this Agreement are intended solely to benefit the Member and, to the fullest extent permitted by applicable law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor shall be a third-party beneficiary of this Agreement), and the Member shall have no duty or obligation to any creditor of the Company to make any contributions or payments to the Company.

26. *Effectiveness*. This Agreement shall become effective when the Member shall have executed and delivered the Agreement to the Company.

[THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the [●] day of [●], 2010.

Aventine Renewable Energy Holdings, Inc.

By: _____
    Name: [●]
    Title: [●]

**Exhibit I-9**

**Aventine Power LLC Agreement**

# AMENDED AND RESTATED
# LIMITED LIABILITY COMPANY AGREEMENT
# OF
# AVENTINE POWER, LLC

This Amended and Restated Limited Liability Company Agreement (this "*Agreement*") of Aventine Power, LLC is entered into on this [●] day of [●], 2010 by Aventine Renewable Energy Holdings, Inc., a Delaware corporation, as the sole member. Aventine Renewable Energy Holdings, Inc., and any other person who, at such time, is admitted to the Company (as defined below) as a member in accordance with the terms of this Agreement, is a "*Member*".

WHEREAS, Aventine Renewable Energy, LLC ("*ARE*") formed Aventine Power, LLC, a Delaware limited liability company (the "*Company*"), on August 2, 2006, pursuant to that certain Limited Liability Company Agreement dated August 11, 2006 (the "*Original Agreement*");

WHEREAS, pursuant to that certain Agreement of Merger dated [●], 2010, ARE merged with and into the Member and the Member acquired all of the membership interests in, and became the sole member of, the Company;

WHEREAS, pursuant to this Agreement, the Member desires to amend and restate the Original Agreement as provided herein and to continue the Company without dissolution as a limited liability company;

WHEREAS, in accordance with the First Amended Joint Plan of Reorganization of the Corporation dated January 13, 2010 (as amended, the "*Plan*"), as confirmed pursuant to the confirmation order entered by the United States Bankruptcy Court for the District of Delaware on [●], 2010 in the reorganization proceeding styled In re Aventine Renewable Energy Holdings, Inc., *et al.*, Case No. 09-11214(KG), on the effective date of the Plan all membership interests in the Company outstanding immediately prior to the effective date of this Agreement were automatically and, without any action on the part of the respective holders thereof, cancelled and concurrently the Member was admitted as the sole member of, and became the holder of all membership interests in, the Company; and

WHEREAS, the Member desires to amend and restate in its entirety the limited liability company agreement of the Company in this Agreement.

NOW, THEREFORE, the Member hereby agrees as follows:

1.      *Name*. The name of the limited liability company formed hereby is Aventine Power, LLC.

2.      *Filing of Certificates*. The Member, as an authorized person, within the meaning of the Delaware Limited Liability Company Act (6 *Del.C.* §18-101, *et seq.*), as amended from time to time (the "*Act*"), shall execute, deliver and file, or cause the execution, delivery and filing of, all certificates required or permitted by the Act to be filed in the Office of the Secretary of State of the State of Delaware and any other certificates, notices or documents required or

permitted by law for the Company to qualify to do business in any jurisdiction in which the Company may wish to conduct business.

3. *Purposes.* The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be formed under the Act.

4. *Powers.* In furtherance of its purposes, but subject to all of the provisions of this Agreement, the Company shall have and may exercise all the powers now or hereafter conferred by Delaware law on limited liability companies formed under the Act. The Company shall have the power to do any and all acts necessary, appropriate, proper, advisable, incidental or convenient to or for the protection and benefit of the Company, and shall have, without limitation, any and all of the powers that may be exercised on behalf of the Company by the Member.

5. *Principal Business Office.* The principal business office of the Company shall be located at such location as may hereafter be determined by the Member.

6. *Registered Office; Registered Agent.* The address of the registered office and the name and address of the registered agent of the Company in the State of Delaware is c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, City of Wilmington, County of New Castle, Delaware 19801.

7. *Member.* The name and the mailing address of the Member are as follows:

| Name | Address |
|------|---------|
| Aventine Renewable Energy Holdings, Inc. | 120 North Parkway Drive Pekin, IL 61554 |

8. *Limited Liability.* Except as required by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and the Member shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a member of the Company.

9. *Non-Voting Securities.* Notwithstanding any other provision in this Agreement, pursuant to Section 1123(a)(6) of Chapter 11 of Title 11 of the United States Code (the "*Bankruptcy Code*"), the Company will not issue non-voting equity securities (which shall not be deemed to include any warrants or options to purchase membership interests of the Company); *provided, however,* that this provision (a) will have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (b) will have such force and effect, if any, only for so long as such section is in effect and applicable to the Company or any of its wholly-owned subsidiaries and (c) in all events may be amended or eliminated in accordance with, and to the extent permitted by, applicable law as from time to time in effect.

10. *Capital Contributions.* The Member may, but is not obligated to make any capital contribution to the Company.

11.     *Allocation of Profits and Losses.* The Company's profits and losses shall be allocated solely to the Member.

12.     *Distributions.* Subject to the limitations of Section 18-607 of the Act and any other applicable law, distributions shall be made to the Member at the times and in the aggregate amounts determined by the Member.

13.     *Management.* In accordance with Section 18-402 of the Act, management of the Company shall be vested in the Member. The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the State of Delaware. The Member has the authority to bind the Company.

14.     *Officers.* The Member may, from time to time as it deems advisable, select natural persons who are employees or agents of the Company and designate them as officers of the Company (the "*Officers*") and assign titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person. Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office. Any delegation pursuant to this <u>Section 14</u> may be revoked at any time by the Member. An Officer may be removed with or without cause by the Member.

15.     *Other Business.* The Member may engage in or possess an interest in other business ventures of every kind and description, independently or with others. The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

16.     *Exculpation and Indemnification.* (a) To the extent, at law or equity, a Member or Officer has duties (including fiduciary duties) to the Company or any other Member, the duties of such Members and Officers are hereby eliminated to the fullest extent permitted by the laws of the State of Delaware.

(b)     Each person (and the heirs, executors or administrators of such person) who was or is a party or is threatened to be made a party to, or is involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person is or was a Member or Officer, shall be indemnified and held harmless by the Company to the fullest extent permitted by the laws of the State of Delaware for directors and officers of corporations organized under the laws of the State of Delaware. The right to indemnification under this <u>Section 16</u> shall also include the right to be paid by the Company the expenses incurred in connection with any proceeding in advance of its final disposition to the fullest extent authorized by Delaware law. Any indemnity under this <u>Section 16</u> shall be provided out of and to the extent of Company assets only, and no Member shall have personal liability on account hereof.

17. *Assignments.* The Member may at any time assign in whole or in part its limited liability company interest in the Company. If the Member transfers all of its interest in the Company pursuant to this Section 17, the transferee shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

18. *Resignation.* The Member may at any time resign from the Company. If the Member resigns pursuant to this Section 18, an additional Member shall be admitted to the Company, subject to Section 19 hereof, upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement. Such admission shall be deemed effective immediately prior to the resignation, and, immediately following such admission, the resigning Member shall cease to be a member for the Company.

19. *Admission of Additional Members.* One or more additional members of the Company may be admitted to the Company with the written consent of the Member.

20. *Dissolution.* (a) The Company shall dissolve and its affairs shall be wound up upon the first to occur of: (i) the written consent of the Member or (ii) the entry of a decree of judicial dissolution under Section 18-802 of the Act.

(b) In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets or proceeds from sale of the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

21. *Separability of Provisions.* If any provision of this Agreement or the application thereof is held by a court of competent jurisdiction or other authority to be invalid, void or unenforceable to any extent, the remainder of this Agreement and the application of such provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

22. *Entire Agreement.* This Agreement constitutes the entire agreement of the Member with respect to the subject matter hereof.

23. *Governing Law.* This Agreement shall be governed by, and construed under, the laws of the State of Delaware (without regard to conflict of law principles).

24. *Amendments.* This Agreement may not be modified, altered, supplemented or amended except pursuant to a written agreement executed and delivered by the Member.

25. *Sole Benefit of Member.* The provisions of this Agreement are intended solely to benefit the Member and, to the fullest extent permitted by applicable law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor shall be a third-party beneficiary of this Agreement), and the Member shall have no duty or obligation to any creditor of the Company to make any contributions or payments to the Company.

26.     *Effectiveness*.  This Agreement shall become effective when the Member shall have executed and delivered the Agreement to the Company.

[THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement as of the [●] day of [●], 2010.

Aventine Renewable Energy Holdings, Inc.

By:_____
     Name: [●]
     Title: [●]

<u>**Exhibit I-10**</u>

**Nebraska Energy Amendment to Certificate of Formation**

# CERTIFICATE OF AMENDMENT OF
# ARTICLES OF ORGANIZATION OF
# NEBRASKA ENERGY, L.L.C.

The undersigned hereby certify as follows for the purpose of amending the Articles of Organization of Nebraska Energy, L.L.C., a Kansas limited liability company (the "*Company*"), in accordance with the Kansas Revised Limited Liability Company Act:

1.      The name of the Company is Nebraska Energy, L.L.C.

2.      Article SEVENTH of the Articles of Organization is hereby amended and restated in its entirety to read as follows:

> SEVENTH. The management of the Company shall be vested in its members, with the members having such voting rights and authority as may be set forth from time to time in the Company's Operating Agreement. The names and addresses of the members are as follows:

| Name | Address |
|------|---------|
| Aventine Renewable Energy Holdings, Inc. | 120 North Parkway Drive Pekin, IL 61554 |
| Aventine Renewable Energy, Inc. | 120 North Parkway Drive Pekin, IL 61554 |

3.      A new Article [•] is hereby added to the Articles of Organization, to read as follows:

> Notwithstanding any other provision herein, pursuant to Section 1123(a)(6) of Chapter 11 of Title 11 of the United States Code (the "*Bankruptcy Code*"), the Company will not issue non-voting equity securities (which shall not be deemed to include any warrants or options to purchase membership interests of the Company); *provided, however*, that this provision (a) will have no further force or effect beyond that required under Section 1123 of the Bankruptcy Code, (b) will have such force and effect, if any, only for so long as such section is in effect and applicable to the Company or any of its wholly-owned subsidiaries and (c) in all events may be amended or eliminated in accordance with, and to the extent permitted by, applicable law as from time to time in effect.

IN WITNESS WHEREOF, the undersigned, being all of the members of the Company have executed this instrument as of the [●] day of [●], 2010.

Aventine Renewable Energy Holdings, Inc.

By: _____
     Name: [●]
     Title: [●]

Aventine Renewable Energy, Inc.

By: _____
     Name: [●]
     Title: [●]

## Exhibit K

**Schedule of Rejected Executory Contracts and Non-Residential Real Property Leases**

| Debtor | Creditor Name | Address1 | Address2 | City | State | Zip | Title and description of contract | Rejection Effective Date |
|---|---|---|---|---|---|---|---|---|
| AREI | AmerenCILCO | 300 Liberty Street | | Peoria | IL | 61602 | Electricity Service; Natural Gas Service | Confirmation Date |
| AREI | American River Transportation Co. | 4666 Faries Parkway | | Decatur | IL | 62526 | Coal Barge Transportation | Confirmation Date |
| Holdings | Arnold Nemirow | c/o Womble Carlyle Sandridge & Rice | 550 South Main Street, Suite 400 | Greenville | SC | 29601 | Board Compensation Plan for service on board of directors | Confirmation Date |
| Holdings | Bobby Latham | PO Box 1873 | | Claremore | OK | 74018 | Board Compensation Plan for service on board of directors | Confirmation Date |
| AREI | BOWMAN & ASSOCIATES INC | 3802 34TH ST. | | MOLINE | IL | 61265 | AEROVENT MODEL #48L425-DDP-870-5, DIRECT DRIVEN PANEL FAN, 36,650 CFM @ 0" SP, 5HP, TEFC, 870 RPM, 460/3/60 | Confirmation Date |
| AREI | BOWMAN & ASSOCIATES INC | 3802 34TH ST. | | MOLINE | IL | 61265 | SIZE 48, GRAVITY SHUTTER | Confirmation Date |
| AREI | BOWMAN & ASSOCIATES INC | 3802 34TH ST. | | MOLINE | IL | 61265 | SIZE 48, MOTOR SIDE GUARD | Confirmation Date |
| AREI | Canadian National Railroad | 17641 South Ashland Avenue | | Homewood | IL | 60430 | Railroad provides shipping of ARE's product under set tariffs | Confirmation Date |
| AW | City of Aurora Nebraska | 905 13th Street | | Aurora | NE | 68818-2409 | Community Development Block Grant; $350,000 grant for public road improvements benefiting AW plant in exchange for creating and maintaining jobs | Confirmation Date |
| MV | Consolidated Grain & Barge | 5130 Port Road | | Jeffersonville | IN | 47130 | Marketing Agreement for CGB to be exclusive marketer of DDGS from MV plant | Confirmation Date |
| AREI | CSX Transportation, Inc. | 500 Water Street - J865 | | Jacksonville | FL | 32202 | Railroad Transportation Contract 83551 between ARE and CSXT sets out terms for rail transportation solely as it relates to terminals in Philadelphia | Confirmation Date |

The Debtors reserve all rights to amend, modify and/or supplement this schedule prior to the commencement of the Confirmation Hearing. The rejection of the contracts and leases set forth herein will be effective as of the Confirmation Date, subject to the occurrence of the Effective Date. The Debtors only seek to reject the contracts and leases set forth herein to the extent that such contracts and leases are executory and/or unexpired. Nothing set forth herein shall be an admission or determination as to whether the contracts and leases set forth herein are in fact executory and/or unexpired and the Debtors resolve all rights with respect thereto.

DB02:9236429.2

068125.1001

| Debtor | Creditor Name | Address1 | Address2 | City | State | Zip | Title and description of contract | Rejection Effective Date |
|---|---|---|---|---|---|---|---|---|
| AW | D&S SEEDING & FENCING | 12158 "C" ROAD | | POLK | NE | 68654 | SEEDING AND FERTILIZATION OF 20 ACRES AT AURORA WEST | Confirmation Date |
| AREI | DAY TIMERS INC | ONE DAY-TIME PLAZA | | ALLENTOWN | PA | 18195 | 1 YEAR SUPPLY - 1 PAGE PER DAY PLANNING PAGES NOTEBOOK SIZE STARTING IN JULY | Confirmation Date |
| AREI | Dustex Corporation | 100 Chastain Ctr. Blvd | Suite 195 | Kennesaw | GA | 30144 | Procurement Agreement for Air Pollution Control Equipment | Confirmation Date |
| Holdings | Farokh Hakimi | 46 Forest Wood | | Toronto CANADA | Ontario | M5N 2V9 | Board Compensation Plan for service on board of directors | Confirmation Date |
| AREI | FC Haab Co., Inc. | 1700 Schuylkill Avenue | | Philadelphia | PA | 19145 | Throughput Agreement; agreement for terminal services and facility usage for ARE's product in Philadelphia | Confirmation Date |
| AREI | FIRST AMERICAN EQUIPMENT FINANCE | 255 WOODCLIFF DRIVE, PO BOX 96 | | FAIRPORT | NY | 14450 | OPERATING LEASE PAYMENT ON FURNITURE & IT EQUIPMENT, PHONES, ALARM SYSTEM, ETC, AT HQ BUILDING - 3 YEAR OPERATING LEASE - ANNUALIZED $415,000.00 - ADDED ANOTHER LEASE IN 2008 FOR TOTAL OF $433,000.00 | Confirmation Date |
| AREI | GE Capital | 161 N. Clark Street | | Chicago | IL | 60601 | Co-product railcar lease 3944-83-11 | Confirmation Date |
| AREI | GE Capital | 161 N. Clark Street | | Chicago | IL | 60601 | Co-product railcar lease 3944-83-13 | Confirmation Date |
| AREI | GE Capital | 161 N. Clark Street | | Chicago | IL | 60601 | Co-product railcar lease 3944-83-14 | Confirmation Date |

068125.1001

The Debtors reserve all rights to amend, modify and/or supplement this schedule prior to the commencement of the Confirmation Hearing. The rejection of the contracts and leases set forth herein will be effective as of the Confirmation Date, subject to the occurrence of the Effective Date. The Debtors only seek to reject the contracts and leases set forth herein to the extent that such contracts and leases are executory and/or unexpired. Nothing set forth herein shall be an admission or determination as to whether the contracts and leases set forth herein are in fact executory and/or unexpired and the Debtors resolve all rights with respect thereto.

DB02:9236429.2

| Debtor | Creditor Name | Address1 | Address2 | City | State | Zip | Title and description of contract | Rejection Effective Date |
|---|---|---|---|---|---|---|---|---|
| NELLC | Genencor International | 200 Meridian Centre Blvd | | Rochester | NY | 14618-3916 | Agreement for supply of liquefaction and saccharifying enzymes | Confirmation Date |
| AREI | Holden America Inc. | 6700 Cote de Liesse | Suite 404 | Montreal CANADA | Quebec | H4T 1E3 | Sublease of covered hopper car | Confirmation Date |
| AREI | HTH COMPANIES, INC. | 239 ROCK INDUSTRIAL BLVD., SUITE 108 | | UNION | MO | 63084 | PROVIDE LABOR, SUPERVISION, AND MATERIAL TO RE-INSULATE CAUSTIC LINE BUILDING #7 | Confirmation Date |
| AREI | Intertek Caleb Brett | 2200 West Loop South | Suite 200 | Houston | TX | 77027 | River Barge Inspection Agreement; Intertek performs inspection services of inland river barges | Confirmation Date |
| AREI | INVENSYS SYSTEMS INC | FOXBORO | | MIDDLEBUR G HEIGHTS | OH | 44130 | 1 USB TRACKBALL MOUSE | Confirmation Date |
| AREI | INVENSYS SYSTEMS INC | FOXBORO | | MIDDLEBUR G HEIGHTS | OH | 44130 | SUN USB MOUSE/KEYBOARDS COMBO | Confirmation Date |
| AREI | JOHN CRANE INC | 900 CURTIS DR | | MOUNT ZION | IL | 62549 | 4 5/8" T-1 ESP SEAL REPAIR KIT WITH AFLAS ELASTOMERS | Confirmation Date |
| AREI | Klemm Tank Lines | PO Box 11708 | | Green Bay | WI | 54307-1708 | Ethanol trucking from Pekin to Chicago (ongoing) | Confirmation Date |
| Holding s | Leigh Abramson | c/o Metalmark Capital LLC | 1177 Avenue of the Americas, 40th Floor | New York | NY | 10036 | Board Compensation Plan for service on board of directors | Confirmation Date |
| MV | MAI | 702 W. 4th Street | PO Box 625 | Mt. Vernon | IN | 47620 | Engineering services related to water supply/treatment facilities | Confirmation Date |
| Holding s | Michael Hoffman | c/o Metalmark Capital LLC | 1177 Avenue of the Americas, 40th Floor | New York | NY | 10036 | Board Compensation Plan for service on board of directors | Confirmation Date |

The Debtors reserve all rights to amend, modify and/or supplement this schedule prior to the commencement of the Confirmation Hearing. The rejection of the contracts and leases set forth herein will be effective as of the Confirmation Date, subject to the occurrence of the Effective Date. The Debtors only seek to reject the contracts and leases set forth herein to the extent that such contracts and leases are executory and/or unexpired. Nothing set forth herein shall be an admission or determination as to whether the contracts and leases set forth herein are in fact executory and/or unexpired and the Debtors resolve all rights with respect thereto.

DB02:9236429.2

068125.1001

| Debtor | Creditor Name | Address1 | Address2 | City | State | Zip | Title and description of contract | Rejection Effective Date |
|--------|---------------|----------|----------|------|-------|-----|-----------------------------------|--------------------------|
| AW | MID NEBRASKA LAND DEVELOPERS, LLC | 1007 WEST 18 ROAD | | PHILLIPS | NE | 68865 | Scraper, grader, and skid steer service per proposal dated | Confirmation Date |
| AREI | MILL & ELEVATOR SUPPLY CO., INC. | 1665 NORTH TOPPING | | KANSAS CITY | MISSOURI | 64120 | 6' X 8" FLEXIBLE LOADING SPOUT (METAL) | Confirmation Date |
| MV | Morley & Associates, Inc. | 4800 Rosebud Lane | | Newburgh | IN | 47630 | General design, engineering & surveying services | Confirmation Date |
| AREI | MTM Recognition | 615 S. Sixth Street | | Princeton | IL | 61356 | Service awards | Confirmation Date |
| AREI | Muzak | 3318 Lakemont Blvd | | Fort Mill | SC | 29708 | Service Agreement for "hold" music | Confirmation Date |
| AW | Nebraska Department of Economic Development | 301 Centennial Mall South | PO Box 94666 | Lincoln | NE | 68509-4666 | Community Development Block Grant; $350,000 grant for public road improvements benefiting AW plant in exchange for creating and maintaining jobs | Confirmation Date |
| MV | Neth-Schweizer, Inc. | PO Box 347 | 405 West Third Street | Mt. Vernon | IN | 47620 | Furnish and supply raw water supply system | Confirmation Date |
| MV | Neth-Schweizer, Inc. | PO Box 347 | 405 West Third Street | Mt. Vernon | IN | 47620 | Raw water piping | Confirmation Date |
| NELLC | North American Bioproducts Corporation | 1815 Satellite Blvd | Building 200 | Duluth | GA | 30097 | Material Transfer Agreement for NELLC to use an experimental fermentation product | Confirmation Date |
| AREI | Oracle | 1001 Sunset Blvd. | | Rocklin | CA | 95765 | Consulting work | Confirmation Date |
| AREI | PIP Printing and Document Services | 8325 N. Allen Road | | Peoria | IL | 61615 | Financial Printing and distribution services | Confirmation Date |
| AREI | Promise Transport | 298 E. First Street | | El Paso | IL | 61738 | Ethanol trucking from Pekin to Mt. Vernon | Confirmation Date |
| Holdings | Richard Derbes | 18166 SE Village Circle | | Tequesta | FL | 33469 | Board Compensation Plan for service on board of directors | Confirmation Date |
| AREI | ROVISYS | 1455 DANNER DRIVE | | AURORA | OH | 44202 | Support | Confirmation Date |

The Debtors reserve all rights to amend, modify and/or supplement this schedule prior to the commencement of the Confirmation Hearing. The rejection of the contracts and leases set forth herein will be effective as of the Confirmation Date, subject to the occurrence of the Effective Date. The Debtors only seek to reject the contracts and leases set forth herein to the extent that such contracts and leases are executory and/or unexpired. Nothing set forth herein shall be an admission or determination as to whether the contracts and leases set forth herein are in fact executory and/or unexpired and the Debtors resolve all rights with respect thereto.

DB02.9236429.2

068125.1001

| Debtor | Creditor Name | Address1 | Address2 | City | State | Zip | Title and description of contract | Rejection Effective Date |
|---|---|---|---|---|---|---|---|---|
| AW | Ryan & Associates | 926 Saunders Avenue | | Lincoln | NE | 68521 | Agreement for construction of underground water piping system | Confirmation Date |
| | | | | | | | [agreement removed] | |
| AW | Seminole Energy Services | 303 E. 17th Avenue | | Denver | CO | 80203 | Seminole guaranties Nebraska Resources performance under Precedent Agreement with AW | Confirmation Date |
| AREI | SSI | 735 Battery Street | | San Francisco | CA | 94111 | SAN Devices Maintenance | Confirmation Date |
| Holding s | Ted Butz | FMC Corporation | 1735 Market Street, 23rd Floor | Philadelphia | PA | 19103 | Board Compensation Plan for service on board of directors | Confirmation Date |
| AREI | Union Pacific Railroad | 1400 Douglas Street - Stop 1310 | | Omaha | NE | 68179-1310 | Railroad provides shipping of ARE's product under set tariffs | Confirmation Date |
| Holding s | Wayne Kuhn | 5 Back River Circle | | Savannah | GA | 31411 | Board Compensation Plan for service on board of directors | Confirmation Date |

The Debtors reserve all rights to amend, modify and/or supplement this schedule prior to the commencement of the Confirmation Hearing. The rejection of the contracts and leases set forth herein will be effective as of the Confirmation Date, subject to the occurrence of the Effective Date. The Debtors only seek to reject the contracts and leases set forth herein to the extent that such contracts and leases are executory and/or unexpired. Nothing set forth herein shall be an admission or determination as to whether the contracts and leases set forth herein are in fact executory and/or unexpired and the Debtors resolve all rights with respect thereto.

DB02:9236429.2

068125.1001