# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AVENTINE RENEWABLE ENERGY HOLDINGS, INC., a Delaware Corporation, *et al.*, | Case No. 09-11214 (KG) |
| | (Jointly Administered) |
| Debtors.[1] | |
| | Docket Ref. No. 678, 743, 800, 802, 803 & 812 |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER UNDER SECTION 1129 OF THE BANKRUPTCY CODE AND RULE 3020 OF THE BANKRUPTCY RULES CONFIRMING DEBTORS' FIRST AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### RECITALS

A.  Aventine Renewable Energy Holdings, Inc.; Aventine Renewable Energy, LLC; Aventine Renewable Energy, Inc.; Aventine Renewable Energy – Aurora West, LLC; Aventine Renewable Energy – Mt Vernon, LLC; Aventine Power, LLC; and Nebraska Energy, L.L.C. (each a "Debtor," and collectively, the "Debtors") filed their First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (as modified, the "Plan") [Docket No. 678], and the Disclosure Statement for Debtors' First Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Disclosure Statement") [Docket No. 679] on January 13, 2010.[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Aventine Renewable Energy Holdings, Inc. (9368), Aventine Renewable Energy, LLC (0195), Aventine Renewable Energy, Inc. (8352), Aventine Renewable Energy – Aurora West, LLC (9285), Aventine Renewable Energy – Mt Vernon, LLC (8144), Aventine Power, LLC (9343), and Nebraska Energy, L.L.C. (1872). The corporate headquarters address for all of the Debtors is 120 North Parkway Drive, Pekin, Illinois 61554.

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Plan or, if not defined in the Plan, in the Memorandum of Law in Support of Confirmation of Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Confirmation Memorandum"). Any capitalized term used herein that is not defined in the Plan, the Confirmation Memorandum, or this Confirmation Order, but that is used in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), or in the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

B.  On December 4, 2009, the Debtors filed the Notice of Hearing to Consider the Adequacy of Disclosure Statement (the "Disclosure Statement Notice") [Docket No. 590]. The Disclosure Statement Notice was served by first class mail or hand delivery on the Office of the United States Trustee for the District of Delaware and all of the Debtors' Creditors and Equity Interest holders. An affidavit evidencing service was filed with the Court on December 9, 2009 [Docket No. 596].

C.  On January 13, 2010, the Court entered an order (the "Backstop Approval Order") [Docket No. 682] approving the Debtors' entry into the Backstop Commitment Agreement for purposes of conducting the Senior Secured Notes Offering, which would be backstopped by the Backstop Purchasers, and authorizing the Debtors' to pay the fees and expenses of and other indemnification obligations owed to the Backstop Purchasers in accordance with the Backstop Commitment Agreement.

D.  On January 13, 2010, the Court entered an order (the "DS and Solicitation Procedures Order") [Docket No. 684] approving: (i) the adequacy of the Disclosure Statement; (ii) the Debtors' proposed procedures for soliciting votes to accept or reject the Plan, the manner of proving notice thereof and the tabulation of votes to accept or reject the Plan; (iii) procedures for filing objections to confirmation of the Plan and the Debtors' proposed Cure Amounts; and (iv) the Senior Secured Notes Offering Procedures.

E.  As required by the DS and Solicitation Procedures Order, the Debtors, through the Court-approved noticing and voting agent, The Garden City Group, Inc. ("GCG"), timely mailed or caused to be transmitted to all holders of Claims and Equity Interests entitled to vote on the Plan, or to the nominees for the holders of Prepetition Unsecured Notes Claims and Equity Interests in 9(a) (if applicable), solicitation packages (the "Solicitation Packages") containing copies of (a) written notice of (i) the Court's approval of the Disclosure Statement, (ii) the

2

deadline for voting on the First Amended Plan, (iii) the date of the Confirmation Hearing, and (iv) the deadline and procedures for filing objections to confirmation of the First Amended Plan; (b) the First Amended Plan, (c) the Disclosure Statement, (d) a Ballot to vote to accept or reject the Plan and a ballot return envelope to be used to return a completed Ballot, and (e) for holders of Prepetition Unsecured Notes Claims, the Senior Secured Notes Offering Procedures and a Subscription Form. As further required by the DS and Solicitation Procedures Order, the Debtors, through GCG, timely mailed to all Claim or Equity Interest holders not entitled to vote on the Plan written notice of (i) the Court's approval of the Disclosure Statement, (ii) a summary of the terms of the Plan, (iii) the date of the Confirmation Hearing, and (iv) the deadline and procedures for filing objections to confirmation of the Plan (the "Notice of Non-Voting Status"). In addition, the Debtors, through GCG, timely mailed Subscription Forms to all record holders of Prepetition Unsecured Notes as of January 13, 2010, the Record Date established by the DS and Solicitation Order. The Debtors also caused notice of the Confirmation Hearing to be published in the National Edition of The Wall Street Journal on January 19, 2010. Affidavits of service and publication evidencing such actual and publication notice were filed with the Court on February 5, 2010 and February 4, 2010, respectively. [Docket Nos. 742 and 736].

F. As further required by the DS and Solicitation Procedures Order, on January 26, 2010, the Debtors, through GCG, filed with the Court and mailed the Notice of (i) Possible Assumption of Executory Contracts and Unexpired Leases (ii) Fixing of Cure Amounts and (iii) Deadline to Object Thereto (the "Cure Notice") [Docket No. 703]. An affidavit of service evidencing mailing of the Cure Notice was filed with the Court on February 4, 2010 [Docket No. 737]. Three (3) objections to the Cure Notice were filed within the time prescribed by the DS and Solicitation Procedures Order. [*See* Docket Nos. 747, 748 and 759].

DB02:9231631.10	068125.1001

G. On February 23, 2010, the Debtors filed the Declaration of Jeffrey R. Miller of The Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes on and Results of Voting with Respect to the Plan [Docket No. 808] attesting to, and certifying the method and results of, the ballot tabulation for holders of Claims in Classes 2(a)-(f), 4(b), 5(a)-(f), 6(a)-(d) and (f), 7(a)-(d) and (f), and 9(a) voting to accept or reject the Plan (the "Voting Reports").

H. Pursuant to the DS and Solicitation Procedures Order, the deadline for filing objections to the Plan and the voting deadline for holders of Claims entitled to vote on the Plan was February 17, 2010.

I. The voting results, as certified in the Voting Reports, are reflected in the chart below:

| | Percentages Accepting by Class | | | | | | | | | | | Classes | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 2 | | 4(b) | | 5 | | 6 | | 7 | | 9(a) | | |
| | Claim Amt. | Numerosity | Claim Amt. | Numerosity | Claim Amt. | Percentage | Claim Amt. | Numerosity | Claim Amt. | Numerosity | No. of Shares | Numerosity | Accepting | Rejecting |
| Consolidated Holdings | 100% | 100% | n/a | | 99% | 93% | 100% | 100% | 100% | 100% | 29% | n/a | 2,5,6,7 | 9 |
| AREI | 100% | 100% | n/a | | 99% | 93% | 99% | 89% | 83% | 89% | n/a | | 2,5,6,7 | None |
| ARE – Aurora West | 100% | 100% | 100% | 100% | 99% | 93% | 82% | 75% | 100% | 100% | n/a | | 2,4,5,6,7 | None |
| ARE – Mt. Vernon | 100% | 100% | n/a | | 99% | 93% | No Votes | | No Votes | | n/a | | 2,5 | None |
| Aventine Power | 100% | 100% | n/a | | 99% | 93% | Empty Class | | Empty Class | | n/a | | 2,5 | None |
| NELLC | 100% | 100% | n/a | | 99% | 93% | 100% | 100% | 87% | 85% | n/a | | 2,5,6,7 | None |

J. On February 5, 2010, the Debtors filed the Plan Supplement [Docket No. 743]. On February 19, 2010, February 22, 2010 and February 24, 2010, the Debtors filed amendments to the Plan Supplement [Docket Nos. 800, 802 and 812 respectively], which, as so amended,

4

included, as exhibits, substantially final forms of the following documents (collectively, the "Plan Supplement Documents"):

| | | |
|---|---|---|
| | Exhibit A: | Form of Indenture and Exhibits Thereto |
| | Exhibit B: | Form of Security Agreement accompanying the Indenture |
| | Exhibit C: | Form of Intercreditor Agreement |
| | Exhibit D: | Term Sheet for the ABL Credit Facility |
| | Exhibit E: | Form of Kiewit Note |
| | Exhibit F: | Form of Kiewit Deed of Trust |
| | Exhibit G: | Form of Warrant Agreement |
| | Exhibit H: | List of Directors and Officers of the Reorganized Debtors |
| | Exhibit I: | Corporate Governance Documents for Reorganized Debtors |
| | Exhibit J: | Schedule of Assumed Non-Residential Real Property Leases |
| | Exhibit K: | Schedule of Rejected Executory Contracts and Non-Residential Real Property Leases |

K. A total of six (6) objections to confirmation of the Plan were filed with the Court, which were filed by the following parties: Michael Welsh ("Mr. Welsh") [Docket No. 738, as supplemented by Docket No. 789], Glacial Lake Energy, LLC, *et al.* [Docket No. 774], Andrew Shirley ("Mr. Shirley") [Docket No. 776], Fred Graetzer ("Mr. Graetzer") [Docket No. 787], Alan Betensley ("Mr. Bentensley") [Docket No. 788] and Sean Mc Guigan and Kimberly McGuigan (collectively, the "McGuigans," and together with Mr. Welsh, Mr. Shirley, Mr. Graetzer and Mr. Bentensley, collectively, the "Dissenting Shareholders"). Other than the objections to the Plan filed by the Dissenting Shareholders, all objections to the Plan have been resolved consensually by the Debtors, including by inserting language in this order (the "Confirmation Order") addressing such objecting parties' concerns.

L.  In addition to the Voting Report, on February 22, 2010, the Debtors filed the Confirmation Memorandum in support of confirmation of the Plan.

M.  The Confirmation Hearing was held on February 24, 2010.

NOW, THEREFORE, based upon the Court's review of the Confirmation Memorandum, the Voting Report and upon (i) all of the evidence proffered or adduced and the arguments of counsel made at the Confirmation Hearing and (ii) the entire record of these Chapter 11 Cases, and after due deliberation thereon and sufficient cause appearing therefor:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### IT IS HEREBY FOUND AND DETERMINED THAT:

1.  <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157, 1334(a), 1408 and 1409)</u>. The Court has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

2.  <u>Burden of Proof</u>. The Debtors, as proponents of the Plan, have the burden of proving the elements of section 1129(a) of the Bankruptcy Code by preponderance of the evidence. As set forth below, the Debtors have met that burden.

3.  <u>Judicial Notice</u>. This Court takes judicial notice of the docket in these cases maintained by the clerk of the Court and/or its duly appointed agent, including, without limitation, all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during these cases, including, without limitation, the hearing to consider the adequacy of the Disclosure

Statement, approving the Senior Secured Notes Offering Procedures and the Debtors' authorization to enter into the Backstop Commitment Agreement and the Confirmation Hearing.

4. <u>Transmittal and Mailing of Materials; Notice</u>. The Solicitation Packages and Notice of Non-Voting Status were transmitted and served in compliance with the DS and Solicitation Procedures Order and the Bankruptcy Rules, and such transmittal and service was adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing and the other dates and hearings described in the DS and Solicitation Procedures Order was given in compliance with the Bankruptcy Rules and DS and Solicitation Procedures Order, and no other or further notice is or shall be required. All parties in interest had a full and fair opportunity to appear and be heard at the Confirmation Hearing and no other or further notice is or shall be required.

5. <u>Technical Supplementation of Certain Plan Supplement Documents and Senior Secured Notes Offering</u>. The technical supplementation of certain Plan Supplement Documents included in the Plan Supplement filed with the Bankruptcy Court on February 19, 2010, February 22, 2010 and February 24, 2010 and the supplemental notice to the Senior Secured Notes Offering (the "<u>Supplemental Notice</u>"), the form of which is attached hereto as <u>Exhibit C</u>, comply with all applicable provisions of the Bankruptcy Code. Such technical supplementations are neither material nor adversely changes the treatment of any holders of Claims under the Plan, and is hereby approved pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019.

6. <u>Voting Results</u>. As described more fully in the Voting Report, Classes 2(a)-(f), 4(b), 5(a)-(f), 6(a)-(c) and (f) and 7(a)-(c) and (f) voted in favor of the Plan, Classes 6(d) and 7(d) did not vote to accept or reject the Plan, Classes 6(e) and 7(e) had no members, and Class 9(a) voted to reject the Plan. <u>See</u> Voting Report, Exhibit A.

7

7. **Plan Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1))**. As set forth below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(i) **Proper Classification of Claims and Interests (11 U.S.C. §§ 1122, 1123(a)(1))**. In addition to Administrative Claims (including Fee Claims), Priority Tax Claims, and DIP Financing Claims, which need not be classified, the Plan designates nine (9) Classes of Claims and Equity Interests with respect to Consolidated Holdings and the other Debtors. The Claims or Equity Interests placed in each Class are substantially similar to other Claims or Equity Interests, as the case may be, in such Class. Valid business, factual and/or legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and, therefore, the Plan does not unfairly discriminate among holders of Claims or Equity Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii) **Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2))**. Article IV of the Plan specifies that Classes 1(a)-(f), 3(a)-(f), 4(a) and 8(a)-(f) are not Impaired, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii) **Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))**. Article IV of the Plan designates Classes 2(a)-(f), 4(b), 5(a)-(f), 6(a)-(f), 7(a)-(f), and 9(a)-(f) as Impaired and specifies the treatment of Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code. However, Classes 6(e) and 7(e) have no Claims within such Classes.

(iv) **Equal Treatment Within Classes (11 U.S.C. § 1123(a)(4))**. The Plan provides for the same treatment by the applicable Debtor or Consolidated Holdings for each Claim or Equity Interest in a particular Class with respect to such Debtor or Consolidated Holdings unless the holder of a particular Claim or Equity Interest in such Class has agreed to a less favorable treatment of its Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v) **Implementation of Plan (11 U.S.C. § 1123(a)(5))**. In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan, including Articles V and VI of the Plan, provides adequate and proper means for its implementation, including, without limitation: (1) the continued existence of the Debtors, other than ARE LLC which is merged into and substantively consolidated with ARE Holdings pursuant to Article VI(C) of the Plan, (2) the adoption of the amendments to the certificates of incorporation or formation, charters and by-laws or limited liability

8

company agreements of Reorganized ARE Holdings and each Reorganized Debtor, as the case may be, and such other amended and restated governing documents as set forth in the Plan Supplement that will govern the Reorganized Debtors, as the case may be, (3) the execution and delivery by any Reorganized Debtor of any documents and instruments in connection with and the funds available pursuant to the Exit Financing, (4) the issuance of the New ARE Holdings Common Stock, the Warrants, and New Subsidiary Equity Interests, as provided in Article V(B) of the Plan, (5) the Senior Secured Notes Offering (consisting of the Senior Secured Notes and Noteholder New Equity) and (6) the identification of the initial members of the boards of directors of the Reorganized Debtors as provided in Article V(D) of the Plan.

(vi) Charter Provisions (11 U.S.C. § 1123(a)(6)). Pursuant to Article V(A) of the Plan and the documents included in the Plan Supplement, the amended certificate of incorporation of ARE Holdings and the amended certificate of incorporation or formation or limited liability company agreement, as the case may be, of each Reorganized Debtor prohibits the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code and provide for an appropriate distribution of voting power, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(vii) Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)). Pursuant to Article V(D) of the Plan, the identities and affiliations of all individuals proposed to serve as the initial board members and initial officers of each Reorganized Debtor as of the Effective Date were disclosed and filed with this Court as part of the Plan Supplement. Upon on the occurrence of the Effective Date, the New Board will be a five-member board comprised of four directors appointed by the Majority Backstop Purchasers and the Chief Executive Officer of the Reorganized Debtors. The board of directors of each of the Reorganized Subsidiaries, if applicable, shall be a subset of the members of the New Board. The initial members of the New Board were disclosed in the Plan Supplement. The foregoing provisions of the Plan for the selection of directors and officers are consistent with the interests of creditors and equity holders and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(viii) Additional Plan Provisions (11 U.S.C. § 1123(b)). The provisions of the Plan are appropriate and consistent with the provisions of the Bankruptcy Code.

(ix) Rule 3016(a) of the Bankruptcy Rules. The Plan is dated and identifies the entities submitting it, thereby satisfying Rule 3016(a) of the Bankruptcy Rules.

8. <u>Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

> (i) the Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;
>
> (ii) the Debtors have complied with the applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by Orders of the Court; and
>
> (iii) the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the DS and Solicitation Procedures Order in transmitting the Solicitation Packages and in soliciting and tabulating votes on the Plan.

9. <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors, the Creditors Committee, the DIP Agent, the DIP Lenders, the Backstop Purchasers and their respective counsel and advisors, participated in good faith in negotiating, at arms' length, the Plan and the contracts, instruments, releases, agreements and documents related to or necessary to implement, effectuate and consummate the Plan. Each of the Debtors, the Creditors Committee, the DIP Agent, the DIP Lenders, the Backstop Purchasers, and their respective counsel and advisors also participated in good faith in each of the actions taken to bring about, and in satisfying each of the conditions precedent to, confirmation and consummation of the Plan. In so determining, the Court has examined, among other things, the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the record of the confirmation hearing, the formulation of the Plan and all related pleadings, exhibits, statements and comments regarding confirmation of the Plan and the approval of the Plan by the Creditors that voted on the Plan. The Chapter 11 Cases were filed,

10

DB02:9231631.10                                                                                    068125.1001

and the Plan was proposed, with the legitimate and honest purposes of effecting a reorganization of the Debtors.

10.     Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Except for the fees and expenses of professionals for the Prepetition Agent and the Prepetition Lenders (as defined in the Stipulation (as defined below)), the DIP Agent, the Backstop Purchasers and the payments made to PNC Bank National Association in connection with the ABL Credit Facility (which payments have been approved by previous orders of the Court or are authorized to be made, in the case of the Prepetition Agent and the Prepetition Lenders, pursuant to the Stipulation), any payment made or to be made by the Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

11.     Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. Exhibit H to the Plan Supplement discloses the identities and affiliations of the individuals proposed to serve, after confirmation of the Plan, as directors or officers of the Reorganized Debtors. The appointment of such individuals to such positions is consistent with the interests of Creditors, Equity Interest holders, and public policy, thereby satisfying section 1129(a)(5) of the Bankruptcy Code.

12.     No Rate Changes (11 U.S.C. § 1129(a)(6)). The Debtors' businesses are not subject to rate regulation by any governmental regulatory commission; therefore, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

13.     Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The evidence proffered or adduced at the Confirmation Hearing, (i) is persuasive and credible, (ii) has not been controverted by other

11

evidence, and (iii) establishes that each holder of a Claim or Equity Interest in an Impaired Class either (x) has accepted the Plan or (y) will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code, which result is also evidenced by the Liquidation Analysis.

14. <u>Acceptance By the Requisite Classes of Creditors and Equity Interest Holders (11 U.S.C.§ 1129(a)(8))</u>. Classes 2(a)-(f), 4(b), 5(a)-(f), 6(a)-(d) and (f), 7(a)-(d) and (f) and 9(a) are the only Impaired Classes entitled to vote on the Plan. Classes 2(a)-(f), 4(b), 5(a)-(f), 6(a)-(c) and (f), and 7(a)-(c) and (f) voted in sufficient number and amount to accept the Plan. Classes 6(d) and 7(d) did not have any members that voted on the Plan (collectively, the "<u>Abstaining Classes</u>"). Equity Interests in Class 9(a) voted to reject the Plan. Classes 6(e) and 7(e), which would have been comprised of General Unsecured Claims and Convenience Class Claims, respectively, against Aventine Power, have no eligible Claims within such Classes (collectively, the "<u>Empty Classes</u>"). Classes 1(a)-(f), 3(a)-(f), 4(a) and 8(a)-(f) are unimpaired under the Plan and, therefore, are deemed to have accepted the Plan. <u>See</u> Plan Article IV. The Plan provides that holders of Equity Interests in Classes 9(b)-(f) will not receive any distribution or retain any property on account of such Equity Interests, and these Classes are therefore deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code (the "<u>Deemed Rejecting Classes</u>"). Notwithstanding that section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to all Classes of Claims and Equity Interests, the Plan may be confirmed over the nonacceptance of the Abstaining Classes, the Empty Classes, Equity Interests in Class 9(a) and the Deemed Rejecting Classes.

15. <u>Treatment of Priority Claims (11 U.S.C. § 1129(a)(9))</u>. The Plan's treatment of Allowed Administrative Claims, DIP Financing Claims, Fee Claims, Allowed

12

Priority Tax Claims, and Other Priority Claims satisfies the requirements of sections 1129(a)(9)(A), (B), and (C) of the Bankruptcy Code.

16. <u>Acceptance By at Least One Impaired Class (11 U.S.C. § 1129(a)(10))</u>. Class(es) 2(a)-(f), 4(b), 5(a)-(f), 6(a)-(c) and (f) and 7(a)-(c) and (f), each of which is Impaired under the Plan, have voted to accept the Plan in requisite numbers and amounts, without the need to include any acceptance of the Plan by any insider. Consequently, section 1129(a)(10) of the Bankruptcy Code is satisfied.

17. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Debtors have established, by a preponderance of the evidence, that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Reorganized Debtors. To satisfy their burden under section 1129(a)(11) of the Bankruptcy Code, the Debtors, among other things, prepared and included as Exhibit D to the Disclosure Statement projections of their financial performance for each reporting period through the period ending December 31, 2014. These financial projections along with the evidence proffered or adduced at the Confirmation Hearing support the finding that the Debtors will have adequate capital to meet their obligations arising under the Plan or otherwise. The Court finds that the financial projections and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that the Plan is feasible, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

18. <u>Payment of Certain Fees (11 U.S.C. § 1129(a)(12))</u>. All fees payable on or before the Effective Date under 28 U.S.C. § 1930 either have been paid or will be paid on the Effective Date pursuant to Article IX(A) of the Plan. Moreover, each of the Reorganized Debtors will be responsible for paying quarterly fees under 28 U.S.C. § 1930(a)(6) arising after

the Effective Date until the Chapter 11 Cases are closed. Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

19. <u>Continuation of Employee Benefits (11 U.S.C. § 1129(a)(13))</u>. Article XI of the Plan provides that as of and subject to the Effective Date, all employment and severance agreements and policies, and all employee compensation and benefit plans, policies, and programs of the Debtors applicable generally to their employees, including agreements and programs subject to section 1114 of the Bankruptcy Code, as in effect on the Effective Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans, and life, accidental death, and dismemberment insurance plans, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed under the Plan, and the Debtors' obligations under such agreements and programs shall survive the Effective Date of the Plan, without prejudice to the Reorganized Debtors' rights under applicable non-bankruptcy law to modify, amend, or terminate the foregoing arrangements, except for (i) such executory contracts or plans specifically rejected pursuant to the Plan (to the extent such rejection does not violate section 1114 of the Bankruptcy Code), and (ii) such executory contracts or plans as have previously been terminated, or rejected, pursuant to a Final Order, or specifically waived by the beneficiaries of such plans, contracts, or programs. Thus, the Plan satisfies each of the requirements of section 1129(a)(13) of the Bankruptcy Code.

20. <u>Classification of Claims and Confirmation of Plan Over Non-Acceptance of Impaired Classes (11 U.S.C. §1129(b)</u>. The classification and treatment of Claims and Equity Interests in the Plan is proper pursuant to section 1122 of the Bankruptcy Code and does not discriminate unfairly pursuant to section 1129(b)(1) of the Bankruptcy Code. Pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that not

14

all Impaired Classes have voted to accept the Plan, if all of the requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. All Classes of Impaired Claims, other than the Empty Classes, the Abstaining Classes, Class 9(a) Equity Interests, and the Deemed Rejecting Classes, voted to accept the Plan.

21. There is no Class of creditors or Equity Interests junior to the holders of Claims or Equity Interests in the Abstaining Classes, the Empty Classes, Class 9(a) and the Deemed Rejecting Classes that will receive or retain any property under the Plan on account of their Claims or Equity Interests. Accordingly, the requirements of section 1129(b)(2) of the Bankruptcy Code are satisfied with respect to the Deemed Rejecting Classes, and the Plan does not violate the absolute priority rule, does not discriminate unfairly, and is fair and equitable with respect to such Classes. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129(b) of the Bankruptcy Code.

22. <u>Only One Plan (11 U.S.C. §1129(c))</u>. Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Cases. As a result, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

23. <u>Purpose of the Plan (11 U.S.C. §1129(d))</u>. The principal purpose of the Plan is not avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, as amended, and there has been no filing by any governmental unit asserting any such attempted avoidance.

24. <u>Good Faith Solicitation and Participation (11 U.S.C. § 1125(e))</u>. Based upon the record before the Court, the Debtors, the Released Parties and their respective counsel, advisors and agents have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the provisions of the Bankruptcy Code and Bankruptcy Rules in connection with the solicitation of acceptances of the Plan and the offer, issuance, sale

or purchase of securities in connection with the Plan and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the injunctive and exculpatory provisions set forth in Articles VII(E) and VII(K) of the Plan.

25. <u>Satisfaction of Confirmation Requirements</u>. The Plan satisfies each of the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code.

26. <u>Retention of Jurisdiction</u>. This Court may properly retain jurisdiction over the matters set forth in Article VIII of the Plan and herein.

27. <u>Substantive Consolidation</u>. Article VI(C) of the Plan provides for the substantive consolidation of ARE LLC and ARE Holdings for all purposes related to the Plan, including, without limitation, voting, confirmation and distributions thereunder; and immediately prior to or on the Effective Date, ARE LLC shall be merged into and become a part of Reorganized ARE Holdings and will cease to exist as a separate entity. Based on the Confirmation Memorandum and in the absence of any objections to such request, the Court finds that such deemed substantive consolidation of Consolidated Holdings and their estates is justified and appropriate in these Chapter 11 Cases for purposes of the Plan and the Distributions thereunder.

## DECREES

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:**

28. <u>Findings of Fact; Conclusions of Law</u>. The Findings of Fact and Conclusions of Law herein constitute the Bankruptcy Court's findings of fact and conclusions of law under Fed. R. Civ. P. 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. Any finding of fact shall constitute a finding of fact even if it is referred to as a conclusion of

law, and any conclusion of law shall constitute a conclusion of law even if it is referred to as a finding of fact.

29. <u>Confirmation</u>. The Plan, including all exhibits and modifications thereto, is approved and confirmed under section 1129 of the Bankruptcy Code.

30. <u>Resolution of Objections</u>. As presented at the Confirmation Hearing, the consensual resolution of certain objections satisfy all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and are in the best interest of the Debtors and their estates and supported by the record, and therefore should be approved. All objections thereto not previously resolved, resolved herein or withdrawn are hereby overruled, as set forth herein and on the record of the Confirmation Hearing.

31. <u>Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent</u>. The provisions of the Plan and this Confirmation Order, including the Findings of Fact and Conclusions of Law set forth herein, are nonseverable and mutually dependent.

32. <u>Plan Classification Controlling</u>. The classification of Claims and Equity Interests for purposes of the Distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the holders of Claims entitled to vote on the Plan (i) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (ii) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Plan for Distribution purposes, and (iii) shall not be binding on the Debtors, their estates, or the Reorganized Debtors. The classification scheme of the Plan and the treatment of all Claims and Equity Interests as provided thereunder shall be, and hereby are, approved.

33. <u>Binding Effect</u>. Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and

17

except as expressly provided in the Plan or this Confirmation Order, the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to, the Plan) and this Confirmation Order shall be valid, enforceable and binding on (i) the Debtors, (ii) the Reorganized Debtors, (iii) all holders of Claims against and Equity Interests in the Debtors, whether or not Impaired under the Plan and whether or not, if Impaired, such holders accepted the Plan, and (iv) each person acquiring property under the Plan, notwithstanding any otherwise applicable nonbankruptcy law.

34. <u>Debtor-in-Possession Transactions</u>. All transactions effected by the Debtors during the pendency of the Chapter 11 Cases from the Petition Date through the Confirmation Date are approved and ratified.

35. <u>Vesting of Property</u>. Pursuant to Article VII(C) of the Plan, on the Effective Date, the Reorganized Debtors shall be vested with all of the property of the Estates free and clear of all Claims, Liens, encumbrances, charges and other interests of creditors and equity security holders, except as otherwise expressly provided in the Plan or any document entered into in connection with the transactions described in the Plan and this Order, including, without limitation, the Exit Financing (including, without limitation, the ABL Credit Facility and the Senior Secured Notes and the indenture governing the Senior Secured Notes (the "<u>Senior Secured Indenture</u>") and any mortgages, security agreements, and similar instruments with respect to collateral securing any interests or property in connection with the Exit Financing or other documents or instruments entered into in connection with the Exit Financing, the Kiewit Note and the deed of trust granted in connection therewith, the Prepetition Lender Claims Escrow and the LC Collateral Account.

36. <u>Continued Corporate Existence</u>. Except as otherwise expressly provided for in Article VI(C) of the Plan, the Debtors, as Reorganized Debtors, shall continue to exist after

the Effective Date with all powers of a corporation or limited liability company, as the case may be, under the laws of the respective states governing their formation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, except as such rights may be limited and conditioned by the Plan and the documents and instruments executed and delivered in connection therewith. In addition, the Reorganized Debtors may operate their business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of the Plan as well as the documents and instruments executed and delivered in connection therewith, including without limitation, the documents and instruments included in the Plan Supplement.

37. <u>Substantive Consolidation Approved</u>. The substantive consolidation and merger of ARE LLC into ARE Holdings is approved such that (i) all assets and liabilities of ARE LLC and ARE Holdings are hereby deemed to be merged, (ii) the obligations of each ARE LLC and ARE Holdings are hereby deemed to be the obligations of Consolidated Holdings solely for purposes of the Plan and Distributions thereunder, and (iii) any Claims filed or to be filed in connection with any obligations of ARE LLC and ARE Holdings are hereby deemed Claims against Consolidated Holdings, (iv) each Claim filed in the cases of ARE LLC or ARE Holdings is hereby deemed filed against Consolidated Holdings in accordance with the substantive consolidation of the assets and liabilities of ARE LLC and ARE Holdings, (v) all transfers, disbursements and distributions made by ARE LLC or ARE Holdings under and pursuant to the Plan are hereby deemed to be made by Consolidated Holdings, and (vi) holders of Allowed Claims against ARE LLC and ARE Holdings in each Class shall be entitled to their share of assets available for distribution from Consolidated Holdings to such Class without regard to whether ARE LLC or ARE Holdings was originally liable for such Claim, <u>provided</u>, <u>however</u>, that Intercompany Claims shall be treated as provided in section IV(I) of the Plan.

38. <u>Approval of the Exit Financing and Authorization to Pay Commitment Fee</u>. The ABL Credit Facility and any security agreements and similar instruments with respect to collateral securing any interests or property in connection with the ABL Credit Facility and all other documents or instruments entered into in connection with the ABL Credit Facility (collectively, "the "<u>ABL Credit Facility Documents</u>") are hereby approved. The Debtors' entry into the Commitment Letter for the ABL Credit Facility and the payment of the $250,000 Commitment Fee is hereby approved. The Senior Secured Notes and any mortgage, security agreements and similar instruments with respect to collateral securing any interests or property in connection with the Senior Secured Notes and all other documents or instruments (including, without limitation the Senior Secured Indenture) entered into in connection with the Senior Secured Notes (collectively, the "<u>Senior Secured Notes Documents</u>") are hereby approved. On or prior to the Effective Date, but subject to the occurrence of the Effective Date, the Reorganized Debtors are authorized to (i) enter into the ABL Credit Facility Documents and (ii) enter into the Senior Secured Notes Documents. Pursuant to section 1142(b) of the Bankruptcy Code and without further action by this Court or by the shareholders, directors, members or partners of any of the Reorganized Debtors, the Reorganized Debtors are authorized to enter into and implement the Exit Financing (and the issuance of the Noteholder New Equity and the Senior Secured Notes in connection with the Senior Secured Notes Offering) and to execute and deliver the ABL Credit Facility Documents and the Senior Secured Notes Documents and all other documents, agreements and instruments necessary or appropriate to issue and/or enter into and perform all obligations under the Exit Financing and the Senior Secured Indenture and to take all other actions and execute, deliver, record and file all other such agreements, documents, instruments, financing statements, mortgages, releases, applications, reports and any changes, additions and modifications thereto in connection with the consummation of the transactions

20

DB02:9231631.10                                                                                             068125.1001